UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| ALL COAST, LLC | * | CIVIL ACTION NO. 21-258 (LEAD), c/w 21-337, 21-464 & 21-822 |
| VERSUS | * | |
| | | SECTION A(4) |
| SHORE OFFSHORE SERVICES, LLC; MODERN AMERICAN RAILROAD SERVICES, LLC; and MARTIN ENERGY SERVICES, LLC | * | JUDGE JAY C. ZAINEY |
| | * | MAG. JUDGE ROBY |
| *   *   *   *   *   *   *   * | * | APPLIES TO CIV. A. 21-464 ONLY |

### WEEKS MARINE, INC.'S AFFIRMATIVE DEFENSES, ANSWER, THIRD-PARTY DEMAND AND CLAIM IN RESPONSE TO COMPLAINT FOR EXONERATION FROM AND/OR LIMITATION OF LIABILITY

Weeks Marine, Inc. provides its affirmative defenses, answer, claim, and third-party demand in response to the complaint for exoneration from and/or limitation of liability (the "Complaint") (Rec. Doc. 1 in No. 21-464), which was filed by Modern American Railroad Services, LLC ("MARS") and Shore Offshore Services, LLC (collectively, the "THOR Interests").

**AFFIRMATIVE DEFENSES AND ANSWER TO THE COMPLAINT**

A. **Affirmative Defenses**

1.

The Complaint fails to state a claim upon which relief can be granted.

2.

The limitation fund is neither sufficient nor in compliance with applicable law. Accordingly, the Complaint should be dismissed. In the alternative, the limitation fund should be increased because it does not properly account for the value of the engines, apparel, appurtenances,

attachments, pending freight, and/or cargo aboard the D/B THOR, and/or the value of any judgment, award, and/or settlement that may be or may have been received by the THOR Interests from any third party in recompense of any losses or damages sustained to the D/B THOR.

3.

Weeks Marine reserves the right to contest the appraised value of the D/B THOR, her engines, apparel, appurtenances, attachments, pending freight, cargo, and/or value recovered, and the adequacy of the security.

4.

To the extent the insurers or employees of the THOR Interests or the D/B THOR attempt to avail themselves of the limitation and/or exoneration defense, the protections of the Limitation of Liability Act are unavailable to them under the circumstances.

5.

The casualty and damages relating to the allision were caused in whole or in part by the unseaworthiness of the D/B THOR, and/or were due to the negligence, breach of duty of care, or other fault on the part of the THOR Interests and their agents and employees, all of which was within the privity or knowledge of the THOR Interests. Consequently, the THOR Interests are not entitled to limitation of liability under 46 U.S.C. § 30501, *et seq.* and/or Rule F of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure.

6.

Under the rules of *The Oregon* and *The Louisiana*, the striking of a stationary object creates a presumption that the allision was the result the THOR Interests' (and their agents' and/or employees') negligence.

**7.**

Under the rule of *The Pennsylvania*, the violation of applicable federal safety or operating laws and regulations creates a presumption that the THOR Interests (and their agents and/or employees) caused the allision.

**8.**

The casualty and damages relating to the allision were not the result of any negligence, fault, or want of due care on the part of Weeks Marine or those for whom Weeks Marine may be responsible.

**9.**

The proceeds of any judgment, settlement, or award received by the THOR Interests in connection with this litigation should be included in the Limitation Proceeding, to the extent this Court determines that the Complaint is supported by the facts and applicable law.

**10.**

Weeks Marine asserts any and all affirmative defenses averred by other claimants in this limitation action and incorporates all such affirmative defenses by reference as if asserted in full herein. Weeks Marine reserves its right to assert additional defenses as discovery progresses.

**B.     Answer to the Complaint**

AND NOW, for answer to the specific allegations of the Complaint, Weeks Marine responds as follows:

**11.**

In response to paragraph 1 of the Complaint, Weeks Marine admits only that MARS is a Louisiana limited liability company with its principal place of business in Gibson, Louisiana. Weeks

Marine denies the remaining allegations of paragraph 1 for lack of information sufficient to justify a belief therein.

12.

In response to paragraph 2 of the Complaint, Weeks Marine admits that Shore Offshore Services, LLC ("Shore Offshore") is a Louisiana limited liability company with its principal place of business in Gibson, Louisiana. Weeks Marine denies the remaining allegations of paragraph 2 for lack of information sufficient to justify a belief therein.

13.

Weeks Marine admits on information and belief the allegations of paragraph 3 of the Complaint.

14.

Paragraph 4 of the Complaint contains a statement of venue to which no response is required. If a response is required, Weeks Marine does not object to venue and admits venue is proper in this district.

15.

Paragraph 5 of the Complaint contains a statement of jurisdiction to which no response is required. If a response is required, Weeks Marine admits that this Court has subject matter jurisdiction over the THOR Interests' limitation action.

16.

Weeks Marine denies the allegations of paragraph 6.

17.

Weeks Marine denies the allegations of paragraph 7 for lack of information sufficient to justify a belief therein.

**18.**

In response to paragraph 8 of the Complaint, Weeks Marine admits that the D/B THOR broke away from her mooring on October 28, 2020, during Hurricane Zeta and that it subsequently struck vessels and other property in Bayou Lafourche, Louisiana. Weeks Marine denies the remaining allegations in paragraph 8 for lack of information sufficient to justify a belief therein.

**19.**

Weeks Marine denies the allegations of paragraph 9 for lack of information sufficient to justify a belief therein.

**20.**

Weeks Marine denies the allegations of paragraphs 10–12 of the Complaint.

**21.**

In response to paragraph 13 of the Complaint, Weeks Marine admits that it suffered damages as a result of the incident at issue. Weeks Marine denies the remaining allegations in paragraph 13 for lack of information sufficient to justify a belief therein.

**22.**

Weeks Marine denies the allegations of paragraphs 14–21 of the Complaint for lack of information sufficient to justify a belief therein.

**23.**

In response to paragraph 22 of the Complaint, Weeks Marine admits that it has a claim against the THOR interests but denies the remaining allegations for lack of information sufficient to justify a belief therein.

**24.**

Weeks Marine denies the allegations of allegations of paragraphs 23–26 of the Complaint for lack of information sufficient to justify a belief therein.

**25.**

In response to paragraph 27 of the Complaint, Weeks Marine admits that the THOR Interests have submitted security for approval but denies that the security is sufficient.

**26.**

In response to paragraph 28 of the Complaint, Weeks Marine admits that the THOR Interests have filed letters of undertaking. Weeks Marine denies all other allegations of paragraph 28, specifically denying that the THOR Interests are entitled to exoneration from or limitation of liability.

**27.**

Weeks Marine denies the allegations of paragraphs 29–30.

**28.**

Paragraph 31 of the Complaint contains a statement of jurisdiction to which no response is required. If a response is required, Weeks Marine admits that this Court has subject matter jurisdiction over the THOR Interests' limitation action.

**29.**

To the extent not specifically addressed herein, Weeks Marine denies all allegations, unnumbered paragraphs, and prayers for relief contained in the THOR Interests' Complaint to the extent they are inconsistent with Weeks Marine's allegations in the following paragraphs.

WHEREFORE, Weeks Marine prays that judgment be rendered herein in its favor and against the THOR Interests, and that the THOR Interests' Complaint seeking exoneration from or

limitation of liability be dismissed, or, in the alternative, that the THOR Interests be required to deposit additional funds in the amount required by law. Further, Weeks Marine prays for all just and equitable relief to which it may be entitled.

**WEEKS MARINE'S CLAIM IN LIMITATION**

AND NOW, pursuant to Rule F of the Supplemental Rules for Admiralty or Maritime Claims, Weeks Marine hereby makes a claim against the THOR Interests, and as grounds therefor represents the following:

**A.  Parties**

**30.**

Claimant Weeks Marine, Inc. is a New Jersey corporation, licensed and doing business in the State of Louisiana. At the time of the incident, Weeks Marine had several vessels in and around Port Fourchon, Louisiana to conduct dredging operations pursuant to a contract with the State of Louisiana.

**31.**

Defendant and Petitioner-in-Limitation MARS is a Louisiana limited liability company, licensed and doing business in the State of Louisiana. On information and belief, at all relevant times MARS was the owner of the THOR, a 370-foot-long heavy-lift, construction-support vessel.

**32.**

Defendant and Petitioner-in-Limitation Shore Offshore is a Louisiana limited liability company, licensed and doing business in the State of Louisiana. On information and belief, at all relevant times, Shore Offshore was the charterer and owner *pro hac vice* of the THOR.

B.  **Jurisdiction and Venue**

33.

This is an admiralty and maritime claim under Rule 9(h) of the Federal Rules of Civil Procedure. The Court has jurisdiction over this claim under 28 U.S.C. § 1333.

34.

Venue is proper under Rule F of the Supplemental Rules for Admiralty and Maritime Claims.

C.  **Facts**

35.

On October 28, 2020, the ELLEFSEN, in anticipation of the arrival of Hurricane Zeta, was secured in Bayou Lafourche deploying three (3) 17,000 lbs. anchors and three tugs—the M/V SEA CYPRESS, the M/V TRENT JOSEPH, and the M/V CANDACE. The ELLEFSEN's cutter was down.

36.

Additionally, the crew boat M/V JOSEPH ANN was on the ELLEFSEN's starboard bow and outboard of the vessel towards the east bank of Bayou Lafourche were several support vessels including barges WEEKS 591, WEEKS 594, WEEKS 595, WEEKS 182, BT-148, and the PEPPY, a barge chartered from a third party and which served to support pipelines. Two 720-foot-long steel pipelines on pontoons and several lengths of other pipelines were afloat towards the east bank.

37.

Meanwhile, downstream, the THOR was moored on her starboard side at the Martin Energy Services Dock #16, facing upstream. On information and belief, one or more vessels,

including the M/V CROSBY ENDEAVOR and an unknown tug owned by Dawn Services, LLC but allegedly charted to Crosby Tugs, LLC, were tied to the THOR to help secure her in place.

38.

The THOR was moored to nine bollards on the Martin Energy dock. One or more of the THOR's mooring lines were later found to be in poor condition and rusted to the core.

39.

At some point during Hurricane Zeta's passage on October 28, 2020, the THOR broke free from her moorings. On information and belief, the mooring lines that secured the THOR to the bollards at the Martin Energy dock snapped and/or the bollards to which the mooring lines were secured failed and/or the vessels tied to the THOR failed to keep the THOR in place.

40.

The THOR then traveled upstream and struck the moored and stationary ELLEFSEN and other vessels at approximately 4:00 p.m., causing substantial damage to the ELLEFSEN, her equipment, her support vessels, and other equipment on site for the dredging operation Weeks Marine had been engaged for.

D. **First Cause of Action for Negligence and Statutory Violations**

41.

The negligence of the THOR Interests and their employees, crewmembers, officers, agents, and/or servants for whom they are responsible, jointly and severally, caused the breakaway of the THOR and all subsequent damages sustained by the ELLEFSEN and Weeks Marine, in the following non-exclusive respects:

(a) Failing to secure the D/B THOR properly when Hurricane Zeta was approaching;
(b) Failing to use enough mooring lines;

(c) Failing to use mooring lines of adequate strength;

(d) Failing to have a hurricane plan in place and/or implement any such plan properly;

(e) Failure to train and/or supervise the crew of the THOR;

(f) Failing to institute proper emergency procedures;

(g) Failing to heed emergency warnings;

(h) Failing to properly maintain the vessel and her appurtenances and lines;

(i) Failing to adequately and properly communicate with other vessels in the vicinity before, during, and after the THOR's breakaway;

(j) Failing to ensure that the THOR and her equipment were free from defect and/or in proper working order;

(k) The master and crew of the THOR were not competent, properly trained or reasonably fit to operate her;

(l) Violating applicable maritime safety statutes and/or rules; and

(m) Other acts of negligence that are identified in discovery and proven at trial.

Weeks Marine reserves the right to amend this paragraph as discovery proceeds.

E. **Second Cause of Action for Unseaworthiness**

**42.**

The THOR's breakaway, allision, and/or collision, and all damages sustained by the ELLEFSEN and Weeks Marine, were proximately caused by the unseaworthy condition of the THOR, and the breach of warranty of seaworthiness by the THOR Interests, in the following non-exclusive respects:

(a) Failing to provide a competent and properly trained master and crew;

(b) Failing to equip the vessel with adequate anchors, anchor lines/chains, and mooring lines to maintain position under the anticipated and prevailing severe weather conditions; and

    (c)    All other unseaworthy conditions of the foregoing vessel and breaches of the warranty of seaworthiness by its owner(s) and operator(s) that are identified in discovery and proven at trial.

Weeks Marine reserves the right to amend this paragraph as discovery proceeds.

**F.     Causation and Damages**

**43.**

As a result of the allision, Weeks Marine has incurred costs to repair the ELLEFSEN and some of her support vessels including the CANDACE, WEEKS 594, WEEKS 595, BT-841, WEEKS 182, and PEPPY. Weeks Marine has incurred additional costs to repair or replace the vessels' equipment and other equipment, including pipelines, used in the dredging operation.

**44.**

Weeks Marine has also incurred loss of use damages and loss of profits while its vessels were under repair for physical damages due to the allision with the THOR. Additional damages include surveyor and claim-preparation expenses.

**45.**

In the aftermath of the incident, Weeks Marine was required to use its own vessels, crews, and equipment to mitigate damages caused by the THOR's allision with the ELLEFSEN. The mitigation was necessary to prevent Weeks Marine from incurring even greater damages and prevented Weeks Marine from using its vessels for other, profitable work. Office personnel were also required to participate in managing and directing the mitigation efforts. All of the above caused Weeks Marine to suffer additional losses.

**46.**

The damages resulting from the allision were not the result of any negligence, fault, or want of due care on the part of Weeks Marine or those for whom Weeks Marine may be responsible.

**47.**

Weeks Marine's damages were caused in whole or in part by the fault of the THOR Interests and their agents or employees, by the violation of applicable federal safety or operating laws and regulations of the THOR Interests and their agents or employees, by the unseaworthiness of the THOR, and/or by other acts or omissions to be proven at trial.

**48.**

The THOR Interests knew or should have known of the defects and/or unseaworthiness of the THOR and are therefore liable for the damage caused.

**49.**

The THOR Interests had privity or knowledge of one or more of the acts of negligence and/or the unseaworthiness that caused or contributed to the THOR's breakaway, allision and/or collision, and therefore, the THOR Interests are not entitled to limitation of liability.

**50.**

Under the rule of *The Oregon* and/or *The Louisiana*, the striking of a stationary object creates a presumption that the allision was the result of the THOR Interests' (and their agents' and/or employees') negligence.

**51.**

Under the rule of *The Pennsylvania*, the violation of applicable federal safety or operating laws and regulations creates a presumption that the THOR Interests (and their agents and/or employees) caused the allision.

**52.**

For the reasons set forth above, the THOR Interests are liable to Weeks Marine for the damages they suffered as a result of the allision, including, but not limited to, vessel damages, loss

of use, loss of profits, mitigation, overhead, and all other expenses, in amounts that will be established at trial.

**53.**

Weeks Marine reserves the right to raise additional allegations once discovery is conducted. Weeks Marine also reserves the right to amend its claim after further information has developed.

### THIRD-PARTY DEMAND

**54.**

And now, Weeks Marine asserts its third-party demand as follows:

**A.   Parties**

**55.**

Third-party plaintiff Weeks Marine, Inc. is a New Jersey corporation, licensed and doing business in the State of Louisiana. At the time of the incident, Weeks Marine had several vessels in and around Port Fourchon, Louisiana to conduct dredging operations pursuant to a contact with the State of Louisiana.

**56.**

Third-party defendant Martin Energy Services, LLC ("Martin Energy") is an Alabama limited liability company, licensed and doing business in the State of Louisiana. Martin Energy is subject to this Court's personal jurisdiction under the Louisiana Long-Arm Statute.

**57.**

Third-party defendant Dawn Services, LLC ("Dawn Services") is a Louisiana limited liability company, licensed and doing business in the State of Louisiana.

   B.     **Jurisdiction and Venue**

58.

This demand arises out of a maritime allision. The Court has jurisdiction over this third-party demand under 28 U.S.C. § 1333 and Fed. R. Civ. P. 14(c). The claims in this demand are admiralty or maritime in nature under Rule 9(h).

59.

Venue is proper for this third-party demand because the Court has personal jurisdiction over the third-party defendants. *In re McDonnell-Douglas Corp.*, 647 F.2d 515, 516 (5th Cir. 1981).

   C.     **Facts**

60.

Weeks Marine incorporates by reference the allegations in Paragraphs 35 through 40 as if copied herein in their entirety, pursuant to Fed. R. Civ. P. 10(c).

   D.     **First Cause of Action Against Martin Energy and Dawn Services for Negligence**

61.

The negligence or other fault of Martin Energy and its employees, officers, agents, and/or servants for whom they are responsible caused the breakaway of the THOR and subsequent damages to the E.W. ELLEFSEN and Weeks Marine, in the following non-exclusive respects:

   (a)    Failing to properly maintain its dock and/or bollards in such a way that they would not fail;
   (b)    Failing to secure the THOR properly and/or to ensure that the THOR was securely moored at its dock before the approach of Hurricane Zeta;
   (c)    Failing to use enough mooring lines;
   (d)    Failing to use mooring lines of adequate strength;
   (e)    Failing to have a hurricane plan in place and/or implement any such plan properly;

(f) Failing to institute proper emergency procedures;

(g) Failing to heed emergency warnings;

(h) Failing to keep a proper watch;

(i) Failing to properly man its dock with qualified personnel;

(j) Violating applicable maritime safety statutes and/or rules;

(k) Failing to adequately and properly communicate with other vessels in the vicinity before, during, and after the THOR's breakaway;

(l) Other acts of negligence as may be identified in discovery.

Weeks Marine reserves the right to amend this paragraph as discovery proceeds.

**62.**

The negligence or other fault of Dawn Services, as well as their employees, officers, agents, and/or servants for whom they are responsible, caused the breakaway of the THOR and subsequent damages to the ELLEFSEN and Weeks Marine, in the following non-exclusive respects:

(a) Failing to ensure that the assist tug tied to the THOR kept the THOR in place during Hurricane Zeta, which was the purpose for which that vessel was present;

(b) Failing to secure the THOR properly and/or to ensure that the THOR was securely moored at the Martin Energy dock before the approach of Hurricane Zeta;

(c) Failing to keep a proper watch;

(d) Failing to have a hurricane plan in place and/or implement any such plan properly;

(e) Failure to train and/or supervise the crew of their vessel;

(f) Failing to institute proper emergency procedures;

(g) Failing to heed emergency warnings;

(h) Failing to maintain its vessel;

(i) Violating applicable maritime safety statutes and/or rules; and

(j) Other acts of negligence that are identified in discovery and proven at trial.

Weeks Marine reserves the right to amend this paragraph as discovery proceeds.

E.     **Causation and Damages**

63.

The foregoing acts of negligence of Martin Energy and Dawn Services, statutory and regulatory violations were legal and proximate causes of the THOR's breakaway, allisions and collisions, and Martin Energy and Dawn Services are jointly and severally liable for Weeks Marine's resulting damages.

64.

As a result of the allision, Weeks Marine has incurred costs to repair the ELLEFSEN and some of her support vessels including the CANDACE, WEEKS 594, WEEKS 595, BT-841, WEEKS 182, and PEPPY. Weeks Marine has incurred additional costs to repair or replace the vessels' equipment and other equipment, including pipelines, used in the dredging operation.

65.

Weeks Marine has also incurred loss of use damages and loss of profits while the vessels were under repair for physical damages due to the allision with the THOR. Additional damages include surveyor and claim-preparation expenses.

66.

In the aftermath of the incident, Weeks Marine was required to use its own vessels, crews, and equipment to mitigate damages caused by the THOR's allision with the ELLEFSEN. The mitigation was necessary to prevent Weeks Marine from incurring even greater damages and prevented Weeks Marine from using its vessels for other, profitable work. Office personnel were also required to participate in managing and directing the mitigation efforts. All of these caused Weeks Marine to suffer additional losses.

67.

The damages resulting from the allision were not the result of any negligence, fault, or want of due care on the part of Weeks Marine or those for whom Weeks Marine may be responsible.

**68.**

Weeks Marine's damages were caused in whole or in part by the negligence or other fault of Martin Energy and Dawn Services and their agents or employees, by the violation of applicable federal safety or operating laws and regulations by Martin Energy and Dawn Services and their agents or employees and/or by other acts or omissions to be proven at trial.

**69.**

For the reasons set forth above, Martin Energy and Dawn Services are liable to Weeks Marine for the damages suffered as a result of the allision, including, but not limited to, vessel damages, lost profits, and other expenses, in amounts that will be established at trial.

**70.**

Weeks Marine reserves the right to raise additional allegations once discovery is conducted. Weeks Marine also reserves the right to amend its claim after further information has developed

**PRAYER FOR RELIEF**

**71.**

WHEREFORE, Weeks Marine prays for the following relief:

1. That MARS and Shore Offshore's request for exoneration from or limitation of liability be denied and that judgment be entered in Weeks Marine's favor against MARS and Shore Offshore on all issues.

2. For a judgment that MARS and Shore Offshore are liable to Weeks Marine, and that Weeks Marine be awarded sufficient compensation for its damages, together with pre-

and post-judgment interest, court costs, attorneys fees, and all other general, special, and equitable relief the Court deems just and proper.

3. For a judgment that third-party defendants Martin Energy and Dawn Services are liable to Weeks Marine, and that Weeks Marine be awarded sufficient compensation for its damages, together with pre- and post-judgment interest, court costs, attorneys' fees, and all other general, special, and equitable relief the Court deems just and proper.

Respectfully submitted,

s/      Harold J. Flanagan
Harold J. Flanagan, T.A. (#24091)
Sean P. Brady (#30410)
Anders F. Holmgren (#34597)
Dennis O. Durocher, Jr. (#36441)
Laurent J. Demosthenidy (#30473)
FLANAGAN PARTNERS LLP
201 St. Charles Ave., Suite 3300
New Orleans, LA 70170
Telephone: (504) 569-0235
Facsimile: (504) 592-0251

*Attorneys for Weeks Marine, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served upon all counsel of record this 1st day of October, 2021, by e-filing it into the CM/ECF system, which will automatically deliver a copy to all counsel.

s/      Harold J. Flanagan