# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ALL COAST, LLC | CIVIL ACTION |
| VERSUS | NO.  21-258 c/w 21-337, 21-464, 21-822 |
| SHORE OFFSHORE SERVICES, LLC; MODERN AMERICAN RAILROAD SERVICES, L.L.C.; and MARTIN ENERGY SERVICES, LLC | SECTION "A" MAG. DIV. (4) |
| | JUDGE: JAY C. ZAINEY |
| | CHIEF MAGISTRATE JUDGE: KAREN WELLS ROBY |
| *Applies to No. 21-464* | |

## ANSWER AND CLAIM

**TO THE HONORABLE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF LOUISIANA AND THE JUDGES THEREOF:**

## ANSWER

**NOW COME** defendants, Martin Operating Partnership L.P. and Martin Energy Services LLC (collectively "Martin"), through undersigned counsel, who, for Answer to the Verified Complaint for Exoneration From and/or Limitation of Liability ("Complaint") (Doc. 1 in No. 21-464) filed by Limitation Plaintiffs, Modern American Railroad Services, L.L.C. (MARS) and Shore Offshore Services, LLC ("Shore") (collectively "Petitioners"), respectfully aver as follows:

## FIRST DEFENSE

The allegations of the Complaint fail to state a claim upon which relief can be granted.  See Fed. R. Civ. P. 12(b)(6).

## SECOND DEFENSE

The Limitation of Liability Act is not applicable to the instant case because the conduct and actions which led to Claimants' injuries took place within the privity or knowledge of Petitioners.

## THIRD DEFENSE

The Limitation of Liability Act is not applicable in the instant case because, at all relevant times, the D/B THOR and her appurtenances and equipment, including her mooring lines and wires, were known by Petitioners to be unseaworthy.

## FOURTH DEFENSE

The events culminating in the alleged injuries of Claimants were the result of the negligence, fault, and/or want of due care on the part of the Petitioners and/or those for whom Petitioners are responsible including, but not limited to, their negligence in the management and operation of the D/B THOR and in the training and supervision of its crew, and/or the results of the unseaworthiness of the D/B THOR and her appurtenances and equipment, all of which were within the privity and knowledge of Petitioners and for which the Complaint should be denied.

## FIFTH DEFENSE

**AND NOW,** answering each of the allegations of the Complaint, Martin avers as follows:

1.

The truth of the allegations of fact contained in Paragraph 1 of the Complaint is denied for lack of knowledge or information sufficient to form a belief about the truth of the allegations.

2.

The truth of the allegations of fact contained in Paragraph 2 of the Complaint is denied for lack of knowledge or information sufficient to form a belief about the truth of the allegations.

3.

The truth of the allegations of fact contained in Paragraph 3 of the Complaint is denied for lack of knowledge or information sufficient to form a belief about the truth of the allegations.

4.

The allegations contained in Paragraph 4 of the Complaint state legal conclusions not requiring a response from Martin.  To the extent that a response is deemed required, the allegations are denied.

5.

The allegations contained in Paragraph 5 of the Complaint state legal conclusions not requiring a response from Martin.  To the extent that a response is deemed required, the allegations are denied.

6.

The truth of the allegations of fact contained in Paragraph 6 of the Complaint is denied for lack of knowledge or information sufficient to form a belief about the truth of the allegations.

7.

The truth of the allegations of fact contained in Paragraph 7 of the Complaint require no answer of Martin, should an answer be required the allegations are denied for lack of sufficient information to justify a belief therein.

8.

Except to admit that Hurricane Zeta made landfall on October 28, 2020, the truth of the allegations of fact contained in Paragraph 8 of the Complaint is denied for lack of knowledge or information sufficient to form a belief about the truth of the allegations.

9.

The truth of the allegations of fact contained in Paragraph 9 is denied for lack of knowledge or information sufficient to form a belief about the truth of the allegations.

10.

The truth of the allegations of fact contained in Paragraph 10 of the Complaint is denied.

11.

The truth of the allegations of fact contained in Paragraph 11 of the Complaint is denied

12.

The allegations contained in Paragraph 12 of the Complaint state legal conclusions not requiring a response from Martin.  To the extent that a response is deemed required, the allegations are denied.

13.

The truth of the allegations of fact contained in Paragraph 13 of the Complaint is denied for lack of knowledge or information sufficient to form a belief about the truth of the allegations.

14.

The truth of the allegations of fact contained in Paragraph 14 of the Complaint require no answer of Martin, should an answer be required the allegations are denied for lack of sufficient information to justify a belief therein.

15.

The truth of the allegations of fact contained in Paragraph 15 of the Complaint require no answer of Martin, should an answer be required the allegations are denied for lack of sufficient information to justify a belief therein.

16.

The truth of the allegations of fact contained in Paragraph 16 of the Complaint require no answer of Martin, should an answer be required the allegations are denied for lack of sufficient information to justify a belief therein.

17.

The truth of the allegations of fact contained in Paragraph 17 of the Complaint require no answer of Martin, should an answer be required the allegations are denied for lack of sufficient information to justify a belief therein.

18.

The truth of the allegations of fact contained in Paragraph 18 of the Complaint require no answer of Martin, should an answer be required the allegations are denied for lack of sufficient information to justify a belief therein.

19.

The truth of the allegations of fact contained in Paragraph 19 of the Complaint require no answer of Martin, should an answer be required the allegations are denied for lack of sufficient information to justify a belief therein.

20.

The truth of the allegations of fact contained in Paragraph 20 of the Complaint require no answer of Martin, should an answer be required the allegations are denied for lack of sufficient information to justify a belief therein.

21.

The truth of the allegations of fact contained in Paragraph 21 of the Complaint require no answer of Martin, should an answer be required the allegations are denied for lack of sufficient information to justify a belief therein.

22.

Except to admit Martin has a claim, the truth of the allegations of fact contained in Paragraph 22 of the Complaint is denied for lack of knowledge or information sufficient to form a belief about the truth of the allegations.

23.

The truth of the allegations of fact contained in Paragraph 23 of the Complaint is denied for lack of knowledge or information sufficient to form a belief about the truth of the allegations.

24.

The truth of the allegations of fact contained in Paragraph 24 of the Complaint is denied for lack of knowledge or information sufficient to form a belief about the truth of the allegations.

25.

The truth of the allegations of fact contained in Paragraph 25 of the Complaint is denied for lack of knowledge or information sufficient to form a belief about the truth of the allegations.

26.

The truth of the allegations of fact contained in Paragraph 26 of the Complaint is denied for lack of knowledge or information sufficient to form a belief about the truth of the allegations.

27.

The truth of the allegations of fact contained in Paragraph 27 of the Complaint is denied for lack of knowledge or information sufficient to form a belief about the truth of the allegations.

28.

The truth of the allegations of fact contained in Paragraph 28 of the Complaint is denied.

29.

The truth of the allegations of fact contained in Paragraph 29 of the Complaint is denied for lack of knowledge or information sufficient to form a belief about the truth of the allegations.

30.

The allegations contained in Paragraph 30 of the Complaint state legal conclusions not requiring a response from Martin.  To the extent that a response is deemed required, the allegations are denied.

31.

The allegations contained in Paragraph 31 of the Complaint state legal conclusions not requiring a response from Martin.  To the extent that a response is deemed required, the allegations are denied.

**WHEREFORE,** Martin Operating Partnership L.P. and Martin Energy Services LLC pray that their Answer be deemed good and sufficient and that, after due proceedings are

had, Petitioners be denied exoneration from or limitation of liability, and that the Complaint for Exoneration From and Limitation of Liability filed by Petitioners be dismissed.

## CLAIM

**AND NOW,** assuming the position of Claimants, and in accordance with Rule F of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, Martin Operating Partnership L.P. (individually "MOP") and Martin Energy Services LLC (individually "MES") (collectively "Martin") respectfully make claim against Petitioners and allege as follows:

1.

This is a case of admiralty or maritime jurisdiction as hereinafter more fully appears.  This is an admiralty or maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.

2.

At all material times herein, MOP was the lessee, and MES was the operator, of certain property including Dock No. 16 in Port Fourchin, Lafourche Parish, Louisiana (hereinafter the "Dock" or "Martin's Dock").

3.

Made defendants herein are Petitioners:

A.    Modern American Railroad Services, L.L.C. ("MARS"), a limited liability company organized and existing under and by virtue of the laws of Louisiana, with its principal place of business in Gibson, Louisiana, and at all material times herein was the owner of the Derrick Barge THOR ("D/B THOR"); and

- 9 -

B.    Shore Offshore Services, LLC ("Shore"), a limited liability company organized and existing under and by virtue of the laws of Louisiana, with its principal place of business in Gibson, Louisiana, and at all times pertinent to this cause was the bareboat charterer/owner pro hac vice of the D/B THOR.

4.

On or about October 28, 2020, and while Hurricane Zeta was approaching, the D/B THOR was moored starboard side to the Dock, with an assist tug, the M/V CROSBY ENDEAVOR, made up to her port side.

5.

Petitioners had moored the D/B THOR to the Dock with multiple mooring lines provided solely by Petitioners that were deteriorated and otherwise unseaworthy and not reasonably fit for their intended purpose.

6.

At all material times herein, Martin undertook the precautions required by a reasonably prudent wharfinger under the prevailing circumstances and conditions, and that Martin was in full compliance with all applicable laws, regulations, and standards.

7.

Further, at all material times herein, Martin's Dock and all mooring structures and components located thereon were strong, staunch, tight, and in all respects seaworthy and fit for the services for which they were engaged.

8.

As Hurricane Zeta made landfall, the mooring lines securing the D/B THOR to the Dock parted or otherwise gave way and despite the presence of Petitioners' crew aboard the D/B THOR and a tugboat standing by, the D/B THOR became adrift and ultimately allided with Martin's Dock and with several moored vessels causing damage.

9.

The D/B THOR became adrift due to, among other things, the negligence, fault, and/or want of due care on the part of the Petitioners and/or those for whom Petitioners are responsible including, but not limited to, their negligence in the management and operation of the D/B THOR and in the training and supervision of her crew, and the crew's failure to take proper and correct action required by the ordinary practice of seamen to maintain control of the D/B THOR and to prevent the D/B THOR from alliding with and damaging Martin's Dock, from becoming adrift, and ultimately alliding with other moored vessels, including, but not limited to, the failure of personnel aboard the D/B/ THOR to properly monitor and adjust the mooring lines and wires as necessary to prevent the lines and wires from parting, the failure of personnel aboard the D/B THOR to let go her anchors, and the failure of those aboard the D/B THOR to take such other precautions required by the ordinary practice of seamen or by the special circumstances of the case to prevent the D/B THOR from alliding with Martin's Dock and other vessels and becoming adrift; and/or due to the unseaworthiness of the D/B THOR and her appurtenances and equipment, including her mooring lines and wires, all of which were within the privity and knowledge of Petitioners.

- 11 -

10.

As a result of the aforesaid negligence and unseaworthiness on the part of Petitioners and the D/B THOR, and Petitioners' failure to properly secure and control the D/B THOR, the D/B THOR was permitted to allide with Martin's Dock resulting in extensive damage to the Dock and its components necessitating repairs and causing Martin to not only lose the use of the Dock for an extended period of time, but to also lose dockage fees, fuel sales, and throughput fees for which Martin now makes claim against Petitioners in this Limitation Proceeding for the full amount of the resulting loss and damage.

11.

On or about February 8, 2021, Plaintiff, All Coast, LLC ("All Coast"), filed suit against Petitioners and MES in an action bearing Civil Action No. 21-258 on the docket of this Honorable Court (the "All Coast Suit") seeking to recover for property and other economic damages allegedly caused on October 28, 2020, when the adrift D/B THOR purportedly allided with two vessels—L/B STINGRAY and L/B GROUPER—purportedly owned and operated by All Coast, all as more fully described in the All Coast Suit.

12.

In the All Coast Suit, All Coast generally alleges, among other things, that:

The cause of the incident and resulting damages was the negligence of Shore, MARS and Martin [Energy Services LLC], and their employees, officers, agents, and/or servants for whom they are responsible as follows:

1.    failing to properly train or supervise their employees;
2.    failing to provide a competent and adequate crew;
3.    failing to maintain the vessels and their equipment;
4.    failing to institute proper emergency procedures;

- 12 -

5.   failing to heed emergency procedures;
6.   failing to properly moor vessels;
7.   failing to properly maintain docks and bollards;
8.   failing to adequately prepare the vessels for the landfall of Hurricane Zeta;
9.   all other acts of negligence and fault that may be identified during discovery and proven at trial.

All Coast Suit at ¶ XV.

13.

In the All Coast Suit, All Coast further alleges that:

The cause of the incident and resulting damages was also the unseaworthiness of the Thor as the vessel was not reasonably fit for its intended purpose.  As a result of the unseaworthiness of the Thor, All Coast suffered damages for the cost of repairs to the Stingray and the Grouper, and the loss of charter hire and/or loss of use of the Stingray.

All Coast Suit at ¶ XVI.

14.

Additionally, on or about February 17, 2021, Plaintiffs, Harvey Seas, LLC and Harvey Gulf International Marine, LLC (collectively "Harvey Gulf"), filed suit against Petitioners, MES, Crosby Tugs, L.L.C., and Dawn Services, L.L.C. in an action bearing Civil Action No. 21-337 on the docket of this Honorable Court (the "Harvey Gulf Suit") seeking to recover for property and other economic damages allegedly caused on October 28, 2020, when the adrift D/B THOR purportedly allided with the M/V HARVEY SEAS—a vessel owned and operated by Harvey Gulf and purportedly under charter to Anadarko Petroleum Corporation, all as more fully described in the Harvey Gulf Suit.

15.

In the Harvey Gulf Suit, Harvey Gulf generally alleges, among other things, that:

The cause of the breakaway of the D/B THOR and subsequent damages to the M/V HARVEY SEAS was the negligence of Shore and/or MARS, and their employees, crewmembers, officers, agents, and/or servants for whom they are responsible in the following non-exclusive respects:

a.    Failing to secure the D/B THOR properly when Hurricane Zeta was approaching;
b.    Failing to use enough mooring lines;
c.    Failing to use mooring lines of adequate strength;
d.    Failing to have a Hurricane Plan in place and/or implement any such plan properly;
e.    Failure to train and/or supervise the crew of the D/B THOR;
f.    Failing to institute proper emergency procedures;
g.    Failing to heed emergency warnings;
h.    Failing to maintain the vessel;
i.    Violating applicable maritime safety statutes and/or rules; and,
j.    Other acts of negligence as may be identified in discovery.

Harvey Gulf Suit at ¶ 21.

16.

In the Harvey Gulf Suit, Harvey Gulf further alleges that:

Further and in the alternative, the cause of the breakaway of the D/B THOR and subsequent damages to the M/V HARVEY SEAS was the unseaworthiness of the D/B THOR in that the vessel was not reasonably fit for her intended purposes.

Harvey Gulf Suit at ¶ 24.

17.

Additionally, on or about October 1, 2021, Weeks Marine, Inc. ("Weeks") filed an Answer, Claim, and Third-Party Demand in this Limitation Action (No. 21-464) (the "Weeks Suit"), wherein Weeks seeks to recover for property and economic damages allegedly caused on October 28, 2020, when the adrift D/B THOR purportedly allided with

the moored dredge ELLEFSEN—a vessel allegedly owned and operated by Weeks—and several support vessels, all as more fully described in the Weeks Suit.

18.

In the Weeks Suit, Weeks generally alleges, among other things, that:

The negligence of the THOR Interests and their employees, crewmembers, officers, agents, and/or servants for whom they are responsible, jointly and severally, caused the breakaway of the THOR and all subsequent damages by the ELLEFSEN and Weeks Marine, in the following non-exclusive respects:

(a)   Failing to secure the D/B THOR properly when Hurricane Zeta was approaching;
(b)   Failing to use enough mooring lines;
(c)   Failing to use mooring lines of adequate strength;
(d)   Failing to have a hurricane plan in place and/or implement any such plan properly;
(e)   Failure to train and/or supervise the crew of the THOR;
(f)   Failing to institute proper emergency procedures;
(g)   Failing to heed emergency warnings;
(h)   Failing to properly maintain the vessel and her appurtenances and lines;
(i)   Failing to adequately and properly communicate with other vessels in the vicinity before, during, and after the THOR's breakaway;
(j)   Failing to ensure that the THOR and her equipment were free from defect and/or in proper working order;
(k)   The master and crew of the THOR were not competent, properly trained or reasonably fit to operate her;
(l)   Violating applicable maritime safety statutes and/or rules; and
(m)   Other acts of negligence that are identified in discovery and proven at trial.

Weeks Suit at ¶ 41.

19.

In the Weeks Suit, Weeks further alleges that:

The THOR's breakaway, allision, and/or collision, and all damages sustained by the ELLEFSEN and Weeks Marine, were proximately caused

by the unseaworthy condition of the THOR, and the breach of warranty of seaworthiness by the THOR interests, in the following non-exclusive respects:

(a)    Failing to provide a competent and properly trained master and crew;

(b)    Failing to equip the vessel with adequate anchors, anchor lines/chains, and mooring lines to maintain position under the anticipated and prevailing severe weather conditions; and

(c)    All other unseaworthy conditions of the foregoing vessel and breaches of the warranty of seaworthiness by its owner(s) and operator(s) that are identified in discovery and proven at trial.

Weeks Marine reserves the right to amend this paragraph as discovery proceeds.

Weeks Suit at ¶ 42.

20.

Finally, on or about September 29, 2021, Plaintiff, Garber Bros., LLC, filed suit against MES in an action bearing Civil Action No. C-143495 Div. D on the docket of the 17th Judicial District Court for the Parish of Lafourche, State of Louisiana (the "Garber Bros. Suit")[1] seeking to recover for property and other economic damages allegedly caused on October 28, 2020, when the adrift D/B THOR purportedly allided with the M/V SEA CYPRESS—a vessel purportedly owned and operated by Garber Bros.—all as more fully described in the Garber Bros. Suit.

21.

If All Coast, Harvey Gulf, Weeks, Garber Bros., and/or other entities, persons or vessels, including but not limited to those listed in Paragraph 22 of the Complaint, suffered damages as alleged in their respective suits, which is denied, then said losses or

---

[1] MES intends to remove that suit to federal district court.

damages resulted from the primary, active, and direct fault, negligence, and want of due care on the part of Petitioners and/or those for whom Petitioners are responsible including, but not limited to, their negligence in the management and operation of the D/B THOR and in the training and supervision of its crew, and the crew's failure to take proper and correct action required by the ordinary practice of seamen to maintain control of the D/B THOR, and/or the result of the unseaworthiness of the D/B THOR and her appurtenances and equipment, all of which were within the privity and knowledge of Petitioners, without the fault of Martin; and said neglect, fault, want of due care, and unseaworthiness of the D/B THOR and her appurtenances and equipment caused, among other things, the damages and losses alleged to have been suffered by All Coast, Harvey Gulf, Weeks, Garber Bros., and/or other entities, persons or vessels, including but not limited to those listed in Paragraph 22 of the Complaint.

22.

If All Coast, Harvey Gulf, Weeks, Garber Bros., and/or other entities, persons or vessels, including but not limited to those listed in Paragraph 22 of the Complaint, are entitled to recover damages against Martin by reason of the matters and things alleged in their respective suits, which Martin denies, and if Martin is somehow found to be vicariously liable for the actions of Petitioners, which is also denied, then Martin is entitled to indemnity in full, including reasonable attorney's fees, costs, and disbursements of this action from Petitioners.

23.

If All Coast, Harvey Gulf, Weeks, Garber Bros., and/or other entities, persons or vessels, including but not limited to those listed in Paragraph 22 of the Complaint, are entitled to recover damages against Martin by reason of the matters and things alleged in their respective suits, which Martin denies, and if Martin is somehow found concurrently liable with Petitioners, which is also denied, then Martin is entitled to contribution from Petitioners for any and all amounts Martin ultimately pays to All Coast, Harvey Gulf, Weeks, and/or Garber Bros., and/or other entities, persons or vessels, including but not limited to those listed in Paragraph 22 of the Complaint, in excess of its proportionate share of fault.

24.

All and singular the premises are true and within the admiralty or maritime jurisdiction of this Honorable Court.

**WHEREFORE,** Martin Operating Partnership L.P. and Martin Energy Services LLC respectfully pray:

A.    That, after due proceedings are had, judgment should enter in favor of Martin for its claim for damages and losses, with interest and costs, and against Petitioners, without Petitioners having the benefit of the Limitation of Liability Act;

B.    That if Martin is ultimately found to be vicariously liable to All Coast, Harvey Gulf, Weeks, Garber Bros., and/or of the entities, persons or vessels for the actions of Petitioners, which is denied, then Judgment be entered against Petitioners and in favor of Martin for any and all amounts that Martin may ultimately pay to All Coast, Harvey Gulf,

Weeks, Garber Bros., and/or other entities, persons or vessels, with prejudgment interest, costs, disbursements, and reasonable attorney's fees;

C.      That if Martin is ultimately found to be concurrently liable with Petitioners to All Coast, Harvey Gulf, Weeks, Garber Bros., and/or other entities, persons or vessels, which is denied, then Judgment be entered against Petitioners and in favor of Martin for any and all amounts that Martin may ultimately pay to All Coast, Harvey Gulf, Weeks, Garber Bros., and/or other entities, persons or vessels, in excess of Martin's proportionate share of fault, with prejudgment interest and costs; and

D.      That Martin may have such other and further relief as this Court and justice may deem just and reasonable in the premises.

Respectfully submitted:

**DAIGLE FISSE & KESSENICH, PLC**

/s/ Michael W. McMahon
MICHAEL W. MCMAHON, T.A. (#23987)
KIRK N. AURANDT (#25336)
RYAN M. BOURGEOIS (#29098)
P. O. Box 5350
Covington, Louisiana  70434-5350
Telephone:  (985) 871-0800
Facsimile:    (985) 871-0899
Email: mmcmahon@daiglefisse.com
Email: kaurandt@daiglefisse.com
Email: rbourgeois@daiglefisse.com
***Attorneys for Martin Operating Partnership L.P. and Martin Energy Services LLC***

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the above and foregoing pleading has been served on all counsel of record in these proceedings via the Court's electronic notification system, this 28th day of October 2021.

/s/ Michael W. McMahon
MICHAEL W. MCMAHON