UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT LOUISIANA

| | | |
|---|---|---|
| ALL COAST, LLC | § § § § | CIVIL ACTION NO. 21-258 c/w 21-337, 21-464, 21-822, 21-1968, 21-1969, 21-1981, 21-1982, 21-2075 |
| v. | § § § | JUDGE ZAINEY |
| SHORE OFFSHORE SERVICES, LLC | § § § | MAGISTRATE ROBY |
| | § | Applies to 21-822 and 21-464 |

**PREMIER OFFSHORE CATERING, INC.'S MEMORANDUM IN SUPPORT OF ITS
<u>MOTION FOR SUMMARY JUDGMENT</u>**

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

COMES NOW Defendant, Premier Offshore Catering, Inc. ("Premier"), and files this Memorandum in Support of its Motion for Summary Judgment under Rule 56 of the Federal Rules of Civil Procedure, seeking dismissal of all of Patrick Burnett's claims against Premier in this matter.

Patrick Burnett does not qualify as a seaman under the Jones Act. For the reasons set forth below and herein, Premier requests that this Court enter summary judgment in its favor and against Claimant Patrick Burnett on all causes of action and for all relief sought, as no genuine issue of fact exists, and judgment as a matter of law is appropriate.

**TABLE OF CONTENTS**

| | | | |
|---|---|---|---|
| I. | NATURE OF THE PROCEEDINGS | | 3 |
| II. | STATEMENT OF THE ISSUES | | 4 |
| III. | SUMMARY OF THE ARGUMENT | | 4 |
| IV. | SUMMARY JUDGMENT EVIDENCE | | 5 |
| V. | STATEMENT OF FACTS | | 5 |
| VI. | APPLICABLE LAW | | 7 |
| | A. | Applicable to Granting Summary Judgment | 7 |
| | B. | Applicable as a Common Element of Burnett's Claims | 9 |
| VII. | ARGUMENT AND AUTHORITIES | | 9 |
| | A. | Requirements for Seaman Status | 11 |
| | B. | Burnett is not a seaman as that term is defined under the General Maritime Law, as he was not permanently assigned to a particular vessel or a group of vessels under common ownership or control. | 13 |
| | C. | Because he is not a seaman and Premier did not own or operate the D/B THOR, Burnett has no cause of action against Premier under the General Maritime Law doctrines of seaworthiness or maintenance and cure. | 15 |
| | D. | Burnett's claims for exemplary damages are improper and should be dismissed. | 16 |
| VIII. | CONCLUSION AND PRAYER | | 17 |

## I. NATURE OF THE PROCEEDINGS

Patrick Burnett ("Burnett") originally filed suit in Harris County, Texas on November 16, 2020, against Premier, Shore Offshore Services, LLC, Fieldwood Energy, LLC, Fieldwood Offshore Energy, Inc., and Fieldwood Energy Offshore, LLC. On November 24, 2020, Fieldwood Energy, LLC and Fieldwood Energy Offshore, LLC removed this case to the Southern District of Texas with the consent of Shore Offshore Services, LLC.[1]

On March 4, 2021, Shore Offshore Services, LLC ("Shore") and Modern American Railroad Services, L.L.C. ("MARS") (collectively "Shore") filed a Verified Complaint for Exoneration and/or Limitation of Liability in federal court in the Eastern District of Louisiana in a matter entitled "*In the Matter of Modern American Railroad Services, LLC, as Owner, and Shore Offshore Services, LLC, as Bareboat Charterer and Owner Pro Hac Vice of D/B THOR Petitioning for Exoneration from and/or Limitation of Liability*", bearing Civil Action No. 2:21-cv-00464-JCZ-KWR. On March 9, 2021, United States District Judge Jay C. Zainey issued an order enjoining all claims against Shore and MARS. This Order was filed in Civil Action No. 4:20-CV-4009 on March 10, 2021 by Shore. On July 27, 2021, United States District Judge George C. Hanks issued an Order staying all proceedings in Civil Action No. 4:20-CV-4009.

On March 9, 2021, Judge Zainey transferred and consolidated Civil Action No. 2:21-cv-00464-JCZ-KWR with Civil Action Nos. 21-0258 and 21-0337, the instant litigation. Premier filed its answer to Shore's limitation complaint and claim on October 18, 2021 and filed a claim against Shore, seeking contribution and indemnity in relation to Burnett's claims against Premier.[2]

On October 26, 2021, Burnett filed his answer and claim to Shore's limitation, alleging

---

[1] *See Burnett, et al. v. Shore Offshore Services, LLC, et al.*, Civil Action No. 4:20-CV-4009, in the United States District Court for the Southern District of Texas, Houston Division.
[2] Rec. Doc. No. 31.

3

4612767-1

that he is a Jones Act seaman and seeking maintenance and cure, among other damages, including exemplary damages for gross negligence.[3] Burnett further alleged that the D/B THOR was unseaworthy. Subsequently, on December 23, 2021, Shore tendered Burnett's purported Jones Act claim directly to Premier under Federal Rule of Civil Procedure 14(c).[4] Therefore, on January 12, 2022, Premier filed an answer to the claim of Burnett, specifically denying that he is a Jones Act seaman.[5]

Premier now seeks summary judgment on the issue of Burnett's Jones Act seaman status and, by extension, his unseaworthiness and gross negligence claims.

## II.    STATEMENT OF THE ISSUES

Whether or not Burnett is a Jones Act seaman.

## III.    SUMMARY OF THE ARGUMENT

Premier is entitled to final summary judgment on each of Burnett's causes of action for a single reason. The common and necessary prerequisite for, and an essential element of, each cause of action he has pled is the requirement that he must be a "seaman." As a matter of federal substantive maritime law, Burnett is not a seaman. Consequently, he has no tort remedy against Premier.

At the time of the October 28, 2020 incident, Burnett was a contract catering worker for Premier, performing services aboard the D/B THOR, a vessel owned or operated by Shore. The D/B THOR was working for Fieldwood Energy LLC ("Fieldwood") to remove an offshore platform. By the nature of this work and his assignments, Burnett did not have a connection to any

---

[3] Rec. Doc. No. 45.
[4] Rec. Doc. No. 148.
[5] Rec. Doc. No. 169.

vessel or identifiable fleet of vessels that was substantial in terms of its duration or its nature as required under the controlling law to support status as a seaman.

Further, Premier is not the owner or operator of the D/B THOR, and therefore any claims for unseaworthiness are misplaced. Finally, claims for gross negligence and resulting exemplary damages are improper based on the claims pled and allegations made, as such damages are very limited under the General Maritime Law and not available here. Burnett's claims against Premier should be dismissed.

## IV. SUMMARY JUDGMENT EVIDENCE

This final summary judgment motion contains exhibits that constitute Premier's summary judgment evidence. The exhibits are attached hereto and are hereby incorporated by reference as if fully set forth in this motion. For the convenience of the Court and the Parties, the exhibits contained herein are listed as follows:

**EXHIBIT A:** Affidavit of Brennan Duthu with attachment A-1.

## V. STATEMENT OF FACTS

Burnett's claim arises out of an incident involving the D/B THOR. On October 28, 2020, in anticipation of Hurricane Zeta, the D/B THOR was moved from the Outer Continental Shelf offshore the Louisiana coast and moored inland at a dock located in Port Fourchon, Louisiana. Burnett, along with others, was onboard, working as galley crew members.[6] As the hurricane moved through the area, the D/B THOR broke free from its moorings and allegedly struck various vessels, structures or other objects as it was adrift in heavy winds and current.[7] Burnett claims he

---

[6] *See* Rec. Doc. No. 45.
[7] *Id.*

remained onboard the D/B THOR while it was tied up unsafely in the path of Hurricane Zeta and that he was injured as a result.[8]

Burnett was originally hired by Premier on June 7, 2016, and terminated on July 27, 2017.[9] He was rehired on July 11, 2018, and has worked off and on for Premier through the date of the incident.[10] Burnett's work history with Premier reveals that he worked on various vessels owned by different companies and none owned by Premier.[11] Burnett has worked approximately 9,658 hours for Premier during his off and on employment since 2016 to the present.[12] He worked 8,966 hours on various vessels owned by various entities, and he worked 692 hours on fixed platforms.[13] He worked 746 hours on the M/V PACIFIC, which is owned or operated by Shore.[14] He also worked 1,444 hours on the D/B THOR, also owned or operated by Shore.[15] He also worked 438 hours on the D/B PERFORMANCE, also owned or operated by Shore.[16]

Therefore, Burnett worked a total of 2,628 hours or 27.21% of his total employment time with Premier aboard three vessels owned or operated by Shore.[17] He worked the other 7,030 hours on various fixed platforms or various vessels owned by different entities; however, none of his time on other vessels was greater than the time he worked on the three Shore vessels.[18] Burnett was utilized for pop-up boat jobs mostly.[19] These jobs are notoriously spotty for a number of reasons like weather and equipment availability.[20] When Burnett was assigned to offshore rigs or

---

[8] *Id.*
[9] *See* Exhibit A, at ¶ 3.
[10] *Id.*
[11] *See* Exhibit A-1.
[12] *See* Exhibit A, at ¶ 5.
[13] *Id.*
[14] *Id.*
[15] *Id.*
[16] *Id.*
[17] *Id.*
[18] *See* Exhibit A-1.
[19] *See* Exhibit A, at ¶ 6.
[20] *Id.*

platforms, it was typically in relief of someone else on the regular rotation.[21] Moreover, a good portion of Premier's business is with various types of offshore vessels, which typically work from March to November.[22] Burnett also works event catering as a side job in between periods of working for Premier.[23] In short, Burnett was basically called upon as needed,[24] which explains the gaps in his work history.

Burnett was a contractor, and when he completed a job and was not assigned to work on another job, he enjoyed no ongoing work-related benefits, nor could he file for unemployment benefits during prolonged periods without work. He was free to work for any other company and understood he might never be called back to a job by Premier if there was insufficient work, especially given the consistent ups and downs in the oil industry and economy.[25]

## VI. APPLICABLE LAW

### A. Applicable to Granting Summary Judgment

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. PRO. 56(c). The movant bears the initial burden of demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Williams v. Adams*, 836 F.2d 958, 960 (5th Cir. 1988). The movant, however, need not negate the elements of the nonmovant's case. *Wallace v. Texas Tech Univ.*, 80 F. 3d 1042, 1047 (5th Cir. 1996) (citing *Little v. Liquid Air Corp.*, 37 F. 3d

---

[21] *Id.*
[22] *Id.*
[23] *Id.*
[24] *Id.*
[25] *Id.* at ¶ 7.

1069, 1075 (5th Cir. 1994)). Where the movant demonstrates the absence of a genuine issue of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Willis v. Roche Biomedical Laboratories, Inc.*, 61 F. 3d 313, 315 (5th Cir. 1995). "A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.

To oppose the motion for summary judgment, the nonmovant cannot rest on mere allegations or denials but must set forth with particularity specific facts tending to show the existence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 322-23; *Anderson*, 477 U.S. at 257; *Wallace*, 80 F.3d at 1047; *Little*, 37 F. 3d at 1075. "[C]onclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden." *Douglass v. United Servs. Auto. Ass'n*, 79 F. 3d 1415, 1429 (5th Cir. 1996) (citing *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.), *cert. denied*, 513 U.S. 871 (1994)); *see also Wallace*, 80 F. 3d at 1047. The burden of demonstrating a genuine issue of material fact is not met by "metaphysical doubt" or "unsubstantiated assertions." *Little*, 37 F. 3d at 1075 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574 (1986)).

The Court must "resolve factual controversies in favor of the nonmoving party, but only where there is an actual controversy, that is, when both parties have submitted evidence of contrary facts." *Id.* The Court must not, "in the absence of proof, assume that the nonmoving party could or would prove the necessary facts." *Id.* Further, "the mere existence of some factual dispute will not defeat a motion for summary judgment; Rule 56 requires that the fact dispute be genuine and material." *Willis*, 61 F. 3d at 315. Only disputes over facts that might affect the outcome of the suit under the governing law will preclude summary judgment. *Id.*

Finally, summary judgment is compelled where the nonmovant fails to make a showing sufficient to establish the existence of an element essential to his case on which he bears the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 322. "In such situations, there can be 'no genuine issue as to any material fact since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.'" *Id.* at 322-23.

**B.    Applicable as a Common Element of Burnett's Claims**

The fundamental feature of maritime personal injury law is the concept of status. Only those who satisfy the prerequisites to qualify as a member of a clearly-defined claimant class, i.e., seamen, may pursue the unique rights and remedies available under maritime law, and then only against an equally well-defined defendant class, *i.e.*, the seaman's Jones Act employer.

Maritime workers who do not qualify for "seaman status" have no Jones Act remedy. *See Harbor Tug & Barge Co. v Papai*, 520 U.S. 548, 553 (1997) (citing *Chandris, Inc. v. Latsis*, 515 U.S. 347, 355-56 (1995)); *Becker v. Tidewater, Inc.*, 335 F.3d 376, 386 (5th Cir. 2003). Likewise, the warranty of seaworthiness is owed only to those who qualify for seaman status under the Jones Act. *See, e.g., Griffin. v. LeCompte*, 471 So. 2d 1382, 1385 (La. 1985) ("Recovery under the general maritime law for unseaworthiness requires either crew member status or an injury aboard ship while doing a seaman's work."). A non-seaman does not have a claim for maintenance and cure. *See Hall v. Diamond M Co.*, 732 F.2d 1246, 1248 (5th Cir. 1984) ("Only seamen are entitled to the benefits of maintenance and cure [and] [t]he standard for determining seaman status for purposes of maintenance and cure is the same as that established for determining status under the Jones Act").

**VII.    ARGUMENT AND AUTHORITIES**

Burnett was a contract galley crew worker for Premier, working various assignments from

9

4612767-1

June 7, 2016 for thirteen months and then again from July 11, 2018 to the date of the incident.[26] Premier did not own or operate any of the vessels or other offshore structures he worked on,[27] and by the same token, Burnett's duties never included assisting in the navigation or operation of vessels as a crewman in any capacity. Burnett was a contractor, and when he completed a job and was not assigned to work on another job, he enjoyed no ongoing work-related benefits, could not file for unemployment benefits during prolonged periods without work, was free to work for any other company, and understood he might never be called back to a job by Premier if there was insufficient work, especially given the consistent ups and downs in the oil industry and economy.[28] This is all undisputed.

Burnett's ability to pursue his pleaded claims under the Jones Act and the General Maritime Law against Premier depends entirely on his ability to satisfy the requirements for seaman status. His claim of seaman status must fail as a matter of law, however, due to the nature and duration of his employment with Premier and the lack of vessel status of the facilities on which he worked.

Because the term "seaman" is not defined in the language of the Jones Act statute, over the years the federal courts have established the requirements for seaman status in fulfilling their role of formulating and developing the General Maritime Law. *See, e.g., McDermott Int'l, Inc. v. Wilander*, 498 U.S. 337, 356 (1991) (holding that "seaman" is a statutory term and its interpretation is a question of law). Determining whether a given plaintiff is a seaman is a mixed question of law and fact, and is usually a jury question. *See Harbor Tug & Barge Co.*, 520 U.S. at 554. Summary judgment as to seaman status is mandated where the facts and the law, as in this case, will

---

[26] *Id.* at ¶ 3 and Exhibit A-1.
[27] *See* Exhibit A-1.
[28] *See* Exhibit A, at ¶ 7.

4612767-1

reasonably support only one conclusion. *Id*.; *see also Becker*, 335 F.3d at 386; *Williams v. Weber Mgmt. Servs*, 839 F.2d 1039, 1040 (5th Cir. 1987).

A.     **Requirements for Seaman Status**

In *Chandris, Inc. v. Latsis*, the United States Supreme Court established a two-pronged test for seaman status. For seaman status to attach, (i) a plaintiff's duties must have contributed to the function of a vessel or to the accomplishment of its mission, and (ii) the plaintiff must have had a connection to the function of the vessel or to an identifiable group of vessels under common ownership that was substantial in both its duration and its nature. 515 U.S. at 368 (1995); *see also Harbor Tug & Barge Co.*, 520 U.S. at 554. In addition, the *Chandris* Court adopted the Fifth Circuit's rule of thumb for ordinary cases that a worker who spends less than approximately 30 percent of his time in the service of a vessel or an identifiable fleet of vessels in navigation should not qualify as a seaman under the Jones Act. *Id.*; *see also Alexander v. Express Energy Servs. Operating, L.P.*, 784 F.3d 1032, 1035 (5th Cir. 2015).

As the Supreme Court observed, the first prong of the test for seaman status is very broad and provides the opportunity for all who work at sea in the service of a ship to be "*eligible* for seaman status." *See Chandris*, 520 U.S. at 368 (emphasis in original) (quoting *Wilander*, 498 U.S. at 354). The second prong of the seaman status test is a conjunctive test, which requires a plaintiff to demonstrate an employment-related connection to a vessel or identifiable fleet of vessels that is substantial in terms of both duration (the temporal prong) and nature (the functional prong). *Id.* at 376; *see also Roberts v. Cardinal Servs., Inc.*, 266 F.3d 368, 374 (5th Cir. 2001).

The Supreme Court in *Chandris* indicated that satisfying the first prong of the test is relatively easy, and Burnett need only show that he does the ship's work in order to do so. The Court held that the first prong encompasses "all who work at sea in the service of a ship." 520

11

U.S. at 368. The second prong, however, is less broad. In order to satisfy it, Burnett must demonstrate that he has a connection to a vessel in navigation that is substantial both in duration and nature. It is important to note that this second prong constitutes a "status-based" standard, i.e. "it is not the employee's particular job that is determinative (of seaman status), but the employee's connection to a vessel." *Becker,* 335 F.3d at 388 (citing *Chandris,* 515 U.S. at 364). This standard acknowledges that its application will cause "(s)ome workers who unmistakably confront the perils of the sea, often in extreme form, (to be) left out of the seamen's protections." *Chandris,* 515 U.S. at 361-62 (citing *Easley v. Southern Shipbuilding Corp.,* 965 F. 2d 1, 4-5 (5th Cir. 1992)).

For example, the Supreme Court in *Harbor Tug & Barge Co.* found that a worker who spent 70% of his time as a deckhand, an occupation which by definition is performed in large part on the deck of vessels, was not a Jones Act seaman because he lacked a sufficient connection to a single vessel or fleet of vessels under common ownership or control. 520 U.S. at 560. Furthermore, the Fifth Circuit held in *Bach v. Trident Steamship Company, Inc.,* 920 F.2d 322 (5th Cir. 1991), *affirmed on remand* 947 F.2d 1290 (5th Cir. 1991), that a compulsory river pilot, who by definition could only perform his job aboard vessels, was not a Jones Act seaman because he performed only "transitory work" aboard the vessels he piloted, meaning he lacked a sufficient connection to a single vessel or identifiable fleet of vessels acting "together or under one control." The Fifth Circuit reached a similar conclusion in *White v. Valley Line Company,* 736 F.2d 304 (5th Cir. 1984). There, the Court held that a fleetman at a barge facility who spent a majority of his working time aboard vessels was still considered a shore-based worker because he was not permanently assigned to a particular vessel or a group of vessels under common ownership or control. This was true despite the fact that the fleetman's assignment could be aboard any one of

the 140 vessels passing through the facility on any given day, and the fact that his employment revolved almost exclusively around service to those vessels.

**B.  Burnett is not a seaman as that term is defined under the General Maritime Law, as he was not permanently assigned to a particular vessel or a group of vessels under common ownership or control.**

Burnett cannot, as a matter of law, satisfy the requirements of the second prong of the seaman status analysis.[29] He did not have a connection to any vessel or identifiable fleet of vessels that was substantial in terms of its duration or its nature as requirement under *Chandris*.

To constitute a "fleet," vessels must be acting together or under common control. *New v. Associated Painting Services, Inc.,* 863 F.2d 1205, 1208 (5th Cir. 1989) (quoting *Barrett v. Chevron U.S.A., Inc.,* 781 F.2d 1067 (5th Cir. 1986)). A fleet is *not* any group of vessels on which an employee happens to work. *Id.* The court in *New* refused to find the plaintiff worked on a "fleet" because the different vessels, rigs, and land-based facilities he worked on over the course of 11 months were owned by eight separate entities, none owned or leased by his employer. *Id.* The Fifth Circuit also held the plaintiff in *Langston v. Schlumberger Offshore Services, Inc.* did not work on a fleet of vessels and, thus, was not a seaman. 809 F. 2d 1192 (5th Cir. 1987). Langston, a wireline operator, worked on 25 different wireline jobs, 18 of which were on vessels. *Id.* at 1194. The 18 jobs on vessels involved 15 customers and 10 vessels. *Id.* The court, applying the *Barrett* court's definition of "fleet," found the vessels did not qualify as a fleet because they were not commonly controlled or otherwise connected. *Id.*

Burnett was utilized for pop-up boat jobs mostly.[30] These jobs are notoriously spotty for a

---

[29] Premier does not dispute that Burnett satisfies the first prong of the seaman status analysis: that his duties contributed to the function of a vessel or to the accomplishment of its mission.
[30] *See* Exhibit A, at ¶ 6.

number of reasons like weather and equipment availability.[31] When Burnett was assigned to offshore rigs or fixed platforms, it was typically in relief of someone else on the regular rotation.[32] Moreover, a good portion of Premier's business is with various types of offshore vessels, which typically work from March to November.[33] Burnett also works event catering as a side job in between periods of working for Premier.[34] In short, Burnett was basically called upon as needed,[35] which explains the gaps in his work history.[36]

It is undisputed that Burnett was a contractor and when he completed a job and was not assigned to work on another job, he enjoyed no ongoing work-related benefits, could file for unemployment benefits during prolonged periods without work, was free to work for any other company, and understood he might never be called back to a job by Premier if there was insufficient work, especially given the consistent ups and downs in the oil industry and economy.[37]

Burnett was deployed to platforms or vessels of varying nature by Premier, none of which were owned, operated or controlled by Premier.[38] Burnett has worked approximately 9,658 hours for Premier during his off and on employment since 2016 to the present.[39] He worked 8,966 hours on various vessels owned by various entities, and he worked 692 hours on fixed platforms.[40] He worked 746 hours on the M/V PACIFIC, 1,444 hours on the D/B THOR, and 438 hours on the D/B PERFORMANCE, all owned or operated by Shore.[41] In sum, Burnett worked a total of 2,628

---

[31] *Id.*
[32] *Id.*
[33] *Id.*
[34] *Id.*
[35] *Id.*
[36] *See* Exhibit A-1.
[37] *See* Exhibit A, at ¶ 7.
[38] *See* Exhibit A-1.
[39] *See* Exhibit A, at ¶ 5.
[40] *Id.*
[41] *Id.*

hours or 27.21% of his total employment time with Premier aboard three vessels owned or operated by Shore.[42] Therefore, he falls short of the 30% rule adopted by the Supreme Court. *See, e.g., Alexander*, 784 F.3d at 1035.

He worked the other 7,030 hours on various fixed platforms or vessels owned by various entities; however, none of his time on other vessels was greater than the time he worked on the three Shore-related vessels.[43] In total, Burnett worked on 26 different vessels/platforms owned by 21 different entities.[44] He clearly was not assigned to a vessel or fleet with common ownership or control necessary to meet the seaman status test.

Consequently, this Court should dismiss Burnett's claims against Premier.

C. **Because he is not a seaman and Premier did not own or operate the D/B THOR, Burnett has no cause of action against Premier under the General Maritime Law doctrines of seaworthiness or maintenance and cure.**

The General Maritime Law warranty of seaworthiness is owed only to seamen by the owner of a vessel. *See Palmer v. Fayard Moving & Transp. Corp.*, 930 F.2d 437, 440-41 (5th Cir. 1991); *Willis*, 625 S.W.2d at 74 ("There is no other basis for recovery under an unseaworthiness claim than as a seaman"). Under the General Maritime Law, a *vessel owner* has a duty to provide a seaworthy vessel to crew members. *Florida Fuels v. Citgo Petroleum Corp.,* 6 F.3d 330, 332 (5th Cir. 1993) (quoting *Brister v. A.W.I. Inc.,* 946 F.2d 350, 355 (5th Cir. 1991) (emphasis added). This duty is irrespective of fault or the use of due care. *Id.* Likewise, only those who are seamen can recover under the General Maritime Law doctrine of maintenance and cure. *See Hall v. Diamond M Co.*, 732 F.2d 1246, 1248 (5th Cir. 1984); *Willis*, 625 S.W.2d at 74 ("With regard to appellant's claim for maintenance and cure, this remedy covers only seamen.").

---

[42] *Id.*
[43] *See* Exhibit A-1.
[44] *Id.*

As demonstrated above, Burnett cannot meet the requirements for seaman status. Therefore, as to his causes of action for unseaworthiness of the D/B THOR, undisputedly a vessel not under Premier's ownership or control, or for maintenance and cure, those causes of action are also unavailable to him, and Premier is entitled to judgment as a matter of law on them. In addition, the claim for unseaworthiness must fail as Premier did not own or operate the D/B THOR.

**D.    Burnett's claims for exemplary damages are improper and should be dismissed.**

Even assuming arguendo Burnett is a seaman, claims for gross negligence are not actionable and related exemplary/punitive damages are not recoverable by seamen outside the limited context of maintenance and cure. When Congress passed the Merchant Marine Act of 1920 (also known as the Jones Act), it established a statutory basis for seamen or their survivors to bring negligence claims against their employer for negligently inflicted personal injuries or death. *See* 46 U.S.C. § 30104.

As the Supreme Court noted in *Miles v. Apex Marine Corp.*, at the time the Jones Act was enacted, it was commonly understood that the Federal Employers' Liability Act (FELA), 45 U.S.C. § 51 *et seq.*, on which the Jones Act is based, permitted recovery of only pecuniary damages.[45] 498 U.S. 19, 27 (1990). The Supreme Court concluded that, by "[i]ncorporating FELA unaltered into the Jones Act, *Congress must have intended to incorporate the pecuniary limitation on damages as well*." *Id*. (emphasis added). Against this background, the United States Supreme Court recently noted with approval that "the Federal Courts of Appeals have uniformly held that punitive damages are not available under the Jones Act," nor are they available for unseaworthiness of a vessel to the extent same are requested. *See The Dutra Group v. Batterton*,

---

[45] Pecuniary damages are awards designed to restore "material loss which is susceptible of pecuniary valuation." *See Michigan Central R. Co. v. Vreeland*, 227 U.S. 59, 71 (1913). Punitive damages do not compensate for a loss, but are imposed to punish and deter by virtue of the gravity of the offense. *See Molozf v. United States*, 502 U.S. 301 (1992).

16

4612767-1

139 S.Ct. 2275, 2285 (2019); *see e.g.*, *McBride v. Estis Well Service, Inc.*, 768 F.3d 382, 384 (5th Cir. 2014) (*en banc*) ("...the Jones Act limits a seaman's recovery to pecuniary losses where liability is predicated on the Jones Act or unseaworthiness. Because punitive damages are non-pecuniary losses, punitive damages may not be recovered in this case.").

Further, because Premier did not own the D/B THOR and the unseaworthiness claim against it must fail, so should any claim for punitive damages in that regard, to the extent sought. Accordingly, all claims for punitive/exemplary damages asserted by Burnett must be dismissed.

## VIII.   CONCLUSION AND PRAYER

The evidence, pleadings, discovery, and the controlling case law all show that no genuine issue of material fact exists as to Burnett's pleaded causes of action. Seaman status is a common and necessary prerequisite and an essential element as to each cause of action asserted by Burnett against Premier: Jones Act negligence; unseaworthiness under the General Maritime Law; and, maintenance and cure under the General Maritime Law, and based on the undisputed facts developed, Burnett is not a seaman. Further, because Premier did not own or operate the D/B THOR, it cannot be liable for any alleged unseaworthiness or related exemplary damages, nor are the claims for gross negligence and related exemplary damages proper under the General Maritime Law. Punitive damages are not available as plead in Burnett's claim.

Where no genuine issue of material fact exists as to one or more of the essential elements of a plaintiff's causes of action, summary judgment is mandated. Because Burnett cannot satisfy the test for Jones Act seaman status, he cannot recover on any cause of action he has asserted against Premier. Summary judgment is, therefore, mandated, and Burnett's claims against Premier should be dismissed with prejudice.

WHEREFORE, PREMISES CONSIDERED, Premier Offshore Catering, Inc. respectfully prays that the Court enter Summary Judgment in its favor whereby Patrick Burnett takes nothing from it by way of his Jones Act negligence claim, claim for unseaworthiness, and claim for maintenance and cure under the General Maritime Law, and that these and all other claims asserted by Patrick Burnett against Premier Offshore Catering, Inc., including those for exemplary/punitive damages, be dismissed. Premier Offshore Catering, Inc. prays further that all costs of court be taxed against Patrick Burnett, and for such additional and further relief, at law, in equity or in admiralty, general or special, to which it may show itself to be justly entitled.

Respectfully submitted:

**CHAFFE McCALL, L.L.P.**

    */s/ John M. Ribarits*
John M. Ribarits (17114), T.A.
Attorney-in-charge
801 Travis St., Ste. 1910
Houston, Texas 77002
Telephone: 713-546-9800
Facsimile: 713-546-9806
Email: john.ribarits@chaffe.com

**ATTORNEY FOR PREMIER OFFSHORE CATERING, INC.**

OF COUNSEL:

**CHAFFE McCALL, L.L.P.**
Heather S. von Sternberg
Admitted pro hac vice
801 Travis Street, Suite 1910
Houston, Texas 77002
Telephone: 713-546-9800
Facsimile: 713-546-9806
Email: heather.vonsternberg@chaffe.com

and

4612767-1

Jesse G. Frank (38220)
2300 Energy Centre
1100 Poydras Street
New Orleans, Louisiana 70163
Telephone: 504-585-7000
Email: jesse.frank@chaffe.com

**ATTORNEYS FOR**
**PREMIER OFFSHORE CATERING, INC.**

## CERTIFICATE OF SERVICE

    I HEREBY CERTIFY and affirm that on the 6th day of July, 2022, I electronically filed the foregoing instrument with the Clerk of the United States District Court using CM/ECF system which would then electronically notify the CM/ECF participants in this case.

                                                              /s/John M. Ribarits
                                                           JOHN M. RIBARITS

4612767-1