**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| ALL COAST, LLC | CIVIL ACTION NO: 21-258 |
|---|---|
| | c/w 21-337, 21-464, 21-822, 21-1968, 21- |
| **VERSUS** | 1969, 21-1982, 21-1981, 21-2075, 21-2227 |
| | |
| **SHORE OFFSHORE SERVICES, LLC** | SECTION "A" |
| | HON. JAY C. ZAINEY |
| | |
| | MAGISTRATE: (4) |
| | HON. KAREN WELLS ROBY |
| | |
| | APPLIES TO ALL CASES |

**PREMIER OFFSHORE CATERING, INC., MODERN AMERICAN RAILROAD SERVICES, L.L.C., AND SHORE OFFSHORE SERVICES, LLC'S MEMORANDUM IN SUPPORT OF THEIR MOTION FOR SANCTIONS TO EXCLUDE EVIDENCE FOR PATRICK BURNETT'S SPOLIATION OF EVIDENCE AND DISREGARD OF THIS COURT'S ORDER (REC. DOC. 377)**

**MAY IT PLEASE THE COURT:**

Limitation-Petitioners, Modern American Railroad Services, L.L.C. ("MARS") and Shore Offshore Services, LLC ("Shore") (hereinafter collectively, the "THOR Interests"), and Claimant/Third-Party Defendant/Rule 14(c) Defendant, Premier Offshore Catering, Inc. ("Premier"), move this Honorable Court to sanction Patrick Burnett ("Burnett") for spoliating evidence by excluding him from offering evidence at trial of his alleged back injury.

This motion is necessitated by a remarkable situation: after refusing to submit to a routine independent medical examination ("IME") and then being compelled by this Court to do so (Rec. Doc. 377), Burnett underwent a near-unprecedented five-level lumbar surgery without notifying the movants of the surgery date or otherwise following the instructions from this Court's Order. Burnett's bad faith is palpable. Indeed, on the day this Court issued its Order compelling the IME, counsel for Premier proactively alerted Burnett's counsel of the Order compelling the IME to again press for the IME and be immediately advised of any pending invasive surgeries, all as cited in

further detail below. Repeated written requests were made; but with astounding disregard for this Court's Order and the routine practice of scheduling an IME, Burnett underwent a five-level lumbar surgery four days after this Court ordered the IME and despite the movants' many requests to be notified immediately of any pending invasive surgery. As a result, the law requires profound consequences for Burnett (and potentially his counsel) for their intentional bad faith destruction of evidence and disregard of this Court's Order.

Incredibly, Burnett and his attorneys have still not disclosed records of the five-level lumbar surgery having been undergone. Rather, the movants only learned that Burnett had undergone this particular surgery after Burnett underwent an IME pursuant to this Court's Order and received medical records via subpoena directly from Burnett's treating physician, Dr. Henry Small. Dr. Small performed the five-level lumbar surgery on Burnett on September 6, 2022, **after** this Court's September 2, 2022, Order compelling him to appear for an IME. In compelling the IME, this Court ordered that Burnett undergo an IME focusing on his alleged neck, back, left knee, and right knee injuries and treatment (Rec. Doc. 377, p. 14). This Court set forth in its ruling that, "[a]s to the timing of the IME, courts have required that an IME must occur prior to surgery to avoid spoliation of evidence." *Id.* at 11. This Court further noted that, "since Claimants [Burnett and co-plaintiff, Lewis Andrews] have already undergone surgeries altering their physical conditions, it is important that this evidence is not further exploited." *Id.*

Burnett disregarded this Order (Rec. Doc. 377) and underwent surgery four days after, on September 6, 2022, without notice to anyone. To make matters worse, Burnett, an apparent regular smoker, developed complications necessitating two additional corrective surgeries in the weeks that followed. And, months prior to his lumbar surgery, Burnett also underwent weight loss surgery

(recommended by Dr. Small to be performed before any back surgery), without affording the movants an opportunity to conduct an IME, despite their requests.

Burnett's egregious conduct has unfairly and unduly prejudiced Premier and the THOR Interests in defending against Burnett's claims related to his back. These circumstances require exclusion of Burnett's alleged back injury from evidence, not only to adequately remedy the prejudice to Premier and the THOR Interests but also to deter such acts in the future.

## I. FACTUAL BACKGROUND

**A.     INCIDENT AND CONSOLIDATED LIMITATION ACTIONS**

Burnett's alleged injuries arise out of a maritime incident occurring on the afternoon of October 28, 2020, as the eye of Hurricane Zeta approached Port Fourchon, Louisiana. Burnett was employed by Premier as a catering hand aboard the D/B THOR, a large derrick barge owned and operated by the THOR Interests. The D/B THOR had sought safe harbor from the hurricane days before and was tied to the Martin Energy Services Dock No. 16 with its assist tug, the M/V CROSBY ENDEAVOR, which was operated by Crosby Tugs, LLC ("Crosby"), coupled alongside. In the fast-moving storm surge from the Category 3 hurricane, the D/B THOR and her assist tug broke away from the dock and allegedly came into contact with certain vessels and other property in and along the Bayou Lafourche channel (the "Incident").

The THOR Interests filed their Limitation Action on March 4, 2021 (Rec. Doc. 1 – Civ. No. 2:21-cv-00464); and Crosby filed its Limitation Action on April 26, 2021 (Rec. Doc. 1 – Civ. No. 2:21-cv-00822), with both cases consolidated before this Court (Rec. Doc. 5; Rec. Doc. 8). Burnett filed claims in both. Specifically, on October 26, 2022, he filed claims for injuries and damages before the jurisdiction of this Court, alleging that he sustained serious personal injuries

to his back.[1] In connection with these claims, Burnett's employer, Premier, filed a claim in both Limitation Actions[2]; the THOR Interests filed a counterclaim against Premier for contribution and indemnity, as well as Rule 14(c) impleader claims and Third-Party demands against Premier.[3]

## B.   TIMELINE OF RELEVANT FACTS

Suit was first filed by Burnett (alongside his co-plaintiff, Lewis Andrews – another Premier catering hand) on November 16, 2020, in Harris County, Texas state court against Shore, Premier, and three Fieldwood entities, claiming damages as a purported Jones Act seaman for alleged injuries as a result of the Incident.[4] On November 24, 2020, Burnett's Texas state court action was removed to the United States District Court for the Southern District of Texas, bearing Civil Action No. 4:20-cv-04009 (the "SDTX Case"), which action has since been stayed. After Burnett initiated litigation and his claim was removed to federal court, but before he filed a claim in each of the Limitation Actions on October 26, 2021,[5] the following occurred:

- On December 3, 2020, Burnett's treating orthopedic surgeon, Dr. Small, recommended Burnett undergo weight loss surgery in advance of a lumbar laminectomy and fusion surgery.[6] Information regarding this recommended surgery was first provided to the movants in February 2022.

- Between December 4 – 14, 2020 (and without knowledge of the aforesaid recommended surgery), the THOR Interests and Premier made respective initial requests for medical records, a signed medical authorization, and a pre-surgical IME.[7]

- On December 16, 2020, Burnett presented a demand for cure to Premier accompanied by a one-page physical therapy referral for, in part, his back.[8] **Significantly, as later**

---

[1]      Rec. Doc. 45 is Burnett's Claim in the THOR Interests' Limitation Action; Rec. Doc. 46 is Burnett's claim in Crosby's Limitation Action.
[2]      Rec. Doc. 29 and Rec. Doc. 30.
[3]      Rec. Doc. 150.
[4]      Rec. Doc. 29, pp. 11–17; Rec. Doc. 31, pp. 11-17. Premier and the THOR Interests contest Burnett's status as a Jones Act seaman, as such is claimed against all defendants.
[5]      Rec. Doc. 45; Rec. Doc. 46.
[6]      *See* Exhibit A, Dr. Henry Small's office notes dated December 3, 2020 – Bates Label P. Burnett R000156 produced February 10, 2022.
[7]      *See* Exhibit B, Emails dated December 4-9, 2020, from Gavin Guillot at 12:08 p.m. and 10:28 a.m., respectively, and Email dated December 14, 2020 from John Ribarits at 12:09 p.m.
[8]      *See* Exhibit C, Correspondence dated December 16, 2020, from Kimberly Nwabeke, with enclosure.

<u>discussed, this referral was the only medical record provided to Premier or the THOR Interests for another fourteen (14) months (*i.e.*, until February 2022) for Burnett; and this referral did not provide information regarding or discussing invasive surgery (recommended or otherwise).</u> Premier acknowledged Burnett's demand the same day, pointed out that only partial medical records were provided with the demand, and again requested complete copies of all medical records, including Dr. Small's office notes.[9]

- On December 21, 2020, and after not receiving a response from Burnett, Premier requested for the third time that it be provided medical records for Burnett "given that Premier has the unqualified right under the general maritime law to investigate plaintiffs' demand for maintenance and cure benefits."[10]

- On February 17, 2021, after still not receiving a response or any update from Burnett regarding his medical status (including whether any invasive procedure was recommended or scheduled), Premier again followed up and requested medical records and pre-surgical IMEs, noting its rights as the alleged Jones Act employer for Burnett.[11]

- On March 24, 2021, after Burnett still had not responded to Premier's requests, Premier provided another HIPAA-compliant medical authorization to Burnett and again requested information concerning production of all medical records for Burnett, surgery status/scheduling, and pre-surgical IMEs.[12]

At this point and notwithstanding the above requests, Burnett had yet to produce a single record indicating that any invasive procedure was planned or recommended. Indeed, as noted above, no such medical records were produced by Burnett until February 2022.

More than six months after the THOR Interests filed their Limitation Action, and nearly a year after having initiated litigation regarding his alleged injuries, Burnett filed a claim in both the THOR Interests' and Crosby's Limitation Actions on October 26, 2021.[13] Having filed a claim in these consolidated Limitation Actions, Burnett consented to this Court's Scheduling Order, as amended (Rec. Doc. 184, Rec. Doc. 342, Rec. Doc. 355), which sets discovery, expert, and other pre-trial deadlines. Further, **after** filing claims before this Court, Burnett has undergone at least

---

[9]    *See* Exhibit D, Email dated December 16, 2020, from John Ribarits at 3:26 p.m.
[10]   *Id.* See Email dated December 21, 2020, from John Ribarits at 8:44 a.m.
[11]   *See* Exhibit B, Email dated February 17, 2021, from John Ribarits at 6:02 p.m.
[12]   *Id.* See Email dated March 24, 2021, from John Ribarits at 10:12 a.m.
[13]   Rec. Doc. 45 is Burnett's Claim in the THOR Interests' Limitation Action; Rec. Doc. 46 is Burnett's claim in Crosby's Limitation Action.

four invasive surgeries, blatantly ignoring the multiple pre-surgical IME requests by Premier and

the THOR Interests dating back to December 2020. Most egregiously, three of these surgeries (the

five-level lumbar surgery and two subsequent corrective surgeries) occurred after this Court's

Order compelling Burnett to submit to the IME, as the timeline of events following Burnett's filing

of claims in this Court demonstrates below:

- Without providing notice to the movants or an opportunity for an IME, on November 5, 2021, Burnett underwent weight loss surgery.[14] Indeed, information that Burnett had been recommended for this surgery was first provided to the movants in February 2022, despite the above-referenced repeated demands for medical records.[15]

- Specifically, on February 10, 2022, Burnett produced medical records **for the first time dating back to December 2020** associated with his alleged injuries.[16] Notably, this production of records was the first time any information was produced by Burnett indicating plans for invasive surgery, including the weight loss surgery and a laminectomy and fusion at an *unspecified* number of levels of the lumbar spine. Nonetheless, on February 16, 2022, Premier provided notice to counsel for Burnett that the records provided for Burnett were incomplete, with many providers' notes only current through April 2021, and requested supplemental disclosures of Burnett's medical records.[17]

- On February 22, 2022, having not heard from counsel for Burnett, Premier referred back to its numerous requests for medical records, an executed medical authorization, and pre-surgical IMEs and reiterated its more than year-old requests for the same, while addressing the fact that evidence had been spoliated by Burnett.[18] Following Premier, the THOR Interests on the same day reiterated their more than year-old requests and further noted that "with astounding irony, you have completely disregarded any opportunity for the defendants to have your clients examined by an [IME] before invasive surgery despite taking the absolute contrary position on evidence inspections of the THOR and its equipment. This is spoliation of evidence[.]"[19]

- Then, on March 10, 2022, after not responding to a single of the foregoing correspondence dating back more than a year and only after the issue of spoliation was raised, Burnett's counsel finally acknowledged the requests for pre-surgical IMEs and medical records, but

---

[14]     *See* Exhibit E, River Oaks Hospital & Clinic's operative report dated November 5, 2021 – Bates Label P. Burnett 000145 produced on July 11, 2022.

[15]     *See* Exhibit A, Dr. Henry Small's office notes dated December 3, 2020 – Bates Label P. Burnett R000156 produced February 10, 2022.

[16]     *See* Exhibit F (which is an email chain) at the Email dated February 10, 2022, from Mary Parsons with production of documents in connection with Burnett's Initial Disclosures at 4:57 p.m.

[17]     *Id*. at Email dated February 16, 2022, from John Ribarits at 12:42 p.m.

[18]     *Id*. at Email dated February 22, 2022, from John Ribarits 12:52 p.m.

[19]     *Id*. at Email dated February 22, 2022, from Gavin Guillot at 2:25 p.m.

still refused to comply with these requests.[20] Following this, the next day Premier's counsel again sought for Burnett to comply with these requests which, again, went unanswered.[21]

- On June 27, 2022, Premier followed-up on its now more than eighteen month old requests and provided dates for Burnett to undergo an IME with an orthopedic surgeon, Dr. David Vanderweide.[22] After Premier again followed up the next day,[23] counsel for Burnett responded that his clients' "injuries" and "damages" were not at issue in these proceedings and refused to make his client available for the IME,[24] which Premier advised it would note in a forthcoming motion to compel the IME.[25]

- On July 11, 2022, Dr. Small recommended Burnett undergo a five-level lumbar surgery with laminectomy and fusion. Later the same day, Burnett produced responses to omnibus discovery requests which failed to include any information regarding Dr. Small's recommendation for the five-level surgery.[26] Information regarding the *recommended* five-level lumbar surgery was not produced to the movants until August 26, 2022, during the pendency of the below-mentioned Motion to Compel an IME filed by Premier.

Premier filed its Motion to Compel an IME of Burnett (Rec. Doc. 345) on July 13, 2022. The Motion to Compel sought, among other relief, an IME of Burnett's back. On July 26, 2022, without reference to the recommended five-level lumbar surgery, Burnett (alongside claimant, Lewis Andrews) filed an Opposition to the motion (Rec. Doc. 353) that did not disclose to this Honorable Court the scheduled five-level lumbar surgery. Indeed, Burnett's Opposition was a mere three pages and suggested that this Court deny Premier's Motion to Compel without prejudice. It is worth recounting exactly what was set forth in Burnett's Opposition:

> *Premier should be allowed to seek IMEs at a later point when (and in the forum in which) damages are being litigated. Permitting IMEs now would be premature. And it runs the risk, if the Claimants' motion to bifurcate is granted, that Premier will seek updated IMEs at a later point when damages are actually at issue. This would unnecessarily subject the Claimants to multiple rounds of the most sensitive discovery device available in law.[27]*

---

[20]     *Id*. at Email dated March 10, 2022, from Kyle Findley at 5:34 p.m.

[21]     *Id*. at Email dated March 11, 2022, from John Ribarits at 8:07 a.m.

[22]     *See* Exhibit G (which is an email chain) at the Email dated June 27, 2022, from Heather von Sternberg at 10:13 a.m.

[23]     *Id*. at Email dated June 28, 2022, from Heather von Sternberg at 9:10 a.m.

[24]     *Id*. at Emails dated June 28, 2022, from John Grinnan at 9:32 and 11:21 a.m.

[25]     *Id*. at Email dated June 28, 2022, from Heather von Sternberg at 11:11 a.m.

[26]     *See* Exhibit H, Email dated July 11, 2022, from Miranda Owens with production of Burnett's responses to omnibus discovery requests.

[27]     Rec. Doc 353, p. 2.

It is not subject to dispute that, at the time these words were filed into the record, Burnett had scheduled his five-level lumbar surgery; and it is deceptive to claim that the IME could be performed at a later date. Burnett's counsel knew, or should have known, that his client was scheduled for surgery and that evidence would be spoliated. The following is further evidence of Burnett's efforts to conceal this surgical recommendation during the pendency of Premier's Motion to Compel IMEs:

- On July 22, 2022, the THOR Interests set a Rule 37 conference for July 27, 2022, to discuss Burnett's, and other claimants represented by the same counsel, deficient responses to omnibus discovery.[28] After counsel for Burnett failed to participate in the scheduled Rule 37 conference or respond to numerous emails from counsel for the THOR Interests regarding these deficient responses,[29] Joint Motions to Compel supplemental responses to omnibus discovery by Burnett, and other claimants represented by the same counsel, were filed by the THOR Interests and Crosby on August 16, 2022 (Rec. Docs. 363, 365, and 366).

- Three days later, on August 19, 2022, an extensive discovery conference was held regarding Burnett's, and all other claimants represented by the same counsel, deficient responses to omnibus discovery. It was agreed at that time that Burnett, and the other claimants represented by the same firm, would supplement their responses on a rolling basis, where possible, but no later than the close of business on August 26, 2022 (Rec. Doc. 369).[30] Notably, at no point during this discovery conference was the five-level lumbar surgery, which had been recommended more than a month prior, disclosed by counsel for Burnett.

- Then, at 4:47 p.m. on Friday August 26, 2022, having not provided any records on a rolling basis, Burnett, and the four other claimants represented by the same counsel, provided supplemental responses totaling over 1,350 pages of records, with over 300 pages pertaining to Burnett alone.[31] As part of this document dump, made in violation of the agreement between the parties, **records dated July 11-15, 2022 referencing the five-level lumbar surgery recommendation, the five-level lumbar surgery being scheduled for 7:30 a.m. August 30, 2022, and a procedure estimate ($459,735) were provided for the very first time to Premier and the THOR Interests**.[32]

---

[28]    *See* Exhibit I, which is an email chain, Email dated July 22, 2022, from J.D. Parker at 2:53 p.m..

[29]    *Id*. at Emails dated July 26-27, 2022, from J.D. Parker at 2:24 p.m. and1:58 p.m., respectively.

[30]    *Id*. at Emails dated August 19, 2022 exchanged between J.D. Parker and Kyle Findley between 2:25 p.m. and 4:39 p.m.

[31]    *Id*. at Email dated August 26, 2022, from Jill Erickson at 4:47 p.m. with production of Burnett's supplemental responses to omnibus discovery requests.

[32]    *See* Exhibit J, Documents produced with Plaintiff Patrick Burnett's First Supplemental Objections and Responses to Omnibus Requests for Production and Objections, Bates Label P. Burnett 000146 – Dr. Small's July 11,

- Counsel for Burnett, in another violation of the agreement between the parties, then failed to confer regarding these supplemental responses on August 29, 2022.[33] Numerous emails were exchanged between the parties the following day (the day the five-level lumbar surgery was originally scheduled) related to these deficient responses without any mention of the recommended five-level lumbar surgery or the five-level lumbar surgery having been delayed and/or rescheduled.[34]

As indicated above, this Court was not persuaded by Burnett's arguments to thwart the IME; and on September 2, 2022, this Court granted the Motion to Compel the IME of Burnett and of Lewis Andrews, reasoning in part: "it is important that this evidence is not further expoliated prior to Premier being permitted to conducted IMEs" (Rec. Doc. 377, pp. 11-12). On the same day the Court granted the Motion to Compel the IME, *i.e.*, September 2, 2022 (Rec. Doc. 377), Premier's counsel again requested to be notified immediately of any pending invasive procedures, further noting that "the Court agrees that their past surgeries have expoliated evidence."[35] Premier's counsel followed-up with additional emails on September 6, 8, and 9, 2022,[36] before counsel for Burnett finally responded on September 9, 2022[37] that they would "look into [Premier's] email" (unbelievably failing to disclose that Burnett had actually undergone a five-level lumbar surgery days before).

Then, on September 12, 2022, Burnett's IME with Dr. David Vanderweide, who has been jointly retained by Premier and the THOR Interests, was scheduled for October 5, 2022.[38] It was

---

2022 Office notes, P. Burnett 000148 – River Oaks Hospital Physician Surgery (Scheduling Order) dated July 11, 2022, and P. Burnett 000149 – Advanced Diagnostics Hospitals & Clinics Procedure Estimate for "Lumbar Laminectomy + Fusion L2/S1 with TLIF @ L4/S1 & Coflex @ L1/2" dated July 15, 2022

[33]   *See* Exhibit I, Emails dated August 29, 2022, from J.D. Parker and Kyle Findley at 1:42 p.m. and 6:20 p.m., respectively.

[34]   *Id*. at Emails dated August 30, 2022, from J.D. Parker, Gavin Guillot, and Kyle Findley between 1:06 p.m. and 3:55 p.m.

[35]   *See* Exhibit G, Email dated September 2, 2022, from Heather von Sternberg at 5:19 p.m.

[36]   *Id*. at Emails dated September 6, 8, and 9, 2022, from Heather von Sternberg at 10:48 a.m., 1:20 p.m., and 10:21 a.m., respectively

[37]   *Id*. at Email dated September 9, 2022, from Kyle Findley at 11:47 a.m.

[38]   *Id*. at Emails dated September 12, 2022, from Heather von Sternberg, John Grinnan, and Jill Erickson between 1:20 p.m. and 5:06 p.m.

at this IME that Dr. Vanderweide learned Burnett had undergone the five-level back surgery on September 6, 2022 (*i.e., four days after the Court's September 2, 2022 Order compelling the IME and without any notice to movants of the surgery being scheduled for September 6, 2022*), in addition to two related surgeries on September 22 and 29, 2022, due to apparent issues with infection. Despite their best efforts, this was the first time the movants had heard that these surgeries had been performed, in disregard of the Court's September 2, 2022 ruling (Rec. Doc. 377). To date, there has been no communication from Burnett's counsel advising that these particular post-Order (Rec. Doc. 377) surgeries (*i.e.*, the five-level lumbar surgery and two subsequent corrective surgeries) have taken place.

## II. LAW AND ANALYSIS

### A.   THE LEGAL STANDARD FOR SPOLIATION OF EVIDENCE IS WELL-ESTABLISHED.

Spoliation of evidence is the destruction or the significant and meaningful alteration of evidence. *See Guzman v. Jones*, 804 F.3d 707, 713 (5th Cir. 2015). "If a party intentionally destroys evidence, the trial court may exercise its discretion to impose sanctions on the responsible party." *See Coastal Bridge Company, L.L.C. v. Heatec, Incorporated*, 833 Fed.Appx. 565, 573 (5th Cir. 2020) (citing *Menges v. Cliffs Drilling Co.*, Civ. No. 99-2159, 2000 WL 765082, at *1 (E.D. La. June 12, 2000) (Vance, J.)). Sanctions for spoliation of evidence, such as the exclusion of evidence or an adverse inference against the spoliator, are permitted upon a showing of bad faith or bad conduct. *See Guzman*, 804 F.3d at 713 (5th Cir. 2015) (citing *Condrey v. SunTrust Bank of Georgia*, 431 F.3d 191, 203 (5th Cir. 2005)); *see also Allen v. Resto*, Civ. No. 12-2242, 2013 WL 2152177, at *1 (E.D. La. May 16, 2013) (Berrigan, J.).

The U.S. Fifth Circuit Court of Appeals has explained the elements of a spoliation claim as follows: "A spoliation claim has three elements: (1) the spoliating party must have controlled

the evidence and been under an obligation to preserve it at the time of destruction; (2) the evidence must have been intentionally destroyed; and (3) the moving party must show that the spoliating party acted in bad faith." *See Coastal Bridge Company, L.L.C.*, 833 Fed.Appx. at 574 (5th Cir. 2020). All three are met here.

### 1. *Burnett had a Duty to Preserve Evidence of his Alleged Back Injury.*

"A duty to preserve arises when a party knows or should know that certain evidence is relevant to pending or future litigation." *Hunt v. Marquette Transp. Co. Gulf-Inland, LLC*, Civ. No. 09-6055, 2011 WL 3924926, at *2 (E.D. La. Aug. 5, 2011) (Roby, M.J.). A plaintiff who has filed a lawsuit for damages as a result of alleged personal injury and has been put on notice of another party's desire to have an IME conducted in advance of any invasive procedure has a duty to preserve evidence of his pre-surgical medical condition. *Allen*, 2013 WL 2152177, at *1 (Berrigan, J.). Indeed, U.S. District Judge Carl Barbier has previously held that when a plaintiff "filed suit and was engaged in discovery proceedings with Defendant regarding Plaintiff's medical condition prior to the surgery … there is no doubt that Plaintiff was on notice that the evidence was relevant to this litigation; accordingly, there was a duty to preserve the evidence." *Collongues v. State Farm Auto. Ins. Co.*, Civ. No. 093202, 2010 WL 103878, at *2 (E.D. La. Jan. 7, 2010. This duty to preserve extends to personal injury claimants in a Limitation Action, even where bifurcation has been granted. *Midland v. M/T American Liberty*, Civ. No. 19-10525 (lead case), 2020 WL 12583838, at *2 (E.D. La. Dec. 2, 2020) (Vance, J.).

The same is true here. After Burnett filed a lawsuit alleging damages for personal injury, and after this lawsuit was removed to federal court, four requests for an IME in advance of any invasive procedure were made collectively by Premier and the THOR Interests. Three of these demands followed Burnett's presentation of a demand for cure related to his alleged back injury.

Further, after discovery was initiated in these consolidated Limitation Actions, and after learning about Burnett's November 2021 weight loss surgery, both Premier and the THOR Interests reiterated their requests for an IME in advance of any further invasive procedure and made repeated demands for updated medical records. Moreover, when Burnett still refused these pre-surgical requests for an IME after filing claims in this Court, Premier filed a Motion to Compel an IME of Burnett's alleged injuries, including to his back (Rec. Doc. 345). This Court, in granting Premier's Motion to Compel, found that Burnett's medical condition was relevant and that good cause for the IME existed (Rec. Doc. 377, pp. 11-12). The Court further found that it was important the IME be conducted in advance of any invasive procedure to avoid further spoliation of evidence. *Id*. Clearly, Burnett had a duty to preserve evidence of the pre-surgical medical condition of his alleged back injury.

### 2. *Burnett Intentionally Destroyed Evidence of his Alleged Back Injury and did so in Bad Faith.*

Burnett underwent his weight loss surgery and his five-level lumbar surgery after filing a lawsuit regarding his alleged injuries and after pre-surgical IMEs were requested. District Courts in the Fifth Circuit have found that a plaintiff has intentionally destroyed evidence of his pre-surgical medical condition when a defendant has put the plaintiff on notice of **its right to request an IME in advance of an invasive procedure** prior to an invasive procedure being performed.[39] ***As in this case***, this requirement is easily met when the plaintiff has engaged in the discovery process and the request for a pre-surgical IME has been made. *See Allen*, 2013 WL 2152177, at *1 (E.D. La. May 16, 2013). Furthermore, "bad faith" in the context of spoliation has generally been

---

[39]     *Allen*, 2013 WL 2152177, at *1-2 (E.D. La. May 16, 2013). *See also Jackson v. Family Dollar Stores of Louisiana, Inc*., Civ. No. 3:19-cv-00388, 2020 WL 6092343, at *5 (W.D. La. Oct. 15, 2020) (Doughty, J.); *Young v. Canadian National/Illinois Central Railroad Company*, Civ. No. 04-CV-88, 2005 WL 8155474 (M.D. La. Sep. 23, 2005).

found to be "destruction for the purpose of hiding adverse evidence." *See Guzman*, 804 F.3d at 713. In *Allen*, U.S. District Judge Helen Berrigan explained that acts such as plaintiff's counsel's failure to update discovery and to disclose to the defendants in that case that counsel had arranged for the plaintiff to undergo surgery – notwithstanding the various communications amongst counsel -- amounted to "bad faith." *Allen*, 2013 WL 2152177, at *1 (E.D. La. May 16, 2013) (granting an adverse inference under the circumstances of that case).[40]

Here, the evidence shows that Burnett intentionally destroyed evidence of the pre-surgical medical condition of his alleged back injury and did so in bad faith, thus satisfying the second and third elements of a spoliation claim. Burnett filed suit in Harris County, Texas, in November 2020. After removal to federal court, Premier and the THOR Interests, between December 2020 – March 2021, made numerous requests for medical records, signed medical authorization, and pre-surgical IMEs. Burnett incompletely replied to these requests with a demand for cure, accompanied by partial records from Dr. Small that omitted the surgical recommendations. Additional requests to be notified in advance of any surgical procedure followed but were ignored by Burnett. Having been put on notice of Premier's and the THOR Interests' repeated requests for IMEs, Burnett nevertheless proceeded with his November 2021 weight loss surgery without providing any notice. The only logical conclusion is that Burnett, in bad faith, intentionally destroyed evidence of his alleged back injury by undergoing weight loss surgery as a predicate to further invasive surgery.

Moreover, given the foregoing, and the discovery that preceded Burnett's five-level back surgery (and the two subsequent corrective surgeries), it is inescapable to conclude that Burnett intentionally destroyed evidence of his pre-surgical medical condition by undergoing these back surgeries. Following production of records evidencing the weight loss surgery on February 10,

---

[40] *Id.*

2022, Premier and the THOR Interests again demanded: (1) Burnett's updated medical records; (2) a signed medical authorization allowing Premier and Shore to independently and timely request and obtain medical records; and (3) the right to conduct pre-surgical IMEs. Only after the issue of spoliation was raised did Burnett, for the first time, acknowledge Premier's and the THOR Interests' demands for a pre-surgical IME. Even so, Burnett refused to agree to these requests, necessitating a Motion to Compel the IME which referenced and cited these numerous demands for pre-surgical IMEs. Significantly, and as discussed above, Burnett opposed this Motion. It is clear from the record now before the Court that at the same time Burnett was opposing the Motion for an IME, he was simultaneously making arrangements to undergo his back surgery. After this Court granted the Motion, Burnett still refused to comply with the multiple requests for the IME and underwent the five-level lumbar surgery despite the Court's admonition not to do so or risk spoliation.

Furthermore, counsel for the THOR Interests and Burnett exchanged over a dozen emails regarding Burnett's discovery responses that specifically concerned Burnett's medical status and held a discovery conference more than a month after the surgery was recommended but before it was performed. At no point during these extensive communications with Burnett's counsel was there ever any mention of this surgery being scheduled. This is akin to the situation in *Allen*, where plaintiff's counsel failed to disclose the plaintiff's scheduled surgery plans in various communications with defense counsel, seeking to continue a scheduled deposition, at which deposition defense counsel ultimately learned of the surgery at issue. *Allen*, 2013 WL 2152177, at *2. The withholding of this information and blatant disregard of numerous requests for a pre-surgical IME have resulted in the bad faith and intentional destruction of relevant evidence due to Burnett's decision to undergo surgery.

This Court's Order compelling Burnett's IME and Premier's subsequent efforts to schedule the IME leave no room for doubt that evidence of his alleged back injury was intentionally destroyed in bad faith. In the Order, this Court stated:

> [S]ince Claimants have already undergone surgeries altering their physical conditions, *it is important that this evidence is not further exploited prior to Premier being permitted to conduct IMEs*. As to the timing of the IME, "*courts have required that an IME must occur prior to surgery to avoid spoliation of evidence*." *See Magnolia Fleet, LLC v. Gray*, No. 18- 8363, 2018 U.S. Dist. LEXIS 185231, 2018 WL 5619995 (E.D. La. Oct. 30, 2018*); see also Julien v. EPL Oil & Gas, Inc*., No. 15-557, 2015 U.S. Dist. LEXIS 107925, 2015 WL 4937900, at *3 (E.D. La. Aug. 17, 2015) ("To avoid spoliation of evidence, the IME must occur before Plaintiff's shoulder surgery."); *Gant v. Helix Energy Sols. Grp. Cal Dive I-Title X I Inc*., No. 07-0618, 2007 U.S. Dist. LEXIS 58309 (W.D. La. Aug. 9, 2007) (finding that "defendants are entitled to an IME and said IME should be conducted prior to plaintiff's surgery").

Rec. Doc. 377, at pp. 11-12 (emphasis added and internal footnotes and citations omitted).

Incredibly, Premier's reiterated IME demand (made on the same day as the Court's Order) was ignored until after Burnett underwent the five-level back surgery (without any notice to the movants that it was scheduled for September 6, 2022). It was not until after this five-level back surgery took place, and numerous additional emails from counsel for Premier, that counsel for Burnett finally responded to schedule an IME. Still, counsel for Burnett hid the fact that the back surgery had occurred, and it was not until the IME that Premier and the THOR Interests learned Burnett had not only undergone the lumbar surgery but also had since undergone **two subsequent back surgeries**, due to purportedly related infections, thus further spoliating evidence.

Even worse, Burnett's counsel also hid this information from this Court. The transcript from oral argument before the Court on the motion to compel complete discovery responses from Burnett on September 14, 2022, contains disingenuous representations from Burnett's counsel of cooperation and good faith. To wit, counsel represented that "we've produced every medical

record we have,"[41] "[w]e're happy to provide them all the medical records we have,"[42] and "[w]e're happy to provide them medical information. We've done so. We're happy to continue to provide them medical information. We've done so."[43] When Burnett's counsel made these representations in open court, the lumbar surgery had occurred eight days prior; but not a word was offered that such surgery had taken place contrary to this Court's Order compelling the IME. Respectfully, this omission cannot be left unchecked by the Court.

To this day, Burnett has failed to produce records from the five-level lumbar surgery or subsequent correction surgeries despite this Court's Order requiring him to do so. Premier and the THOR Interests are only aware of the surgery due to Burnett's Court-ordered IME with Dr. Vanderweide on October 5, 2022; and the movants have only been able to confirm that this procedure took place through medical records recently obtained on November 12, 2022, pursuant to a subpoena issued by the THOR Interests to Dr. Small,[44] not from any records produced by Burnett as required by this Court's Order. Failure to produce these records at any point, despite assuring the Court it had done so and would continue to do so, only further demonstrates the bad faith nature of this intentional destruction of evidence of Burnett's alleged back injury.

## B.    EXCLUSION IS THE APPROPRIATE SANCTION FOR BURNETT'S SPOLIATION OF EVIDENCE.

The severity of the sanction imposed by the trial court when the elements of a spoliation claim have been met depends on: "(1) the degree of fault; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness

---

[41]    *See* Exhibit K, Official Transcript with Reporter's Certificate of the September 14, 2022 Oral Argument regarding the THOR Interests and Crosby's Joint Motions to Compel (Rec. Doc. 384), p. 7, Lines 23-24.
[42]    *Id*. at p. 21, Lines 5-6.
[43]    *Id*. at p. 22, Lines 6-8.
[44]    *See* Exhibit L, Dr. Small's office notes dated October 5, 2022, produced on November 12, 2022, via a subpoena issued by the THOR Interests.

to the opposing party and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future." *See Allen*, at *1 (E.D. La. May 16, 2013) (Berrigan, J.). Applying these elements to the circumstances here, the sanction of exclusion of evidence is warranted.

### 1. *Burnett is Solely at Fault for the Spoiled Evidence of his Alleged Back Injury.*

As demonstrated above, the fault here lies solely with Burnett. To reiterate as much, both Premier and the THOR Interests asserted their right to a pre-surgical IME in 2020 less than a month after Burnett had filed a lawsuit initiating a claim for damages as a result of personal injury. Then, after these requests went completely ignored for more than a year (despite the movants' reiterated demands), these same demands were again reiterated by Premier and the THOR Interests once it was discovered that Burnett had been recommended to undergo invasive weight loss surgery, and importantly after Burnett had filed his claims before this Court. After Burnett, again, initially ignored these requests, then refused to comply with the requests, Premier was forced to file its Motion to Compel the IMEs (Rec. Doc. 345). After the corresponding September 2, 2022, Order was issued (Rec. Doc. 377), Premier's counsel, yet again, asked to be notified of any invasive procedures immediately and acted on its intent to have Burnett undergo a pre-surgical IME. Still, Burnett underwent the five-level back surgery (along with the two subsequent corrective surgeries), contrary to this Court's Order, his counsel refused to respond to Premier's counsel's multiple subsequent emails until after the surgery had occurred, and remarks were made at the September 14, 2022 oral argument that Burnett had produced and would produce all medical records, all the while failing to disclose that the five-level lumbar surgery had already been undergone.

Not only are the movants not at fault, but they repeatedly tried to avoid this result. If Burnett is going to ignore an Order by this Court to undergo an IME, which expressly ruled that it was

important for the IME to be conducted in advance of any invasive procedure to avoid spoliation of evidence, what more could Premier or the THOR Interests have done to preserve their rights to investigate the claim, defend themselves, and avoid having Burnett through his own action spoil evidence? The fault for the intentional destruction of this evidence lies solely with Burnett.

**2. *Burnett's Spoliation of Evidence has Significantly Prejudiced Movants.***

The prejudice to Premier and the THOR Interests by Burnett's decision to undergo these surgeries is significant because it has foreclosed the opportunity to preserve evidence of Burnett's pre-surgical medical condition and thus negatively affected the movants' ability to defend the personal injury claims asserted against them.

As this Court noted in its Order compelling the IME of Burnett, by filing lawsuits and claims in these consolidated Limitation Actions, Burnett has placed his physical condition in controversy, and Premier and the THOR Interests were entitled, by law, to obtain an IME in this matter.[45] Premier and the THOR Interests have now been unfairly and unduly prejudiced by Burnett's bad faith destruction of his pre-surgical medical condition, and the deprivation of their right to have Burnett examined and have his pre-surgical condition evaluated and preserved has substantially and irreversibly prejudiced their ability to defend Burnett's claims which, to date, total over $1,000,000 in medical expenses. Further, by having been deprived of the opportunity to examine Burnett's pre-surgical medical condition in advance of the five-level lumbar surgery, Premier and the THOR Interests have been denied the opportunity to present a defense regarding, *inter alia*, the necessity of two subsequent surgeries related to infections purportedly arising from the original five-level lumbar surgery. These foreseeable consequences present a textbook example

---

[45]     Rec. Doc. 377, pp. 10-11.

of why it was vital for the IME to occur in advance of the five-level lumbar surgery and other surgeries. The prejudice is apparent and significant.

### 3. *Burnett's Spoliation of Evidence Warrants the Sanction of Exclusion of Evidence.*

The spoliation of evidence doctrine permits a court to exclude the spoiled evidence or grant an adverse inference allowing the factfinder to infer that the party that spoiled the evidence did so because it was unfavorable to that party's case. *Allen*, 2013 WL 2152177, at *1 (citing *Pascal's Manale Restaurant, Inc. v. United National Insurance Co.*, Civ. No. 06-7427, 2008 WL 1774131, at *2 (E.D. La. April 15, 2008) (Vance, J.)); *see also Young*, 2005 WL 8155474, at *7 (M.D. La. Sep. 23, 2005). In situations where adverse inferences (a lesser sanction) have been granted, the defendant had typically made a request for a pre-surgical IME but was not afforded a reasonable opportunity to have the IME conducted prior to surgery, but importantly in such case there was no order to compel the IME in place at the time the surgery occurred.[46] Exclusion, however, has been granted when a plaintiff underwent surgery following an order compelling an IME of that body part. *See Silmon v. Can Do II, Inc.*, Civ. No. 91-584, 1992 WL 38110, at *1 (E.D. La. Feb. 13, 1992) (Clement, J.).

In *Silmon v. Can Do II, Inc.*, then U.S. District Court Judge Edith Brown Clement (now, United States Fifth Circuit Court of Appeals Judge) upheld then U.S. Magistrate Judge Ivan L. R. Lemelle's Order excluding evidence of a plaintiff's surgery.[47] The circumstances presented in *Silmon* are practically the same presented here. In *Silmon*, an order had been issued requiring the plaintiff to submit to an IME.[48]The plaintiff in *Silmon* then failed to appear for the IME prior to

---

[46]   *See Allen*, 2013 WL 2152177, at *2 (E.D. La. May 16, 2013); See also *Jackson v. Family Dollar Stores of Louisiana, Inc.*, Civ. No. 3:19-cv-00388, 2020 WL 6092343, at *5 (W.D. La. Oct. 15, 2020) (Doughty, J.); *Young v. Canadian National/Illinois Central Railroad Company*, Civ. No. 04-CV-88, 2005 WL 8155474 (M.D. La. Sep. 23, 2005).

[47]   1992 WL 38110, at *2.

[48]   *Id*. at *1.

undergoing his surgery, notwithstanding the Court's order.[49] Judge Lemelle granted the defendant's motion for sanctions to exclude such evidence. On appeal to the district judge, Judge Clement upheld Judge Lemelle's ruling, noting that "it was incumbent upon counsel to arrange for plaintiff's examination."[50] As a result of the plaintiff's and his attorney's conduct, the Court excluded evidence of the surgical procedure, including any evidence about its costs and its impact upon the plaintiff's medical condition.[51]

Burnett, like the plaintiff in *Silmon*,[52] underwent surgery (as well as two additional corrective surgeries) following an order compelling an IME of the particular body part to be examined. As was the case in *Silmon*, it is impossible for Burnett's counsel to claim ignorance before the surgery of the Order that resulted from the very motion that Burnett had unsuccessfully opposed. This is especially true where Premier's counsel notified Burnett's counsel immediately following the issuance of the Order (Rec. Doc. 377). As such, it was incumbent upon Burnett's counsel to ensure that the IME occurred prior to any further surgery. This Order (Rec. Doc. 377) granted Premier's motion in its entirety, which addressed and cited numerous requests for pre-surgical IMEs by the movants in advance of the surgery being scheduled (Rec. Doc. 345-2, pp. 3-7). Pertinent to these pre-surgical IME requests, the Order stated that, as to the timing of the IME, it was important that the IME occur to avoid further spoliation of evidence, as evidence had already been exploited (Rec. Doc. 377, p. 11). It is hard to imagine any other interpretation of this Order to compel an IME of Burnett other than compelling such before surgery. Burnett's decisions to

---

[49]     *Id*.
[50]     *Id*.
[51]     *Id*.
[52]     1992 WL 38110, at *1-2.

undergo three post-Order surgeries violated this Court's Order, and as was the case in *Silmon*,[53] the appropriate sanction is exclusion of evidence.

Moreover, as it is the movants' position that Burnett's decision to undergo the five-level back surgery violates the Court's Order, Rule 37(b) of the Federal Rules of Civil Procedure empowers this Court to impose sanctions for Burnett's failure to obey a discovery order. *Barlow v. Realty Income Properties 17, LLC.*, 2014 WL 1514164 (E.D. La. April 16, 2014) (Roby, M.J.). "The district court 'has broad discretion under Rule 37(b) to fashion remedies suited to the misconduct.'" *Id.* (citing *Pressey v. Patterson*, 898 F.2d 1018, 1021 (5th Cir 1990)). "[U]sually…a finding of bad faith or willful misconduct [is required] to support the severest of remedies under Rule 37(b)---striking pleadings or dismissal of a case." *Tercero v. Oceaneering International, Inc.*, 2019 WL 1255097 (E.D. LA. March 19, 2019) (van Meerveld, J.) (citing *Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 488 (5th Cir. 2012)). However, lesser sanctions pursuant to Rule 37(b), including reasonable expenses and ***the exclusion of evidence***, do not necessarily require a finding of bad faith or willful misconduct. *See generally In re Bertucci Contracting Co., L.L.C.*, 2014 WL 5483707 (E.D. La. Oct. 29, 2014) (Barbier, J.) (though denying such relief under the circumstances of that case) (citing *Smith & Fuller P.A.*, 685 F.3d at 488 (5th Cir. 2012)). Thus, exclusion here is appropriate irrespective of a finding of "bad faith." Furthermore, Burnett's conduct justifies the Court's sanction of exclusion, as he was warned that undergoing a surgery prior to the IME would spoliate evidence.

In *Young v. Canadian National/Illinois Central Railroad Company*, U.S. District Judge James J. Brady of the United States District Court for the Middle District of Louisiana sanctioned the plaintiff who underwent a surgery, despite the defendants putting the plaintiff on notice of their

---

53      *Id.*

desire to have an IME performed prior to the surgery, by granting an adverse inference.[54] In *Young*, defense counsel informed counsel for the plaintiff of the defendants' desire for a pre-surgical IME of the plaintiff's back the same day the plaintiff disclosed his back injury.[55] Plaintiff's counsel agreed to the IME but refused to advise his client to delay the surgery to accommodate the IME as requested.[56] A week later, the magistrate judge held a status conference with the parties' attorneys where the plaintiff's surgery was discussed, and all counsel agreed that discovery would be substantially affected by the plaintiff's surgery, after which an amended scheduling order was issued.[57] On the same day as the status conference, unbeknownst to any of the attorneys attending the conference, the plaintiff disclosed to his psychiatrist that the back surgery was scheduled for eight days later.[58] Four days after this disclosure, and before the surgery had occurred, defense counsel sent an email to counsel for the plaintiff providing available dates for the IME, including dates prior to the scheduled surgery, to which an assistant for the plaintiff's counsel responded that none of the dates were "good" for the the plaintiff.[59] The plaintiff eventually underwent the surgery prior to the IME; and, as is the case here, the defendants did not learn that the plaintiff had undergone the back surgery until after the IME occurred.[60]

Judge Brady in *Young* considered exclusion as a potential remedy for the plaintiff's spoliation of evidence, noting that the plaintiff had "failed to comply" with an amended scheduling order by undergoing the back surgery.[61] Nonetheless, Judge Brady granted an adverse inference (a lesser sanction) regarding the surgery but, distinct from the circumstances in this case, reasoned

---

[54]     2005 WL 8155474, at *7.
[55]     *Id*. at *2-5.
[56]     *Id*. at *2.
[57]     *Id*.
[58]     *Id*.
[59]     *Id*.
[60]     *Id*.
[61]     *Id*. at *5.

that because there was no order to compel an IME, the court would "stop short" of excluding evidence of the plaintiff's back surgery.[62] In reaching this conclusion, the court contrasted the case before it with *Silmon*[63] and noted that , the *Silmon* court excluded evidence after the plaintiff underwent a surgery following an order compelling an IME of the plaintiff.[64]

Here, as was the case in *Silmon* (excluding evidence) – but not in *Young* (granting an adverse inference) – there was an order compelling an IME. Following the rationale of *Silmon*, and the extraordinary history of smoke and mirrors concerning Burnett's medical treatment, exclusion of evidence is the warranted sanction to avoid substantial unfairness to the movants and to deter such conduct in the future. Burnett's intentional and bad faith action in undergoing the five-level lumbar surgery (and two corrective surgeries) as well as weight loss surgery, without any reasonable notice, is patent. As noted above, Burnett's actions precluded Premier and the THOR Interests from examining and evaluating the evidence of Burnett's pre-surgical medical condition, from preserving the evidence regarding Burnett's pre-surgical medical condition, and from obtaining an expert medical opinion regarding Burnett's pre-surgical medical condition and the propriety of the recommended surgical procedures. Given the significance of this rare surgical procedure, performed on a regular smoker nonetheless, it was all the more important for evidence, and an examination of Burnett's pre-surgical medical condition, to be preserved.

Considering the prejudice to the movants' and all other interested parties' ability to defend themselves, the appropriate and proportionate sanction under these circumstances is the exclusion of all evidence related to the back surgeries and alleged back injury. The fault of this prejudice lies solely with Burnett, and exclusion of the foregoing evidence is the necessary remedy to put the

---

[62] *Id.* at *5-6.
[63] *Id.*
[64] *Id.* at *6.

parties where they were before this evidence was intentionally destroyed. It is also necessary to deter such conduct in the future, particularly given Burnett's disregard for this Court's order.[65]

### III. CONCLUSION

For the reasons stated above, Premier and the THOR Interests respectfully request that this Honorable Court grant the Motion to Exclude Evidence and for Sanctions for Patrick Burnett's Spoliation of Evidence and Violation of this Court's Order by entering an Order excluding any and all evidence related to Burnett's alleged back injury, including but not limited to the four back-related invasive surgeries, the surgical recommendations, the surgery records, any post-surgical follow-up appointments and physical therapy, and any costs and expenses associated with the surgical recommendation. Additionally, the THOR Interests and Premier seek reimbursement of their costs, including but not limited to expert costs for the October 5, 2022 independent medical examination with Dr. Vanderweide, attorneys' fees incurred in bringing the instant Motion, and all other relief as the Court may find appropriate for Burnett's conduct.

Respectfully Submitted:

*/s/ Gavin H. Guillot*
Gavin H. Guillot, T.A. (#31760)
Salvador J. Pusateri (#21036)
Aaron B. Greenbaum (#31752)
Meredith W. Blanque (#32346)
Jacob A. Altmyer (#36352)
Jonathan D. Parker (#35275)
PUSATERI, JOHNSTON, GUILLOT &
GREENBAUM, LLC
1100 Poydras Street, Suite 2250
New Orleans, LA 70163
Telephone: 504-620-2500

---

[65] In the alternative, the Court may order the lesser sanction that an adverse inference regarding evidence of Burnett's alleged back injury be applied. For a party to be entitled to an adverse inference based on spoliation, it must show: (1) the party with control over the evidence had an obligation to preserve it at the time it was destroyed; (2) the evidence was destroyed with a culpable state of mind; and (3) the destroyed evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense. *Joseph Savoie v. Inland Dredging Co., LLC*, No. 20-2294, 2022 WL 843603 (E.D. La. March 22, 2022). Each of these elements, as discussed throughout this memorandum, has been addressed and established.

Facsimile: 504-620-2510
Gavin.Guillot@pjgglaw.com
Salvador.Pusateri@pjgglaw.com
Aaron.Greenbaum@pjgglaw.com
Meredith.Blanque@pjgglaw.com
Jacob. Altmyer@pjgglaw.com
Jonathan.Parker@pjgglaw.com
**ATTORNEYS FOR PETITIONERS-IN-LIMITATION,
MODERN AMERICAN RAILROAD SERVICES, L.L.C.
and SHORE OFFSHORE SERVICES, LLC**

and

**CHAFFE McCALL, L.L.P.**

John M. Ribarits (17114), T.A.
Attorney-in-charge
801 Travis St., Ste. 1910
Houston, Texas 77002
Telephone: 713-546-9800
Facsimile: 713-546-9806
Email: john.ribarits@chaffe.com
**ATTORNEYS FOR PREMIER OFFSHORE
CATERING, INC.**

OF COUNSEL:

**CHAFFE McCALL, L.L.P.**
Heather S. von Sternberg
Admitted pro hac vice
801 Travis Street, Suite 1910
Houston, Texas 77002
Telephone: 713-546-9800
Facsimile: 713-546-9806
Email: heather.vonsternberg@chaffe.com

and

Jesse G. Frank (38220)
2300 Energy Centre
1100 Poydras Street
New Orleans, Louisiana 70163
Telephone: 504-585-7000
Email: jesse.frank@chaffe.com