UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **IN THE MATTER OF MODERN AMERICAN RAILROAD SERVICES, LLC, as Owner, and SHORE OFFSHORE SERVICES, LLC, as Bareboat Charterer and Owner *Pro Hac Vice* of D/B THOR PETITIONING FOR EXONERATION FROM AND/OR LIMITATION OF LIABILITY** | * * * * * * * * * * | **CIVIL ACTION NO. 2:21-CV-00258-JCZ-KWR (lead case) c/w 21-337, 21-464, 21-822, 21-1968, 21-1969, 21-1981, 21-1982, 21-2075** <br><br> **Pleading applies to all cases.** <br><br> **JUDGE JAY C. ZAINEY** <br><br> **MAGISTRATE JUDGE KAREN WELLS ROBY** |

**CLAIMANT'S OPPOSITION TO MOTION FOR SANCTIONS
TO EXCLUDE EVIDENCE**

The limitation claimant Patrick Burnett opposes the motion for sanctions to exclude evidence of his back injury (and related surgeries) filed by the limitation petitioners Modern American Railroad Services, L.L.C. and Shore Offshore Services, LLC and the claimant/third party defendant/ Rule 14(c) defendant Premier Offshore Catering, Inc. (hereinafter, "movers").[1]

The movers' motion rests upon their inability to take an IME of Mr. Burnett with their retained defense expert before he underwent back fusion surgery. The timing of the back fusion in short proximity to the Court's IME order—and amid the Labor Day Holiday—was a unique scenario that led to the surgery being performed days after the Court's IME order. These unique circumstances, though admittedly unfortunate, do not demonstrate bad faith by Mr. Burnett or his counsel. And the movers offer no evidence that they suffered resulting prejudice. The Court should deny the motion because the movers failed to establish all three of the required elements to justify spoliation sanctions.[2]

---

[1]   Rec. Doc. 405, the movers' motion for sanctions.

[2]   *Rogers v. Averitt Express, Inc.*, 215 F.Supp. 3d 510, 516 (M.D. La. 2017) ("a party seeking the sanction . . . based on spoliation of evidence must establish that: (1) the party with control over the evidence had an obligation to preserve it at the time it was destroyed; (2) the evidence was

First**,** the movers did not—and cannot—establish the "culpable state of mind" element because there is no evidence the claimant acted "with a fraudulent intent and a desire to suppress the truth."[3] And second**,** the movants cannot establish sufficient prejudice to establish the relevance element[4] because the medical documentation produced in this case includes over 650 CT Scan and MRI images of Mr. Burnett's pre-surgical lumbar spine,[5] and radiology reports and medical records evidencing the pre-surgical condition of Mr. Burnett's lumbar spine.[6]

Notably, the movers' IME retained doctor has *not* opined that, after examining the relevant medical records, his ability to touch Mr. Burnett's body or speak to him pre-surgery would have altered his opinions on the need for (or lack of need) for the back fusion. To the contrary, the movers' retained physician has specifically testified in other cases that he does *not* need to physically see a fusion plaintiff in order to render his opinions.[7] Said another way, based upon the

---

destroyed with a culpable state of mind; and (3) the destroyed evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.").

[3]   *Id.* (quoting *Consol. Aluminum Corp. v. Alcoa, Inc.*, 244 F.R.D. 335, 343-44 (M.D. La. 2006)).

[4]   *See Consol. Aluminum Corp. v. Alcoa, Inc.*, 244 F.R.D. 335, 346 (M.D. La. 2006) (requiring analysis of whether prejudice was suffered as part of the relevance inquiry).

[5]   *See* **Exhibit 1**, 11-18-2020 MRI Images: Burnett's Lumbar Spine, R001590a (containing 71 MRI images of Burnett's lumbar spine on Nov. 18, 2020); **Exhibit 2**, 2-22-2022 MRI Images: Burnett's Lumbar Spine, R000280a (containing 71 MRI images of Burnett's lumbar spine on Feb. 2, 2022); **Exhibit 3**, 5-18-2022 CT Scan Images: Burnett's Lumbar Spine, R001558a (containing 536 CT Scan images of Burnett's lumbar spine on May 18, 2022).

[6]   *See, e.g.*, **Exhibit 4**, 11-18-2020 Radiology Report: Burnett's Lumbar Spine, R000246-R000247 (analyzing the MRI imaging captured on Nov. 18, 2022 of Mr. Burnett's lumbar spine); **Exhibit 5**, 2-3-2022 Dr. Henry Small Medical Record for Burnett, R000594-R000596 (describing the medical condition of Mr. Burnett's lumbar spine as it existed on Feb. 3, 2022).

[7]   **Exhibit 6**, excerpts from deposition of Dr. David Gordon Vanderweide in *Michael Eaglin v. Noble Drilling*, pp. 55-56, Apr. 17, 2019 (noting the fusion); *id.* at pp. 58-59 ("Q. Does the fact that you are not treating and have not seen Mr. Eaglin render you unable to review his records and make determinations and opinions regarding Mr. Eaglin's condition and the necessary treatment? A. No. – Mr. Findley: Form and Leading. A. No m'am."); *id.* at pp. 221-22 ("Q. Does the fact that you have not seen Mr. Eaglin or treat him as a patient of your own change or alter the manner in which you review the records and formulate your opinions? A. No ma'am. Q. Does it minimize or lessen the reliability of your opinions? A. No.").

movers' IME retained physician's sworn testimony, he is capable of rendering opinions as to the necessity of surgery based on medical records and imaging. His inability to examine Mr. Burnett pre-surgery is not a source of prejudice to the movers. Further, the evidence displaying the condition of Mr. Burnett's spine before the surgery is overwhelmingly documented and still in existence: there are copious medical records, MRI films, and diagnostic testing that display and show the positioning and condition of the spine as it existed prior to any operation. Consequently, the evidence showing the condition of the spine readily exists for the defense's expert to examine and rely on when opining about the condition of the spine and causation. Doctors routinely rely on medical imaging, radiographic films, and medical records when rendering opinions. All of the medical imaging, radiographic films, and medical records are still in existence and available to view the condition of the spine prior to surgery.

Ultimately, the movers' motion raises a simple question: If Mr. Burnett had undergone an IME before his surgery, in what way would the movers' defensive case be different than it is today? The movers do not attempt to meaningfully answer this prejudice inquiry. For that reason, their motion should be denied, or any relief granted should be minimal. Prejudice is, after all, a notable consideration on the scope of an applicable sanction finds spoliation. The undersigned respectfully believes the fairest resolution is to follow the opinion of Judge deGravelles in *Rogers v. Averitt Express, Inc*. and order that Mr. Burnett may not invoke the fact that the movers' IME physician did not physically examine Mr. Burnett before the surgery.[8]

**I.**

---

[8]  *Rogers*, 215 F. Supp. 3d at 520.

3

**BACKGROUND**

Although the movers' papers are lengthy, only one matter is actually at issue: The movers seek sanctions because Mr. Burnett, a personal-injury claimant, had a September 6, 2022 back fusion before the movers could conduct an IME upon him. Plaintiff was injured on October 28, 2020 while left stranded aboard D/B THOR during Hurricane Zeta, and has been treating with Doctors since he sustained those injuries. Besides the fusion surgery, the movers also reference a weight-loss surgery that Mr. Burnett underwent in November 2021 (a medical predicate for the fusion).[9] But the movers have not explained why they would be entitled to an IME before a mere weight loss surgery, itself.[10] And although the movers reference two subsequent "corrective" surgeries also having occurred in the weeks after the fusion surgery,[11] medical documents confirm that those two procedures involved post-operative wound care to address infection issues.[12] In sum, there is truly only one surgery at issue in this motion.

And turning to that fusion itself, the timing surrounding the surgery and this Court's IME order is important. As the record shows, in July 2022, the movers filed a motion to perform an IME upon Mr. Burnett, which Mr. Burnett opposed.[13] Meanwhile, Mr. Burnett's fusion surgery was originally scheduled by medical professionals for August 30, 2022,[14] but ended up taking

---

[9]  Rec. Doc. 405-1, the movers' memorandum in support of sanctions, p. 12.

[10] Mr. Burnett has never contended that the incident in this case caused him to gain excessive weight.

[11] Rec. Doc. 405-1, the movers' memorandum in support of sanctions, p. 15.

[12] *See* **Exhibit 7**, 9-22-2022 Medical Record for Burnett, P. Burnett 000189; **Exhibit 8**, 9-29-2022 Medical Record for Burnett, P. Burnett 000190.

[13] Rec. Doc. 345 and 353, the movers' motion to compel IME and the claimant's opposition.

[14] *See* **Exhibit 9**, 7-11-2022 Dr. Henry Small Medical Record for Burnett, P. Burnett 000148 (showing Burnett was scheduled for surgery on August 30, 2022 with Dr. Small); **Exhibit 10**, 8-25-22 Pre-Operative Evaluation for Burnett, P. Burnett 000194-P. Burnett 000196 (showing again—just days before the scheduled surgery—Burnett was still scheduled for surgery on August 30, 2022 with Dr. Small).

place on September 6, 2022. In the interim, on Friday, September 2, 2022, the Court granted the movers' motion to compel an IME.[15] The Labor Day holiday weekend then began, extending through Monday, September 5, 2022. Thereafter, on Tuesday, September 6, 2022, the fusion surgery proceeded forward. This unanticipated series of events was not intentional.

Otherwise, Mr. Burnett has produced (and continues to produce) medical records to the movers.[16] Regardless, Mr. Burnett has long given the movers direct medical records releases so that they may obtain documents on their own if they wish to obtain them faster or independent of Mr. Burnett. Also of note, the movers' IME physician in this case, orthopedic surgeon Dr. David Vanderweide, has been deposed in other cases involving injured plaintiffs who either underwent, or were recommended for a fusion surgery. And he has specifically testified that he does *not* need to see and examine a plaintiff himself to render a medical opinion on the matter.[17] The doctor has rendered opinions in other matters based on review of the medical imaging, radiographic films, and medical records without any complication. All of that evidence is still in existence and available for the Doctor to review in this matter for the condition of the spine prior to surgery, in order to render an opinion.

In light of this testimony, the movers did not—and cannot—show that their IME physician's inability to examine Mr. Burnett prior to the surgery is prejudicial to their case.

---

[15] Rec. Doc. 377, court order granting IME.

[16] *E.g.*, Rec. Doc. 405-1, pp. 8-9.

[17] **Exhibit 6**, excerpts from deposition of Dr. David Gordon Vanderweide in *Michael Eaglin v. Noble Drilling*, pp. 55-56, Apr. 17, 2019 (noting the fusion); *id.* at pp. 58-59 ("Q. Does the fact that you are not treating and have not seen Mr. Eaglin render you unable to review his records and make determinations and opinions regarding Mr. Eaglin's condition and the necessary treatment? A. No. – Mr. Findley: Form and Leading. A. No m'am."); *id.* at pp. 221-22 ("Q. Does the fact that you have not seen Mr. Eaglin or treat him as a patient of your own change or alter the manner in which you review the records and formulate your opinions? A. No ma'am. Q. Does it minimize or lessen the reliability of your opinions? A. No.").

## II.

### LAW AND ARGUMENT

### II-A.

A party seeking sanctions for spoliation must establish that (1) the party with control over the evidence had an obligation to preserve it at the time was destroyed, (2) the evidence was destroyed with a culpable state of mind, and (3) the destroyed evidence was relevant to a party's claim or defense.[18] The third inquiry, relevance, asks whether the evidence was relevant to the lawsuit, whether it would have supported the defensive inference sought, and whether the non-destroying party has suffered prejudice from the destruction of the evidence.[19]

The Fifth Circuit permits sanctions or an adverse presumption to be issued only upon a showing of "bad faith."[20] And "[b]ad faith, in the context of spoliation, generally means destruction for the purpose of hiding adverse evidence."[21] Further: "Numerous district courts within the Fifth Circuit have also found that, to constitute bad faith, the spoliating party must essentially act with the purpose of destroying the evidence."[22] In other words, "for the spoliator to have a 'culpable state of mind,' it must act with fraudulent intent and a desire to suppress the truth."[23]

It is important to note that, simply because a party has a duty to preserve evidence and fails to do so, sanctions are far from automatic. The reason is that showing bad faith presents a high

---

[18] *Rogers v. Averitt Express, Inc.*, 215 F.Supp. 3d 510, 515 (M.D. La. 2017).

[19] *Knott v. Lowe's Home Centers, LLC*, 2021 WL 1877377 at *3 (W.D. La. 2021) (quoting *Consol. Aluminum Corp., v. Alcoa, Inc.*, 244 F.R.D. 335, 346)).

[20] *Guzman v. Jones*, 804 F. 3d 707, 713 (5th Cir. 2015).

[21] *Id*.

[22] *Rogers*, 215 F. Supp. 3d at 518.

[23] *Id*. (citing *Consolidated Alum. Corp. v. Alcoa, Inc.*, 244 F.R.D. 335, 343-44).

threshold. This applies equally in personal injury litigation where the argument, such as here, is that a plaintiff underwent a surgery before an IME.[24]

**II-B.**

The movers argue, essentially, that all three spoliation elements (duty, bad faith, and relevance) are satisfied based upon the Court's order granting an IME. That order, of course, was issued on September 2, 2022.

It is worth repeating, however, that the movers' motion seizes upon matters which are not at issue. To the extent that the movers contend that Mr. Burnett's November 2021 *weight-loss* surgery constitutes the spoliation of evidence, they have offered no proof that it was even *relevant*, much less performed in bad faith. And the wound-care procedures that occurred after the September 6, 2022 surgery were just that—wound-care.[25] Documents prove the point. There is no destruction of evidence in conducting necessary wound care.

That leaves only the matter of the September 6, 2022 fusion that Mr. Burnett underwent. Mr. Burnett acknowledges that, following the Court's IME order, the element of duty is satisfied. However, given the timing at issue, the order does not prove that the undersigned acted in bad faith. The undersigned did not realize that the Plaintiff's surgery had been rescheduled to take place on September 6, 2022. Simply—and obviously stated—the undersigned did not intend to violate the Court's IME order. There is no "adverse evidence" the undersigned was intentionally trying to destroy through the procession of a previously scheduled recommended surgery. In fact, the plaintiff produced all medical records in his possession related to the plaintiff's surgical

---

[24] *E.g., id.* at 519 ("Therefore there is no doubt that Plaintiffs had a duty to preserve this evidence and the evidence was clearly relevant. Thus the critical issue here is whether Plaintiffs or their counsel acted with a 'culpable state of mind', i.e. in bad faith for the purpose of destroying the evidence.").

[25] *See* **Exhibit 7**, 9-22-2022 Medical Record for Burnett, P. Burnett 000189; **Exhibit 8**, 9-29-2022 Medical Record for Burnett, P. Burnett 000190.

recommendation in advance of the Court's order. The movers acknowledge as much in their motion when disclosing that they received records on August 26, 2022, indicating Mr. Burnett's surgery would be performed on August 30, 2022.[26]

Further, as stated previously, the evidence of Mr. Burnett's pre-surgery condition is not destroyed,. There are numerous medical records, CT Scans, MRI films, and diagnostic testing that show the condition of the spine prior to the surgery. Indeed, over 650 radiology images of Mr. Burnett's pre-surgical lumbar spine have been produced in the case that provide detailed images of Mr. Burnett's lumbar spine from all angles and all levels of the lumbar spine.[27] Moreover, the medical witnesses in this case captured images of Mr. Burnett's lumbar spine on three separate occasions over the approximate two-year period preceding the September 2022 surgery.[28] In other words, the radiology imaging provides a chronicle of over 650 detailed images depicting the condition of Mr. Burnett's lumbar spine from all angles and at all levels in the two-year period preceding the September 2022 surgery. In addition, Mr. Burnett's treating physicians documented detailed analyses about the condition of Mr. Burnett's lumbar spine in radiology reports and medical records.[29] Therefore, the evidence still exists for the retained defense expert to examine and rely on when opining about the condition of the spine.

---

[26] Rec. Doc. 405-1, the movers' memorandum in support of sanctions, p. 8.

[27] *See* **Exhibit 1**, 11-18-2020 MRI Images: Burnett's Lumbar Spine, R001590a (containing 71 MRI images of Burnett's lumbar spine on Nov. 18, 2020); **Exhibit 2**, 2-22-2022 MRI Images: Burnett's Lumbar Spine, R000280a (containing 71 MRI images of Burnett's lumbar spine on Feb. 2, 2022); **Exhibit 3**, 5-18-2022 CT Scan Images: Burnett's Lumbar Spine, R001558a (containing 536 CT Scan images of Burnett's lumbar spine on May 18, 2022).

[28] *See* **Exhibits 1-3** (imaging recorded on November 18, 2020, Feb. 2, 2022, and May 18, 2022 respectively).

[29] *See, e.g.*, **Exhibit 4**, 11-18-2020 Radiology Report: Burnett's Lumbar Spine, R000246-R000247 (analyzing the MRI imaging captured on Nov. 18, 2022 of Mr. Burnett's lumbar spine); **Exhibit 5**, 2-3-2022 Dr. Henry Small Medical Record for Burnett, R000594-R000596 (describing the medical condition of Mr. Burnett's lumbar spine as it existed on Feb. 3, 2022).

Considering the totality of the circumstances, the Court should hold that the movers have not proven bad faith to enter any sanction related to the surgery or Mr. Burnett's back injuries in general. A fair resolution of the issue should simply be that Mr. Burnett may not point out to the trier of fact that the movers' IME physician did not examine him before the surgery.[30]

And that point dovetails into the third element which the defendants have failed to establish—relevance. As noted, in the context of spoliation, the *relevance* inquiry takes into account the *prejudice* which the non-destroying party shows that it has suffered.[31] In this case, the movers have made no showing of prejudice. They have (and will have) access to all of the medical records leading up to the surgery itself—including all radiological imaging and treating physician reports. Moreover, the movers have presented no testimony from their IME physician that physically examining Mr. Burnett's body before the surgery would have meaningfully altered or impacted the opinion he presently holds. This is especially true here, where past deposition testimony of the very physician who conducted the IME of the plaintiff on behalf of the movers shows that seeing a plaintiff in person is not essential to his ability to formulate his opinions.[32] This is yet another reason why the Court should decline to enter a spoliation sanction in this case.

---

[30] *E.g. Rogers*, 215 F. Supp. At 520 ("Furthermore, while it is clear to the Court that counsel for Plaintiffs failed to live up to the spirit, if not the letter, of his commitment, this is a far cry from proving that counsel's conduct was deliberate and made with the intention to conceal the evidence. This is Defendants' burden in order to justify the relief requested, whether the relief be in the form of excluding the evidence or giving the jury an adverse presumption instruction. Defendants have failed to meet this burden and, accordingly, the evidence of surgery will not be excluded nor will an adverse presumption instruction be given. However, the Court instructs counsel for Plaintiffs that he is not to attempt to use at trial the fact that Defendants' IME expert did not physically examine Rogers before the surgery and that therefore his opinion is less worthy of acceptance.").

[31] *Knott v. Lowe's Home Centers, LLC*, 2021 WL 1877377 at *3 (W.D. La. 2021) (quoting *Consol. Aluminum Corp.*, *v. Alcoa, Inc.*, 244 F.R.D. 335, 346)).

[32] **Exhibit 6**, excerpts from deposition of Dr. David Gordon Vanderweide in *Michael Eaglin v. Noble Drilling*, pp. 55-56 (noting the fusion); *id*. at pp. 58-59 ("Q. Does the fact that you are not treating and have not seen Mr. Eaglin render you unable to review his records and make determinations and opinions regarding Mr. Eaglin's condition and the necessary treatment? A. No. – Mr. Findley: Form and Leading. A. No m'am."); *id*. at pp. 221-22 ("Q. Does the fact that you have not seen Mr. Eaglin

## II-C.

To the extent that the Court is inclined to enter a spoliation sanction—which, respectfully, it should not do—prejudice remains a significant factor. "The Court may redress spoliation only so far as necessary to remedy the spoliation; remedies must be attune to the egregiousness of the conduct and prejudice to the aggrieved party."[33]

The undersigned did not act in bad faith. But regardless, the movers have made no showing of prejudice. Any spoliation order that the Court enters should be only so far as necessary to remedy spoliation. The exclusion of evidence of the surgery itself—a surgery which everyone concedes did happen—is unwarranted. So, too, is exclusion of Mr. Burnett's back injuries in general. The objective, record evidence of Mr. Burnett's back injury is detailed at length in his medical records, none of which the movers have alleged to been destroyed or spoliated. At most, the Court might enter an adverse inference instruction but, as noted, even that is likely a bridge too far because the movers have made no showing that their own defensive case would have looked any different had they performed a pre-surgery IME. Judge deGravelles' opinion in *Rogers v. Averitt Express, Inc*. prescribes the appropriate remedy—if any—under these circumstances:[34] an order preventing the claimant from stating or making mention that the movers' IME physician did not examine or evaluate Mr. Burnett prior to his fusion surgery.

## III.

For these reasons, the Court should deny the movers' motion.

---

or treat him as a patient of your own change or alter the manner in which you review the records and formulate your opinions? A. No ma'am. Q. Does it minimize or lessen the reliability of your opinions? A. No.").

[33] *Luxottica Group, S.p.A. v. Ochoa's Flea Market, LLC*, 2022 WL 836832 at *2 (S.D.T.X. 2022).

[34] *Rogers*, 215 F. Supp. 3d at 520.

Respectfully submitted,

/s/      Kyle Findley

J. Kyle Findley (#34922)
kfindley@arnolditkin.com
Adam Lewis (#37492)
alewis@arnolditkin.com
John G. Grinnan (*pro hac vice*)
jgrinnan@arnolditkin.com
**ARNOLD & ITKIN LLP**
6009 Memorial Drive
Houston, TX 77007
Tel: 713.222.3800
Fax: 713.222.3850

**ATTORNEYS FOR CLAIMANT PATRICK BURNETT**

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing pleading was served on counsel of record by electronic means, including the CM/ECF system, this 29th day of November, 2022.

/s/      J. Kyle Findley (#34922)

11