**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **ALL COAST, LLC** | **CIVIL ACTION NO: 21-258** |
| | **c/w  21-337,  21-464,  21-822,  21-1968,  21-** |
| **VERSUS** | **1969, 21-1981, 21-1982, 21-2075, 21-2227** |
| | |
| **SHORE OFFSHORE SERVICES, LLC** | **SECTION "A"** |
| | **HON. JAY C. ZAINEY** |
| | |
| | **MAGISTRATE: (4)** |
| | **HON. KAREN WELLS ROBY** |
| | |
| | **APPLIES TO ALL CASES** |

**MODERN AMERICAN RAILROAD SERVICES, L.L.C., SHORE OFFSHORE
SERVICES, LLC, AND PREMIER OFFSHORE CATERING, INC.'S JOINT
SUPPLEMENTAL MEMORANDUM IN SUPPORT OF THEIR MOTION FOR
SANCTIONS (REC. DOC. 405) FOR PATRICK BURNETT'S SPOLIATION OF
EVIDENCE AND DISREGARD OF THIS COURT'S ORDER**

After the oral argument on Movants' Motion for Sanctions for Patrick Burnett's

Spoliation of Evidence and Disregard of this Court's Order (Rec. Doc. 405), the Court ordered

that Claimant, Patrick Burnett, "be deposed about when he received surgical recommendations,

and if/when he communicated this information to his counsel"; that Movants "submit an affidavit

from Dr. Vanderweide that speaks to what, if any, evidence was spoliated as indicated by

Movants"; and for supplemental briefing on the issue at hand (Rec. Doc. 418). Here, in

accordance with the Court's December 8, 2022 Order (Rec. Doc. 418), Movants provide:

> (1) A summary of the testimony from Burnett's limited deposition, where he
> testified that he <u>did not</u> communicate his surgical recommendations to his
> attorneys;
>
> (2) The affidavit of Dr. Vanderweide, describing the evidence that was spoliated
> by Burnett's failure to appear for a pre-surgical IME; and
>
> (3) Further briefing of additional jurisprudence, supporting the sanction of
> exclusion of evidence of Burnett's alleged back injuries, including the New York
> case believed to be referenced by the Court at the December 7, 2022 hearing.

The reasons provided herein, amongst those previously briefed by Movants (Rec. Doc. 405; Rec. Doc. 421), establish that the Court should exclude any and all evidence related to Burnett's alleged back injury or, alternatively, at the very least, grant Movants an adverse inference on the same issues.

This Court may observe a pattern developing in the cases before it: where a personal injury plaintiff undergoes substantial non-emergent surgeries either with no notice to the defendants or in disregard of a defendant's IME rights, typically reiterated by a notice letter to the plaintiff's counsel. There should be recourse for a defendant where a plaintiff resorts to this litigation tactic, which obviously results in the loss of relevant evidence, deprives a personal injury plaintiff of a legitimate second medical opinion, and results in alleged increased monetary damages at stake due to the surgeries and the effect of such surgeries on a plaintiff's return to work capacity. This is precisely what has happened here with Burnett; and as briefed in Movants' Reply Memorandum (Rec. Doc. 421), this was not an isolated incident of spoliation but, instead, presents a thematic pattern of conduct for the other claimants in this action represented by the same counsel. As wisely noted in the U.S. Eastern District New York case that this Court is believed to have referenced at the December 7, 2022 oral argument, "the applicable sanction should seek to achieve the prophylactic, punitive, and remedial aims of the spoliation rules."[1] This case presents a clear-cut opportunity to remedy this wrong and, moreover, to signal to the bar what will happen to litigants who so freely disregard the rules.

To put this conduct in perspective, Burnett was receiving maintenance and cure, essentially the equivalent of workers' compensation for an alleged Jones Act Seaman. Nonetheless, his counsel provided a "Letter of Protection," *i.e.*, a guarantee to Burnett's medical

---

[1] *Kang v. Perri*, No. 20-00746, 2021 WL 5507987, at *6 (E.D.N.Y. Aug. 25, 2021), *report and recommendation adopted*, No. 20-CV-746 (MKB) (PK), 2021 WL 4487876 (E.D.N.Y. Sept. 30, 2021).

providers; and neither Burnett nor his counsel ever notified Movants,[2] including the alleged Jones Act employer (Premier Offshore Catering, Inc.),[3] who was paying maintenance and cure, of the recommended surgeries. There is no reason for this course of action other than to keep the surgeries a secret – a pattern (or scheme) which has been repeated over the course of several claims in this case in which those claimants are also represented by Burnett's counsel.[4]

## I.  THE LIMITED DEPOSITION OF PATRICK BURNETT

Burnett's deposition regarding "if/when" he communicated surgical recommendations to his attorneys was completed on January 16, 2023.[5] The Court may recall that the first of the surgeries subject of the Movants' Motion was a weight loss surgery, recommended by Burnett's treating Houston-based orthopedic surgeon, Dr. Henry Small. This weight loss surgery was to be completed in advance of an unspecified lumbar surgery; and Burnett testified at his limited deposition that he was recommended for this surgery as of December 3, 2020.[6] The weight loss surgery was eventually performed eleven (11) months later on November 5, 2021[7]; and when questioned regarding whether Burnett communicated the surgery recommendation to his attorneys, Burnett responded "No."[8]

Regarding his **five-level back surgery**, Burnett testified that a possible back surgery was first discussed with Dr. Small in either 2020 or 2021,[9] likely at his second appointment on December 3, 2020. This is memorialized by Dr. Small's treatment notes from this date,

---

[2] A Friday afternoon, at 4:46 p.m., "document dump" four days before the original surgery date for Burnett's five-level back surgery, which consisted of over 1,300 pages, is akin to no notice at all.
[3] Premier contests Burnett's Jones Act seaman status and maintains he is not a seaman, and Premier reserves all rights to brief this issue for the Court.
[4] This is not the only case involving similar patterns or tactics involving plaintiffs represented by Burnett's counsel's law firm. *See In the Matter of Ingram Barge*, No. 20-00313 (M.D. La.), at Rec. Doc. 76-1 in that matter.
[5] Ex. Supp. Memo 1, Transcript of Oral & Videotaped Deposition of Patrick Burnett (in pertinent part).
[6] *Id*. at p. 19:16–20.
[7] Rec. Doc. 405-6 – November 5, 2021 Operative Report
[8] Ex. Supp. Memo 1, at p. 22:8–16.
[9] *Id*. at p. 27:2-11.

indicating that this appointment was a "telehealth visit."[10] While a back surgery had been discussed with Dr. Small in 2020 and/or 2021, Burnett testified that the specific back surgery eventually undergone was not recommended and scheduled until July 11, 2022.[11] As with the weight loss surgery, Burnett testified that he never communicated this surgical recommendation to his counsel.[12] Importantly, however, as Burnett's counsel admitted in Open Court at the December 7, 2022 oral argument, Burnett's counsel received notice of this surgery recommendation and scheduling a week later, on July 18, 2022.[13]

During the course of questioning regarding this surgical recommendation, Burnett testified that this back surgery was originally scheduled for August 30, 2022, and that leading up to and through that original surgery date, he never communicated the surgical recommendation or scheduling to his attorneys.[14] Burnett also confirmed during his limited deposition that this back surgery was twice rescheduled from the original surgery date of August 30, 2022, to the actual surgery date of September 6, 2022 (four days after the Court's order granting of, *inter alia*, an IME of Burnett's back (Rec. Doc. 377)).[15] Burnett testified that during this period, when his surgery (in Houston) was twice rescheduled (first from August 30, 2022, to September 2, 2022, then from September 2, 2022, to September 6, 2022), he still did not communicate the recommendation or rescheduling for his back surgery at any time to his lawyers.[16] ***Quite interestingly***, Burnett provided a sworn verification, appearing to be dated August 29, 2022, to Premier's First Set of Interrogatories, purportedly notarized in Harris County, Texas, by a Legal Assistant at Burnett's counsel's law firm, which at Interrogatory No. 12 specifically asks, *inter*

---

[10] Rec. Doc. 405-2.
[11] Ex. Supp. Memo 1, at pp. 30:5 – 33:10.
[12] *Id*. at p. 35:4–13, pp. 42:3–45:1.
[13] Ex. Supp. Memo 2, December 7, 2022 Hearing Transcript. at p. 25:13-20.
[14] Ex. Supp. Memo 1 at p. 35:4–13.
[15] *Id*. at pp. 42:3 - 45:1.
[16] *Id*.

*alia*, whether any surgeries have been schedule or recommended.[17] Notwithstanding this verification, Burnett testified that he did not discuss these surgery recommendations with his lawyers.

Burnett underwent a five-level back surgery on September 6, 2022, and testified he was discharged from in-patient care on September 9, 2022. Per Burnett's testimony, he returned to the hospital later that day and remained there through October 4, 2022 (nearly one month), due to an infection complication.[18]  These dates were first learned at Burnett's limited deposition on January 16, 2023, as no medical records or information has been provided about this from his attorneys. While in the hospital during this period, Burnett underwent two general anesthesia procedures for infection and wound cleaning, the first of which was undergone on September 22, 2022,[19] and the second shown in the records to have been undergone on September 29, 2022.[20] Burnett testified that he never communicated either surgical recommendation to his attorneys.[21] It is worthy of note that Burnett appeared for his Court-ordered IME with Dr. Vanderweide on October 5, 2022, the day after Burnett testified he was discharged from the hospital; and never was it communicated to Movants that these surgeries had been undergone, much less that he was just discharged from the hospital, which, given his condition, rendered any attempt for a physical examination in vain.

Among Burnett's several surgeries, most notably his five-level lumbar surgery, Burnett was asked "did you ever tell any of your lawyers that you had been scheduled for this surgery?"

---

[17] Ex. Supp. Memo 3, Plaintiff Patrick Burnett's Answers and Objections to Defendant/Claimant Premier Offshore Catering, Inc.'s First Set of Interrogatories (in Pertinent Part) with Sworn Verification.

[18] Ex. Supp. Memo 1, at pp. 72:5 – 73:22, 74:9-24, 57:12-58:1, and 53:8–17.

[19] Ex. Supp. Memo 4, September 22, 2022 Operative Report for first infection and wound cleaning surgery (P. Burnett 000189).

[20] Ex. Supp. Memo 5, September 29, 2022 Operative Report for second infection and wound cleaning surgery (P. Burnett 000190).

[21] Ex. Supp. Memo 1, p. 80:12–21; *see also* at p. 50:6–14, where Patrick Burnett referred to the infection and wound cleaning surgeries as "wound care cleaning" rather than surgeries.

to which Burnett responded "No."[22] When asked why he did not tell his lawyers about his surgery recommendations, Burnett responded:

> Q: Why?
>
> A: Why what?
>
> Q: Why not tell them?
>
> A: My lawyers don't do medical. My lawyers do – What they call it, John [Grinnan, Burnett's counsel]? Well, I mean, I'm not asking. They handle my court stuff and my – I mean I can't call up my lawyers and tell them to write me a prescription or do you think I need this kind of surgery. So that's not his field, that's not their field.[23]

In response to these questions posed by Burnett and to his testimony that he never communicated any of the surgical recommendations to his attorneys, Burnett was then asked whether he had authorized anyone, or was aware of anyone, communicating these surgical recommendations to his attorneys.[24] Burnett testified that, to his knowledge, no one had spoken to his lawyers about his surgeries.[25] He further testified that he never authorized anyone to discuss these surgical recommendations with his counsel. Specifically, Burnett testified:

> Q: [] Did you ever authorize anyone else to discuss the surgery recommendations that we've been discussing here today with your attorneys?
>
> A: No.[26]

Burnett was also specifically asked whether he had authorized his treating orthopedic surgeon, Dr. Henry Small, to discuss these surgical recommendations with his counsel. Burnett responded as follows:

> Q: Just to follow up on that point, did you ever authorize Dr. Small to talk to your lawyers about his surgical recommendations?"

---

[22] *Id*. at p. 35:13-18.
[23] *Id*. at pp. 35:22 – 36:7.
[24] *Id*. at p. 60:11–23.
[25] *Id*. at p. 61-62:4:23.
[26] *Id*. at p. 60:20–23.

MR. GRINNAN: Object to the form. This has been asked and answered a few times now.

BY MR. RUFTY: Q: Subject to the objection, you can answer.

MR. GRINNAN: Okay. Actually, we're going to – subject to our reservation of privilege, you can answer one more time and then this question is not getting asked again.

A: No.[27]

This testimony is simply incredible for many reasons, with one being that there was written discovery to Burnett asking specifically about his surgery recommendations,[28] with Burnett having apparently verified responses to one set of interrogatories (purportedly notarized in Harris County, Texas, by an Arnold & Itkin Legal Assistant) one day prior to the original surgery date for his five-level back surgery.[29] Another reason is that Burnett's counsel had apparently guaranteed payment for the surgery.[30] This begs the question: how, in a personal injury action, can a plaintiff have no communication with his lawyers about his treatment, particularly when the lawyers apparently have guaranteed payment for that treatment through "letters of protection"?[31]

Given the limited scope of the deposition permitted by this Court's Order, questions could not be asked about whether Burnett's attorneys provided him with the seven written pre-surgery IME demands from Movants, which would inform any reader of a legal demand to

---

[27] *Id.* at p. 82:8–19.
[28] Exhibit Supp. Memo 6, Plaintiff Patrick Burnett's Second Answers and Objections to Defendants' Omnibus First Set of Interrogatories (in Pertinent Part) with Sworn Verifications (**Note:** Omnibus Discovery Requests were originally propounded on April 4, 2022; Burnett's Original Responses were provided on July 11, 2022, Burnett's First Supplemental Responses were provided on August 26, 2022; and the attached Second Supplemental Responses were provided on October 21, 2022);  Exhibit Supp. Memo 3.
[29] Exhibit Supp. Memo 3.
[30] Again, even this conduct is baffling when Burnett was receiving maintenance and cure from his employer.
[31] Rec. Doc. 421, at p. 3 n. 4.

preserve evidence. If Burnett received those, he willfully disregarded them. Nonetheless, there is no question that Burnett's attorneys received all seven demands.

Similarly, given the limited scope of the deposition, questions could not be asked about whether Burnett knew about the motion to compel his IME that had been pending since July 13, 2022 (Rec. Doc. 345) or whether he knew about the Order compelling his IME (Rec. Doc. 377). Other than providing more context of the nature of the spoliation here, whether Burnett's counsel provided the IME demands or not to Burnett, whether Burnett's counsel informed Burnett of the motion to compel IME, and whether Burnett's counsel timely informed Burnett of the Order compelling the IME, are all immaterial because counsel are legal agents for a disclosed principal; thus, the demands sent to counsel are the same as if Burnett had received them himself.[32] Otherwise said, a client is bound by the knowledge of his counsel.

At oral argument it was represented by counsel for Burnett that he did not know whether anyone at his firm checked the e-filing notice on September 2, 2022 – sent to sixteen (16) recipients at Burnett's counsel's law firm – that circulated the Order compelling the IME.[33] Never mind that Premier's counsel emailed four of Burnett's counsel on that same day the Order was circulated to further advise of the Order and again demand the IME.[34] This Court remarked that it is knowable when exactly a specific e-filing notice recipient clicks the link to view the document, so while Movants do not have access to this information, presumably the Court's internal records contain the answer to this question.

---

[32]  *Orgeron v. Mine Safety Appliance Company*, 603 F.Supp. 364 (E.D. La. 1985) (citing *Link v. Wabash Railroad*, 370 U.S. 626 (1962); *T. H. Martin v. Schwing Lumbar & Shingle Co., Inc.*, 81 So.2d 852 (1955); *Martin v. White*, 219 So.2d 219 (La.App. 1 Cir. 1969), and other cases) (as cited in the *Silmon* briefings, *see* Rec. Doc. 421-11, pp. 3-4).
[33] Ex. Supp. Memo 2, at p. 12:25 – 13:11.
[34] Rec. Doc. 405-8, pp. 6-7 - Email from Heather von Sternberg dated September 2, 2022.

Regardless, what Burnett's testimony establishes is simply that Burnett purportedly <u>over the course of 18 months</u> kept his surgery schedule a secret from his lawyers. If accepting this testimony as truthful, apparently his lawyers did not care to ask about his surgery schedule notwithstanding repeated IME demands, the ongoing payment of maintenance and cure, a motion to compel, this Court's Order, and outstanding written discovery asking specifically for this information.

Burnett's testimony paints a picture where his medical care and legal representation for his personal injury claims are wholly separate from one another. Such testimony in the context of a personal injury claim is nonsensical and on its face is unrealistic, and Movants are almost certain that Burnett's counsel's office coordinated his surgeries. After all, Burnett, a Mississippi resident allegedly injured in Louisiana, who has not been working since October 2020, has undergone four surgeries in Houston, Texas (where his trial attorneys are located) at an estimated cost in excess of $675,000 for the weight loss and initial lumbar surgery alone.[35] Indeed, the billed cost for the subject five-level lumbar surgery, which Burnett later submitted to his employer – Premier – as cure, was approximately $500,000.

All four of these surgeries were performed at River Oaks Hospital & Clinic ("<u>River Oaks</u>"), with all but the weight loss surgery performed by Dr. Small.[36] Each of the surgery scheduling forms completed by Dr. Small for the lumbar surgeries, and directed to River Oaks, reflect the insurance as "LOP."[37] "LOPs" are also known as "Letters of Protection" (as explained in Movants' Reply Brief, Rec. Doc. 421, p. 3) and are routinely used in personal injury litigation

---

[35] <u>Ex. Supp. Memo 7</u>, Bills related to November 5, 2021 weight loss surgery (P. Burnett R001319, P. Burnett R000623, and Burnett-Auth.-00359); *see also* Rec. Doc. 405-11 at p. 3.

[36] *See* <u>Ex. Supp. Memo 8</u>, September 6, 2022 Operative Report (P. Burnett 000185); <u>Ex. Supp. Memo 4</u>, September 22, 2022 Operative Report (P. Burnett 000189); <u>Ex. Supp. Memo 5</u>, September 29, 2022 Operative Report (P. Burnett 000190); and <u>Rec. Doc. 405-6</u>, November 5, 2021 Operative Report.

[37] <u>Rec. Doc. 405-11</u>, at p. 2 (Physician Surgery (Scheduling) Order Form, dated July 11, 2022); *see also* <u>Ex. Supp. Memo 9</u>, Additional Physician Surgery (Scheduling) Order Forms (in Chronological Order) (Burnett-Auth.-01382, 01380, 01378, 01376).

where a plaintiff's attorney guarantees payment for the plaintiff's medical treatment on the basis there is a recovery made on behalf of the plaintiff.[38] The LOP insurance designation is not only consistent with routine personal injury litigation and representation but is also consistent with Burnett's medical records from River Oaks. These records indicate that Arnold & Itkin, LLP, Burnett's attorneys, are the "primary insurance" for treatment Burnett received at River Oaks in connection with the injuries he alleges in this litigation.[39] This includes the weight loss surgery, performed at a charge of at least $217,026.33.[40] Further, Dr. Small's intake forms show that Burnett authorized Dr. Small to release information to his "insurance company" which, at the time the form was completed, was left blank.[41] Considering that all but one of the personal injury claimants represented by Arnold & Itkin have been treated, and undergone surgery performed, by Dr. Small,[42] the logical conclusion is that Burnett's "insurance company" was Arnold & Itkin, pursuant to an LOP, and that, despite his testimony otherwise, he authorized Dr. Small to discuss his surgeries with Arnold & Itkin, which had guaranteed payment.  In fact, it defies belief that Dr. Small would schedule and perform these surgeries without passing it by the guarantor for the payment of those surgeries.

In light of such unreliable testimony from Burnett, a curious mind would consider whether there is another explanation, *i.e.*, that Burnett and his attorneys discussed the Court's Order and/or Movants' written requests for a pre-surgery IME but Burnett nevertheless went forward with the surgery. Of course, Movants need not prove such, because the knowledge of

---

[38] Again, it is baffling why an "LOP" was issued, when Burnett is claiming and is being provided with maintenance and cure.

[39] Ex. Supp. Memo 10, Example medical records from River Oaks (at Burnett-Auth.-00777), showing primary insurance address as "6009 Memor[]al Dr Houston TX 77007 7035," which matches address provided in Burnett's counsel's signature block, for insurance company "SP 113," order generation date August 26, 2022.

[40] *Id.*., Example medical records from River Oaks, at Burnett-Auth.-00943.

[41] Ex. Supp. Memo 9, at Burnett-Auth.-01311.

[42] *See generally* Rec. Doc. 421 at pp. 2 - 6.

counsel is imputed to the client[43]; but it is worth considering and certainly seems more likely than Burnett's narrative.

Concerned about Burnett's personal involvement in this saga, this Court asked many questions of counsel to, in the Court's words, make a "record."[44] Movants, having been constrained by the attorney-client privilege that exists between Burnett and his counsel and this Court's order for the limited deposition as to "when/if" surgical recommendations were communicated, are left without any recourse to further determine Burnett's awareness or level of contumacious conduct in violating this Court's Order (Rec. Doc. 377), such as whether Burnett was ever presented with one of the seven IME demands. Such constraints, of no fault of Movants, should not be used to deflect from the simple and straightforward facts at issue here. Specifically, that Burnett, whether individually, through his counsel, or some combination thereof, ignored years of written requests for pre-surgery IMEs, the import of the pending motion to compel that IME, and/or this Court's Order when he underwent the lumbar and weight loss surgeries for which sanctions are appropriate and jurisprudentially supported as further discussed below.

## II.      DR. VANDERWEIDE'S AFFIDAVIT

The second component of this Court's December 8, 2022 Order (Rec. Doc. 418) required Movants to provide an affidavit from Dr. Vanderweide (attached as <u>Exhibit Supp. Memo 1</u>, including Dr. Vanderweide's *Curriculum Vitae*) "that speaks to what, if any, evidence was spoliated." Courts have traditionally not required such evidence to establish sanctions for violation of a court order under Fed. R. Civ. P. Rule 37(b) or to exclude evidence for

---

[43] *Orgeron v. Mine Safety Appliance Company*, 603 F.Supp. 364 (E.D. La. 1985) (citing *Link v. Wabash Railroad*, 370 U.S. 626 (1962); *T. H. Martin v. Schwing Lumbar & Shingle Co., Inc.*, 81 So.2d 852 (1955); *Martin v. White*, 219 So.2d 219 (La.App. 1 Cir. 1969), and other cases) (as cited in the *Silmon* briefings, *see* Rec. Doc. 421-11, pp. 3-4).

[44] <u>Ex. Supp. Memo 2</u>, at p. 22:1-2.

spoliation.[45] Nevertheless, in compliance with the Court's Order, Movants have obtained an affidavit from Dr. Vanderweide that speaks to the evidence that was spoliated.

In his affidavit, Dr. Vanderweide explains that his examination is clinical evidence of Burnett's physical condition[46] and that his examination of Burnett was limited, having only seen Burnett after he underwent three surgeries in the month preceding the IME,[47] with one of the procedures less than a week before the IME. Dr. Vanderweide explained that evidence of Burnett's pre-surgical medical condition (*e.g.*, Burnett's pre-surgical responses to provocative tests and a neurological examination) "had been irretrievably lost at the time of [his] examination."[48]

Specifically, Dr. Vanderweide explained that provocative tests, such as the Femoral Stretch Test, Straight Leg Raised test (the Lasègue test), Crossed Straight Leg Test, Supine Straight Leg Raise Test, and Seated Straight Leg Raise Test, are used as part of a physical examination to assist in determining potential sources of discogenic pain.[49] All such evidence was "permanently lost at the time of [Dr. Vanderweide's] examination because of the lumber surgeries undergone by Mr. Burnett" prior to the IME.

As further explained by Dr. Vanderweide, a neurological examination, which can consist of a strength exam, sensory exam, and reflex exam, "is an inherent part of the physical examination of a patient's lumbar spine."[50] Similar to the provocative tests, Dr. Vanderweide explained that it was "impossible to personally assess and obtain evidence of Mr. Burnett's pre-

---

[45] Rec. Doc. 421-9, 10, 11, and 12, Pertinent Pleadings from *Silmon v. Can Do, Inc.*, Civ. No. 91-0584 (E.D. La. 1991).
[46] Ex. Supp. Memo 11, Affidavit of David G. Vanderweide, at p. 1.
[47] *Id*.
[48] *Id*.
[49] *Id*.
[50] *Id*.

surgical responses to these examinations … having only seen him after the lumbar surgeries."[51] Evidence of Burnett's "pre-surgical responses to a neurological examination were irretrievably lost at the time of [Dr. Vanderweide's examination [Burnett's] lumbar spine."[52] Again, having seen Burnett only after the surgeries were completed, Dr. Vanderweide not only had no way to personally and independently obtain evidence of such responses, the absence of such in the records preclude a physician like Dr. Vanderweide from forming an opinion based on responses to this inherent aspect of a lumbar spine physical examination.

Further, evidence of Burnett's "presurgical posture, range of motion, and tenderness were all lost following [Burnett's] lumbar surgery on September 6, 2022."[53] Dr. Vanderweide explained that "the ability to test for symptom magnification and organic-pain behaviors using the eight Waddell Signs and other validity tests to assess Mr. Burnett's pre-surgical medical condition were forever lost once Mr. Burnett underwent lumbar surgery."[54] To this point, Dr. Vanderweide concluded:

> Such irreversibly lost evidence would have been relevant in examining the pre-surgical medical condition of Mr. Burnett's lumbar spine and forming an opinion of diagnosis(es), recommended treatment, if any, and whether Mr. Burnett had reached maximum medical improvement prior to undergoing the lumbar surgeries.[55]

The significance of this now lost evidence is further discussed below, along with additional briefing on this issue of spoliation.

---

[51] Id.
[52] Id.
[53] Id.
[54] Id. at pp. 1-2.
[55] Id. at p.2.

III.    **SANCTIONS FOR BURNETT'S VIOLATION OF THIS COURT'S ORDER AND SPOLIATION OF EVIDENCE**

To briefly recap the pertinent timeline regarding Burnett's violation of this Court's Order (Rec. Doc. 377) and the spoliation of evidence of his back condition, largely set forth in Movants' original briefing (Rec. Doc. 405-1):

- A motion to compel an IME of Burnett's back, among other body parts, was filed on July 13, 2022, following seven written requests for a pre-surgery IME dating back to December 9, 2020 (Rec. Doc. 345).

- On July 11, 2022, just two days before the motion to compel was filed, and unbeknownst to Movants, Burnett was recommended for the five-level lumbar surgery for the first time. [56]

- A week later, on July 18, 2022, counsel for Burnett received notice that the five-level back surgery had been recommended and scheduled, as counsel admitted in Open Court at the December 7, 2022 oral argument.[57]

- Then, on July 26, 2022, Burnett filed an Opposition (Rec. Doc. 353) to the motion to compel. **Burnett's Opposition (Rec. Doc. 353) made no mention of the recommended and scheduled five-level back surgery, which Burnett's counsel admitted during the December 7, 2022 hearing on the instant motion was received by their office more than a week before filing the Opposition.**[58]

On August 26, 2022, Burnett produced three pages of records related to the five-level lumbar surgery recommendation and it being scheduled for August 30, 2022. This production of three pages related to the five-level lumbar surgery was made at 4:46 p.m., on a Friday afternoon, included within over 1,300 other pages of documents, and only after a motion to compel had been filed against Burnett and the four other personal injury claimants represented by Burnett's counsel to supplement their responses to Omnibus written discovery. Upon questioning by this Court regarding the production of the records for the recommendation and scheduling of the five-level lumbar surgery at the December 7, 2022 hearing, counsel for Burnett

---

[56] Rec. Doc. 405-11, pp. 1 – 2.
[57] Ex. Supp. Memo 2, at p. 25:13-20.
[58] Ex. Supp. Memo 2, at p. 25:13-20.

admitted that no specific reference to the records related to the surgery recommendation were made with the production.[59] In other words, it was buried in over 1,300 pages of documents.

On September 2, 2022, this Court issued its Order (Rec. Doc. 377) compelling Burnett to undergo an IME prior to any surgery for, *inter alia*, his back. Within a few hours of this Order being issued, on the same day, counsel for Premier (by email) promptly sought to schedule Burnett for the IME and requested dates for any scheduled surgeries.[60] These efforts were ignored; and Burnett underwent the five-level lumbar surgery on September 6, 2022, in violation of this Court's Order. It was not until September 9, 2022, a week after this Court's Order was issued, and after multiple follow-up emails from counsel for Premier and the potential for returning to Court to have the IME scheduled, that Burnett provided any response to scheduling the IME, but the response itself made no mention of the surgery having already been undergone by Burnett. It is deceptive for Burnett's counsel to delay scheduling the IME following this Court's Order, all the while wholly failing to mention the five-level lumbar surgery (the records of which had been in their possession for over a month) and the two subsequent procedures. Had such information been known, the IME would obviously not have taken place on October 5, 2022; and at the time this IME was scheduled with Burnett's counsel, Burnett was actually in the hospital with complications. Not a word about this was said. Because nothing was communicated about Burnett's surgeries, on October 5, 2022, Burnett presented for the Court-ordered IME with Dr. Vanderweide, at which time Movants learned for the first time that not only had Burnett undergone the five-level lumbar surgery in violation of the Court's Order but that he had also undergone two additional surgeries related to purported infections. Such is the timeline of events.

---

[59] Ex. Supp. Memo 2, at p. 13:18-14:19.
[60] Rec. Doc. 405-8, pp. 6-7 - Email from Heather von Sternberg dated September 2, 2022.

1.      __Exclusion of Evidence is the Appropriate Sanction for Violating this Court's
        Order__

*Silmon v. Can Do II, Inc.*,[61] is the seminal case on the issue of exclusion of evidence

under the circumstances of the case at bar. *Silmon* was thoroughly briefed in Movants' Reply

Memorandum,[62] and is the case where then U.S. Magistrate Judge Ivan L. R. Lemelle excluded

evidence of a plaintiff's back surgery, including any evidence about its costs and its impact upon

plaintiff's medical condition, where the plaintiff underwent a pre-IME back surgery in violation

of Judge Lemelle's order compelling an IME of the plaintiff's back, which the plaintiff claimed

was an emergent surgery. Judge Lemelle's order was then upheld on review by then U.S. District

Court Judge Edith Brown Clement (now, United States Fifth Circuit Court of Appeals judge).[63]

The *Silmon* case has been on the books for decades and is on Westlaw. One licensed to practice

in this District, who freely has clients undergo surgeries with total disregard for IME demands,

cannot credibly claim to be unaware of this jurisprudence.

At the December 7, 2022 hearing, the Court referenced a decision out of New York but

did not refer to the case's caption or citation. [64] Movants have identified what they believe the

Court was referencing as the United States District Court for the Eastern District of New York's

decision in *Kang v. Perri*, No. 20-CV-746 (MKB) (PK), 2021 WL 4487876, at *7 (E.D.N.Y.

Sept. 30, 2021).[65] In *Kang*, the court addressed the defendant's Motion for Spoliation Sanctions

seeking dismissal of the plaintiff's claims in their entirety with prejudice, preclusion of the

plaintiff's claims for cervical spine injuries or of evidence of such injuries at trial, or an adverse

---

[61] Civ. No. 91-0584 (E.D. La. 1991).
[62] Rec. Doc. 421, pp. 6-9.
[63] *Silmon*, 1992 WL 38110 (E.D. La. 1992).
[64] Ex. Supp. Memo 2, at p. 36:11-14.
[65] Adopting the Report and Recommendation Order of U.S. Magistrate Judge Kuo in its entirety. *See Kang v. Perri*,
No. 20-00746, 2021 WL 5507987 (E.D.N.Y. Aug. 25, 2021), *report and recommendation adopted*, No. 20-CV-746
(MKB) (PK), 2021 WL 4487876 (E.D.N.Y. Sept. 30, 2021).

inference instruction.[66] There, the plaintiff had been allegedly injured in a motor vehicle accident after which, on April 20, 2020, the defendant provided the plaintiff with a single "Preservation Notice" letter in which it demanded plaintiff appear for an IME prior to undergoing any surgery pertinent to litigation in that case.[67] Plaintiff acknowledged receipt of the Preservation Notice which further stated that the defendants would seek spoliation sanctions if the examinations were not held before surgery.[68] On October 6, 2020, the plaintiff testified at his deposition that his doctor had suggested he undergo a discectomy but with no testimony that he would be undergoing the surgery or when.[69] Three weeks later, on October 31, 2020, the plaintiff underwent a cervical discectomy.[70] Shortly after learning about the surgery, the defendant filed its motion to address spoliation sanctions.[71] A hearing was held, where the plaintiff's counsel acknowledged he received the Preservation Notice but provided no explanation for failing to notify defense counsel before the plaintiff underwent the cervical discectomy.[72] To assist the Court in determining whether the surgery had resulted in the loss of evidence, the defendant was granted leave to supplement the motion indicating what specific evidence was no longer available because of the cervical discectomy.[73]

Following the defendant's supplemental submission regarding the loss of evidence from their IME physician in the form of a report (not an affidavit or by deposition testimony), the court assessed whether any evidence had been spoliated.[74] In doing so, the court found that the plaintiff had a duty to preserve the evidence upon receipt of the Preservation Notice, further

---

[66] *Kang*, No. 20-00746, 2021 WL 5507987 at *1.
[67] *Id*.
[68] *Id*.
[69] *Id*. at *2.
[70] *Id*.
[71] *Id*.
[72] *Id*.
[73] *Id*.
[74] *Id*. at pp. 2 – 6.

noting that a court order is not necessary for a plaintiff to be on notice of an obligation to preserve evidence[75] and that the plaintiff in that case had not described any type of emergency circumstance that would have made the prior notification of the surgery impossible or impracticable.[76]

Here, Burnett received seven written requests for pre-surgery IMEs before undergoing the initial lumbar surgery. Four of these requests preceded the weight loss surgery. At oral argument, counsel for Burnett acknowledged receipt of pre-surgery IME requests from Movants dating back to December 2020, nearly a year before the weight loss surgery and almost two years before the lumbar surgeries. Furthermore, as previously discussed, there were no emergent circumstances for Burnett's weight loss surgery or initial lumbar surgery that would weigh against this duty to preserve. Given the more considerable efforts on Movants' part than the defendant in *Kang*, and the absence of emergent circumstances, Burnett clearly had a duty to preserve evidence of his pre-surgical back condition.

In determining the appropriate remedy,[77] the U.S. Magistrate Judge in *Kang* (whose report and recommendation was adopted in full) noted that "[a]lthough district courts have broad discretion to decide the proper sanction for spoliation, the applicable standard should seek to achieve the prophylactic, punitive and remedial aims of the spoliation rules."[78] Ultimately, the Magistrate Judge's report recommended an adverse inference for this "**single** act of spoliation"[79] that followed a single Preservation Letter. However, the plaintiff's conduct in *Kang* is drastically less egregious than Burnett's conduct here; and an appropriate sanction for Burnett's spoliation of evidence demands a more severe sanction than the adverse inference recommended, and

---

[75] *Id*. at p. 4.
[76] *Id*.
[77] *Id*. at pp. 6 – 9.
[78] *Id*. at p. 6.
[79] *Id*. (emphasis added).

adopted, in that case as the following demonstrates. In *Kang*, the plaintiff engaged in a **single** act of spoliation following a **single** written request for a pre-surgery IME. Here, as noted above, there were **seven** written requests for pre-surgery IMEs where Burnett engaged in **four** acts of spoliation. Alone, this disparity justifies the more severe sanction of exclusion of evidence.

When considering that Burnett spoliated evidence after Movants also filed a motion to compel an IME of his back, that Burnett concealed this surgical recommendation in his Opposition to the IME, and that an order compelling a pre-surgery IME had been issued in advance of this back surgery, exclusion of evidence is the necessary remedy to achieve the prophylactic, punitive and remedial aims of a spoliation sanction for Burnett's bad faith pattern of conduct leading to the intentional destruction of his pre-surgical back condition. As further demonstration of this pattern of conduct, this Court only needs to look to the other personal injury claimants represented by the same counsel in this action, who have undergone at least 17 surgeries prior to affording defendants pre-surgery IMEs, as discussed in greater detail in the Reply Memorandum (Rec. Doc. 421 pp. 2-6). The sanction of exclusion is all the more warranted when considering the pervasive pattern of conduct shown across these several claimants and should be granted to prevent such conduct in the future. As Your Honor stated in *"Spoliation: The Case of the Missing Evidence,"* recognition of sanctions for spoliation "is necessary to preserve the integrity of the system."[80]

All this in mind, exclusion of Burnett's alleged back injuries is warranted in this case.

---

[80] Hon. Karen Wells Roby and Pamela W. Carter, Louisiana Bar Journal (October 1999), *Spoliation: The Case of the Missing Evidence*, 47 La. B.J. 222.

## 2.      The Role of Prejudice in Spoliation

### a.      Non-Dispositive Factor to Determine Severity of Sanction

As extensively briefed by Movants in the Reply Memorandum, prejudice is a non-dispositive factor in determining the severity of a spoliation sanction *after* it has been determined whether the elements of a spoliation claim have been met. At least one court has acknowledged that the U.S. Fifth Circuit has not directly spoken as to whether there is a presumption of prejudice where a spoliating party intentionally destroys evidence in bad faith.[81] Nonetheless, where a plaintiff has been found to have destroyed evidence of their pre-surgical medical condition intentionally and in bad faith, courts have issued spoliation sanctions without any specific discussion as to the prejudice suffered by defendants.[82] These decisions demonstrate that either prejudice is not required or, at minimum, prejudice is presumed under such circumstances.

For example, in *Allen v. Resto,* Civ. No. 12-2242, 2013 WL 2152177 (E.D. La. May 16, 2013) (Berrigan, J.), there was no specific discussion of prejudice in U.S. District Judge Ginger Berrigan's opinion ordering an adverse inference, and leaving open the possibility of exclusion of evidence, after the plaintiff underwent surgery subsequent to the defendants' written request for a pre-surgery IME. Judge Berrigan's decision in *Allen* makes clear that if prejudice is required for a spoliation sanction, it is presumed under the circumstances where a plaintiff intentionally destroys evidence of their pre-surgical medical condition in bad faith. Thus, to the extent that prejudice is required for Movants to establish spoliation sanctions, such prejudice is presumed. Nevertheless, and as explained in greater detail below, Movants have been

---

[81] *See generally Rimkus Consulting Group, Inc. v. Cammarata*, 688 F.Supp.2d 598, 617 (S.D.Tex. Feb. 19, 2010).
[82] *See, e.g.*, *Allen v. Resto*, Civ. No. 12-2242, 2013 WL 2152177 (E.D. La. May 16, 2013) (Berrigan, J.); *Jackson v. Family Dollar Stores of Louisiana, Inc.*, Civ. No. 3:19-cv-00388, 2020 WL 6092343, at *5 (W.D. La. Oct. 15, 2020) (Doughty, J.)

significantly prejudiced due to Burnett's destruction of relevant evidence by undergoing weight loss and lumbar surgeries.

### b. Movants Have Been Prejudiced

Movants have been prejudiced as they have been precluded from obtaining the relevant evidence set forth in Dr. Vanderweide's affidavit. The significance of this evidence is demonstrated in Dr. Vanderweide's affidavit (*i.e.* its relevance to forming an opinion regarding diagnosis(es), recommended treatment, if any, and whether Burnett would have been at maximum medical improvement prior to the lumbar surgery).[83]

Of the provocative tests described in Dr. Vanderweide's affidavit, only one of the tests mentioned above, the Straight Leg Raised Test, are documented in Dr. Small's records.[84] Thus, it was all the more important for Dr. Vanderweide to personally complete the pre-surgical examination to personally assess and obtain evidence of Burnett's response to the Straight Leg Test. Absence of Burnett's pre-surgical responses to these other provocative tests, or any documentation of Burnett's pre-surgical responses to these the tests if in fact performed, forever precludes Movants and their experts from obtaining such relevant evidence as it was lost when Burnett underwent his September 6, 2022 lumbar surgery.[85] Without this evidence, Movants have been significantly prejudiced as they have been denied the opportunity to have an IME physician of their choosing render an opinion based on the full evidence of Burnett's pre-surgical back condition, including responses to these provocative tests.

---

[83] Ex. Supp. Memo 11, at p. 2.
[84] Exhibit Supp. Memo 9, example of Dr. Henry Small's Records , at Burnett-Auth.-01316-01318 (dated August 29, 2022, referencing the Straight Leg Raised Test at Burnett-Auth.-01317). Indeed, this pre-operative assessment on August 29, 2022, was completed the same day Burnett's Verification provided at Exhibit Supp. Memo 3 was purportedly notarized by his counsel's Legal Assistant.
[85] Ex. Supp. Memo 11.

Moreover, Dr. Small's records make no mention of Burnett's pre-surgical responses to many neurological tests such as hip flexion and adduction, knee extension, and ankle dorsiflexion. While Dr. Small's records provide some documentation of a neurological examination, such records do nothing to allow Dr. Vanderweide to personally and independently examine such responses. As explained by Dr. Vanderweide: "It is impossible to personally assess and obtain evidence of Mr. Burnett's pre-surgical responses to these [neurological] examinations, such as hip flexion and adduction, knee extension, and ankle dorsiflexion, having only seen Mr. Burnett after the back surgeries were completed. The ability to document his pre-surgical neurological responses has been lost."[86] Dr. Vanderweide states to the same effect regarding "evidence of Mr. Burnett's pre-surgical posture, range of motion, and tenderness," noting that:

> [T]he ability to test for symptom magnification and non-organic pain behaviors using the eight Waddell Signs and other validity tests to assess Mr. Burnett's pre-surgical medical condition were forever lost once Mr. Burnett underwent lumbar surgery. Such irreversibly lost evidence would have been relevant in examining the pre-surgical medical condition of Mr. Burnett's lumbar spine and forming an opinion of diagnosis(es), recommended treatment, if any, and whether Mr. Burnett had reached maximum medical improvement prior to undergoing the lumbar surgeries.[87]

While Dr. Vanderweide has nonetheless been able to provide an opinion, a party is prejudiced when it is denied the benefit of direct evidence to corroborate its opinion. To be clear, even without discussing such prejudice, this District previously granted the sanction of exclusion under circumstances similar to those in the case at bar, where a plaintiff underwent a back

---

[86] <u>Ex. Supp. Memo 11</u>, at p. 2.
[87] *Id*.

surgery in violation of a court order compelling an IME.[88] Simply put, violation of this Court's Order is in and of itself enough to warrant exclusion.

Respectfully submitted:

**/s/   Gavin H. Guillot**
Gavin H. Guillot, T.A. (#31760)
Salvador J. Pusateri (#21036)
Aaron B. Greenbaum (#31752)
Meredith W. Blanque (#32346)
Jacob A. Altmyer (#36352)
Jonathan D. Parker (#35275)
PUSATERI, JOHNSTON, GUILLOT &
GREENBAUM, LLC
1100 Poydras Street, Suite 2250
New Orleans, LA 70163
Telephone: 504-620-2500
Facsimile: 504-620-2510
Gavin.Guillot@pjgglaw.com
Salvador.Pusateri@pjgglaw.com
Aaron.Greenbaum@pjgglaw.com
Meredith.Blanque@pjgglaw.com
Jacob.Altmyer@pjgglaw.com
Jonathan.Parker@pjgglaw.com
**ATTORNEYS FOR MODERN AMERICAN RAILROAD SERVICES, L.L.C., AND SHORE OFFSHORE SERVICES, LLC**

**AND**

**CHAFFE McCALL, L.L.P.**

**/s/   John M. Ribarits**
John M. Ribarits (17114), T.A.
Attorney-in-charge
801 Travis St., Ste. 1910
Houston, Texas 77002
Telephone: 713-546-9800
Facsimile: 713-546-9806
Email: john.ribarits@chaffe.com

**ATTORNEYS FOR PREMIER OFFSHORE CATERING, INC.**

---

[88] Rec. Doc. 421-9, 10, 11, and 12, Pertinent Pleadings from *Silmon v. Can Do, Inc.*, Civ. No. 91-0584 (E.D. La. 1991).

OF COUNSEL:

**CHAFFE McCALL, L.L.P.**
Heather S. von Sternberg
Admitted pro hac vice
801 Travis Street, Suite 1910
Houston, Texas 77002
Telephone: 713-546-9800
Facsimile: 713-546-9806
Email: heather.vonsternberg@chaffe.com

and

Jesse G. Frank (38220)
2300 Energy Centre
1100 Poydras Street
New Orleans, Louisiana 70163
Telephone: 504-585-7000
Email: jesse.frank@chaffe.com