UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN THE MATTER OF MODERN | * | CIVIL ACTION NO. 2:21-CV-00258- |
| AMERICAN RAILROAD | * | JCZ-KWR (lead case) c/w 21-337, 21-464, |
| SERVICES, LLC, as Owner, and | * | 21-822, 21-1968, 21-1969, 21-1981, 21- |
| SHORE OFFSHORE SERVICES, | * | 1982, 21-2075, 21-2227 |
| LLC, as Bareboat Charterer and | * | Pleading applies to all cases. |
| Owner *Pro Hac Vice* of D/B THOR | * | |
| PETITIONING FOR | * | JUDGE JAY C. ZAINEY |
| EXONERATION FROM AND/OR | * | |
| LIMITATION OF LIABILITY | * | MAGISTRATE JUDGE KAREN WELLS |
| | * | ROBY |

**SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO MOTION FOR SANCTIONS**

Limitation claimant Patrick Burnett files this supplemental memorandum in opposition to the motion for sanctions filed by the limitation petitioners.[1] The procedural history and additional evidence contained in this memorandum support the denial of the limitation petitioners' motion for sanctions in its entirety.

**I.**

**Brief Background**

In this limitation case, Mr. Burnett is a personal-injury claimant. He underwent surgical procedures on his back for the injuries he sustained as a result of the limitation petitioners' conduct. The limitation petitioners have contended that Mr. Burnett's surgeries constitute the spoliation of evidence and have filed a motion seeking sanctions.[2] They contend that their defense expert, orthopedic surgeon Dr. Vanderweide, should have been permitted to perform an IME on Mr.

---

[1] *See generally*, Rec. Doc. 405, Premier Offshore Catering, Inc. Modern American Railroad Services, LLC, and Shore Offshore Services, LLC's motion for sanctions.

[2] *Id*.

Burnett before these surgeries occurred to preserve evidence of his pre-surgical condition. Mr. Burnett filed an opposition to the limitation petitioners' sanctions motion.[3]

The Court then held a hearing on that motion, and the Court issued an initial order thereafter. In its order, the Court directed that Mr. Burnett should be deposed on his communications with his counsel concerning his surgical recommendations and their timing.[4] Recognizing that any alleged prejudice was also important—as in, would Dr. Vanderweide's opinions have been different if he had conducted an IME before the surgery—the Court also ordered that Dr. Vanderweide submit an affidavit on the issue outlining "what, if any, evidence was spoliated" as contended by the limitation petitioners.[5] The Court set January 27, 2023 as the date for all parties to submit supplemental briefing.

Later—in connection with related motion practice—the Court issued a separate order compelling the limitation petitioners to produce Dr. Vanderweide for a deposition on the issue of prejudice.[6] As the Court recognized, "the parties must show that they were prejudiced by the inability of Dr. Vanderweide to perform a pre-surgery."[7] Briefing on the results of that deposition, however, is due in early March.[8]

Consequently, in accordance with the Court's orders, this supplemental brief addresses the matters established to date and not presently covered by briefing before the Court.

---

[3]  *See generally*, Rec. Doc. 409, Mr. Burnett's opposition to the defendant's motion for sanctions.

[4]  Rec. Doc. 418, court order.

[5]  *Id*.

[6]  Rec. Doc. 464, court order.

[7]  *Id*. at p. 3 ("The Court finds that since the parties must show that they were prejudiced by the inability of Dr. Vanderweide to perform a pre-surgery IME, and spoliation is a critical component in assessing the pending sanctions motion, Burnett's deposition of Dr. Vanderweide is necessary.").

[8]  *Id*.

## II.

## Relevant Procedural History

Claimant Patrick Burnett provides the following brief procedural history to further inform the Court as to the relevant timeline of litigation events that were not outlined in prior briefing:

- October 28, 2020: Mr. Burnett is stranded aboard *D/B Thor* during Hurricane Zeta;

- November 16, 2020: Mr. Burnett filed suit in Harris County State Court against multiple parties including Shore and Premier;[9]

- November 24, 2020: Notice of Removal filed in the Southern District of Texas claiming OCSLA jurisdiction;[10]

- March 4, 2021: The Thor Interests filed a Limitation of Liability action in this Court;

- March 9, 2021: Order issued in Limitation Action staying all other pending litigations;[11]

- March 19, 2021: Shore filed a Notice of Stay of Proceedings in the Southern District of Texas pursuant to Judge Zainey's March 9, 2021 order;

- March 24, 2021: Counsel for Premier emailed counsel for Burnett refusing to answer discovery, claiming the stay nullified discovery request Burnett served on Premier (deposition notice);[12]

- September 16, 2021: Mr. Burnett files motion to sever Jones Act Claims in the Southern District of Texas;[13]

- October 21, 2021: Movant Premier files a response to Burnett's Motion to Sever opposing lifting the stay, and opposing conducting any discovery;[14]

---

[9] Before this date, the limitation petition and movant Premier arranged and paid for medical examinations of Mr. Burnett for injuries he sustained as a result of the incident, including an examination specifically targeted towards his spine and lower back. *See* Exhibit 2, workers' comp medical records from Occupational Medicine Services and Exhibit 3, workers' comp medical records from Mississippi Sports Medicine.

[10] Following the removal to federal court, Mr. Burnett began sending maintenance and cure letters to Premier identifying his treating doctors. Exhibit 4, Cure demand dated December 12, 2020.

[11] Rec. Doc. 6-1.

[12] Exhibit 5, Email from Mr. Guillot, Mar. 24, 2021.

[13] Exhibit 6, Motion to Sever Claims.

[14] Exhibit 7, Premier's Response to Motion to Sever.

- January 4, 2022: Rule 26 Discovery Conference;[15]

- January 28, 2022: Mr. Burnett served Initial Disclosures identifying medical providers;[16]

- July 11, 2022: First day any discovery documents and responses were required to be exchanged pursuant to Amended Scheduling Order (Rec. Doc. 342)—and since Burnett filed suit on November 16, 2020.

### III.

### Premier's Previously Conducted Medical Examinations

The medical records in this case further undermine movants' sanctions motion. In his deposition, Mr. Burnett noted that his medical treatment related to his multiple injuries was initiated by Premier Offshore Catering through workman's compensation.[17] Premier—one of the very movants on this motion—was Mr. Burnett's employer on October 28, 2022 when the accident at issue occurred. Premier, in fact, had sent Mr. Burnett for an examination with a workers' compensation doctor just three days after the incident (on October 31, 2020).[18] In connection with that visit, Mr. Burnett gave Premier's company representative permission to be present in the room during his treatment.[19] The name of Premier's company representative's appears in the records in connection with the visit itself,[20] and that company representative signed papers in connection with

---

[15] Rec. Doc. 171 (discovery prohibited prior to this date).

[16] Mr. Burnett began producing medical records after initial disclosures in February 2022, despite no discovery requests pending.

[17] *Id*. at p. 22.

[18] Exhibit 2, workers' comp medical records from Occupational Medicine Services, p. 34 of 45 (October 21, 2020 medical record).

[19] *Id*. at p. 19 of 45 ("I give permission for my company representative to accompany me in the room during the exam.").

[20] *Id*. at p. 20 of 45 ("Company Name: Premiere Catering."); *id*. ("Company Contact: Jamie Owens.").

4

the exam on documents created by the facility.[21] This visit included a verbal interview with Mr. Burnett, as well as a physical examination of his injuries including his back.[22]

And within a week, another examination followed with a different Premier chosen workers' compensation healthcare provider. Once again, Premier had requested, authorized, and paid for this treatment.[23] **Significantly, this treatment included a physician paid for by Premier conducting an examination of Mr. Burnett's back before any surgical procedure.**[24] This examination involved a complete physical examination of Mr. Burnett that included reviewing his history, systems, a general exam, and a lumbar spine exam.[25] Based upon that exam, and previous x-rays taken, that workers' compensation doctor diagnosed Mr. Burnett with acute lumbar strain and left lumbar radiculopathy and he ordered a lumbar MRI.[26]

These examinations show that Premier, *did in fact*, have the equivalent of an independent medical examination upon Mr. Burnett's back after the accident in question and before any surgical procedures were performed. The physicians in questions were paid for by Premier and reliant entirely upon Premier's authorizations to examine Mr. Burnett and perform treatment upon him. These examinations confirm that the limitation petitioners have already had the very thing they claim they were denied in their sanctions motion. And further, these examinations conducted within days of the incident undoubtedly preserved evidence of Mr. Burnett's pre-surgical medical

---

[21] *Id.* at p. 24 of 45 ("Authorized by: Jamie.").

[22] *Id.* at p. 34 of 45.

[23] *See, e.g.,* Exhibit 3, workers' comp medical records from Mississippi Sports Medicine, at pp. 5-6 of 28 (authorization by Premier Offshore Catering for a lumbar MRI of Mr. Burnett); *similar* at *id.* at p. 16 of 28.

[24] *Id.* at pp. 20-22 of 28.

[25] *Id.* at pp. 20-21 of 28.

[26] *Id.* at pp. 21-22 of 28.

condition, and therefore, no spoliation of his condition has even arguably occurred.[27] These examinations undermine the very factual premise of the motion, as well as any theory that the movants were prejudiced.[28] They are further reason to deny the motion in full.

## IV.

### The Deposition of Mr. Burnett

Mr. Burnett was deposed, and his deposition (in rough form) is attached in full to this filing.[29] As ordered by this Court, Mr. Burnett appeared for a deposition in which the limitation petitioners could question Mr. Burnett "about when he received surgical recommendations, and if/when he communicated this information to his counsel".[30] During that deposition, and upon extensive questioning, Mr. Burnett explained that he did inform his lawyers about the scheduling for his back surgery because that is a matter between him and his doctor.[31] He also testified he never informed counsel of any rescheduling of his back surgery, or any subsequent would care procedures that occurred following his surgery.[32] Mr. Burnett explained upon continued

---

[27] Movants' claim in its motion that it has been "foreclosed the opportunity to preserve evidence of Burnett's pre-surgical condition" is therefore disingenuous, as Premier preserved the condition through its own independent medical examinations on October 31 and November 5, 2020. Rec. Doc. 405.

[28] Movants' entire premise relies on their argument that they have been "precluded" from "examining and evaluating the evidence of Burnett's pre-surgical medical condition…". Rec. Doc. 405. This statement is not accurate given the multiple examinations performed by Premier's chosen physicians in October and November 2020.

[29] Exhibit 1, Burnett depo.

[30] Rec. Doc. 418, court order.

[31] *Id*. at pp. 31-36.

[32] *Id.; See also id.* at 31 (Q: Did you tell any of your attorneys that surgery had been recommended by Dr. Small, for you to be – for you to undergo that surgery on August 30th? A: No. I don't talk to my lawyers about medical. I don't -- no.).

questioning on this topic that, understandably, he does not call his lawyers to discuss his medical treatment because his lawyers are not doctors, and instead, are handling his legal matters.[33]

This, on its own, confirms the absence of bad faith on the part of plaintiffs' counsel in this case. The movants have not—and cannot—establish Mr. Burnett's counsel had a "culpable state of mind" and acted "with a fraudulent intent and desire to suppress the truth" when counsel was not informed by Mr. Burnett of any scheduled surgical procedure.[34] Further, it is clear Mr. Burnett has not intended to hide or suppress his medical treatment. As delineated above, Mr. Burnett provided the limitation petitioners with the identity of Dr. Small as early as December 2020, and even produced medical records nearly five (5) months before his discovery response deadline.

Mr. Burnett's deposition testimony under oath confirms a simple truth—undersigned counsel has not taken any action in bad faith in this matter. Instead, Mr. Burnett's pre-surgical condition was preserved through examinations by Premier's own doctors in the days following the incident, and Mr. Burnett provided the movants with medical records before any obligation to do so. The evidence related to this matter supports the denial of movants' pending motion for sanctions.

## V.

### Conclusion

Mr. Burnett's deposition confirms the absence of bad faith. And the examinations conducted by physicians paid for by Premier dramatically undermines Premier's claims that it

---

[33] *Id*. at p. 51.

[34] *Rogers v. Averitt Express, Inc.*, 215 F.Supp. 3d 510, 516 (M.D. La. 2017) ("a party seeking the sanction . . . based on spoliation of evidence must establish that: (1) the party with control over the evidence had an obligation to preserve it at the time it was destroyed; (2) the evidence was destroyed with a culpable state of mind; and (3) the destroyed evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.").

somehow was denied these exact examinations. Although the deposition of Dr. Vanderweide has yet to be conducted, these materials prove that the Court should deny the motion.

Respectfully submitted,

/s/      Kyle Findley

J. Kyle Findley (#34922)
kfindley@arnolditkin.com
Adam Lewis (#37492)
alewis@arnolditkin.com
John G. Grinnan (*pro hac vice*)
jgrinnan@arnolditkin.com
**ARNOLD & ITKIN LLP**
6009 Memorial Drive
Houston, TX 77007
Tel: 713.222.3800
Fax: 713.222.3850

**ATTORNEYS FOR CLAIMANT PATRICK BURNETT**

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing pleading was served on counsel of record by electronic means, including the CM/ECF system, this 27th day of January, 2023.

/s/      J. Kyle Findley (#34922)