UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN THE MATTER OF MODERN | * | CIVIL ACTION NO. 2:21-CV-00258- |
| AMERICAN RAILROAD | * | JCZ-KWR (lead case) c/w 21-337, 21-464, |
| SERVICES, LLC, as Owner, and | * | 21-822, 21-1968, 21-1969, 21-1981, 21- |
| SHORE OFFSHORE SERVICES, | * | 1982, 21-2075, 21-2227 |
| LLC, as Bareboat Charterer and | * | Pleading applies to all cases. |
| Owner *Pro Hac Vice* of D/B THOR | * | |
| PETITIONING FOR | * | JUDGE JAY C. ZAINEY |
| EXONERATION FROM AND/OR | * | |
| LIMITATION OF LIABILITY | * | MAGISTRATE JUDGE KAREN WELLS |
| | * | ROBY |

## SUPPLEMENTAL MEMORANDUM REGARDING DEPOSITION OF DR. DAVID VANDERWEIDE

Limitation claimant Patrick Burnett files this supplemental memorandum in opposition to the motion for sanctions filed by the limitation petitioners,[1] and in relation to the Court's orders at Rec. Docs. 464 and 471. Collectively, those two orders called upon Mr. Burnett to depose Dr. Vanderweide in connection with the motion for sanctions, and to file supplemental briefing with the Court. Mr. Burnett has now taken that deposition and files his supplemental brief here.

## I.

### Brief background

The Court is well-versed in the issues, but a brief background is necessary to set the stage. Currently pending before the Court is a sanctions motion filed by Premier Offshore Catering, Inc., Modern American Railroad Services, LLC, and Shore Offshore Services, LLC (collectively, the "petitioners").[2] That motion concerns whether Mr. Burnett "in bad faith, intentionally spoliated

---

[1]  *See generally*, Rec. Doc. 405, Premier Offshore Catering, Inc., Modern American Railroad Services, LLC, and Shore Offshore Services, LLC's motion for sanctions.

[2]  *Id.*

evidence" by undergoing surgeries before an IME was conducted.[3] Mr. Burnett has opposed the motion.[4] The parties' dispute raises a key issue of what impact the absence of an IME actually had upon the opinions of the petitioners' IME physician, Dr. David G. Vanderweide. In other words, in light of the host of medical records that exist concerning Mr. Burnett's pre-surgical condition including hundreds upon hundreds of radiological images, did the petitioners suffer any actual prejudice from the absence of an IME by Dr. Vanderweide before surgery?

The petitioners have resisted—strenuously—the idea that prejudice is a meaningful factor in the analysis.[5] And the petitioners equally attempted to *shield* Dr. Vanderweide from being deposed on this question.[6] The Court ruled against them on both counts—finding that prejudice is a necessary component for their motion *and* deeming the deposition of Dr. Vanderweide to be critical in exploring that question. As the Court recited in its order at Rec. Doc. 464: "Since the Court finds the parties must show that they were prejudiced by the inability of Dr. Vanderweide to perform a pre-surgery IME, and spoliation is a critical component in assessing the pending sanctions motion, Burnett's deposition of Dr. Vanderweide is necessary."[7] By subsequent order, the deadlines related to that deposition were moved.[8] But the deposition has now taken place. And Mr. Burnett files this brief to outline to the Court Dr. Vanderweide's testimony—which clearly demonstrated the lack of prejudice to the petitioners.

## II.

---

[3]     *Id.* at p. 1.

[4]     Rec. Doc. 409, Mr. Burnett's opposition to the petitioners' motion for sanctions.

[5]     *E.g.*, Rec. Doc. 466, petitioners' supplemental brief in support of sanctions, p. 20.

[6]     *E.g.*, Rec. Doc. 461, petitioners' opposition to Mr. Burnett's motion to compel deposition of Dr. Vanderweide.

[7]     Rec. Doc. 464, court order, at p. 3.

[8]     Rec. Doc. 471, court order altering deadlines.

**Dr. Vanderweide's testimony.**

As the deposition record confirms, Dr. Vanderweide's deposition essentially proceeded in three phases. Phase one concerned questions to Dr. Vanderweide about whether he is generally able to render medical opinions concerning plaintiffs without personally performing an IME. He confirmed that he *is* able to do so. Phase two then moved on to what effect, if any, his absence of an IME prior to a surgery taking place had upon his ability to render opinions on Mr. Burnett. As the record shows, the limitation petitioners' counsel repeatedly instructed Dr. Vanderweide *not* to answer these essential questions in the deposition. This remarkably improper tactic required this Court's intervention, and the Court "caution[ed]" the petitioners' counsel on the record to stop.[9] At that point, phase three of the deposition rapidly unfolded. Now unshielded by defense counsel's improper instructions not to answer critical questions, Dr. Vanderweide conceded the only point in question for the deposition: **He confirmed that the absence of an IME had no impact on his ability to render his medical opinions in this case**.[10]

> Q. **Okay. Based on the medical records you reviewed, the physical examinations that you've reviewed, the imaging that you've reviewed, your ability to render a medical opinion for the defendants as it relates to Patrick Burnett has not been impacted at all by not seeing him, true?**
>
> A. **<u>Correct.</u>**[11]

Each of these phases is outlined below, and the record of this deposition is before the Court. It overwhelmingly confirms that the Court should deny the petitioners' motion for sanctions. And it

---

[9]    Exhibit 1, deposition of Dr. Vanderweide, pp. 139-140.

[10]    *Id*. at pp. 142-146; *see also id*. at  p. 180 ("**Q. What I'm saying is it does not impact your ability to form a medical opinion as it related to Patrick Burnett, correct? A. Correct.**") (form objections omitted); *id*. at p. 194 ("Q. Based on what you have reviewed and the information that you do have and you have seen, you feel comfortable being able to provide an opinion just like you do in other cases about the necessity of surgery, correct? A. Correct.") (emphasis added).

[11]    *Id*. at pp. 185-86 (form objections omitted) (emphasis added).

also shows why the limitation petitioners' counsel fought so hard to avoid having to show prejudice in this case. The simple answer: They cannot. And that counsels that their motion for sanctions be denied.

## II-A.

### Phase one: Dr. Vanderweide confirms that he is able to render opinions generally based on medical records and does so regularly.

At the outset of his deposition, Dr. Vanderweide confirmed a basic point. He can, and regularly does, render medical opinions on the necessity of surgery based solely on medical records (and without the need for a physical examination).[12]

This led to a simple point that would be repeated throughout the deposition. The affidavit submitted by the petitioners from Dr. Vanderweide—which is in the record at Rec. Doc. 466-11—means only one thing. It means that, although medical records of other pre-surgical physical exams on Mr. Burnett exist, Dr. Vanderweide did not *personally* conduct a physical examination of Mr. Burnett before the surgery and, therefore, cannot speak to what his own *personal* physical exam would have shown.[13] Despite counsel's arguments to the contrary, the affidavit does not mean

---

[12]    *Id*. at pp. 10-11 ("Q. All right. And you'd agree with me that when you provide opinions, you provide opinions based on records only on numerous occasions, correct? A. Yes**. Q. Okay. And, in fact, you do it all the time where you can provide an opinion about the necessity of surgery with just reviewing records without seeing a plaintiff, correct? A. Correct.** Q. Okay. And that's something you've done throughout the course of your career, is you're able to generate reports solely based on medical records and MRI films, correct? A. Correct. Q. And those reports that you have generated based solely on medical records and MRI films without seeing a plaintiff, you still stand by those opinions, don't you? A. I do. Q. Okay. And you do it all the time, you issue reports on injuries, causation and necessity of surgery on a regular basis without actually examining a plaintiff, correct? A. Correct. **Q. Okay. And you do it also as a part of your practice, you will issue reports on injuries, causation and the necessity of surgery without seeing a plaintiff, correct -- or a patient, rather? A. Correct.**") (emphasis added).

[13]    *Id*. at pp. 27-28 ("A. Yeah. My point in constructing the – the affidavit was that I personally am -- am unable to testify to his presurgical state because I didn't see him prior to surgery. There are medical records that are replete with physical examinations -- Q. Okay. A. -- but I cannot personally testify to what he looked like prior to his surgery. Q. Sure, and let -- let's -- let's break that down for a moment. What you're saying is you can't personally state what your own physical exam shows, correct? A. That's correct. Q. Okay. But what you can testify to and what you do testify to

anything more than that. Dr. Vanderweide noted that there are numerous records documenting Mr. Burnett's pre-surgical condition and that they preserve evidence of Mr. Burnett's pre-surgical condition.[14] These medical records include copious patient interviews, physical examinations, and radiology films and images. Indeed, adding fuel to this fire, Dr. Vanderweide shockingly confirmed that Premier (a movant on this very motion) had *not* provided him with the November 5, 2020[15] workers' compensation medical record documenting Premier's *own* pre-surgical physical examination of Mr. Burnett.[16]

The upshot from these points is obvious. Dr. Vanderweide is able to render medical opinions based upon the physical exams performed by *other* healthcare providers, and routinely

---

in numerous cases is what other physical examinations show for the presurgical medical condition, correct? A. That's correct."); *id.* at p. 84 ("Q. Okay. You're not making -- and just so I'm clear, your affidavit is not stating that other defense doctors have not been able to perform those various exams. That's not what you're saying, correct? A. No. All I'm saying is that I am unable to personally attest to any preoperative presurgical physical findings or complaints on Mr. Burnett.") (objections omitted); *id.* at p. 92 ("Q. . . As it relates to your affidavit, and we touched on this earlier, not to belabor a point, but if we want to narrow down what your affidavit says, it basically says I wasn't able to examine him before his surgery, correct? A. Correct.").

[14]     *Id.* at pp. 22-23 ("Q. Okay. There are dozens of records identifying the presurgical medical condition that -- correct? A. There are medical records prior to his surgery. Q. Sure, and -- and that's what I'm getting at. Those medical records consist of things like MRI films that actually show imaging of the spine, correct? A. Correct. Q. They consist of x-rays that show imaging of the spine, correct? A. Correct. Q. Those are -- when we talk about x-rays and MRIs, those are a tool that you use as a doctor to identify structural damage or herniated disc type of injuries on a patient, correct? A. Correct. **Q. Those presurgical conditions of Mr. Burnett were preserved and you were able to review them as it relates to medical imaging, true? A. Correct.**") (form objections omitted) (emphasis added).

[15]     This record is referenced in bold in Mr. Burnett's supplemental memorandum, at Rec. Doc. 467, p. 5, and the record, itself, is found at Rec. Doc. 467-3, pp. 20-28.

[16]     Exhibit 1, deposition of Dr. Vanderweide, pp. 79-80 ("Q. Sir, were you provided, and I didn't see it in your report and I can show it to you, Mississippi Sports Medicine Orthopedic Center November 5th, 2020 record of Patrick Burnett who was sent there by Patrick Aucoin? A. I see that. Q. Do— do you ever recall reviewing it prior to me showing it to you? A. I don't. Q. Okay. And based on your report—and I don't want to put words in your mouth but based on your report that says, I wasn't provided records prior to November 10th, you wouldn't say that unless it was accurate, fair? A. That's true."); *see also id.* at p. 19 ("Q. Okay. And that's all I'm asking you. Your sole source of information as it relates to medical records is provided to you by the defense counsel that hired you – Q. Is that fair? Q. Sure.") (objections omitted).

does so in his practice of providing medical opinions on behalf of companies and defendants such as the limitation petitioners in this matter.[17] And so, Dr. Vanderweide is able to render medical opinions without, himself, having performed the tests involved in physical exams.[18] In fact, Dr. Vanderweide can, and does, provide medical opinions regarding the necessity of surgery on a routine basis as a retained expert without ever having laid eyes on the claimant, much less perform any type of physical examination.[19]

## II-B.

**Phase two: The petitioners' counsel repeatedly instructs Dr. Vanderweide not to answer questions concerning the impact of no pre-surgical IME on his opinions issued here.**

Following the agreements from Dr. Vanderweide set forth above, the petitioners' counsel decided that he had a "difference of opinion on whether prejudice is [] or is not necessary" on the issue of spoliation.[20] Never mind the Court's express instruction that *it is* necessary.[21] Defense

---

[17]  *Id*. at pp. 33-34 ("Q. Let me rephrase it. When -- and medical -- a medical doctor like yourself, when you're reviewing records, you have come across in the past where doctors have performed examinations such as straight leg raise tests and able to review the results, correct? A. Yes. Q. Okay. And those results of a straight leg raise test gives you pieces of a clinical picture that you can use and rely on, correct? A. They may. Q. Okay. And they would be evidence of responses to provocative tests presurgical if documented in the records, correct? A. They may. Q. And that is something that at least shows you the -- even though you did not perform it yourself, shows you the responses to those tests presurgery, correct? A. They may. Q. And that is -- those are things, like responses to tests contained in medical records, things you rely on in order to determine presurgical condition, correct? A. They may.") (form objections omitted).

[18]  *Id*. at p. 35 ("Q. Okay. We know that you were able to render opinions and have done so on numerous occasions without performing those, correct? Q. New paragraph. A. Yeah, without personally performing them. Q. Yeah. You can still render medical opinions based on your qualifications and expertise and review of medical records, correct? A. I can.") (objections omitted).

[19]  *Id*. at p. 11 ("Q. Okay. And, in fact, you do it all the time where you can provide an opinion about the necessity of surgery with just reviewing records without seeing a plaintiff, correct? A. Correct.").

[20]  *Id*. at p. 51.

[21]  Rec. Doc. 464, court order, at p. 3 ("Since the Court finds the parties must show that they were prejudiced by the inability of Dr. Vanderweide to perform a pre-surgery IME, and spoliation is a

counsel's contrary determination led to a spectacle. He repeatedly instructed Dr. Vanderweide *not*

to answer basic questions on whether his opinion that Mr. Burnett did not need the surgery

procedures he received were affected by the absence of Dr. Vanderweide, personally, performing

a pre-surgical IME. Reciting these extraordinarily improper exchanges in text would take too many

pages, and so they are included in this footnote.[22] The point—which the Court will readily grasp

---

critical component in assessing the pending sanctions motion, Burnett's deposition of Dr. Vanderweide is necessary.").

[22] Exhibit 1, deposition of Dr. Vanderweide, pp. 53-54 ("Q. Sir, my question is real simple. First of all, your opinion in this case was that -- I think what you're saying is the surgery was based on objective complaints and that it was not necessary, correct? MR. PARKER: Object to the form. MR. RIBARITS: Object to the form of the question. **Instruct the witness not to answer**."); *id*. at pp. 54-55 ("Q. Doctor, you were able to render an opinion based on the medical records that you were provided in this case, true? MR. RIBARITS: Objection, asked and answered, form. A. I prepared a report. Q. Right, and that report contains your opinions and one of those opinions was that surgery was based on subjective complaints and provocative discography. Does that mean that you're saying -- well, I -- I think that's what you're saying is you don't believe the medical evidence supports a surgery; is that right? MR. RIBARITS: I'm going to object and **instruct the witness not to answer** for the reasons previously stated."); *id*. at pp. 55-56 ("Q. Okay. So with regards to a back surgery, one of the things you did not prepare yourself for is whether or not the state of the evidence that you have is enough for you to render an opinion as it relates to back surgery, you simply don't know? MR. PARKER: Object to form. MR. RIBARITS: Objection, form. MR. PARKER: Is this to Patrick Burnett? MR. FINDLEY: Yes. MR. RIBARITS: If it's related to Patrick Burnett, it's not related to the spoliation issue. **I'm instructing the witness not to answer**. Q. Okay. Are you going to follow that instruction? A. I am."); *id*. at pp. 56-57 ("Q. Okay. And that's what I'm getting at, sir. Although you list various tests in your affidavit on Exhibit Number 2, based on the state of the medical documentation, the discograms, the imaging, you were able to render an opinion on the necessity of surgery as it relates to Patrick Burnett, true? MR. PARKER: Form. MR. RIBARITS: Object to the form. **Instruct the witness not to answer**."); *id*. at pp. 58-59 ("Q. Okay. Sir, back to my question. As it relates to Patrick Burnett, the medical records that you did have, the documentation of previous exams, the imaging, the discography provided you enough information to be able to render an opinion as to his medical condition and the necessity of surgery in this case, true? MR. PARKER: Form. MR. RIBARITS: Object to the form. **Instruct the witness not to answer**."); *id*. at p. 110 ("Q. Right, but what you said about your report was you weren't sure if it contained an opinion or not so I'm following up on that. Based on the medical records that you do have, the imaging that you do have, the physical exams that are documented that you do have and the one I showed you today from the defense counsel that they withheld from you that you don't have but now you've seen, are you able to formulate an opinion as it relates to the necessity of surgery for Patrick Burnett? MR. RIBARITS: Object to the form. MR. PARKER: Object. MR. RIBARITS: Object to the sidebar. This has been asked and answered. MR. FINDLEY: It has not been answered. MR. RIBARITS: **I'm going to instruct the witness not to answer**."); *id*. at pp. 111-112 ("Q. Well, what you said is it's saying in your report and what I'm saying is does your report have your opinion as to the necessity of surgery? MR. RIBARITS: Objection, outside the scope of Judge Roby's order. **Instruct the witness not to answer**. MR. FINDLEY:

from skimming the quotes in the footnote—is that the petitioners tried mightily to avoid having Dr. Vanderweide answer an essential question: Given Dr. Vanderweide's avowed ability to render opinions *without* a physical exam, what, if any, prejudice was suffered *in this case*?

## II-C.

### Phase three: Following this Court's intervention, Dr. Vanderweide concedes that the absence of an IME had *no impact* on his opinions in this case.

The absurdity of the exchanges set forth in the preceding footnote pushed Mr. Burnett's counsel to get the Court involved.[23] Not only is such conduct plainly improper under the Federal Rules, but it was amounting to outright obstruction of the central issue in the deposition. The Court agreed and issued two directives.

First, the Court noted that whether Dr. Vanderweide could reach his opinions based solely upon Mr. Burnett records was *fair* for examination because access to the information through

---

This goes to the heart of spoliation about whether or not he can render an opinion. His answer was I generated a report. His report that he generated doesn't say so what I'm trying to figure out is whether or not he can render an opinion. Are y'all instructing him not to answer about his ability to render an opinion on necessity of surgery based on the evidence he has? MR. RIBARITS: He's already answered -- MR. FINDLEY: No. MR. RIBARITS: -- several times, Kyle. MR. FINDLEY: I'm --  MR. RIBARITS: I let you speak, let me speak. He's already answered several times that question. The record speaks for itself. There is no reason for him to reiterate his answers to repeatedly asked questions on the same issue so **I'm going to instruct him not to answer**.") (emphasis added in all).

23      Exhibit 1, deposition of Dr. Vanderweide, pp. 119-140.

another source is relevant to the spoliation inquiry.[24] The fact that the petitioners' counsel did not like those questions was not a basis to block them.[25]

And second, the Court "caution[ed]" the petitioners' counsel to stop telling the witness not to answer questions and warned that such further instructions would not be allowed.[26]

Following this exchange—now without the petitioners' counsel's improper obstruction—Dr. Vanderweide *instantly* started answering the questions presented. And the answers were revealing, indeed. Dr. Vanderweide conceded that he *was*, in fact, able to render an opinion that Mr. Burnett did not need surgery based solely on the records presented, and that he had all the information he needed to render that opinion.[27] Further questioning revealed that the absence of a

---

[24] *Id*. at pp. 126-27 ("JUDGE ROBY: I understand what the question is. The question is basically can an assessment as to the needs of surgery be made after examining the films and the records. MR. FINDLEY: Correct. JUDGE ROBY: I think it's a fair question. Let me just answer the question. It's a fair question because part of the issue of spoliation is always is the information available through another source. I don't -- when I looked at my earlier order, I did not specifically delineate which questions were permissible. I gave you a scope or range of -- a scope that could be utilized to form the questions. That's the first thing. Number 2, I don't think it's appropriate for you to direct the witness not to answer. You may not like the answer but that's why y'all get paid the big bucks to deal with the answers that you don't like.").

[25] *Id*.

[26] *Id*. at pp. 139-40 ("JUDGE ROBY: -- so -- so let me say 1 this on the record. I am cautioning defense counsel relative to the -- their position with regards to telling the witness what to do and not do. You can object to the form of the question but I will not allow any further instructions of this witness to not answer the question. If there is an issue as to whether the question is appropriate, whether it's in the scope of the Court's order, please call me and I'll tell you if I agree or disagree. Otherwise, this deposition should proceed without many objections in my view.").

[27] *Id*. at pp. 141-146 ("Q. Okay. All right. The other thing that I wanted to ask you is you were asked questions earlier that there was an instruction for so let me clear it up. **In this particular case, based on the medical records that you do have, the physical examination, documents that you do have that were recorded, the imaging, the discography, you are able to render an opinion as it relates to Patrick Burnett, true? A. I would be.** Q. Okay. And you're able to do that based on your education, training and experience and being able to review medical records and imaging and come to a conclusion about the necessity of surgery, correct? A. I would be. Q. Okay. And you are able to do that in this case despite having not physically examined him as it relates to Patrick Burnett, fair? A. Correct. **Q. Said another way, despite having not been able to physically examine him for purposes of a medical opinion for necessity and causation, you have all the information that you need in order to render that opinion? A. Correct.** Q. Sir? A. Correct. Q. Thank you. And we talked about some of the physical examinations, straight leg raise test, tenderness test, all of those types of tests. What you rely on is the document-recorded information

pre-surgical physical exam had no ultimate impact *at all* on his medical opinions on Mr. Burnett.[28]
While quoted in the lengthy footnote exchange provided here, it bears repeating for purposes of
the instant motion: When questioned directly whether he had all the information he needed in order
to render an opinion regarding Mr. Burnett's necessity for surgery, **despite having not physically
examined him**, Dr. Vanderweide agreed that he had everything he needed.[29] It is strikingly evident
from the unencumbered testimony from Dr. Vanderweide that neither he, nor the petitioners, were
subjected to any prejudice in this case by having Mr. Burnett physically evaluated by Dr.
Vanderweide following a back surgery. Any argument to the contrary would directly conflict with
the sworn evidence from Dr. Vanderweide himself.

---

and   the medical records as well as the imaging as it relates to presurgical condition, true? A.
Correct**. Q. Okay. And the other thing that I was going to ask you is in this case, you are able
to give an opinion about Patrick Burnett's presurgical condition based on those medical
records, those imaging findings and all of the medical documentation you've received that
shows his presurgical condition, true? A. Correct. Q. So if someone were to say at a later date
that you somehow are unable to render an opinion about Patrick Burnett's medical condition
presurgery, that would not be true. You can based on the evidence that you have, correct? A.
Correct.** Q. Thank you. The only thing that has changed is you're not able to say you saw him
before surgery, correct?  A. That is correct. Q. But you don't -- A. -- need that in order to render an
opinion, true? A. Correct. . . . Q. In this case, you weren't able to see Mr. Burnett prior to his
surgery, fair? A. Correct. Q. Okay. Q. But despite the fact of not seeing him, you are able to render
all of your opinions that you normally would based on the copious amounts of medical records,
imaging, discography that does exist presurgery, true? A. Correct. Q. Okay. And what I'm saying
is the only thing is that you -- the only thing you can't say is that you saw him, right? Q. Before
surgery? A. Yeah. I mean, the only thing I can't do is testify to my personal examination of him.
Q. Fair. Okay. What you're saying is the only thing you can't do is testify to your own personal
exam, correct? A. Correct.") (form objections omitted) (emphasis added).

[28]   *Id*. at  p. 180 ("Q. What I'm saying is it does not impact your ability to form a medical opinion as
it related to Patrick Burnett, correct? A. Correct.") (form objections omitted); *id*. at pp. 185-86 ("**Q.
Okay. Based on the medical records you reviewed, the physical examinations that you've
reviewed, the imaging that you've reviewed, your ability to render a medical opinions for the
defendants as it relates to Patrick Burnett has not been impacted at all by not seeing him,
true? A. Correct.**") (form objections omitted); *id*. at p. 194 ("Q. Based on what you have reviewed
and the information that you do have and you have seen, you feel comfortable being able to provide
an opinion just like you do in other cases about the necessity of surgery, correct? A. Correct.").

[29]   *Id*. at p. 143 ("Q. Said another way, despite having not been able to physically examine him for
purposes of a medical opinion for necessity and causation, you have all the information that you
need in order to render that opinion? A. Correct.").

## III.

## Conclusion

Mr. Burnett is grateful for the Court's intervention in Dr. Vanderweide's deposition. That intervention made it possible for essential testimony to reach this Court. As this testimony shows, Dr. Vanderweide has already opined—based upon the record evidence—that Mr. Burnett did not need surgery. And the evidence shows that he was able to render that opinion without physically examining Mr. Burnett before the surgery. Indeed, the evidence shows that the absence of a physical exam had no impact upon his medical opinions at all. Dr. Vanderweide is able to do in this case what he has done in countless others: Render medical opinions based on medical records.

As Mr. Burnett noted in his original opposition to the petitioners' motion, the Court should simply order that Mr. Burnett's counsel may not make any statement at trial mentioning that Dr. Vanderweide did not examine or evaluate Mr. Burnett prior to surgery.[30] This solution—which has been applied in other cases[31]—fully ensures that the petitioners are on level footing with Mr. Burnett at trial. Along with the entry of this limited instruction, the petitioners' motion should be denied.

<div style="margin-left:50%">

Respectfully submitted,

/s/      Kyle Findley

J. Kyle Findley (#34922)
kfindley@arnolditkin.com
Adam Lewis (#37492)
alewis@arnolditkin.com
John G. Grinnan (*pro hac vice*)
jgrinnan@arnolditkin.com
**ARNOLD & ITKIN LLP**
6009 Memorial Drive
Houston, TX 77007

</div>

---

[30]   Rec. Doc. 409, Mr. Burnett's opposition to the petitioners' sanctions motion, at p. 10.

[31]   *Rogers v. Averitt Express, Inc.*, 215 F. Supp. 3d 510, 520 (M.D. La. 2017).

Tel: 713.222.3800
Fax: 713.222.3850

**ATTORNEYS FOR CLAIMANT PATRICK
BURNETT**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing pleading was served on counsel of

record by electronic means, including the CM/ECF system, this 29th day of March, 2023.

/s/      J. Kyle Findley (#34922)

12