UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ALL COAST, LLC<br><br>VERSUS<br><br>SHORE OFFSHORE SERVICES, LLC | CIVIL ACTION NO: 21-258<br>c/w 21-337, 21-464, 21-822, 21-1968, 21-1969, 21-1982, 21-1981, 21-2075, 21-2227<br><br>SECTION "A"<br>HON. JAY C. ZAINEY<br><br>MAGISTRATE: (4)<br>HON. KAREN WELLS ROBY<br><br>APPLIES TO ALL CASES |

### REPLY MEMORANDUM TO PATRICK BURNETT'S SUPPLEMENTAL MEMORANDUM REGARDING DEPOSITION OF DR. DAVID VANDERWEIDE

**MAY IT PLEASE THE COURT:**

To sanction anything other than exclusion of evidence as the remedy in this case would be for this Court to endorse Patrick Burnett's egregious conduct in:

- Ignoring nearly two years' worth of pre-surgery IME demands by Movants, ultimately leading to a motion to compel pre-surgery IMEs (Rec. Doc. 345) and this Court's Order compelling Burnett's appearance for the same (Rec. Doc. 377);

- Withholding Burnett's medical records for over a year (and failing to timely supplement the same), including records pertaining to surgeries recommended for and undergone by Burnett, notwithstanding repeated requests for the same;

- Failing to properly disclose to Movants and to this Court that surgeries were scheduled to be undergone, including during the pendency of the motion to compel IMEs (Rec. Doc. 345) and at the September 14, 2022 oral argument on the motion to compel complete discovery responses from Burnett (*see* Rec. Doc. 405-1, pp. 15-16; Rec. Doc. 405-12), and indeed representing to the contrary that all medical information has been provided – an undisputedly false statement; and

- Undergoing multiple lumbar spine surgeries (including a five-level lumbar surgery and two remedial infection surgeries, resulting in what recently obtained medical records show as additional medical expenses in excess of ***$830,000*** and a near month-long hospital stay)[1] in direct violation of this Court's Order compelling Burnett's pre-surgery IME of his back and that ***specifically explained*** to Burnett " 'that courts have required that an IME ***must occur prior to surgery to avoid spoliation of evidence*** ' " and that since Burnett "had already undergone surgeries ***altering [his] physical condition[]***, it is important that this evidence is ***not further expoliated prior to***" an IME being conducted as ordered (Rec. Doc. 377, p. 11) (emphasis added and footnote omitted).

---

[1] Exhibit "Supp. Reply 1," *In globo* River Oaks Hospital and Clinics Medical Records (Burnett-Auth. 03602 – 03621) (obtained March 27, 2023).

Subject to the Order of this Court (Rec. Docs. 462, 464, and 470), IME physician, Dr. David Vanderweide, sat for his limited deposition on March 16, 2023 (Rec. Doc. 478-1), which, notwithstanding the deposition being "limited to the spoliation of Claimant Patrick Burnett's pre-surgical condition," lasted nearly 3.5 hours, with excessive repeated questioning by Burnett's counsel and including the teleconference with Your Honor regarding the deposition's scope. Dr. Vanderweide's testimony confirmed that prior to Burnett's Court-ordered IME, Burnett's physical condition was ***further altered*** due to his lumbar surgeries, such that Dr. Vanderweide was ***not afforded the opportunity to, himself, personally examine Burnett's pre-surgical physical condition***.² Dr. Vanderweide testified that his "ability to perform a preoperative physical examination and assessment of [Burnett] … was *irretrievably lost* by the time [Dr. Vanderweide] saw him."³ This spoliated evidence (described by Dr. Vanderweide in his affidavit (Rec. Doc. 466-11) and in his deposition) goes to the very purpose of an *in-person* IME. However, as Burnett would have it, a post-surgery and *de facto* "records only" IME for non-emergency surgeries is all that should be required of a personal injury plaintiff.

A "records only" IME was neither demanded from Burnett, nor was such compelled by the Court.⁴ A physician's review of Burnett's medical records alone would not have required this Court's intervention. Thus, to find Dr. Vanderweide's ability to review Burnett's medical records and render an opinion thereon as sufficient to meet the mandates of this Court's IME Order and the Movants' IME rights under Fed. R. Civ. P. Rule 35 (and with Premier as the alleged Jones Act employer, which is denied as to Burnett) would render meaningless this Court's Order and the process employed by Movants to secure the IME. The gamesmanship displayed by Burnett and his

---

² *E.g.*, Rec. Doc. 478-1, pp. 26:18 – 27:14, 77:3-7; 84:11-19; 86:14 – 87:4; 165:3 – 166:22; 179:11-23; 182:4-15.
³ *Id*. at pp. 27:21 - 28:58 (emphasis added).
⁴ *See* Rec. Doc. 345 and Rec. Doc. 377. Dr. Vanderweide also testified that he was not engaged for a "records only" IME. *See* Rec. Doc. 478-1, pp. 157:25– 158:2.

Texas-based counsel (a well-funded firm, advertising that they have secured "over $10 Billion won")[5] should not be tolerated. To deny exclusion under the circumstances here would upend the jurisprudence requiring a pre-surgery IME to avoid spoliation;[6] turn a blind eye to the years of delay, obfuscation, and misrepresentations to the Court and counsel about Burnett's medical treatment; and embolden actions like this in the future when consequences for disobeying a Court Order are not met with a sanction that the jurisprudence has applied in lesser situations.

Burnett entire argument hinges on lack of prejudice.[7] The basis for this claim is that the evidence can be found elsewhere from Dr. Henry Small, who is Burnett's *treating* surgeon, and from another *treating* physician who examined Burnett nearly two years before the surgery and his records appear to show that he performed some, but not all, of the tests that Dr. Vanderweide would have performed per his affidavit and testimony.[8] First, the seminal case on exclusion in this District ***does not speak to prejudice being required for exclusion to be granted in the face of a violation of a court order compelling an IME***.[9] Second, other courts of this district have upheld the need for an in-person IME, with at least one court reasoning that ***"[a] review of cold medical records is no substitute for an in-person examination by a doctor***."[10] Third, as to the claim that the evidence is not lost, it is not capable of dispute that the tests Dr. Vanderweide would have performed were not all performed by others. Dr. Vanderweide testified that, while he can render a "records only" IME opinion, such opinions are made with the "***caveat*** that we all ***assume*** that the medical records

---

[5] *See* https://www.arnolditkin.com/#~7Y3v6L6. Indeed, the law firms representing Burnett have been quick to mention to all counsel of record in this case the recent eight- and nine-figure awards by Burnett's counsel in other matters. *See* Exhibit "Supp. Reply 2," email correspondence dated February 3, 2023 (pp. 1-2) (remainder of email thread omitted), and March 3 - 5, 2023 among counsel (pp. 3- 6).
[6] *E.g.*, *Julien v. EPL Oil & Gas, Inc.*, No. 15-557, 2015 WL 4937900, at *3 (E.D. La. Aug. 17, 2015) (Roby, M.J.).
[7] Rec. Doc. 478, pp. 4-6.
[8] The Femoral Stretch Test, Crossed Straight Leg Raise Test, and the Waddell Test referenced in Dr. Vanderweide's affidavit, Rec. Doc. 466-11, pp. 1-2 at ¶ 3 and 5 are nowhere mentioned in Burnett's medical records.
[9] Rec. Doc. 421-9, 421-10, 421-11, and 421-12, Pertinent Pleadings from *Silmon v. Can Do, Inc.*, Civ. No. 91-0584 (E.D. La. 1991).
[10] *See, e.g., Hasan v. McCormack Baron Management, Inc.*, No. 18-779, 2019 WL 21222978, at *2 (E.D. La. May 15, 2019) (Wilkinson, M.J.) (emphasis added) (granting a motion to compel a plaintiffs' IME and similar arguments regarding the defendants' access to pertinent medical records unpersuasive).

provided are complete and accurate."[11] Here, the records and imaging subject of Dr. Vanderweide's review were those produced by Burnett or through his treating physicians. As for Dr. Small, he has been previously disciplined on at least one occasion, including just months before this surgery, by the Texas Medical Board for, *inter alia*, keeping "***sparse and inaccurate medical records related to four surgical patients.***"[12] Further, the review panel specifically found that Dr. Small engaged in "false or deceptive advertising" and that in a spinal surgery he failed to "properly assess the patient and did not document adequate medical rationale for the surgery."[13] This not only calls into question the reliability of Dr. Small's records, but directly supports the need for Movants' IME physician to have been able to examine Burnett's pre-surgical physical condition himself. Indeed, at Dr. Small's July 2022 "examination" of Burnett, after Burnett lost over 200 lbs. since the 2020 incident, Dr. Small made the surgery recommendation without even examining Burnett in person; it was a telemedicine visit with Burnett talking to Dr. Small on the phone.[14] Should this Court review the Agreed Order from the Texas Medical Board attached as Exhibit "Supp. Reply 3," it will wonder how Burnett can be so invasively operated upon by Dr. Small with significant complications, where surgery recommendations of such nature are made over the phone by a physician being disciplined for "sparse and inaccurate" record keeping and being ordered to attend ethics and medical record keeping classes, where Burnett does not speak with his lawyers about his surgery recommendations when his lawyers are guaranteeing payment for such, and when routine requests for IMEs are ignored, even with a Court order in place.

---

[11] Rec. Doc. 478-1, p. 15:11-25 (emphasis added).
[12] Exhibit "Supp. Reply 3," March 4, 2022 *Agreed Order* of Texas Medical Board, at p. 2 (emphasis added). See *also* https://www.tmb.state.tx.us/page/look-up-a-license, selecting "click here to look up a license," and the publicly available records from Dr. Small can be found there.
[13] *Id*.
[14] Rec. Doc. 466-1, at pp. 32:11-33:10 and Rec. Doc. 405-11 at p. 1 (a different copy of this same record, labeled Burnett-Auth 01319, was attached as Exhibit 3 to the deposition).

All of this could have been avoided by Burnett. On August 29, 2022, prior to Burnett's September 6, 2022 five-level lumbar surgery, Dr. Small's records mention that he discussed with Burnett the opportunity for "***second opinions, delaying surgery, further conservative care, or alternative medicine***," which options went ignored.[15] With the demands for IMEs, the motion, this Court's Order, and a statement in the surgeon's records that a second opinion and delaying the surgery were discussed, one cannot credibly claim to have not made a conscious decision to break the rules. Indeed, as a practical and empathetic matter, what reasonably minded person or advocate for a person would not want to have a second opinion before undergoing such a surgery? The answer is those who do not follow or care about following the rules. The undisputed fact is that Dr. Vanderweide was unable to perform his preoperative physical tests, such that he cannot "personally attest to any preoperative presurgical physical findings or complaints of Mr. Burnett."[16] The import of this being that Dr. Vanderweide *does not know* what his personal findings in response to such tests "would have revealed,"[17] making it is a disingenuous mischaracterization that Dr. Vanderweide "conceded[ed] that the absence of an IME had no impact on his opinions in this case."[18] Describing what the physical examination adds, Dr. Vanderweide explained:

> *What the IME adds to the picture is my personal ability to talk to the examinee, confirm the history, ask additional questions that perhaps the medical record doesn't address and then to perform a physical examination and to be able to render my own clinical impression based on an interview and – and examination and obviously you don't get that opportunity with just a record review*.[19]

Dr. Vanderweide answered affirmatively when questioned whether he believed that his *inability* to perform a presurgical IME of Burnett after Burnett's surgeries had a material adverse

---

[15] Rec. Doc. 466-9, pp. 2-3 (August 29, 2022 Dr. Small Visit Note), at p. 3 (emphasis added).
[16] Rec. Doc. 478-1, p. 84:11-19. *See also, e.g., Id.* at pp. 26:18 – 27:14, 77:3-7; 86:14 – 87:4; 165:3 – 166:22; 179:11-23; 182:4-15.
[17] *Id*. at pp. 86:14 – 87:4; *see also, e.g., Id.* at pp. 166:23 - 167:19.
[18] Rec. Doc. 478, p. 8.
[19] Rec. Doc. 478-1, pp. 148:15 – 149:4 (emphasis added).

effect on his examination of Burnett, given that Burnett appeared for the IME four weeks or so after the five-level lumbar surgery.[20] Dr. Vanderweide explained: "There were things I wouldn't ask him to do simply by nature of him being -- I believe he was less than a week postoperative from his third procedure when I got to evaluate him so -- so *the physical examination that I conducted on Mr. Burnett would be grossly abbreviated to what I would have done on him prior to his surgery*."[21] "[B]y definition, there were data points that [Dr. Vanderweide] would normally extract from the physical examination that [he] did not get from [his] assessment of Mr. Burnett,"[22] which important data points (described in Dr. Vanderweide's affidavit) he "would have been able to ascertain prior to surgery are no longer available after surgery."[23] Otherwise said, "there was a compromise at the examination simply because it couldn't be done as it would have been done had [Dr. Vanderweide] seen him prior to surgery,[24] which put Dr. Vanderweide's examination of Burnett at a disadvantage.[25] Dr. Vanderweide's deposition testimony bolsters his affidavit, explaining the evidence lost. The inescapable prejudice suffered by Movants is that the in-person element of the IME was irretrievably destroyed after Burnett's first lumbar surgery. To find otherwise would eviscerate a defendant's right to an pre-surgery IME and would, effectively, "change the game" of personal injury defense in this District.

To Burnett's argument that Premier had its own pre-surgical "workers' compensation" physical examination of Burnett,[26] sending Burnett to a *treating physician*, Dr. Graham Calvert – distinct from an IME doctor – and Dr. Vanderweide's ability to review that treating physician's stale medical records from November 2020 (*i.e.*, nearly two years before Burnett's September 2022

---

[20] *Id*. at pp. 149:5-22.
[21] *Id*. at pp. 149:23- 150:19 (emphasis added).
[22] *Id*. at pp. 150:20 – 151:5.
[23] *Id*. at pp. 166:23- 167:19.
[24] *Id*. at pp. 153:24 – 155:7. *See also, e.g., Id.* at pp. 178:19-22.
[25] *Id*. at pp. 152:10-20.
[26] Rec. Doc. 478, p. 5.

five-level lumbar surgery and prior to Burnett having lost over 200 lbs. between the incident and then) have nothing to do with Movants' IME doctor being able to examine Burnett's pre-surgical physical state or with Burnett's destruction of his pre-surgery condition, where there was a duty to preserve such or to simply submit to an IME sooner when such was originally requested.

As previously briefed (Rec. Doc. 415-1, p. 2-6), the egregious conduct subject this motion is pervasive in this case. Burnett's actions warrant exclusion; but when considered alongside Burnett's co-claimants' (those represented by the same attorneys) willful disregard for IME demands and requests for medical records, the sanction of exclusion becomes even more appropriate to deter such actions from occurring in the future and to maintain the integrity of this Court's judicial process.

Respectfully submitted:

*/s/ Gavin H. Guillot*
Gavin H. Guillot, T.A. (#31760)
Salvador J. Pusateri (#21036)
Aaron B. Greenbaum (#31752)
Meredith W. Blanque (#32346)
Jacob A. Altmyer (#36352)
Jonathan D. Parker (#35275)
PUSATERI, JOHNSTON, GUILLOT & GREENBAUM, LLC
1100 Poydras Street, Suite 2250
New Orleans, LA 70163
Telephone: 504-620-2500
Facsimile: 504-620-2510
Gavin.Guillot@pjgglaw.com
Salvador.Pusateri@pjgglaw.com
Aaron.Greenbaum@pjgglaw.com
Meredith.Blanque@pjgglaw.com
Jacob.Altmyer@pjgglaw.com
Jonathan.Parker@pjgglaw.com
**ATTORNEYS FOR MODERN AMERICAN RAILROAD SERVICES, L.L.C., AND SHORE OFFSHORE SERVICES, LLC**

*/s/ John M. Ribarits*
John M. Ribarits (17114), T.A.
Attorney-in-charge
801 Travis St., Ste. 1910
Houston, Texas 77002
Telephone: 713-546-9800
Facsimile: 713-546-9806
Email: john.ribarits@chaffe.com
**ATTORNEYS FOR PREMIER OFFSHORE CATERING, INC.**

OF COUNSEL:
**CHAFFE McCALL, L.L.P.**
Heather S. von Sternberg
Admitted pro hac vice
801 Travis Street, Suite 1910
Houston, Texas 77002
Telephone: 713-546-9800
Facsimile: 713-546-9806
Email: heather.vonsternberg@chaffe.com

Jesse G. Frank (38220)
2300 Energy Centre
1100 Poydras Street
New Orleans, Louisiana 70163
Telephone: 504-585-7000
Email: jesse.frank@chaffe.com