## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ALL COAST, LLC** | **CIVIL ACTION** |
| **VERSUS** | **NO:  21-258** |
| **SHORE OFFSHORE SERVICES, LLC ET AL** | **SECTION: "A" (4)** |

### REPORT AND RECOMMENDATION

Before the Court is a **Motion for Sanctions to Exclude Evidence for Patrick Burnett's Spoliation of Evidence and Disregard of this Court's Order (R. Doc. 405)** filed by Limitation-Petitioners, Modern American Railroad Services, L.L.C. and Shore Offshore Services, LLC (collectively "THOR Interests") and Claimant/Third-Party Defendant/Rule 14(c) Defendant, Premier Offshore Catering, Inc. ("Premier") seeking an order from the Court sanctioning Patrick Burnett ("Burnett") for spoliating evidence and disregarding this Court's September 2, 2022, order compelling Burnett to submit to an independent medical evaluation ("IME"), and consequently, excluding him from offering evidence at trial of his alleged injury to his back, including any evidence regarding the surgeries he has undergone in connection with his alleged back injury, which includes a weight loss surgery. The motion is opposed. Rec. Doc. 409. Reply memorandums were filed. Rec. Doc. 421, 466. Supplemental memorandums were filed Rec. Doc. 467,478,479.

## I.     Factual Background

Burnett  filed the subject lawsuit arising out of  injuries he allegedly sustained as a result of a maritime incident that occurred on the afternoon of October 28, 2020, as the eye of Hurricane Zeta approached Port Fourchon, Louisiana. Burnett was employed by Premier as a catering hand aboard the D/B THOR, a large derrick barge owned and operated by the THOR Interests. The D/B THOR had sought safe harbor from the hurricane days before and was tied to the Martin Energy Services Dock No. 16 with its assist tug, the M/V CROSBY ENDEAVOR, which was operated by Crosby Tugs, LLC ("Crosby"), coupled

alongside. The storm surge from the Category 3 hurricane caused the D/B THOR and her assist tug, to break away from the dock and allegedly came into contact with other vessels and property in, and along the Bayou Lafourche channel (the "Incident").

This suit was originally filed by Burnett (alongside his co-plaintiff, Lewis Andrews ("Andrews") – another Premier catering hand) on November 16, 2020, in Harris County, Texas state court against Shore, Premier, and three Fieldwood entities. Burnett and Andrews sought damages as Jones Act seamen for injuries as a result of the Incident.[1] On November 24, 2020, Burnett's Texas state court action was removed to the United States District Court for the Southern District of Texas, bearing Civil Action No. 4:20-cv-04009 (the "SDTX Case"), which has since been stayed. After Burnett initiated litigation, and his claim was removed to federal court, he filed a claim in each of the Limitation Actions on October 26, 2021.[2]

Burnett filed a claim in both the THOR Interests' and Crosby's Limitation Actions on October 26, 2021, in which scheduling deadlines had already been issued.[3]  The THOR Interests complain that despite their requests for independent medical examinations which date back to December 2020, Burnett has undergone at least four (4) invasive surgeries three (3) of which occurred after this court issued an order compelling Burnett to submit to an IME. The Court notes that Burnett lives in Jackson, Mississippi but underwent surgery in Houston Texas. Rec. Doc. 415-1, at p. 8.  Days after the Court's order, Burnett allegedly underwent a five-level lumbar surgery and two subsequent corrective surgeries.

Burnett concedes that his surgeries occurred after the Court issued an order, but suggests that it does not demonstrate bad faith on either Burnett or his counsel's part. Rec. Doc. 409.  Burnett and his

---

[1] Rec. Doc. 29, pp. 11–17; Rec. Doc. 31, pp. 11-17. Premier and the THOR Interests contest Burnett's status as a Jones Act seaman, as such is claimed against all defendants.
[2] Rec. Doc. 45; Rec. Doc. 46.
[3] Rec. Doc. 45 is Burnett's Claim in the THOR Interests' Limitation Action; Rec. Doc. 46 is Burnett's claim in Crosby's Limitation Action.

counsel contend that the THOR Interests have not offered evidence that they suffered prejudice. *Id*. Burnett contends that the motion should be denied because the movers failed to establish all three of the required elements to justify spoliation sanctions. *Id*.

## II.    <u>Standard of Review</u>

A federal court has the power to sanction a party who has abused the judicial process. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991). The spoliation of evidence is one such abuse. *Rimkus Consulting Group, Inc. v. Cammarata*, 688 F.Supp.2d 598, 611 (S.D.Tex.2010). Spoliation refers to "destruction or material alteration of evidence or to the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 590 (4th Cir.2001) (citing *West v. Goodyear Tire & Rubber Co*., 167 F .3d 776, 779 (2d Cir.1999)); Black's Law Dictionary 1531 (9th ed.2009). The party seeking the sanction bears the burden of proof. *Rimkus*, 688 F.Supp.2d at 615–616.

In order to establish the sanction of adverse inference based on spoliation of evidence, this party must show that the accused had a duty to preserve the destroyed or altered evidence, a culpable breach of that duty, and resulting prejudice to the party seeking the sanction. *Id*.

Courts have broad discretion in crafting a remedy that is proportionate to both the culpable conduct of the spoliating party and resulting prejudice to the innocent party. *Anadarko Petroleum Corp. v. Davis*, 2006 WL 3837518 at *27 (S.D.Tex.2006). In choosing the appropriate remedy, a court must ensure that it is "no harsher than necessary to respond to the need to punish or deter and to address the impact on discovery." *Rimkus*, 688 F.Supp.2d at 618–19; *Duque v. Werner Enters., Inc*., 2007 WL 998156 at *2–3 (S .D.Tex.2007).

An appropriate sanction should therefore "(1) deter parties from engaging in spoliation; (2) place the risk of an erroneous judgment on the party who wrongfully created the risk; and (3) restore 'the prejudiced party to the same position he would have been in absent the wrongful destruction of evidence

3

by the opposing party.'" *West*, 167 F.3d at 779 (quoting *Kronisch v. United States,* 150 F.3d 112, 126 (2d Cir.1998)); accord, *Victor Stanle*y, 269 F.R.D. at 533–34. More severe sanctions, such as giving adverse inference jury instructions, are available only upon a showing of bad faith conduct. Rimkus, 688 F.Supp.2d at 614 (citing *Condrey v. SunTrust Bank of Ga*., 431 F.3d 191, 203 (5th Cir.2005)); accord, *King v. Ill. Cent. R.R*., 337 F.3d 550, 556 (5th Cir.2003); *see also United States v. Wise*, 221 F.3d 140, 156 (5th Cir.2000).

**III.    Analysis**

 The THOR Interests contend that Claimant Burnett rather tactically ignored its requests for a pre-surgical IME which began during the period of December 4-14, 2020. Rec. Doc. 405. The THOR Interests contend that while Burnett presented a demand for cure to Premier, and provided a one-page physical therapy referral, they did not provide any additional medical records to either Premier or the THOR Interests until February 2022 for Burnett. *Id*. The THOR Interests further contend that Burnett failed to provide them any information that suggested that invasive surgery was recommended.

According to the THOR Interests, from December 21, 2020, to March 24, 2021, they requested that Burnett provide them his medical records and submit to a pre-surgical IME on three (3) additional occasions. *Id*. The THOR Interests contend that Burnett has undergone at least four (4) invasive surgeries blatantly ignoring the multiple pre-surgical IME requests and that three of these surgeries occurred after the undersigned issued an order compelling Burnett to submit to the IME.

Additionally,  Modern American Railroad Services ( hereinafter referred to as "MARS") joined in the THOR Interests Motion for Sanctions.  Rec. Doc. 415.  MARS contends that Burnett's failure to comply with the multiple written demands for pre-surgery IMEs, decision to undergo surgery, and producing Burnett's medical records after the surgery without notice that the surgery was intentional. *Id*. at 1. MARS further contends that Burnett's situation is far from an isolated simple mistake, but thematic, a factor which is material to the sanction to be imposed. *Id*. MARS contends that as a result Burnetts conduct, evidence of his injuries should be excluded.

4

MARS contends that Burnett's failure to comply with the Court's order which required his submission to an IME before surgery, constitutes contempt. MARS further contends that the purpose of the surgeries is to inflate damages with the hope that the penalty for destroying evidence of their pre-injury conditions would be a slap on the wrist. *Id*. at 4. MARS contends that the blatant disregard of other pre-surgical IME requests of other claimants represented by Claimant's counsel is evidence that Burnett and his lawyer's failed to comply with the pre-surgical IME requests and court order, is evidence of their intent.[4] MARS contends that the Court should not accept Burnett's counsel's suggestion that he was too busy over the long Labor Day weekend to tell Burnett not to travel over 425 miles from Jackson to Houston for his surgery. *Id*. at 8.

Burnett acknowledges that the fusion surgery occurred but contends that the timing of the back fusion was in short proximity to the Court's IME order-amid the Labor Day Holiday. Further, Burnett suggests that his lawyer was out of town, and his surgery was performed just days after the order was issued. Rec. Doc. 409. Burnett contends that while these circumstances may be unfortunate, however, they admittedly do not demonstrate bad faith by Burnett or his lawyer. *Id*.  Burnett also contends that movers offer no evidence that they suffered prejudice, even though they were denied an IME. *Id*. As a result, Burnett contends that the Court should deny the subject motion because the THOR Interests failed to establish all three of the required elements to justify spoliation sanctions.

In his reply memorandum, Burnett contends that the THOR Interests and Premier allegedly had the equivalent of an IME when he was examined by Premier's chosen workers' compensation healthcare provider. Rec. Doc. 467. According to Burnett, he underwent a complete physical examination, which also included a review of his history, systems,  a general examination, lumbar spine exam and review of x-rays.

---

[4] MARS exhibits refer to claimants namely Cloyd, Lewis, and Williams, but not Burnett, the subject of this motion.

Burnett contends further that this examination conducted within days of the incident preserved evidence of his pre-surgical medical condition, and therefore no spoliation actually occurred.

As a result, the workers' compensation doctor diagnosed Burnett with acute lumbar strain and left lumbar radiculopathy and ordered a lumbar MRI. Therefore, Burnett suggests that Premier, also a participating movant in this matter, had the equivalent of an IME of his back after the accident in question but before  the surgical procedure. Rec. Doc. 467, p. 5. Burnett therefore suggests that the examination by Premier's selected doctor confirms that the limitation-petitioners have already had an IME, thus, the sanctions motion should be denied because no spoliation of his condition occurred. *Id*.

Spoliation of evidence is the destruction or the significant and meaningful alteration of evidence. *See Guzman v. Jones*, 804 F.3d 707, 713 (5th Cir. 2015). Allegations of spoliation, including the destruction of evidence, in pending or reasonably foreseeable litigation, are addressed in federal courts through the inherent power to regulate the litigation process. *Id*. If the conduct occurs before a case is filed or if, for another reason, there is no statute or rule that adequately addresses the conduct.*" Yelton v. PHI, Inc.*, 284 F.R.D. 374, 378 n. 2 (E.D. La. 2012) (quoting affirmed magistrate's order which recognized that, because there was no allegation that the spoliating party "violated any discovery order or other directive by the Court[,]" the spoliation motions were "properly stated pursuant to this Court's inherent powers, and not Rule 37.").

As a general rule, in the Fifth Circuit, absent bad faith, the severe sanctions of granting default judgment, striking pleadings, or giving adverse inference instructions may not be imposed. *Russell v. Univ. of Tex. of the Permian Basin*, 234 Fed.Appx., 195, 208 (5th Cir.2007); *Condrey v. SunTrust Bank of Ga.*, 431 F.3d 191, 203 (5th Cir.2005); King v, 337 F.3d at 556; *United States v. Wise*, 221 F.3d 140, 156 (5th Cir.2000); *Vick. v. Tex. Emp't Comm'n*, 514 F.2d 734, 737 (5th Cir.1975); *see also Ashton v. Knight Transp., Inc.,* 772 F.Supp.2d 772, 800 (N.D.Tex.2011) ("Plaintiff seeks an adverse inference jury instruction or the striking of [d]efendants' pleadings for their conduct in this case, both of which require a showing of bad

faith on the part of the [d]efendants."). The party seeking the spoliation sanction bears the burden of proof. *Ashton*, 772 F.Supp.2d at 800 (citing *Rimkus*, 688 F.Supp.2d at 615–16).

While Rule 37 governs sanctions for discovery-related misconduct only, a court may exercise its inherent sanctioning power to punish all types of contumacious conduct. *Roche Diagnostics Corp. v. Priority Healthcare Corp.*, 2020 WL 2308319 at *3, 2020 U.S. Dist. LEXIS 81449, *9 (N.D. Ala. May 8, 2020) (citing *Malautea v. Suzuki Motor Co.,* 987 F.2d 1536, 1545 (11th Cir. 1993)). The Supreme Court has determined that "the inherent power of a court [to sanction] can be invoked even if procedural rules exist which sanction the same conduct." *Chambers v. NASCO, Inc.,* 501 U.S. 32, 49, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991).

Rule 37 of the Federal Rules of Civil Procedure permits a court to impose a number of sanctions for a party's failure to comply with a court's discovery orders. Such sanctions include, but are not limited to:

(i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
(ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
(iii) striking pleadings in whole or in part;
(iv) staying further proceedings until the order is obeyed;
(v) dismissing the action or proceeding in whole or in part;
(vi) rendering a default judgment against the disobedient party; or
(vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination. Fed. R. Civ. P. 37(b)(2)(A)(i)-(vii).

If a party fails to comply with an order under Rule 35(a) requiring it to produce another person for examination, the court may issue any of the orders listed in Rule 37(b)(2)(A)(i)—(vi), unless the disobedient party shows that it cannot produce the other person. Furthermore under Rule 37, instead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was

substantially justified, or other circumstances make an award of expenses unjust. Fed. R. Civ. P. 37(b)(2)(C).

It is undisputed, generally, that back surgery conducted before a requested independent medical examination, or a court ordered IME by a medical expert may constitute spoliation. *Rogers v. Averitt Express, Inc.*, 215 F. Supp. 3d 510, 519 (M.D. La. 2017) (stating on motion for sanctions in personal injury suit based on spoliation of evidence that "there is no doubt that ... the evidence was clearly relevant" when the plaintiff did not allow the defendant's IME to examine him prior to spine surgery); *Baskerville v. Albertson's, LLC*, No. 15-CV-902, 2016 WL 7030446, at *2 (D. Nev. Jan. 7, 2016) ("The court finds that [the plaintiff's] pre-surgery spinal condition is relevant to [the defendant's] defense that the surgery was not the result of the incident that gave rise to the instant action."); *see also Kang v. Perri,* 2021 WL 4487276 (E.D. N.Y. 2021) (where the Court affirmed an adverse inference for surgery occurring before IME after notice to preserve was sent).

The U.S. Fifth Circuit Court of Appeals has explained the elements of a spoliation claim as follows: "A spoliation claim has three elements: (1) the spoliating party must have controlled the evidence and been under an obligation to preserve it at the time of destruction; (2) the evidence must have been intentionally destroyed; and (3) the moving party must show that the spoliating party acted in bad faith." *See Coastal Bridge Company, L.L.C.*, 833 Fed.Appx. at 574 (5th Cir. 2020). All three are met here. "A duty to preserve arises when a party knows or should know that certain evidence is relevant to pending or future litigation." *Hunt v. Marquette Transp. Co. Gulf-Inland, LLC*, Civ. No. 09-6055, 2011 WL 3924926, at *2 (E.D. La. Aug. 5, 2011) (Roby, M.J.).

### A.  Duty to Preserve

It is undisputed that a plaintiff who has filed a lawsuit for damages as a result of alleged personal injury and has been put on notice of another party's desire to have an IME conducted in advance of any

invasive procedure has a duty to preserve evidence of his pre-surgical medical condition. *Allen v. Resto*, 2013 U.S. Dist. LEXIS 69770. "Where the claimant filed suit and was engaged in discovery proceedings with a Defendant regarding plaintiff's medical condition prior to the surgery, it leaves little doubt that plaintiff was on notice that the evidence was relevant to this litigation; accordingly, there was a duty to preserve the evidence." *Collongues v. State Farm Auto. Ins. Co.*, Civ. No. 093202, 2010 WL 103878, at *2 (E.D. La. Jan. 7, 2010. This duty to preserve extends to personal injury claimants in a Limitation Action, even where bifurcation has been granted. *Midland v. M/T American Liberty*, Civ. No. 19-10525 (lead case), 2020 WL 12583838, at *2 (E.D. La. Dec. 2, 2020) (Vance, J.) (where the Court held that the issue of bifurcation is irrelevant to the issue of spoliation).

There is no dispute that Burnett and his counsel had a duty to preserve evidence of his back condition. This evidence was relevant to this case, because he alleged that the incident in question caused his back condition. Burnett was in control of this evidence, and instead he has undergone at least four invasive surgeries three of which occurred after this Court issued an order compelling an IME. Therefore, the duty to preserve arose when he made a claim for cure, and the THOR Interests made its initial demand for an IME. Alternatively, the duty to preserve arose when Burnett formally filed his answer and claim for injuries in this case on October 26, 2021. Rec. Doc. 45. Having determined that there was a duty to preserve the pre surgical condition of Burnett's back, the Court will next determine if there was intentional spoliation of this evidence.

**B.  Spoliation of Evidence**

The parties agree that Burnett underwent several surgical procedures. However, Burnett suggests that any alleged spoliation either did not occur, or was not intentional. Burnett contends that the first, third and fourth surgeries are not "relevant" to his claim, and therefore, although he submitted to weight loss surgery and two surgeries after his back fusion, these procedures did not spoliate evidence. The suggestion

is that the only relevant surgery to his claims is the four level lumbar fusion surgery he had on September 6, 2022, without submitting to the IME.

The evidence indicates that beginning the week of December 4-9, 2020, the THOR interest communicated their desire to have Burnett submit to an IME. Also, the requests for an IME were reiterated on December 16 and December 23, 2020.[5] However, rather than cooperate in the process, Burnett's counsel challenged the request, the form of the evaluation, and in response to the Motion to Compel, filed a motion to bifurcate. This type of conduct disregards the Federal Rule of Civil Procedure 1, which requires cooperation in the discovery of evidence. Fed. R. Civ. P. 1.

On November 10, 2021, Burnett had undergone a laparoscopic sleeve gastrectomy and laparoscopic periesophageal hernia repair. Rec. Doc. 405-6. Notably this surgery was needed because Burnett was morbidly obese weighing 389.6 lbs. and was medically required to lose weight in preparation for the fusion surgery. Rec. Doc. 405-2, Exhibit A. Therefore, this surgery is relevant to Burnett claims.

A telemedicine visit note of July 11, 2022, indicates that Dr. Small referenced an MRI which he determined that L2-L3, l3-l4, L 4-L5 and L5-S1were herniated. Rec. Doc. 405-11, Exhibit 1. On that same date Dr. Small issued a surgery order setting the surgery for August 30, 2022, at 7:30 a.m. *Id*.

As a result, a motion was filed seeking to compel an IME on July 13, 2022. Rec. Doc. 345. Shortly after the motion to compel an IME was filed, Burnett filed a motion to bifurcate, suggesting to the Court that it would like to try their damages claims in state-court and not in a federal court limitation case. Rec. Doc. 352-1.

On that same day, Burnett filed his opposition to the IME motion advising the undersigned that they have a motion to bifurcate filed before the District Judge that was strong, such that the Court should deny Premier's motion for "IME without prejudice at this time." Rec. Doc. 353.  Burnett's counsel

---

[5] *See* Exhibit B, Emails dated December 4-9, 2020. Rec. Doc. 405-1. *See also* Exhibit D dated December 16, 2022, and December 21, 2023.

suggested that if the motion to bifurcate was granted that Premier could seek updated IMEs at a later point

with the damages were at issue. *Id*. at 2. Again, Burnett's counsel advanced an already debunked argument

as to the relevance of Burnett's medical condition and the risk of spoliation. *Id*.; *See Midland,* Civ. No.

19-10525 (lead case), 2020 WL 12583838, at *2. The Court notes that the motion to bifurcate was denied

by Judge Zainey on October 12, 2022. *See* Rec. Doc. 401.

Interestingly, Burnett also filed a claim in this matter claiming that he was physically injured,  and

experienced pain and suffering, disfigurement, mental anguish as a result of the conduct of the plaintiffs

in limitation. Rec. Doc. 45. A plaintiff in a negligence action who asserts mental or physical injury places

that mental or physical injury clearly in controversy and provides the defendant with good cause for an

examination to determine the existence and  extent of an asserted injury. *In re Bordelon Marine,* 202 U.S.

Dist. Lexis 72943 (E.D.L.A. 2012) (court issued an order requiring an IME because good cause existed

in a limitation action.); *see also Griffith v. Santillan,* 2019 U.S. Dist. LEXIS 182743 (S.D. Tex. Galveston

Division 2019) (IME order in limitations case because claimant's claim placed physical condition in

issue.) Therefore,  Burnett clearly put his physical condition in issue in this case and he asserted that his

physical condition was the result of the negligence of the THOR Interests.[6]

In the meantime, Burnett recalled that his fusion surgery was scheduled for August 24, 2022, even

though it was actually scheduled for August 30, 2022. The dispute over Burnett's compliance with requests

for IME continued through August 30, 2022, a week before the surgery took place. *See* Rec. Doc. 405-10.

The assertion that damages discovery in a limitations case is irrelevant as claimed by Burnett and his

counsel is contrary to the law. For the spoliator to have a "culpable state of mind," it must act with

---

[6] *Complaint of Port Arthur Towing Co. on Behalf of M/V Miss Carolyn*, 42 F.3d 312, 317 (5th Cir. 1995), cert.
denied, 516 U.S. 823 (1995); *In re Bertucci Contracting Co., LLC*, 2015 WL 114174, at *3 (E.D. La. Jan. 8, 2015)
(Barbier, J.) (citing In re Cooper/T. Smith, 929 F.2d 1073, 1077 (5th Cir. 1991); *Thomas v. Express Boat Co*.,
759 F.2d 444, 448 (5th Cir. 1985); *In re Mike Hooks, LLC*, 2021 WL 2964300, *1-2 (W.D. La. July 14, 2021);
*Gowdy v. Marine Spill Response Corp*., 925 F.3d 200, 205 (5th Cir. 2019) (internal citation and quotation omitted)

fraudulent intent and a desire to suppress the truth.  *See Consolidated Aluminum Corp. v. Alcoa, Inc*. 244 F.R.D. 335 (U.S. D.C., M. D. La.  2006).

Here, the relevancy argument and the tactical use of a bifurcation motion could not have been asserted for any reason other than intentional delay resulting in a change in Burnett's presurgical condition. Furthermore,  Burnett's contention that the timing of the back fusion in short proximity to the Court's IME order—amid the Labor Day Holiday—was a unique scenario that led to the surgery being performed days after the Court's IME order, is ludicrous.

Burnett's counsel contends that "he did not realize that the Plaintiff's surgery had been rescheduled to take place on September 6, 2022." Rec. Doc. 405-1. He further states that he did not intend on violating this Court's order. Rec. Doc. 409. However, he clearly knew that the surgery had been scheduled for August 30, 2022, per the "document dump" of August 26, 2022, but did not disclose to the court or opposing counsel while the motion to compel an IME was pending.

Nevertheless, according to Burnett, the Court would have to accept the suggestion that because the order was issued electronically on the Friday before Labor Day and received by him and eleven (11) other people in his office at 3:51 PM, somehow a call could not be made to his client advising him of the Court's ruling. It should be noted that Mr. Findley, however, never says that he did not receive the court's order, he suggests, however, during the hearing on this motion that he was on a yacht. If Mr. Findley really wanted to communicate the Court's ordered IME, there are eleven other ways he could have done it. The Court is not persuaded by his argument.

When, as here, spoliation is shown, the burden shifts to the guilty party to demonstrate that no prejudice resulted from the spoliation. *Czuchaj v. Conair Corp*, No. 13-1901, 2016 WL 4130946, at *2 (S.D. Cal. May 3, 2016) (citing *Apple Inc. v. Samsung* Electronics Co., 888 F. Supp. 2d at 998).  The mere fact that evidence has been altered or destroyed "does not necessarily mean that the party has engaged in sanction-worthy spoliation." *Ashton v. Knight Transp., Inc.*, 772 F.Supp.2d 772, 799–800 (N.D.Tex.2011).

### C.  <u>Prejudice</u>

Burnett advances three (3) reasons why no prejudice resulted from the spoliation of his presurgical back. First, he contends that he provided notice of the surgical recommendation on August 26, 2022, some four days before the scheduled surgery. Rec. 405-1, Tr. 8. Second, he  contends that the first, third and fourth surgeries do not amount to spoliation because it has nothing to do with his back injury, and nor do they claim that it was caused by the incident. Third, Dr. Vanderweide, the IME doctor, has and does issue IME opinions without examination with a simple record review.

As to the first contention, the Court is not persuaded that by providing a disclosure with a large number of medical records, it actually constitutes notice in light of the fact that the motion seeking the IME was pending. As confirmed by Burnett, the first disclosure the THOR Interests received was the "document dump of August 26, 2022"  four days before the scheduled surgery.  Rec. Doc. 405-1.

 The issue of reasonable notice, which  usually comes up in the context of deposition notices, can be extended to pre-surgical disclosure for IME. Just as four days' notice for a deposition is not reasonable, four days' notice of a surgery is not reasonable to permit the scheduling of an IME. *See Gulf Production Co., v. Hoover Oilfield Supply, Inc.* 2011 WL 891027 (E.D. La. 2011) (finding that four days' notice for 30(b)(6) deposition not reasonable notice); *Julien v. EPL Oil & Gas, Inc., CIV.A.* 15-557, 2015 WL 4937900,  (E.D. La. Aug. 17, 2015) ("To avoid the spoliation of evidence, the IME must occur before Plaintiff's shoulder surgery.") (emphasis added); *Young v. Canadian Nat'l/Illinois Cent R.R. Co.,* 04-CV-88, 2005 WL 8155474, at *4 (M.D. La. Sept. 23, 2005) (The plaintiff "improperly destroyed relevant evidence that might be important to Defendants' case" when he had back surgery without affording the defendants an opportunity to obtain an IME.) (emphasis added).

Also of note, there is no suggestion by Burnett's counsel that he pointed out or notified the THOR Interests despite their request that surgery was recommended and proof of this failure to notify was contained in the February 2022 document disclosure. As an aside, Burnett contends that he "has long given the movers direct medical records releases so that they may obtain documents on their own if they wish to obtain them faster or independent of Burnett." Rec. Doc. 409, p. 5. However, Burnett fails to attach any evidence that supports his representation that signed medical authorizations were executed which would have allowed the THOR Interests to obtain the medical records on their own.

Instead, the only evidence of record is that as late as February 22, 2022, an email by Ribarits counsel for Premier Offshore indicates receipt of the "document dump" of medical records on February 10, 2022. Ribarits contends he was still requesting that Burnett's counsel have his client sign "the attached medical authorization" so that he could independently obtain the records rather than having to wait months and months after treatment. Given the lack of evidence by Burnett that signed authorizations were previously given as his counsel suggests, this argument fails.

Burnett next contends that the first, third, and fourth "surgeries" do not constitute spoliation. Specifically, Burnett suggests that movers have not explained why they would be entitled to an IME before a mere weight loss surgery itself because he has never contended that the incident in this case caused him to gain excessive weight. Rec. Doc. 409, p. 4. Burnett's counsel also argues that although there is reference to two subsequent "corrective" surgeries also occurring weeks after the fusion surgery, that these surgeries were only post-operative wound care procedures such that there was only one true surgery at issue in this motion. *Id*.

As to the weight loss surgery,  it was recommended on December 3, 2020, by Burnett's treating orthopedic surgeon, Dr. Small, in advance of  lumbar laminectomy and fusion surgery.  Rec. Doc. 405-2. Therefore, while the weight loss surgery may not have been caused by the incident, its occurrence was

necessary in order for Burnett, who was morbidly obese, to have the lumbar surgery.  Therefore, timely disclosure of this recommendation was warranted.

As to the third and fourth surgeries, whether they were post-operative wound care procedures, they are clearly related to the lumbar surgery. A review of the medical records for both procedures confirm that they were in fact surgeries, and they incurred charges for an operating room and physician. The procedure required endotracheal anesthesia, the wound was reopened, and the skin edges trimmed back to healthy skin. The wound was then irrigated with antibiotic solution and cultures were taken, a hemovac drain was inserted and the skin was then sutured and stapled. Rec. Doc. 409-7, p. 6-7. Therefore, each of these surgical procedures are related to Burnett's claim, and whether they were medically necessary due to the incident or some other cause.

The final suggestion is that no IME was necessary for the THOR Interests' IME physician, Dr. David Vanderweide, to render a medical opinion, therefore there is no prejudice. Rec. Doc. 409. The suggestion is that despite the fact that the surgeries occurred before an assessment of Burnett's medical condition, the IME doctor was still able to render an opinion without the pre-surgical exam. *Id*. Specifically, Burnett's lawyer contends that his client's pre-surgical lumbar spine's condition was not destroyed because there were numerous medical records, CT scans, MRI films, and diagnostic testing showing Burnett's spinal condition. Burnett contends that for the two years preceding the surgery there were over 650 images chronicled depicting the condition of his lumbar spine. Therefore, Burnett contends evidence still exists for the "retained defense expert to examine." *Id*.

The THOR Interests and Premier, in contrast, contend that their interests have been prejudiced because Burnett's physical condition has been irreversibly changed resulting in a total over $1,000,000 in medical expenses. Rec. Doc. 405-1. The THOR Interests and Premier contend that because they were deprived of the opportunity to examine Burnett's pre-surgical medical in advance of the five-level surgery,

they were also denied the opportunity to assess the necessity of the two subsequent surgeries related to infections. *Id*.

The THOR Interests contends that the outcome is that Burnett's treating physician is able to examine highly relevant evidence before it becomes irrevocably destroyed through a surgical procedure leaving their independent physician at a distinct disadvantage in examining the evidence. Rec. Doc. 415-1, p. 6. Consequently, Dr. Small should be able to testify that his physical examination factored into his surgical recommendation, but no such corresponding testimony could be provided by the IME physician on the quality and scope of his examination. Thus, prejudice, according to the THOR Interests, is abound. Further, they contend that to permit Burnett a pass is authorization for future conduct, and essentially nullifies the importance of a Rule 35 examination.

In considering this issue, the Court first notes that Burnett and his counsel fail to cite to any authority that prejudice does not result when a surgery occurs before an IME with or without a court order. Instead, Burnett suggests that they will not ask Dr. Vanderweide whether he examined Burnett. There are several problems with counsel's suggestion. First, counsel failed to communicate it to his client that the Court's order required a delay in the surgery. Second, there are critical pieces of evidence that can be gleaned from a physical exam which the THOR Interests were deprived of.

Third, Dr. Vanderweide states in his affidavit that he was denied the ability to perform several diagnostic tests such as the Femoral Stretch Test, Straight Leg Raise Test, Crossed Straight Leg Test, Supine Leg Raise Test and Seated Straight Leg Raise Test. Rec. Doc. 466-11. Each of these tests would have been used to assist him in determining the potential source of discogenic pain but his ability to due so was lost due to the surgeries. *Id*.

Dr. Vanderweide also attests that Burnett's pre-surgical responses to a neurological exam were irretrievably lost. Rec. Doc. 478-1. He described that a neurological exam could consist of a strength exam, sensory exam and reflex exam, hip flexion and abduction, knee extension, and ankle dorsiflexion. The

ability to document these pre-surgical neurological responses were lost. Further, Dr. Vanderweide attests that he was denied the ability to assess Burnett for magnification and non-organic pain behaviors using the eight Waddell Signs.

Also, Dr. Vanderweide's deposition supports the fact that evidence from various tests he would have performed were irretrievably lost. Rec. Doc, 478-1. He further admits that he was still able to render an opinion and noted that Burnett had  negative straight leg raising test results. *Id*. at 184.  He also testified that he was not expecting to examine a person who had already submitted to surgery and that there were certain tests during his examination he had to forego because Burnett had surgery a few days earlier. *Id*. at 188. In essence, Dr. Vanderweide's testimony suggests that a records IME is not the equivalent of an IME with the ability to fully examine the claimant. *Id*.

The Court finds that the THOR Interests and Premier were prejudiced by lumbar surgeries occurring before the IME.  First, counsel has a duty to communicate to his client regardless of a holiday where he may be on a yacht.     Second, while Dr. Vanderweide  could conduct a records review IME, it is of no moment when this court ordered an actual IME. Plaintiff's counsel intentionally refused to permit an IME to occur before surgery for two years and now claims he did not know that the surgery was scheduled for September 2022.  What he does not say is that he was unaware of the surgery's original date of August 30, 2022 but failed to disclose it either to the Court or Counsel. To the contrary, he points out that in the August 26, 2022 document production, there was a surgical recommendation for August 30, 2022, which was not provided in responses to email inquiries sent by the  parties months earlier. Therefore, prejudice abounds.

### D.   <u>Evidence of Bad Faith</u>

 The THOR Interests contend that Burnett underwent his weight loss surgery and his five-level lumbar surgery after filing a claim regarding his alleged injuries and after pre-surgical IMEs were requested. Rec. Doc. 405.  The THOR Interests contend that the fact that Burnett had notice of the requests before the

17

invasive procedures were performed, is enough to establish bad faith given the number of communications between counsel addressing the need for a pre-surgical IME. *Id*.

Burnett contends that (1) the THOR Interests fail to present evidence as to why they would be entitled to an IME before the weight loss surgery itself; (2) the two subsequent corrective surgeries also having occurred in the weeks after the fusion surgery because those surgeries involved wound care to address infection issues. According to Burnett, there is only one surgery that is truly at issue: the fusion surgery.

As to the fusion surgery, Burnett contends that the timing surrounding the surgery, this Courts' order, the rescheduling of Burnett's surgery from August 30, 2022 to September 6, 2022, resulted in the surgery taking place "due to the holiday weekend" which was not intentional. Rec. Doc. 409. Further, Burnett contends that defendants IME physician, in previous cases testified that he did not need to see and examine a plaintiff himself to render a medical opinion in on the matter and has rendered opinions based on review of the medical imaging, radiographic films and medical records. *Id*. at 5. Therefore, Burnett contends that movers cannot show that their IME physician's inability to examine him prior to the surgery is prejudicial to their case. *Id*. Furthermore, Burnett's counsel indicates that he did not and nor did his client intentionally violate the Court's order because he did not realize that Burnett's surgery had been rescheduled to September 6, 2022.

Burnett further points out that his medical records were produced to the THOR Interests on August 26, 2022, indicating that surgery would be performed on August 30, 3022 before the Court's order was issued. *Id*. Therefore, according to Burnett, the THOR Interests have failed to account for any prejudice given that their IME physician has previously testified that he did not need an exam to evaluate Burnett's spinal condition given the plethora of film. As a side note, Burnett suggests that the only penalty, so to speak, should be that an order be issued forbidding him from pointing out to the trier of fact that there was no IME by the Defendant before his spine surgery.

The spoliation of evidence doctrine provides Courts with the authority to impose sanctions on responsible parties when there has been intentional destruction of relevant evidence. It is further settled that a sanction predicated upon spoliation of evidence requires a showing that the party acted in bad faith. *See King v. Ill. Cent. R.R.*, 337 F.3d 556; *see also United States v. Wise*, 221 F.3d 140, 156 (5th Cir. 2000).

Courts in this circuit, have found that a plaintiff has intentionally destroyed evidence of his presurgical medical condition when a defendant has put the plaintiff on notice of *its right to request an IME in advance of an invasive procedure* prior to an invasive procedure being performed.  *Allen v. Resto*, 2013 WL 2152177 (M.D. La. March 6 , 2017) (emphasis added). Additionally, "bad faith" in the context of spoliation has generally been  found to be "destruction for the purpose of hiding adverse evidence." *See Guzman v. Jones,*  804 F.3rd 707 (5th Cir. 2015).

The evidence shows that  Burnett  did not comply with the multiple requests for the IME.  However, the question is whether Burnett knew of the requests but ignored them, or whether his lawyer refused to communicate it to Burnett.

 Burnett's lawyer did not provide any explanation as to why he failed to produce his client for an IME in a two-year period. According to the evidence, Burnett's counsel slow walked disclosure of Burnett's medical record and only permitted an IME after all the surgeries were performed.  For example, an email dated December 4, 2021, requested Burnett's HIPPA forms and medical records but suggests that records were not produced until February 10, 2022. Rec. Doc. 405-3, 405-7.

As further evidence of the challenges faced securing an IME of Burnett, the email exchange of March 2022 is most illustrative.

For example, counsel for Premier Offshore wrote:

It is outrageous that your office continually blew us off and now the medical condition of both have been irreversibly altered to the detriment of Premier Offshore and the defense.

Email of John Ribarits, Counsel for Premier Offshore, February 22, 2022 ,12:52 PM

Burnett's counsel's intent may best be illustrated by his response to the dispute regarding whether he was  actually producing medical records and his client for an IME.

> However, I don't think an exam by one of your retained Doctors (who is not providing treatment) is actually "independent", or that there has been any showing of good cause for an exam with a retained expert. The information is available through much less intrusive means like review of the medical records that you have in your possession - rather than subjecting them to an invasive exam with a hired doctor that is not providing treatment.
> Putting that aside, I am happy to consider any proposal you have for an examination you all would make a proper request outlining the scope that you are seeking.  Without the actual scope of what you are suggesting i.e.: who the doctor is, how long it will last, what they intend to do, etc. we have no means of being able to evaluate any request.

> Email response by Kyle Findley of Arnolditikin.com, Thursday, March 10, 2022, 5:34 PM

As late as June 28, 2022, while the claimants in limitation were continuing their request for an IME, John Grinnan of Arnold and Itkin responded that he was confused because the claimants' damages were not at issue in the limitations portion of the trial, and that it was an already debunked theory by an earlier case in this Court.[7] He further commented, "let me know if you want to forego limitations and go back to state court where the damages are the issue." Rec. Doc. 405-8.

In response to an explanation as to why an IME was appropriate, Grinnan responded that because the matter is a limitations case, his clients' damages are not at issue during this phase of the trial and an IME was not appropriate. Rec. Doc. 405-8. Grinnan thereafter proposed again a stipulation to return to state court and only then would he confer on the IME issue. *Id*. Burnett's lawyer never intended on producing him for an IME and would only permit a records review.

Having determined that Burnett's lawyer acted in bad faith, the question becomes whether  Burnett himself acted in bad faith. It is undisputed that the surgery occurred some five days after the order was issued. However, according to the Fifth Circuit where the timing of the surgery seems strange, unless there is evidence of the intent to deceive, sanctions including an adverse inference are not warranted. *Guzman,* 804 F.3d at 707.

---

[7] *See* Rec. Doc. 405-8, p. 8-9.

In an effort to ascertain what Burnett knew and whether he ignored the courts abatement order, the undersigned issued an order requiring a limited deposition of Burnett. Burnett testified that he was first recommended for back surgery in July 2022 and scheduled for late August 2022.  Rec. Doc. 467-1, p. 28. While his surgery was originally scheduled for August 30, 2022, according to Burnett the surgery was delayed because the parts were not in.

Burnett testified that he travelled from his home in Mississippi to Texas on August 24, 2022, for his surgery procedure and he recalled this date because it was six days after his dad died.  *Id*. at 30. Burnett testified he never communicated with his lawyers about his scheduled surgery even though he was traveling to Texas where his lawyers were located for the surgery. *Id*. The surgery was scheduled for August 30, 2022. Rec. Doc. 405-11. Burnett tactically neglected to mention that he communicated with his attorneys about the surgery on August 19, 2022 to secure his travel arrangements. *See* Rec. Doc. 487.

His testimony goes on to suggest that his surgery was delayed to September 6, 2022, but it is unclear whether he returned home in the meantime, and they returned to Texas for the surgery. Further, the medical bills indicate that  he was admitted to the hospital on September 6, 2022, the surgery occurred on September 7, 2022, some five (5) days after the Court's order.  Rec. Doc. 437-1.

Burnett testified that he did not (1) communicate to his lawyers who were representing him in connection with his back injury about his surgery date because they are not doctors; (2) that even though his surgery date was changed, he did not tell his lawyers about the new date of September 6, 2023; (3) that he was in the hospital from September 6, 2022 until September 9, 2022 when he was discharged on September 9, 2022. The same day, Burnett returned to the emergency room and was evaluated for critical care where he remained until his discharge on September 30, 2022. Rec. Doc. 479-1. Burnett testified, however, that he remained in the hospital until October 2022.

Burnett  testified that he  underwent a second wound care cleaning procedure in the hospital on October 4, 2022. Rec. Doc. 54, p. 54. He contends that his extended stay in the hospital was due to the need

for injection of the lumbar spine at the wound site. Rec. Doc. 44. Burnett testified that he did not tell his lawyers about his return to the hospital in September. *Id.* at 75.  Burnett also admitted that he received a surgical recommendation for the replacement of both his knees. Rec. Doc. 467-1, p. 55.

Burnett's testimony however is not accurate. His surgery actually occurred on September 7, 2022. He went to the emergency room on September 9, 2022 and was admitted on September 10, 2022. Rec. Doc. 479-1, p. 8. The other procedures occurred on September 22, 2022, and September 29, 2022, not October 4, 2022, as he testified. Rec. Doc. 479-1, p. 10.

There is no evidence that Burnett was told to postpone the surgery that had been scheduled.  In fact, Burnett's counsel used the excuse of being on vacation when the electronic order was issued. He did not deny receiving it and nor did he suggest that he was precluded from communicating with Burnett. The system also shows that twelve other people in counsel's office received the communication from the Court.

Burnett's testimony, however, that he never spoke with his lawyer over a two (2) year period about his medical circumstances because he is not a doctor, is totally unbelievable. Burnett hired his lawyer to recover damages for the very same injuries that he alleges resulted in the surgery yet would not mention anything about upcoming procedures which were guaranteed by his lawyer.

Considering the fact that Burnett absolutely denied ever talking with his counsel about his surgeries, the Court issued a follow-up order inquiring as to who paid for his travel to Texas for his surgery. In Burnett's supplemental response, he stated that the flights were purchased for him by a scheduling coordinator at his counsel's firm of Arnold and Itkin on August 19, 2022, eleven (11) days before his scheduled surgery on August 30, 2022. *See* R. Doc. 487.

While Burnett contends that the ticket was purchased by the scheduling coordinator of his attorney's firm, the scheduling coordinator is deemed to be staff within the firm and thus, communication from the scheduling coordinator is imputed to the attorney. *See Pickens Cty. Sch. Dist. v. E. W.*, 2011 U.S. Dist. LEXIS 166225 (finding that a staff member acts as an agent of the lawyer or law firm, and it is the

22

duty of the supervising lawyer to carefully instruct its staff). Therefore, the flight purchased for Burnett's travel to Texas by the scheduling coordinator, an agent of Burnett's lawyer, means that Burnett communicated information about his upcoming surgery to his attorney, contrary to his testimony during his deposition.

Further, in Burnett's supplemental response, he indicated that not only did the scheduling coordinator purchase a flight ticket for Burnett, but a flight ticket for his wife was also purchased for her to accompany him to Texas. R. Doc. 487, Exhibit 1. Burnett also indicated that after his initial surgery date on August 30, 2022, was rescheduled, that he and his wife remained in Texas until October 6, 2022 and stayed at the Best Western motel. *Id*. at 2. However, Burnett does not mention who paid for he and his wife's extended stay at the Best Western motel until October 6, 2022.

It is clear that Burnett's counsel failed to uphold his duty of candor to the Court. The motion to compel an IME was filed on July 13, 2022, and the Court's order granting the motion was issued on September 2, 2022. *See* R. Docs. 345 and 377. This means that from the time the motion was filed, and up until a decision was made, Burnett nor his counsel informed the Court that a surgery was scheduled, nor did they inform the Court in a timely manner that the surgery and subsequent "corrective" surgeries had occurred after the Court made its decision. Burnett and his counsel's deliberate and intentional disregard of this Court's Order and their duty of candor, warrants sanctions.

### E.  **Appropriate Sanction**

Having determined that both Burnett and his attorney acted in bad faith, the Court will proceed in considering the appropriate sanctions.  Burnett's counsel contends that the only sanction that should be awarded is to bar him from questioning Dr. Vanderweide about whether he conducted a physical examination. In contrast, the THOR Interest and Premier contend that Burnett should be precluded from recovering the medical expenses for the surgeries that occurred without the permitted IME.

The severity of the sanction imposed by the trial court when the elements of a spoliation claim have been met depends on: "(1) the degree of fault; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future." *See Allen*, at *1 (E.D. La. May 16, 2013) (Berrigan, J.).

The spoliation of evidence doctrine permits a court to exclude the spoiled evidence or grant an adverse inference allowing the factfinder to infer that the party that spoiled the evidence did so because it was unfavorable to that party's case. *Allen*, 2013 WL 2152177, at *1 (citing *Pascal's Manale Restaurant, Inc. v. United National Insurance Co.*, Civ. No. 06-7427, 2008 WL 1774131, at *2 (E.D. La. April 15, 2008) (Vance, J.)); *see also Young*, 2005 WL 8155474, at *7 (M.D. La. Sep. 23, 2005). Exclusion,  has been granted when a plaintiff underwent surgery following an order compelling an IME of that body part. *See Silmon v. Can Do II, Inc.*, Civ. No. 91-584, 1992 WL 38110, at *1 (E.D. La. Feb. 13, 1992) (Clement, J.).

 In situations where adverse inferences (a lesser sanction) have been granted, the defendant had typically made a request for a pre-surgical IME but was not afforded a reasonable opportunity to have the IME conducted prior to surgery.  However, in such case there was no order to compel the IME in place at the time the surgery occurred. *See Allen*, 2013 WL 2152177, (E.D. La. May 16, 2013); *see also Jackson v. Family Dollar Stores of Louisiana, Inc*., Civ. No. 3:19-cv-00388, 2020 WL 6092343, at *5 (W.D. La. Oct. 15, 2020) (Doughty, J.); *Young v. Canadian National/Illinois Central Railroad Company*, Civ. No. 04-CV-88, 2005 WL 8155474 (M.D. La. Sep. 23, 2005).

Rule 37(b) of the Federal Rules of Civil Procedure provides courts with the authority to impose sanctions on a party who "fails to obey an order to provide or permit discovery even without a showing of bad faith" Fed. R. Civ. P. 37(b)(2)(A)."The district court 'has broad discretion under Rule 37(b) to fashion remedies suited to the misconduct.'" *Id*. (citing *Pressey v. Patterson*, 898 F.2d 1018, 1021 (5th Cir 1990)).

"[U]sually…a finding of bad faith or willful misconduct [is required] to support the severest of remedies under Rule 37(b)—striking pleadings or dismissal of a case." *Tercero v. Oceaneering International, Inc.*, 2019 WL 1255097 (E.D. LA. March 19, 2019) (van Meerveld, J.) (citing *Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 488 (5th Cir. 2012)).

In *Silmon v. Can Do II, In*c.,1996 WL 384929 (E.D.La. 1996),  the district judge upheld the magistrate judge's ruling excluding evidence of a plaintiff's surgery. *Id*. In *Silmon*, an order had been issued requiring the plaintiff to submit to an IME. *Id*. The plaintiff in *Silmon* then failed to appear for the IME prior to undergoing his surgery, notwithstanding the Court's order. *Id*.

The magistrate judge in *Silmon* granted the defendant's motion for sanctions to exclude such evidence. On appeal to the district judge, affirmed the ruling, noting that "it was incumbent upon counsel to arrange for plaintiff's examination." *Id*. As a result of the plaintiff's and his attorney's conduct, the Court excluded evidence of the surgical procedure, including any evidence about its costs and its impact upon the plaintiff's medical condition. *Id*.

 Burnett, like the plaintiff in *Silmon*, underwent surgery (as well as two additional corrective surgeries) following an order compelling an IME of the particular body part to be examined. As was the case in *Silmon,* it is impossible for Burnett's counsel to claim ignorance before the surgery of the order that resulted from the very motion that Burnett had unsuccessfully opposed. This is especially true  in this case because  Premier's counsel notified Burnett's counsel immediately following the three post-order surgeries that violated this Court's Order, and as was the case in *Silmon*.

In *Young v. Canadian National/Illinois Central Railroad Company*, 2005 WL 8155474 (M.D. La. 09/23/05),  the plaintiff underwent surgery, despite the defendants putting the plaintiff on notice of their desire to have an IME performed prior to the surgery. In *Young,* the court considered exclusion as a potential remedy for the plaintiff's spoliation of evidence, noting that the plaintiff had "failed to comply" with an

amended scheduling order by undergoing the back surgery. Judge Brady however granted an adverse inference (a lesser sanction) regarding the surgery.

In *Young*, defense counsel informed counsel for the plaintiff of the defendants' desire for a pre-surgical IME of the plaintiff's back the same day the plaintiff disclosed his back injury. *Id*. Plaintiff's counsel agreed to the IME but refused to advise his client to delay the surgery to accommodate the IME as requested. *Id*. A week later, the magistrate judge held a status conference with the parties' attorneys where the plaintiff's surgery was discussed, and all counsel agreed that discovery would be substantially affected by the plaintiff's surgery, after which an amended scheduling order was issued. *Id*. On the same day as the status conference, unbeknownst to any of the attorneys attending the conference, the plaintiff disclosed to his psychiatrist that the back surgery was scheduled for eight days later. *Id*.

Four days after the disclosure to his psychiatrist, and before the surgery had occurred, defense counsel sent an email to counsel for the plaintiff providing available dates for the IME. However, an assistant for the plaintiff's counsel responded that none of the dates were "good" for the plaintiff. *Id*. The plaintiff eventually underwent the surgery prior to the IME; and the defendants did not learn that the plaintiff had undergone the back surgery until after the IME occurred. *Id*.

While the Court granted an adverse inference, it pointed out that in *Silmon* the court excluded evidence after the plaintiff underwent a surgery following an order compelling an IME of the plaintiff. *See also Rogers v. Averitt Express, Inc*., 215 F. Supp. 3d 510, 520 (M.D. La. 2017) (no spoliation was found where the plaintiff had back surgery without giving the defendant the opportunity to conduct an independent medical exam, despite the defendant's specific letter to the plaintiff requesting an exam before undergoing surgery).

In this case, although no bad faith finding is required because this Court's discovery order was violated, actual bad faith still exist by Mr. Burnett and his Counsel J. Kyle Findley for the reasons assigned above. The Court finds that evidence of the cost of the 5 level lumbar laminectomy with fusion amounted

to **$459, 735.00** and should be excluded and should not be recovered as a sanction for the aforementioned misconduct. *See* Rec. Doc. 479.

Additionally, evidence of the costs of the post-laminectomy procedures which amounts to **$377, 551.87**, should be precluded as a recoverable damage. Rec. Doc. 479-1, p. 8-20. The Court further notes that the cost of Burnett's obesity surgery which is a precursor to the lumbar surgery cost of **$142, 828.00**, and should be subject to an adverse inference as the procedure occurred after request of counsel but not this Court's order. Rec. Doc. 466-7. The total of costs for which Burnett should be precluded from recovering based upon the evidence in the record is **$837, 286.87.**

The Court does **NOT** recommend that the THOR Interests be reimbursed for the IME examination. However, the Court does recommend that **ATTORNEY'S FEES** for the filing of the subject motion should be **GRANTED.**

IV. **Recommendation**

It is therefore **RECOMMENDED** that  the **Motion for Sanctions to Exclude Evidence for Patrick Burnett's Spoliation of Evidence and Disregard of this Court's Order (R. Doc. 405)** filed by Limitation-Petitioners, Modern American Railroad Services, L.L.C. and Shore Offshore Services, LLC (collectively "THOR Interests") and Claimant/Third-Party Defendant/Rule 14(c) Defendant, Premier Offshore Catering, Inc. ("Premier") be **GRANTED  against Mr. Burnett and J. Kyle Findley Counsel for the Plaintiff**.

**IT IS FURTHER RECOMMENDED** that an **ADVERSE INFERENCE** be given regarding Burnett's obesity surgery which was a precursor to the lumbar surgery cost **$142,828.00** for the reasons assigned above.

**IT IS RECOMMENDED** that the evidence of the cost of the 5 level lumbar laminectomy with fusion estimated **$459,735.00** should be excluded and should not be recovered as a sanction for the aforementioned misconduct.

**IT IS FURTHER RECOMMENDED** that evidence of the costs of the post-laminectomy procedures of **$377, 551.87** should be precluded as a recoverable damage.

**IT IS FURTHER RECOMMENDED** that the THOR Interests and Premier **NOT** be reimbursed for the cost of Burnett's IME examination.

**IT IS FURTHER RECOMMENDED** that the THOR Interests and Premier be **AWARDED REASONABLE ATTORNEY'S FEES** for the filing of the subject motion. Upon adoption of this Order, THOR Interests and Premier shall file a motion to set reasonable attorneys' fees and costs **no later than fourteen (14) days** from adoption, and any opposition to the motion shall be filed **no later than seven (7) days** from the filing of the motion. THOR Interests' and Premier's motion shall include the following: (1) an affidavit attesting to its attorney's education, background, skills, and experience; (2) sufficient evidence of rates charged in similar cases by other local attorneys with similar experience, skill, and reputation and; (3) the documentation required by Local Rule 54.2.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within **fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana, this 7th day of July , 2023.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

28