UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ALL COAST, LLC** | **CIVIL ACTION** |
| **VERSUS** | **NO: 21-258** |
| **SHORE OFFSHORE SERVICES, LLC, et al.** | **SECTION: "A" (4)** |

### ORDER

Before the Court are two motions filed by Claimant Montrell Smith and Non-Party Brittney Duplantis (Movants) against Limitation-Petitioners, Modern American Railroad Services, LLC and Shore Offshore Services, LLC (collectively, Thor Interests).

The first is a **Motion to Quash the Subpoena *Duces Tecum* to Aimbridge Hospitality, LLC (R. Doc. 512)**, seeking an order from the Court quashing a subpoena issued to nonparty Aimbridge Hospitality, LLC (Aimbridge) by Thor Interests. The motion is opposed. R. Doc. 516.

The second **Motion to Quash the Subpoena *Duces Tecum* to Hosp Soutx Marg, LLC and Vindicare Management, Inc. (R. Doc. 521)** seeks an order from the Court quashing a subpoena issued to nonparties Hosp Soutx Marg, LLC (HSM) and Vindicare Management, Inc. (Vindicare) by Thor Interests. The motion is opposed. R. Doc. 523.[1]

Both motions were heard by oral argument on August 30, 2023, at 10:00. For the following reasons, both Motions to Quash (R. Doc. 512 and R. Doc. 521) are **GRANTED**.

I.   **Background**

   A.   **Brief History of the Underlying Breakaway Incident**

---

[1] By motion of the Claimant and pursuant to Fed. R. Civ. P. 45(f), the Northern District of Texas transferred these motions to this Court. R. Doc. 515. The Texas court found that in the underlying matter, the same movants, through the same counsel filed "essentially the same motion to quash essentially the same subpoena served on another non-party." *Id.* The Court decoded that "exceptional circumstances in which the interests in having the issuing court resolve the issues presented by the pending subpoena-related motion outweigh whatever interest these non-parties have in obtaining local resolution of this motion (which they did not file) in this Court." *Id.*

1

This case arises from a breakaway incident involving Derrick Barge Thor (D/B Thor) and other vessels that occurred during Hurricane Zeta. R. Doc. 1. On the afternoon of October 28, 2020, the Thor, owned by Modern American Railroad Services and leased to Shore Offshore Services, was moored to the Martin dock in Port Fourchon, Louisiana. *Id.* The D/B Thor had a crew onboard waiting out the storm, as well as an assist tug coupled to her port side. *Id.* ¶¶ 7-8. As the hurricane made landfall, the D/B Thor became unmoored and was set adrift. *In re* Modern American Railroad Services, et al., No. 21-464, R. Doc. 1, ¶¶ 7. The D/B Thor came into contact with other vessels and property in and along the Bayou Lafourche channel. *Id.* ¶ 8. The resulting contact gave rise to Plaintiff All Coast's complaint against Defendants, Modern American Railroad Services, Shore Offshore Services, and Martin Energy Services. *See* R. Doc. 1. Additional complaints have been consolidated under this master case.

### B. Montrell Smith's Personal Injury Claim and the Subpoenas *Duces Tecum*

Claimant Montrell Smith filed a negligence action in Thor Interests' Limitation Action on October 29, 2021, seeking damages related to personal injuries sustained during his service as a crewmember of the D/B Thor on October 28, 2020. R. Doc. 78 ¶¶ 1-7. Specifically, Smith alleges that he sustained serious injuries to his cervical spine, lumbar spine, and other parts of his body during the performance of his duties. *Id.* ¶ 7.

During his deposition on July 20, 2023, Smith testified that he and his partner, Ms. Brittney Duplantis recently vacationed Margaritaville Beach Resort in South Padre Island, Texas (Margaritaville). R. Doc. 516 at 20-21, 33. On July 25, 2023, Thor Interests served subpoena *duces tecum* upon three nonparties: Aimbridge (R. Doc. 512-2), HSM (R. Doc. 521-1), and Vindicare (R. Doc. 521-2) (collectively, "July 25, 2023, subpoenas").

The July 25, 2023, subpoenas command Aimbridge, HSM, and Vindicare to each produce information concerning the individual activities of Smith and Ms. Duplantis between June 21, 2023, and July 10, 2023, at "any resort, hotel, condominium, spa, restaurant, bar, or other location, attractions or events owned or operated by [each non-party], [including] subsidiaries, or associated entities at Margaritaville Beach Resort, 310 Padre Blvd, South Padre Island, Texas 78597. R. Docs. 512-2, 521-1, 521-2 at page 4, ¶¶ 1-3. The subpoenas demand any and all documents, records, and electronically stored information

> associated with the fitness center, outdoor pool, swim-up bar, gift shop, LandShark Bar & Grill, Salty Rim Bar & Grill, Joe Merchant's Coffee & Provisions, St. Somewhere Spa, or Sapphire Spa located at the Margaritaville Beach Resort. Such documents and records should include, but are not limited to fitness center records, receipts, reservation confirmations (hotel, restaurant, fitness center, spa, outdoor pool or otherwise), invoices, rental agreements (windsurfing, banana boat rides, parasailing, offshore fishing, dolphin watching, wave runner, or otherwise), photographs and other documents.[2]

Next, the July 25, 2023, subpoenas request

> Any and all video recordings of Montrell Smith and/or Brittney Duplantis that may have been captured at any resort, hotel, spa, restaurant, bar, or other location, attractions or events at the Margaritaville Beach Resort from June 21, 2023, through July 10, 2023. This includes, but is not limited to, any video recordings showing Montrell Smith and/or Brittney Duplantis at the fitness center, outdoor pool, swim-up bar, gift shop, LandShark Bar & Grill, Salty Rim Bar & Grill, Joe Merchant's Coffee & Provisions, St. Somewhere Spa, or Sapphire Spa located at the Margaritaville Beach Resort.[3]

Finally, Thor Interests seek emails or other electronic communications in [their] from or to the email address deshunesmith26@gmail.com," "voice recordings, call logs, transcripts (electronic, printed, or otherwise), text messages, electronic communications, or other documents from or associated with" both Movants' phone numbers from June 21, 2023, to July 10, 2023.[4]

---

[2] R. Docs. 512-2, 521-1, 521-2 at page 4, ¶¶ 1-3.
[3] R. Docs. 512-2, 521-1, 521-2, all at page 5, ¶ 4.
[4] R. Docs. 512-2, 521-1, 521-2, all at page 5, ¶ 5.

### C. Instant Motions

Movants filed two motions to quash July 25, 2023, subpoenas before the time to comply.[5] Movants urge the Court to quash for two reasons. First, Movants argue that the subpoenas pertaining to Ms. Duplantis are facially overbroad. R. Docs. 512-1 & 521, ¶ 9. Ms. Duplantis is Smith's companion and the mother of his daughter. *Id.* She is a nonparty to the underlying limitation action, has no claim for damages against Thor Interests, and has not put her physical or mental condition at issue in the lawsuit. *Id.* Moreover, Ms. Duplantis has an expectation of privacy in the documents and records Thor Interests seek. *Id.*

Second, Smith asserts that the subpoenas are disproportionate to the needs of the suit. *Id.* Specifically, Smith argues that the subpoenas are based on a printout of an image posted on social media taken while he was staying with his family at a hotel in South Padre Island that was shown to Smith during his deposition on July 20, 2023. *Id.* Smith alleges that the information would permit Thor Interests to "track every step [he] took while at the hotel." *Id.* Further, because Smith and Ms. Duplantis have not publicly disclosed the information that Thor Interests seek, Smith argues that Rule 26(b)(1) does not "grant a requesting party a generalized right to rummage at will through information that the responding party has limited from public view." *Id.* ¶ 10.

Thor Interests opposes the motions for four reasons. First, Thor argues that Movants have no protected privacy interests in the information they voluntarily disclosed to the Margaritaville resort. *Id.* Further, even if such a privacy interest exists, Thor Interests alleges that "Smith waived his personal interests [including those of Ms. Duplantis] when he put them at issue in this litigation." *Id.* at 2.

---

[5] The date to comply with the subpoenas was August 8, 2023.

Second, Thor Interests seeks documents pertaining to Ms. Duplantis because Smith's deposition testimony indicated that Ms. Duplantis paid for the vacation. *Id.* at 23. Smith also testified that the only bank account Smith and Ms. Duplantis have is a joint account. *Id.* at 14-15. As such, Thor Interests suspects that records of Smith's activities on vacation may be listed under Ms. Duplantis' name rather than his own. *Id.* at 2.

Third, the July 23, 2023, subpoenas seek records related to Smith's ability to participate in recreational activities while on vacation. R. Doc. 516 at 1. The records are relevant to the physical and mental injuries Smith claims he sustained during the breakaway incident described above. *Id.* At his deposition, Smith testified that during his vacation, he spent time at the resort's pool watching his daughter swim, rode on a Ferris wheel, drove around the island, and "walked the beach." R. Doc. 516-1 at 22-23.

Fourth, Thor maintains that the July 23, 2023, subpoenas are not overly broad because they are limited by a 19-day time frame during which Thor suspects Smith could have visited Margaritaville. R. Doc. 516 at 4. Moreover, the records are both relevant and proportional to the needs of the case given Smith's claims and the activities the resort advertises. *Id.* The resort advertises, among other things, an on-site fitness center and spa, and offers activities like dolphin viewing, windsurfing, parasailing, offshore fishing, and wave runner rentals. *Id.* Thor claims that records showing whether Smith visited certain amenities or took part in certain activities will confirm or contradict his testimony and provide relevant context to his claims of physical and mental injuries. *Id.*

**II.    Standard of Review**

The command "to produce documents, electronically stored information, or tangible things in [a] person's possession, custody, or control" extends to nonparties. *See* Fed. R. Civ. P.

5

45(a)(1)(D).  "Ordinarily, a party has no standing to seek to quash a subpoena issued to someone who is not a party to the action unless the objecting party claims some personal right or privilege with regard to the documents sought. This personal right or privilege standard has been recognized in numerous cases." WRIGHT & MILLER, 9A FED. PRAC. & PROC. § 2459 (3d ed.).

Rule 26(b)(1) sets the scope of discovery to include "any non-privileged matter that is relevant to any party's claim or defense." FED. R. CIV. P. 26(b)(1).  The Rule further specifies that "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable." *Id.*  That discovery rules are accorded broad and liberal treatment to achieve their purpose of adequately informing litigants in civil trials is well established.  *Herbert v. Lando*, 441 U.S. 153, 177 (1979).  Nevertheless, discovery provisions, like all the Federal Rules of Civil Procedure are subject to the command of Rule 1 that they "be construed to secure the just, speedy, and inexpensive determination of every action." *Id.* (quoting FED. R. CIV. P. 1).  To that end, "the requirement of Rule 26(b)(1) that material sought be 'relevant' should be firmly applied." *Id.*  If the court determines that the proposed discovery is outside the scope permitted by Rule 26(b)(1), the court must limit the extent of discovery.  FED. R. CIV. P. 26(b)(2)(C)(iii).

"A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." FED. R. CIV. P. 45(d)(1).  However, if a subpoena subjects a person to undue burden, Rule 45(d)(3)(A)(iv) requires a district court to quash or modify the subpoena.  A court considers factors from *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 817-18 (5th Cir. 2004) to determine whether a subpoena presents an undue burden.  The factors include the relevance of the information requested; the party's need for the documents; the breadth of the documents requested; the time period covered by the request; the particularity with which the party describes the requested documents; and the

6

burden imposed. *Id.* at 818. Further, if the person to whom the document request is made is a non-party, the court may also consider the expense and inconvenience to the non-party. *Id.* A subpoena that is facially overbroad may present an undue burden. *Id.*

## III. Analysis

### A. Standing to Challenge Subpoenas Issued to Third Parties

As a threshold matter, Thor argues that Smith lacks standing to challenge the subpoenas issued to Aimbridge, HSM, and Vinidcare. Relying on *Wells v. State Farm Fire and Cas. Co.*, No. 13-120, 2013 WL 3187279 (E.D. La. June 20, 2013) (Roby, M.J.), Thor argues that even though Smith asserts a personal interest in the litigation, Smith waived any protected personal interest in the requested information by placing his "personal interest" at issue. R. Doc. 516 at 7. However, Thor's reliance on *Wells* is misplaced.

In *Wells*, Mr. Wells sought to quash subpoenas issued to non-parties by defendant, State Farm Fire and Casualty Company related to a breach of contract claim. *Wells*, 2013 WL 3187279, at *1. Mr. Wells alleged that at the time a fire damaged his home, he had an active homeowner's insurance policy with State Farm, but State Farm refused to pay Mr. Wells' insurance claim. *Id.* Mr. Wells filed suit and sought $450,000 in damages. *Id.* In response, State Farm alleged that the fire was intentionally set and so based its nonpayment on provisions in the policy excluding intentional and fraudulent acts from coverage. *Id.*

During discovery, State Farm issued substantively identical subpoenas to Mr. Wells' children, seeking their phone numbers, credit cards, bank accounts, photographs, and videos of the Wells' home, records showing removal of household items. *Id.* at *3. The court denied Wells' motion to quash because by suing State Farm for the failure to pay insurance proceeds, he clearly placed the condition of his home and the contents thereof at issue. *Id.* As such, Mr. Wells' claims

divest him of standing to challenge the subpoena because he has voluntarily placed such information at issue. *Id.*

Here, however, Smith's personal injury suit does not place his ability to go on a vacation or his personal finances at issue. Smith's suit is not a breach of contract claim, it is a negligence action that places the actions of his employer and the resulting injuries at issue, not his private life. Smith's suit certainly has not placed Ms. Duplantis' personal finances or vacations at issue. Therefore, Smith has not waived his protected interest in records relating to his personal vacation and maintains standing to challenge the July 25, 2023, subpoenas.

Further, Smith's deposition testimony that he shares a bank account with Ms. Duplantis and that Ms. Duplantis paid for their vacation has not "opened him[] up" to discovery information concerning this financial information. Pointing to *Frazier v. RadioShack Corp.*, No. CIV.A. 10-855-BAJ-CN, 2012 WL 832285 (M.D. La. Mar. 12, 2012), a wrongful termination suit where plaintiff lacked standing to challenge a subpoena issued to a non-party concerning his spouse's bank account, Thor Interests claims that because Smith testified that Ms. Duplantis paid for the trip, records under her name must be produced. *Id.*

Wrong again. In *Frazier*, plaintiff's income and employment subsequent to his termination was directly at issue because his claim sought lost earnings and backpay in connection with the alleged wrongful termination. *Frazier*, 2012 WL 832285 *2. Here, Smith's personal injury claim puts his mental and physical condition at issue, and does not open him up to the issue of who pays for his vacation.

Finally, Thor Interests argued that "in the context of Fourth Amendment protections (analogous here with respect to any contention of Movants' expectation of privacy), courts have found that hotel 'guests lack any privacy interest of their own in [a] hotel's records.'" R. Doc. 512

at 8 (citing *Patel v. City of Los Angeles*, 738 F.3d 1058, 1062 (9th Cir. 2013), *aff'd sub nom. City of Los Angeles, Calif. v. Patel*, 576 U.S. 409 (2015)).  However, at oral argument, Counsel for the Thor Interests wisely conceded that Movants indeed have an expectation of privacy in the requested information. Finding that Smith has standing to challenge the subpoenas issued to the nonparties, we next turn to the *Wiwa* factors.

  **B. Analysis**

  Here, Thor Interests has failed to establish the relevancy of nearly every request in its July 25, 2023, subpoenas. The request for information concerning Ms. Duplantis's vacation activities and financial information is wholly irrelevant to Smith's personal injury suit.  The breadth of documents including key card entry logs, fitness center records, receipts, reservation confirmations, and documents associated with the gift shop, LandShark Bar & Grill, Salty Rim Bar & Grill, Joe Merchant's Coffee & Provisions, St. Somewhere Spa, or Sapphire Spa as well as photographs and security footage is so exhaustive as to be invasive.  As Movants correctly note, the July 25, 2023, subpoenas are "the very definition of an overreaching fishing expedition that is not proportionate to the needs of the lawsuit." R. Doc. 512-1.

  With respect to Smith's vacation activities and financial information, the only relevant request not sought specifically here concerns documents seeking health information related to Smith's visit to the St. Somewhere Spa or Sapphire Spa.  Thor Interests does not require any other documents concerning Smith's vacation.

  Finally, the July 25, 2023, subpoenas create a significant burden on the Recipient Non-Parties such that they have jointly objected to the production of documents.  *See* R. Doc. 523-3.  The Court agrees.  Without a particular description or category of documents, the Recipient Non-Parties declare that to "attempt to identify 'all' documents or categories of documents would entail

a detailed review of virtually each and every piece of paper in the possession of Recipient Non-Parties and its numerous employees, which is not reasonably possible." *Id.* ¶ 8. What is more, Recipient-Nonparty Vindicare has no affiliation with the subject Margaritaville Beach Resort and objects on that ground.

To sum, it appears that Thor Interests believes the requested information may lead to relevant evidence of Smith's ability to work. However, this is not the legal standard that the Court is required to apply. Rule 26(b)(1) permits parties to "obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense." FED. R. CIV. P. 26(b)(1). The requirement of relevance is firmly applied, and as the Court has explained in numerous prior orders, it is not sufficient that the requested discovery may lead to relevant evidence, but that it is relevant to any party's claim or defense.

### IV.  CONCLUSION

Accordingly,

**IT IS ORDERED THAT** Smith and Ms. Duplantis' **Motion to Quash the Subpoena** *Duces Tecum* **to Aimbridge Hospitality, LLC (R. Doc. 512)** is **GRANTED**.

**IT IS FURTHER ORDERED THAT** Smith and Ms. Duplantis' **Motion to Quash the Subpoena** *Duces Tecum* **to Hosp Soutx Marg, LLC and Vindicare Management, Inc. (R. Doc. 521)** is **GRANTED**.

New Orleans, Louisiana, this 30th day of August 2023.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**