## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN THE MATTER OF MODERN | * | CIVIL ACTION NO. 2:21-CV-00258- |
| AMERICAN RAILROAD | * | JCZ-KWR (lead case) c/w 21-337, 21-464, |
| SERVICES, LLC, as Owner, and | * | 21-822, 21-1968, 21-1969, 21-1981, 21- |
| SHORE OFFSHORE SERVICES, | * | 1982, 21-2075, 21-2227 |
| LLC, as Bareboat Charterer and | * | Pleading applies to all cases. |
| Owner *Pro Hac Vice* of D/B THOR | * | |
| PETITIONING FOR | * | JUDGE JAY C. ZAINEY |
| EXONERATION FROM AND/OR | * | |
| LIMITATION OF LIABILITY | * | MAGISTRATE JUDGE KAREN WELLS |
| | * | ROBY |

### MEMORANDUM IN SUPPORT OF
### PATRICK BURNETT'S OBJECTIONS TO, AND MOTION FOR REVIEW OF, THE
### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Limitation claimant Patrick Burnett files this memorandum in support of his objections to the Magistrate Judge's Report and Recommendation (Rec. Doc. 491) and his motion for review before the district court.

## I.

### INTRODUCTION

Without addressing anything substantive regarding this case or the Report and Recommendation at issue, the Court should deny the underlying motion for sanctions as moot and vacate the report and recommendation at issue for the simple reason that this case has now settled and the defendants who filed the underlying motion have agreed to release and waive any claims that Mr. Burnett or Mr. Findley committed spoliation or any sanctionable conduct.

To the extent the Court does not find that dispositive, the issue at hand in this personal injury matter is as follows. The matter arises from (1) Mr. Burnett undergoing a back surgery right after the Labor Day weekend on Tuesday, September 6, 2022 when (2) four days earlier, on Friday, September 2, 2022, the Magistrate Judge had issued an order compelling an IME to take place

before any surgery. This discrepancy was seized upon by the parties in this case who are defendants to Mr. Burnett's personal-injury claims (Premier Offshore Catering, Inc., and the so-called THOR Interests, which are Modern American Railroad Services, L.L.C. and Shore Offshore Services, LLC.). These parties filed a motion to sanction Mr. Burnett and exclude evidence of his surgery (along with subsequent surgical procedures for emergency wound care.)

The Magistrate Judge issued a report and recommendation. It recommended that Premier and the Thor Interests' motion be granted, that Mr. Burnett (and his counsel) be sanctioned, and that over $800,000 in surgical costs related be excluded. It also recommended an adverse inference for a pre-cursor weight loss surgery that had taken place before the IME order was issued by the Magistrate Judge but after a written request for an IME had been made by the movers. It also cast Mr. Burnett with the movers' attorneys' fees and costs.

Mr. Burnett urges this Court to reject the report and recommendation. This Court's review should be *de novo* because the Magistrate Judge issued merely a report and recommendation. But even if the Court thinks a more deferential standard of review is appropriate, the evidence clearly does not support the overly harsh disposition set forth in the report and recommendation. For three reasons, this Court should grant review and reverse the report and recommendation in whole or part.

First, under the circumstances of this case, the movers have clearly failed to prove that they suffered prejudice from the lack of a pre-surgical IME. Mr. Burnett had a host of medical records and medical imaging taken before surgery (in addition to an exam by one of the mover's doctors) all documenting the pre-surgical state of his back. And the movers' chosen IME physician in this case—the same person who would have conducted any IME—has been deposed. That physician, Dr. David Vanderweide, testified that he did ***not*** need a pre-surgery IME to render his opinion that

Mr. Burnett did not need back surgery. This physician further made clear that he had all the information he needed from the pre-surgical records and imaging to render his opinions, and that the lack of a pre-surgical IME had no impact upon his opinion. In light of Dr. Vanderweide's testimony, the report and recommendation clearly erred in finding that the movers suffered prejudice at all. And it erred in imposing so harsh a sanction as *excluding* Mr. Burnett's surgeries from this case. Dr. Vanderweide's testimony, all on its own, is sufficient reason for this Court to intervene.

Second, the report and recommendation interprets the unfortunate timing of the surgery vis-à-vis the IME order (a four-day delay over the Labor Day weekend) as evidence of *bad faith*. But the peculiar timing at issue—where the order was issued on the Friday just before the Labor Day weekend (Labor Day fell on September 5, 2022) and the surgery occurred only on September 6, 2022—undermines the notion of bad faith. At most, the matter reflects inadvertence. That is not sufficient grounds to impose sanctions.

But finally, even if a sanction of some kind were warranted, jurisprudence calls for a sanction no harsher than necessary and one tailored to remedy any actual evidentiary spoliation. Given that the defendants suffered no meaningful prejudice, and in light of the unique circumstances surrounding the surgery's timing, the sanction that the report and recommendation chose was clearly too harsh. At most, any sanction should not have exceeded the issuance of an adverse inference on the surgeries (which would already be a very substantial sanction). Even if the Court is not inclined to set aside the issuance of sanctions entirely, it should reduce the sanctions to simply an adverse inference on the surgical procedures at issue.

## II.

### BACKGROUND

### II-A.

### The underlying incident and the initial medical exams conducted on Mr. Burnett by his employer, Premier.

Mr. Burnett is a personal-injury claimant. On October 28, 2022, he was aboard the D/B THOR, a barge that was tied up to a dock in the path of Hurricane Zeta.[1] Mr. Burnett's employer was Premier and the barge itself was owned by the THOR Interests.[2] When the hurricane impacted the area, its storm surge caused Mr. Burnett to suffer serious injuries aboard the barge.[3]

Three days after the incident, Premier sent Mr. Burnett in for an examination with its own retained doctor (on October 31, 2020).[4] In connection with that visit, Mr. Burnett gave Premier's representative permission to be present in the room during his treatment.[5] The name of Premier's company representative appears in the records in connection with the visit itself,[6] and that company representative signed papers in connection with the exam.[7]

Within a week (on November 6), another examination followed with a different Premier-hired healthcare provider. Once again, Premier had requested, authorized, and paid for this

---

[1]     Rec. Doc. 491, report and recommendation, p. 1.

[2]     *Id.*

[3]     *Id.* at pp. 1-2.

[4]     Rec. Doc. 467-2, Occupational Medicine records, workers' comp medical records from Occupational Medicine Services, p. 34 of 45 (October 31, 2020 medical record).

[5]     *Id.* at p. 19 of 45 ("I give permission for my company representative to accompany me in the room during the exam.").

[6]     *Id.* at p. 20 of 45 ("Company Name: Premiere Catering."); *id.* ("Company Contact: Jamie Owens.").

[7]     *Id.* at p. 24 of 45 ("Authorized by: Jamie.").

treatment.[8] Significantly, this treatment included a physician paid for by Premier conducting an examination of Mr. Burnett's back before any surgical procedure.[9] This examination involved a complete physical examination of Mr. Burnett that included reviewing his history, systems, a general exam, and lumbar spine exam.[10] Based upon that exam, and previous x-rays taken, that doctor diagnosed Mr. Burnett with acute lumbar strain and left lumbar radiculopathy and he ordered a lumbar MRI.[11]

## II-B.

**Mr. Burnett initiates litigation; the defendants later initiate a limitation action.**

On November 16, 2020, Mr. Burnett filed suit in Texas state court against Premier, one of the THOR Interests (Shore), and certain other entities.[12] About a week later, the defendants removed the case to federal court.[13] The defendants demanded an IME of Mr. Burnett on December 9, 2020.[14] Thereafter, the defendants declined to respond to Mr. Burnett's issued discovery on grounds that it could not take place until after the Rule 26 conference in federal court.[15] The Rule 26 conference didn't happen until March 4, 2022—and on that same day, the THOR Interests filed the limitation of liability action originally docketed at 2:21-cv-464 (and consolidated here).[16] This

---

[8]     Rec. Doc. 467-3, workers' comp medical records from Mississippi Sports Medicine, at pp. 5-6 of 28 (authorization by Premier Offshore Catering for a lumbar MRI of Mr. Burnett); *similar* at *id*. at p. 16 of 28.

[9]     *Id*. at pp. 20-22 of 28.

[10]    *Id*. at pp. 20-21 of 28.

[11]    *Id*. at pp. 21-22 of 28.

[12]    Rec. Doc. 491, report and recommendation, p. 2.

[13]    *Id*.

[14]    Rec. Doc. 405-3, p. 4 of 5 (email demanding opportunity before IMEs before invasive procedures).

[15]    *Id*. at p. 3 of 5 (email from John Ribaritis).

[16]    2:21-cv-464, Rec. Doc. 1, initial complaint.

Court then entered a restraining order days later (on March 10, 2021) restraining the Texas federal case from proceeding.[17] The THOR Interests immediately notified the Southern District of Texas of that order. And the matter proceeded in this forum under their limitation action, which was consolidated into this docket number. Mr. Burnett filed a claim in this action.[18] Discovery did not proceed in the Texas case due to the stay.

Amid all of this, Mr. Burnett underwent a weight loss surgery on November 10, 2021 in preparation for a potential fusion surgery. [19]

The Rule 26 conference in this case later occurred on January 4, 2022.[20] Mr. Burnett began producing medical records in this case on February 10, 2022.[21] Though, notably, it was only on July 11, 2022 that the parties in this case were to exchange written discovery.[22]

### II-C.

### Mr. Burnett is recommended and scheduled for back surgery, and the THOR Interests and Premier move to compel an IME, which Mr. Burnett opposes.

On July 11, 2022, after review of MRI films of Mr. Burnett's lumbar spine, Mr. Burnett's doctor recommended him for back surgery.[23] That day, the surgery was simultaneously set for August 30, 2022.[24] Around the same time, on July 13, 2023, Premier moved to compel an IME of

---

[17]     2:21-cv-464, Rec. Doc. 4, restraining order.

[18]     Rec. Doc. 491, report and recommendation, p. 2.

[19]     Rec. Doc. 405-6, p. 1 (November 5, 2021 medical record noting procedure).

[20]     Rec. Doc. 171, p. 1 (noting January 4, 2022 Rule 26 conference).

[21]     Rec. Doc. 345-4 at p. 2, email with February 10, 2022 production for Mr. Burnett.

[22]     Rec. Doc. 342, p. 1 (noting initial discovery to be answered on July 11, 2022).

[23]     Rec. Doc. 405-11 at p. 1 of 3, July 11, 2022 office note.

[24]     *Id*. at p. 2 of 3.

Mr. Burnett.[25] Mr. Burnett opposed that motion, noting that he had a pending motion to bifurcate damage proceedings from liability proceedings in this case.[26]

On August 19, 2022, a flight was booked for Mr. Burnett from his home in Mississippi to Houston to take place on August 24, 2022 so that he might have the surgery on August 30, 2022.[27] A return flight was simultaneously booked for him at that same time for September 8, 2022.[28] In line with that booked flight, Mr. Burnett flew to Houston on August 30, 2022.[29] Mr. Burnett's surgery was ultimately pushed back by his doctor until September 6, 2022.[30] Mr. Burnett testified that he did not communicate with his lawyers regarding this change in surgical date.[31]

**II-D.**

**The Magistrate Judge compels an IME on Friday, September 2, 2022; Mr. Burnett's surgery goes forward on September 6, 2022.**

On September 2, 2022 at approximately 3:50 pm, the Magistrate Judge granted the motion to compel Mr. Burnett's IME.[32]

**II-E.**

---

[25]   Rec. Doc. 345, motion to compel IME.

[26]   Rec. Doc. 353, opposition to motion to compel IME. The motion to bifurcate was lodged as Rec. Doc. 352. After all of the events in question, the Court later denied the motion to bifurcate as premature on October 12, 2022. Rec. Doc. 401, order denying motion as premature.

[27]   Rec. Doc. 487, affidavit in response to court order.

[28]   *Id.*

[29]   Rec. Doc. 467-1, deposition of Mr. Burnett, at p. 8 of 20, deposition p. 30.

[30]   *Id.* at p. 9 of 20, deposition pp. 34-35.

[31]   *Id.* at p. 10-11 of 20, deposition pp. 40-41.

[32]   Rec. Doc. 377, order granting IME.

**The surgery takes place on September 6; various wound care procedures follow.**

As noted, Mr. Burnett did not communicate the change in surgery to his counsel. And his counsel did not reach out between September 2 and September 6. Mr. Burnett's back surgery went forward on September 6, 2022.[33] The surgery was not without subsequent complications, however. Two emergency care cleaning procedures were required and went forward on September 22, 2022[34] and September 29, 2022.[35] These procedures were life or death matters because Mr. Burnett was fighting an infection.[36]

Ultimately, Mr. Burnett did not return to Mississippi until October 5, 2022 when he was able to take a flight back.[37]

**II-F.**

**The THOR Interests and Premier move for sanctions against Mr. Burnett; further discovery is ordered into Mr. Burnett and the opinions of the movers' IME physician.**

The Thor Interests and Premier later moved for sanctions against Mr. Burnett, contending that his actions of undergoing the surgery days after the Court's IME order amounted to the spoliation of evidence.[38] Mr. Burnett opposed the motion,[39] and the movers filed a reply.[40] After a hearing on the motion, the Magistrate Judge ordered further discovery.[41] Namely, the Magistrate Judge ordered that Mr. Burnett be deposed about when he knew of the surgical recommendations,

---

[33]    Rec. Doc. 467-1, deposition of Mr. Burnett, at pp. 10-11 of 20, deposition pp. 40-41.

[34]    Rec. Doc. 409-6, p. 2 of 2.

[35]    Rec. Doc. 409-7, p. 2 of 2.

[36]    Rec. Doc. 467-1, deposition of Mr. Burnett at  p. 10, deposition pp. 43-45.

[37]    Rec. Doc. 487, affidavit in response to Court order. The flight was booked for him by his counsel.

[38]    Rec. Doc. 405, motion for sanctions.

[39]    Rec. Doc. 409, Mr. Burnett's opposition to motion for sanctions.

[40]    Rec. Doc. 421, reply in support of motion for sanctions.

[41]    Rec. Doc. 418, court order.

and that the movers' IME physician, Dr. David Vanderweide, provide an affidavit on whether the surgery spoliated evidence.[42] Mr. Burnett was deposed (as noted earlier in this memorandum). The parties filed supplemental memoranda on that deposition.[43] And the movers provided an affidavit from Dr. Vanderweide.[44]

Around the same time, Mr. Burnett sought to depose Dr. David Vanderweide and not merely accept an untested affidavit on his opinions. Mr. Burnett moved to compel this deposition.[45] The Thor Interests and Premier opposed the effort,[46] but the Court granted Mr. Burnett's motion.[47] As the Magistrate Judge recognized, prejudice was a "critical component" of a spoliation inquiry. As its order explained: "The Court finds that since the parties must show that they were prejudiced by the inability of Dr. Vanderweide to perform a pre-surgery IME, and spoliation is a critical component in assessing the pending sanctions motion, Burnett's deposition of Dr. Vanderweide is necessary."[48]

---

[42]    *Id.*

[43]    Rec. Doc. 466, movers' supplemental memorandum concerning Mr. Burnett's deposition; Rec. Doc. 467, Mr. Burnett's supplemental memorandum.

[44]    Rec. Doc. 466-11, affidavit of Dr. Vanderweide.

[45]    Rec. Doc. 449, motion to compel deposition of David Vanderweide.

[46]    Rec. Doc. 452, opposition to motion to compel deposition of Dr. David Vanderweide.

[47]    Rec. Doc. 462, order granting motion to compel.

[48]    *Id.* at pp. 1-2.

## II-G.

**The THOR Interests and Premier's IME physician, Dr. David Vanderweide, admits under oath that he does not require a pre-surgery IME of Mr. Burnett and that the absence of one has no impact upon his opinions.**

In line with the Magistrate Judge's order, Dr. Vanderweide was then deposed.[49] At his deposition, Dr. Vanderweide first confirmed a basic point. He can, and regularly does, render medical opinions on the necessity of surgery based solely on medical records (and without the need for a physical examination).[50] And so the affidavit he submitted meant one and only one thing: That although medical records of other pre-surgical physical exams on Mr. Burnett exist, Dr. Vanderweide did not *personally* conduct a physical examination of Mr. Burnett before the surgery and, therefore, cannot speak to what his own *personal* physical exam would have shown.[51]

---

[49]     Rec. Doc. 478-1, deposition of Dr. David Vanderweide.

[50]     *Id*. at pp. 10-11 ("Q. All right. And you'd agree with me that when you provide opinions, you provide opinions based on records only on numerous occasions, correct? A. Yes. Q. Okay. And, in fact, you do it all the time where you can provide an opinion about the necessity of surgery with just reviewing records without seeing a plaintiff, correct? A. Correct. Q. Okay. And that's something you've done throughout the course of your career, is you're able to generate reports solely based on medical records and MRI films, correct? A. Correct. Q. And those reports that you have generated based solely on medical records and MRI films without seeing a plaintiff, you still stand by those opinions, don't you? A. I do. Q. Okay. And you do it all the time, you issue reports on injuries, causation and necessity of surgery on a regular basis without actually examining a plaintiff, correct? A. Correct. Q. Okay. And you do it also as a part of your practice, you will issue reports on injuries, causation and the necessity of surgery without seeing a plaintiff, correct -- or a patient, rather? A. Correct.").

[51]     *Id*. at pp. 27-28 ("A. Yeah. My point in constructing the – the affidavit was that I personally am -- am unable to testify to his presurgical state because I didn't see him prior to surgery. There are medical records that are replete with physical examinations -- Q. Okay. A. -- but I cannot personally testify to what he looked like prior to his surgery. Q. Sure, and let -- let's -- let's break that down for a moment. What you're saying is you can't personally state what your own physical exam shows, correct? A. That's correct. Q. Okay. But what you can testify to and what you do testify to in numerous cases is what other physical examinations show for the presurgical medical condition, correct? A. That's correct."); *id*. at p. 84 ("Q. Okay. You're not making -- and just so I'm clear, your affidavit is not stating that other defense doctors have not been able to perform those various exams. That's not what you're saying, correct? A. No. All I'm saying is that I am unable to personally attest to any preoperative presurgical physical findings or complaints on Mr. Burnett.") (objections omitted); *id*. at p. 92 ("Q. . . . As it relates to your affidavit, and we touched on this

Turning to Mr. Burnett himself, Dr. Vanderweide conceded that he *was*, in fact, able to render an opinion that Mr. Burnett did not need surgery based solely on the records presented, and that he had all the information he needed to render that opinion.[52] Further Dr. Vanderweide testified that the absence of a pre-surgical physical exam had no ultimate impact *at all* on his medical opinions on Mr. Burnett.[53] While quoted in the lengthy footnote exchange provided here,

---

earlier, not to belabor a point, but if we want to narrow down what your affidavit says, it basically says I wasn't able to examine him before his surgery, correct? A. Correct.").

[52] *Id*. at pp. 141-146 ("Q. Okay. All right. The other thing that I wanted to ask you is you were asked questions earlier that there was an instruction for so let me clear it up. In this particular case, based on the medical records that you do have, the physical examination, documents that you do have that were recorded, the imaging, the discography, you are able to render an opinion as it relates to Patrick Burnett, true? A. I would be. Q. Okay. And you're able to do that based on your education, training and experience and being able to review medical records and imaging and come to a conclusion about the necessity of surgery, correct? A. I would be. Q. Okay. And you are able to do that in this case despite having not physically examined him as it relates to Patrick Burnett, fair? A. Correct. Q. Said another way, despite having not been able to physically examine him for purposes of a medical opinion for necessity and causation, you have all the information that you need in order to render that opinion? A. Correct. Q. Sir? A. Correct. Q. Thank you. And we talked about some of the physical examinations, straight leg raise test, tenderness test, all of those types of tests. What you rely on is the document-recorded information and the medical records as well as the imaging as it relates to presurgical condition, true? A. Correct. Q. Okay. And the other thing that I was going to ask you is in this case, you are able to give an opinion about Patrick Burnett's presurgical condition based on those medical records, those imaging findings and all of the medical documentation you've received that shows his presurgical condition, true? A. Correct. Q. So if someone were to say at a later date that you somehow are unable to render an opinion about Patrick Burnett's medical condition presurgery, that would not be true. You can based on the evidence that you have, correct? A. Correct. Q. Thank you. The only thing that has changed is you're not able to say you saw him before surgery, correct? A. That is correct. Q. But you don't -- Q. -- need that in order to render an opinion, true? A. Correct. . . . Q. In this case, you weren't able to see Mr. Burnett prior to his surgery, fair? A. Correct. Q. Okay. Q. But despite the fact of not seeing him, you are able to render all of your opinions that you normally would based on the copious amounts of medical records, imaging, discography that does exist presurgery, true? A. Correct. Q. Okay. And what I'm saying is the only thing is that you -- the only thing you can't say is that you saw him, right? Q. Before surgery? A. Yeah. I mean, the only thing I can't do is testify to my personal examination of him. Q. Fair. Okay. What you're saying is the only thing you can't do is testify to your own personal exam, correct? A. Correct.") (form objections omitted).

[53] *Id*. at p. 180 ("Q. What I'm saying is it does not impact your ability to form a medical opinion as it related to Patrick Burnett, correct? A. Correct.") (form objections omitted); *id*. at pp. 185-86 ("Q. Okay. Based on the medical records you reviewed, the physical examinations that you've reviewed, the imaging that you've reviewed, your ability to render a medical opinions for the defendants as it relates to Patrick Burnett has not been impacted at all by not seeing him, true? A. Correct.") (form objections omitted); *id*. at p. 194 ("Q. Based on what you have reviewed and the information that

it bears repeating for purposes of the instant motion: When questioned directly whether he had all the information he needed in order to render an opinion regarding Mr. Burnett's necessity for surgery, **despite having not physically examined him**, Dr. Vanderweide agreed that he had everything he needed.[54] Again, Dr. Vanderweide said that his ability to render an opinion on Mr. Burnett without seeing him before surgery had "not been impacted at all."[55]

**II-H.**

**The Magistrate Judge issues the report and recommendation; it recommends sanctioning Mr. Burnett and entering (1) an adverse inference on the weight loss surgery, (2) excluding his lumbar surgery and wound care surgery costs, and (3) casting him with fees and costs.**

The Magistrate Judge ultimately issued a report and recommendation that recommended sanctioning Mr. Burnett.[56] The report and recommendation stated that Mr. Burnett had a duty to preserve evidence of his back's condition after the request for an IME,[57] and that he had spoliated evidence by undergoing surgery after the request for an IME and after the Magistrate Judge's IME order,[58]

As to whether Premier and the THOR Interests were prejudiced, the report and recommendation noted that Dr. Vanderweide testified that he could not perform certain tests on

---

you do have and you have seen, you feel comfortable being able to provide an opinion just like you do in other cases about the necessity of surgery, correct? A. Correct.").

[54] *Id.* at p. 143 ("Q. Said another way, despite having not been able to physically examine him for purposes of a medical opinion for necessity and causation, you have all the information that you need in order to render that opinion? A. Correct.").

[55] *Id.* at pp. 187-88 ("Q. Okay. Based on the medical records you reviewed, the physical examinations that you've reviewed, the imaging that you've reviewed, your ability to render a medical opinion for the defendants as it relates to Patrick Burnett has not been impacted at all by not seeing him, true? A. Correct.") (form objections omitted).

[56] Rec. Doc. 491, report and recommendation.

[57] *Id.* at pp. 8-9.

[58] *Id.* at pp. 9-12.

Mr. Burnett in light of Mr. Burnett having undergone surgery.[59] The report and recommendation did not address Dr. Vanderweide's express testimony that his ability to render his opinions in this case—that Mr. Burnett did not need the surgery—was not impacted.

The report and recommendation deemed Mr. Burnett's testimony on not communicating with his counsel on his medical treatment to be uncredible, and it deemed him in bad faith.[60]

Finally, as to the appropriate sanction, the report and recommendation took issue with the IME order being violated, and it recommended that all costs associated with the weight loss surgery, the back surgery, and the wound care cleanup procedures should be excluded. The total amount of this sanction exceed $800,000.[61] It also recommended the casting of attorneys' fees and costs.[62]

**II-I.**

**On October 8, 2023, the Thor Interests, Premier, and Mr. Burnett settle their differences.**

On October 8, 2023, Mr. Burnett entered into a settlement agreement with the Thor Interests and Premier Offshore Catering, Inc. The settlement agreement provides that the Thor Interests and Premier agreed to RELEASE and WAIVE all claims, theories, and arguments of any kind related to spoliation of evidence and/or conduct to date in Case No. 21-258 and any case consolidated with it.

---

[59]     *Id*. at pp. 15-16.

[60]     *Id*. at pp. 17-23.

[61]     *Id*. at pp. 23-28.

[62]     *Id*.

### III.

#### LAW AND ARGUMENT

#### III-A.

**The Court should deny the motion for sanctions as moot and vacate
the Magistrate Judge's report and recommendation.**

As noted, the parties at issue here have recently entered into a settlement agreement. In the

agreement, the Thor Interests and Premier agreed to RELEASE and WAIVE all claims, theories,

and arguments of any kind related to spoliation of evidence and/or conduct to date in Case No. 21-

258 and any case consolidated with it.[63] Accordingly, without reaching any of the substantive

arguments below, the Court should deny the motion for sanctions (Rec. Doc. 405) that was based

on alleged spoliation. Further, the Court should vacate the report and recommendation on

Defendants' motion for sanctions (Rec. Doc. 491) because the motion underlying it is moot and

because the Court has not had an opportunity to review the Magistrate Judge's determinations.

#### III-B.

**If the Court reaches the merits, the Court should apply *de novo* review
over the report and recommendation.**

In this case, the Magistrate Judge issued only a report and recommendation in this case,

and not merely an outright order. That has consequences, and it triggers *de novo* review.

"In reviewing the Magistrate Judge's Report and Recommendations, the Court must

conduct a de novo review of any of the Magistrate Judge's conclusions to which a party has

specifically objected." *Leboeuf v. Bickham*, No. CV 21-2147, 2023 WL 2326963, at *2 (E.D. La.

Mar. 2, 2023) (citing 28 U.S.C. § 636(b)(1)(C) ("[A] judge of the court shall make a de novo

determination of those portions of the report or specified proposed findings or recommendations

---

[63]     The settlement agreement is confidential but can be provided to the Court *in camera* upon request.

to which an objection is made.")); *see also* 12 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3070.1 (3d ed.) ("Rule 72(b)(2) sets forth procedures to be followed by parties who object to the magistrate judge's recommendations and by the district judge to whom the case is assigned. . . . By filing a timely and adequate objection, a party obtains the right to de novo review of the magistrate judge's recommendation."). That would be true regardless of whether the motion is deemed dispositive or nondispositive: "[W]here . . . a magistrate judge chooses to issue a Report and Recommendation instead of an Order on a nondispositive motion and neither party opposes that choice, the district judge shall presume that the parties acquiesced to the magistrate judge's treatment of the matter as dispositive and, therefore, shall make a de novo review of those portions of the Report and Recommendation to which timely objections are made." *United Cent. Bank v. Kanan Fashions, Inc.*, No. 10 C 331, 2011 WL 4396856, at *2 (N.D. Ill. Sept. 21, 2011) (citing cases ).

Accordingly, in the Court reaches the merits of the report and recommendation, *de novo* review applies. But even if the Court applied a more deferential "clear error" standard of review over it, the report and recommendation should still be reversed as explained below.

## III-C.

### Regardless of the standard of review, the report and recommendation should be reviewed and reversed on three grounds.

Regardless of the standard of review, the report and recommendation is erroneous and should be reviewed, set aside, vacated, and/or reversed. That is so for three reasons.

First, the report and recommendation erroneously fails to acknowledge that the movers' IME doctor Dr. Vanderweide has testified—under oath—that the absence of a pre-surgical IME had no impact upon his opinion. Even if he would have performed more tests on Mr. Burnett in that state, it does not matter if these tests have no impact upon his ultimate opinion. Dr.

Vanderweide has expressly so testified. The lack of prejudice to these parties separates this case from any other case cited by any party. The report and recommendation is erroneous—even clearly erroneous—in its finding that the movers suffered prejudice. This is a sufficient reason to reverse the issuance of sanctions *entirely*.

Second, the report and recommendation's finding that Mr. Burnett is in bad faith is unsupported and fails to place due weight on the peculiar circumstances of this case and the short timing between the IME order and the surgery mere days later. Those circumstances undermine the notion of bad faith.

And finally, third, even if sanctions were generally warranted, the sanction chosen in the report and recommendation is far too harsh under the facts of this case. As noted, prejudice is woefully absent. And the delay between the IME order and the surgery that took place in this case was very short. These are substantially mitigating circumstances that call for a much less harsh sanction than imposed. At most, the sanction should not have exceeded an adverse inference on the surgeries in question.

Each of these items is discussed in more detail below.

### III-C(1).

**The report and recommendation's finding that the movers suffered prejudice is not only merely erroneous, it is clearly erroneous; these same considerations raise grave doubts as to whether Mr. Burnett even breached a duty to *preserve* evidence.**

In the assessment of sanctions, a key factor is whether the non-destroying party has suffered prejudice from the evidence supposedly spoliated.[64] As noted, in an earlier ruling in this case, the Magistrate Judge acknowledged that prejudice is a "critical component" in the spoliation inquiry.[65]

But the report and recommendation somehow cast aside the overwhelming evidence that the movers suffered no prejudice in this case. This is fully proven on at least three levels.

First, as a threshold matter, as noted in Section II-A of this pleading, doctors who worked for Premier (a mover on the motion) examined Mr. Burnett within days of the incident, including conducting examinations of his back.[66]

Second, the pre-surgery condition of Mr. Burnett's back is extraordinarily well-documented in medical records and medical imaging. There are over 650 radiology images of Mr. Burnett's pre-surgical lumbar spine that provide detailed radiological images of his lumbar spine from all angles and all levels of the lumbar spine.[67] These images were taken on three separate occasions over the approximate two-year period preceding the September 2022 surgery.[68] In

---

[64]   *Knott v. Lowe's Home Centers, LLC*, 2021 WL 1877377 at *3 (W.D. La. 2021) (quoting *Consol. Aluminum Corp.*, *v. Alcoa, Inc.*, 244 F.R.D. 335, 346)).

[65]   Rec. Doc. 462, order granting motion to compel, pp. 1-2 ("The Court finds that since the parties must show that they were prejudiced by the inability of Dr. Vanderweide to perform a pre-surgery IME, and spoliation is a critical component in assessing the pending sanctions motion, Burnett's deposition of Dr. Vanderweide is necessary.").

[66]   Rec. Doc. 467-2, Occupational Medicine records, workers' comp medical records from Occupational Medicine Services, p. 34 of 45 (October 31, 2020 medical record); Rec. Doc. 467-3, workers' comp medical records from Mississippi Sports Medicine, at pp. 5-6 of 28 (authorization by Premier Offshore Catering for a lumbar MRI of Mr. Burnett); *similar* at *id*. at p. 16 of 28.

[67]   Rec. Doc. 409-1, 11-18-2020 MRI Images: Burnett's Lumbar Spine, R001590a (containing 71 MRI images of Burnett's lumbar spine on Nov. 18, 2020); Rec. Doc. 409-2, 2-22-2022 MRI Images: Burnett's Lumbar Spine, R000280a (containing 71 MRI images of Burnett's lumbar spine on Feb. 2, 2022); Rec. Doc. 409-10 and 409-11, 5-18-2022 CT Scan Images: Burnett's Lumbar Spine, R001558a (containing 536 CT Scan images of Burnett's lumbar spine on May 18, 2022).

[68]   *See generally, id.* (imaging recorded on November 18, 2020, Feb. 2, 2022, and May 18, 2022 respectively).

addition, Mr. Burnett's treating physicians documented their analyses on the condition of Mr. Burnett's lumbar spine in radiology reports and medical records.[69]

And third, finally, the testimony of Dr. Vanderweide is dispositive on the issue of prejudice. Dr. Vanderweide testified he is, in fact, able to render an opinion that Mr. Burnett did not need surgery based solely on the records presented, and that he has all the information he needs to render that opinion.[70] Further Dr. Vanderweide testified that the absence of a pre-surgical

---

[69]   *See, e.g.*, Rec. Doc. 409-3, 11-18-2020 Radiology Report: Burnett's Lumbar Spine, R000246-R000247 (analyzing the MRI imaging captured on Nov. 18, 2022 of Mr. Burnett's lumbar spine); Rec. Doc. 409-5, 2-3-2022 Dr. Henry Small Medical Record for Burnett, R000594-R000596 (describing the medical condition of Mr. Burnett's lumbar spine as it existed on Feb. 3, 2022).

[70]   Rec. Doc. 478-1, deposition of Dr. David Vanderweide, pp. 141-146 ("Q. Okay. All right. The other thing that I wanted to ask you is you were asked questions earlier that there was an instruction for so let me clear it up. In this particular case, based on the medical records that you do have, the physical examination, documents that you do have that were recorded, the imaging, the discography, you are able to render an opinion as it relates to Patrick Burnett, true? A. I would be. Q. Okay. And you're able to do that based on your education, training and experience and being able to review medical records and imaging and come to a conclusion about the necessity of surgery, correct? A. I would be. Q. Okay. And you are able to do that in this case despite having not physically examined him as it relates to Patrick Burnett, fair? A. Correct.  Q. Said another way, despite having not been able to physically examine him for purposes of a medical opinion for necessity and causation, you have all the information that you need in order to render that opinion? A. Correct. Q. Sir? A. Correct. Q. Thank you.  And we talked about some of the physical examinations, straight leg raise test, tenderness test, all of those types of tests. What you rely on is the document-recorded information and  the medical records as well as the imaging as it relates to presurgical condition, true? A. Correct. Q. Okay. And the other thing that I was going to ask you is in this case, you are able to give an opinion about Patrick Burnett's presurgical condition based on those medical records, those imaging findings and all of the medical documentation you've received that shows his presurgical condition, true? A. Correct. Q. So if someone were to say at a later date that you somehow are unable to render an opinion about Patrick Burnett's medical condition presurgery, that would not be true. You can based on the evidence that you have, correct? A. Correct. Q. Thank you. The only thing that has changed is you're not able to say you saw him before surgery, correct?  A. That is correct. Q. But you don't -- Q. -- need that in order to render an opinion, true? A. Correct. . . . Q. In this case, you weren't able to see Mr. Burnett prior to his surgery, fair? A. Correct. Q. Okay. Q. But despite the fact of not seeing him, you are able to render all of your opinions that you normally would based on the copious amounts of medical records, imaging, discography that does exist presurgery, true? A. Correct. Q. Okay. And what I'm saying is the only thing is that you -- the only thing you can't say is that you saw him, right? Q. Before surgery? A. Yeah. I mean, the only thing I can't do is testify to my personal examination of him. Q. Fair. Okay. What you're saying is the only thing you can't do is testify to your own personal exam, correct? A. Correct.") (form objections omitted).

physical exam had no ultimate impact *at all* on his medical opinions on Mr. Burnett.[71] When questioned directly whether he had all the information he needed in order to render an opinion regarding Mr. Burnett's necessity for surgery, despite not having examined him, Dr. Vanderweide agreed that he had everything he needed.[72] Again, Dr. Vanderweide said that his ability to render an opinion on Mr. Burnett without seeing him before surgery had "not been impacted at all."[73]

The report and recommendation is erroneous—and clearly erroneous—in its finding that "prejudice abounds" to the movers in this case.[74] The three items explained herein—the examinations conducted by Premier days and weeks after the incident, the host of medical imaging that exists, and the testimony of Dr. Vanderweide—prove that this is so. Because prejudice is an important element of the very decision to issue a sanction (including the severity of it), the Court should grant review and reverse the report and recommendation on this compelling ground.

Indeed, these three items (the pre-surgical exams by Premier's doctors, the extensive pre-surgical imaging, and the opinions of Dr. Vanderweide that a pre-surgical exam would not have changed his opinions) also cast grave doubt on the report and recommendation's finding that Mr.

---

[71] *Id.* at p. 180 ("Q. What I'm saying is it does not impact your ability to form a medical opinion as it related to Patrick Burnett, correct? A. Correct.") (form objections omitted); *id.* at pp. 185-86 ("Q. Okay. Based on the medical records you reviewed, the physical examinations that you've reviewed, the imaging that you've reviewed, your ability to render a medical opinions for the defendants as it relates to Patrick Burnett has not been impacted at all by not seeing him, true? A. Correct.") (form objections omitted); *id.* at p. 194 ("Q. Based on what you have reviewed and the information that you do have and you have seen, you feel comfortable being able to provide an opinion just like you do in other cases about the necessity of surgery, correct? A. Correct.").

[72] *Id.* at p. 143 ("Q. Said another way, despite having not been able to physically examine him for purposes of a medical opinion for necessity and causation, you have all the information that you need in order to render that opinion? A. Correct.").

[73] *Id.* at pp. 187-88 ("Q. Okay. Based on the medical records you reviewed, the physical examinations that you've reviewed, the imaging that you've reviewed, your ability to render a medical opinion for the defendants as it relates to Patrick Burnett has not been impacted at all by not seeing him, true? A. Correct.") (form objections omitted).

[74] Rec. Doc. 491, p. 17.

Burnett had—or breached—some duty to preserve evidence of his pre-surgical back condition.[75] Again, if the pre-surgical back condition is fully documented—and if it would have made no difference to Dr. Vanderweide—then Mr. Burnett did not spoliate evidence *at all*. This is a further ground for this Court to grant review and reverse.

### III-C(2).

**The report and recommendation's finding that Mr. Burnett is in bad faith is unsupported.**

As another element of the sanction analysis, the report and recommendation acknowledges that as a matter of settled law, sanctions are appropriate only when a party acts in bad faith.[76] Yet the report and recommendation, in seeming contradiction, later declares that bad faith is not required when an order is violated—but it cites no authority for the proposition.[77] The former statement is correct—bad faith is required as a matter of "settled" law to impose a spoliation sanction.

And the report and recommendation acknowledges that merely strange *timing* of a surgery is not sufficient grounds to find bad faith.[78] That is a directive from the U.S. Fifth Circuit.[79] The report and recommendation deems Mr. Burnett to be in bad faith largely by attacking his deposition

---

[75]    *Id*. at pp. 9-10.

[76]    *Id*. at p. 19 ("It is further settled that a sanction predicated upon spoliation of evidence requires a showing that the party acted in bad faith.").

[77]    *Id*. at p. 26 ("In this case, although no bad faith finding is required because this Court's discovery order was violated . . .").

[78]    *Id*. at p. 20.

[79]    *Guzman v. Jones*, 804 F.3d 707, 713 (5th Cir. 2015) ("While the timing of Guzman's surgery may seem strange, there is no evidence to suggest that he acted in a manner intended to deceive Appellants or that he undertook the surgery with the intent of destroying or altering evidence. The district court concluded that the timing of Guzman's surgery alone was insufficient to demonstrate he had acted in bad faith. We find no reason to conclude that the district court abused its discretion in denying the motion for adverse instructions based on spoliation of evidence.").

testimony as not sufficiently complete, as stating dates incorrectly, or generally being uncredible.[80]

However, none of these deficiencies in his testimony, even if true, would be sufficient grounds to

prove that he intentionally, in bad faith, spoliated evidence or defied the IME order.

Indeed, the report and recommendation does *not* find that Mr. Burnett communicated with

his counsel between September 2, 2022 and when the surgery occurred days later. No evidence of

any kind proving that exists. In the absence of that class of proof, there is no evidence that Mr.

Burnett, in bad faith, sought to spoliate evidence or sought to defy the IME order. And simply

inferring that he did so, based on the timing of the surgery, runs afoul of the Fifth Circuit's

directives in this arena.[81] The report and recommendation is erroneous (and clearly erroneous) for

imputing to Mr. Burnett motives that are not proven on the record.

### III-C(3).

### The sanction chosen is clearly too harsh under the facts of this case.

Even if the Court believes that Mr. Burnett should be sanctioned in some way, the sanction

chosen in the report and recommendation is clearly too harsh under the facts. As noted, there is no

prejudice to the movers. And any theory that there is *some* kind of prejudice is minuscule. The

unique proof of non-prejudice in this case—proven through the items set forth herein—separate

this case from all the precedents cited by the movers and by the report and recommendation. The

movers are fully able to ascertain Mr. Burnett's pre-surgical state (before both the lumbar surgery

and the wound care surgeries) because of (1) the Premier doctors' examinations within days of the

incident, (2) the extensive pre-surgical radiological imaging and medical records that exist, and

(3) Dr. Vanderweide's own admission that he is able to opine upon Mr. Burnett's pre-surgical

---

[80]     Rec. Doc. 491, report and recommendation pp. 20-21.

[81]     *Guzman*, 804 F.3d at 713.

21

state. Moreover, on the deterrence side of the sanctions equation, the incredibly short timing between the IME order and the surgery in this case—mere days—creates a unique and unfortunate situation that is unlikely to occur again. The exclusion of Mr. Burnett's surgeries is far too harsh under the facts. Any possible aspect of deterrence and the remedying of potential prejudice is sufficiently corrected in this case simply by the entry of an adverse inference for all surgeries at issue. The *exclusion* of Mr. Burnett's surgeries is simply not warranted. And the report and recommendation is clearly erroneous for recommending that path.

## IV.

### CONCLUSION

The Court should grant review over the report and recommendation and reject it, and the underlying motion should be denied. Alternatively, the sanctions issued should be reduced to no more than the entry of an adverse inference on all items therein.

Respectfully submitted,

/s/      Bob Wynne
Bob Wynne
Louisiana State Bar No. 30123
3701 Kirby, Suite 760
Houston, Texas 77098
Tel: 281-813-8959
Email: bob@justwynnelaw.com
**ATTORNEY FOR CLAIMANT**
**PATRICK BURNETT**

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that this pleading was served on counsel of record by electronic means, including the CM/ECF system, this 9th day of October, 2023.

/s/      Bob Wynne
Bob Wynne