# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ALL COAST, LLC** | **CIVIL ACTION NO: 21-258** <br> **c/w 21-337, 21-464, 21-822, 21-1968, 21-1969, 21-1982, 21-1981, 21-2075, 21-2227, 23-3220** |
| **VERSUS** | |
| **SHORE OFFSHORE SERVICES, LLC** | **SECTION "A"** <br> **HON. JAY C. ZAINEY** |
| | **MAGISTRATE: (4)** <br> **HON. KAREN WELLS ROBY** |
| | **APPLIES TO ALL CASES** |

**MEMORANDUM IN SUPPORT OF THE THOR INTERESTS' MOTION TO COMPEL MARTIN ENERGY SERVICES, LLC, AND MARTIN OPERATING PARTNERSHIP L.P. TO PRODUCE SUPPLEMENTAL DISCOVERY RESPONSES**

**MAY IT PLEASE THE COURT**:

Modern American Railroad Services, L.L.C., and Shore Offshore Services, LLC ("Shore"), (collectively, the "THOR Interests") move this Honorable Court to compel Martin Operating Partnership L.P. ("MOP") and Martin Energy Services, LLC, ("MES") (collectively, "Martin") to produce full and complete responses to certain interrogatories and requests for production of documents.[1] As the Court will recall, this matter involves the Derrick Barge THOR ("D/B THOR" or "THOR") that broke away from the Martin dock in Port Fourchon, Louisiana, during Hurricane Zeta on October 28, 2020. The THOR (with her assist tug, the M/V CROSBY ENDEAOVR, tied to her channel side) was moored to eight bollards on the Martin dock, some or all of which failed,

---

[1] Exhibit "A," Martin Energy Services, LLC and Martin Operating Partnership, LP's Answers to Harvey Seas LLC and Harvey Gulf International Marine LLC's Omnibus Interrogatories, at Answer Nos. 11, 13, 14, 15, 23, 24, 30, 31, 32, and 37; Exhibit "B," Martin Energy Services, LLC and Martin Operating Partnership, LP's Answers to Harvey Seas LLC and Harvey Gulf International Marine LLC's Omnibus Requests for Production of Documents, at Responses Nos. 7, 8, 9, 28, 31, and 33; Exhibit "C," Martin Energy Services, LLC and Martin Operating Partnership, LP's Responses to THOR Interests' Discovery Requests, at Response to Request for Production No. 1; and Exhibit "D," Martin Energy Services, LLC and Martin Operating Partnership, LP's Supplemental and Amending Responses to THOR Interests' Discovery Requests, at Supplemental Answer to Interrogatory No. 23.

causing and/or contributing to the breakaway. After the breakaway, the THOR is alleged to have come into contact with a number of other vessels and objects, the interests of which have filed claims against the THOR Interests in these consolidated proceedings.

The information and documents sought to be compelled and subject of this Motion pertain to the condition(s) of the dock (including, but not limited to, the bollards) at the time of the breakaway, the suitability of the dock for mooring a barge of the THOR's size during a hurricane, and prior instances of mooring similarly-sized vessels/barges at the dock. To date, Martin has produced only a fraction of the relevant documents requested, many of which Martin is known to possess but has not yet produced. Likewise, Martin has provided only piecemeal responses to many of the interrogatories propounded upon it. After spending months attempting to amicably resolve this dispute, the THOR Interests are now constrained to seek an Order from this Court, compelling Martin to supplement their responses without further delay.

## **BACKGROUND**

### 1.    **Pertinent Factual and Procedural Background**

Martin purportedly began leasing and operating the dock from the Greater Lafourche Port Commission ("GLPC") around 2011, after acquiring the lease from L&L Oil and Gas Services, L.L.C. ("L&L"), a company that was purportedly acquired by Martin around the same time. Pertinent to this Motion is how Martin inspected and performed maintenance on and at the dock between the time it and its interests began leasing and operating the dock and the date of the subject incident on October 28, 2020. Martin's responses in discovery thus far have been to the effect that it conducted visual inspections of the dock and that inspections were also made by the GLPC and the United States Coast Guard ("USCG").[2] Martin's monthly inspection reports (produced by

---

[2] *See e.g.* Ex. "B," at Omnibus Request for Production No. 1.

2

Martin, but only dating back to April 2019), show that the dock's bollards were one of the various items subject to Martin's "visual" inspection.[3] Similarly, the inspection reports produced by the GLPC address various aspects of the dock's condition, with one such report including a photo depicting the deteriorating condition of the dock prior to the incident.[4] Over the course of Martin's leasing and operations at issue, Martin has been responsible for the maintenance and repairs of the dock under its lease with GLPC; and it is believed that significant repairs to the dock were completed in 2010, just before Martin acquired the lease from L&L.[5]

In the days leading up to the incident, Shore personnel sought safe harbor for the THOR in Port Fourchon. Prior to the THOR's arrival at the Martin dock, Shore was in direct communication with Martin regarding the mooring of the THOR at the dock. The THOR arrived at the dock in the late evening hours of October 26, 2020, with Hurricane Zeta's landfall occurring on October 28, 2020. To secure the THOR, the THOR's crew tied lines and cables to eight of the ten bollards on the dock. During the incident, certain of the dock's bollards failed, including, but limited to, as depicted below, one of the dock's bollards that had completely severed from its base.

---

[3] *See e.g.*, Exhibit "E," Pertinent excerpts of the transcript and exhibits from the deposition of Martin's designated corporate representative, Mr. Terry Damon King, at pp. 15 – 24, for the Martin Monthly Inspection Report dated September 30, 2020, further identified as Bates Label MARTIN 00968 – MARTIN 00977, wherein the bollards are identified as "Mooring/Bits" at MARTIN 00973.

[4] *See* Exhibit "F," GLPC Inspection Report addressed to Midstream Fuel Service, LLC (MES' prior name) at Bates Label GLPC 000938 – GLPC 000943.

[5] *See* https://portfourchon.com/news-events/meeting-minutes/ for links to the GLPC's Meeting Minutes, dated July 14, 2010, August 11, 2010, and September 9, 2010, discussing dock repairs at L&L dock No. 16.



*Photograph taken at the dock showing the aforesaid severed bollard
one day after the incident (October 29, 2020)*

Following the incident, the THOR Interests filed a complaint against MES for damages it sustained due to the failed bollards.[6] The THOR Interests' lawsuit against MES was filed after the THOR Interests had filed a complaint seeking to exonerate or, alternatively, to limit their liability (*i.e.* a "Limitation Action") pursuant to 46 U.S.C. § 30501, *et seq.*, in connection with the incident.[7] Both of the foregoing complaints filed by the THOR Interests, together with other litigation related to the incident (including, but not limited to, the Limitation Action filed by Crosby Tugs, LLC[8] and other lawsuits pending directly against Martin, including by the THOR Interests' subrogated hull insurer and certain property damage claimants[9]) have been consolidated into the instant litigation. Importantly, Martin has filed a claim in the THOR Interests' Limitation Action for

---

[6] *See* Rec. Doc. 1 – Civ. No. 21-1968 for the THOR Interests' Complaint against MES.
[7] *See* Rec. Doc. 1 – Civ. No. 21-464 for the THOR Interests' Verified Complaint for Exoneration from and/or Limitation of Liability.
[8] *See* Rec. Doc. 1 – Civ. No. 21-822 for Crosby's Complaint for Exoneration from or Limitation of Liability.
[9] *See Garber Bros., LLC v. Martin Energy Services, LLC,* Civ. No. 21-02075, at Rec. Doc. 1; *Gulf Logistics, LLC, et al. v. Martin Energy Services,* Civ. No. 21-02227, at Rec. Doc. 1; and *Chubb Underwriting Agencies Limited v. Martin Energy Services, LLC,* Civ. No. 21-01981, at Rec. Doc. 1.

damages it alleges to have sustained related to the broken bollards at the dock.[10] In response to other claims filed in the THOR Interests' Limitation Action, the THOR Interests have asserted third-party demands and impleaded Martin under Rule 14 of Federal Rules of Civil Procedure to more than a dozen other claimants regarding Martin's negligence in causing the underlying incident.[11] Naturally, the condition of the dock, Martin's knowledge of that condition, and Martin's inspection and maintenance of the dock are relevant to the claims here as is the suitability of the dock for mooring the D/B THOR and Martin's efforts to ascertain the suitability of the dock. This motion largely seeks further discovery on these specific issues.

2.      **The Discovery Requests at Issue**

The information and documents the THOR Interests seek from Martin, and Martin's deficient responses subject of this Motion, can be itemized into the three categories set forth below:

- **The Condition and Maintenance of Martin Dock No. 16** [*see* Ex. "A" at Answer Nos. 23, 30, and 31; Ex. "B" at Response Nos. 9 and 31; and Ex. "C" at Response No. 1]

- **The Suitability of Martin Dock No. 16 for the D/B THOR** [*see* Ex. "A" at Answer Nos. 11, 13, 14, 15, 24, 32, and 37; and Ex. "B" at Response Nos. 7, 8, 28, and 33]

- **The purported prior mooring of a similarly-sized derrick barge, the D/B EPIC HEDRON, at the Martin Dock No. 16** [*see* Ex. "D" at Answer No. 23]

Recently, the THOR Interests secured the Federal Rules of Civil Procedure Rule 30(b)(6) corporate deposition of Martin, through its designated corporate representative, Terry Damon King.[12] Notwithstanding Mr. King's lack of preparation to testify on certain topics subject of the deposition notice, an issue that will in likelihood be the subject of an additional motion to compel at a later date, Mr. King was questioned regarding a number of issues related to the categories

---

[10] *See* Rec. Doc. 58 for the claim filed by Martin in the THOR Interests' Limitation Action.
[11] *See* Rec. Docs. 62, 65, 66, 113, 141 – 151, 157 – 161, 173 – 178, and 279 for the third-party demands and tenders pursuant to Federal Rules of Civil Procedure Rule 14 made by the THOR Interests to Martin.
[12] *See generally* Ex. "E," for the pertinent excerpts of Mr. King's deposition transcript and associated exhibits.

above, which lead to the THOR Interests seeking supplemental discovery responses following Mr. King's testimony. Subsequent to Martin's corporate deposition, the THOR Interests held several Fed. R. Civ. P. Rule 37 discovery conferences with Martin to address the foregoing deficient responses in advance of filing this Motion.[13] During each of these conferences, Martin agreed to revisit the subject requests prior to an agreed upon deadline to supplement its responses.[14] However, Martin has failed to supplement the subject responses in any regard or, despite repeated request, to otherwise provide any indication of whether they intend to do so, thus, necessitating the THOR Interests filing of the instant motion.

## LAW AND ARGUMENT

Fed. R. Civ. P. Rule 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relevant access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."

### 1.    Liability of a Wharfinger and Martin's Duties to the THOR Interests

Central to the issue of liability for claims against Martin in this litigation, is Martin's duty, as a wharfinger, to exercise reasonable diligence to furnish a safe berth and to avoid damage to a vessel it provides a berth.[15] This includes the duty to ascertain the condition of the berth, to make it safe, and to warn the ship of any hidden hazards or deficiency known to the wharfinger or which, in the exercise of reasonable care and inspection, should be known to it and not reasonably known

---

[13] *See* Exhibit "G," an email chain between counsel for the THOR Interests and Martin, at email from J.D. Parker to Demi Dantin, dated December 1, 2023, and, at email from Gavin Guillot to Demi Dantin, dated November 14, 2023.
[14] *Id*.
[15] *Bunge Corp. v. M/V Furness Bridge*, 558 F.2d 790, 795 (5th Cir. 1977).

to the shipowner.[16] Said another way, a wharfinger has a duty to exercise reasonable care and inspection to furnish a safe berth and to warn the vessel of any hidden hazard or deficiency that was known or should have been known to the wharfinger.[17] Likewise, a wharfinger has a duty to verify the dock has the necessary capacity to safely accommodate the vessel in its current condition.[18] Further to the issue of Martin's liability and consistent with the foregoing, this Court, as well as numerous United States Courts of Appeal, have made clear that the failure of a mooring facility creates a presumption of negligence against the wharfinger in the manner of its construction or maintenance.[19] Indeed, such has been the case where there has been the failure of at least single bollard; and as such, this presumption is squarely at issue in this litigation.[20]

Martin's deficient responses regarding its inspection, maintenance, and care of the dock; Martin's knowledge as to the condition of the dock; the extent Martin ascertained the suitability of the dock for the THOR; and all communications it may have had with the THOR Interests regarding the mooring of the THOR at the dock are directly relevant to the issue of Martin's liability for the subject incident, as well as to Martin's damages claim against the THOR Interests. Simply put, the discovery requests subject of this Motion seek information and documents that Martin is best positioned to answer as the lessee and operator of the dock and are relevant to claims

---

[16] *Id*.

[17] *Dixie Marine, Inc. v. Q Jake M/V*, No. 16-12415, 2017 WL 3600574, *11 (E.D. La. Aug. 22, 2017) (Barbier, J.).

[18] *Id.* at *12.

[19] *Petro United Terminals, Inc. v. J.O. Odfjell Chemical Carriers*, 756 F.Supp. 269, 275 (E.D. La. Jan. 29, 1991) (Schwartz, Jr., J.); *see also Board of Com'mrs of Port of New Orleans v. M/V GIBRALTER PANSY*, No. 75-15, 1977 WL 6476162, at *6 (E.D. La. April 26, 1977) (Boyle, Jr., J.) (citing *Petition of Kinsman Transit Co.*, (W.D.N.Y., 1963), *modified and aff'd*, 338 F.2d 708 (2nd Cir. 1964), *cert. denied sub nom. Continental Grain Co. v. City of Buffalo*, 380 U.S. 944 (1965), and *City Compress & Warehouse Co. v. United States*, 190 F.2d 699 (4th Cir. 1951)); *Schwerman Trucking Co. v Gartland S.S.Co.*, 496 F.2d 466, 477 (7th Cir. 1974); *Port of Portland v. Gulf Oil Corp.*, Civ. No. 83-846JU, 1984 WL 71083967 (D. Ore. Sep. 13, 1984), *aff'd*, 800 F.2d 1145 (9th Cir. 1986) .

[20] *Petro United Terminals, Inc.*, 756 F.Supp. at 275; *Board of Com'mrs of Port of New Orleans*, 1977 WL 6476162 at *2; *Port of Portland*, 1984 WL 71083967.

of Martin's liability in causing the incident.. Martin should be compelled to fully and completely answer these requests.

### 2.     Martin's Boilerplate Objections and Evasive Responses

Two of the most prominent issues that appear throughout many of Martin's deficient responses are the boilerplate objections it asserts, and the evasiveness of the responses they provided, often subject to boilerplate objections. As will be further detailed below, Martin has taken this approach to withhold the disclosure of relevant information and documents that it is best-positioned to answer in an effort to keep other parties, like the THOR Interests, in the dark regarding issues such as the condition of the Dock, Martin's inspection and maintenance of the Dock, and Martin's efforts to ascertain the suitability of the Dock for mooring the THOR in advance of Hurricane Zeta. Martin's use of boilerplate objections and the evasive responses it provides are inconsistent with the rules for written discovery which "are accorded broad and liberal treatment to achieve their purpose of adequately informing litigants in civil trials."[21]

Consistent with the foregoing, the Federal Rules of Civil Procedure take a "demanding attitude toward objections."[22] General, boilerplate, and unsupported objections to discovery requests, which are those that fail to state their grounds with specificity, are improper and result in the waiver of those objections.[23] To remedy this deficiency, the THOR Interests, respectfully, seek an order compelling Martin to supplement each of its responses containing boilerplate objection(s) by removing any such objection(s) and adequately supplementing its response with any non-privileged information or documents in its possession, custody, or control responsive to the

---

[21] *Ferrington v. McMoRan Oil & Gas, L.L.C.*, No. 12-0588, 2013 WL 12228984, *2 (E.D. La. Aug. 6, 2013) (Roby, M.J.) (citing *Herbert v. Lando*, 441 U.S. 153, 177 (1979)).
[22] *Weatherspoon v. 739 Iberville, LLC*, No. 21-0225, 2022 WL 824618, at *5 (E.D. La. March 18, 2022) (Roby, M.J.) (citations omitted).
[23] *Leflore v. Norfolk Southern Corp.*, No. 19-1449, 2021 WL 6070831, at *3 (E.D. La. May 10, 2021) (Douglas, M.J.) (citation omitted).

particular request. In particular, this issue pertains to Omnibus Interrogatory Nos. 23, 24, 31, 32, and 37[24]; Omnibus Requests for Production Nos. 7, 8, 28, and 31[25]; and the THOR Interests Request for Production No. 1,[26] all of which contain unsupported, boilerplate objections in response to the subject request, typically reflected by objections regarding the request being overly broad, unduly burdensome, vague, and/or ambiguous.

As to the evasive nature of Martin's responses, Fed. R. Civ. P. Rule 37(a)(4) dictates that an evasive answer is treated the same as not responding to the request at all.[27] Evasive responses include those that contain an overly generalized reference to documents in response to a discovery request which, as illustrated below, is prevalent throughout many of Martin's responses. In such scenarios, courts have ordered parties to supplement their responses by identifying which specific documents are responsive to the particular request and, further, referencing each of the responsive documents by bates number.[28] Here, the THOR Interests seek the same type of relief and, thus, for an order compelling Martin to adequately supplement each of its responses that contain generalized references to document production with each such response identifying the documents by bates label that are responsive to the particular request. In particular, this issue pertains to Omnibus Interrogatory Nos. 11, 13 – 15, 23 – 24, and 37[29] and Omnibus Requests for Production Nos. 28 and 31[30] because Martin's reference to documents produced in response to each of these requests fail to adequately specify the documents the response is referencing. This is often highlighted by

---

[24] *See* Ex. "A," at Omnibus Interrogatory Nos. 23, 24, 31, 32, and 37.
[25] *See* Ex. "B," at Omnibus Requests for Production Nos. 7, 8, 28, and 31.
[26] *See* Ex. "C," at THOR Interests Request for Production No. 1.
[27] *See generally Fidelis Group Holdings, LLC v. Chalmers Automotive, LLC*, No. 16-3258, 2016 WL6157601, *6 (E.D. La. Oct. 24, 2016) (Roby, M.J.) (citing, Fed. R. Civ. P. 37(a)(4)).
[28] *Id.*; *See also Hartford Underwriters, Ins. Co. v. Elite Spice, Inc.*, No. 3:10-CV-0466-P (BK), 2011 WL 13233326, *3 (N.D. Tex. June 16, 2011); *Nice Group USA, Inc. v. Melenyzer*, No. SA-15-CA-00787-DAE, 2016 WL 11783016, *7-8 (W.D. Tex. Aug. 23, 2016).
[29] *See* Ex. "A," at Omnibus Interrogatory Nos. 11, 13 – 15, 23 – 24, and 37.
[30] *See* Ex. "B," at Omnibus Requests for Production Nos. 28 and 31.

Martin's reference to all of the documents it has produced in response to requests for production. Martin does this at times by making a generalized reference to the "documents produced" lacking any further specificity as to the particular response(s) to requests for production that purportedly contain documents responsive to the request. At other times, Martin does identify certain of its response(s) to requests for production when referencing documents produced, but only identifying those response(s) after qualifying that its answer is "including, but not limited to," the other documents Martin has produced. Either way, these responses are evasive as they lack the requisite specificity required by the Federal Rules of Civil Procedure and, as such, Martin's response to each of these responses should be treated as a failure to respond to the request.[31]

### 3. Specific Issues Regarding Martin's Responses

#### a. *Condition and Maintenance of Martin Dock No. 16*

**Omnibus Interrogatory No. 23** requests that Martin "provide the names and contact information of all persons involved in or responsible for the inspection, upkeep, maintenance and/or repair of the [Dock] from [October 28, 2015] to the present."[32] Martin responds to this interrogatory with: "Objection. Overly broad and unduly burdensome and vague and ambiguous as it is not propounded within the specificity related to the issues in this litigation. Without waiving the objection see Answer to Interrogatory No. 1 and documents produced in Responses to Requests for Production of Documents."[33]

While Martin identifies four Martin personnel by reference to Answer to Interrogatory No. 1, Martin's generalized reference to its "documents produced" makes its response facially deficient. Martin should be compelled to specifically identify by bates number which "documents

---

[31] Fed. R. Civ. P. 37(a)(4).
[32] *See* Ex. "A," at Omnibus Interrogatory No. 23.
[33] *Id.*

10

produced" it is referencing.[34] Other records produced in this case to date confirm that, with Martin's knowledge, the GLPC and the USCG performed visual inspections of the dock and that Martin was waiting for bids for dock repairs less than a month before the incident.[35] Nevertheless, Martin elected not to identify these entities behind its boilerplate objections and should be compelled to answer this interrogatory, fully and completely and without objection, by identifying the individuals and entities involved in the inspection, upkeep, maintenance, and/or repair of the dock within the timeframe provided.

**Omnibus Interrogatory No. 30** requests Martin to "describe in sufficient detail any upkeep, repair, and/or maintenance work that was scheduled or performed on the [Dock] for the period of [October 28, 2015] to the present, and include in your response a notation as to any work planned but not completed as of October 28, 2020."[36] Similar to the above, Martin responds: "Objection. Overly broad and unduly burdensome as to the time period requested. Without waiving the objection, see the documents produced herein including, but not limited to, Requests for Production Nos. 1, 11, 12, and 14."[37]

Notwithstanding Martin's reference to documents produced in response Request for Production Nos. 1, 11, 12, and 14, Martin's further refence to "documents produced herein including, but not limited to," preceding the identification of these responses makes its response to Omnibus Interrogatory No. 30 facially deficient. As with the preceding omnibus interrogatory discussed herein, Martin should be compelled to supplement its response to this interrogatory by specifically identifying by bates label documents responsive to this interrogatory. Notably, absent from this response is any ***meaningful description*** of the dock repairs pending less than a month

---

[34] *See Fidelis Group Holdings, LLC* at *6.
[35] Ex. "E," at p. 24, for the Martin Monthly Inspection Report dated September 30, 2020, at MARTIN [0977].
[36] Ex. "A," at Omnibus Interrogatory No. 30.
[37] *Id*.

before the incident, what (if any) work was scheduled or performed following the GLPC's recommendation in 2016 to address the deteriorating condition of the dock, or the full nature of the maintenance work associated with the $280,000 expense in 2017.[38] To ensure that all parties are able to fully discover the condition of and Martin's maintenance of the dock, Martin should be compelled to supplement its answer to this interrogatory fully and completely and without objection by sufficiently detailing the upkeep, repair, and/or maintenance work performed or scheduled at the dock for the time period requested.

**Omnibus Interrogatory No. 31** requests for Martin to describe "any supplies, materials, and/or parts on order for the [Dock] but not yet provided to the [Dock] as of October 28, 2020."[39] Martin responds with "Objection. Overly broad and unduly burdensome, vague and ambiguous as to the terms 'any supplies, materials, and/or parts.' Without waiving the objection, none to Martin's knowledge at the present time."[40]

Martin's answer to this interrogatory was made nearly two years following the incident and now, almost 18 months after providing this answer, Martin has yet to supplement the response. At this point, Martin should be able to state definitively whether there were any supplies materials, and/or parts on order for the dock as this interrogatory requests. Rather than providing a candid response, Martin continues to rely on an answer made subject to boilerplate and unsupported objections. This is a particularly acute issue in light of the dock repairs that were purportedly pending less than a month before the incident. The status of these repairs is not only relevant to Martin's duty to maintain the dock, but also as to the general condition of the dock, including any

---

[38] Ex. "E," at pp. 119:9 – 122:16 where Martin's designated corporate representative testifies that Martin's fixed asset schedule is not a comprehensive report of all the repairs that have been completed at the dock by Martin. *See also* Ex. "E," at p. 26 for Martin's fixed asset schedule, further identified as bates label MARTIN 00759.
[39] Ex. "A," at Omnibus Interrogatory No. 31.
[40] *Id*.

potential hidden hazards or deficiencies of the dock at the time the THOR was moored there. Considering the importance of these issues in this litigation, both of which bear on the extent of Martin's liability in causing or contributing to the incident, Martin should be compelled to fully and completely respond to this interrogatory without objection.

**THOR Interests Request for Production No. 1** requests for Martin to produce "all inspection reports, surveys, maintenance logs, complaints, testing results, repair certificates, and any other type of documentation relating to surveys, inspections, testing, maintenance, repairs, replacements, renewals, modifications, improvements decommissions, or any other type of work performed on Dock No. 16 and/or the Bollards" for the 10 years preceding the incident.[41] Martin responded: "Objection. Overly broad and unduly burdensome and not subject to lead to admissible evidence and beyond the scope which is the subject matter of this litigation. Without waiving the objection, the inspection reports and surveys conducted by GLPC and USCG have been previously produced. *See also* MARTIN [00938-00977]."[42]

Martin has thus far refused to produce records responsive to this request dated any earlier than 2019, as reflected by the Martin, GLPC, and USCG records identified in its response. Consequently, Martin has failed to produce records responsive to this request, some of which have been produced by other parties in this litigation, including, but not limited to, Monthly Facility Checklists completed between 2011 and March 2019, GLPC inspection reports prior to 2019, USCG inspection reports prior to 2020, internal authorizations (whether approved or not) for maintenance and/or repairs of the dock in excess of $10,000,[43] as well as any documents regarding the 2010 repairs, purportedly completed over the course of several months, completed by L&L

---

[41] Ex. "C," at THOR Interests Request for Production No. 1.
[42] *Id*.
[43] Ex. "E," at pp. 125:16 – 126:22.

shortly before Martin took control of the dock. The effect of Martin's boilerplate and unsupported objections has been to prevent the disclosure of nearly a decade's worth of documents that speak to the condition of the dock and Martin's knowledge (or lack thereof) of its condition, Martin's maintenance of the dock, and/or Martin's inspection of the dock, which Martin should be compelled to produce without objection.

**Omnibus Request for Production No. 9** requests for Martin to produce "a copy of any drawing, plan, specification, diagram, photo, video, or other depiction of the [Dock]."[44] In responding to this request, Martin directs the THOR Interests to "[s]ee documents produced in Response to Interrogatory No. 1. See also Martin Dock No. 16 drawing dated July 9, 2012 attached as MARTIN [00716]." [45]

Similar to the THOR Interests' Request for Production No. 1 addressed above, documents produced by other parties, as well as Martin (although not in response to the referenced Interrogatory No. 1, which contains no reference to any documents), containing photographs of the dock, establish that Martin's production of the 2012 drawing in response to this request is incomplete. For example, the GLPC's 2016 inspection report for the dock addressed to Martin contain a set of photographs, one of which reflect the deteriorating condition of the dock, that Martin has yet to produce despite Martin being the recipient of the report. Similarly, Martin fails to identify the 2019 to 2021 GLPC inspection reports of the dock it has produced which also contain photographs of the dock. These examples highlight the incomplete nature of Martin's response and because the documents sought pursuant to this request are pertinent to the construction, maintenance, and condition of the dock and, thus, the issue of Martin's liability, they

---

[44] Ex. "B," at Omnibus Request for Production No. 9.
[45] *Id*. It should also be noted that no documents were produced in Martin's response to Interrogatory No. 1, making the drawing identified in Martin's answer the sole document produced in response to this request.

are relevant to the instant litigation. Moreover, Martin has waived any objections to this response, other than those asserted pursuant to the attorney-client privilege or work production doctrine, as none were asserted in its original response.[46] As such, Martin should be compelled to fully and completely supplement its response with any responsive documents in its possession.

**Omnibus Request for Production No. 31** requests Martin to produce a copy of its "inspection file, including but not limited to all inspection reports, for the [Dock]."[47] Martin responds to this request with "Objection. Overly broad and unduly burdensome and not limited in scope and/or time. Without waiving the objection, see documents produced herein."[48]

Alongside the deficient, generalized response that refers the parties to the "documents produced herein." The inspection reports produced to date by Martin go back only a mere 18 months before the incident. The production of these records alone creates a significant information gap for the parties to this litigation, except as to Martin, regarding the condition of the dock and the nature of Martin's inspection of the dock for the majority of the time Martin leased and operated the dock prior to the incident. For reasons previously set forth above discussing Martin's deficient response to the THOR Interests Request for Production No. 1, Martin should be compelled to produce its entire inspection file for the dock which, contrary to Martin's boilerplate objection, is limited in scope as it only seeks documents related to the inspection of the dock, which Martin has purportedly leased and/or operated since 2011. Last, and to the extent Martin purports to produce documents responsive to this request, it should be compelled to identify each of those documents and, further, specify the documents by bates label.

---

[46] *B&S Equipment Co., Inc. v. Truckla Services, Inc.*, Civ. No. 09-3862 (lead case), 2011 WL 2637289, at *5-6 (E.D. La. July 6, 2011) (Roby, M.J.) (finding that the defendants had waived their objections to requests for production of documents by failing to timely state objections to the requests, notwithstanding any objections asserted pursuant to the attorney-client privilege or work production doctrine which had not been waived).
[47] Ex. "B," at Omnibus Request for Production No. 31.
[48] *Id*.

b. *Suitability of Martin Dock No. 16 for the D/B THOR*

**Omnibus Interrogatory Nos. 11 and 13 – 15** request Martin to identify certain individuals and entities, and their respective contact information, associated with determining the suitability of the Martin Dock No. 16 for mooring the D/B THOR prior to Hurricane Zeta. Specifically, Omnibus Interrogatory No. 11 seeks for Martin to identify any individuals who boarded, inspected, or monitored the THOR on behalf of Martin in October 2020[49]; Omnibus Interrogatory No. 13 seeks for Martin to identify any individuals who monitored Tropical Storm No. 28, Tropical Storm Zeta, and Hurricane Zeta on behalf of Martin[50]; Omnibus Interrogatory No. 14 seeks for Martin to identify any individuals involved in the decision to moor the THOR to the Dock and how to moor the THOR to the Dock prior to the arrival of Hurricane Zeta[51]; and Omnibus Interrogatory No. 15 seeks for Martin to identify any individuals who discussed whether to moor the THOR to the Dock prior to the arrival of Hurricane Zeta.[52]

Incredibly, not a single individual or entity is specifically identified by Martin in response to Omnibus Interrogatory Nos. 11 and 13 – 15.[53] Rather, Martin vaguely responds and refers the THOR Interests to various documents it has produced.[54] For example, in response to Omnibus Interrogatory No. 13, Martin directs the THOR Interests to "[s]ee documents produced herein, including but not limited to, [Omnibus] Request for Production No. 7."[55] Suffice to say, the more than 900 pages of documents produced by Martin at the time include the names of many individuals. This response creates an enormous burden on the other parties who, without an order

---

[49] Ex. "A," at Omnibus Interrogatory No. 11.
[50] *Id*. at Omnibus Interrogatory No. 13.
[51] *Id*. at Omnibus Interrogatory No. 14.
[52] *Id*. at Omnibus Interrogatory No. 15.
[53] *Id*. at Omnibus Interrogatory Nos. 11 and 13 - 15, which, together, reference Martin's Hurricane and Preparedness Plan as well as invoices, bills of lading, meter tickets, and yard tickets produced by Martin.
[54] *Id*.
[55] *Id*. at Omnibus Interrogatory No. 13.

from this Court compelling Martin to identify the individuals responsive to each request, are being kept in the dark by Martin as to the individuals it knows to be, but refuses to disclose, responsive to these requests and likely possess information relevant to the extent of Martin's efforts to comply with the duty it owes the THOR Interests to ascertain the suitability of the Dock for mooring the THOR. As such, Martin should be compelled to simply state what it already knows and fully and completely answer the interrogatories by identifying the individuals or entities, if any, responsive to each of these interrogatories and without objection. To the extent Martin is not aware of any individuals or entities responsive to a particular interrogatory, it should be compelled to state as much in its answer(s).

**Omnibus Interrogatory No. 24** requests Martin to "list in detail all other options for mooring locations, diverting to other locations, and/or riding out the storm that [Martin] considered for the D/B THOR for Hurricane Zeta and the reasons each of those options were rejected."[56] Despite this interrogatory being directed at Martin's efforts, Martin responds "[t]he interrogatory seeks information more readily available from another party, namely the D/B THOR."[57]

As shown above, Martin's response misses the mark. This interrogatory clearly seeks for Martin to detail all other options ***that Martin considered*** for the D/B THOR for Hurricane Zeta. Indeed, Martin is the only party in possession of the information responsive to this interrogatory. As such, Martin should be compelled to supplement its response by fully and completely answering this interrogatory regarding which, if any, other options ***Martin*** considered for the D/B THOR for Hurricane Zeta. To this end, Martin should be compelled to answer this interrogatory without objection, having waived the right to do so by failing to previously assert any objections.[58]

---

[56] *Id*. at Omnibus Interrogatory No. 24.
[57] *Id*.
[58] Fed. R. Civ. P. 33(b)(4).

**Omnibus Interrogatory No. 32** requests Martin to "describe in sufficient detail the mooring configuration of the M/V CROSBY ENDEAVOR and/or the D/B THOR prior to the time the D/B THOR broke away from the [Dock] and list any testing done, calculations made, and information or documents created or referenced by [Martin's] employees and/or agents in connection with determining the mooring configuration used."[59] Here, Martin answers with "Objection. The information is more readily available from other parties, namely the owners and operators of the D/B THOR and M/V CROSBY ENDEAVOR."[60]

Once again, Martin fails to provide any type of substantive response to an interrogatory regarding the mooring of the THOR and, in doing so, attempts to sidestep the interrogatory by deflecting attention to other parties. Rather than allowing Martin to standby this deficient response to an interrogatory relevant to its own liability, Martin, respectfully, should be compelled to answer the interrogatory fully and completely setting forth the extent of its knowledge of the subject mooring configuration prior to Hurricane Zeta's arrival as well as listing any testing done, calculations made, and information or documents created or referenced by Martin representatives related to the determination of the subject mooring configuration. Likewise, if Martin contends that it does not have any such knowledge or information responsive to this interrogatory, it should be compelled to state as much, rather than continuing to rely upon its unsubstantiated and generalized objection used to mask the true extent of the knowledge and information Martin possesses responsive to this interrogatory.

**Omnibus Interrogatory No. 37** requests Martin to "describe in sufficient detail all surveys, analyses, investigations and/or inquiries made by [Martin], on [Martin's] behalf…or by any other person or entity, as well as the dates thereof, regarding the suitability of the [Dock] for

---

[59] Ex. "A," at Omnibus Interrogatory No. 32.
[60] *Id.*

18

mooring the D/B THOR, prior to the time the D/B THOR broke away from the [Dock] and list any calculations made and documents referenced in making each survey, analysis, investigations, inquire or assessment of suitability."[61] In response, Martin states "Objection. Attorney work product taken in anticipation of litigation and not subject to disclosure. Without waiving the objection, see the documents produced in Responses to Requests for Production.[62]"

This response is deficient for a number of reasons but, to start, Martin asserts a privilege of attorney work-product to an interrogatory clearly seeking information that would have only existed prior to the incident and, thus, before Martin would have retained counsel for the incident. This interrogatory plainly addresses Martin's efforts to ascertain the suitability of the Dock for mooring the THOR, ***prior to the incident***, which goes directly to the issue of liability and Martin's duties to the THOR. Following Martin's assertion of this unsubstantiated privilege, Martin concludes its response with a general reference to "documents produced," which, notwithstanding the unsubstantiated assertion of privilege, causes this response to be deficient. Martin should be compelled to fully and completely answer this interrogatory, without objection, regarding the extent of its efforts (or lack thereof) to ascertain the suitability of the dock for mooring the THOR as such is relevant to the issue of Martin's liability.

**Omnibus Request for Production No. 7** requests Martin to "produce a copy of each of your severe weather and/or hurricane plans for 2016 to date."[63] In response, Martin states "Objection. Overly broad and unduly burdensome and not subject to lead to admissible evidence. Without waiving the objection, Martin's Hurricane and Preparedness Plan dated May 2020 is attaches (*sic*) as MARTIN [00644-00715]."[64]

---

[61] *Id*. at Omnibus Interrogatory No. 37.
[62] *Id*.
[63] Ex. "B," at Omnibus Request for Production No. 7.
[64] *Id*.

The hurricane plan produced by Martin in response to this request shows that it was revised in May 2020. This leads to the necessary conclusion that there is at least one prior version of Martin's hurricane plan that existed and was in effect during the time period responsive to this request. Martin's failure to produce these prior version(s) can be attributed to the boilerplate objections (which Martin appears to try and buttress with an outdated legal standard no less) it asserts in response to this request. Martin should be compelled to respond to this request fully and completely and without objection with any prior version(s) of its Hurricane and Preparedness Plan during the time period requested as any changes to Martin's procedures and policies may be relevant to the knowledge (or lack thereof) of Martin and its employees in preparing to moor the THOR in advance of Hurricane Zeta.

**Omnibus Request for Production No. 8** requests Martin to "produce a copy of any mooring plans and/or mooring studies and/or mooring calculations and/or mooring reports and/or mooring surveys and/or other similar documents for the [dock] for January 1, 2016 to date. This request includes but is not limited to any such plans and studies and reports for the D/B THOR and/or the M/V CROSBY ENDEAVOR."[65] Martin responds with "Objection. Information regarding how the D/B THOR and/OR CROSBY ENDEAVOR intended to be moored are more properly directed to the owners and operators of the D/B THOR and CROSBY ENDEAVOR."[66]

Martin has not yet produced any documents pursuant to or responsive to this request which are relevant to the extent of Martin's efforts to ascertain and knowledge of the suitability of the dock for the THOR. Nevertheless, Martin's general "objection" to the request and reference to other parties leaves open the possibility that Martin does indeed possess documents responsive to this request but is withholding them pursuant to this objection. If Martin has no documents

[65] *Id*. at Omnibus Request for Production No. 8.
[66] *Id*.

responsive to this request, it should be compelled to state as much and without objection. In the event Martin does have documents responsive to this request, it should be compelled to fully and completely supplement its response without objection and with the production of the responsive documents identified and, further, specified by bates label.

**Omnibus Request for Production No. 28** requests Martin to "produce a copy of each communication, including electronic communications between and among [Martin] and any of [Martin's] employees, and/or contractors, and/or agents and/or [the THOR, ENDEAVOR, and/or any other party to this litigation in October 2020]. This request specifically includes but is not limited to communications related to the safety, mooring, movements, and plans for the D/B THOR."[67] In response, Martin states "Objection. Overly broad and unduly burdensome. Without waiving the objection, see documents produced herein."[68]

This response is deficient both due to Martin's use of boilerplate objections and general reference to "documents produced" lacking any further specificity. Having only asserted boilerplate objections and, thus, waiving any objection in response to this request, Martin should be compelled to supplement its response to this request fully and completely and without objection as the documents responsive to this request are relevant to a number of issues such as the extent of any hazards regarding the dock were relayed to the THOR as well as Martin's expectations and internal plans for the mooring of the THOR to the dock prior to Hurricane Zeta. In doing so, Martin should be compelled to identify by specific bates labels the documents produced responsive to this request, including any documents produced with its supplemental response that had been withheld pursuant to its boilerplate objections.

---

[67] *Id*. at Omnibus Request for Production No. 28.
[68] *Id*.

**Omnibus Request for Production No. 33** requests Martin to "produce a copy of each communication, including electronic communications, between [Martin] and the [USCG] and/or the Army Corps of Engineers and/or any Port Commission and/or any other such entity or person regarding how the D/B THOR was going to be brought into port and secured in advance of any storm [in October 2020]."[69] Here, Martin responds "Information has been requested and will be provided upon receipt, if any such documents exist, Martin will supplement this response."[70]

To date, no supplemental response has been provided by Martin to this request leaving it unknown to the other parties the extent of communications Martin had regarding how the D/B THOR was going to be brought into port and secured in advance of Hurricane Zeta. Having failed to assert any objections in its original response, Martin should be compelled to fully and completely supplement this response with any communications it had responsive to this request without objection and by specifying the documents responsive to this request by bates label. If no such communications were hand, Martin should be compelled to state the same, without objection.

c. *The Purported Prior Mooring of a similar-sized derrick barge, the D/B EPIC HEDRON, at the Martin Dock No. 16*

**THOR Interests Interrogatory No. 23** requests Martin to "identify each and every date(s) when the D/B EPIC HEDRON was moored at the [Dock]."[71] Martin provides in its supplemental response "Martin objects to this Interrogatory on the grounds that, as written, it seeks irrelevant materials, is not reasonably calculated to lead to the discovery of admissible evidence, and is excessively and unnecessarily broad, because it is not limited to a reasonable factual scope, or the

---

[69] *Id.* at Omnibus Request for Production No. 33.
[70] *Id*.
[71] Ex. "D," at THOR Interests Interrogatory No. 23.

basic facts and issues presented in this litigation. Without waiving the objection, information and/or records responsive to this Interrogatory are not available."[72]

Martin's response to this interrogatory is contradicted by the answer it provided nearly a year earlier to THOR Interests Interrogatory No. 11, which sought for Martin to identify each and every vessel with comparable dimensions and weight that had moored at the dock from the time the bollards were put into service and prior to October 26, 2020.[73] In response to THOR Interests Interrogatory No. 11, Martin, following another series of boilerplate objections, identified the D/B EPIC HEDRON as having previously moored at the dock without issue.[74] Now, after the THOR Interests have sought to identify when the D/B EPIC HEDRON was at the dock, as such may bear on the suitability and/or condition of the Dock, Martin contends that it does not have any information and/or records responsive to the THOR Interests Interrogatory No. 23. Simply put, both cannot be true. Martin should be compelled to fully and completely answer this interrogatory, without objection, confirming the dates the HEDRON was moored at the dock or explaining why such information and/or records are not available and the efforts taken to confirm the same. If the HEDRON was previously identified in error, Martin should be required to revise its responses to this effect.

## **CONCLUSION**

As set forth above, Martin has systemically utilized boilerplate objections and provided evasive answers in response to discovery requests to withhold information and documents related to issues central to Martin's liability in causing or contributing to the incident. Martin has likewise provided inconsistent responses to discovery requests regarding the mooring of the D/B EPIC

---

[72] *Id*.
[73] Ex. "C," at THOR Interests Interrogatory No. 11.
[74] *Id*.

HEDRON, a vessel similar in nature and specifications to the D/B THOR, at the Martin Dock No. 16 prior to the subject incident. To remedy Martin's deficient responses regarding the foregoing, the THOR Interests seek an Order from this Honorable Court, compelling Martin to respond fully, completely, and without objection, to the discovery requests made subject of the instant Motion and relevant to the issue of Martin's liability and/or the claims Martin has asserted against the THOR Interests in this litigation, without any further delay.

Respectfully submitted:

*/s/ Jonathan D. Parker*

Gavin H. Guillot, T.A. (#31760)
Salvador J. Pusateri (#21036)
Aaron B. Greenbaum (#31752)
Meredith W. Blanque (#32346)
Jacob A. Altmyer (#36352)
Jonathan D. "J.D." Parker (#35275)
PUSATERI, JOHNSTON, GUILLOT &
GREENBAUM, LLC
1100 Poydras Street, Suite 2250
New Orleans, LA 70163
Telephone: 504-620-2500
Facsimile: 504-620-2510
Gavin.Guillot@pjgglaw.com
Salvador.Pusateri@pjgglaw.com
Aaron.Greenbaum@pjgglaw.com
Meredith.Blanque@pjgglaw.com
Jacob. Altmyer@pjgglaw.com
Jonathan.Parker@pjgglaw.com
**ATTORNEYS FOR PETITIONERS-IN-
LIMITATION,
MODERN AMERICAN RAILROAD
SERVICES, L.L.C. and SHORE OFFSHORE
SERVICES, LLC**