# BLANKET BOAT TIME CHARTER
## BETWEEN
## MURPHY EXPLORATION & PRODUCTION COMPANY - USA
## AND
### OFFSHORE TOWING, INC.

CW2258494

> **EXHIBIT**
>
> **1**

ARTICLE
1       TERM
2       NOTICE OF HIRE
3       TRADE
4       CONSIDERATION
5       CONDITION OF VESSEL
6       PAYMENT OF HIRE
7       DAMAGE TO OR LOSS OF VESSEL
8       OWNER'S RESPONSIBILITIES
9       INSURANCE
10      EXPENSES
11      COMPLIANCE WITH REGULATORY AUTHORITIES
12      LIENS
13      FULL REACH
14      CARGO LIABILITY
15      CLEANING OF TANKS
16      METERS
17      LOGS AND REPORTS
18      DOWNTIME
19      MAINTENANCE
20      SCOPE OF INDEMNITY OBLIGATION
21      INDEMNIFICATION FOR PEOPLE AND PROPERTY
22      INVENTORY
23      SPECIAL EQUIPMENT
24      SAFETY POLICIES AND PROCEDURES
25      FORCE MAJEURE
26      SALVAGE
27      LIMITATION OF LIABILITY
28      FAILURE TO PERFORM AND PERFORMANCE AFTER TERMINATION
29      EQUAL OPPORTUNITY
30      ASSIGNMENT
31      NOTICES
32      CONSTRUCTION
33      AMENDMENT
34      LAW GOVERNING
35      SEVERABILITY
36      CONFIDENTIALITY

37    AUDIT

38    GUARANTEES


EXHIBIT "A"    NOTICE OF HIRE

EXHIBIT "B"    INSURANCE COVERAGES

EXHIBIT "C"    ALCOHOL/DRUG-FREE WARRANTY

EXHIBIT "D"    OWNER AND RELATED COMPANIES

## BLANKET BOAT TIME CHARTER

This agreement entered into this 9TH day of January, 2020, between OFFSHORE TOWING, INC. a CORPORATION and related companies specifically identified on Exhibit "D" attached hereto ("OWNER"), and Murphy Exploration & Production Company – USA ("CHARTERER"), who may from time to time charter one or more vessels ("Vessel") either owned by OWNER or in OWNER's possession under a bareboat, demise or time charter. If the Vessel is in OWNER's possession under a bareboat, demise, or time charter, it shall be considered as OWNER's Vessel.

### WITNESSETH:

In consideration of the covenants, promises and payments hereinafter provided, it is agreed as follows:

**1.      Term**

This Blanket Boat Time Charter ("Charter") shall become effective as of the above date and continue in effect until terminated by either party, by giving to the other ninety (90) days' prior notice in writing of termination. It is agreed, however, that any such termination shall not be effective as to any Vessel which has been delivered to CHARTERER pursuant to the terms hereof until the term set forth in the Notice of Hire herein referred to has expired, or the Charter has been terminated by CHARTERER as provided in said Notice of Hire, and Vessel has been redelivered to OWNER. This Blanket Boat Time Charter does not obligate CHARTERER to charter any vessels from OWNER, nor does it obligate OWNER to charter any vessel to CHARTERER, but it shall control and govern Vessels time chartered by OWNER to CHARTERER and shall define the rights and obligations of CHARTERER and OWNER during all times OWNER has Vessel(s) under charter to CHARTERER, if Vessel is performing operations pursuant to this Charter.

Notwithstanding any other provisions contained herein, this Blanket Boat Time Charter and the Notice of Hire may be terminated if either party becomes insolvent, files for protection under Chapter 11 of the United States Bankruptcy Code, has a receiver appointed or if any order is given or resolution is passed for the dissolution of either party, other than for the purpose of reconstruction or amalgamation.

**2.      Notice of Hire**

When CHARTERER decides to charter a Vessel from OWNER, it shall issue to OWNER a written Notice of Hire, in the form attached hereto as Exhibit "A", designating, among other things, the Vessel to be chartered, the rate of charter hire payable therefor and the notice of termination and hire to be given by CHARTERER to OWNER. The Vessel shall be placed in CHARTERER's service at the place designated in the Notice of Hire. In the event that a written Notice of Hire is not issued, this Blanket Boat Time Charter shall define and govern the rights, liabilities and obligations of CHARTERER and OWNER during the term that Vessel is under hire to CHARTERER. In the event of any conflict between a Notice of Hire issued hereunder and this Blanket Boat Time Charter, the terms and conditions of the latter shall prevail.

DocuSign Envelope ID: BA6760F3-C5A0-4328-AC58-757B0861A7EE

OWNER warrants that it has full authority, unencumbered and without reservations, to charter the Vessel specified on the Notice of Hire, as set forth in this Charter, and further warrants that there are no liens against Vessel.  If OWNER is not the title owner of Vessel, OWNER warrants that it has full authority to charter Vessel as specified in this Charter, and that the actual owner of Vessel has authorized OWNER to charter Vessel in accordance with this Charter and will confirm that consent in writing if requested by CHARTERER.

Unless otherwise specified on the Notice of Hire, CHARTERER may terminate a Notice of Hire at any time, with or without cause, by giving OWNER at least twenty-four (24) hours' notice. Termination of a Notice of Hire does not effect a termination of this Charter.  Unless otherwise specified on the Notice of Hire, OWNER may not terminate a Notice of Hire prior to complete performance of its obligations under the Notice of Hire, without CHARTERER's prior written consent.

**3.      Trade**

OWNER assumes complete responsibility and liability for any use or operation of Vessel outside the waters set forth in the Notice of Hire, or outside the trading limits of her insurances.

**4.      Consideration**

The consideration for the use of Vessel shall be the rate of charter hire specified in the Notice of Hire. Provided however, vessel(s) hired by other specific contracts shall be in accordance with the terms of such contract, provided that such contract specifically excludes such vessel(s) from the terms of this Charter.

A day shall be twenty-four (24) consecutive hours commencing at 00:01 a.m.  If the Vessel is hired on a daily rate basis, the daily rate for the first day Vessel is on CHARTERER's payroll, shall be reduced proportionately for that portion of the day Vessel was not on CHARTERER's payroll. Likewise, the daily rate shall be reduced proportionately for those hours Vessel is not on CHARTERER's payroll on the day Vessel is officially redelivered by CHARTERER to OWNER.

**5.      Condition of Vessel**

OWNER warrants that Vessel shall be, upon delivery to CHARTERER, tight, staunch, strong, in good repair and running condition, fit for her intended use and properly crewed, and in all respects seaworthy.   OWNER further agrees to maintain said Vessel in such seaworthy condition, thoroughly efficient in hull and machinery, at OWNER's sole expense, through the term of the Notice of Hire.

CHARTERER shall have the right, at its expense, to periodically inspect Vessel during the term of the applicable Notice of Hire.  Any exercise by CHARTERER of any right of inspection of Vessel, or its arranging any inspection on its own behalf, in no way mitigates or lessens the absolute warranty of seaworthiness expressed in this Charter, and in no way creates or gives rise

to any liability or responsibility on the part of CHARTERER for seaworthiness of Vessel, which liability or responsibility at all times remains with OWNER.

**6.      Payment of Hire**

OWNER shall invoice CHARTERER at the end of each calendar month for the hire of Vessel during that month and shall attach legible copies of authentic daily rough and smooth marine logs (log forms and/or log book to be furnished by CHARTERER) of Vessel's activities for the month invoiced, and CHARTERER agrees to pay the same within thirty (30) days of receipt of said invoice.

However, payment by CHARTERER of any invoice does not constitute a waiver of CHARTERER's right subsequently to question or contest the amount or correctness of the invoice and to seek reimbursement.  In the event of any dispute, CHARTERER may withhold payment of the disputed amount or CHARTERER may pay the disputed amount without waiver of any of its rights, including the right to seek reimbursement.  CHARTERER may withhold at any time any amounts that may be necessary to protect CHARTERER from loss on account of liens or potential liens for which OWNER is or may be liable. Contractor will Email all invoices to:

Johnny_giandelone@murphyoilcorp.com

**7.      Damage to or Loss of Vessel**

In the event of either total loss or constructive total loss of Vessel(s) (including damage incurred as a result of a force majeure event as defined herein) as determined by OWNER's underwriter(s), OWNER shall endeavor to replace Vessel with a similarly equipped vessel acceptable to CHARTERER at the day rates provided herein, but only to the extent such similarly equipped vessel is available and is part of OWNER's fleet, either owned by or in possession of OWNER under a bareboat, demise or time charter.

If in the event of substantial damage to Vessel(s) (including damage incurred as a result of a force majeure event as defined herein), should OWNER elect to repair or replace such Vessel(s) with similarly equipped Vessel(s) acceptable to CHARTERER, and such repair or replacement can be accomplished within a period of ten (10) days, the term of this Charter shall be suspended during such period.  Any extension of this ten (10) day period shall be with the approval of CHARTERER.

In the event that the repair or replacement of such Vessel(s) cannot be accomplished within the period specified above or any CHARTERER approved extension thereof, or OWNER elects in good faith not to repair or replace such Vessel(s), then the Notice of Hire as it applies to that Vessel will, at CHARTERER'S option, terminate without any further liability on the part of OWNER or CHARTERER.  OWNER will give written notice to CHARTERER no later than two (2) days after such loss or damage, of its election with respect to repair or replacement of Vessel(s).

OWNER shall have the sole responsibility for removal of the wreckage of Vessel(s), and all equipment thereon, and all parts thereof, if it sinks or becomes an actual or constructive total loss, or its removal is required by any governmental authority, law, ordinance, or regulation, or when required by CHARTERER where wreck and or debris will interfere with CHARTERER's normal operations. OWNER shall defend, indemnify and hold CHARTERER harmless from all cost, expense, liability and claims related to said removal.

**8.    OWNER's Responsibilities**

OWNER shall, at its sole cost and expense, man, supply, operate, and navigate Vessel. OWNER further warrants that Vessel shall be properly crewed at all times and that the captain and all crew members will at all times carry the proper and valid licenses or certificates (including necessary evidence of authorization to work in the United States of America), if any, required by the United States Coast Guard or United States Immigration and Nationalization Services for their service and for their respective capacities on Vessel.

If CHARTERER is dissatisfied with the conduct of the Master or crew, OWNER shall on receiving the particulars of the complaint, investigate and, if necessary, make a change in the appointment or practices required to obtain the services contracted for herein. Vessel shall prosecute her voyages and perform her services with the utmost dispatch, as directed by CHARTERER, but full responsibility for her management, operation, control, and navigation shall remain at all times in OWNER and the Master of Vessel, the same as when trading for OWNER's account. Nothing herein contained shall be construed as a demise or bareboat Charter of Vessel, or as vesting CHARTERER with any control over the physical operation or navigation of Vessel.

Except for emergencies, Vessel shall make only such voyages as ordered by CHARTERER. The Master shall have the sole right to determine whether the voyage ordered by CHARTERER may be undertaken with safety to OWNER's crew, to all persons on board, and to Vessel. If OWNER or Master refuses to undertake the voyage ordered by CHARTERER, OWNER or Master shall furnish CHARTERER a written protest describing the circumstances which resulted in such decision.

It is the exclusive duty of the Master and OWNER to ascertain, to familiarize themselves with, and to monitor current and developing weather conditions and all potential navigational hazards in all areas in which Vessel operates. CHARTERER is not obligated to provide weather or navigational information to the Master; but if CHARTERER, at its sole discretion, makes available to the Master information from any weather service to which CHARTERER might subscribe, or information it might otherwise obtain, or any charts it may have, whether prepared by CHARTERER or not, CHARTERER assumes no liability whatsoever for supplying any such information to the Master or to OWNER, either as to its accuracy, its currency, or the regularity or promptness of its distribution, or for CHARTERER's failure to distribute it. CHARTERER's furnishing of, or failure to furnish, any such information, will in no way mitigate or lessen the duty of the Master and OWNER as stated in this Charter.

**9.    Insurance**

DocuSign Envelope ID: BA6766F3-C5A0-4928-ACF5-757B0861A7EF

OWNER shall, at its sole expense, maintain in force the insurances described in Exhibit "B", attached hereto.  All insurance to be maintained hereunder by OWNER shall be with insurers satisfactory to CHARTERER, and shall be for the benefit of CHARTERER, its parent, subsidiary and affiliated companies, and their working interest owners, co-lessees, co-owners, partners, joint operators, joint venturers and their invitees, contractors and subcontractors and the officers, directors and employees of all of the foregoing (collectively referred to herein as "CHARTERER GROUP") and their insurers, as well as OWNER and Vessel.  For the risks assumed by OWNER hereunder and excluding any risks assumed by CHARTERER hereunder, CHARTERER GROUP shall be named as additional insureds on all policies of insurance maintained hereunder.  For the risks assumed by OWNER hereunder and excluding any risks assumed by CHARTERER, such insurance shall also be endorsed with underwriters' waiver of subrogation against CHARTERER GROUP and their insurers.  Prior to commencement of operations hereunder, OWNER shall furnish CHARTERER satisfactory certificates of insurance, evidencing that all insurance, as required hereunder, is in effect.  Upon request, OWNER shall furnish a certified copy of each policy to CHARTERER.  The certificates shall refer specifically to this Charter and indicate that the policies cover the operations to be performed hereunder.  Said policies shall be endorsed to provide CHARTERER at least thirty (30) days' prior written notice of any change or cancellation of insurance required hereunder.  All deductibles under OWNER's insurance policies shall be for OWNER's account.

## 10. Expenses

Except as provided below, OWNER agrees that all expense of and responsibility for the management, operation, control, and navigation of Vessel shall be borne by OWNER, including, but not limited to, all stores, provisions, victuals, crew's wages, taxes, insurance, license fees, port charges and any fine or civil penalty that may be levied against Vessel or OWNER by any governmental authority.  Unless otherwise specified in writing by OWNER, actual expenditures for fuel during the term of the Notice of Hire, except during downtime, drydocking, or United States Coast Guard or similar inspection, are for the account of CHARTERER, provided however, that CHARTERER's reimbursement shall be limited to the cost of fuel(s) chosen by CHARTERER, so long as such brand meets or exceeds the specifications required for its use.  As to Vessels chartered pursuant to this Charter, CHARTERER agrees to provide or reimburse OWNER for necessary dunnage, uprights and shoring equipment for securing deck cargo, oil and lubricants, water, cordage, replacement bulk cargo hoses, loading and clearance expenses, harbor dues, customs fees and duties and agency fees.

OWNER shall be entitled to charge CHARTERER for the persons (other than OWNER's employees) CHARTERER requests OWNER to feed and/or berth on Vessel, at the rate specified in the Notice of Hire.

OWNER shall provide telephone communication equipment and facilities aboard Vessel.

## 11. Compliance with Regulatory Authorities

OWNER shall comply in all respects with the requirements, if any, of the United States Coast Guard covering vessels of that type, and all other applicable laws, rules and regulations in any way directly or indirectly connected with the possession, navigation, management, manning, operation or control of Vessel, including, but without limiting the generality of the foregoing, compliance with all regulations applying to the trade in which Vessel will engage.

OWNER RELEASES, INDEMNIFIES, AND WILL DEFEND CHARTERER GROUP (AS DEFINED IN PARAGRAPH 9) FROM AND AGAINST ALL CLAIMS FOR DAMAGES, WHETHER TO PERSON OR PROPERTY, RESULTING FROM NON-COMPLIANCE WITH ANY SUCH STATUTES, ORDINANCES, RULES AND REGULATIONS, IN ACCORDANCE WITH PARAGRAPH 21. However, CHARTERER GROUP has the right, at its and their option, to participate in the defense of any suit without relieving OWNER of any obligation under this Charter. OWNER will provide to CHARTERER, upon request, any documentation requested by CHARTERER concerning OWNER's training or safety programs or history, and any other documentation requested by CHARTERER in connection with OWNER's insurance, or in order to comply with any applicable reporting requirements.

OWNER shall, at its own cost and expense, be solely responsible for Vessel retaining, renewing as required and maintaining any and all existing documentation as may be necessary for the Vessel to fully comply with all applicable federal, state and local laws, and with the rules, orders, regulations and requirements of any departments, commissions, bureaus or any other regulatory body (whether public or private) having authority over Vessel or the authority to ensure compliance with any laws and/or regulations concerning the ownership and/or conditions and/or operation of Vessel. Further, OWNER shall ensure that Vessel carries on board at all times, during the term of the applicable Notice of Hire, any and all licenses, certificates and any other documents and/or papers as may be required by any laws and/or regulations concerning the ownership and/or condition and/or operation of Vessel.

Without limiting the generality of the above, OWNER shall comply with all laws, rules and regulations applicable by their terms to Vessel and its operation by OWNER relating to water or air pollution. During the term of this Charter, OWNER warrants that it will comply with all financial capability, responsibility, security, or like laws, regulations and/or other requirements of whatsoever kind, including, without limitation, The Clean Water Act of 1977 (Public Law 95-217, Dec. 27, 1977), and the Oil Pollution Act of 1990, including any amendments thereto or laws to replace the same passed subsequent thereto, with respect to oil or other pollution damage or expenses applicable to Vessel's entering, leaving, remaining at or passing through any ports, places or waters in the performance of this Charter. OWNER, at its sole risk and expense, shall make all arrangements by bond, insurance or otherwise, obtain all such certificates or documentary evidence and take all such action as may be necessary to satisfy and comply with such laws, regulations and/or other requirements. OWNER shall indemnify CHARTERER against all fines and penalties assessed by any governmental authority against CHARTERER resulting from any failure, inability, or omission of OWNER and/or Vessel to accomplish the foregoing.

**12.    Liens**

CHARTERER shall have a lien upon Vessel for any and all monies paid in advance and not earned and for any overpaid hire or funds advanced to OWNER or the Master or for the benefit or account

DocuSign Envelope ID: BA6766D53-C5A0-4928-ACF8-757B0B61A7EF

of Vessel, or for any fines and penalties assessed by a governmental authority against CHARTERER incurred by CHARTERER as a result of OWNER's failure to comply with this Charter or for failure to adequately insure such obligations. OWNER shall reimburse CHARTERER for any such sums upon demand by CHARTERER. Otherwise, CHARTERER shall not have any right, power or authority to create, incur or permit to be imposed any liens whatsoever upon Vessel.

OWNER shall discharge at once, or bond or otherwise secure against, all third party liens and attachments that are filed or incurred in connection with Vessel and any services performed under this Charter, and will be responsible for and hold harmless and indemnify CHARTERER GROUP, and the owners of any cargoes, structures or premises on or about which the Charter is performed, from and against any and all loss, damage, injury, liability and Claims thereof resulting directly or indirectly from such liens and attachments, including costs and attorney's fees. TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, OWNER WAIVES ANY AND ALL RIGHT TO LIEN ANY CHARTERER PROPERTY IN CONNECTION WITH WHICH THE SERVICES ARE PERFORMED AND ANY HYDROCARBON PRODUCTS ASSOCIATED WITH THE PROPERTY. OWNER WILL LOOK SOLELY AND EXCLUSIVELY TO CHARTERER FOR PAYMENT AND WILL NOT RELY ON ANY STATUTORY, COMMON LAW, OR OTHER RIGHT TO LIEN OR ENCUMBER THE REAL PROPERTY OF CHARTERER OR UPON THE HYDROCARBONS ASSOCIATED THEREWITH.

**13.    Full Reach**

CHARTERER shall have at its disposal the full reach of the whole of the cargo and passenger capacity of Vessel, including deck spaces. In addition to those items specifically required herein, OWNER shall provide in fit condition such ropes, transfer hoses, falls, slings, winches, blocks, cables, tow lines, etc., as are customarily carried aboard a vessel of its class for the handling of ordinary cargo. CHARTERER agrees to provide or reimburse OWNER for replacement ropes and transfer hoses. For the purpose of this Charter, "transfer hoses" refers to those normally used to transfer bulk mud and cement, fuel, liquid mud, drill water and brine, and drinking water. Vessel shall work twenty-four (24) hours a day if required by CHARTERER, and OWNER shall properly man Vessel in accordance with all applicable laws, rules and regulations and shall maintain a twenty-four (24)-hour radio watch on a channel designated by CHARTERER.

**14.    Cargo Liability**

OWNER and Vessel agree that with respect to the carriage of cargo placed aboard Vessel, Vessel is a private carrier of goods by sea under the general maritime law.

The Master shall have sole responsibility for the proper stowage of all cargo placed aboard Vessel.

**15.    Cleaning of Tanks**

Prior to delivery of Vessel(s) to CHARTERER, OWNER shall be responsible for the cost of cleaning of the potable water tank(s), bulk storage tank(s), bulk or liquid mud or cement tank(s). All subsequent cleaning of such tank(s), if any are utilized, shall be the responsibility of

DocuSign Envelope ID: BA6780CF3-CEA0-4988-AGE3-75FB0081A7EF

CHARTERER. CHARTERER reserves the right to determine the need and frequency of said cleaning while Vessel is on hire.

## 16. Meters

OWNER will install on Vessel positive displacement fuel meters with a cumulative printout which will meter and record the quantity of all petroleum fuel products received and/or removed from Vessel's bulk tanks, including any transfer to Vessel's day tank(s) during the period of this Charter. CHARTERER may require OWNER to recalibrate the above-mentioned positive displacement meters.

## 17. Logs and Reports

OWNER shall maintain and file such daily rough and smooth marine logs as are customarily maintained on a vessel of this class, and such logs shall specifically include:

(1)     The date.

(2)     The name and official number of the Vessel, and the type of Vessel, that is, crewboat, supply boat, work boat, or other.

(3)     Time and places of departure and arrival and the purpose for each trip.

(4)     The nature and amount of cargo, if any, carried on each trip.

(5)     The amount, in hours and minutes, of running time, idle time, standby time, and downtime for each day.

(6)     The amount of fuel on board at the beginning of each day, the amount received during each day, the amount pumped each day, the amount consumed in operation of Vessel during each day, and the amount remaining on board at the end of each day.  As to the amount pumped, the beginning and ending cumulative meter print reading shall be recorded for each separate delivery.

(7)     The number of running hours on each main engine since the last lube oil change.

(8)     Weather conditions at least once each watch.

(9)     The names and ratings of each member of the crew.

(10)    The signature of the Master.

In addition, OWNER shall prepare and timely submit such reports and documents as may be required by law, regulation or order of any governmental authority or by CHARTERER. CHARTERER shall be provided with two legible copies of daily marine logs as hereinabove provided and shall, upon request, be allowed to inspect and copy any other report or document

prepared and submitted by OWNER to any governmental authority arising out of, or in connection with, any operation of Vessel under this Charter.

**18.    Downtime**

In the event of loss of time from deficiency of crew or stores, breakdown of machinery, stranding, fire, dry docking for purposes of examination or painting the bottom or repair, or from any other cause preventing the full working of Vessel, or from requisition, seizure *in rem* or under order or attachment against OWNER issued by any Court, the payment of hire shall cease for the time thereby lost and until Vessel is again in an efficient state to resume her service. Weather shall not be considered a downtime event.

**19.    Maintenance**

No allowed downtime shall accrue if Vessel is chartered for a period of less than one (1) year. OWNER shall make every effort to schedule such maintenance at the convenience of CHARTERER, subject to the needs of Vessel.

**20.    Scope of Indemnity Obligation**

OWNER AND CHARTERER EXPRESSLY INTEND AND AGREE THAT THE PHRASE "BE RESPONSIBLE FOR AND HOLD HARMLESS AND INDEMNIFY", AS USED IN THIS CHARTER, SHALL MEAN THAT THE INDEMNIFYING PARTY SHALL RELEASE, INDEMNIFY, HOLD HARMLESS AND DEFEND THE INDEMNIFIED PARTIES FROM AND AGAINST ANY AND ALL CLAIMS, DEMANDS, FINES, PENALTIES, CAUSES OF ACTION, DAMAGES, ATTORNEY'S FEES, COSTS OF LITIGATION, COURT COSTS, JUDGMENTS AND AWARDS OF ANY KIND OR CHARACTER ("CLAIMS"), WITHOUT LIMIT AND WITHOUT REGARD TO THE CAUSE OR CAUSES THEREOF, INCLUDING PRE-EXISTING CONDITIONS, WHETHER SUCH CONDITIONS BE PATENT OR LATENT, THE UNSEAWORTHINESS OF ANY VESSEL OR VESSELS, BREACH OF REPRESENTATION OR WARRANTY (EXPRESS OR IMPLIED), STRICT LIABILITY, TORT, BREACH OF CONTRACT, OR THE NEGLIGENCE OF ANY PERSON OR PERSONS, INCLUDING THAT OF THE INDEMNIFIED PARTIES, WHETHER SUCH NEGLIGENCE BE SOLE, JOINT OR CONCURRENT, ACTIVE, PASSIVE OR GROSS, OR ANY OTHER THEORY OF LEGAL LIABILITY, ARISING OUT OF OR IN CONNECTION WITH OPERATIONS HEREUNDER, INCLUDING, BUT NOT LIMITED TO, MOORING OR UNMOORING, DISCHARGE AND LOADING OF CARGO OR PRODUCT, FUEL, OIL, WATER, CHEMICALS, ETC., AND PERSONNEL TRANSFER TO OR FROM VESSEL, CONDUCTED PURSUANT TO THIS CHARTER AND/OR A NOTICE OF HIRE.

**21.    Indemnification for People and Property**

(a)    OWNER'S Indemnification for People and Property:  OWNER shall at all times **BE RESPONSIBLE FOR AND HOLD HARMLESS AND INDEMNIFY** CHARTERER GROUP from and against all **CLAIMS** arising in connection herewith in favor of OWNER, its parent,

DocuSign Envelope ID: BA678CF3-CEA0-498B-AGE3-75FB0081A7EE

subsidiary and affiliated companies, their respective officers, directors, employees, and any Vessel chartered hereunder as well as such Vessel's Master, crew, owner and operator (collectively referred to herein as "OWNER GROUP") and any legal representative, heir or survivor of any of OWNER GROUP on account of illness, injury or death of OWNER GROUP or damage to or loss of equipment or property owned, rented or provided by OWNER GROUP (including any Vessel chartered hereunder). If it is judicially determined that the monetary limits of insurance required under this Charter or of the indemnities voluntarily assumed under this paragraph (which OWNER hereby agrees will be supported by liability insurance, under which the insurer shall have no right of subrogation against CHARTERER GROUP or its insurers) exceed the maximum limits permitted under applicable law, it is agreed that said insurance requirements or indemnities shall automatically be amended to conform to the maximum monetary limits permitted under such law.

(b)    CHARTERER's Indemnification for People:    CHARTERER shall at all times **BE RESPONSIBLE FOR AND HOLD HARMLESS AND INDEMNIFY** OWNER GROUP from and against all **CLAIMS** arising in connection herewith in favor of CHARTERER GROUP and any legal representative, heir or survivor of any of CHARTERER GROUP, on account of illness, injury or death of CHARTERER GROUP. If it is judicially determined that the monetary limits of insurance required under this Charter or of the indemnities voluntarily assumed under this paragraph (which CHARTERER hereby agrees will be supported by liability insurance, under which the insurer shall have no right of subrogation against OWNER GROUP or its insurers) exceed the maximum limits permitted under applicable law, it is agreed that said insurance requirements or indemnities shall automatically be amended to conform to the maximum monetary limits permitted under such law.

(c)    OWNER's Indemnification for Property of CHARTERER GROUP:    Notwithstanding any provisions of this Charter to the contrary, OWNER shall at all times **BE RESPONSIBLE FOR AND HOLD HARMLESS AND INDEMNIFY** CHARTERER GROUP from and against all **CLAIMS** arising in connection herewith in favor of CHARTERER GROUP on account of damage to or loss of equipment or property owned, rented or provided by CHARTERER GROUP to the extent that such damage or loss is caused by the negligence or strict liability of OWNER GROUP.

(d)    Consequential Damages:    Neither party shall at any time **BE RESPONSIBLE TO THE OTHER FOR SPECIAL, INDIRECT OR CONSEQUENTIAL DAMAGES AND EACH PARTY WILL HOLD HARMLESS AND INDEMNIFY** the other party from and against its own special, indirect or consequential damages resulting from or arising out of this Charter, including, but not limited to, loss of profits, loss of product or production or business interruptions with regard to the cause of such losses or damages, including the negligence of the indemnified party hereunder.

## 22.    Inventory

A complete inventory of the fuel stores on board shall be taken and mutually agreed upon at the time of delivery of Vessel to CHARTERER and a similar inventory shall be taken and mutually agreed upon at the time of redelivery of Vessel to OWNER.

DocuSign Envelope ID: BA9789F3-CEA4-498B-A9E3-75FB9081A7FF

In the event that there is a smaller amount of fuel stores on board at the time of Vessel's redelivery than upon delivery, CHARTERER shall, at its option, pay OWNER for the difference in quantity at the current market price at the Port of Redelivery or replace the fuel.  In the event that there is a greater amount of fuel stores on board at the time of the Vessel's redelivery than upon delivery, then at CHARTERER's option, OWNER shall pay CHARTERER for the difference in quantity at the market price at the Port of Redelivery, or shall transfer the difference to any other Vessel chartered by CHARTERER, any expense of such transferring to be borne by CHARTERER.  Fuel and lubricants delivered to Vessel shall be checked by OWNER to confirm that same are the type requested and are free from contaminants.

Fuel and lubricants when delivered to Vessel become the responsibility of the OWNER, and OWNER shall be liable for their safekeeping and any shortages or spoilage shall be for the OWNER's account.

Handling and disposal of all waste generated by Vessel are the sole responsibility of OWNER. This includes all oils, filters, hydraulic fluids, waste water, paints, thinners, cleaners, etc., generated during normal operations and maintenance of Vessel.

## 23. Special Equipment

CHARTERER may, at its expense, install special equipment or gear on Vessel provided that no such installation may be made without OWNER's consent.  CHARTERER will be responsible for any damages caused by the installation or removal of special equipment.  At the expiration or earlier termination of the Notice of Hire, CHARTERER shall remove its equipment, at its sole expense, and return Vessel to the condition it was in prior to installation of said equipment, normal wear and tear excepted.  Vessel to remain on hire while said removal and restoration takes place.

## 24. Safety Policies and Procedures

OWNER agrees that it will notify all employees and related subcontractor personnel, in writing, that CHARTERER prohibits illegal drugs, intoxicating beverages, pyrotechnics, firearms, weapons and other contraband during operations hereunder and on work locations controlled by CHARTERER.  In the event that any damage, loss of property, or injury to any person is caused by or arises out of the failure of OWNER to timely notify its employees and related subcontractor personnel, of CHARTERER policy, OWNER will be liable and bear all costs, including attorneys' fees, for all damages, loss of property, damage to property, illness, injury to persons and/or death for which claim is made.  Additionally, OWNER agrees to execute the Alcohol/Drug-Free Warranty, attached hereto as Exhibit "C".

OWNER shall notify CHARTERER immediately and shall furnish a copy of its Employer's First Report of Accident to CHARTERER as soon as possible following any accident resulting in injury to any of its employees, servants, or agents, or those of its contractors or subcontractors, during the progress of operations hereunder.  Upon request by CHARTERER, OWNER shall also complete CHARTERER's Contractor's Occupational Injury and Illness Report and shall furnish to CHARTERER copies of any license, permit, bond, report or other document maintained or

compiled in compliance with law, rule or regulation of any government authority and relevant to OWNER's performance hereunder.

CHARTERER reserves the right to audit OWNER's Safety and Environmental Program by requesting documentation and/ or auditing OWNER's facilities, records, and work practices.

In addition, OWNER shall comply with Department of Transportation regulations requiring chemical drug testing of its personnel as specified in 46 CFR, Parts 4, 5, and 16, and hereby grants CHARTERER or its authorized agents access to Vessel, in order to conduct unannounced personal searches or to request OWNER's personnel to submit to laboratory testing, similar to and as if OWNER's personnel or their personal property were on CHARTERER's premises as specified in Exhibit "C" hereto.

## 25.   Force Majeure

Neither OWNER nor CHARTERER shall be liable to the other for any loss, damage, or delay of whatsoever nature resulting from an act of God, named storms, strikes, labor disputes, hostilities, war, epidemic, quarantine, embargo, or for restraint of any government, rulers or people, or other causes beyond the reasonable control of the parties hereto. If performance is so delayed or prevented for more than ten (10) days, either party may immediately terminate the Notice of Hire by written notice.

## 26.   Salvage

All salvage monies earned by Vessel shall be divided equally between OWNER and CHARTERER after deducting master's, officers' and crew's share and charter hire of Vessel during any time lost due to salvage operations.

## 27.   Limitation of Liability

Nothing in this Charter shall be construed or held to deprive OWNER or CHARTERER of any right to claim limitation of liability provided by any presently existing statute of the United States or by any United States law or statute which might hereafter be enacted, but only with respect to third parties and not as between OWNER and CHARTERER.

## 28.   Failure to Perform and Performance After Termination

In the event that OWNER fails to conduct its operations hereunder in accordance with the terms of this Charter (for reasons other than a force majeure event as defined herein or limited periods of equipment downtime due to equipment failure), CHARTERER may give OWNER written notice specifying in detail such failures on the part of OWNER. Should OWNER fail to remedy the matters complained of within twenty-four (24) hours after the written notice is received, OWNER's compensation hereunder may be reduced based on the diminished value of the services. Should OWNER fail to correct such deficiencies within five (5) days or such longer period as CHARTERER may specify after said written notice is received and Vessel is of reduced use to CHARTERER, CHARTERER may at its option cease payments of hire as provided for herein. In

DocuSign Envelope ID: BA6780F3-CEA0-4986-A9E3-75FB0081A7EF

the event the condition complained of herein continues for ten (10) days or more, CHARTERER may at its option terminate the Notice of Hire as it applies to that Vessel(s) without any liability for any part of the Charter hire herein provided, other than for sums previously earned, due and unpaid.

OWNER shall, on receiving notice of termination under this paragraph, be obligated to perform such further services as may reasonably be required by CHARTERER to complete ongoing operations until such time as a vessel acceptable to CHARTERER can replace Vessel(s). OWNER shall be paid at the rates provided for herein for the performance of such services. However, OWNER shall not receive payment for the period during which operations are suspended hereunder.

## 29.    Equal Opportunity

To the extent required by law, in connection with the performance of operations hereunder, OWNER agrees to comply with all the provisions of Section 202(1) through (7), inclusive, of Executive Order 11246 of September 24, 1965, and Executive Order 11375 of October 13, 1967, and all other relevant Orders of the Secretary of Labor of the United States or governmental agency having jurisdiction.

## 30.    Assignment

OWNER shall not assign this Charter, or any Notice of Hire, or any part thereof, nor assign to any entity any part of hire due or which may be due under this Charter without the written consent of CHARTERER with the exception of an assignment of monies due hereunder made in connection with Vessel financing. CHARTERER is granted the express authority, with OWNER's prior written consent, to assign this Charter, but no such assignment shall relieve CHARTERER of its obligation to pay for OWNER's services performed pursuant hereto unless OWNER consents in writing to said assignment. Consent from either OWNER or CHARTERER is not to be unreasonably withheld.

## 31.    Notices

Any notices to the respective parties shall be deemed given at the time of receipt when sent by registered or certified mail to the recipient at the following addresses:

**OWNER**        **Offshore Towing, Inc.**
                **P.O. Box 1463**
                **Larose, LA 70373**
                **Ph# 985-798-7831**

**CHARTERER**

**MURPHY EXPLORATION & PRODUCTION COMPANY - USA**
9805 Katy Fwy, Suite G-200, Houston, TX 77024
Attention: Joseph Williams

Manager, Global Procurement
Phone: 281-675-9422
Facsimile: 281-675-9444

Notices hereunder may be given in any manner which will ensure receipt thereof by the party to whom it is directed.

## 32.    Construction

The headings of the paragraphs have been inserted as a convenience for reference only, and are not to be considered in any construction or interpretation of this Charter.

## 33.    Amendment

This Charter shall not be amended at any time except by written agreement executed by both parties.

## 34.    Law Governing

The rights, obligations, and liabilities of the parties and the provisions of this Blanket Boat Time Charter or any Notice of Hire shall be determined and construed in accordance with the general maritime law of the United States.

The United States District Court for the Southern District of Texas in Houston, Texas, shall have exclusive venue and jurisdiction for the determination of all issues, controversies and disputes arising under this Charter.

## 35.    Severability

Any provision of the Charter which is or may be void or unenforceable shall, to the extent of such invalidity or unenforceability, be deemed severable and shall not affect any other provision of this Charter.  Both parties agree that the exculpatory, indemnification and hold harmless provisions herein shall be modified or altered only insofar as required by a jurisdiction purporting to limit such provisions, it being the intention of both parties to enforce to the fullest extent all terms and conditions herein agreed to.

## 36.    Confidentiality

OWNER warrants that all materials and information in any way relating to this Charter, or any services furnished or performed under this Charter, or CHARTERER's operations, or the results of any operations conducted by CHARTERER or by OWNER for CHARTERER will be kept strictly confidential and that neither OWNER's employees nor its subcontractors will disclose, publish or release to any other party any such materials or information without the written approval of CHARTERER.  OWNER will not at any time use any such information for its financial benefit.

## 37.    Audit

DocuSign Envelope ID: BA078CF3-CE4A-4988-ACE3-75FB0081A7EF

CHARTERER has the right from time to time to audit or inspect OWNER's records and books concerning any services performed under this Charter.   CHARTERER's rights under this paragraph continue during the term of this Charter and for three (3) years after receipt by OWNER of final payment for the services performed hereunder.

**38.   Guarantee**

In the event that any of the subsidiaries or affiliates of OWNER listed on Exhibit "D" attached hereto is listed as "OWNER" on any Notice of Hire issued hereunder, the full and faithful performance of such subsidiary or affiliate shall be guaranteed by OWNER.

DocuSign Envelope ID: BA678CF3-CFA0-4986-A9E3-75FB9081A7EF

IN WITNESS WHEREOF, the parties have executed this Agreement on this, the 16th day of January 2020.


MURPHY EXPLORATION & PRODUCTION COMPANY - USA

BY: _Johnny Giandelone_
2F956ADGE9D6447...

PRINT NAME: Johnny Giandelone

TITLE: sr.mgr log. & mat.GOM/INTL.


OFFSHORE TOWING

BY: _David R Talbot_
5F5EDDD0B735461...

PRINT NAME: DANNY TALBOT

TITLE: Compliance manager

DocuSign Envelope ID: BA678CF3-CE44-4986-AGF3-75FB0081A7EE

**MURPHY EXPLORATION & PRODUCTION COMPANY - USA**
**EXHIBIT "A"**
**SAMPLE NOTICE OF HIRE – BLANKET BOAT TIME CHARTER**

DATE:  _____

TO:  _____ (hereinafter "OWNER")

FROM: MURPHY EXPLORATION & PRODUCTION COMPANY - USA (hereinafter "CHARTERER")

VESSEL: _____ (Name and Official Number of Vessel)

In accordance with the terms and conditions of the Blanket Boat Time Charter between CHARTERER and OWNER, dated _____, CHARTERER takes under Charter the subject Vessel.

Type of Vessel:                            _____
Rate of Charter Hire:                   $ _____
Port of Delivery:                          _____
Port of Redelivery:                       _____
Operating Area (Waters):              Gulf of Mexico
Meal and Bunk Charges:               $_____ per meal, $_____ per bunk.
Initial Charter Term:                     _____from time and date of delivery
                                                     (years, months, weeks, days)

Effective Time and Date of Delivery: _____ on _____, 20__, or such other time as may be mutually agreed upon, unless this Notice of Hire be sooner canceled or terminated.  At the conclusion of the initial Charter term and any additional term, CHARTERER shall have the right, at its sole option, to extend this Notice of Hire for a like term of years, months, weeks, and/or days, provided however, that CHARTERER shall give OWNER notice of its exercise of such option not less than fifteen (15) days prior to the expiration of the term then in effect.  Provided, further, that option periods governed by other specific contracts shall be in accordance with the terms of such contracts.

Beginning Fuel:                 _____

Ending Fuel:                      _____

Special Instructions:

CHARTERER: MURPHY EXPLORATION &              OWNER:
PRODUCTION COMPANY - USA

BY: _____         BY: _____

PRINT NAME: _____              PRINT NAME: _____

TITLE: _____          TITLE: _____

DocuSign Envelope ID: BA678CF3-CEA0-4986-A0E3-75FB0081A7EE

# EXHIBIT "B"
## INSURANCE COVERAGES

This Exhibit "B" is attached to and made a part of that certain Blanket Boat Time Charter, dated January 16, 2020 between MURPHY EXPLORATION & PRODUCTION COMPANY  - USA (CHARTERER) and OFFSHORE TOWING, INC.  (OWNER).

SEE ALSO INSURANCE REQUIREMENTS IN PARAGRAPH 9 OF SAID CHARTER.

OWNER shall carry the following minimum coverages:

(a)     Worker's Compensation and Employer's Liability Insurance, in accordance with all applicable State, Federal, and Maritime laws and endorsed specifically to include the following:

(1)     Employer's Liability, including Occupational Disease, subject to a limit of liability of not less than $1,000,000.00 each accident.

(2)     U. S. Longshore and Harbor Workers' Compensation Act, including its extension by the Outer Continental Shelf Lands Act.

(3)     "Borrowed Servant" endorsement or "Alternate Employer" endorsement.

(4)     Masters and Members of the Crews of Vessels (on a Voluntary Compensation Basis) with limits of liability of not less than $1,000,000.00 for injury to or death of any one person and not less than $2,000,000.00 for injury to or death of more than one person resulting from any one accident.  Coverage shall also include transportation, wages, maintenance and cure, and liability under the Jones Act, Death on the High Seas Act, and General Maritime Law.

(b)     Commercial General Liability Insurance, with limits of liability of not less than $1,000,000.00 (combined single limit).  Such insurance shall be endorsed specifically to include the following:

(1)     Contractors' Protective Liability, covering for work sublet/third party contractors.

(2)     Products/Completed Operations Hazard.

(3)     Contractual Liability hereunder.

(4)     Coverage as to any assumed tort liability for bodily injury and property damage.

(5)     Removal of any exclusion(s) for "watercraft" liability.

(6)     Removal of any exclusion(s) relating to Explosion, Collapse and Underground Damage

DocuSign Envelope ID: BA678CF3-CFA9-4988-AGE3-75FB0081A7EE

      (7)     Deletion of any exclusions relating to explosion, collapse and underground damage.

(c)     Automobile Liability Insurance covering all owned, non-owned and hired automobiles with a total combined bodily injury and property damage limit not less than $1,000,000.00 per occurrence.  Territorial limits of such insurance will include the area in which operations are to be performed.

(d)     Aircraft Liability Insurance, in any operations requiring the use of aircraft and/or helicopter, with a total combined single limit for public liability and passenger liability not less than $25,000,000.00.  This insurance shall cover all owned and non-owned aircraft used or provided by OWNER in connection with the performance of operations hereunder.

(e)     Hull and Machinery Insurance, subject to American Institute Time Hull Clauses, June, 1977, or equivalent.  (If Vessel is a tug, American Institute Tug Form 876, Aug. 1, 1976, or equivalent.)  The policy must include geographic extensions of coverage for any areas in which Vessel may operate and must have minimum limits equal to or in excess of the full value of Vessel.  The policy must also include collision liability coverage unless covered by P & I Insurance at the full limits but not less than the value of Vessel.   Such insurance shall be endorsed specifically to include the following:

      (1)     "In rem" endorsement, stating that an action "in rem" shall be treated as a claim against the insured "in personam" and providing full coverage to CHARTERER GROUP as additional insureds without limiting coverage to liability "as owner of the vessel" and to delete any "as owner" clause and any other language purporting to limit coverage to liability of an insured "as owner of the vessel."

      (2)     Deletion of any language limiting coverage in the event of applicability of the Limitation of Liability Statute.

(f)     Protection and Indemnity Insurance (SP-23 Form as amended or equivalent) with a limit of not less than $25,000,000.00 per occurrence.  The policy must include geographic extensions of coverage for any areas in which Vessel may operate.  Such insurance shall be endorsed specifically to include the following:

      (1)     Full crew coverage (unless provided under Paragraph (a) above).

      (2)     Blanket Broad Form Contractual Liability.

      (3)     Collision liability (unless covered under the Hull policy).

      (4)     Coverage for anchor handling operations (if anchor handling operations are to be performed hereunder).

      (5)     SRCC coverage and towers' liability coverage with sistership clause unamended (unless covered under the Hull and Machinery policy).

DocuSign Envelope ID: BA678CF3-CEA0-4988-AGE3-75FB9081A7EF

(6) Liability for seepage, pollution, containment and cleanup.

(7) "In rem" endorsement, stating that an action "in rem" shall be treated as a claim against the insured "in personam" and providing full coverage to CHARTERER GROUP as additional insureds without limiting coverage to liability "as owner of the vessel" and to delete any "as owner" clause and any other language purporting to limit coverage to liability of an insured "as owner of the vessel."

(8) Deletion of any language limiting coverage in the event of applicability of the Limitation of Liability Statute.

(g) Excess/Umbrella Insurance above the coverages and amounts specified in Paragraphs (a) through (f) in the amount of $10,000,000.00.

(h) OWNER's insurance policies, whether specifically required above or not, shall be primary to any policies maintained by CHARTERER itself and are not in excess of and shall not be considered contributory insurance with any insurance policies of CHARTERER, regardless of the existence of any "other insurance" clauses in such insurance policies. Any "sue and labor" provisions in OWNER's insurance policies shall not apply to CHARTERER.

All liability policies (except Workers' Compensation) shall contain a severability of interest clause, providing that in the event of claims being made by reason of personal injury, and/or property damage suffered by any employee(s) of the Insured or Additional Insured(s) for which the other Insured or Additional Insured(s) is or may be liable, the subject policy shall cover each Insured or Additional Insured(s) as if separate policies had been issued to each, however, the inclusion of such clause shall not operate to increase the insurance company's liabilities beyond the amount or amounts for which the insurance company would have been liable if only one person or interest had been named as Insured.

Failure to secure the insurance coverages, or the failure to comply fully with any of the insurance provisions of this Charter, or the failure to secure such endorsements on the policies as may be necessary to carry out the terms and conditions of this Charter, shall in no way act to relieve OWNER from the obligations of this Charter, any provisions hereof to the contrary notwithstanding. In the event that liability for loss or damage be denied by the insurer(s), in whole or in part, because of breach of said insurance provisions by OWNER, or for any other reason or if OWNER fails to maintain any of the insurance herein required, OWNER shall be responsible for and hold harmless and indemnify CHARTERER GROUP and their insurers against all claims, demands, costs and expenses, including attorneys' fees, which would otherwise be covered by said insurance. Notwithstanding anything to the contrary herein, OWNER's indemnification obligations under this Charter (express or implied) shall not be limited in amount or in scope of coverage to the insurance which is required by OWNER under the terms hereof.

DocuSign Envelope ID: BA678CF3-CEA0-4988-AGE3-75EB0081A7EE

**EXHIBIT "C"**
**ALCOHOL/DRUG-FREE WARRANTY**

This Exhibit is incorporated in and made part of the foregoing Blanket Boat Time Charter between OWNER and CHARTERER.

OWNER and CHARTERER agree that it is the intention of this warranty to impose the duty of pre-assignment drug testing and the sole responsibility for accidents occurring in whole or in part as a consequence of the use, possession, transfer, purchase or sale of illegal drugs, narcotics, intoxicating beverages or other unlawful substances and materials by OWNER's personnel/employees on the OWNER.

OWNER hereby warrants that its employees are and will be "alcohol/drug free" while working on CHARTERER premises. OWNER agrees that the measure of damages for breach of this warranty is reimbursement to CHARTERER of any amounts paid as settlement, payment of judgment (including attorneys' fees and costs) with respect to personal injuries, deaths or property damage (including, but not limited to, compensatory, punitive damages, fines and penalties) caused in whole or in part by OWNER's breach of this warranty. This obligation is in addition to applicable indemnity and insurance requirements contained in the Charter.

For purposes of this warranty provision, "alcohol/drug free" is defined as the ability of each employee directly or indirectly involved in an accident or investigation to successfully pass a DOT and/or non-DOT alcohol/drug test, as required by CHARTERER, OWNER or an appropriate governmental agency having jurisdiction. Failing such test or avoidance or refusal to take such test shall constitute a presumption that the employee was not alcohol or drug free at the time of the accident and that this warranty was breached.

The term "CHARTERER premises" includes not only all land, property, buildings, platforms, structures, installations, vessels, airplanes, helicopters, cars, trucks, and other means of conveyance owned/leased by CHARTERER or OWNER or used for CHARTERER business but also locations not owned or leased by CHARTERER where operations are being performed for CHARTERER (such as geophysical sites).

This Charter requires OWNER to release the results of OWNER's employees' drug tests to CHARTERER within twenty-four (24) hours after the testing or as soon thereafter as practicable.

DocuSign Envelope ID: BA678CF3-CEA0-4986-AGF3-75FB9D81A7EE

# EXHIBIT "D"
## OWNER AND RELATED COMPANIES

Subject to Paragraph 38 of the Blanket Boat Time Charter, listed below are OWNER and related companies which are included as parties to this Blanket Boat Time Charter. When one of these OWNER affiliated companies is listed as OWNER on any particular Notice of Hire, that company will be deemed as Vessel OWNER for that particular Vessel's Charter.

GLOBAL TOWING SERVICE, L.L.C.