UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| ALL COAST, LLC | CIVIL ACTION NO: 21-258 |
|---|---|
| VERSUS | c/w 21-337, 21-464, 21-822, 21-1968, 21-1969, 21-1982, 21-1981, 21-2075, 21-2227, 23-3220 |
| SHORE OFFSHORE SERVICES, LLC | SECTION "A" <br> HON. JAY C. ZAINEY <br><br> MAGISTRATE: (3) <br> HON. EVA J. DOSSIER <br><br> APPLIES TO ALL CASES |

## MEMORANDUM IN SUPPORT OF
## MOTION IN LIMINE TO EXCLUDE TESTIMONY OF C-PORT EXPERTS

**MAY IT PLEASE THE COURT:**

Limitation Petitioners, Modern American Railroad Services, L.L.C. and Shore Offshore Services, LLC (collectively the "THOR Interests"), submit this Memorandum in Support of their Motion in Limine to (a) exclude the testimony of Christopher O'Brien of Lanier & Associates Consulting Engineers, Inc. ("Lanier") as a retained expert of C-Port, LLC ("C-Port") under Rule 26(a)(2)(B) related to the condition of the "mooring dolphins at the C-Port facility at the time of Hurricane Zeta" and "the useful life of the dolphins,"[1] and (b) exclude or limit the testimony of Timothy Duncan, Christopher O'Brien, and any other representatives of Lanier, Matt Dubois and any other representative of Grand Island Shipyard, Inc. ("GIS"), any representative of Sealevel Construction, Inc. ("Sealevel"), and David Robichaux and any other representative Low Land Construction Co., Inc. ("Low Land"), as non-retained experts of C-Port under Rule 26(a)(2)(C).

---

[1] Exhibit "A", C-Port Expert Disclosures (27 Dec. 2023).

1. **Factual and Procedural Background**

C-Port owned 12 unmaintained, 23-year-old mooring dolphins[2] in Port Fourchon across the bayou and upstream of Martin Energy Dock No. 16, where some of the property damage claimant vessels in these consolidated cases were moored on 28 October 2020 during Hurricane Zeta. Following the hurricane, C-Port filed claims in the THOR Interests' Limitation Action, wherein it posited the "destruction" of all 12 mooring dolphins and claimed that C-Port is entitled to recover removal and replacement costs, along with economic damages for the loss of its use of those dolphins (hereinafter the "Breakaway Incident").[3]

These mooring dolphins were installed in the brackish waters of Port Fourchon in 1997 and leased from time to time to local operators for an alleged average annual revenue of approximately $55,000.[4] During the years intervening between the installation of the mooring dolphins and Hurricane Zeta, C-Port had no planned maintenance schedule for the dolphins, and only the *belief* that a contractor named E&L Enterprises, Inc. sandblasted and painted the dolphins in 2012 for a quoted cost of $58,000.[5]

"Upon information and belief, E&L Enterprises, Inc. [also] inspected the mooring dolphins in connection with providing their June 2012 quote for maintenance work (blasting and painting) on the twelve mooring dolphins,"[6] but other than that, C-Port had no inspection protocol for the dolphins.[7] Indeed, C-Port's Corporate Representative testified that C-Port relied on its customers

---

[2] Exhibit "B", Lanier Report (27 Dec. 2023).
[3] Rec. Doc. 27.
[4] Exhibit "C", C-Port Omnibus Discovery Responses (9 Sept. 2022).
[5] Exhibit "D", E&L Quote (20 June 2012); *see also* Exhibit "C", C-Port Omnibus Discovery Responses (9 Sept. 2022). C-Port's Corporate Representative testified that this quoted work was accomplished, but no further invoices, proofs of payment or other documentation of the work have been produced.
[6] Exhibit "C", C-Port Omnibus Discovery Responses (9 Sept. 2022), Answer to Interrogatory No. 9.
[7] Exhibit "E", C-Port Corporate Deposition Transcript, 77:19-78:4.

to alert it to any issues, and to the extent anyone from C-Port had conducted informal, visual inspections of the dolphins at any point, findings from such inspections were never documented.[8]

As a result, C-Port had "no way of knowing"[9] whether or the extent to which the damage to any of these dolphins preexisted Hurricane Zeta and was "not made aware"[10] of the extent to which the dolphins were damaged and deteriorated prior to Hurricane Zeta. For example, one dolphin to which one of the claimant vessels here was moored during Hurricane Zeta was in such disrepair that its cleat was completely sheered off – all <u>before</u> the Breakaway Incident. Below is a photograph taken in the hours before the hurricane, exchanged in discovery, that shows the state of disrepair:

[11]

After Hurricane Zeta, C-Port retained Lanier as its damages surveyor. On 8 December 2020, Lanier performed a joint inspection of the condition of the dolphins as they remained in Port Fourchon after the Breakaway Incident, along with THOR Interests' retained damages surveyor, Gary Rankin of DLS Marine. Heavy wasting and thinning, along with preexisting fractures and

---

[8] Exhibit "E", C-Port Corporate Deposition Transcript, 45:19-47:10, 77:19-78:9.
[9] Exhibit "E", C-Port Corporate Deposition Transcript, 95:25-96:9.
[10] Exhibit "E", C-Port Corporate Deposition Transcript, 83:5-9.
[11] Image produced through discovery as HGIM-EV-005890.

tears, were noted.[12] The following photographs are taken from a letter from Lanier to C-Port following the inspection and are examples of the amount of pre-incident wasting damage observed by Mr. O'Brien:




Following the inspection, Lanier recommended "demolishing and replacing all the dolphins."[13] The dolphins were removed by GIS between 22 February and 9 March 2021, and C-Port subsequently obtained bids to replace the dolphins from several contractors, namely GIS, Sealevel and Low Land. C-Port has claimed it is entitled to recover the replacement cost of the 12 dolphins without any allowance for 23 years of depreciation, which is made the subject of another motion at Rec. Doc. 773.

In an attempt to support this claim, and in accordance with its obligations under Rule 26 of the Federal Rules of Civil Procedure, C-Port designated various individuals as both retained experts under Rule 26(a)(2)(B) and non-retained experts under Rule 26(a)(2)(C).[14]

C-Port designated Christopher O'Brien of Lanier as its expert retained to "opine and testify regarding the mooring dolphins at the C-Port facility at the time of Hurricane Zeta; the useful life

---

[12] *See* Exhibit "F", Lanier Letter (16 Dec. 2020); Exhibit "G", DLS Report (17 Jan. 2025).
[13] Exhibit "F", Lanier Letter (16 Dec. 2020).
[14] Exhibit "A", C-Port Expert Disclosures (27 Dec. 2023).

of the dolphins; the cost of removal/repair/replacement of the dolphins; and opinions set forth in his expert report."[15] In the proffered report, Mr. O'Brien surmises without reasoning that "[p]rior to the damage that occurred during the storm event, the dolphins were in serviceable conditions," and "could have been returned to 'like new' condition with a maintenance project."[16]

In addition to Mr. O'Brien, C-Port also designated the following non-retained experts:

1.  Timothy Duncan, Christopher O'Brien, or other representatives of Lanier & Associates Consulting Engineers, Inc.

    Mr. Duncan and/or other Lanier representatives are expert consulting engineers and project managers who conducted various inspections and surveys of the damaged dolphins following the incident. They may testify concerning the scope of the damage sustained to the mooring dolphins/fixed structures, repair/replacement, useful life, and any costs or expenses associated with same.

2.  Matt Dubois or another representative of Grand Island Shipyard, Inc.

    GIS representatives are experts in marine construction and may testify regarding the damage to the mooring dolphins/fixed structures, repair/replacement, useful life, and any costs or expenses associated with same.

3.  A representative of Sealevel Construction, Inc.

    Sealevel Construction representatives are experts in marine construction and may testify regarding the damage to the mooring dolphins/fixed structures, repair/replacement, useful life, and any costs or expenses associated with same.

4.  David Robichaux or another representative Low Land Construction Co., Inc.

    Low Land Construction representatives are experts in marine construction and may testify regarding the damage to the mooring dolphins/fixed structures, repair/replacement, useful life, and any costs or expenses associated with same.[17]

C-Port failed to provide any summary of the facts and opinions to which these non-retained witness are expected to testify.

---

[15] Exhibit "A", C-Port Expert Disclosures (27 Dec. 2023).
[16] Exhibit "B", Lanier Report (27 Dec. 2023).
[17] Exhibit "A", C-Port Expert Disclosures (27 Dec. 2023).

For the reasons detailed below, Mr. O'Brien's proffered testimony regarding the useful life of the C-Port mooring dolphins is unreliable and will be unhelpful to this Court as a matter of law, such that his testimony in this regard should be excluded or limited.[18] Additionally, for the following reasons, the witnesses C-Port has designated as non-testifying experts do not qualify as such and their testimony regarding the useful life of the mooring dolphins must likewise be excluded from or limited at trial.

**2. Law & Argument**

    a. <u>C-Port's Retained Expert should be excluded from testifying regarding depreciation or the useful life of the C-Port mooring dolphins at trial.</u>

As the Court knows well, it is the duty of the trial judge[19] to ensure that any evidence or testimony based on "technical" and "other specialized" knowledge is both relevant and reliable before it is admitted into evidence.[20] Rule 702 of the Federal Rules of Evidence provides general standards for this Honorable Court to use in assessing the reliability and helpfulness of expert testimony:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.[21]

---

[18] *See* §2.a. of this supporting memorandum.
[19] Even in a bench trial, an expert's opinion should be excluded where it is more likely to confuse rather than assist the factfinder. *Thompson v. Rowan Cos.*, No. 06-3218, 2007 WL 724646, at *1 (E.D. La. Mar. 6, 2007); *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987). Expert opinion testimony falls into this category when that testimony would not actually assist the factfinder in arriving at an intelligent and sound verdict. *Id*. (citing See J. Weinstein & M. Berger, Weinstein's Evidence § 702[1] (1985) (assistance of trier of fact is central concern of Federal Rules of Evidence regarding opinion witnesses)). Likewise, if an expert's opinion is fundamentally unsupported, then it offers no expert assistance to the court, and its lack of reliable support may render it more prejudicial than probative, making it inadmissible under Rule 403 of the Federal Rules of Evidence. *Id.* (citing *Barrel of Fun, Inc. v. State Farm Fire & Casualty Co.*, 739 F.2d 1028, 1035 (5th Cir.1984).
[20] *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 589 (1993); *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 141 (1999).
[21] Fed. R. Evid. 702.

In other words, an expert must identify the facts and data that form the basis for his testimony so this Honorable Court can assess the sufficiency of those facts and data. To be admissible, the expert's opinions must be based in scientific methods and procedures, not mere subjective belief or unsupported speculation. A district court may exclude an expert's testimony if it is based on speculations designed to bolster a party's position.[22]

As the proponent of the proffered testimony, C-Port bears the burden of proving that Mr. O'Brien's opinions should be admitted.[23] And where, as is here, there is "too great an analytical gap between the data and the opinion proffered," the testimony should be precluded.[24]

Based on the foregoing standards and considering the analysis below, Mr. O'Brien's opinions are not reliable or helpful, and he should be precluded from testifying regarding depreciation or the useful life of the mooring dolphins related to C-Port's claim at trial.

*Mr. O'Brien's scientific, technical, or other specialized knowledge will not help the trier of fact understand the evidence or determine a fact in issue.*[25] While Mr. O'Brien purports to have engineering and marine terminal design experience, his report was prepared in anticipation of litigation.[26] Indeed, that is its only purpose, as while not stated, THOR Interests expect C-Port intends to rely on Mr. O'Brien's "opinions" to try to avoid having their recoverable damages reduced in proportion to the dolphins' age at the time of the Breakaway Incident. As a result, Mr.

---

[22] See *Guillory v. Domtar Indus. Inc.*, 95 F.3d 1320, 1331 (5th Cir. 1996) (affirming district court's exclusion of expert testimony based on facts not in the record and speculation designed to bolster proponent's position); see also *Brown v. Parker-Hannifin Corp.*, 919 F.2d 308, 311 (5th Cir. 1990) (Wisdom, J.) ("a district court may properly exclude the testimony of an expert if that testimony lacks an adequate foundation").
[23] *Bourjaily v. United States,* 483 U.S. 171, 175 (1983).
[24] *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).
[25] Fed. R. Evid. 702(a).
[26] See "B", Lanier Report (27 Dec. 2023).

O'Brien's "objectivity is suspect"[27] and his opinions should likewise be looked upon with skepticism.[28]

The U.S. Supreme Court has made clear that the objective of *Daubert* is "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."[29] An expert does not employ "the same level of intellectual rigor"[30] when he fails to take into consideration depreciation at all and therefore seems to ignore without reasons the "industry accepted typical service life" for steel mooring dolphins of 40 years[31] that has been accepted by his colleagues and the courts[32]—including this Court and at the suggestion of Lanier, when Judge Berrigan in *In re M&M Towing Co.*,[33] "relied" upon the figures contained in a Lanier expert report to conclude that a 12-pile steel pipe cluster dolphin had a useful life of 40 years for purpose of straight-line depreciating a St. Bernard Parish Water & Sewer Commission damages claim.[34]

---

[27] *Deloach Marine Servs., LLC v. Marquette Transportation Co., LLC*, No. CV 17-2970, 2019 WL 498948, at *2 (E.D. La. Feb. 8, 2019) (Vance, J.) (quoting *Colorificio Italiano Max Meyer, S.P.A. v. S/S Hellenic Wave*, 419 F.2d 223, 225 (5th Cir. 1969)).
[28] See *Colorificio Italiano Max Meyer, S.P.A. v. S/S Hellenic Wave*, 419 F.2d 223, 225 (5th Cir. 1969).
[29] *Kumho Tire*, 526 U.S. at 152; see also *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002).
[30] *Id*.
[31] Exhibit "H", GLPC Report (27 Dec. 2023).
[32] *See Crescent Towing & Salvage Co., Inc. v. M/V CHIOS BEAUTY*, Civ. No. 05-4207, 2008 WL 3850481, *10 (E.D. La. Aug. 14, 2008) (Duval, Jr., J.) ("Because the mooring dolphins and pilings were not new at the time of the loss, the replacement costs must be depreciated to reflect the remaining useful life of the dolphins and pilings."); *Campania Minera Caopas, S.A. de C.V. v. M/V CSL ACADIAN*, No. 07-04722, 2009 WL 585856 (N.D. Cal. March 6, 2009) ("[T]he record contains no evidence identifying the useful life or rate of depreciation of the dolphin or the terminal. As explained, plaintiff evidenced its out-of-pocket expenses for the repairs, it is defendants who urge that any recovery be reduced by the facility's remaining useful life yet neither side provided evidence on the subject. A forty-year useful life is adopted.").
[33] No. 95-1406, 1997 WL 96377 (E.D. La. Mar. 4, 1997).
[34] Exhibit "H", GLPC Report (27 Dec. 2023).

Indeed, this 40-year depreciation period is also the useful life utilized by the expert retained by the Greater Lafourche Port Commission to opine on and support its dolphin damages valuation claim related to this same Breakaway Incident.[35]

Mr. O'Brien's opinion that the dolphins "could have been returned to 'like new' condition with a maintenance project"[36] of unspecified quality, cost, or length of time is sophomoric and deficient to satisfy the burdens required of opinion testimony on technical and scientific subjects. For a proffered engineer to simply omit from his report an accounting for depreciation of aged material in undeniable disrepair is an exemplar of missing arguably the most important aspect of the extent to which property damages are recoverable within this federal circuit. This proves him to be unqualified to testify regarding depreciation and useful life.

*Mr. O'Brien's proffered testimony is <u>not</u> based on sufficient facts or data*.[37] As detailed above, Mr. O'Brien did not consider facts crucial to any useful life analysis. Again, he simply assumed the dolphins "could have been returned to 'like new' condition with a maintenance project"[38] without accounting for the fact that C-Port acknowledged it had "no way of knowing"[39] whether or the extent to which the damage to any of these dolphins preexisted the hurricane, and was "not made aware"[40] of the extent to which the dolphins were damaged and deteriorated prior to Hurricane Zeta.

In forming this opinion, Mr. O'Brien also ignored the heavy wasting and thinning, along with fractures and tears, that was noted as preexisting the Breakaway Incident by all concerned.[41] He, likewise, did not take into consideration the efforts and expense that would have been required

---

[35] Exhibit "H", GLPC Report (27 Dec. 2023).
[36] Exhibit "B", Lanier Report (27 Dec. 2023).
[37] Fed. R. Evid. 702(b).
[38] Exhibit "B", Lanier Report (27 Dec. 2023).
[39] Exhibit "E", C-Port Corporate Deposition Transcript, 95:25-96:9.
[40] Exhibit "E", C-Port Corporate Deposition Transcript, 83:5-9.
[41] *See* Exhibit "F", Lanier Letter (16 Dec. 2020); Exhibit "G", DLS Report (17 Jan. 2025).

of C-Port to return the dolphins to "like new" condition before Hurricane Zeta, when C-Port had no planned maintenance schedule for the dolphins and only the belief that the dolphins had been sandblasted and painted the dolphins on one occasion over the 20-plus preceding years—and at a quoted cost greater than C-Port's annual revenue for the dolphins.[42]

The record evidence supports that maintaining the dolphins was cost prohibitive to C-Port, such that no credence can be given to an opinion that those dolphins "could have been returned to 'like new' condition with a maintenance project."[43] Indeed, C-Port did not even maintain insurance on the dolphins, perhaps because they were uninsurable in their deteriorated state. In any event, because the premise that the dolphins could have been returned to like new by a maintenance project is flawed—any opinions derived from that premise, including any opinions Mr. O'Brien may have pertaining more particularly to depreciation or use of life, are also inherently flawed and unreliable and should be excluded.

Mr. O'Brien's proffered testimony *is not the product of reliable principles and methods*.[44] Based on the foregoing, Mr. O'Brien's opinions are not sufficiently reliable to survive scrutiny under Rule 702 of the Federal Rules of Evidence. As Rule 702 makes clear, while required, it is not sufficient that an expert be qualified based upon knowledge, skill, experience, training, or education to give opinions in a particular subject area. Rather, after determining whether the expert is qualified, the proffered opinions must be assessed for reliability.[45]

To perform its "gatekeeper" function, this Honorable Court must assess the reasoning and methodology underlying Mr. O'Brien's opinion and determine whether it is both scientifically

---

[42] Exhibit "D", E&L Quote (20 June 2012); *see also* Exhibit "C", C-Port Omnibus Discovery Responses (9 Sept. 2022). C-Port's Corporate Representative testified that this quoted work was accomplished, but no further invoices, proofs of payment or other documentation of the work have been produced.
[43] Exhibit "B", Lanier Report (27 Dec. 2023).
[44] Fed. R. Evid. 702(c).
[45] *Daubert*, 509 U.S. at 589.

valid and applicable to a particular set of facts.[46] "It is the specific relationship between an expert's method, the proffered conclusions, and the particular factual circumstances of the dispute that renders testimony both reliable and relevant."[47] Here, C-Port has not and cannot demonstrate "that the process by which [Mr. O'Brien] derived his … opinions is reliable."[48]

The fundamental problem is that Mr. O'Brien has ignored without reasons the "industry accepted typical service life" for steel mooring dolphins of 40 years[49] in favor of a nonsensical opinion that these dolphins could have been returned to "like new" by C-Port before the hurricane. Rule 702 requires more than the fantasy Mr. O'Brien is offering to give the Court where depreciation and useful life in a property damage case are ignored, so his testimony should be excluded from this trial.

> b. <u>C-Port's Non-Retained Experts should be excluded from testify regarding depreciation or the useful life of the C-Port mooring dolphins at trial.</u>

Fundamentally, C-Port was required to show and has not shown that Rule 26(a)(2)(C) applies to the Lanier, GIS, Sealevel, and Low Land representatives it has designated as non-retained experts to exempt them from producing expert reports under Rule 26(a)(2)(B).[50]

The Advisory Committee Notes provide the following guidance:

*Subdivision (a)(2)(C).* Rule 26(a)(2)(C) is added to mandate summary disclosures of the opinions to be offered by expert witnesses who are not required to provide reports under Rule 26(a)(2)(B) and of the facts supporting those opinions…

A witness who is not required to provide a report under Rule 26(a)(2)(B) may both testify as a fact witness and also provide expert testimony under Evidence Rule 702, 703, or 705. Frequent examples include physicians or other health care professionals and employees of a party who do not regularly provide expert

---

[46] *Id.* at 592-93.
[47] *RCHFU, LLC v. Marriott Vacations Worldwide Corp.*, 16-1301, 2020 WL 2839302, *2 (D. Colo. June 1, 2020) (where the court found the expert's opinions regarding profits "unreliable because he fail[ed] to distinguish profits allegedly resulting from the affiliation and profits allegedly resulting from conduct predating the affiliation," and "did not calculate separate figures for disgorgement of profits attributed specifically to th[at] affiliation.").
[48] *Id.*
[49] Exhibit "H", GLPC Report (27 Dec. 2023).
[50] *Skyeward Bound Ranch v. City of San Antonio*, No. 10-0316, 2011 WL 2162719, at *2 (W.D. Tex. June 1, 2011).

11

>  testimony. Parties must identify such witnesses under Rule 26(a)(2)(A) and provide the disclosure required under Rule 26(a)(2)(C). The (a)(2)(C) disclosure obligation does not include facts unrelated to the expert opinions the witness will present.[51]

Courts have taken this guidance to mean that Rule 26(a)(2)(C) is confined to an expert "with firsthand factual knowledge about the case"[52] or testifying only to opinions that arise from his or her "ground-level involvement in the events giving rise to the litigation."[53] As a result, Rule 26(a)(2)(C) experts may not offer opinions that were not developed from their "personal observations."[54]

Here, none of the witnesses C-Port has designated as non-retained experts is a health professional or employee of C-Port. Further, C-Port is seemingly asking the THOR Interests to surmise (but has not established) from Lanier's and GIS' invoices and Sealevel's and Low Land's bids that these designated individuals or representatives have first-hand factual knowledge of this case sufficient to escape the requirement that they submit a full expert report under Rule 26(a)(2)(B).

Even assuming Rule 26(a)(2)(C) applies, it nonetheless requires that a party provide a written disclosure, in lieu of a report, stating "(i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and (ii) a summary of the facts and opinions to which the witness is expected to testify." A Rule 26(a)(2)(C) disclosure "need not be extensive," but it must include "an abstract, abridgement, or compendium of the opinion and facts supporting the opinion."[55]

---

[51] Fed. R. Civ. Proc. 26(a)(2)(C).
[52] *Id*.
[53] *Tajonera v. Black Elk Energy Offshore Operations, L.L.C.*, No. 13-0550, 2016 WL 3180776, at *7 (E.D. La. June 7, 2016).
[54] *Platt v. Holland Am. Line Inc.*, No. 20-00062, 2023 WL 2928348, at *3 (W.D. Wash. Apr. 13, 2023).
[55] *Causey v. State Farm Mut. Auto. Ins. Co*., 2018 WL 2234749, at *2 (E.D. La. May 16, 2018) (internal quotation omitted; emphasis in original).

In its disclosures, C-Port has stated only that these individuals and "representatives are experts in marine construction and may testify regarding the damage to the mooring dolphins/fixed structures, repair/replacement, useful life, and any costs or expenses associated with same."[56] This is insufficient.

Simply "identif[ying] the subject matter"[57] of the proffered testimony or "merely stat[ing] the topics of the opinions to which the expert will testify, without stating any view or judgment on such topics—e.g., an actual opinion—does not satisfy [26](a)(2)(C)."[58]

Rule 26(a)(2)(C) requires C-Port to have provided THOR Interests with "notice of the facts and opinions"[59] of these non-retained experts, "information to prove [their] reliability as an expert witness,"[60] along with enough details to provide THOR Interests "the opportunity to prepare for effective cross-examination and to arrange for testimony from other experts, if necessary." [61] To comply with these requirements, "the disclosures must include 'a brief account of the [expert's] main opinions,' including the expert's 'view or judgment regarding a matter that affects the outcome of the case,' and a brief account in summary form of the main facts directly related to the disclosed opinions."[62]

No such disclosures have been made in this case.[63] The information supplied to the THOR Interests does not satisfy the requirements for witnesses who are not required to submit an expert

---

[56] Exhibit "A", C-Port Expert Disclosures (27 Dec. 2023).
[57] *Skyeward Bound*, 2011 WL 2162719, at *2.
[58] L*ittle Hocking Water Ass'n, Inc. v. E.I. DuPont de Nemours & Co.*, No. 09-1081, 2015 WL 1105840, at *6 (S.D. Ohio Mar. 11, 2015).
[59] *Skyeward Bound*, 2011 WL 2162719, at *2; see also *Causey*, 2018 WL 2234749, at *1.
[60] *Id*.
[61] *Causey*, at *2.
[62] *Sec. & Exch. Comm'n v. Nutmeg Grp., LLC*, No. 09-1775, 2017 WL 4925503, at *3 (N.D. Ill. Oct. 31, 2017)(citing L*ittle Hocking Water Ass'n, Inc. v. E.I. DuPont de Nemours & Co.*, No. 09-1081, 2015 WL 1105840, at *6 (S.D. Ohio Mar. 11, 2015).
[63] Courts have repeatedly held that disclosure of business records, like medical records or in this instance invoices and bids, is insufficient to satisfy the disclosure standard. *Davis v. Liberty Mut. Fire Ins. Co.*, No. 22-1538, 2023 WL 5815779, at *6 (E.D. La. June 22, 2023) (citing *Rodgers v. Hopkins Enters. of Ms., LLC*, No. 17-6305, 2018 WL

report." Consequently, Timothy Duncan and any other representatives of Lanier; Matt Dubois and any other representative of GIS; any representative of Sealevel (no actual person was ever identified in C-Port's disclosures); and David Robichaux and any other representative Low Land all must be excluded from testifying at trial.[64]

Indeed, exclusion of undisclosed expert testimony is automatic and mandatory under Rule 37(c)(1) of the Federal Rules of Civil Procedure unless the nondisclosure was substantially justified or is harmless. C-Port bears the burden of showing its nondisclosures were justified or harmless, which they were not. THOR Interests may have "some understanding" of what these individuals "might say," but C-Port's disclosures have not even given THOR Interests enough information to assess whether the testimony to be offered may be objectionable as unreliable under *Daubert* or unnecessarily duplicative in what is already expected to be a protracted trial.[65]

### 3. Conclusion

Mr. O'Brien is not qualified to render the opinions expressed in his report and his conclusions regarding useful life of the mooring dolphins are not sufficiently reliable to survive scrutiny under Rule 702 of the Federal Rules of Evidence. As a result, this Motion in Limine to exclude him from testifying regarding useful life or depreciation at trial should be granted.

---

3104288, at *2 (E.D. La. June 21, 2018)) (Vance, J.); see also *Williams v. State*, 2015 WL 5438596, at *3–4 (M.D. La. Sept. 14, 2015).

[64] *Skyeward Bound*, 2011 WL 2162719, at *4. Indeed, exclusion of undisclosed expert testimony is automatic and mandatory under Rule 37(c)(1) of the Federal Rules of Civil Procedure unless the nondisclosure was substantially justified or is harmless. C-Port bears the burden of showing its nondisclosures were justified or harmless, which they were not. THOR Interests may have "some understanding" of what these individuals "might say", but C-Port's disclosures have not even given THOR Interests enough information to assess whether the testimony to be offered may be objectionable as unreliable under *Daubert* or unnecessarily duplicative in what is already expected to be a protracted trial.

[65] In the alternative only, these individuals and representatives of Lanier, GIS, Sealevel and Low Land, should be allowed to testify only as fact witnesses but should not be allowed to offer opinion testimony as experts regarding matters such as causation, depreciation, or useful life.

Likewise, C-Port has not satisfied the requirements for Mr. O'Brien or the other individuals identified as non-retained experts (Timothy Duncan and any other representatives of Lanier; Matt Dubois and any other representative of GIS; any representative of Sealevel; and David Robichaux and any other representative Low Land) to qualify as such under Rule 26(a)(2)(C), such that this Motion in Limine to exclude those individuals from testifying regarding useful life or depreciation at trial should also be granted.

Respectfully submitted:

*/s/ Gavin H. Guillot*
Gavin H. Guillot, T.A. (#31760)
Salvador J. Pusateri (#21036)
Aaron B. Greenbaum (#31752)
Meredith W. Blanque (#32346)
Jacob A. Altmyer (#36352)
Jonathan D. Parker (#35275)
**PUSATERI, JOHNSTON, GUILLOT & GREENBAUM, LLC**
1100 Poydras Street, Suite 2250
New Orleans, LA 70163
Telephone: 504-620-2500
Facsimile: 504-620-2510
Gavin.Guillot@pjgglaw.com
Salvador.Pusateri@pjgglaw.com
Aaron.Greenbaum@pjgglaw.com
Meredith.Blanque@pjgglaw.com
Jacob.Altmyer@pjgglaw.com
Jonathan.Parker@pjgglaw.com
**ATTORNEYS FOR MODERN AMERICAN RAILROAD SERVICES, L.L.C., AND SHORE OFFSHORE SERVICES, LLC**