

**EXHIBIT**

**C**
_____

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **ALL COAST, LLC** | **CIVIL ACTION No. 21-0258 c/w 21-337, 21-464, 21-822, 21-1968, 21-1969, 21-1981, 21-1982, 21-2075** |
| **VERSUS** | **Pleading applies to ALL CASES** |
| **SHORE OFFSHORE SERVICES, LLC,** *et al.* | **JUDGE: JAY C. ZAINEY** |
| | **MAGISTRATE: KAREN WELLS ROBY** |
| | **SECTION: A(4)** |

## C-PORT, LLC'S ANSWERS TO OMNIBUS INTERROGATORIES

To:    **Modern American Railroad Services, LLC and Shore Offshore Services, LLC ("THOR Interests")**, through their counsel of record: Meredith W. Blanque, PUSATERI, JOHNSTON, GUILLOT & GREENBAUM, LLC, 1100 Poydras Street, Suite 2250, New Orleans LA 70163.

**Crosby Tubs, LLC ("CROSBY ENDEAVOR Interests")**, through their counsel of record: Sara B. Kuebel, JONES WALKER, LLP, 201 St. Charles Avenue – 48th Floor, New Orleans, LA 70170.

**Martin Operating Partnership, L.P. and Martin Energy Services LLC ("Martin Interests")**, through their counsel of record: Michael W. McMahon, DAIGLE FISSE & KESSENICH, 227 Highway 21, Madisonville, LA 70447.

Defendant, C-Port, LLC ("C-Port"), pursuant to the Federal Rules of Civil Procedure and the Consent Scheduling Order (Rec. Doc. 184), serves the following Objections and Answers to the Omnibus Interrogatories propounded by Modern American Railroad Services, LLC, Shore Offshore Services, LLC, Crosby Tugs, LLC, Martin Operating Partnership, LP, and Martin Energy Services LLC.  C-Port reserves the right to amend and/or supplement these objections and answers in accordance with the Federal Rules of Civil Procedure.

**INTERROGATORY NO. 1:**

In Paragraph 2 of your Claims, you state that you own "multiple berths, mooring bollards, mooring dolphins, and other related property and facilities in Port Fourchon, Louisiana, in and along Bayou Lafourche channel." Please identify with specificity any property, including mooring dolphins, structures or equipment, that you claim sustained damage due to the Incident and for which you are now seeking damages.

**ANSWER TO INTERROGATORY NO. 1:**

C-Port is seeking to recover damages arising out of the physical damage to twelve mooring dolphins in Bayou Lafourche as a result of the D/B THOR's allision with the M/V HARVEY SEAS on October 28, 2020.

**INTERROGATORY NO. 2:**

For each and every mooring dolphin and other property identified in your Answer to Interrogatory No. 1, please provide the names and addresses of all persons and/or entities holding any ownership interest in the property and their percentage of ownership interest in the property at the time of the Incident.

**ANSWER TO INTERROGATORY NO. 2:**

At all material times, the twelve mooring dolphins were owned by C-Port, LLC, 16201 East Main Street, Cut Off, Louisiana 70345.

**INTERROGATORY NO. 3:**

For each and every mooring dolphin and other property identified in your Answer to Interrogatory No. 1, please identify with specificity the manner in which such property is classified, inventoried, labeled, and/or referenced by you, and include a legend for any label, name, number and/or abbreviation.

**ANSWER TO INTERROGATORY NO. 3:**

The mooring dolphins were referenced by number, one (1) through twelve (12).

**INTERROGATORY NO. 4:**

For each and every mooring dolphin and other property identified in your Answer to Interrogatory No. 1, please identify with specificity the component parts of that property, including but not limited to, the caps, pilings, fenders, and/or bollards, and materials and measurements of the same.

**ANSWER TO INTERROGATORY NO. 4:**

C-Port objects to this request to the extent it seeks information already in the possession of the requesting parties.  The parties participated in an inspection on July 9, 2021.  Subject to and without waiving the foregoing objection, the mooring dolphins generally consisted of a plumb pile, two batter piles (upstream and downstream), and an upper section (steel plate, mooring bollard, cap plate).  For further detail, please see the Original Plans for the Mooring Bollards, attached.

**INTERROGATORY NO. 5:**

For each and every mooring dolphin and other property identified in your Answer to Interrogatory No. 1, please state the date when that property was originally constructed and/or placed into service.

**ANSWER TO INTERROGATORY NO. 5:**

Upon information and belief, the Greater Lafourche Port Commission granted authorization to use the mooring dolphins in 1997 and they were constructed and/or placed into service following that authorization.

PD.37199649.1

**INTERROGATORY NO. 6:**

For each and every mooring dolphin and other property identified in your Answer to Interrogatory No. 1, please identify with specificity the name, address, and phone number of the business entity(ies) that manufactured, constructed, and/or installed that property.

**ANSWER TO INTERROGATORY NO. 6:**

C-Port has not identified information responsive to this interrogatory and will supplement this answer when, and if, relevant information that is responsive to this interrogatory is identified.

**INTERROGATORY NO. 7:**

Please identify with specificity the expected useful life of each and every mooring dolphin and other property identified in your Answer to Interrogatory No. 1.

**ANSWER TO INTERROGATORY NO. 7:**

C-Port objects to this request as premature as discovery is beginning and to the extent it seeks expert opinion. C-Port will provide expert reports in accordance with this Court's Orders, the Scheduling Order, and the Federal Rules of Civil Procedure. Subject to and without waiving the foregoing objections, C-Port has not identified information responsive to this interrogatory and will supplement this answer when, and if, such information is identified.

**INTERROGATORY NO. 8:**

For each and every mooring dolphin and other property identified in your Answer to Interrogatory No. 1, please identify with specificity any modification, maintenance, repair, replacement, renewal, renovation, improvement, and/or decommission work done since that mooring dolphin or property's original construction or placement into service, and identify with specificity the date(s) in which the work was performed, the scope of the work performed, the reason the work was performed, and the name, address, and phone number of the business entity(ies) that performed the work.

- 4 -

**ANSWER TO INTERROGATORY NO. 8:**

C-Port objects to this interrogatory as vague and overly broad in seeking information on "any modification, maintenance, repair, replacement, renovation, improvement and/or decommission work" ever performed on any of the mooring dolphins. Subject to and without waiving the foregoing objections, E&L Enterprises, Inc., 120 Airport Road, Galliano, LA 70345, Telephone: 985-475-5271, performed maintenance work (blasting and painting) on the twelve mooring dolphins in response to its June 2012 quote. Further, and due to the physical damage to twelve mooring dolphins as a result of the D/B THOR's allision with the M/V HARVEY SEAS on October 28, 2020, the mooring dolphins were removed by contractor, Grand Isle Shipyard, Inc. ("GIS"), 18838 Highway 3235, Galliano, Louisiana 70345, Telephone: 985-475-5238, with work beginning February 22, 2021.

**INTERROGATORY NO. 9:**

Please identify any and all inspections and/or surveys performed on the mooring dolphins and/or any other property identified in your Answer to Interrogatory No. 1 within the ten (10) calendar years before the Incident, and for each inspection and/or survey, identify the name of the inspection company, date of the inspection, name of the inspector, reason for the inspection, findings from the inspection, and any other relevant information related to the inspection.

**ANSWER TO INTERROGATORY NO. 9:**

Upon information and belief, E&L Enterprises, Inc. 120 Airport Road, Galliano, LA 70345, Telephone: 985-475-5271, inspected the mooring dolphins in connection with providing their June 2012 quote for maintenance work (blasting and painting) on the twelve mooring dolphins.

- 5 -

**INTERROGATORY NO. 10:**

Please identify the person(s) most knowledgeable about the pre-Incident condition and maintenance of the mooring dolphins and/or any other property identified in your Answer to Interrogatory No. 1.

**ANSWER TO INTERROGATORY NO. 10:**

James Guidry, General Manager, who may be contacted through undersigned counsel.

**INTERROGATORY NO. 11:**

Please identify any certification, license, permit, authorization, registration, lease, or any other type of official document in effect at the time of the Incident that governed the placement, use and/or operation of the mooring dolphins and any other property identified in your Answer to Interrogatory No. 1.

**ANSWER TO INTERROGATORY NO. 11:**

Upon information and belief, the Greater Lafourche Port Commission granted authorization to use the mooring dolphins in 1997.

**INTERROGATORY NO. 12:**

Please state when you first learned that the mooring dolphins and/or any other property identified in your Answer to Interrogatory No. 1 had sustained damage allegedly as a result of the Incident, and identify each and every step that you took to mitigate such damage.

**ANSWER TO INTERROGATORY NO. 12:**

C-Port learned of the damage to the mooring dolphins following the Incident.

**INTERROGATORY NO. 13:**

Please identify the nature of the "extensive physical damages" that your property allegedly sustained due to the alleged allision between the M/V HARVEY SEAS and D/B THOR, as stated in Paragraph 14 and Paragraph 15 of your Claims.

- 6 -

**ANSWER TO INTERROGATORY NO. 13:**

C-Port objects to this request as vague in seeking the "nature" of the physical damage to the mooring dolphins and because this information is already in hand given the post-incident joint inspection and survey in which all parties participated. C-Port further objects to the extent this request seeks expert opinion. C-Port will provide expert reports in accordance with this Court's Orders, the Scheduling Order, and the Federal Rules of Civil Procedure. Subject to and without waiving the foregoing objections, please see photos of the damaged mooring dolphins, attached.

**INTERROGATORY NO. 14:**

Please identify any and all damage surveys, inspections, appraisals, and/or any other actions performed to assess, describe, identify and/or catalog the damage to the mooring dolphins and any other property identified in your Answer to Interrogatory No. 1 after the Incident.

**ANSWER TO INTERROGATORY NO. 14:**

A joint inspection was conducted on July 9, 2021. Please also see the photos of the damaged mooring dolphins, referenced in answer to Interrogatory No. 13.

**INTERROGATORY NO. 15:**

Please identify, by category (e.g., repair costs, loss of use, expenses, etc.), the amount of damages claimed by you in this lawsuit and, for each amount listed, provide a detailed explanation of the calculations performed to determine the damages claimed. Your Answer should include, but not be limited to, the following categories, as stated in Paragraphs 14 and 15 of your Claims:

    a)      Physical damage to and/or loss of the mooring dolphins owned by C-Port and/or the C-Port Facility;

    b)      Business interruption;

    c)      Repair costs;

    d)      Survey expenses;

e)      Contractor expenses; and

f)      Employee expenses.

**ANSWER TO INTERROGATORY NO. 15:**

C-Port objects to the extent this request seeks expert opinion.  C-Port will provide expert reports in accordance with this Court's Orders, the Scheduling Order, and the Federal Rules of Civil Procedure.  Subject to and without waiving the foregoing objections, please see the Quote from Grand Isle Shipyard, which includes a breakdown of costs and expenses related to the removal and replacement of the damaged mooring dolphins, attached.  Additional information regarding survey expenses, employee expenses, and business interruption has been requested and will be provided upon receipt.

**INTERROGATORY NO. 16:**

Please state the name, last known address, telephone number, employer, and position with such employer of all persons who performed calculations of the damages claimed by you in this lawsuit, and describe in detail the calculations performed by each such person.

**ANSWER TO INTERROGATORY NO. 16:**

Please see answer to Interrogatory No. 15.

**INTERROGATORY NO. 17:**

Please identify any and all bids and/or proposals you requested and/or obtained for repairs or replacement of each and every item identified in your Answer to Interrogatory No. 1, indicating for each such bid or proposal, the person(s) responsible for soliciting bids and the bidder's name, address, and the scope and amount of the bid.

**ANSWER TO INTERROGATORY NO. 17:**

Please see answer to Interrogatory No. 15.  A breakdown of the additional information requested in this interrogatory appears in the GIS Quote.

**INTERROGATORY NO. 18:**

Please state the annual cost incurred for any and all maintenance and/or repairs conducted on each item identified in your Answer to Interrogatory No. 1 for each of the five (5) calendar years preceding the Incident and for 2020 prior to the incident.

**ANSWER TO INTERROGATORY NO. 18:**

C-Port has not identified information responsive to this request.

**INTERROGATORY NO. 19:**

As to each item identified in your Answer to Interrogatory No. 1, describe any damage left unrepaired or modification, maintenance, replacement, renewal, renovation, or improvement work that you had planned or were planning (but had not yet completed) at the time of the Incident.

**ANSWER TO INTERROGATORY NO. 19:**

C-Port has not identified information responsive to this request.

**INTERROGATORY NO. 20:**

To the extent you contend that you lost any revenue as a result of the Incident, state every fact you contend supports such claim including, but not limited to, any and all dates on which you contend your operations were impaired due to the Incident and the nature of that impairment.

**ANSWER TO INTERROGATORY NO. 20:**

C-Port's mooring dolphins were damaged beyond repair as a result of the Incident on October 28, 2020.  Due to the extensive damage, the dolphins could not be used or leased to others. At the time of the incident, C-Port leased dolphins to Anadarko and others at a rate of $50 per day, per dolphin.  C-Port averaged annual revenue from the dolphins of approximately $55,000.

**INTERROGATORY NO. 21:**

Please identify the person(s) most knowledgeable about the operation and use of the mooring dolphins and the scheduling and/or contracting of the same at the time of the Incident.

**ANSWER TO INTERROGATORY NO. 21:**

See Answer to Interrogatory No. 10.

**INTERROGATORY NO. 22:**

Please identify by name, title/position, address, and telephone number each and every person involved in the positioning of HARVEY SEAS and any other vessel(s) secured to your mooring dolphins in preparation for and during Hurricane Zeta.

**ANSWER TO INTERROGATORY NO. 22:**

C-Port objects to the extent Interrogatory No. 22 suggests that it had any "involvement" in the position of the HARVEY SEAS or any other vessels besides leasing/renting the space. Subject to said objection, James Guidry who may only be contacted through undersigned counsel.

**INTERROGATORY NO. 23:**

To the extent you contend that you lost any revenue as a result of the Incident, identify the source of that revenue, and provide an accounting of the gross revenue and profit or loss you realized from operation of the mooring dolphins and any other property identified in your Answer to Interrogatory No. 1 in each of the five (5) calendar years preceding the Incident and in 2020 prior to the Incident.

**ANSWER TO INTERROGATORY NO. 23:**

See answer to Interrogatory No. 20.

**INTERROGATORY NO. 24:**

To the extent you contend that you lost any revenue as a result of the Incident, please provide detailed information concerning the location and availability of all other available mooring locations owned and/or operated by you in Port Fourchon, Louisiana, in and along Bayou Lafourche channel during the period of time for which you are claiming loss of use.

**ANSWER TO INTERROGATORY NO. 24:**

- 10 -

C-Port does not have other mooring dolphins available in the area.

## INTERROGATORY NO. 25:

To the extent you contend that you incurred additional operating expenses as a result of the Incident, state the type and amount of each expense and state why you contend it is related to the Incident.

## ANSWER TO INTERROGATORY NO. 25:

None.

## INTERROGATORY NO. 26:

As to each item identified in your Answer to Interrogatory No. 1, please describe any and all events that have occurred since that item(s) was constructed and/or placed into service that resulted in damage to that item, providing for each such event the date, a brief description of the event, and the nature and extent of any damage.

## ANSWER TO INTERROGATORY NO. 26:

C-Port objects to this interrogatory as vague and ambiguous in its use of the term, "events." Subject to and without waiving the foregoing C-Port has not identified information responsive to this request and will supplement when, and if, such information is identified.

## INTERROGATORY NO. 27:

As to each item identified in your Answer to Interrogatory No. 1, please identify any lawsuits to which you have ever been a party which related, in whole or in part, to that item, providing for each such lawsuit the presiding court, docket number, a brief description of the claim asserted, and the final resolution.

## ANSWER TO INTERROGATORY NO. 27:

None.

**INTERROGATORY NO. 28:**

Describe all efforts you have taken to mitigate the losses included in your claim, including but not limited to equipment, labor, and procedures added to your operations to avoid or work around problems created by the Incident.

**ANSWER TO INTERROGATORY NO. 28:**

C-Port paid to remove the damaged mooring dolphins.

**INTERROGATORY NO. 29:**

Describe any way in which your normal operations, procedures, or practices have changed as a result of the Incident.

**ANSWER TO INTERROGATORY NO. 29:**

C-Port has not changed its operations, procedures, and practices as a result of the breakaway of the D/B THOR.

**INTERROGATORY NO. 30:**

Please identify with specificity any vessel(s) secured to any of your mooring dolphins in Port Fourchon on or about 29 August 2021, and identify to which mooring dolphins said vessel(s) was secured.

**ANSWER TO INTERROGATORY NO. 30:**

C-Port objects to this interrogatory to the extent it seeks information that post-dates the October 28, 2020 incident, post-dates the removal of the damaged mooring dolphins, and that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

**INTERROGATORY NO. 31:**

Describe any and all work done through the date of your Answers to repair damage to any item identified in your Answer to Interrogatory No. 1, including but not limited to design, planning,

permitting, mobilization, demolition, cleanup, temporary repairs, permanent repairs, and demobilization.

**ANSWER TO INTERROGATORY NO. 31:**

C-Port has removed the damaged mooring dolphins.

**INTERROGATORY NO. 32:**

Describe any additional or future work that you expect or intend to do to repair damage to any item identified in your Answer to Interrogatory No. 1, including but not limited to design, planning, permitting, mobilization, demolition, cleanup, temporary repairs, permanent repairs, and demobilization.

**ANSWER TO INTERROGATORY NO. 32:**

Please see the GIS Quote, previously referenced and attached in response to Interrogatory No. 15.

**INTERROGATORY NO. 33:**

Describe all efforts made by you to procure a substitute or replacement for the mooring dolphins and/or other property identified in your Answer to Interrogatory No. 1 at any time, including, but not limited to, at any time after the Incident.

**ANSWER TO INTERROGATORY NO. 33:**

C-Port has gotten a quote Grand Isle Shipyard regarding replacement of the mooring dolphins.

**INTERROGATORY NO. 34:**

For each and every mooring dolphin and other property identified in your Answer to Interrogatory No. 1, please explain whether you have depreciated the item according to any schedule, including any schedule on tax returns and internal bookkeeping documents, and identify the following:

- 13 -

a)      The purchase price of the property, the cost of any improvements made since it was purchased, and the amount of any depreciation taken;

b)      The depreciation schedule for said item of property;

c)      Any documents, including tax returns and internal booking documents, that show the depreciation schedule of the property;

d)      The property's fair market value on the date of the Incident; and

e)      The property's fair market value on the date of the filing of your Claims.

**ANSWER TO INTERROGATORY NO. 34:**

C-Port has requested this information and this response will be supplemented when the information is received.

**INTERROGATORY NO. 35:**

Please identify by name, address, and telephone number, all insurer(s) that in any way provide(s) coverage for the damages that you are claiming in this lawsuit, including the policy number, named insured, policy limits, whether the policy is primary or excess, any payments that you have received that arises out of the Incident, and state whether you are self-insured and, if so, to what amount.

**ANSWER TO INTERROGATORY NO. 35:**

None.

**INTERROGATORY NO. 36:**

Please identify by name, address, and telephone number, all insurer(s) that in any way provide(s) coverage for the claims asserted against you in this lawsuit, including the policy number, named insured, policy limits, whether the policy is primary or excess, and identify all documentation reflecting communications between you and your insurance carrier and/or its representative relating to the claims made against you in this lawsuit.

- 14 -

**ANSWER TO INTERROGATORY NO. 36:**

C-Port objects to this request to the extent it seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. The claims pending against C-Port are baseless and C-Port, as the owner of fixed mooring dolphins damaged as a result of the breakaway of the D/B THOR denies all liability for the breakaway of the D/B THOR and its subsequent allision with the HARVEY SEAS.

**INTERROGATORY NO. 37:**

In Paragraph 10 and Paragraph 12 of your Claims, you state that "[t]he M/V HARVEY SEAS was secured to mooring dolphins owned by C-Port at or near the C-Port Facility," and in Paragraph 13 and Paragraph 14 of your Claims, you state that "the M/V HARVEY SEAS broke free from the dolphin to which it was moored." Please identify which mooring dolphins the M/V HARVEY SEAS was moored to at the time of the Incident and state whether any mooring dolphin broke when the M/V HARVEY SEAS allegedly broke free.

**ANSWER TO INTERROGATORY NO. 37:**

C-Port does not have information on the mooring arrangement of the M/V HARVEY SEAS. The fact that the dolphins were broken in the incident is evidenced by their condition afterwards.

**INTERROGATORY NO. 38:**

Please identify with specificity any other vessel(s) secured to your mooring dolphins on or about 28 October 2020, and identify to which mooring dolphins said vessel(s) was secured.

**ANSWER TO INTERROGATORY NO. 38:**

Aside from the M/V HARVEY SEAS, C-Port is not aware of any other vessels being moored to its mooring dolphins on October 28, 2020.

- 15 -

**INTERROGATORY NO. 39:**

Please identify any document, diagram, illustration, photograph, map, drawing, blueprint, or any other visual representation depicting the physical layout and/or configuration of the mooring dolphins that the M/V HARVEY SEAS and any other vessel(s) was moored to at the time of the Incident and any other property identified in your Answer to Interrogatory No. 1 that you claim was damaged.

**ANSWER TO INTERROGATORY NO. 39:**

Please see the following:

(1) Original Plans for the Mooring Bollards, referenced and attached in response to Interrogatory No. 4;

(2) Photos of the mooring dolphins produced in discovery, including photos of the damaged mooring dolphins referenced and attached in response to Interrogatory No. 13.

**INTERROGATORY NO. 40:**

Please describe the mooring arrangement of the M/V HARVEY SEAS at the time of the Incident, and identify the name, address, and contact number for the owner of all mooring equipment, lines, and any other property used to secure the M/V HARVEY SEAS at the time of the Incident.

**ANSWER TO INTERROGATORY NO. 40:**

C-Port does not have information responsive to this interrogatory.

**INTERROGATORY NO. 41:**

Please identify the factual basis for your statement that "[a]s a result of being hit by the D/B THOR, the M/V HARVEY SEAS broke free from the dolphin to which it was moored and

drifted down Bayou Lafourche, causing significant damage to at least a dozen C-Port mooring dolphins," as stated in Paragraph 13 and Paragraph 14 of your Claims.

**ANSWER TO INTERROGATORY NO. 41:**

Please see documents produced in discovery, including the documents produced by Harvey Gulf including the Witness Statement Form, HGIM-000998.

**INTERROGATORY NO. 42:**

Please identify any and all mooring agreements and/or contracts (oral or written) in place at the time of the Incident between you and the owner of the M/V HARVEY SEAS and any other vessel(s) secured to your mooring dolphins at the time of the Incident.

**ANSWER TO INTERROGATORY NO. 42:**

None.

**INTERROGATORY NO. 43:**

Please describe any and all storm preparations taken by you regarding the mooring dolphins and any other property identified in your Answer to Interrogatory No. 1 in advance of Hurricane Zeta.

**ANSWER TO INTERROGATORY NO. 43:**

The mooring dolphins were fixed to the bottom of Bayou Lafourche. They were immovable in all respects. As such, there were no "preparations" that could be taken in advance of Hurricane Zeta.

**INTERROGATORY NO. 44:**

Please describe any and all storm preparations taken by you regarding the mooring dolphins and any other property identified in your Answer to Interrogatory No. 1 in advance of Hurricane Ida.

**ANSWER TO INTERROGATORY NO. 44:**

- 17 -

See answer to Interrogatory No. 43.

**INTERROGATORY NO. 45:**

Please describe any and all representations that were made to the owner of the M/V HARVEY SEAS and/or any other vessel(s) secured to your mooring dolphins prior the Incident regarding the condition of the mooring dolphins and any other property identified in your Answer to Interrogatory No. 1.

**ANSWER TO INTERROGATORY NO. 45:**

None.

**INTERROGATORY NO. 46:**

Please identify with specificity the manner in which you surveilled the mooring dolphins and any other property identified in your Answer to Interrogatory No. 1 on or about 28 October 2020.

**ANSWER TO INTERROGATORY NO. 46:**

C-Port objects to this interrogatory as vague and ambiguous in seeking  information on the manner in which it "surveilled" the mooring dolphins.

**INTERROGATORY NO. 47:**

Please identify by name, date, and author all incident, accident, investigative, and/or root cause analysis reports completed by you or on your behalf in relation to the Incident.

**ANSWER TO INTERROGATORY NO. 47:**

None.

**INTERROGATORY NO. 48:**

If you or anyone on your behalf has taken any statements in relation to the Incident, please identify the name, title/position, address, and telephone number of any person who provided a

statement, the date of the statement, and the name, title/position, address, and telephone number of the person who took the statement.

## ANSWER TO INTERROGATORY NO. 48:

C-Port objects to this interrogatory to the extent it seeks to discovery information protected from disclosure by the attorney-work product doctrine.  Subject to and without waiving the foregoing objections, C-Port is not aware of any statements having been taken.

## INTERROGATORY NO. 49:

Please identify and describe any reprimands or disciplinary actions that were taken by you against any of your personnel as a result of the Incident.

## ANSWER TO INTERROGATORY NO. 49:

None.

Respectfully submitted,

**PHELPS DUNBAR LLP**

BY: _____
       Thomas Kent Morrison (Bar #25802)
       Colin B. Cambre (Bar #31083)
       Canal Place | 365 Canal Street, Suite 2000
       New Orleans, Louisiana 70130
       Telephone: 504 566 1311
       Facsimile: 504 568 9130
       Email: morrisok@phelps.com
       Email: colin.cambre@phelps.com

ATTORNEYS FOR C-PORT, LLC

- 19 -

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have on this 9th day of September, 2022, served a copy of the foregoing C-PORT, LLC's ANSWERS TO OMNIBUS INTERROGATORIES on counsel of record for all parties to this proceeding, by e-mail, facsimile and/or mailing same by United States mail, properly addressed and first class postage prepaid.

_____
Thomas Kent Morrison

- 20 -

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ALL COAST, LLC | **CIVIL ACTION No. 21-0258 c/w 21-337, 21-464, 21-822, 21-1968, 21-1969, 21-1981, 21-1982, 21-2075** |
| **VERSUS** | **Pleading applies to ALL CASES** |
| **SHORE OFFSHORE SERVICES, LLC,** *et al.* | **JUDGE: JAY C. ZAINEY** |
| | **MAGISTRATE: KAREN WELLS ROBY** |
| | **SECTION: A(4)** |

## C-PORT, LLC'S RESPONSES TO OMNIBUS REQUESTS FOR PRODUCTION OF DOCUMENTS

To:     **Modern American Railroad Services, LLC and Shore Offshore Services, LLC ("THOR Interests")**, through their counsel of record: Meredith W. Blanque, PUSATERI, JOHNSTON, GUILLOT & GREENBAUM, LLC, 1100 Poydras Street, Suite 2250, New Orleans LA 70163.

**Crosby Tubs, LLC ("CROSBY ENDEAVOR Interests")**, through their counsel of record: Sara B. Kuebel, JONES WALKER, LLP, 201 St. Charles Avenue – 48th Floor, New Orleans, LA 70170.

**Martin Operating Partnership, L.P. and Martin Energy Services LLC ("Martin Interests")**, through their counsel of record: Michael W. McMahon, DAIGLE FISSE & KESSENICH, 227 Highway 21, Madisonville, LA 70447.

Defendant, C-Port, LLC ("C-Port"), pursuant to the Federal Rules of Civil Procedure and the Consent Scheduling Order (Rec. Doc. 184), serves the following Objections and Responses to the Omnibus Requests for Production of Documents propounded by Modern American Railroad Services, LLC, Shore Offshore Services, LLC, Crosby Tugs, LLC, Martin Operating Partnership, LP, and Martin Energy Services LLC. C-Port reserves the right to amend and/or supplement these objections and responses in accordance with the Federal Rules of Civil Procedure.

1

**REQUEST FOR PRODUCTION NO. 1:**

Please produce and identify by bates number any and all photographs, films and/or video recordings of the Incident or any aspect thereof or your investigation of the Incident, including but not limited to recordings made by phone, tablet, camera, camcorder, video camera, smart device, CCTV, an/or surveillance device by you, on your behalf, from your property, and/or by any of your employees or agents.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 1:**

C-Port objects to this request for production to the extent it seeks visual media made by or at the direction of counsel, which is protected from disclosure by the work product doctrine. Subject to and without waiving the foregoing objection, please see the following:

1. Photos of the damaged mooring dolphins, previously referenced and produced in answer to Interrogatory No. 13.

2. Photos included in Lanier Daily Reports, attached *in globo*.

3. Video of Allision of DB Thor, attached.

**REQUEST FOR PRODUCTION NO. 2:**

Please produce and identify by bates number any and all data recordings, including but not limited to any VDR, AIS, ECDIS, GPS, Rose Point, VHF radio and/or radar recordings which in any way relate to or depict the subject Incident or any aspect thereof by you, on your behalf, from your property, and/or by any of your employees or agents, including but not limited to any such recordings from the FANTASY ISLAND, MR. COLBY and/or HARVEY SEAS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 2:**

None.

PD.37210406.1

**REQUEST FOR PRODUCTION NO. 3:**

Please produce and identify by bates number any and all incident reports, including but not limited to internal investigative reports, root cause analyses, safety memoranda and/or reports to the Coast Guard and/or any other third party or government agency related to the subject Incident or any aspect thereof.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 3:**

Aside from the Lanier Daily Reports previously produced in discovery, none.

**REQUEST FOR PRODUCTION NO. 4:**

Please produce and identify by bates number copies of any and all statements, whether they are recorded, written, transcribed, or of any other nature, which are in your possession which relate to the Incident and include all written statements taken by any and all employees who witnessed the events described in your Claims.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 4:**

None.

**REQUEST FOR PRODUCTION NO. 5:**

Please produce and identify by bates number any and all correspondence, including but not limited to letters, e-mails, texts, notices, memoranda, alerts and/or app chats, in any way relating to the Incident and/or the Derrick Barge THOR, whether in your possession or control or in the possession or control of any of your employees or agents.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 5:**

C-Port objects to this request for production to the extent it seeks correspondence written to or by undersigned counsel, which is protected from disclosure by the work product doctrine. Subject to and without waiving the foregoing objection, see documents produced in discovery, including Lanier Daily Reports and GIS Quote.

**REQUEST FOR PRODUCTION NO. 6:**

Please produce and identify by bates number all documents that identify the names and addresses of all persons or entities holding any ownership interest in the mooring dolphins and other items of property identified in your Answer to Interrogatory No. 1 and their percentage of ownership interest in the property at the time of the Incident.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 6:**

See Original plans, previously referenced and produced in response to Interrogatory 4 and GIS Quote, referenced and produced in connection with Interrogatory No. 15.

**REQUEST FOR PRODUCTION NO. 7:**

Please produce any document, diagram, illustration, photograph, map, schematic, drawing, blueprint, motion picture, video recording or any other visual representation depicting the physical layout and/or arrangement of the C-Port Facility, including the mooring dolphins and other items of property for which you are now seeking damages.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 7:**

See Original plans, previously referenced and produced in response to Interrogatory 4.

**REQUEST FOR PRODUCTION NO. 8:**

Please produce any document, diagram, illustration, photograph, map, schematic, drawing, blueprint, motion picture, video recording or any other visual representation depicting the mooring arrangement of the M/V HARVEY SEAS and any other vessel(s) moored to your dolphins at the time of the Incident, including, but not limited to, any document identifying the name, address, and contact number for the owner of all mooring equipment, lines, and any other property used to secure the M/V HARVEY SEAS and any other vessel(s) at the time of the Incident.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 8:**

None.

**REQUEST FOR PRODUCTION NO. 9:**

Please produce and identify by bates number any documentation and/or recording memorializing any and all communication between you and the owner of the M/V HARVEY SEAS and any other vessel(s) moored to your dolphins at the time of the Incident and in any way related to that vessel's use of the mooring dolphins, the condition of the mooring dolphins, Hurricane Zeta, the subject Incident, and/or the damages you claim as a result thereof.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 9:**

None.

**REQUEST FOR PRODUCTION NO. 10:**

Please produce and identify by bates number any agreement, contract, invoice, receipt, bill, and/or terms and conditions related to the M/V HARVEY SEAS and any other vessel(s) use of your mooring dolphins at the time of the Incident.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 10:**

See Anadarko C-Port Lease Renewal, dated August 1, 2017, attached.

**REQUEST FOR PRODUCTION NO. 11:**

Please produce and identify by bates number copies of all inspection reports, surveys, maintenance logs, complaints, testing results, repair certificates, and any other type of documentation relating to surveys, inspections, testing, maintenance, repairs, replacements, renewals, modifications, improvements, decommissions, or any other type of work performed on the mooring dolphins and any other property identified in your Answer to Interrogatory No. 1 within the ten (10) calendar years before the Incident.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 11:**

Please see: (1) E&L Enterprises, Inc. Quote, dated June 12, 2012, attached; (2) Lanier Daily Reports, produced in response to Request for Production No. 1.

**REQUEST FOR PRODUCTION NO. 12:**

Please produce and identify by bates number copies of each written certification, license, permit, authorization, registration, lease, or any other type of official document in effect at the time of the Incident that governed the use and/or operation of the property for which you are seeking damages.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 12:**

C-Port objects to this request to the extent it seeks public records that are equally available and accessible to the requesting parties. Subject to and without waiving the foregoing objection, the Greater Lafourche Port Commission granted authorization to use the mooring dolphins in 1997.

**REQUEST FOR PRODUCTION NO. 13:**

Please produce and identify by bates number any and all policies and procedures you had in place at the time of the Incident related to storm preparations at your facility.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 13:**

C-Port objects to Request for Production No. 13 because it is irrelevant, vague, overly broad and unduly burdensome. Subject to and without waiving the foregoing objections, and with respect to the mooring dolphins, none.

**REQUEST FOR PRODUCTION NO. 14:**

Please produce and identify by bates number all documents, records, meeting minutes, damage and repair surveys, repair bids and/or estimates, schedules, budgets, invoices, receipts, emails and correspondence pertaining to the damages that you claim to have sustained as a result of the Incident, including but not limited to, the following damages, as stated in Paragraphs 14 and 15 and Paragraphs 15 and 16 of your Claims:

a)    Physical damage to and/or loss of the mooring dolphins owed by C-Port and/or the C-Port Facility;

6

      b)      Business interruption;

      c)      Repair costs;

      d)      Survey expenses;

      e)      Contractor expenses; and

      f)      Employee expenses.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 14:

Please see the following:

(1) GIS Quote, dated 1-13-21, previously produced in response to Interrogatory 15.

(2) Lanier Daily Reports, previously produced in response to Request for Production No. 1.

(3) Anadarko Lease Agreement, previously produced in response to Request for Production No. 10.

Additional and/or updated information regarding repair costs, survey expenses, employee expenses, and business interruption has been requested and will be provided upon receipt.

## REQUEST FOR PRODUCTION NO. 15:

Please produce and identify by bates number all documents that identify the fair market value of the property before the Incident, including, but not limited to, any tax returns and internal bookkeeping documents. This Request specifically seeks all documents that identify the purchase price of the property, cost of any improvements made to the property before the Incident, the depreciation schedule for the property, and any other documents containing information affecting the valuation of the property at issue prior to the Incident.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 15:

Please see  E&L Enterprises, Inc. Quote, dated June 12, 2012, previously produced in response to Request for Production No. 11.

7

**REQUEST FOR PRODUCTION NO. 16:**

Please produce and identify by bates number copies of any and all appraisals, estimates, and/or valuation surveys performed for any reason, including obtaining insurance, on the mooring dolphins and any other property identified in your Answer to Interrogatory No. 1 in the ten (10) calendar years before the Incident.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 16:**

None.

**REQUEST FOR PRODUCTION NO. 17:**

Please produce and identify by bates number any and all weather forecasts, data, circulars, and/or alerts received, obtained, recorded, and/or issued by you in October 2020.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 17:**

C-Port objects to Request for Production No. 17 as irrelevant, vague, unduly burdensome and overly broad. Subject to and without waiving the foregoing objections, none relevant to the mooring dolphins.

**REQUEST FOR PRODUCTION NO. 18:**

Please produce and identify by bates number documentation of any and all internal communications concerning the Incident, including but not limited to the decision to allow HARVEY SEAS and any other vessel(s) to secure to your mooring dolphins in preparation for and during Hurricane Zeta.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 18:**

C-Port objects to the extent Request for Production No. 18 suggests that it had any involvement in the decision regarding the mooring of the HARVEY SEAS or any other vessels besides leasing/renting the space. Subject to and without waiving the foregoing objection, none.

8

**REQUEST FOR PRODUCTION NO. 19:**

Please produce and identify by bates number documentation of any and all communications between you and the owners and/or operators of HARVEY SEAS, any other vessel(s), and/or any other third parties concerning the Incident, including but not limited to the decision to allow HARVEY SEAS and any other vessel(s) to secure to your mooring dolphins in preparation for and during Hurricane Zeta.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 19:**

C-Port objects to the extent Request for Production No. 22 suggests that it had any involvement in the decision regarding the mooring of the HARVEY SEAS or any other vessels besides leasing/renting the space.  Subject to and without waiving the foregoing objection, none.

**REQUEST FOR PRODUCTION NO. 20:**

Please produce and identify by bates number any surveys, testing, inspections or analyses performed by you or on your behalf or which were obtained by you or provided to you or considered by you in determining the suitability of mooring dolphins as a secure position for HARVEY SEAS and any other vessel(s) to secure to your mooring dolphins in preparation for and during Hurricane Zeta.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 20:**

C-Port objects to the extent Request for Production No. 22 suggests that it had any involvement in the decision regarding the mooring of the HARVEY SEAS or any other vessels besides leasing/renting the space.  Subject to and without waiving the foregoing objection, none.

PD.37210406.1

**REQUEST FOR PRODUCTION NO. 21:**

Please produce and identify by bates number copies of any and all appraisals, estimates, and/or valuation surveys performed for any reason, including obtaining insurance, on the mooring dolphins and any other property identified in your Answer to Interrogatory No. 1 after the Incident.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 21:**

None.

**REQUEST FOR PRODUCTION NO. 22:**

Please produce and identify by bates number all notices of protest, notices of cancellation, or notices of liability tendered to or by you for loss of use or consequential damages resulting from the Incident.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 22:**

None.

**REQUEST FOR PRODUCTION NO. 23:**

Please produce and identify by bates number a copy of all policies of insurance that insured or may have insured the items of property identified in your Answer to Interrogatory No. 1 at the time of this Incident or the claims made against you in this lawsuit.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 23:**

C-Port objects to this request to the extent it seeks documents that are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. The claims pending against C-Port are baseless and C-Port, as the owner of fixed mooring dolphins damaged as a result of the breakaway of the D/B THOR, denies all liability for the breakaway of the D/B THOR and its subsequent allision with the HARVEY SEAS. Subject to and without waiving the foregoing objection, none.

**REQUEST FOR PRODUCTION NO. 24:**

Please produce and identify by bates number all communications between you and your insurance carrier and/or its representative relating to the claims made by or against you in this lawsuit, including but not limited to "proof of loss," "notice of claim," or other documents provided to your insurers created by you or any related entity or person, or by your agents or attorneys, regarding the occurrence which forms the subject matter of this instant litigation.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 24:**

C-Port objects to Request for Production No .24 because it seeks information protected by the attorney-client privilege and because it is overly broad and unduly burdensome.

**REQUEST FOR PRODUCTION NO. 25:**

Please produce and identify by bates number all documents, whether created before or after the Incident, discussing the condition of, useful life of, or any prior damage to each and every mooring dolphin and other property identified in your Answer to Interrogatory No. 1.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 25:**

C-Port objects to this request as premature as discovery is beginning and to the extent it seeks expert opinion. C-Port will provide expert reports in accordance with this Court's Orders, the Scheduling Order, and the Federal Rules of Civil Procedure. Subject to and without waiving the foregoing objection, C-Port has not identified information responsive to this request and will supplement this response when, and if, such information is identified.

**REQUEST FOR PRODUCTION NO. 26:**

Please produce and identify by bates number all original plans, as-built plans, original or as-built drawings and original or as-built specifications for of each and every mooring dolphin and other property identified in your Answer to Interrogatory No. 1.

PD.37210406.1

**RESPONSE TO REQUEST FOR PRODUCTION NO. 26:**

Please see original plans, previously referenced and produced in response to Interrogatory No. 4.

**REQUEST FOR PRODUCTION NO. 27:**

Please produce and identify by bates number the most recent permit for any work done on the mooring dolphins, including any new and/or revised conditions imposed by any state or federal regulatory agencies.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 27:**

Please see E&L Enterprises, Inc. Quote, dated June 12, 2012, previously produced in response to Request for Production No. 11.

**REQUEST FOR PRODUCTION NO. 28:**

If you are claiming damages for loss of use or loss of revenue, please produce and identify by bates number all documents evidencing extra costs or expenses you incurred or will incur as a result of the Incident.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 28:**

C-Port's mooring dolphins were damaged beyond repair as a result of the Incident on October 28, 2020.  Due to the extensive damage, the dolphins could not be used or leased to others and had to be removed and will be replaced.  See GIS Quote, previously produced in answer to Interrogatory No. 15.

**REQUEST FOR PRODUCTION NO. 29:**

If you are claiming damages for loss of use or loss of revenue, please produce and identify by bates number all documents you contend support your claim for such damages.

12

**RESPONSE TO REQUEST FOR PRODUCTION NO. 29:**

C-Port's mooring dolphins were damaged beyond repair as a result of the Incident on October 28, 2020.  Due to the extensive damage, the dolphins could not be used or leased to others. At the time of the incident, C-Port leased dolphins at a rate of $50 per day, per dolphin.  See Anadarko C-Port Lease Renewal, dated August 1, 2017, previously produced in response to Request for Production No. 10.

**REQUEST FOR PRODUCTION NO. 30:**

If you are claiming damages for loss of use or loss of revenue, please produce and identify by bates number all income tax returns from 2015 to the present prepared to report income earned from the operation of the mooring dolphins, including all supporting schedules.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 30:**

Please see Anadarko C-Port Lease Renewal, dated August 1, 2017, previously produced in response to Request for Production No. 10.

**REQUEST FOR PRODUCTION NO. 31:**

If you are claiming damages for loss of use or loss of revenue, please produce and identify by bates number all periodic (e.g., weekly, monthly) income statements for the mooring dolphins for 2015 through the present, created or kept in the normal course of business.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 31:**

Please see Anadarko C-Port Lease Renewal, dated August 1, 2017, previously produced in response to Request for Production No. 10.

**REQUEST FOR PRODUCTION NO. 32:**

If prior to the Incident you were planning or contemplating any work to be done on any property you contend was damaged as a result of the Incident, please produce and identify by bates

number all of your correspondence, budgeting, planning, and estimating documents related to any such work.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 32:**

None.

**REQUEST FOR PRODUCTION NO. 33:**

Please produce and identify by bates number any document in your possession that discusses or relates to repairs to the mooring dolphin and other property identified in your Answer to Interrogatory No. 1 created from the time of the Incident through the present and that has not been produced in response to one of the above requests.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 33:**

See GIS Quote, dated 1-13-21, previously produced in response to Interrogatory 15. C-Port reserves the right to supplement this response with updated costs and expenses if and when received.

**REQUEST FOR PRODUCTION NO. 34:**

Please produce all documents identified in, referenced, or relied upon in preparation of your Answers to the foregoing Interrogatories.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 34:**

See documents produced in connection with these responses to discovery.

**REQUEST FOR PRODUCTION NO. 35:**

Please produce all documents identified in, referenced, or relied upon in preparation of your Initial Disclosures, including but not limited to:

a.    All documents that reflect the physical damages to C-Port's mooring dolphins as a result of the D/B THOR's allision with the M/V HARVEY SEAS or with any other vessel(s) moored to C-Port's mooring dolphins on October 28, 2020;

b.     All documents that reflect C-Port's damages suffered as a result of the loss of use of its mooring dolphins as a result of the D/B THOR's allision with the M/V HARVEY SEAS or with any other vessel(s) moored to C-Port's mooring dolphins on October 28, 2020;

c.     All documents that reflect the damages sustained by C-Port for the removal, repair, and/or replacement of its mooring dolphins damaged as a result of the D/B THOR's allision with the M/V HARVEY SEAS or with any other vessel(s) moored to C-Port's mooring dolphins on October 28, 2020.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 35:**

Please see documents produced in connection with these responses to discovery, including damage photos, Lanier Daily Reports, and GIS Quote.

**REQUEST FOR PRODUCTION NO. 36:**

Please produce and identify by bates number all exhibits or tangible things you may or will introduce at the trial of this matter.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 36:**

C-Port will provide an Exhibit List in accordance with this Court's Orders, the Scheduling Order, and the Federal Rules of Civil Procedure.  Subject to and without waiving the foregoing objections, please see documents produced in C-Port's responses to written discovery, including but not limited to: (1) GIS Quote; (2) Damage Photos; (3) Video of Allision; and (4) Lanier Daily Reports.

**REQUEST FOR PRODUCTION NO. 37:**

Please produce any and all charts, maps, indexes, plans, plots and/or surveys in your possession at the time of the Incident that depict the location of any and all underwater and/or

buried piping, wiring, and/or cabling in Bayou Lafourche, including but not limited to the vicinity of the C-Port Facility.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 37:**

None.

**REQUEST FOR PRODUCTION NO. 38:**

Please produce any and all charts, maps, indexes, plans, plots and/or surveys that you acquired following the Incident that depict the location of any and all underwater and/or buried piping, wiring, and/or cabling in Bayou Lafourche, including but not limited to the vicinity of the C-Port Facility.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 38:**

None.

Respectfully submitted,

**PHELPS DUNBAR LLP**

BY: _____

Thomas Kent Morrison (Bar #25802)
Colin B. Cambre (Bar #31083)
Canal Place | 365 Canal Street, Suite 2000
New Orleans, Louisiana 70130
Telephone: 504 566 1311
Facsimile: 504 568 9130
Email: morrisok@phelps.com
Email: colin.cambre@phelps.com

ATTORNEYS FOR C-PORT, LLC

16

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have on this <u>20th</u> day of September, 2022, served a copy of the foregoing C-PORT, LLC's RESPONSES TO OMNIBUS REQUESTS FOR PRODUCTION on counsel of record for all parties to this proceeding, by e-mail, facsimile and/or mailing same by United States mail, properly addressed and first class postage prepaid.

_____

Thomas Kent Morrison