# Transcript of the Testimony of

# Thomas Gibilterra, PE

October 3, 2023

All Coast, LLC v. Shore Offshore Services, LLC, Modern American Railroad Services, L.L.C., and Martin Energy Service, LLC



COURT REPORTING & LITIGATION SUPPORT

P.O. Box 1554 • Hammond • Louisiana 70404
(Toll Free) 866.870.7233 • 985.542.8685 • (Fax) 985.419.0799
office@amersonwhite.com • www.amersonwhite.com

EXHIBIT 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ALL COAST, LLC | *CIVIL ACTION NO. 21-258 |
| | *Lead Case, c/w 21-337, |
| VERSUS | *21-464, 21-822, 21-1968, |
| | *21-1969, 21-1981, |
| SHORE OFFSHORE SERVICES, | *21-1982 and 21-2075 |
| LLC, MODERN AMERICAN | * |
| RAILROAD SERVICES, | *JUDGE JAY C. ZAINEY |
| L.L.C., AND MARTIN | *MAGISTRATE JUDGE KAREN |
| ENERGY SERVICE, LLC | *WELLS ROBY |
| | * |
| | *APPLIES TO ALL CASES |

* * * * * * * * * * * * * * * * * *

VIDEOTAPED DEPOSITION OF THOMAS GIBILTERRA, PE
TAKEN AT PUSATERI, JOHNSTON, GUILLOT & GREENBAUM
1100 POYDRAS STREET, SUITE 2250
NEW ORLEANS, LOUISIANA 70163
ON TUESDAY, OCTOBER 3, 2023, AT 10:00 A.M.



```
 1   APPEARANCES:
 2   REPRESENTING DARREN WALKER, ET AL:
 3     ARNOLD & ITKIN, LLP
       BY VIDEOCONFERENCE:  JOHN GRINNAN, ESQUIRE
 4     6009 Memorial Drive
       Houston, Texas 77007
 5     Email: jgrinnan@arnolditkin.com
 6
 7   REPRESENTING HARVEY SEAS, LLC AND HARVEY GULF
     INTERNATIONAL MARINE, LLC (COLLECTIVELY "HARVEY
 8   GULF"):
 9     ADAMS AND REESE, LLP
       BY:  CHARLES A. CERISE, JR., ESQUIRE
10     BY:  JOHNNY L. DOMIANO, ESQUIRE
       701 Poydras Street, Suite 4500
11     New Orleans, Louisiana 70139
       Email: charlie.cerise@arlaw.com
12
13
14   REPRESENTING MARTIN ENERGY SERVICES, LLC:
15     DAIGLE FISSE & KESSENICH
       BY:  MICHAEL W. McMAHON, ESQUIRE
16     227 Highway 21
       Madisonville, LA 70447
17     Email: mmcmahon@daiglefisse.com
18
19   REPRESENTING MODERN AMERICAN RAILROAD SERVICES
     AND SHORE OFFSHORE SERVICES:
20
       PUSATERI, JOHNSTON, GUILLOT & GREENBAUM
21     BY:  GAVIN GUILLOT, ESQUIRE
       BY:  MEREDITH BLANQUE, ESQUIRE
22     1100 Poydras Street, Suite 2250
       New Orleans, Louisiana 70163
23     Email: gavin.guillot@pjgglaw.com
24
25
```


Amerson White
COURT REPORTING & LITIGATION SUPPORT
866.870.7233   P.O. Box 1554 Hammond LA 70404   Fax 985.419.0799

```
 1    APPEARANCES (CONTINUED):
 2    REPRESENTING DAWN SERVICES LLC:
 3      LISKOW & LEWIS
        BY:  DAVID L. REISMAN, ESQUIRE
 4      701 Poydras Street, Suite 5000
        New Orleans, Louisiana 70139
 5      Email:  dreisman@liskow.com
 6
 7    REPRESENTING WEEKS MARINE:
 8      FLANAGAN PARTNERS LLP
        BY: LAURENT DEMOSTHENIDY, ESQ.
 9      201 St. Charles Avenue, Suite 3300
        New Orleans, Louisiana 70170
10
11
12    REPRESENTING ALL COAST, LLC
      AND GULF COAST MARINE, LLC:
13
        THE MOELLER FIRM
14      BY VIDEOCONFERENCE:  KASSIE RICHBOURG, ESQUIRE
        650 Poydras Street, Suite 2516
15      New Orleans, Louisiana 70130
        Email: kassie@moellerfirm.com
16
17
18    REPRESENTING PREMIER OFFSHORE CATERING:
19      CHAFFE McCALL LLP
        BY VIDEOCONFERENCE:  JOHN RIBARITS, ESQUIRE
20      BY VIDEOCONFERENCE:  ALEXANDER J. DeGIULIO, ESQ.
        801 Travis Street, Suite 1910
21      Houston, Texas 77002
        Email: john.ribarits@chaffe.com
22
23
24
25
```



Amerson White
COURT REPORTING & LITIGATION SUPPORT
866.870.7233   P.O. Box 1554 Hammond, LA 70404   Fax 985.419.0799

```
 1   APPEARANCES (CONTINUED):
 2   REPRESENTING GREATER LAFOURCHE PORT COMMISSION:
 3     FRILOT LLC
       BY VIDEOCONFERENCE:  BLAKE DONEWAR, ESQUIRE
 4     1100 Poydras Street, Suite 3700
       New Orleans, Louisiana 70163
 5
 6
 7   REPRESENTING MONTRELL SMITH AND RANDY RIALS:
 8     SPAGNOLETTI LAW FIRM
       BY VIDEOCONFERENCE:  MARC E. KUTNER, ESQUIRE
 9     401 Louisiana Street, 8th Floor
       Houston, Texas 77002
10     Email: mkutner@spaglaw.com
11
12   REPRESENTING CROSBY TUGS:
13     JONES WALKER
       BY VIDEOCONFERENCE:  ALFRED J. RUFTY, III, ESQ.
14     201 St. Charles Avenue, Suite 5100
       New Orleans, Louisiana 70170
15     Email: arufty@joneswalker.com
16
17   REPRESENTING COASTAL TOWING LLC:
18     GALLOWAY, JOHNSON, TOMPKINS, BURR & SMITH
       BY VIDEOCONFERENCE: PATRICK SCHEPENS, ESQUIRE
19     #3 Sanctuary Boulevard, Suite 301
       Mandeville, Louisiana 70448
20     Email: kbonnaffons@gallowayjohnson.com
21
22
23
24
25
```



```
 1   APPEARANCES (CONTINUED):
 2   REPRESENTING GARBER BROTHERS, LLC:
 3     ALLEN & GOOCH
       BY VIDEONCONFERENCE:  JOHN H. HUGHES, ESQUIRE
 4     2000 Kaliste Saloom Road, Suite 400
       Lafayette, Louisiana 70508
 5     Email: johnhughes@allengooch.com
 6
 7   REPRESENTING TERRYNN TYRELL LYONS:
 8     DEGRAVELLES & PALMINTIER
       BY VIDEOCONFERENCE:  MICHAEL C. PALMINTIER, ESQ.
 9     618 Main Street, #1910
       Baton Rouge, Louisiana 70801
10
11
12   REPRESENTING C&G BOATS AND GULF LOGISTICS:
13     ALLEN & GOOCH
       BY VIDEOCONFERENCE:  ALAN J. MECHE, ESQUIRE
14     2000 Kaliste Saloom Road, Suite 400
       Lafayette, Louisiana 70508
15     Email: alanmeche@allengooch.com
16
17
18
19
20
21
22
23
24   ALSO PRESENT:  CODY SIMS
25   REPORTED BY:  ANNA COATES, CCR, RPR
```



AmersonWhite
COURT REPORTING & LITIGATION SUPPORT
866.870.7233   P.O. Box 1554 Hammond, LA 70404   Fax 985.419.0799

```
                       I N D E X

EXAMINATION BY:                                        PAGE
    Mr. Cerise................................... 13
    Mr. McMahon...................................159
    Mr. Demosthenidy..............................178
    Mr. Reisman...................................184
    Mr. Grinnan...................................392
    Mr. Rufty.....................................422
    Mr. Hughes....................................434
    Mr. Kutner....................................437
    Mr. Donewar...................................441
    Ms. Richbourg.................................443
    Mr. Meche.....................................446
    Mr. McMahon...................................448


REPORTER'S CERTIFICATE.......................456




                    E X H I B I T   I N D E X
NO.           DESCRIPTION                              PAGE
EXHIBIT 218   Thor 1502, Organizational Chart..30
EXHIBIT 219   Thor 1543-52, Telephone Log......91
EXHIBIT 220   Thor 6342-43, 10/6/20 E-mail.....94
EXHIBIT 221   Thor 2933, 10/25/20 E-mail.......98
```



```
                E X H I B I T  I N D E X (CONTINUED)
NO.           DESCRIPTION                                     PAGE
EXHIBIT 222   Thor 3044-45 10/25/20 E-mail....100
EXHIBIT 223   Thor 2981-82, E-mail Chain......101
EXHIBIT 224   Thor 2970-72, 3065, 3069,
              Email Chain.....................103
EXHIBIT 225   Thor 3480-81, 10/26/20, E-mail..111
EXHIBIT 226   Thor 3549, 3554, 3577, E-mails..115
EXHIBIT 227   Thor 3553, 10/26/20 E-mail......124
EXHIBIT 228   Thor 3555, 10/26/20 E-mail......124
EXHIBIT 229   Thor 4716, 10/28/20 E-mail......125
EXHIBIT 230   Thor 4985, 10/29/20 E-mail......126
EXHIBIT 231   Thor 4985, 4989, 5013, E-mails..129
EXHIBIT 232   Thor 1092-98, Coast Guard Form..131
EXHIBIT 233   Thor 5325-5333, HSE Manual......139
EXHIBIT 234   Thor 1375-80, HSE Manual........148
EXHIBIT 235   Thor 5307-12, HSE Manual........155
EXHIBIT 236   Thor 1390, Barge Layout.........168
EXHIBIT 237   Thor 1381-85, Kallop Overview...171
EXHIBIT 238   Thor 2843-47, WeatherOps Data...252
EXHIBIT 239   2016 Bisso Storm Preparedness...268
EXHIBIT 240   1/18/21 E-mail from Gibilterra...300
EXHIBIT 241   Thor 1240-45, Shore DPR.........352
EXHIBIT 242   WM001118, Coast Guard Form......385
```



S T I P U L A T I O N

IT IS STIPULATED AND AGREED by and among counsel for the parties hereto that the deposition of the aforementioned witness may be taken for all purposes permitted within the Louisiana Code of Civil Procedure, in accordance with law, pursuant to notice;

That the formalities of reading, signing, sealing, certification and filing are specifically NOT waived;

That all objections, save objections as to the form of the question and responsiveness of the answer, are reserved until such time as this deposition, or any part hereof, is used or sought to be used in evidence.

\* \* \* \* \* \* \* \*

ANNA COKER COATES, RPR, CCR, Certified Court Reporter in and for the State of Louisiana, officiated in administering the oath to the witness.



```
 1                  *  *  *  *  *  *
 2              THE VIDEOGRAPHER:  This is the
 3     videotaped deposition of Tommy Gibilterra.
 4     This deposition is being held at 1100 Poydras
 5     Street, New Orleans, Louisiana, on
 6     October 3rd, 2023.  The time indicated on the
 7     video screen is 10:00.
 8              Would counsel please introduce
 9     themselves for the record.
10              MR. GUILLOT:  Gavin Guillot and Meredith
11     Blanc on behalf of Shore Offshore Services
12     and Modern American Railroad Services.
13              MR. CERISE:  Charlie Cerise and Johnny
14     Domiano on behalf of Harvey Gulf.
15              MR. REISMAN:  David Reisman on behalf of
16     Dawn Services.
17              MR. McMAHON:  Mike McMahon on behalf of
18     Martin.
19              MR. HUGHES:  This is John Hughes
20     appearing on behalf of Garber Brothers, LLC.
21              MR. DEMOSTHENIDY:  Laurent Demosthenidy
22     for Weeks Marine.
23              MR. GRINNAN:  John Grinnan appearing on
24     behalf of Arnold & Itkin Plaintiffs and
25     Claimants.
```



```
 1   Crosby Endeavor was sufficient on its own to keep
 2   the barge at the dock during the hurricane?
 3        A.   No.
 4        Q.   Where was the barge working prior to
 5   Hurricane Zeta?
 6        A.   It was working for Fieldwood.  And don't
 7   get me to lying.  I think the block number was
 8   Ship Shoal 259, but I couldn't tell you exactly.
 9   JA structure.
10        Q.   How long had it been working there
11   before?
12        A.   Just less than a handful of days, I
13   believe.
14        Q.   And what kind of job was it doing there?
15        A.   Decommissioning.
16        Q.   Were there any time limitations on this
17   decommissioning job?
18        A.   No.
19        Q.   So there was no incentive pay if the job
20   finished early?
21        A.   None.
22        Q.   And no penalty if the job didn't finish
23   within a certain amount of time?
24        A.   No.
25        Q.   Was Fieldwood pressing the barge or
```



```
 1         A.    Okay.
 2         Q.    -- answer my question and answer the
 3   precise question, and we'll get through this
 4   faster.
 5         A.    All right.
 6         Q.    Isn't it true that on the day of the
 7   hurricane, you had no expectation that the Crosby
 8   Endeavor would assist Thor in any way as the
 9   hurricane came through; that's true, right?
10         A.    That's true.
11               MR. GUILLOT:  Object to form.
12   EXAMINATION BY MR. RUFTY:
13         Q.    And as far as you know, no one else at
14   Shore Offshore had that expectation?
15               MR. GUILLOT:  Object to form.
16               THE WITNESS:  I don't know.
17   EXAMINATION BY MR. RUFTY:
18         Q.    As far as you know, no one didn't,
19   right?
20               MR. GUILLOT:  Object to form.
21               THE WITNESS:  As far as I know.
22   EXAMINATION BY MR. RUFTY:
23         Q.    Okay.  And if Shore Offshore had
24   expected the Crosby Endeavor to do something to
25   assist the Thor as the hurricane came through, it
```



```
 1    would have been prudent to tell that to somebody
 2    on the Crosby Endeavor or at Crosby, wouldn't it?
 3         A.   It might have been prudent.
 4              (INTERRUPTION)
 5              MR. GUILLOT:  Can the other people on
 6         Zoom -- Alfred, hang on a second, please.
 7         Sorry to interrupt.  Can the other people on
 8         Zoom please mute themselves so there's no
 9         feedback.
10    EXAMINATION BY MR. RUFTY:
11         Q.   In your experience in the industry, if
12    you personally had expected the Crosby Endeavor to
13    do something to assist Thor as the hurricane
14    passed through, you would have wanted to know that
15    this had been communicated to Crosby, right?
16         A.   I would like to think so.
17         Q.   And knowing Cody as you do, you would
18    expect that he would have wanted to make sure that
19    some communication had been had with Crosby to
20    convey that expectation also if he had that
21    expectation, right?
22              MR. GUILLOT:  Object to the form of the
23         question; calls for speculation.
24              THE WITNESS:  I would like to think so.
25
```

```
 1    Endeavor have provided after identifying an
 2    increased hazard?
 3         A.   Oh, I think as they've done so in the
 4    past, when they are confronted with a situation,
 5    they ask for assistance or tell us what we need to
 6    do in order to be safe.  They could ask for
 7    assistance from other tugboats.
 8         Q.   Anything else?
 9              MR. GUILLOT:  Object to the form of the
10         question.
11              THE WITNESS:  Not off the top of my
12         head.
13   EXAMINATION BY MR. RUFTY:
14         Q.   You wouldn't have expected the Crosby
15   Endeavor to start pushing Thor into the dock
16   without being instructed to do so by the Thor,
17   would you?
18              MR. GUILLOT:  Form.
19              THE WITNESS:  No, not without notice.
20   EXAMINATION BY MR. RUFTY:
21         Q.   One reason for that is that from the
22   perspective of the Crosby Endeavor, the people on
23   the Crosby Endeavor couldn't see the mooring lines
24   connecting the Thor to the dock; isn't that right?
25         A.   That's correct.
```



1  Q.  So if the Crosby Endeavor had taken it
2  upon itself without notice or request from Shore
3  to just start pushing the Thor into the dock, that
4  might have reduced tension on some lines, but it
5  might have increased tension on other lines; isn't
6  that true?
7  A.  That's correct.
8  Q.  So without having eyes and ears on the
9  Thor seeing what effect the actions would have on
10 the mooring lines, it would have been reckless for
11 the Crosby Endeavor to undertake on its own to
12 start pushing Thor into the dock?
13      MR. GUILLOT:  Object to the form.
14      THE WITNESS:  That's correct.
15 EXAMINATION BY MR. RUFTY:
16 Q.  Isn't it true that one reason to have
17 the Crosby Endeavor nearby was to help Thor get
18 back into the gulf and return to work as soon as
19 practicable once the hurricane passed?
20 A.  No.  That's not her primary purpose.
21 Q.  Okay.  I know it's been a long day.
22 You've been a trouper.  We can try again, and
23 please listen carefully to the question.
24     Isn't it true that at least one reason that
25 it was useful to have the Crosby Endeavor nearby