UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ALL COAST, LLC<br><br><br>VERSUS<br><br>SHORE OFFSHORE SERVICES, LLC | CIVIL ACTION NO.: 21-258 c/w 21-337, 21-464, 21-822<br><br>SECTION: A (4)<br><br>JUDGE JAY C. ZAINEY<br><br>MAG. JUDGE ROBY<br><br>ADMIRALTY - Rule 9(h)<br><br>Applies to: 21-464 |

## DECLARATION OF SCOTT MCCLURE UNDER 28 U.S.C. § 1746

1. My name is Scott McClure. I am over the age of 21, and I am competent and capable of making this Declaration. I have personal knowledge of the facts and statements contained herein, and each of them is true and correct to the best of my knowledge, information, and belief.

2. I am employed by Alan C. McClure Associates, Inc. ("ACMA") as President.

3. I have been President of ACMA, a naval architecture and marine engineering firm, since 1992. I have led the company in applying first-principals engineering to a wide array of naval architecture and marine engineering projects. including ships, semisubmersibles, jack-ups, lift boats, ULCCs, crew boats, round structures, and floating dry docks. My work has included hydrostatic intact and damage stability analyses, structural design and analyses for global strength as well as local considerations, seakeeping studies for motions, resistance and propulsion, mooring systems and dynamic station keeping, and dry-docking analyses for various loading conditions and hull forms. I have also performed vessel, dry dock, and shipyard surveys worldwide, including in port, onshore

EXHIBIT
**10**

and at sea, and have participated in developing contract specifications for conversions and new builds for all types of marine projects.

4. I also hold a Bachelor of Science in Civil Engineering from Texas A&M University and completed graduate studies at Virginia Polytechnic Institute. Additionally, I am a Fellow of the Society of Naval Architects and Marine Engineers (SNAME) and was awarded the 2023 Vice Admiral Emory S. "Jerry" Land Medal.

5. In total, I have forty-three (43) years of experience in the maritime industry including extensive work involving shipyards, drydocking operations, vessel conversions, newbuild construction, mooring and station-keeping systems, and the engineering and survey of offshore and marine equipment. A true and correct copy of my *curriculum vitae* with all of my relevant experience is attached hereto as **Exhibit A**.

6. At the request of Jones Walker, LLP, ACMA prepared an expert report dated June 7, 2024, in connection with Civil Action No. 21-258, *All Coast, LLC v. Shore Offshore Services, LLC.*, currently pending in the U.S. District Court for the Eastern District of Louisiana.

7. Attached as **Exhibit B** is a true and complete copy of the expert report that I prepared as part of my work in the above-captioned matter. I am prepared to and intend to testify regarding the facts and opinions contained within my expert report.

8. As set forth in my expert report, based upon my training, education, knowledge, and experience, it is my opinion that the M/V CROSBY ENDEAVOR could not have prevented the D/B THOR from moving away from the Martin Energy Dock during the passage of Hurricane Zeta on October 28, 2020. The wind forces acting on the D/B THOR exceeded the bollard pull capacity of the M/V CROSBY ENDEAVOR, and the

#110092385v1

tug is not designed to push perpendicularly against a barge of the D/B THOR's configuration during hurricane-force conditions.

9.    Based upon my training, education, knowledge, and experience, it is my opinion that the M/V CROSBY ENDEAVOR was not capable of holding the D/B THOR alongside the Martin Dock during the hurricane event on October 28, 2020. Specifically, the M/V CROSBY ENDEAVOR is an ocean-going towing vessel with a model bow and without push knees, and its bollard pull capacity is only fully effective in the ahead direction.

10.    I am of the opinion that there is no safe configuration or maneuver by which the M/V CROSBY ENDEAVOR could have held the DB THOR in place under the storm conditions present at the time of the October 28, 2020, breakaway incident.

11.    I am further of the opinion that the assistance of the M/V CROSBY ENDEAVOR would not have made any difference in the outcome of this breakaway event in Hurricane Zeta's storm conditions.

12.    I am aware that this Declaration will be used in the above-captioned litigation.

13.    Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

    **THUS DONE**, **EXECUTED**, and **SIGNED** this 24th day of October, 2025.

Scott C. McClure, P.E.
President
Alan C. McClure Associates, Inc.

# Scott C. McClure, P.E. *President*

## Education:

B. S. Civil Engineering, Texas A & M University, 1982

Graduate Studies Virginia Polytechnic Institute

## Affiliations:

Society of Naval Architects and Marine Engineers

    SNAME - Fellow

    SNAME - 2023 - Vice Admiral Emory S. "Jerry" Land Medal

Marine Technology Society

Registered Professional Engineer, Texas

## Professional Experience:

Since becoming President of Alan C. McClure Associates, Inc. (ACMA) in 1992, Mr. McClure has led the company in applying first principals engineering to a wide array of naval architecture and marine engineering projects. The hull forms range from ships to semisubmersibles to jack-ups to liftboats and from ULCCs to crewboats, even including round structures, and floating dry docks. Service applications include marine transportation, heavy lift, oil & gas drilling and production, multi-service and subsea construction, wind turbine transportation and installation, towing, pipelay, and passenger transport, among others.

Engineering tasks ranged from developing arrangements, hull form, weight take offs, hydrostatic intact and damage (deterministic & probabilistic) stability analyses, structural design and analyses for global strength as well as local considerations, seakeeping studies for motions, resistance and propulsion, mooring systems and dynamic station keeping, dry docking analyses for various loading conditions and hull forms, and development of machinery systems to support the intended operations.

Mr. McClure has performed vessel, dry dock, and shipyard surveys in association with many of these projects. These surveys have been conducted worldwide, including in port, onshore and at sea.

In addition to the engineering tasks, Mr. McClure has participated in developing contract specifications for conversions and new builds for all types of marine projects as well as vetting shipyards and construction contracts on behalf of owners.

Vessel design and development have customarily been carried out in association with various class societies such as the American Bureau of Shipping (ABS), Lloyd's Register (LR), Det Norske Veritas (DNV-GL), Bureau Veritas (BV), and Nippon Kaiji Kyokari (NKK). In addition, 'flag state' requirements were also typically involved including US CFR, IMO, SOLAS, IGC, UK Den, ILC, Transport Canada, and others.

**EXHIBIT**

**A**



Alan C.
McCLURE ASSOCIATES, INC.
Naval Architects • Engineers

Under Mr. McClure's direction, ACMA staff are proficient in the following computer programs which are significant in keeping ACMA one step ahead of our evolving industry:

- RHINO – 3D Surface and Configuration Modeling, providing direct geometry import to other programs
- FEA (ANSYS) – linear/non-linear stress and thermal structural analysis
- AQWA (ANSYS) – Hydrodynamics tool, 3D panel method for seakeeping and mooring analysis, dynamic pressures for use in FEA analysis
- GHS – hydrostatic intact and damage stability, onboard load computer
- NAVCAD – resistance, propulsion, and propeller analysis
- AUTOCAD – Design drawings in 2D and 3D

Under his supervision, studies have been conducted leading to contract level designs for production units both new build and tanker conversions, semisubmersibles and jack-ups, including worldwide surveys of candidate vessels. **F**inite **E**lement **A**nalysis (FEA) was used extensively for analyzing the structures. Hydrodynamic analyses providing seakeeping and station keeping results for utilization by other project team members were carried out under his direction. Reutilization or replacement of marine systems was an integral part of all of these conversion projects.

Mr. McClure, and the firm, participated in the design and development of **C**ompressed **N**atural **G**as (CNG) transport vessels. Initial work included vetting of inventor concepts, followed by creation of development tools for integrating gas containment, to sizing of the vessels, and cost analyses for a broad range of transport volumes. Mr. McClure used international codes and classification rules as guides, in addition to participating in hazard and risk assessments of the resulting designs. He also spent time in Korea and Japan working with a major shipyard and ship operator respectively in this development effort.

Mr. McClure has performed engineering design and analyses of semisubmersibles, SWATHs, jack-up rigs, liftboats and ships. He was the project naval architect for vessel conversions from offshore supply to well test service, geotechnical service and for carriage of containers which all included extended shipyard supervision time. He engineered the conversion of two jack-ups to production units together with the jack-up leg long term in-place structural analyses and overseeing of leg modifications in the conversion shipyards.

Mr. McClure led the company in performing the conceptual through detailed design and construction of a 120ft all-aluminum turbine powered 255 POB 30knot high speed ABS classed Small Waterplane Area Twin Hull (SWATH) crewboat, the *STILLWATER RIVER*, for operation offshore Brazil. In addition to engineering, he was responsible for the scheduling, sequencing of equipment procurement and installation (multiple long lead custom fabricated items), developed building sequence, up-righting and mating of upper hull to twin lower hulls and the launching procedure. ACMA staff were involved full time in the shipyard and were responsible for supervising the fabrication, launching, dock trials and performing extensive sea trials for the Owner and Petrobras.

Mr. McClure lead the ACMA Team in developing an alternate mooring system for a newbuild 1.2M Bbl Floating Storage vessel for Conoco Phillips. The permanent mooring

system design change by the owner interrupted the Samsung Shipbuilding schedule just before commencement of construction. He managed the complete development of the alternative mooring system including purchase specifications for all components, fast tracked worldwide equipment procurement, coordinated fabrication and delivery of large structural components outside of Samsung for installation by the shipyard. He worked directly with the Samsung shipyard planning department to enable the best possible schedule around this major design change.

Mr. McClure was the technical lead on the 128m 200 passenger Polar Expedition cruise ship *Ultramarine,* built in Croatia for Quark Expeditions. He had oversight of all engineering documentation, participated in the shipyard vetting and contract negotiations, addressed technical aspects of owner requested changes, worked alongside the onsite project manager reviewing shipyard proposed scheduling and planning, coordinated multiple third party subcontractors, final equipment procurement selection and delivery to the shipyard.

Mr. McClure has experience in various types of construction materials in addition to steel including aluminum, fiberglass and wood/fiberglass/carbon composites. Vessels utilizing these materials ranged from the high speed SWATH crewboat to high speed excursion entertainment vessels and passenger transport vessels. Mr. McClure has led the staff in the major redesign of two high speed excursion vessels built of fiberglass in addition to supporting a shipyard in the US Virgin Islands in analyzing their high speed passenger transport vessels built of composite structures.

Mr. McClure has performed surveys and inclinings on all types and sizes of vessels including ships, semisubmersibles and jack ups. Condition and valuation surveys have also been performed. He has performed structural and system surveys and provided certification for a large number of dry docks at a number of different shipyards.

His Project Management roles have ranged from overseeing engineering tasks and development of project reports to shipyard fabrication owner's representation in conjunction with Class and Regulatory interface and contract management. He has participated in the writing and negotiating of shipbuilding contracts.

Notable project design experience includes a dynamic structural analysis of a large road bridge during transportation utilizing two barges; operability analyses of heavy-lift crane barges, 108m deepwater subsea construction vessel built in US shipyard with extensive time participating in the detailed design and fabrication, modification and upgrading of numerous supply vessels including midbody additions, moon pools, SAT dive systems, and conversion to extended well test service.

Mr. McClure was the on-site Owner's representative for the design and construction of a 106 foot all aluminum catamaran entertainment vessel built in Louisiana for delivery to an overseas owner.

Mr. McClure spent two years as a naval architect at the U.S. Coast Guard, in Washington, D.C. He was responsible for naval architectural tasks covering ships ranging in size from 90 feet to 400 feet.



Alan C.
McCLURE ASSOCIATES, INC.
Naval Architects • Engineers

**Scott C. McClure, P.E.** *President*                    Page **4** of **5**

# Publications:

"Dynamic Positioning Dynamics", co-authored with Alan C. McClure and R.Y. Edwards, Jr., The Society of Naval Architects and Marine Engineers First Offshore Stationkeeping Symposium, 1990.

"Settlement of Mat-Supported Mobile Units in Very Soft Clays", co-authored with W.R. Cox and K.H. Sorensen, Offshore Technology Conference, 1990.

"Fatigue Criteria for Jackup Design", The Society of Naval Architects and Marine Engineers Design Criteria and Codes Second Offshore Symposium, 1991.

"FPSO/FSO – Conversion Vs. New Build", co-authored with Alan C. McClure, The Society of Naval Architects and Marine Engineers Third Offshore Symposium, 1993.

"Personnel Transport in the Gulf of Mexico", The Society of Naval Architects and Marine Engineers Ninth Offshore Symposium, 2000.

"The Challenge of the Legal Road", The Society of Naval Architects and Marine Engineers Twelfth Offshore Symposium, 2003.

"The Impact of Compressed Natural Gas Shipping on Offshore Gas Development", Offshore Technology Conference, 2003.

"Designing Ships for an Innovative Gas Transport Industry", The Society of Naval Architects and Marine Engineers Texas Section, 2003.

"CNG Carriers Applied to Remote Marginal Gas Field Developments", Royal Institute of Naval Architects, 2004.

"Deepwater Field Development-FPSOs", Presentation for the Marine Technology Society Dynamic Positioning Conference, 2004.

"Features of CNG Carrier Design", The 10th International Symposium on Practical Design of Ships and Other Floating Structures ("PRADS"), 2007.

"*OCEAN EVOLUTION*: A new special-purpose ship for multi-function missions" (mt) Martine Technology-A SNAME Publication, January 2019

In addition to the list of publications above, Mr. McClure co-authored and co-instructed a Short Course at the 2014 SNAME Maritime Convention titled *Global Analysis – An Introduction to MetOcean Data and Spectral Analysis.*

Alan C.
McCLURE ASSOCIATES, INC.
Naval Architects • Engineers

**Scott C. McClure, P.E.** *President*                                  Page **5** of **5**

## Expert Witness Experience:

Mr. McClure has participated as an expert witness in more than 73 cases, which for varying reasons did not all reach the deposition or trial stage. Mr. McClure has given 14 depositions and testified live in 11 bench or jury trials. These cases covered a broad range of issues inclusive of structural failure (steel, aluminum, FRP/composites), stability, vessel maneuvering and response, moorings, dynamic motions, collision and allision analyses, flooding, fire, sinking, capsizing, drydock failures, personal injury and shipyard contractual issues, among others.

Mr. McClure participated in the successful defense of Petrobras in regard to two construction bond claims related to the conversion of a semisubmersible to a floating production unit and a VLCC to a floating production, storage, and offloading vessel. Both of these construction projects occurred in Brazil and required extensive review of large quantities of correspondence, invoices and change order claims. Mr. McClure worked closely with a forensic accountant to determine the true value of the contract and to identify the sources of the ultimate extreme cost and time overruns. This two-and-a-half-year effort culminated in Mr. McClure testifying at trial and ultimately to the court assessing damages of $350,000,000 to the benefit of Petrobras.

Within the past four years, Mr. McClure has submitted an expert report and testified as an expert by deposition (**\*D**) or at trial (**\*T**) in the following legal cases (*d-defendant; p-plaintiff*):

1) **LA Carriers, LLC as Owner and Operator of the M/V Karen Koby, Petition for Exonerationfrom or Limitation of Liability,** 2024, Civil Action No. 2:22-CV-0498, United States District Court, Eastern District of Louisiana; **\*T** *(d)*

2) **American River Transportation Company, LLC, as Owner and Operator of the M/V COOPERATIVE SPIRIT, Praying for Exoneration from or Limitation of Liability,** 2021, United States District Court for the Eastern District of Louisiana, Case No.: 20-416 c/w 20-538 & 20-1327; **\*T** *(p)*

3) **Jarrett Flax v. FMC Technologies, Inc. N/K/A Technip FMC,** 2019, 113th Judicial District Court, Harris County, Texas, No. 2018-10412; **\*D** *(d)*

4) **US Wind, Inc. v. InterMoor, Inc.,** US District Court for the District of Maryland, Case No. 1:19-cv-02984-SAG; **\*T** *(d)*

5) **The matter of LA Carriers, LLC as Owner and Operator of the** *M/V KAREN KOBY,* **Petitioning for Exoneration from or Limitation of Liability**, United States District Court Eastern District of Louisiana, Civil Action No.: 2:22 cv 04987



# EXPERT REPORT

## OF

# SCOTT C. MCCLURE, P.E.

**All Coast, LLC vs. Shore Offshore Services, et al.**

Prepared For**:**

## Jones Walker, LLP

**Representing
Crosby Tugs, LLC**

Civil Action No. 2: 21-cv-00258-JCZ-KWR (lead case), c/w 21-00337, 21-00464,
21-00822, 21-001968, 21-1969, 21-1981, 21-1982, 21-2075, 21-2227
*Unites States District Court
Eastern District of Louisiana*

ACMA Job B1516

June 7, 2024

ACMA Doc. No. B1516-001-00



## Alan C. McClure Associates, Inc.

### Naval Architects • Engineers

2929 Briarpark, Suite 220
Houston, Texas  77042

(713) 789-1840
Fax: (713) 789-1347
www.acma-inc.com

Texas Registered Engineering Firm F-4491

EXHIBIT
**B**

## REVISIONS

| Number | Date | Change | By |
|---|---|---|---|
| 0 | 06/07/2024 | Initial Issue | SCM |

Alan C.
McCLURE ASSOCIATES, INC.
Naval Architects • Engineers

**TABLE OF CONTENTS**

1.0     INTRODUCTION ..................................................................................................1

2.0     *D/B THOR* CHARACTERISTICS ...................................................................2

3.0     *CROSBY ENDEAVOR* CHARACTERISTICS ...........................................5

4.0     EXPERT QUALIFICATIONS AND COMPENSATION ...................................6

5.0     SCOPE OF ENGAGEMENT .............................................................................6

6.0     INCIDENT DESCRIPTION................................................................................6

7.0     DEPLOYED MOORING SYSTEM OF THE *D/B THOR* .........................8

8.0     WIND FORCE CALCULATION .......................................................................12

9.0     MOORING SIMULATION................................................................................13

        9.1     Mooring Simulation Model.................................................................13

        9.2     Mooring Line Properties .....................................................................13

        9.3     Water Level at time of Breakaway ......................................................16

        9.4     Loss of lines during the breakaway event...........................................16

        9.5     Mooring Line Vertical Angle...............................................................17

        9.6     Mooring Line to Shore Side Bollard Arrangement.............................18

10.0    MOORING SIMULATION RESULTS .............................................................19

11.0    RESPONSE TO PLAINTIFF'S EXPERTS ......................................................22

        11.1    Response to Plaintiff's Expert Mr. Riven ...........................................22

        11.2    Response to Plaintiff's Expert Mr. McSwain ....................................23

12.0    CONCLUSIONS.................................................................................................24


APPENDIX A – LIST OF DOCUMENTS REVIEWED

APPENDIX B – REFERENCES

APPENDIX C – EXHIBITS

APPENDIX D – CV & LEGAL EXPERIENCE

Alan C.
McCLURE ASSOCIATES, INC.
Naval Architects • Engineers

## 1.0    INTRODUCTION

The *Crosby Endeavor* towed the *D/B Thor* from the Gulf of Mexico on October 26 starting at 0950 hours, in response to an approaching hurricane. The destination was Martin Dock in Port Fourchon, LA. The crane barge *D/B Thor* was moored port side to at the Martin Dock and the tow line was off at 2308 hours on October 26, 2020. The *Crosby Endeavor* continued on to the Crosby Dock at 0745 hours on October 27, 2220.

At the time of the breakaway incident, the *D/B Thor* was waiting on the passing of hurricane Zeta. The *D/B Thor* had a mix of wire and synthetic mooring lines run to shore side bollards at Martin Dock. A total of ten mooring lines were run out from the barge to shore.

The *Crosby Endeavor* returned to the *D/B Thor* at 0800 hours on October 28 and was on standby alongside the *D/B Thor*. The *Crosby Endeavor* was tied along the starboard side of the *D/B Thor,* approximately amidships. The *Crosby Endeavor* and the *D/B Thor* both had their respective bows pointing southward.

As the hurricane passed over Port Fourchon the wind speeds exceeded 100 mph. At approximately 1600 hours on October 28, 2020, the *D/B Thor* mooring lines parted. The *D/B Thor* with the *Crosby Endeavor* alongside, was blown in a northwesterly direction. The *Crosby Endeavor* attempted to utilize its propulsion system to control the movement of the *D/B Thor*. Shortly after the breakaway, the *Crosby Endeavor's* own mooring lines to the *D/B Thor* parted. The *Crosby Endeavor* was not able to remain in contact with the *D/B Thor* and the two vessels drifted independently northward in the high winds.

During the process of drifting northward the *D/B Thor* reportedly allided with several moored vessels until the *D/B Thor* eventually ran aground.

The *Crosby Endeavor* drifted northward until it ran aground. After the storm subsided the *Crosby Endeavor* returned to the Crosby Dock.

This report will address the following key issues:

- Did the *D/B Thor* have an adequate mooring system in place to withstand the hurricane
- What were the deficiencies in the *D/B Thor* mooring arrangement
- Could the *Crosby Endeavor* have prevented the *D/B Thor* from moving away from the Martin Dock during the high wind event
- Could the *Crosby Endeavor* have exacerbated the breakaway
- What indications of the level of deacceleration are evident during the reported allisions of the *D/B Thor* with other moored vessels



## 2.0    *D/B THOR* CHARACTERISTICS

A photograph of the *D/B Thor* can be seen in Figure 2-1.



**Figure 2-1 *D/B Thor***

**A General Arrangements drawing of the *D/B Thor* can be seen in**

Alan C.
McCLURE ASSOCIATES, INC.
Naval Architects • Engineers

Figure 2-2 (App C EXH01). The crane booms were all in their respective stowed positions during the storm event. The thrusters shown in the GA had apparently been removed sometime prior to this incident.

The general characteristics of the *D/B Thor* are shown in Table 2-1 (App C EXH02).

**Table 2-1 General Characteristics - *D/B Thor* (App A - Thor Interests doc 2)**

| | |
|---|---|
| Length | 370.73 ft |
| Breadth | 137.80 ft |
| Depth | 26.25 ft |
| Draft | 12.14 ft |
| Flag | Panama |
| Year Built: | 1997 |
| Derrick Crane | AmClyde M-66-DE, 1760 ST |
| Pedestal Crane | 88 ST |
| Utility Crane | Manitowoc 4000 Crawler |
| Anchors | 8-Delta Flipper 8 ST, 5000 ft 2-in wire, 80 ST brake holding |

3

Alan C.
McCLURE ASSOCIATES, INC.
Naval Architects • Engineers



**Figure 2-2: *D/B Thor* (App A - Thor Interests doc 1)**

## 3.0   *CROSBY ENDEAVOR* CHARACTERISTICS

A photograph of the *Crosby Endeavor* can be seen in Figure 3-1.



**Figure 3-1** *Crosby Endeavor*

The general characteristics of the *Crosby Endeavor* (App C EXH03) are shown in Table 3-1. Note that the *Crosby Endeavor* is a model bow tug and does not have push knees at its bow to enable pushing against a vessel with low freeboard.

**Table 3-1 General Characteristics - *Crosby Endeavor***

| | |
|---|---|
| Length | 136.0 ft |
| Breadth | 40.1 ft |
| Depth | 15.6 ft |
| Draft | 13.8 ft Light |
| Propulsion | 15000 Hp, Twin Screw Diesel Engine |
| Bollard Pull | Rated Capacity 102.4 ST (92.9 mt) |
| Flag | USA |
| Official Number | 571494 |
| IMO Number | 7501118 |
| Hull Number | 538 |
| Port of Registry | New Orleans, LA |
| Type of Service | Ocean Towing |
| Year of Build | 1976 |
| Owner(s) | Crosby Marine Transportation, LLC |
| Class | ABS, Towing Service, Certificate 4 Aug 2016 to 31 Jan 2021 |
| Deadweight | 977 LT |

5



### 4.0    EXPERT QUALIFICATIONS AND COMPENSATION

I am President of Alan C. McClure Associates, Inc., (ACMA) a naval architecture and marine engineering firm located in Houston, Texas. ACMA is registered in the State of Texas to provide engineering services. I am a registered Professional Engineer in Texas. I have been involved in the design and analysis of marine and offshore structures, ships, and marine systems for over 42 years. My Curriculum vitae is attached hereto as Appendix D.

I am being compensated at the ACMA standard rate for legal work of $375 per hour for all my time associated with this case. In addition to my time, I have been assisted by other personnel within my office who are being compensated at ACMA standard rates ranging from $85 to $185 per hour commensurate with their technical expertise and experience.

I have been qualified as an expert witness in State and Federal courts. A list of cases where I have testified at deposition and/or trial over the past four years is shown in Appendix D. In addition to the prior work experience detailed therein, I have also been involved as an expert witness in other disputes involving contract disagreements, change orders, intellectual property, structural failures, and accident investigations among other issues which were settled prior to my deposition being taken or going to trial.

### 5.0    SCOPE OF ENGAGEMENT

I have been retained by Jones Walker, LLP on behalf of Crosby Tugs, LLC, to review available information (listed in Appendix A) in regard to the cause of action All Coast, LLC vs. Shore Offshore Services, et al., United States District Court, Eastern District of Louisiana, Civil Action No. 2: 21-cv-00258-JCZ-KWR (lead case), c/w 21-00337, 21-00464, 21-00822, 21-001968, 21-1969, 21-1981, 21-1982, 21-2075, 21-2227, develop opinions as to probable causes of the accident, and to respond as appropriate to allegations from the Plaintiff's experts.

I reviewed the information listed in Appendix A as well as references listed in Appendix B including the OCIMF, ABS MODU Rules, Google Earth, Crosby Tugs, LLC website, Shore Services website, and brought my own education, training, and professional experience to bear to form the opinions expressed herein.

### 6.0    INCIDENT DESCRIPTION

The *Crosby Endeavor* towed the *D/B Thor* from its operating location in the Gulf of Mexico toward shore on October 26 starting at 0950 hours, in response to the approaching hurricane Zeta. The destination of the tow was the Martin Dock in Port Fourchon, LA.

The *Crosby Endeavor* tow line was off at 2308 hours on October 26, 2020, and the *D/B Thor* was moored port side to at the Martin Dock at 0040 October 27, 2020. The *Crosby Endeavor* was released from its tow duties and proceeded to the Crosby Dock at 0745 hours on October 27, 2020 (Crosby 00454 & 02173).


Alan C.
McCLURE ASSOCIATES, INC.
Naval Architects • Engineers

An overlay of the *D/B Thor* at the Martin Dock is shown in Figure 6-1.



**Figure 6-1 *D/B Thor* at Martin Dock**

The *D/B Thor* had a mix of wire and synthetic mooring lines run to the shore side bollards at the Martin Dock. A total of ten mooring lines were run out from the barge to shore. The two mooring lines at either extreme end of the *D/B Thor* were wire lines run from winches with their brakes set to limit the maximum line tension to 80 mt. The remainder of the lines were either 3-strand or 8 strand nylon lines, all of nominally 3 inch diameter secured to bitts on the main deck of the *D/B Thor*.

The *Crosby Endeavor* returned to the *D/B Thor* at 0800 hours on October 28 and was on standby awaiting direction alongside the *D/B Thor*. The *Crosby Endeavor* was tied along the starboard side of the *D/B Thor*, approximately amidships. The *Crosby Endeavor* and the *D/B Thor* both had their respective bows pointing southward.

As the hurricane passed over Port Fourchon the wind speeds at the Martin Dock exceeded 100 mph. At some point during the storm, Bollard 6 broke in half. At approximately 1600 hours on October 28, 2020, the *D/B Thor* mooring lines parted. The *D/B Thor* with the *Crosby Endeavor* alongside, was blown in a northwesterly direction. The *Crosby Endeavor* attempted to utilize its propulsion system to control the movement of the *D/B Thor*. Shortly after the breakaway, the *Crosby Endeavor's* own mooring lines to the *D/B Thor* parted. The *Crosby Endeavor* was not able to remain in contact with the *D/B Thor* and the two vessels drifted independently northward in the high winds.

7

Alan C.
McCLURE ASSOCIATES, INC.
Naval Architects • Engineers

During the process of drifting northward the *D/B Thor* reportedly allided with several moored vessels until the *D/B Thor* eventually ran aground and stopped drifting.

The *Crosby Endeavor* drifted northward until it ran aground. After the storm subsided the *Crosby Endeavor* returned to the Crosby Dock.

## 7.0    DEPLOYED MOORING SYSTEM OF THE *D/B THOR*

The mooring arrangement of the *D/B Thor* at the Martin Dock can be seen in Figure 7-1. Two of the Martin Dock shore side bollards had two lines connected to them. The mooring lines from the *D/B Thor* to the shore side bollards are shown in red.



**Figure 7-1 *D/B Thor* moored port side to at Martin Dock**

Note that Bollard No. 3 was not utilized during this storm.

Alan C.
McCLURE ASSOCIATES, INC.
Naval Architects • Engineers

A series of photographs taken on October 28, 2020 (App A doc 23), prior to the passing of the hurricane, shows the deployed mooring system. See Figure 7-2, Figure 7-3, Figure 7-4 and Figure 7-5.



**Figure 7-2: Wire mooring line to 3-strand nylon pendant, Fwd end of barge to bollard No. 1**



**Figure 7-3 : 8-strand line to bollard No. 2**

9

Alan C.
McCLURE ASSOCIATES, INC.
Naval Architects • Engineers



**Figure 7-4 : Bollard No.s 4, 5, 6, 7, 8; two lines on 5 & 7, 4 & 6 are doubled lines to the same bitt**



**Figure 7-5 : Lines on bollard No.s 5-9, note fence is near side of white container**



Most of the mooring lines were secured to fixed bitts on the main deck of the *D/B Thor*. The pre-tension of these lines was limited to essentially hand tight. The photographs taken on October 28 prior to the storm indicate some lines were tensioned tighter than others, particularly on Bollard 6 and Bollard 5, see Figure 7-5. No other evidence is available as to how consistent the pre-tensions were among all the remaining lines.

## 8.0    WIND FORCE CALCULATION

The General Arrangements drawing of the *D/B Thor* (App C EXH01) was used to determine wind areas for each component from the front and side direction, representing head winds and beam winds respectively. The side profile can be seen in Figure 2-2. All crane booms were assumed to be fully stowed during the incident as confirmed by Figure 8-1.



**Figure 8-1 : Main and Auxiliary crane booms stowed (App A doc 30, Guidry 4.mov)**

Crane luffing and lifting wires were included in the wind area calculations. Industry standard wind drag and height coefficients (App B Ref 1) were included in the calculations for each respective component. The resulting wind areas are presented in Table 8-1. The resulting forces for a 100 mph (44.7 m/s) wind speed for an array of headings is presented in Table 8-2.

### Table 8-1 Wind Area

| Heading | Area m² |
|---|---|
| Head wind | 1311 |
| Beam wind | 2233 |

12

Alan C.
McCLURE ASSOCIATES, INC.
Naval Architects • Engineers

**Table 8-2 Wind Force for 100 mph Wind at varying Headings**

| Heading (Deg) | Force (mt) Longitudinal | Beam | Resultant |
|---|---|---|---|
| 0 | 180.1 | 0.0 | 180.1 |
| 15 | 174.0 | 89.4 | 195.6 |
| 30 | 156.0 | 172.7 | 232.7 |
| 45 | 127.4 | 244.2 | 275.4 |
| 60 | 90.1 | 299.1 | 312.4 |
| 75 | 46.6 | 333.6 | 336.8 |
| 90 | 0.0 | 345.4 | 345.4 |

## 9.0 MOORING SIMULATION

A mooring simulation was performed to analyze the mooring arrangement and line materials deployed during the event for a range of wind speeds and relative headings.

The first set of analyses included only the deployed mooring lines. Additional simulations were performed to include the bollard pull of the *Crosby Endeavor* acting in the direction of its propulsion system, i.e. aligned with the longitudinal axis and along the starboard side of the *D/B Thor*, as well as to simulate the loss of Line 6 due to the broken Bollard 6 to which this line was attached.

The channel at this location is narrow at only 255 m across, such that waves were not a factor in the initial breakaway incident. This was coupled with the wind heading, which at the time of the breakaway, was coming from the shore side pushing the *D/B Thor* away from the bulkhead.

### 9.1 Mooring Simulation Model

The mooring simulation was performed using the ANSYS-AQWA Suite for hydrodynamic and mooring analyses. This software models the hull at a given draft with user defined fairlead locations on the hull. The relative locations of each fairlead connected to each shore side bollard are user defined. For a given water level, the vertical angle of the mooring line is then determined along with its relative horizontal angle to the vessel's longitudinal axis. These angles affect the efficiency of each line to provide restraint for a given environmental direction.

### 9.2 Mooring Line Properties

Mooring line properties are defined as a function of the line size and material along with its specific stretch characteristics and mass per unit length. Each mooring line may have unique characteristics within the software.

The mooring lines deployed by the *D/B Thor* consisted of two different nylon line types, 3 strand and 8 strand as can clearly be seen in Figure 9-1 (Crosby photo 198). The nylon lines were nominally 3 inches in diameter with a nominal breaking

13


Alan C. McCLURE ASSOCIATES, INC.
Naval Architects • Engineers

strength when new of 125.6 mt (App C EXH04 and EXH05). As judged from the photographs taken on October 28, 2020 (Thor 01084) of the mooring lines, see Figure 7-2, Figure 7-3, Figure 7-4, Figure 7-5, the lines were not new. As a result of this observation the breaking strength was reduced to 80% of the MBL resulting in an effective strength limit of 100.5 mt in the mooring simulations for all synthetic lines.



**Figure 9-1 3-strand (green) and 8-strand (red) lines used during hurricane event**

Two mooring lines consisted of a 2 inch mooring wire lead from an onboard winch connected via a shackle to a multi-loop pendant secured to the shore side bollard, as can be seen in Figure 9-2, and Figure 9-3. These wires were led from winches with brake settings of 80 mt which therefore limited their holding capacity to this magnitude. Both of these wire mooring lines spooled completely off their respective winches during the breakaway event.

Alan C.
McCLURE ASSOCIATES, INC.
Naval Architects • Engineers



**Figure 9-2 Wire mooring line shackled to nylon multi-part pennant around Bollard 1**



**Figure 9-3 Wire mooring line shackled to multi-part nylon pennant around Bollard 9**

Wind areas are defined by the user (as presented in Section 8) and factored by the user specified wind velocity.

15

A static mooring analysis was sufficient for this simulation due to the absence of waves prior to the breakaway event. Simulating a fluctuating wind force and including the full dynamics would result in higher line forces than presented in this report.

### 9.3    Water Level at time of Breakaway

The water level at the time of the breakaway was assumed to be even with the top of the bulkhead as can be seen in Figure 9-4. See also Figure 7-5 which was taken sometime prior to the arrival of the storm.



**Figure 9-4 Water level even with top of bulkhead (Guidry Video 4.mov)**

### 9.4    Loss of lines during the breakaway event

Sometime during the breakaway event, Bollard 6 broke in half, thereby releasing the line (Line 6) secured to this bollard (Crosby photo 202). See Figure 9-5.

Alan C. McCLURE ASSOCIATES, INC.
Naval Architects • Engineers



**Figure 9-5 Bollard 6 broken in half**

The two wire mooring lines (lines 1 and 10) which were connected to winches on the barge spooled completely off the winches during the event.

The actual sequence of effective line loss is not known.

### 9.5    Mooring Line Vertical Angle

The vertical angle of the mooring lines reduces the effectiveness of the line to withstand the horizontal forces imposed by wind.

The water level at the time of the hurricane as discussed in Section 9.3 was assumed to be approximately at the top of the bulkhead or essentially the base of the bollards. The draft of the *D/B Thor* was set to 12.1 ft, its storm draft. This placed the barge fairleads 17.4 ft above the shore side bollards. The combination of the vertical distance and the horizontal distance between the fairleads and the shoreside bollards resulted in the vertical angle of the mooring lines.

As can be seen in Table 9-1, the mooring line vertical angle for lines in tension, ranged from 19 to almost 36 degrees in 100 mph winds. These angles account for the movement of the barge relative to the bollards and the stretch of the lines for each respective wind heading.

**Table 9-1 Mooring Line Vertical Angles in 100 mph Wind**

| Load Case | Mooring Lines Vertical Angle (deg) | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | L1 | L2 | L3 | L4 | L5 | L6 | L7 | L8 | L9 | L10 |
| LC1 | 21.70 | 20.20 | 35.60 | slack | 19.60 | slack | slack | 20.00 | slack | slack |
| LC2 | 24.40 | 22.20 | 34.80 | 32.10 | 20.40 | 32.20 | 33.30 | 20.20 | slack | slack |
| LC3 | 22.40 | 20.60 | 32.20 | 31.40 | 19.20 | 31.50 | 32.30 | 19.20 | slack | slack |
| LC4 | 23.90 | 21.80 | 32.90 | 30.50 | slack | 30.90 | 31.80 | 20.00 | 31.40 | 33.60 |
| LC5 | 22.20 | 20.50 | 31.00 | 29.80 | 19.20 | 30.50 | 31.40 | 19.10 | 31.20 | 33.20 |
| LC6 | 23.40 | 21.50 | 31.50 | 29.00 | 20.00 | 29.50 | 30.50 | 19.90 | 30.20 | 33.00 |
| LC7 | 22.20 | 20.50 | 30.20 | 28.60 | 19.30 | 29.20 | 30.30 | 19.30 | 30.20 | 32.90 |
| LC8 | 23.30 | 21.50 | 30.60 | 27.90 | 20.10 | 28.30 | 29.30 | 20.00 | 29.10 | 32.10 |
| LC9 | 22.40 | 20.70 | 29.80 | 27.80 | 19.50 | 28.40 | 29.40 | 19.50 | 29.30 | 32.30 |
| LC10 | 23.50 | 21.70 | 30.10 | 27.10 | 20.30 | 27.50 | 28.50 | 20.10 | 28.20 | 31.10 |
| LC11 | 22.90 | 21.20 | 30.00 | 27.40 | 19.90 | 27.90 | 28.90 | 19.80 | 28.70 | 31.70 |
| LC12 | 24.10 | 22.20 | 30.20 | 26.70 | slack | 27.00 | 28.00 | slack | 27.60 | 30.50 |

At 19 degrees the horizontal force capacity is reduced by 6%, at 30 degrees it is reduced by 13%, and at 36 degrees it is reduced by 19%.

Alan C.
McCLURE ASSOCIATES, INC.
Naval Architects • Engineers

### 9.6    Mooring Line to Shore Side Bollard Arrangement

The mooring lines were led from fairleads on the barge to shore side bollards. The arrangement of the lines is shown in Figure 9-6.



**Figure 9-6 Plan View of Mooring Line Arrangements**

Wind approaching from the bow of the barge will create a longitudinal force pushing the barge along the pier or nominally northward. This must be resisted by the mooring lines. However, only the mooring lines running from the barge to shore in the bow direction will provide any restraining force. As can be seen in Figure 9-6, there are nominally five mooring lines providing any restraint in this direction with most of the load carried by just four lines, L1, L2, L5, & L8.

As the wind direction changed from a head wind (0 Deg) to a port quartering wind (45 Deg), i.e. from the shore side toward the barge, all of the mooring lines provide some resistance. The wide variance of the mooring line horizontal and vertical angles, coupled with the variation in length and their respective initial tension caused some lines to carry more load than others.

In the abeam direction, most of the load would be taken by six lines (3, 4, 6, 7, 9, 10) since they are short and run almost perpendicular to the longitudinal axis of the barge.

Alan C.
McCLURE ASSOCIATES, INC.
Naval Architects • Engineers

The center of hurricane Zeta, according to NOAA, passed Port Fourchon about 24 miles to the west northwest, see Figure 9-7. This explains the wide variation in wind direction experienced by the *D/B Thor* during this incident as well as the high intensity wind speeds.



**Figure 9-7 Hurricane ZETA Track in proximity to Port Fourchon (Ref. 1)**

## 10.0    MOORING SIMULATION RESULTS

The mooring simulation results are presented in Table 10-1 for 100 mph winds and Table 10-2 for 120 mph winds, both simulations are without any assistance from the *Crosby Endeavor*. The initial results assume all lines remain connected to the shore side bollards and all bollards remain intact. The tables present the percentage of MBL (minimum breaking load) or the winch brake limit (in the case of lines 1 & 10) for each respective line. In these analyses, the lines on any winch which reaches 100% is treated as a restraining force meaning the line force cannot increase irrespective of the distance from the winch to the shoreside bollard, thereby simulating a line being paid out under the winch braking limit. The line tension will actually go down over time as the drum rotates and the brake lining heats up.

**Table 10-1 100 mph winds w/o assistance from *Crosby Endeavor***

| Mooring Line Force as % of MBL | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Moorings | AQWA Direction | True Heading | Wind Speed | Tug | L1 | L2 | L3 | L4 | L5 | L6 | L7 | L8 | L9 | L10 |
| | *deg* | *deg* | *m/s* | *Yes/No* | % | % | % | % | % | % | % | % | % | % |
| All intact | 0 | 166 | 45 | No | 92 | 54 | 0 | 0 | 31 | 0 | 0 | 48 | 0 | 13 |
| All intact | 15 | 151 | 45 | No | 100 | 66 | 4 | 0 | 38 | 0 | 0 | 27 | 0 | 0 |
| All intact | 30 | 136 | 45 | No | 79 | 56 | 49 | 17 | 43 | 9 | 6 | 38 | 0 | 0 |
| All intact | 45 | 121 | 45 | No | 80 | 55 | 61 | 34 | 42 | 25 | 22 | 36 | 13 | 4 |
| All intact | 60 | 106 | 45 | No | 79 | 53 | 69 | 47 | 37 | 39 | 34 | 31 | 25 | 16 |
| All intact | 75 | 91 | 45 | No | 73 | 48 | 73 | 57 | 32 | 49 | 44 | 24 | 35 | 27 |
| All intact | 90 | 76 | 45 | No | 62 | 39 | 71 | 63 | 24 | 55 | 50 | 17 | 42 | 34 |

19

**Table 10-2 120 mph winds w/o assistance from *Crosby Endeavor***

| Mooring Line Force as % of MBL | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Moorings | AQWA Direction | True Heading | Wind Speed | Tug | L1 | L2 | L3 | L4 | L5 | L6 | L7 | L8 | L9 | L10 |
| | deg | deg | m/s | Yes/No | % | % | % | % | % | % | % | % | % | % |
| All intact | 0 | 166 | 54 | No | 100 | 78 | 0 | 0 | 49 | 0 | 0 | 65 | 0 | 19 |
| All intact | 15 | 151 | 54 | No | 100 | 89 | 23 | 0 | 54 | 0 | 0 | 42 | 0 | 0 |
| All intact | 30 | 136 | 54 | No | 100 | 78 | 71 | 25 | 60 | 13 | 10 | 53 | 0 | 0 |
| All intact | 45 | 121 | 54 | No | 100 | 77 | 86 | 47 | 57 | 36 | 31 | 49 | 18 | 8 |
| All intact | 60 | 106 | 54 | No | 100 | 74 | 96 | 65 | 51 | 53 | 48 | 42 | 34 | 26 |
| All intact | 75 | 91 | 54 | No | 100 | 67 | 101 | 78 | 44 | 67 | 61 | 34 | 49 | 43 |
| All intact | 90 | 76 | 54 | No | 86 | 54 | 97 | 84 | 33 | 75 | 69 | 24 | 58 | 53 |

The above results indicate that Line 1 reached its winch braking limit and paid out for almost all wind headings in 120 mph winds and that Line 3 exceeded its breaking limit at 75 degree heading winds. Line 3 was very close to the MBL limit at 60 and 90 degrees as well in 120 mph winds. This simulation assumes all lines remained connected to shoreside bollards throughout the event. However, the facts indicate that this was not actually the case as at least one bollard broke during the event thereby releasing one line.

Mooring simulation results for 120 mph winds with the bollard pull of the *Crosby Endeavor* applied in the longitudinal direction and at the outboard side of the *D/B Thor* are presented in Table 10-3.

**Table 10-3 120 mph winds w/assistance from *Crosby Endeavor***

| Mooring Line Force as % of MBL | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Moorings | AQWA Direction | True Heading | Wind Speed | Tug | L1 | L2 | L3 | L4 | L5 | L6 | L7 | L8 | L9 | L10 |
| | deg | deg | m/s | Yes/No | % | % | % | % | % | % | % | % | % | % |
| All intact | 0 | 166 | 54 | Yes | 95 | 54 | 0 | 0 | 26 | 0 | 0 | 38 | 0 | 0 |
| All intact | 15 | 151 | 54 | Yes | 81 | 56 | 38 | 2 | 40 | 0 | 0 | 33 | 0 | 0 |
| All intact | 30 | 136 | 54 | Yes | 82 | 57 | 62 | 35 | 42 | 26 | 23 | 36 | 13 | 4 |
| All intact | 45 | 121 | 54 | Yes | 88 | 59 | 80 | 56 | 40 | 47 | 42 | 32 | 31 | 22 |
| All intact | 60 | 106 | 54 | Yes | 87 | 56 | 91 | 74 | 36 | 64 | 58 | 27 | 48 | 41 |
| All intact | 75 | 91 | 54 | Yes | 80 | 50 | 97 | 87 | 29 | 78 | 72 | 20 | 63 | 58 |
| All intact | 90 | 76 | 54 | Yes | 64 | 38 | 94 | 94 | 19 | 87 | 80 | 10 | 73 | 70 |

The results of this simulation indicate that the assistance of the *Crosby Endeavor* might have prevented Line 1 from spooling off its winch by keeping the line tension from reaching the winch braking limit. However, it should be noted that tensions in other lines is higher with the tug assistance, in particular the tension on Line 6 has increased from 75% to 87%.

As noted in Section 8.3 above, Bollard 6 broke in half thereby releasing the line connected to this bollard.

A simulation of losing Line 6 which was connected to Bollard 6 was run for both wind speeds without and with the assistance of the *Crosby Endeavor*, see Table 10-4, Table 10-5, Table 10-6, and Table 10-7.

Alan C.
McCLURE ASSOCIATES, INC.
Naval Architects • Engineers

**Table 10-4 Loss of Bollard 6 and 100 mph winds w/o assistance from *Crosby Endeavor***

| Mooring Line Force as % of MBL | | | | | | | | | | | | | | |
| Moorings | AQWA Direction | True Heading | Wind Speed | Tug | L1 | L2 | L3 | L4 | L5 | L6 | L7 | L8 | L9 | L10 |
| | deg | deg | m/s | Yes/No | % | % | % | % | % | % | % | % | % | % |
| Line 6 Gone | 0 | 166 | 45 | No | 92 | 54 | 0 | 0 | 31 | | 0 | 48 | 0 | 13 |
| Line 6 Gone | 15 | 151 | 45 | No | 100 | 66 | 4 | 0 | 38 | | 0 | 27 | 0 | 0 |
| Line 6 Gone | 30 | 136 | 45 | No | 79 | 56 | 50 | 19 | 43 | | 8 | 38 | 1 | 0 |
| Line 6 Gone | 45 | 121 | 45 | No | 81 | 56 | 65 | 39 | 41 | | 27 | 35 | 18 | 8 |
| Line 6 Gone | 60 | 106 | 45 | No | 81 | 54 | 75 | 55 | 37 | | 41 | 29 | 31 | 23 |
| Line 6 Gone | 75 | 91 | 45 | No | 76 | 49 | 81 | 67 | 31 | | 53 | 22 | 44 | 36 |
| Line 6 Gone | 90 | 76 | 45 | No | 65 | 40 | 80 | 74 | 22 | | 60 | 15 | 52 | 45 |

**Table 10-5 Loss of Bollard 6 and 120 mph winds w/o assistance from *Crosby Endeavor***

| Mooring Line Force as % of MBL | | | | | | | | | | | | | | |
| Moorings | AQWA Direction | True Heading | Wind Speed | Tug | L1 | L2 | L3 | L4 | L5 | L6 | L7 | L8 | L9 | L10 |
| | deg | deg | m/s | Yes/No | % | % | % | % | % | % | % | % | % | % |
| Line 6 Gone | 0 | 166 | 54 | No | 100 | 78 | 0 | 0 | 49 | | 0 | 65 | 0 | 19 |
| Line 6 Gone | 15 | 151 | 54 | No | 100 | 89 | 23 | 0 | 54 | | 0 | 42 | 0 | 0 |
| Line 6 Gone | 30 | 136 | 54 | No | 100 | 77 | 73 | 28 | 60 | | 13 | 53 | 1 | 0 |
| Line 6 Gone | 45 | 121 | 54 | No | 100 | 78 | 92 | 54 | 57 | | 38 | 48 | 24 | 15 |
| Line 6 Gone | 60 | 106 | 54 | No | 100 | 75 | 105 | 75 | 51 | | 57 | 41 | 44 | 37 |
| Line 6 Gone | 75 | 91 | 54 | No | 100 | 68 | 112 | 91 | 43 | | 73 | 32 | 60 | 55 |
| Line 6 Gone | 90 | 76 | 54 | No | 90 | 56 | 109 | 99 | 32 | | 82 | 21 | 71 | 68 |

**Table 10-6 Loss of Bollard 6 and 100 mph winds w/assistance from *Crosby Endeavor***

| Mooring Line Force as % of MBL | | | | | | | | | | | | | | |
| Moorings | AQWA Direction | True Heading | Wind Speed | Tug | L1 | L2 | L3 | L4 | L5 | L6 | L7 | L8 | L9 | L10 |
| | deg | deg | m/s | Yes/No | % | % | % | % | % | % | % | % | % | % |
| Line 6 Gone | 0 | 166 | 45 | Yes | 56 | 31 | 0 | 0 | 10 | | 0 | 17 | 0 | 0 |
| Line 6 Gone | 15 | 151 | 45 | Yes | 43 | 30 | 25 | 11 | 24 | | 4 | 20 | 0 | 0 |
| Line 6 Gone | 30 | 136 | 45 | Yes | 51 | 34 | 45 | 34 | 24 | | 25 | 20 | 19 | 9 |
| Line 6 Gone | 45 | 121 | 45 | Yes | 57 | 37 | 61 | 52 | 23 | | 41 | 17 | 34 | 25 |
| Line 6 Gone | 60 | 106 | 45 | Yes | 58 | 36 | 73 | 69 | 20 | | 55 | 12 | 48 | 40 |
| Line 6 Gone | 75 | 91 | 45 | Yes | 53 | 31 | 79 | 80 | 14 | | 67 | 7 | 61 | 55 |
| Line 6 Gone | 90 | 76 | 45 | Yes | 44 | 24 | 80 | 88 | 7 | | 75 | 0 | 69 | 65 |

**Table 10-7 Loss of Bollard 6 and 120 mph winds w/assistance from *Crosby Endeavor***

| Mooring Line Force as % of MBL | | | | | | | | | | | | | | |
| Moorings | AQWA Direction | True Heading | Wind Speed | Tug | L1 | L2 | L3 | L4 | L5 | L6 | L7 | L8 | L9 | L10 |
| | deg | deg | m/s | Yes/No | % | % | % | % | % | % | % | % | % | % |
| Line 6 Gone | 0 | 166 | 54 | Yes | 95 | 54 | 0 | 0 | 26 | | 0 | 38 | 0 | 0 |
| Line 6 Gone | 15 | 151 | 54 | Yes | 81 | 56 | 38 | 2 | 40 | | 0 | 33 | 0 | 0 |
| Line 6 Gone | 30 | 136 | 54 | Yes | 83 | 57 | 67 | 40 | 42 | | 28 | 35 | 18 | 9 |
| Line 6 Gone | 45 | 121 | 54 | Yes | 90 | 60 | 87 | 66 | 40 | | 50 | 31 | 39 | 31 |
| Line 6 Gone | 60 | 106 | 54 | Yes | 91 | 58 | 102 | 87 | 35 | | 70 | 26 | 59 | 54 |
| Line 6 Gone | 75 | 91 | 54 | Yes | 85 | 52 | 110 | 103 | 28 | | 86 | 18 | 76 | 74 |
| Line 6 Gone | 90 | 76 | 54 | Yes | 70 | 41 | 109 | 111 | 18 | | 96 | 8 | 88 | 88 |

The simulation results show that in 120 mph winds imposed on the *D/B Thor* at relative headings from 60 to 90 degrees (i.e. abeam), the assistance of the full bollard pull from the *Crosby Endeavor* was not sufficient to maintain line utilizations below 100% on lines 3 and 4. Line 7 was close to the breaking limit at



96% for the 90 Degree 120 mph wind conditions. As Lines 3 and 4 exceeded their breaking strength and parted, fewer lines were available to withstand the wind forces and the *D/B Thor* would be pushed away from the dock as the remaining lines either broke or spooled off the winches.

The bollard pull of the *Crosby Endeavor* is 102.4 ST (92.9 mt) which equates to 26.9% (92.9 mt /345.4 mt) of the total force for a beam wind of 100 mph. When the wind speed increased to 120 mph, the beam wind force increased to 497.4 mt which meant the bollard pull only represented 18.7% of the beam wind force. This comparison assumes that the *Crosby Endeavor* could actually apply all of its bollard pull in the beam direction. This is not the case due to the bow shape of the *Crosby Endeavor*, which has a model bow shape without push knees. Changing the tug orientation relative to the barge to accommodate the change in wind direction would require changing the tug to barge mooring lines during the storm which is not a practical or safe action to be taking during high winds such as occurred during this event.

The assistance of the *Crosby Endeavor* would not have made a difference in the outcome of this breakaway event in these storm conditions. With Line 1 coming from a winch with a lower line tension limit and the known loss of a shoreside bollard, the *D/B Thor* mooring system, as deployed, was simply not capable of withstanding the storm force winds.

## 11.0   RESPONSE TO PLAINTIFF'S EXPERTS

I have reviewed plaintiff's expert reports by Riven and McSwain.

### 11.1   Response to Plaintiff's Expert Mr. Riven

Mr. Riven claims Crosby should have provided more tugs and different bow types of tugs to hold the *D/B Thor* in place. Mr. Riven ignores who is responsible for requesting resources to support the *D/B Thor*. Shore Offshore Services is the owner of the *D/B Thor* and is therefore the responsible party to hire adequate tug services to hold their barge in place at the dock. Crosby is not responsible to decide what resources are needed to hold the barge in place, the Owners of the *D/B Thor* are.

Shore Offshore Services should have deployed additional equipment to improve the mooring arrangements and utilized more of the existing equipment already onboard the *D/B Thor*.

Port of refuge location for *D/B Thor* – Mr. Riven claims Crosby is at fault for not towing the *D/B Thor* to an alternate location than Martin Dock in Port Fourchon (3). Crosby has no control over where the *D/B Thor* is towed. Crosby is hired to move the *D/B Thor* at the explicit direction of the Owners of the *D/B Thor*. Crosby does not have the responsibility or obligation to make the decision as to where to tow the *D/B Thor* in the event of an impending hurricane (7).

Alan C.
McCLURE ASSOCIATES, INC.
Naval Architects • Engineers

Mr. Riven claims Crosby should have performed a mooring analysis (6). Crosby is not a mooring company, does not advertise itself as such, and has no expertise to perform a mooring analysis as determined by my own review of available on-line marketing material. The responsibility to perform a mooring analysis is clearly the owners of the *D/B Thor*. Shore Offshore Services should have obtained support from Martin as to the arrangement and strength of the shoreside bollards at the Martin Dock facility. Shore Offshore Services should have anticipated the hurricane season and contracted for a hurricane mooring plan and alternate ports of refuge.

I have performed such hurricane mooring analyses in preparation of the hurricane season for multiple vessels and locations. Such a mooring study will consider wind speed and direction, storm surge, configuration of the mooring facilities and strength of each shoreside bollard, as well as the potential for waves and current at the particular site. A mooring study such as this requires approximately 4 weeks to complete at a nominal cost of $30,000.

## 11.2  Response to Plaintiff's Expert Mr. McSwain

Mr. McSwain claims the tug *Crosby Endeavor* was at fault for not providing sufficient holding capacity to the *D/B Thor* during the hurricane event.

Mr. McSwain's own report showed the wind force on the *D/B Thor* during the event ranged from 210 mt to a high of 472 mt. Even at the lowest sustained wind speed of 100 mph, the wind drag force exceeded the *Crosby Endeavor* bollard pull capacity (92.9 mt) by 226%. Winds gusted up to a maximum of 150 mph but the duration of this magnitude is not clear. Most probable wind gusts of 30 seconds duration occurred with wind speeds of at least 120 mph. At this wind speed the drag force increased to 302 mt $(120/100)^2$ x 210) which is more than 327% above the tug bollard pull capacity.

I disagree with Mr. McSwain that the *Crosby Endeavor* was at fault for not providing sufficient holding capacity to the *D/B Thor* during the hurricane event. The wind forces significantly exceeded the bollard pull capacity and hence there was nothing further the *Crosby Endeavor* could have done. Bollard pull is a function of the installed power and configuration of its propulsion system. The captain of the *Crosby Endeavor* can only control the throttle of the tug up to 100% of this installed system.

A further note regarding the *Crosby Endeavor* is that the Captain of the *Crosby Endeavor* is on the opposite side of the *D/B Thor* from the bollards and the mooring lines and hence has no visible means to judge what is happening with the mooring lines. The Captain of the *Crosby Endeavor* must take his direction from the Barge Master of the *D/B Thor*.

Mr. McSwain provided insufficient calculations and no explanation of how the *Crosby Endeavor* could possibly provide sufficient holding capacity in these conditions no matter how the tug was configured to the side of the *D/B Thor*. Clearly

23


Alan C.
McCLURE ASSOCIATES, INC.
Naval Architects • Engineers

if the *Crosby Endeavor* had pushed against the side of the *D/B Thor* during this event, her bollard pull capacity was well below the wind drag forces.

Mr. McSwain did not perform a mooring analysis or properly consider the actual effectiveness of any of the *D/B Thor* mooring lines due to the overall geometry of the *D/B Thor* mooring fairleads, water level during the event, shore side bollard placement and their elevation relative to the *D/B Thor* main deck during the event. Mr. McSwain did not acknowledge that one shore side bollard broke in half and two of the mooring lines were on winches which had a brake set limit of 80 mt, 25% below the fixed mooring line nominal capacity. Eventually both of these mooring lines spooled completely off the winches.

The *Crosby Endeavor* was hired to assist the *D/B Thor* during the hurricane event. The *Crosby Endeavor* was not hired to guarantee the *D/B Thor* remained in place. The *Crosby Endeavor* was not capable of holding the *D/B Thor* in place during the wind conditions experienced during this event.

The captain and crew of the *Crosby Endeavor* have no knowledge or control of the shore side mooring components nor the mooring lines used by the crew of the *D/B Thor* to secure the *D/B Thor* to the shore side bollards. The *Crosby Endeavor* can only provide a counter force up to the capacity of her bollard rating (combined hull shape, propeller, and engine characteristics).

## 12.0    CONCLUSIONS

The *D/B Thor* was moored to the shore side bollards at the Martin Dock.

The mooring system deployed by the crew of the *D/B Thor* was inadequate to withstand the hurricane force winds. The mooring lines should have been run to different bollards thereby making the lines longer and reducing their vertical angle. Additional mooring lines should have been run from the outboard corners of the *D/B Thor* to the shore side bollards at each end of the barge to provide more resistance to a beam wind. All shore side bollards should have been utilized with additional mooring lines.

In addition to the deficient mooring line arrangements, the use of mixed mooring line types, nylon and wire, is not good marine practice as the stretch of wire is considerably less than that of nylon causing wide variations in load sharing. The visible difference in initial line tensions even among the nylon lines was also problematic. The variation in initial tension caused some lines to take more load than others hence the load was not shared equally among all lines for a given wind heading.

Contingency plans such as enabling deployment of the onboard anchor (with its chain rode) as well as several of the 8 point anchors with wire which are spooled off of winches fitted with brakes, should have all been put into place in the event the mooring lines parted. This was apparently not done as indicated by the long distance

Alan C.
McCLURE ASSOCIATES, INC.
Naval Architects • Engineers

the barge drifted before grounding and there is no testimony to indicate such an action was contemplated by the crew onboard the *DB Thor* during the event.

Could the *Crosby Endeavor* have prevented the *D/B Thor* from moving away from the Martin Dock during the high wind event? The short answer is no. Two key factors which prevented the *Crosby Endeavor* from preventing the *D/B Thor* from moving away from the dock are the available bollard pull capacity and the shape of the bow of the *Crosby Endeavor*.

The bollard pull capacity is a function of the installed horsepower and is fixed, in this case at 92.9 mt.

The *Crosby Endeavor* has a model bow without push knees, hence it is not designed to push perpendicularly against the side of a barge such as the *D/B Thor*. The *Crosby Endeavor* is an ocean-going tow vessel with twin screws on shafts. The bollard pull is only fully effective in the ahead direction and somewhat less in the astern direction. There is very little side thrust which can be generated by this towing vessel. This means that in order to utilize its full bollard pull capacity most effectively, the *Crosby Endeavor* would have had to position itself perpendicular to the side of the barge. If the *Crosby Endeavor* had indeed pushed against the side of the barge at full bollard capacity, the barge and possibly the tug would have been damaged.

As can be seen in Table 8-2, the required total force to hold the *D/B Thor* against the dock ranges from two to four times the bollard pull rating of the *Crosby Endeavor* in 100 mph winds. In winds of 120 mph, which were widely reported by other vessels in the immediate area at the time of the breakaway, the force ranges from 3 to almost 6 times depending on the relative heading of the wind. At a 30-degree relative heading, the wind force at 120 mph (232.7 mt) was 2.5 times the 92.9 mt bollard pull capacity. This clearly shows that the *Crosby Endeavor* could not have prevented the *D/B Thor* from moving away from the dock after the breakaway occurred.

If the *Crosby Endeavor* had imposed its bollard pull in the ahead direction while tied alongside the barge, this would have imposed a rotational force on the *D/B Thor* due to the location of the tug on the starboard side, causing some mooring lines to increase in tension. This would only exacerbate the mooring line tensions and make the situation worse.

When the *D/B Thor* allided with other vessels, as apparently shown in the video and indicated by the person holding the video camera (as captured by the audio), there was no significant jarring or large deacceleration as would be indicated by a person holding a cell phone losing their balance and or at a minimum the camera suddenly moving. This lack of large deacceleration is not surprising for several reasons. One is the large mass of the *D/B Thor* itself. The smaller vessels which appeared to be allided against were moored to pilings on the side of the channel which are not stiff. The pilings get pushed over and the smaller vessels get pushed out of the way thereby lessening the impact force. If the other vessels had been moored alongside a

Alan C.
McCLURE ASSOCIATES, INC.
Naval Architects • Engineers

fixed bulkhead, then the situation would have been very different and a large deacceleration would have been expected.


**Disclaimer**

The opinions expressed herein are those of Scott C. McClure. I reserve the right to augment and or change my opinions should additional information be made available for my review and consideration.

Scott C. McClure, P.E.

Alan C.
McCLURE ASSOCIATES, INC.
Naval Architects • Engineers

# APPENDIX A – LIST OF DOCUMENTS REVIEWED

A. *CROSBY ENDEAVOR*
  1. **PHOTOS**
  2. **PortVision**
     1. *CROSBY ENDEAVOR* Oct 26-28
     2. Louisiana International Marine Oct 26-28
     3. La Commander _ LA International Marine.pdf
     4. La Elite _ LA International Marine.pdf
     5. La Madonna _ LA International Marine.pdf
     6. PortVision - Google Chrome 2020-11-13 08-11-15.mp4
  - **Crosby Documents**
     1. CROSBY 000446-000456.pdf
        o Daily Logs October 20, 2020
     2. CROSBY 000457-000473.pdf
        o Daily Logs October 15, 2020

     3. CROSBY 000474-000886.pdf

        o **Towing Safety & Environmental Management System Manual**
     4. CROSBY 001419-001420.pdf
        o USCG Marine Safety Bulletin: Setting YANKEE
     5. CROSBY 001421.pdf
        o USCG Marine Safety Bulletin: Set Port Condition Normal: Port Open with Restrictions
     6. CROSBY 001422-001516.pdf
        o USCG Local Notice to Mariners
     7. CROSBY 002162-002174.pdf
        o Invoices
     8. CROSBY 002277-002489.pdf
        o ABS Class Survey Report
     9. CROSBY 002490-002491.pdf
        o Certificate of Inspection

     10. CROSBY 002492.pdf

        o *CROSBY ENDEAVOR* specs

     11. CROSBY 002494.pdf

        o General Arrangement

     12. CROSBY 002495.pdf

        o Certificate of Break Force



13. CROSBY 002496.pdf

   o   Test Certificate

14. CROSBY 002497-002498.pdf

   o   2020 Weekly Meeting and Drill Schedule

15. CROSBY 002499-002504.pdf

   o   Voyage Assessment

16. CROSBY 002505-002508.pdf

   o   Work/rest Hours Form

17. CROSBY 002509-002515.pdf

   o   Job Safety Analysis

18. CROSBY 002516-002544.pdf

   o   Daily Work Ticket – Murry Gisclair

19. CROSBY 002545-002627.pdf

   o   Daily Work Ticket – Kirk Foret

20. CROSBY 002628.pdf

   o   Visitor Sign in Sheet

21. CROSBY 002629-002638.pdf

   o   Invoice 2391176

22. CROSBY 002639-002643.pdf

   o   October 15-logbook

23. CROSBY 002644-002646.pdf

   o   Vessel Safety and Environmental Meeting Form

24. Rosepoint Data

- **Propounded to THOR Interests**



1. 2022.03.01. THOR Clmt.'s 1st ROGs RFPs RFAs to Shore Modern Fieldwood.pdf

2. 2022.11.30. Clmts 2nd RFP to Thor Interests.pdf

3. Gibilterra-Caton-Sims Texts.pdf

4. Gibilterra-Douglas Texts.pdf

5. Gibilterra-Dupont Texts.pdf

6. Gibilterra-Gonzales Texts.pdf

7. Gibilterra-Grace Texts.pdf

8. Gibilterra-Grace-Sims Texts.pdf

9. Gibilterra-Gunter Texts.pdf

10. Gibilterra-Laborde Marine Texts.pdf

11. Gibilterra-Scheyd (Laborde Marine) Texts.pdf

12. Gibilterra-Sims Texts.pdf

13. Gibilterra-Sims-Arana Texts.pdf

14. Gibilterra-Smith (Guice Offshore) Texts.pdf

15. RFP 01. Deck Log (21-28 Oct. 2020).pdf

16. RFP 01. DPRs (21-25 Oct. 2020).pdf

17. RFP 01. DPRs (28 Oct. 2020).pdf

18. RFP 02. WeatherOps ST 22 Marine Daily Planner (Oct. 2020).pdf

19. RFP 02. WeatherOps WD 46 Marine Daily Planner (Oct. 2020).pdf

20. RFP 03. Post Job Report Roster (30 Oct. 2020).pdf

21. RFP 04. HSE Manual Index.pdf

22. RFP 06. JSAs (26-28 Oct. 2020).pdf

23. RFP 06. Safety Meeting Rosters (Oct. 2020)_Part1.pdf



24. RFP 06. Safety Meeting Rosters (Oct. 2020)_Part2.pdf

25. RFP 07. Hurricane & Tornado Safety Plan.pdf

26. RFP 10. Cruz Video.mov

27. RFP 10. Guidry Video 1.MOV

28. RFP 10. Guidry Video 2.MOV

29. RFP 10. Guidry Video 3.MOV

30. RFP 10. Guidry Video 4.MOV

31. RFP 10. Guidry Video 5.MOV

32. RFP 10. Guidry Video 6.MOV

33. RFP 10. Guidry Video 7.MOV

34. RFP 10. Waren Video.mov

35. RFP 11. Anchor Winches Overview.pdf

36. RFP 11. Mooring Equipment Drawings.pdf

37. RFP 11. Mooring Force Calculation Book.pdf

38. RFP 11. Oil States Records (2020).pdf

39. RFP 11. Oil States Service Orders (21.05.17 and 21.05.18).pdf

40. RFP 11. SBB Wire Log.pdf

41. RFP 11. SS Wire Log.pdf

42. RFP 11. SWWR Invoices.pdf

43. RFP 13. Douglas. HR File_Redacted.pdf

44. RFP 13. Douglas. Training File_Redacted.pdf

45. RFP 14. Shore Offshore Organizational Chart (Dec. 2019).pdf

46. RFP 17. YH1849-Dawn Services; MV *Crosby Endeavor* Invoice 10329_3.31.2021.pdf



47. RFP 17. YH1869-Dawn Services; Invoice 10208_11.11.2020.pdf

48. RFP 17. YH1882-Dawn Services; Invoices 10204 & 10209_11.11.2020.pdf

49. RFP 17. YH1883-Dawn Services; Invoice 10205_11.10.2020.pdf

50. RFP 17. YH1910-Dawn Services; MV La Madonna Invoice 10203_11.11.2020.pdf

51. RFP 19. RigNet Call Log (23-28 Oct. 2020).pdf

52. RFP 23. Fieldwood_Shore Contract_Signed 2.24.2020.pdf

53. RFP 24. General Liability P & I.pdf

54. RFP 24. POLI Umbrella.pdf

55. RFP 28. PDF E-mails. 23 Oct. 2020 _Part1.pdf

   o  RE: Invest 95L - Significant Tropical Disturbance Advisory - Atlantic - Friday, October 23, 2020

56. RFP 28. PDF E-mails. 23 Oct. 2020_Part10.pdf

   o  RE: Ankor material barge setup - CBR793

57. RFP 28. PDF E-mails. 23 Oct. 2020_Part2.pdf

   o  CLS Time Sheet

58. RFP 28. PDF E-mails. 23 Oct. 2020_Part3.pdf

   o  RE: FW: Miss Jill

59. RFP 28. PDF E-mails. 23 Oct. 2020_Part4.pdf

   o  RE: Well Permits SS259JA

60. RFP 28. PDF E-mails. 23 Oct. 2020_Part5.pdf

   o  RE: Shore Customer draft for review and approval

61. RFP 28. PDF E-mails. 23 Oct. 2020_Part6.pdf

   o  RE: JMC 252

62. RFP 28. PDF E-mails. 23 Oct. 2020_Part7.pdf



o    FW: Shore Customer draft for review and approval

63. RFP 28. PDF E-mails. 23 Oct. 2020_Part8.pdf

o    RE: JMC 252 on-hire survey

64. RFP 28. PDF E-mails. 23 Oct. 2020_Part9.pdf

o    RE: Revised Deck Barge

65. RFP 28. PDF E-mails. 24 Oct. 2020_Part1.pdf

o    Invest 95L - Significant Tropical Disturbance Advisory - Atlantic - Saturday, October 24, 2020

66. RFP 28. PDF E-mails. 24 Oct. 2020_Part2.pdf

o    RE: Marine Forecast - Shore Offshore Services - Gulf of Mexico - October 24, 2020 - 0600 LT

67. RFP 28. PDF E-mails. 24 Oct. 2020_Part3.pdf

o    RE: Invest 95L - Significant Tropical Disturbance Advisory - Atlantic - Saturday, October 24, 2020

68. RFP 28. PDF E-mails. 24 Oct. 2020_Part4.pdf

o    RE: Shore Customer draft for review and approval

69. RFP 28. PDF E-mails. 24 Oct. 2020_Part5.pdf

o    Re: Daily Report Review

70. RFP 28. PDF E-mails. 24 Oct. 2020_Part6.pdf

o    FW: Tropical Planner - Atlantic - Saturday, October 24, 2020

71. RFP 28. PDF E-mails. 24 Oct. 2020_Part7.pdf

o    RE: Tropical Depression Twenty Eight - Active Storm Advisory - Atlantic - Saturday, October 24, 2020

72. RFP 28. PDF E-mails. 25 Oct. 2020 _Part1.pdf

o    RE: Tropical Storm Zeta - Active Storm Advisory - Atlantic - Sunday, October 25, 2020

73. RFP 28. PDF E-mails. 25 Oct. 2020 _Part2.pdf

o    RE: pics of times

74. RFP 28. PDF E-mails. 25 Oct. 2020 _Part3.pdf


Alan C.
McCLURE ASSOCIATES, INC.
Naval Architects • Engineers

o   RE: PHOTOS

75. RFP 28. PDF E-mails. 25 Oct. 2020 _Part4.pdf

o   RE: Photos of logs

76. RFP 28. PDF E-mails. 25 Oct. 2020 _Part5.pdf

o   Re: Marine Forecast - Shore Offshore Services - Gulf of Mexico - October 25, 2020 - 0600 LT

77. RFP 28. PDF E-mails. 25 Oct. 2020 _Part6.pdf

o   Re: Marine Forecast - Shore Offshore Services - Gulf of Mexico - October 25, 2020 - 0600 LT

78. RFP 28. PDF E-mails. 25 Oct. 2020 _Part7.pdf

o   Tropical Planner - Atlantic - Sunday, October 25, 2020

79. RFP 28. PDF E-mails. 25 Oct. 2020 _Part8.pdf

o   FW: Tropical Planner - Atlantic - Sunday, October 25, 2020

80. RFP 28. PDF E-mails. 25 Oct. 2020 _Part9.pdf

o   Re: Update

81. RFP 28. PDF E-mails. 26 Oct. 2020_Part1.pdf

o   Re: Explosives

82. RFP 28. PDF E-mails. 26 Oct. 2020_Part2.pdf

o   Re: FW: Tropical Planner - Atlantic - Monday, October 26, 2020

83. RFP 28. PDF E-mails. 26 Oct. 2020_Part3.pdf

o   Re: Signed timesheets

84. RFP 28. PDF E-mails. 26 Oct. 2020_Part4.pdf

o   Re: Shore Customer draft for review and approval

85. RFP 28. PDF E-mails. 26 Oct. 2020_Part5.pdf

o   Re: Explosives

86. RFP 28. PDF E-mails. 26 Oct. 2020_Part6.pdf



o  RE: On / Off Hire Agreement - M/V La Elite (REQ # YH1838)

87. RFP 28. PDF E-mails. 26 Oct. 2020_Part7.pdf

o  WD45/46 Anchorage

88. RFP 28. PDF E-mails. 26 Oct. 2020_Part8.pdf

o  Re: CBR invoice question

89. RFP 28. PDF E-mails. 26 Oct. 2020_Part9.pdf

o  Re: Marine Forecast - Shore Offshore Services - Gulf of Mexico - October 26, 2020 - 1800 LT

90. RFP 28. PDF E-mails. 27 Oct. 2020_Part1.pdf

o  Re: FW: Personell offload

91. RFP 28. PDF E-mails. 27 Oct. 2020_Part10.pdf

o  Re: weather-storm advisory

92. RFP 28. PDF E-mails. 27 Oct. 2020_Part2.pdf

o  Re: FW: Marine Forecast - Shore Offshore Services - Gulf of Mexico - October 27, 2020 - 0600 LT

93. RFP 28. PDF E-mails. 27 Oct. 2020_Part3.pdf

o  Re: Weather data

94. RFP 28. PDF E-mails. 27 Oct. 2020_Part4.pdf

o  Re: FW: Gulf of Mexico Planner - Tuesday, October 27, 2020

95. RFP 28. PDF E-mails. 27 Oct. 2020_Part5.pdf

o  Re: 10-26-2020

96. RFP 28. PDF E-mails. 27 Oct. 2020_Part6.pdf

o  Re: Shore Hazard Checklist

97. RFP 28. PDF E-mails. 27 Oct. 2020_Part7.pdf

o  Re: SHORE-JSA Hazard Checklist

98. RFP 28. PDF E-mails. 27 Oct. 2020_Part8.pdf


Alan C.
McCLURE ASSOCIATES, INC.
Naval Architects • Engineers

- o Re: see attached req for barge

99. RFP 28. PDF E-mails. 27 Oct. 2020_Part9.pdf

- o Re: Significant Tropical Disturbance Advisory

100. RFP 28. PDF E-mails. 28 Oct. 2020_Part1.pdf

- o Re: Hurricane Zeta - Active Storm Advisory - Atlantic - Wednesday, October 28, 2020

101. RFP 28. PDF E-mails. 28 Oct. 2020_Part2.pdf

- o Re: Marine Forecast - Shore Offshore Services - Gulf of Mexico - October 28, 2020 - 0600 L

102. RFP 28. PDF E-mails. 28 Oct. 2020_Part3.pdf

- o Re: M/V La Elite October 14, 2020

103. RFP 28. PDF E-mails. 28 Oct. 2020_Part4.pdf

- o Re: FW: Tropical Planner - Atlantic - Wednesday, October 28, 2020

104. RFP 28. PDF E-mails. 28 Oct. 2020_Part5.pdf

- o Re: Field Ticket

105. RFP 28. PDF E-mails. 28 Oct. 2020_Part6.pdf

- o Re: pics

106. RFP 28. PDF E-mails. 28 Oct. 2020_Part7.pdf

- o Re: photos

107. RFP 28. PDF E-mails. 28 Oct. 2020_Part8.pdf

- o Re: pics

108. RFP 28. PDF E-mails. 28 Oct. 2020_Part9.pdf

- o Re: pics

109. RFP 28. PDF E-mails. 28 Oct. 2020_Part10.pdf

- o Re: photos

110. RFP 28. PDF E-mails. 28 Oct. 2020_Part11.pdf



o   Re: photos

111. RFP 29. DLS Survey (Jan. 2021).pdf

112. RFP 30. Isthmus Bureau of Shipping Reports (Nov. 2020. Apr. 2021).pdf

113. RFP 31. Port State Control Report of Inspection (Aug. 2020).pdf

114. RFP 34. Mechanics Log (Oct. 2020)_Part1.pdf

115. RFP 34. Mechanics Log (Oct. 2020)_Part2.pdf

116. RFP 35. Fieldwood invoice_SS 259 JA.pdf

117. RFP 36. Ballast Chart (18 Oct. 2020).pdf

118. RFP 37. DLS Damage Survey and Recapitulation Spreadsheet.pdf

119. RFP 40. Bollard Drawing.pdf

120. RFP 40. Deck Stands Roller Drawing.pdf

121. RFP 40. Fairlead Drawing.pdf

122. RFP 42. PDF USCG Communications_Part1.pdf

123. RFP 42. PDF USCG Communications_Part2.pdf

124. RFP 42. PDF USCG Communications_Part3.pdf

125. RFP 47. Pending Freight. Fieldwood invoice_SS 259 JA.pdf

126. RFP 49. Release of Claims By Terrynn Lyons    executed on 20.11.09_Redacted.pdf

127. RFP 50. CG Welding MSA.pdf

128. RFP 50. CLS MSA.PDF

129. RFP 50. Dawn MTC.pdf

130. RFP 50. Oceaneering MSA.PDF

131. RFP 50. Premier MSA.PDF

132. Sims-Gibilterra Texts.pdf



133. Sims-Gibilterra-Caton Texts_Redacted.pdf

134. Sims-Grace Texts.pdf

135. Supp RFP 4. HSE Manual. Behavior Based Safety Program.pdf

136. Supp RFP 4. HSE Manual. Company Safety Standards.pdf

137. Supp RFP 4. HSE Manual. Emergency Action Plan.pdf

138. Supp RFP 4. HSE Manual. Exhibits List.pdf

139. Supp RFP 4. HSE Manual. HSE Policy.pdf

140. Supp RFP 4. HSE Manual. Incident Investigation & Reporting.pdf

141. Supp RFP 4. HSE Manual. Job Safety & Environmental Analysis Program.pdf

142. Supp RFP 4. HSE Manual. Management of Change Policy.pdf

143. Supp RFP 4. HSE Manual. Mission Statement.pdf

144. Supp RFP 4. HSE Manual. Recordkeeping Requirements.pdf

145. Supp RFP 4. HSE Manual. Responsibilities.pdf

146. Supp RFP 4. HSE Manual. Revision Log.pdf

147. Supp RFP 4. HSE Manual. Rigging & Material Handling.pdf

148. Supp RFP 4. HSE Manual. Safety Meetings.pdf

149. Supp RFP 4. HSE Manual. Stop Work Authority Policy.pdf

150. Supp RFP 4. HSE Manual. Subcontractor Management Policy.pdf

151. Supp RFP 4. HSE Manual. TQM Policy Statement.pdf

152. Supp RFP 4. HSE Manual. Training Requirements.pdf

153. Supp RFP 4. HSE Manual. Vision Statement.pdf

154. Supp RFP 6. JSAs 10-06-2020.pdf

155. Supp RFP 6. JSAs 10-07-2020.pdf



156. Supp RFP 6. JSAs 10-08-2020.pdf

157. Supp RFP 6. JSAs 10-09-2020.pdf

158. Supp RFP 6. JSAs 10-10-2020.pdf

159. Supp RFP 6. JSAs 10-11-2020.pdf

160. Supp RFP 13. Bowen HR File_Redacted.pdf

161. Supp RFP 13. Bowen Training File.pdf

162. Supp RFP 13. Cruz HR File_Redacted.pdf

163. Supp RFP 13. Cruz Training File_Redacted.pdf

164. Supp RFP 13. Curtis HR File_Redacted.pdf

165. Supp RFP 13. Curtis Training File_Redacted.pdf

166. Supp RFP 13. Dang HR File_Redacted.pdf

167. Supp RFP 13. Dang Training File_Redacted.pdf

168. Supp RFP 13. Elijah HR File_Redacted.pdf

169. Supp RFP 13. Elijah Training File_Redacted.pdf

170. Supp RFP 13. Grantham HR File_Redacted.pdf

171. Supp RFP 13. Grantham Training File_Redacted.pdf

172. Supp RFP 13. Griffin HR File_Redacted.pdf

173. Supp RFP 13. Griffin Training File_Redacted.pdf

174. Supp RFP 13. Johnson HR File_Redacted.pdf

175. Supp RFP 13. Johnson Training File_Redacted.pdf

176. Supp RFP 13. Jones HR File_Redacted.pdf

177. Supp RFP 13. Jones Training File_Redacted.pdf

178. Supp RFP 13. Junior HR File_Redacted.pdf

179. Supp RFP 13. Junior Training File_Redacted.pdf



180. Supp RFP 13. Mancuso HR File_Redacted.pdf

181. Supp RFP 13. Mancuso Training File_Redacted.pdf

182. Supp RFP 13. Waren HR File_Redacted.pdf

183. Supp RFP 19. 6 Oct. 2020 E-mails_Redacted.pdf

184. Supp RFP 19. 7 Oct. 2020 E-mails_Redacted.pdf

185. Supp RFP 19. 8 Oct. 2020 E-mails_Redacted.pdf

186. Supp RFP 19. 9 Oct. 2020 E-mails_Redacted.pdf

187. Supp RFP 19. 10 Oct. 2020 E-mails_Redacted.pdf

188. Supp RFP 19. 11 Oct. 2020 E-mails_Redacted.pdf

189. Supp RFP 19. THOR. RigNet Detail Report (6-11 Oct. 2020).pdf

190. Supp RFP 29. IBS Survey (2019).pdf

191. Supp RFP 34. Mechanics Log (29-31 Oct. 2020).pdf

192. Supp RFP 46. Cloyd Video. THOR 0006083.MOV

193. THOR. 2d Supp HGIM RFP.pdf

194. THOR. 2d Supp Responses to Omnibus Discovery.pdf

195. THOR. 3d Supp Response to Omnibus Discovery.pdf

196. THOR. PI RFP 61. Orientation Manual Index.pdf

197. THOR. Responses to PI Claimants 2d RFPs.pdf

198. THOR. Supp. Discovery Responses to HGIM.pdf

199. THOR. Supp. Responses to Omnibus Discovery.pdf

200. THOR Answers to HGIM INTs.pdf

201. THOR Answers to Omnibus INTs.pdf

202. THOR Interests. Answers to Personal Injury Claimants INTs.pdf

203. THOR Interests Responses to PI RFPs.pdf



204. THOR Responses to HGIM RFPs.pdf

205. THOR Responses to Personal Injury Claimants RFAs.pdf

206. THOR Responses to RFAs.pdf

207. THOR Responses to RFPs.pdf

- **THOR Interests- Produced with Initial Disclosures**

1. THOR. General Arrangement.pdf

2. THOR. Specification Sheet.pdf

3. THOR. IBS Class Certification and Annual Survey Endorsement.pdf

4. THOR. IBS Int'l Load Line Certificate and Annual Survey Endorsement.pdf

5. THOR. IBS Stability Booklet Approval Letter.pdf

6. THOR. Int'l Tonnage Certificate.pdf

7 -THOR. Panamanian Radio License & Registry.PDF

8. THOR. Southwest Wire Rope Mooring Line Requisition.pdf

9. THOR. WeatherOps Active Storm Advisories.pdf

10. THOR. WeatherOps Atlantic Tropical Planner. Oct. 2020

11. THOR. WeatherOps Gulf of Mexico Planner. Oct. 2020

12. THOR. WeatherOps HIA 536 Marine Daily Planner. Oct. 2020.pdf

13. THOR. WeatherOps MO 870 Marine Daily Planner. Oct. 2020.pdf

14. THOR. WeatherOps NP 956 Marine Daily Planner. Oct. 2020.pdf

15. THOR. WeatherOps Pascagoula Sea Buoy. Oct. 2020.pdf

16. THOR. WeatherOps SS 129 Marine Daily Planner. Oct. 2020.pdf

17. THOR. WeatherOps SS 259 Marine Daily Planner. Oct. 2020.pdf

18. THOR. WeatherOps ST 39 Marine Daily Planner. Oct. 2020.pdf

19. THOR. WeatherOps WD 96 Marine Daily Planner. Oct. 2020.pdf



20. THOR. WeatherOps Atlantic Tropical Threat Outlook. Oct. 2020.pdf

21. THOR. Daily Progress Reports. 26-28 Oct. 2020.pdf

22. THOR. JSAs. 26 Oct. 20.pdf

23. Photos. 28 Oct. 2020.pdf

24. THOR. Martin Dock No. 16 Invoice.pdf

25. THOR. USCG 2692. 2 Nov. 2020.pdf

26. THOR. Port State Control Report. 3 Nov. 2020.pdf

27. THOR. Damage Photos. 29 Oct. 2020

B.  DEPOSITTIONS
1.  Deposition of Lewis Andrews
2.  Deposition of Bradley Aro
3.  Deposition of David Blinn
4.  Deposition of Brian Cloyd
5.  Deposition of Joe Douglas
6.  Deposition of Walt Everett
7.  Deposition of Jamie Perryman
8.  Deposition of Ernest Plaisance
9.  Deposition of Randy Rials
10. Deposition of Harris Solomon
11. Deposition of Lessle Williams

C.  PROPOUNDED TO HARVEY GULF
1.  HGIM 007483-007604_Redacted.pdf
2.  HGIM 007995.000001-008005 (ECM Data).PDF
3.  HGIM 2nd supp response to Omnibus RFPs.pdf
4.  HGIM Document Production Log 7-11-22.pdf
5.  HGIM responses to Omibus Interrogatories 7.11.22 FINAL.pdf
6.  HGIM responses to Omnibus RFPs 12.2.22.pdf
7.  HGIM responses to Omnibus RFPs 7.11.22 Final.pdf
8.  HGIM supp response to Omnibus ROGS.pdf
9.  HGIM Supplemental Responses to Omnibus RFP 9.25.23.PDF
10. HGIM Supplemental Responses to Omnibus RP 4.5.23.pdf
11. HGIM-000001-004609 production.PDF
12. HGIM-004011 1b1626cf-34f0-4ebe-85c9-5a215aeaeb92.MP4
13. HGIM-4459-4516.pdf
14. HGIM-4610-7482.pdf
15. HGIM-EV production 7-11-22



D.  RFP 11 – Mooring Force Calculation Book
E.  Expert Reports & CVs
    1.  Eric Van Iderstine
    •  Engineering Investigation Report
    •  Fee Schedule
    •  CV
    •  Testimony Chronology
    2.  Captain Jay Rivera
    •  CV
    •  Fee Schedule
    •  Testimony last 4 years
    •  Preliminary Expert Report
    3.  William Carden
    •  CV
    •  Testimony Chronology
F.  2023.12.18 Claimants Production of Liability Reports

Alan C.
McCLURE ASSOCIATES, INC.
Naval Architects • Engineers

# APPENDIX B – REFERENCES

1. ABS MODU Rules (wind drag and height coefficient)
2. Crosby website
3. Shore Offshore Services Website
4. ANSYS AQWA Reference Manual
5. OCIMF MEG4 Guidelines
6. Google Earth
7. NOAA Hurricane Zeta Report

Alan C.
McCLURE ASSOCIATES, INC.
Naval Architects • Engineers

# APPENDIX C – EXHIBITS

Alan C.
McCLURE ASSOCIATES, INC.
Naval Architects • Engineers

# APPENDIX D – CV & LEGAL EXPERIENCE



# Scott C. McClure, P.E. *President*

## Education:

B. S. Civil Engineering, Texas A & M University, 1982

Graduate Studies Virginia Polytechnic Institute

## Affiliations:

Society of Naval Architects and Marine Engineers

SNAME - Fellow

SNAME - 2023 - Vice Admiral Emory S. "Jerry" Land Medal

Marine Technology Society

Registered Professional Engineer, Texas

## Professional Experience:

Since becoming President of Alan C. McClure Associates, Inc. (ACMA) in 1992, Mr. McClure has led the company in applying first principals engineering to a wide array of naval architecture and marine engineering projects. The hull forms range from ships to semisubmersibles to jack-ups to liftboats and from ULCCs to crewboats, even including round structures, and floating dry docks. Service applications include marine transportation, heavy lift, oil & gas drilling and production, multi-service and subsea construction, wind turbine transportation and installation, towing, pipelay, and passenger transport, among others.

Engineering tasks ranged from developing arrangements, hull form, weight take offs, hydrostatic intact and damage (deterministic & probabilistic) stability analyses, structural design and analyses for global strength as well as local considerations, seakeeping studies for motions, resistance and propulsion, mooring systems and dynamic station keeping, dry docking analyses for various loading conditions and hull forms, and development of machinery systems to support the intended operations.

Mr. McClure has performed vessel, dry dock, and shipyard surveys in association with many of these projects. These surveys have been conducted worldwide, including in port, onshore and at sea.

In addition to the engineering tasks, Mr. McClure has participated in developing contract specifications for conversions and new builds for all types of marine projects as well as vetting shipyards and construction contracts on behalf of owners.

Vessel design and development have customarily been carried out in association with various class societies such as the American Bureau of Shipping (ABS), Lloyd's Register (LR), Det Norske Veritas (DNV-GL), Bureau Veritas (BV), and Nippon Kaiji Kyokari (NKK). In addition, 'flag state' requirements were also typically involved including US CFR, IMO, SOLAS, IGC, UK Den, ILC, Transport Canada, and others.

Alan C.
McCLURE ASSOCIATES, INC.
Naval Architects • Engineers

**Scott C. McClure, P.E.** *President*                                        Page **2** of **5**

Under Mr. McClure's direction, ACMA staff are proficient in the following computer programs which are significant in keeping ACMA one step ahead of our evolving industry:

- RHINO – 3D Surface and Configuration Modeling, providing direct geometry import to other programs
- FEA (ANSYS) – linear/non-linear stress and thermal structural analysis
- AQWA (ANSYS) – Hydrodynamics tool, 3D panel method for seakeeping and mooring analysis, dynamic pressures for use in FEA analysis
- GHS – hydrostatic intact and damage stability, onboard load computer
- NAVCAD – resistance, propulsion, and propeller analysis
- AUTOCAD – Design drawings in 2D and 3D

Under his supervision, studies have been conducted leading to contract level designs for production units both new build and tanker conversions, semisubmersibles and jack-ups, including worldwide surveys of candidate vessels. **F**inite **E**lement **A**nalysis (FEA) was used extensively for analyzing the structures. Hydrodynamic analyses providing seakeeping and station keeping results for utilization by other project team members were carried out under his direction. Reutilization or replacement of marine systems was an integral part of all of these conversion projects.

Mr. McClure, and the firm, participated in the design and development of **C**ompressed **N**atural **G**as (CNG) transport vessels. Initial work included vetting of inventor concepts, followed by creation of development tools for integrating gas containment, to sizing of the vessels, and cost analyses for a broad range of transport volumes. Mr. McClure used international codes and classification rules as guides, in addition to participating in hazard and risk assessments of the resulting designs. He also spent time in Korea and Japan working with a major shipyard and ship operator respectively in this development effort.

Mr. McClure has performed engineering design and analyses of semisubmersibles, SWATHs, jack-up rigs, liftboats and ships. He was the project naval architect for vessel conversions from offshore supply to well test service, geotechnical service and for carriage of containers which all included extended shipyard supervision time. He engineered the conversion of two jack-ups to production units together with the jack-up leg long term in-place structural analyses and overseeing of leg modifications in the conversion shipyards.

Mr. McClure led the company in performing the conceptual through detailed design and construction of a 120ft all-aluminum turbine powered 255 POB 30knot high speed ABS classed Small Waterplane Area Twin Hull (SWATH) crewboat, the *STILLWATER RIVER*, for operation offshore Brazil. In addition to engineering, he was responsible for the scheduling, sequencing of equipment procurement and installation (multiple long lead custom fabricated items), developed building sequence, up-righting and mating of upper hull to twin lower hulls and the launching procedure. ACMA staff were involved full time in the shipyard and were responsible for supervising the fabrication, launching, dock trials and performing extensive sea trials for the Owner and Petrobras.

Mr. McClure lead the ACMA Team in developing an alternate mooring system for a newbuild 1.2M Bbl Floating Storage vessel for Conoco Phillips. The permanent mooring

**Scott C. McClure, P.E.** *President* <span style="float:right">Page **3** of **5**</span>

system design change by the owner interrupted the Samsung Shipbuilding schedule just before commencement of construction. He managed the complete development of the alternative mooring system including purchase specifications for all components, fast tracked worldwide equipment procurement, coordinated fabrication and delivery of large structural components outside of Samsung for installation by the shipyard. He worked directly with the Samsung shipyard planning department to enable the best possible schedule around this major design change.

Mr. McClure was the technical lead on the 128m 200 passenger Polar Expedition cruise ship *Ultramarine,* built in Croatia for Quark Expeditions. He had oversight of all engineering documentation, participated in the shipyard vetting and contract negotiations, addressed technical aspects of owner requested changes, worked alongside the onsite project manager reviewing shipyard proposed scheduling and planning, coordinated multiple third party subcontractors, final equipment procurement selection and delivery to the shipyard.

Mr. McClure has experience in various types of construction materials in addition to steel including aluminum, fiberglass and wood/fiberglass/carbon composites. Vessels utilizing these materials ranged from the high speed SWATH crewboat to high speed excursion entertainment vessels and passenger transport vessels. Mr. McClure has led the staff in the major redesign of two high speed excursion vessels built of fiberglass in addition to supporting a shipyard in the US Virgin Islands in analyzing their high speed passenger transport vessels built of composite structures.

Mr. McClure has performed surveys and inclinings on all types and sizes of vessels including ships, semisubmersibles and jack ups. Condition and valuation surveys have also been performed. He has performed structural and system surveys and provided certification for a large number of dry docks at a number of different shipyards.

His Project Management roles have ranged from overseeing engineering tasks and development of project reports to shipyard fabrication owner's representation in conjunction with Class and Regulatory interface and contract management. He has participated in the writing and negotiating of shipbuilding contracts.

Notable project design experience includes a dynamic structural analysis of a large road bridge during transportation utilizing two barges; operability analyses of heavy-lift crane barges, 108m deepwater subsea construction vessel built in US shipyard with extensive time participating in the detailed design and fabrication, modification and upgrading of numerous supply vessels including midbody additions, moon pools, SAT dive systems, and conversion to extended well test service.

Mr. McClure was the on-site Owner's representative for the design and construction of a 106 foot all aluminum catamaran entertainment vessel built in Louisiana for delivery to an overseas owner.

Mr. McClure spent two years as a naval architect at the U.S. Coast Guard, in Washington, D.C. He was responsible for naval architectural tasks covering ships ranging in size from 90 feet to 400 feet.



Alan C.
McCLURE ASSOCIATES, INC.
Naval Architects • Engineers

**Scott C. McClure, P.E.** *President*

## Publications:

"Dynamic Positioning Dynamics", co-authored with Alan C. McClure and R.Y. Edwards, Jr., The Society of Naval Architects and Marine Engineers First Offshore Stationkeeping Symposium, 1990.

"Settlement of Mat-Supported Mobile Units in Very Soft Clays", co-authored with W.R. Cox and K.H. Sorensen, Offshore Technology Conference, 1990.

"Fatigue Criteria for Jackup Design", The Society of Naval Architects and Marine Engineers Design Criteria and Codes Second Offshore Symposium, 1991.

"FPSO/FSO – Conversion Vs. New Build", co-authored with Alan C. McClure, The Society of Naval Architects and Marine Engineers Third Offshore Symposium, 1993.

"Personnel Transport in the Gulf of Mexico", The Society of Naval Architects and Marine Engineers Ninth Offshore Symposium, 2000.

"The Challenge of the Legal Road", The Society of Naval Architects and Marine Engineers Twelfth Offshore Symposium, 2003.

"The Impact of Compressed Natural Gas Shipping on Offshore Gas Development", Offshore Technology Conference, 2003.

"Designing Ships for an Innovative Gas Transport Industry", The Society of Naval Architects and Marine Engineers Texas Section, 2003.

"CNG Carriers Applied to Remote Marginal Gas Field Developments", Royal Institute of Naval Architects, 2004.

"Deepwater Field Development-FPSOs", Presentation for the Marine Technology Society Dynamic Positioning Conference, 2004.

"Features of CNG Carrier Design", The 10th International Symposium on Practical Design of Ships and Other Floating Structures ("PRADS"), 2007.

"*OCEAN EVOLUTION*: A new special-purpose ship for multi-function missions" (mt) Martine Technology-A SNAME Publication, January 2019

In addition to the list of publications above, Mr. McClure co-authored and co-instructed a Short Course at the 2014 SNAME Maritime Convention titled *Global Analysis – An Introduction to MetOcean Data and Spectral Analysis.*

Alan C.
McCLURE ASSOCIATES, INC.
Naval Architects • Engineers

**Scott C. McClure, P.E.** *President*                                      Page **5** of **5**

## Expert Witness Experience:

Mr. McClure has participated as an expert witness in more than 73 cases, which for varying reasons did not all reach the deposition or trial stage. Mr. McClure has given 14 depositions and testified live in 11 bench or jury trials. These cases covered a broad range of issues inclusive of structural failure (steel, aluminum, FRP/composites), stability, vessel maneuvering and response, moorings, dynamic motions, collision and allision analyses, flooding, fire, sinking, capsizing, drydock failures, personal injury and shipyard contractual issues, among others.

Mr. McClure participated in the successful defense of Petrobras in regard to two construction bond claims related to the conversion of a semisubmersible to a floating production unit and a VLCC to a floating production, storage, and offloading vessel. Both of these construction projects occurred in Brazil and required extensive review of large quantities of correspondence, invoices and change order claims. Mr. McClure worked closely with a forensic accountant to determine the true value of the contract and to identify the sources of the ultimate extreme cost and time overruns. This two-and-a-half-year effort culminated in Mr. McClure testifying at trial and ultimately to the court assessing damages of $350,000,000 to the benefit of Petrobras.

Within the past four years, Mr. McClure has submitted an expert report and testified as an expert by deposition (**\*D)** or at trial (**\*T**) in the following legal cases (*d-defendant; p-plaintiff*):

1)  **LA Carriers, LLC as Owner and Operator of the M/V Karen Koby, Petition for Exonerationfrom or Limitation of Liability,** 2024, Civil Action No. 2:22-CV-0498, United States District Court, Eastern District of Louisiana; **\*T** *(d)*

2)  **American River Transportation Company, LLC, as Owner and Operator of the M/V COOPERATIVE SPIRIT, Praying for Exoneration from or Limitation of Liability,** 2021, United States District Court for the Eastern District of Louisiana, Case No.: 20-416 c/w 20-538 & 20-1327; **\*T** *(p)*

3)  **Jarrett Flax v. FMC Technologies, Inc. N/K/A Technip FMC,** 2019, 113th Judicial District Court, Harris County, Texas, No. 2018-10412; **\*D** *(d)*

4)  **US Wind, Inc. v. InterMoor, Inc.,** US District Court for the District of Maryland, Case No. 1:19-cv-02984-SAG; **\*T** *(d)*

5)  **The matter of LA Carriers, LLC as Owner and Operator of the** *M/V KAREN KOBY,* **Petitioning for Exoneration from or Limitation of Liability**, United States District Court Eastern District of Louisiana, Civil Action No.: 2:22 cv 04987



Alan C. McClure Associates, Inc. provided consulting and expert witness services for the following legal cases.  In most cases expert reports were prepared and in some cases depositions were given.  Eleven of these cases required a deposition with nine of those going to trial and requiring direct expert testimony by Mr. McClure.

**\*D = Deposition given; \*T = Trial**; *(d)* =Defendant; *(p)* =Plaintiff

**Legal Case History**

| Date | Client | Vessel(s) | Task | Court |
|------|--------|-----------|------|-------|
| 2023 | Jones Walker **\*D, \*T** *(d)* | *KAREN KOBY/AMBITION* | Capsize | District |
| 2023 | Holman Fenwick Willan **\*D, \*T** *(d)* | Liftboat *Great White* | Contract Dispute | District |
| 2022 | Galloway Johnson *(d)* | M/T *Aquila* | Mooring break away | District |
| 2022 | Mahtook & Lafleur *(d)* | Dredge *Missouri H* | Piping failure and personal injury | District |
| 2022 | Mahtook & Lafleur *(d)* | F/V *Gods Blessing* | Drydock failure and personal injury | District |
| 2021 | Nicoll Black & Feig *(p)* | CH Dredge I | Vessel capsize | |
| 2021 | Frilot, LLC *(p)* **\*T** | M/V *RC CREPPEL* & M/V *COOPERATIVE SPIRIT* | Limitation of Liability-Vessel Sinking | District |
| 2021 | Staines, Eppling, Kenney *(d)* | M/V *W.T. HOGG* | Personal Injury - Dropped Object | District |
| 2021 | Calvert, Eaves, Clarke, & Stelly, LLP *(d)* | MV *CARIBOU* | Limitation of Liability- Slip and Fall on Deck | District |
| 2021 | Zehl Law *(p)* | M/V *MT-7* | Personal Injury - Capsize | Settled |
| 2021 | Jones Walker, LLP *(d)* | M/V *PAC ANTARES* | Ship Dock Allission | Settled |
| 2020 | Craig Davis, APLC *(p)* | MV *ISABELLE* | Personal Injury- Eng Room ladder & Hatch | Settled |
| 2019 | Benkenstein & Oxford *(d)* | M/V *ARISTO RIVER* & M/V *LIBERTY PASSION* | Mooring Breakaway and Damage to Dock | District |
| 2019 | Bale Law Firm *(d)* | MODU *PETROSAUDI SATURN* | Personal Injury - Heavy Object Transport | Settled |
| 2019 | Strasburger & Price, LLP *(d)* | MODU *DPDS1* | Ship Breakaway and Allission w/other vessels | Settled |
| 2019 | Bale Law Firm *(d)* **\*D** | MODU *DEEPWATER THALASSA* | Personal Injury - Trip and Fall, Deck Obstruction | District |
| 2019 | Baynham Best, LLC *(d)* | MODU *OCEAN BLACKHORNET* | Personal Injury - Stairway | District |
| 2018 | Broussard & David, LLC *(p)* | UTV *LANA LOUISE* | Personal Injury - Stairway Arrangement | District |
| 2018 | Johanson & Fairless *(d)* | MODU *NOBLE GLOBETROTTER II* | Personal Injury - Heavy Object Temporary Storage | Settled |
| 2018 | Zehl Law Firm *(p)* | T/V *Crosby Commander* | Personal Injury - Capsize | Settled |
| 2018 | Strasburger & Price, LLP *(d)* | OSV *OCEAN PIONEER* | Damage Claim - CPP Damage | Settled |
| 2018 | Strasburger & Price, LLP *(d)* | Barge *BOUCHARD 255* | Personal Injury - Vessel Explosion | Settled |
| 2018 | Gordon McKernan Injury | L/B *MICHELLE* | Personal Injury - Stairs | Settled |



Alan C.
McCLURE ASSOCIATES, INC.

Naval Architects • Engineers

Tel.: (713) 789-1840 • Fax: (713) 789-1347
Email: info@acma-inc.com

| Date | Client | Vessel(s) | Task | Court |
|---|---|---|---|---|
| | Attorneys *(p)* | | | |
| 2018 | Norton Rose Fulbright *(d)* | FPSO *BW Pioneer* & OT *CASCADE* & OT *CHINOOK* | Vessel Operation Interruption | Settled |
| 2017 | Gordon McKernan Injury Attorneys *(p)***D** | L/B *Global Lift 5* | Personal Injury – Stairs | Settled |
| 2017 | Simon O'Rourke *(p)* | TLP *AUGER* | Personal Injury – Ladder | Settled |
| 2017 | LKSA, LLC *(p)* | M/V *MR. LANDON* | Personal Injury – Stairs | Settled |
| 2017 | Holman Fenwick *(d)* | C/V *TRITON* | Personal Injury – Crane Operations | Settled |
| 2017 | Bale Law Firm *(p)* | P/V *FLORIDIAN STAR* | Vessel Fire | Settled |
| 2017 | Benckenstein & Oxford *(d)* | LPGC *PABLO* | Personal Injury – Mooring lines | Settled |
| 2016 | Bale Law Firm *(d)* *T | MODU *NOBLE DAVE BEARD* | Personal Injury – Ladder | District |
| 2016 | Blank Rome *(p)* | MTM *MUMBAI* | Mooring Breakaway and Damage to Dock | District |
| 2016 | Staines & Eppling *(d)***D** | *MISS EVA* | Personal Injury - Sinking | District |
| 2016 | Bale Law Firm *(p)* | 29' Sea Hunt | Personal Injury - Vessel Loss | District |
| 2015 | Phelps Dunbar *(p)* *D | T/V *KRISTIN ALEXIS* | Sinking-Passing Ship | District |
| 2015 | Staines & Eppling *(d)***T** | M/V *SUN RAY* | Personal Injury – Deck Motions | District |
| 2013 | White MacKillop & Gallant P.C. *(d)* | M/V *OLYMPIC CHALLENGER* | Personal Injury - Ladder | Settled |
| 2013 | Bale Law Firm *(d)* | *DEVELOPMENT DRILLER II* - MODU | Personal Injury – Pipe rack | District |
| 2013 | Bale Law Firm *(d)* *T | MODU *Lorris Bouzigard* | Anchor Drag into Pipeline | District |
| 2013 | Beirne, Maynard and Parsons, L.L.P. *(d)* *D | MODU *Jim Day* | Contract Cancellation | District |
| 2012 | Legge, Farrow, Kimmitt, McGrath & Brown, LLP *(d)* *T | *MASCO VIII* | Personal Injury - stairway | District |
| 2012 | White MacKillop & Gallant P.C. *(d)* | *DLB HERCULES* | Personal Injury – stairway | District |
| 2012 | Cox, Wootton, Griffin, Hansen & Poulos, LLP *(d)* | M/V *STAR EVVIVA* | Personal Injury - stairway | District |
| 2012 | Benckenstein & Oxford *(d)* | M/V *CALIFORNIA VOYAGER* | Passing Ship Mooring Failure | USCG |
| 2011 | Mithoff Law Firm *(p)***D** | OSV *INTERPROVIDER* | Personal Injury- stairway | District |
| 2011 | White MacKillop & Gallant P.C. *(d)* | M/V *SAFMARINE TEXAS* | Personal Injury - ladder | District |
| 2011 | White MacKillop & Gallant P.C. *(d)* | M/V *SAFMARINE TEXAS* | Personal Injury - ladder | District |
| 2010 | The Jones Group | ACBL Barges 3208-3264 | Barge sinkings | Settled |
| 2010 | Domengeaux Wright Roy & Edwards, L.L.C. *(p)* | *AMERICA* | Personal Injury – machinery repair | District |
| 2010 | Spain, Calvert, Eaves, Clarke & Stelly *(d)* *D | Pipelay Barge RIDER | Personal Injury - ladder | District |
| 2010 | Benckenstein & Oxford *(p)* | Port of Beaumont, TX Vestas Blades | Wind Turbine Blade Damage-Protected Access | District |



Alan C.
McCLURE ASSOCIATES, INC.

Naval Architects • Engineers

Tel.: (713) 789-1840 • Fax: (713) 789-1347
Email: info@acma-inc.com

| Date | Client | Vessel(s) | Task | Court |
|------|--------|-----------|------|-------|
| 2010 | Bale Law Firm *(d)* | *M/V ZIM JAMAICA* | Cargo Loss | Settled |
| 2010 | Maloney & Martin, LLP *(p)* | *TARZAN IV* | New Construction Contract Dispute | District |
| 2010 | Bale Law Firm *T *(d)* | *HERCULES (THE 153)* | Jack-up Drilling Rig Crane Failure | District |
| 2010 | The Collings Law Firm *T *(p)* | *AKSANO* | Catamaran Pleasure Boat Fabrication/False Advertising | District |
| 2009 | Gardere Wynne Sewell *(p)* | N/A | Intellectual Property Dispute | District |
| 2009 | McFatridge, Baker & Schmidt *(p)* *D | *ROYAL PRINCESS II* | Stability and Contract Delivery Issues | District |
| 2008 | Royston  Razyor *(d)* | *BP THUNDERHORSE* | Construction Status Claim | District |
| 2008 | Arnold & Porter *(p)* | USCG FRC Patrol vessel | Marinette Marine - Contract Award Protest-Protected Access | US GAO |
| 2007 | Royston Rayzor *T *(d)* | towboat *LONNIE T* | Personal Injury - Deck Access | District |
| 2007 | Gardere Wynne Sewell *(d)* | M/T *Eagle Carina* | Small Vessel Capsize | District |
| 2007 | Boies, Schiller, & Flexner *(p)* | Dual-Activity Drillship | Dual Drilling Patent Case | Settled |
| 2007 | Richard Schecter *(p)* | Kirby barge 19400 | Personal Injury - Walkway Accident | Settled |
| 2006 | Maltzman Foreman *D *(d)* | NCL *P/V ALOHA* | ADA Issues on cruise ship | District |
| 2006 | ENSCO *(p)* | 8500 Class MODU | Design Copyright Infringement-Protected Access | Settled |
| 2006 | Kirkpatrick & Lockhart *(p)* | *P/V GALAPAGOS ADVENTURE* | Vessel Inspection Report and Repair Estimate | Settled |
| 2006 | Spain, Calvert, & Eaves *D *(d)* | *M/V DAVID REESE* | Personal Injury - Quarters Arrangement | District |
| 2006 | Williams, Heidelberg, Steinberger & McElhaney *D *(d)* | MODU *NOBLE ROMANO* | Elevator Fatality, Applicable Regulatory and Class Rules | Circuit |
| 2004 | Lyons, Skoufalos, Proios & Flood *(p)* | DSV *MR. SONNY* | Anchor Drag on Long Island Sound | District |
| 2004 | Petrobras *(d)* | *FPSO P31* | Technical Opinion | District |
| 2002 | Eastham, Watson, Dale & Forney *(d)* | CSO *DEEP BLUE* | Bulkhead Wash-out and Failure by Thruster | Settled |
| 2002 | Kirkpatrick & Lockhart *(p)* | Baracuda/Caratinga Oil Field Development | FPSO Contract Schedule Opinion | Settled |
| 2000 | Cameron & Hornbostel *D *T*(d)* | FPS *P19* & FPSO *P31* | Construction Bond Claim – Review of change order claims and Development of final Contract Value, Construction Schedule Review, causes of Vendor delivery delay | Federal |
|  |  |  |  |  |

Alan C.
McCLURE ASSOCIATES, INC.

Naval Architects • Engineers

Tel.: (713) 789-1840 • Fax: (713) 789-1347
Email: info@acma-inc.com

CRANE CAPACITY DIAGRAM

OUTBOARD PROFILE

A-DECK

B-DECK

C-DECK

BRIDGE DECK

HELI-DECK

MAIN DECK

HOLD PLAN

REFERENCES:
COMPANY, DRAWING NO., DRAWING TITLE, REVISION, DATE (MM/DD/YY)

NOTE:
THIS DRAWING SHALL BE USED STRICTLY FOR GUIDANCE PURPOSES AND
FOR ILLUSTRATION OF THE PROJECT SPECIFICATIONS.

| NO. | DESCRIPTION | DATE | APP'D |
|-----|-------------|------|-------|
| 1 | REVISED TANK ARRANGEMENTS | 2/9/04 | ADD |

ALTERATIONS

PROPRIETARY INFORMATION
THIS DRAWING CONTAINS PROPRIETARY AND CONFIDENTIAL INFORMATION BELONGING TO
ARTHUR D. DARDEN, INCORPORATED. NEITHER THE DRAWING NOR THE INFORMATION
CONTAINED IN IT MAY BE USED, REPRODUCED OR DISCLOSED, WHOLLY OR IN PART,
WITHOUT THE PRIOR WRITTEN PERMISSION OF ARTHUR D. DARDEN, INCORPORATED.

ARTHUR D. DARDEN
INCORPORATED
NAVAL ARCHITECTS AND MARINE ENGINEERS
3050 RIDGELAKE DRIVE, SUITE 410
METAIRIE, LOUISIANA 70002
FAX (504) 832-3863    PHONE (504) 832-3862

CUSTOMER:
OFFSHORE SPECIALTY FABRICATORS, INC.
115 MENARD ROAD
PO BOX 1420
HOUMA, LA 70361

| DRAWN: | DATE: | CHECKED BY: | DATE: | APPROVED: | DATE: |
|--------|-------|-------------|-------|-----------|-------|
| GPM | 12/29/03 | LM | 12/29/03 | ADD | 12/29/03 |

TITLE
DB WILLIAM KALLOP
GENERAL ARRANGEMENT &
OUTBOARD PROFILE

| SCALE: | FILE NO. | DWG. NO. | SHT. NO. | ALT. |
|--------|----------|----------|----------|------|
| N-T-S | 1859 | 1859-100 | 1 OF 1 | 1 |



20333 State Hwy 249, Ste. 200

Houston, TX 77070

# D/B THOR Spec Sheet



**SHORE**
**OFFSHORE SERVICES, LLC.**

20333 State Hwy 249, Ste. 200

Houston, TX 77070

# Heavy Lift Construction Support Vessel

## Particulars

| | |
|---|---|
| Length (Overall) | 370.70 ft (113 m) |
| Breadth Molded | 137.80 ft (42 m) |
| Depth Main Deck | 26.25 ft (8.00 m) |
| Operating Draft | 12.14 ft (3.70 m) |
| Min Operating Draft | 11 ft (3.35 m) |
| Gross Tonnage | 12,667 |
| Net Tonnage | 3,770 |
| Registry (Flag) | Panama |
| Year Built | 1997 |
| Accommodations | 114 POB |

### Derrick Crane
- Make — AmClyde M-66-DE
- Main Hook Height — 252.50 ft (77 m)
- Auxiliary Hook Height — 278.80 ft (85 m)
- Full Revolving Lift Capacity — 1,760 ST @ 98.30 ft (1,600 mt @ 30 m)
- Auxiliary Lift Capacity — 20 ST @ 272 ft (18 mt @ 83 m)

### Deck Crane
- Type — Crawler
- Capacity — 88 ST (80 mt)
- Radius — 65.60 ft (20 m)

### Utility Crane
- Make — Manitowoc
- Model — 4000
- Type — Crawler
- Capacity — 100 ST (91 mt)
- Boom Length — 130 ft (39.63 m)

### Machinery
- Main Generators — (2) Daihatsu 6DL, 24,800 KW, 450V, 60HZ
- Emergency Generators — (1) Daihatsu 45sg, 200KW, 450V, 60 Hz
- Water Makers — 11,000 gallons (41.64 m3)/day

### Mooring Equipment
- Winches — (8) Uchida Marine Hydraulics, Single Drum; 80 Ton brake holding
- Wire Size — 2 in. Diameter
- Wire Length — 5,000 ft
- Anchors — 8 Delta Flipper, 16,000 lbs ea

### Capacities

THOR 0000003



20333 State Hwy 249, Ste. 200

Houston, TX 77070

- Fuel                     MGO: 105,670 gal (400.00 m$^3$)
                          MDO: 145,295 gal (500.00 m$^3$)
- Potable Water                  158,500 gal (600.00 m$^3$)
- Ballast Water              603,880 gal (2,285.93 m$^3$)

**Communication Systems**
- Phones / Internet                       Rignet
- Radios                                VHF

THOR 0000004



**SHORE OFFSHORE SERVICES, LLC.**

20333 State Hwy 249, Ste. 200

Houston, TX 77070



D/B THOR CRANE CAPACITY DIAGRAM



# CROSBY ENDEAVOR





Towing & Anchor Handling

## DIMENSIONS & DOCUMENTATION

| | | | | | |
|---|---|---|---|---|---|
| Length: | 136 ft. | Beam: | 40.1 ft. | Depth: | 15.6 ft. |
| GT ITC: | 809 | NT ITC: | 242 | | |
| GRT: | 191 | NRT: | 132 | Flag: | US |
| Classification: | ABS | Class ID: | 7604029 | IMO: | 7501118 |
| Official #: | 571494 | Year Built: | 1976 | | |

## PERFORMANCE

Running Speed: 14 Knots    Bollard Pull: 102.465 Tons

## MACHINERY

Main Engine(s): (2) EMD 20-645E7    Total Horsepower: 15,000

## CAPACITIES

Fuel: 224,500 Gallons    Lube Oil: 8,700 Gallons    Pot. Water: 16,000 Gallons

## TOWING EQUIPMENT

Winch: Intercon 75091    Tow Wire: 2.5 x 3,000 (2.5 x 1,700)

## ELECTRONICS

(2) VHF, SSB, Auto Pilot, (2) Global Positioning,
(2) Radars, Depth Sounder, (2) Loudhailers, Sat Phone

## www.crosbytugs.com

17771 Hwy 3235 Galliano, LA 70357
PO Box 279 Golden Meadow, LA 70357
Office: 985-632-7575    Fax: 985-632-7572

CROSBY 002492



# DENVER ROPE - ROPE STRENGTH GUIDE

The Best Custom Boat Lines, Custom Colored Ropes, & Special Assemblies made to Your Specifications

### NYLON DOUBLE BRAID

| Diameter inches | Diameter mm | Tensile Strength pounds | Working Load pounds |
|---|---|---|---|
| 1/4" | 6 | 1,700 | 340 |
| 3/8" | 10 | 4,100 | 820 |
| 1/2" | 13 | 7,300 | 1,460 |
| 5/8" | 16 | 14,600 | 2,920 |
| 3/4" | 19 | 19,000 | 3,800 |
| 7/8" | 22 | 28,100 | 5,620 |
| 1-0" | 25 | 33,200 | 6,640 |
| 1-1/4" | 32 | 52,000 | 10,400 |
| 1-1/2" | 38 | 74,000 | 14,800 |
| 1-5/8" | 41 | 92,100 | 18,420 |
| 1-3/4" | 45 | 109,500 | 21,900 |
| 2-0" | 51 | 129,700 | 25,940 |
| 2-1/4" | 57 | 179,400 | 35,880 |
| 2-1/2" | 64 | 196,000 | 39,200 |
| 2-5/8" | 67 | 221,000 | 44,200 |
| 2-3/4" | 70 | 237,000 | 47,400 |
| 3-0" | 76 | 274,000 | 54,800 |
| 3-1/4" | 83 | 339,000 | 67,800 |
| 3-5/8" | 92 | 400,000 | 80,000 |

These figures are for brand new rope. Age, wear, sunlight exposure, splices, and knots will further reduce these figures over time.

### POLYESTER DOUBLE BRAID

| Diameter inches | Diameter mm | Tensile Strength pounds | Working Load pounds |
|---|---|---|---|
| 1/4" | 6 | 2,000 | 400 |
| 3/8" | 10 | 4,400 | 880 |
| 1/2" | 13 | 8,200 | 1,640 |
| 5/8" | 16 | 14,000 | 2,800 |
| 3/4" | 19 | 20,000 | 4,000 |
| 7/8" | 22 | 29,900 | 5,980 |
| 1-0" | 25 | 38,000 | 7,600 |
| 1-1/4" | 32 | 54,500 | 10,900 |
| 1-1/2" | 38 | 72,000 | 14,400 |
| 1-5/8" | 41 | 77,800 | 15,560 |
| 1-3/4" | 45 | 89,200 | 17,840 |
| 2-0" | 51 | 110,000 | 22,000 |
| 2-1/4" | 57 | 141,000 | 28,200 |
| 2-1/2" | 64 | 170,000 | 34,000 |
| 2-5/8" | 67 | 186,000 | 37,200 |
| 2-3/4" | 70 | 206,000 | 41,200 |
| 3-0" | 76 | 237,000 | 47,400 |
| 3-1/4" | 83 | 292,000 | 58,400 |
| 3-5/8" | 92 | 348,000 | 69,600 |

These figures are for brand new rope. Age, wear, sunlight exposure, splices, and knots will further reduce these figures over time.

For customer service and inquiries please call John 303-809-7274 or email john@denverrope.com;
www.denverrope.com

 DENVER ROPE - ROPE STRENGTH GUIDE

The Best Custom Boat Lines, Custom Colored Ropes, & Special Assemblies made to Your Specifications

| NYLON 3-STRAND TWISTED | | | |
|---|---|---|---|
| Diameter | Diameter | Tensile Strength | Working Load |
| inches | mm | pounds | pounds |
| 1/4" | 6 | 1,650 | 330 |
| 3/8" | 10 | 3,700 | 740 |
| 1/2" | 13 | 6,400 | 1,280 |
| 5/8" | 16 | 10,400 | 2,080 |
| 3/4" | 19 | 13,800 | 2,760 |
| 7/8" | 22 | 20,000 | 4,000 |
| 1-0" | 25 | 25,000 | 5,000 |
| 1-1/4" | 32 | 37,500 | 7,500 |
| 1-1/2" | 38 | 53,000 | 10,600 |
| 2-0" | 51 | 90,000 | 18,000 |
| 2-1/2" | 64 | 125,000 | 25,000 |
| 3-0" | 76 | 195,000 | 39,000 |
| 4-0" | 102 | 360,000 | 72,000 |

These figures are for brand new rope.  Age, wear, sunlight exposure, splices, and knots will further reduce these figures over time.

| POLYESTER 3-STRAND TWISTED | | | |
|---|---|---|---|
| Diameter | Diameter | Tensile Strength | Working Load |
| inches | mm | pounds | pounds |
| 1/4" | 6 | 1,650 | 825 |
| 3/8" | 9 | 3,700 | 1,850 |
| 1/2" | 13 | 6,400 | 3,200 |
| 5/8" | 16 | 10,000 | 5,000 |
| 3/4" | 19 | 12,500 | 6,250 |
| 7/8" | 22 | 18,000 | 9,000 |
| 1-0" | 25 | 22,000 | 11,000 |
| 1-1/4" | 32 | 33,200 | 16,600 |
| 1-1/2" | 38 | 46,800 | 23,400 |

These figures are for brand new rope.  Age, wear, sunlight exposure, splices, and knots will further reduce these figures over time.

For customer service and inquiries please call John 303-809-7274 or email john@denverrope.com;
www.denverrope.com



# DENVER ROPE - ROPE STRENGTH GUIDE

*The Best Custom Boat Lines, Custom Colored Ropes, & Special Assemblies made to Your Specifications*

| POLYPROPYLENE 3-STRAND TWISTED | | | |
|---|---|---|---|
| Diameter | Diameter | Tensile Strength | Working Load |
| inches | mm | pounds | pounds |
| 1/4" | 6 | 1,250 | 213 |
| 3/8" | 10 | 2,700 | 459 |
| 1/2" | 13 | 4,200 | 714 |
| 5/8" | 16 | 6,200 | 1,054 |
| 3/4" | 19 | 8,500 | 1,445 |
| 7/8" | 22 | 11,500 | 1,955 |
| 1-0" | 25 | 14,000 | 2,380 |
| 1-1/4" | 32 | 21,000 | 3,570 |
| 1-1/2" | 38 | 29,700 | 5,049 |
| 1-5/8" | 41 | 36,000 | 6,120 |
| 1-3/4" | 45 | 43,000 | 7,310 |
| 2-0" | 51 | 52,000 | 8,840 |
| 2-1/4" | 57 | 69,000 | 11,730 |
| 2-1/2" | 64 | 80,000 | 13,600 |
| 3-0" | 76 | 114,000 | 19,380 |
| 3-1/4" | 83 | 137,000 | 23,290 |
| 3-1/2" | 89 | 162,000 | 27,540 |
| 4-0" | 102 | 190,000 | 32,300 |

These figures are for brand new rope. Age, wear, sunlight exposure, splices, and knots will further reduce these figures over time.

| MANILA 3-STRAND TWISTED | | | |
|---|---|---|---|
| Diameter | Diameter | Tensile Strength | Working Load |
| inches | mm | pounds | pounds |
| 1/4" | 6 | 540 | 92 |
| 3/8" | 10 | 1,215 | 207 |
| 1/2" | 13 | 2,385 | 405 |
| 5/8" | 16 | 3,960 | 673 |
| 3/4" | 19 | 4,860 | 826 |
| 7/8" | 22 | 6,930 | 1,178 |
| 1-0" | 25 | 8,100 | 1,377 |
| 1-1/4" | 32 | 12,150 | 2,066 |
| 1-1/2" | 38 | 16,550 | 2,814 |
| 1-5/8" | 41 | 20,250 | 3,443 |
| 1-3/4" | 45 | 23,850 | 4,055 |
| 2-0" | 51 | 27,900 | 4,743 |
| 2-1/4" | 57 | 36,900 | 6,273 |
| 2-1/2" | 64 | 41,850 | 7,115 |
| 3-0" | 76 | 57,600 | 9,792 |
| 3-1/4" | 83 | 69,300 | 11,781 |
| 3-1/2" | 89 | 81,900 | 13,923 |
| 4-0" | 102 | 94,500 | 16,065 |

These figures are for brand new rope. Age, wear, sunlight exposure, splices, and knots will further reduce these figures over time.

For customer service and inquiries please call John 303-809-7274 or email john@denverrope.com;
www.denverrope.com



# DENVER ROPE - ROPE STRENGTH GUIDE

*The Best Custom Boat Lines, Custom Colored Ropes, & Special Assemblies made to Your Specifications*

| NYLON 12-STRAND PLAIT | | | |
|---|---|---|---|
| Diameter | Diameter | Tensile Strength | Working Load |
| inches | mm | pounds | pounds |
| 1/4" | 6 | 2,000 | 400 |
| 3/8" | 10 | 4,600 | 920 |
| 1/2" | 13 | 8,000 | 1,600 |
| 5/8" | 16 | 13,900 | 2,780 |
| 3/4" | 19 | 17,900 | 3,580 |
| 7/8" | 22 | 26,200 | 5,240 |
| 1-0" | 25 | 30,100 | 6,020 |
| 1-1/4" | 32 | 45,400 | 9,080 |
| 1-1/2" | 38 | 64,800 | 12,960 |
| 1-5/8" | 41 | 74,000 | 14,800 |
| 1-3/4" | 45 | 92,100 | 18,420 |
| 2-0" | 51 | 106,000 | 21,200 |
| 2-1/4" | 57 | 152,000 | 30,400 |
| 2-1/2" | 64 | 170,000 | 34,000 |
| 2-5/8" | 67 | 189,000 | 37,800 |
| 2-3/4" | 70 | 214,000 | 42,800 |
| 3-0" | 76 | 245,000 | 49,000 |
| 3-1/4" | 83 | 288,000 | 57,600 |
| 3-5/8" | 92 | 338,000 | 67,600 |

These figures are for brand new rope.  Age, wear, sunlight exposure, splices, and knots will further reduce these figures over time.

| POLYESTER 12-STRAND PLAIT | | | |
|---|---|---|---|
| Diameter | Diameter | Tensile Strength | Working Load |
| inches | mm | pounds | pounds |
| 1/4" | 6 | 2,100 | 420 |
| 3/8" | 10 | 4,600 | 920 |
| 1/2" | 13 | 8,000 | 1,600 |
| 5/8" | 16 | 12,100 | 2,420 |
| 3/4" | 19 | 15,800 | 3,160 |
| 7/8" | 22 | 24,200 | 4,840 |
| 1-0" | 25 | 27,500 | 5,500 |
| 1-1/4" | 32 | 42,100 | 8,420 |
| 1-1/2" | 38 | 59,600 | 11,920 |
| 1-5/8" | 41 | 72,200 | 14,440 |
| 1-3/4" | 45 | 84,400 | 16,880 |
| 2-0" | 51 | 101,000 | 20,200 |
| 2-1/4" | 57 | 137,000 | 27,400 |
| 2-1/2" | 64 | 163,000 | 32,600 |
| 2-5/8" | 67 | 179,000 | 35,800 |
| 2-3/4" | 70 | 202,000 | 40,400 |
| 3-0" | 76 | 233,000 | 46,600 |
| 3-1/4" | 83 | 282,000 | 56,400 |
| 3-5/8" | 92 | 340,000 | 68,000 |

These figures are for brand new rope.  Age, wear, sunlight exposure, splices, and knots will further reduce these figures over time.

For customer service and inquiries please call John 303-809-7274 or email john@denverrope.com;

www.denverrope.com

 **DENVER ROPE - ROPE STRENGTH GUIDE**

*The Best Custom Boat Lines, Custom Colored Ropes, & Special Assemblies made to Your Specifications*

| AMSTEEL / DYNEEMA 12-STRAND | | | |
|---|---|---|---|
| Diameter | Diameter | Tensile Strength | Working Load |
| inches | mm | pounds | pounds |
| 1/8" | 3 | 2,300 | 460 |
| 3/16" | 5 | 4,900 | 980 |
| 1/4" | 6 | 7,700 | 1,540 |
| 5/16" | 8 | 12,300 | 2,460 |
| 3/8" | 10 | 17,600 | 3,520 |
| 7/16" | 11 | 21,500 | 4,300 |
| 1/2" | 13 | 30,600 | 6,120 |
| 9/16" | 14 | 36,500 | 7,300 |
| 5/8" | 16 | 47,500 | 9,500 |
| 3/4" | 19 | 58,000 | 11,600 |
| 7/8" | 22 | 81,700 | 16,340 |
| 1-0" | 25 | 98,100 | 19,620 |
| 1-1/8" | 30 | 133,000 | 26,600 |
| 1-1/4" | 32 | 149,000 | 29,800 |
| 1-1/2" | 38 | 205,000 | 41,000 |
| 1-5/8" | 41 | 255,000 | 51,000 |
| 1-3/4" | 45 | 302,000 | 60,400 |
| 2-0" | 51 | 343,000 | 68,600 |
| 2-1/4" | 57 | 484,000 | 96,800 |
| 2-1/2" | 64 | 529,000 | 105,800 |
| 2-5/8" | 67 | 595,000 | 119,000 |
| 2-3/4" | 70 | 735,000 | 147,000 |
| 3-0" | 76 | 749,000 | 149,800 |
| 3-1/4" | 83 | 1,007,000 | 201,400 |

These figures are for brand new rope.  Age, wear, sunlight exposure,
splices, and knots will further reduce these figures over time.

| IRONLITE / DYNEEMA 12-STRAND | | | |
|---|---|---|---|
| Diameter | Diameter | Tensile Strength | Working Load |
| inches | mm | pounds | pounds |
| 1/8" | 3 | 3,000 | 600 |
| 3/16" | 5 | 5,800 | 1,160 |
| 1/4" | 6 | 8,000 | 1,600 |
| 5/16" | 8 | 12,400 | 2,480 |
| 3/8" | 10 | 19,700 | 3,940 |
| 7/16" | 11 | 22,000 | 4,400 |
| 1/2" | 13 | 34,400 | 6,880 |
| 9/16" | 14 | 36,500 | 7,300 |
| 5/8" | 16 | 48,200 | 9,640 |
| 3/4" | 19 | 65,600 | 13,120 |
| 7/8" | 22 | 103,840 | 20,768 |
| 1-0" | 25 | 123,200 | 24,640 |
| 1-1/8" | 30 | 163,900 | 32,780 |
| 1-1/4" | 32 | 184,400 | 36,880 |
| 1-1/2" | 38 | 247,500 | 49,500 |
| 1-5/8" | 41 | 323,400 | 64,680 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

These figures are for brand new rope.  Age, wear, sunlight exposure,
splices, and knots will further reduce these figures over time.

For customer service and inquiries please call John 303-809-7274 or email john@denverrope.com;

www.denverrope.com



# DENVER ROPE - ROPE STRENGTH GUIDE

*The Best Custom Boat Lines, Custom Colored Ropes, & Special Assemblies made to Your Specifications*

| SUPERDAN (MAXIMA) 8-STRAND | | | |
|---|---|---|---|
| Diameter | Diameter | Tensile Strength | Working Load |
| inches | mm | pounds | pounds |
| 2-0" | 51 | 67,200 | 13,440 |
| 2-1/4" | 57 | 78,000 | 15,600 |
| 2-1/2" | 64 | 91,500 | 18,300 |
| 2-5/8" | 67 | 103,500 | 20,700 |
| 3-0" | 76 | 135,000 | 27,000 |
| 3-1/4" | 83 | 171,000 | 34,200 |
| 4-0" | 102 | 243,000 | 48,600 |

These figures are for brand new rope.  Age, wear, sunlight exposure,
splices, and knots will further reduce these figures over time.

| MAXIFLEX 8-STRAND | | | |
|---|---|---|---|
| Diameter | Diameter | Tensile Strength | Working Load |
| inches | mm | pounds | pounds |
| | | - | - |
| 2-1/4" | 57 | 138,000 | 27,600 |
| | | - | - |
| 2-5/8" | 67 | 182,000 | 36,400 |
| 3-0" | 76 | 224,900 | 44,980 |
| 3-1/4" | 83 | 276,700 | 55,340 |
| | | - | - |

These figures are for brand new rope.  Age, wear, sunlight exposure,
splices, and knots will further reduce these figures over time.

For customer service and inquiries please call John 303-809-7274 or email john@denverrope.com;
www.denverrope.com

 **DENVER ROPE - ROPE STRENGTH GUIDE**

*The Best Custom Boat Lines, Custom Colored Ropes, & Special Assemblies made to Your Specifications*

| POLY-DAC 3-STRAND TWISTED | | | |
|---|---|---|---|
| Diameter inches | Diameter mm | Tensile Strength pounds | Working Load pounds |
| 3/8" | 10 | 2,700 | 459 |
| 1/2" | 13 | 4,400 | 748 |
| 5/8" | 16 | 6,100 | 1,037 |
| 3/4" | 19 | 8,400 | 1,428 |
| 7/8" | 22 | 11,125 | 1,891 |
| 1-0" | 25 | 13,175 | 2,240 |
| 1-1/2" | 38 | 28,250 | 4,803 |
| 2-0" | 51 | 48,050 | 8,169 |
| | | | |
| | | | |
| | | | |

These figures are for brand new rope.  Age, wear, sunlight exposure, splices, and knots will further reduce these figures over time.

| WINDLASS - NYLON 3-STRAND TWISTED | | | |
|---|---|---|---|
| Diameter inches | Diameter mm | Tensile Strength pounds | Working Load pounds |
| | | | |
| 1/2" | 13 | 6,400 | 1,280 |
| 9/16" | 14 | 7,900 | 1,580 |
| 5/8" | 16 | 10,400 | 2,080 |
| 3/4" | 19 | 13,800 | 2,760 |
| | | | |

These figures are for brand new rope.  Age, wear, sunlight exposure, splices, and knots will further reduce these figures over time.

For customer service and inquiries please call John 303-809-7274 or email john@denverrope.com;
www.denverrope.com

 # DENVER ROPE - ROPE STRENGTH GUIDE

The Best Custom Boat Lines, Custom Colored Ropes, & Special Assemblies made to Your Specifications

| POLYPROPYLENE 8-STRAND HOLLOW BRAID | | | |
|---|---|---|---|
| Diameter inches | Diameter mm | Tensile Strength pounds | Working Load pounds |
| 1/8", #4 | 3 | 150 | 26 |
| 3/16", #6 | 5 | 475 | 81 |
| 1/4", #8 | 6 | 900 | 153 |
| 5/16", #10 | 8 | 1,200 | 204 |
| 3/8", #12 | 10 | 1,600 | 272 |
| 1/2", #16 | 13 | 2,000 | 340 |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

These figures are for brand new rope.  Age, wear, sunlight exposure, splices, and knots will further reduce these figures over time.

| WINDLASS - NYLON 8-PLAIT | | | |
|---|---|---|---|
| Diameter inches | Diameter mm | Tensile Strength pounds | Working Load pounds |
| 3/8" | 9 | 4,000 | 1,000 |
| 1/2" | 12 | 8,300 | 2,075 |
| 5/8" | 16 | 9,200 | 2,300 |
| 3/4" | 18 | 12,200 | 3,050 |
| 7/8" | 22 | 17,000 | 4,250 |
| 1-0" | 24 | 24,840 | 6,210 |

These figures are for brand new rope.  Age, wear, sunlight exposure, splices, and knots will further reduce these figures over time.

For customer service and inquiries please call John 303-809-7274 or email john@denverrope.com;
www.denverrope.com



# DENVER ROPE - ROPE STRENGTH GUIDE

The Best Custom Boat Lines, Custom Colored Ropes, & Special Assemblies made to Your Specifications

| NYLON SOLID BRAID | | | |
|---|---|---|---|
| Diameter inches | Diameter mm | Tensile Strength pounds | Working Load pounds |
| 1/8", #4 | 4 | 575 | 115 |
| 3/16", #6 | 5 | 825 | 165 |
| 1/4", #8 | 6 | 1,325 | 265 |
| 5/16", #10 | 8 | 1,925 | 385 |
| 3/8", #12 | 9 | 2,800 | 560 |
| 1/2", #16 | 12 | 4,200 | 840 |
| | | | |
| | | | |
| | | | |
| | | | |

These figures are for brand new rope.  Age, wear, sunlight exposure, splices, and knots will further reduce these figures over time.

| POLYESTER SOLID BRAID | | | |
|---|---|---|---|
| Diameter inches | Diameter mm | Tensile Strength pounds | Working Load pounds |
| 1/8", #4 | 4 | 355 | 71 |
| 3/16", #6 | 5 | 626 | 125 |
| 1/4", #8 | 6 | 1,000 | 200 |
| 5/16", #10 | 8 | 1,600 | 320 |
| 3/8", #12 | 9 | 2,300 | 460 |
| 1/2", #16 | 12 | 3,000 | 600 |

These figures are for brand new rope.  Age, wear, sunlight exposure, splices, and knots will further reduce these figures over time.

For customer service and inquiries please call John 303-809-7274 or email john@denverrope.com;
www.denverrope.com



# DENVER ROPE

The Best Custom Boat Lines, Custom Colored Ropes, & Special Assemblies made to Your Specifications

| Diameter | Diameter | Diameter | Circumference | Circumference |
|----------|----------|----------|---------------|---------------|
| fractional inches | decimal inches | mm | inches | mm |
| 1/8" | 0.125 | 3.2 | 0.4 | 10.0 |
| 3/16" | 0.1875 | 4.8 | 0.6 | 15.0 |
| 1/4" | 0.25 | 6.4 | 0.8 | 20.0 |
| 5/16" | 0.3125 | 7.9 | 1.0 | 24.9 |
| 3/8" | 0.375 | 9.5 | 1.2 | 29.9 |
| 7/16" | 0.4375 | 11.1 | 1.4 | 34.9 |
| 1/2" | 0.5 | 12.7 | 1.6 | 39.9 |
| 9/16" | 0.5625 | 14.3 | 1.8 | 44.9 |
| 5/8" | 0.625 | 15.9 | 2.0 | 49.9 |
| 3/4" | 0.75 | 19.1 | 2.4 | 59.9 |
| 7/8" | 0.875 | 22.2 | 2.8 | 69.8 |
| 1-0" | 1.0 | 25.4 | 3.1 | 79.8 |
| 1-1/8" | 1.1875 | 30.2 | 3.7 | 94.8 |
| 1-1/4" | 1.25 | 31.8 | 3.9 | 99.8 |
| 1-1/2" | 1.5 | 38.1 | 4.7 | 119.7 |
| 1-5/8" | 1.625 | 41.3 | 5.1 | 129.7 |
| 1-3/4" | 1.75 | 44.5 | 5.5 | 139.7 |
| 2-0" | 2.0 | 50.8 | 6.3 | 159.7 |
| 2-1/8" | 2.2 | 55.6 | 6.9 | 174.6 |
| 2-1/4" | 2.25 | 57.2 | 7.1 | 179.6 |
| 2-1/2" | 2.5 | 63.5 | 7.9 | 199.6 |
| 2-5/8" | 2.625 | 66.7 | 8.2 | 209.6 |
| 2-3/4" | 2.75 | 69.9 | 8.6 | 219.5 |
| 3-0" | 3.0 | 76.2 | 9.4 | 239.5 |
| 3-1/4" | 3.25 | 82.6 | 10.2 | 259.4 |
| 3-1/2" | 3.5 | 88.9 | 11.0 | 279.4 |
| 3-5/8" | 3.625 | 92.1 | 11.4 | 289.4 |
| 3-3/4" | 3.75 | 95.3 | 11.8 | 299.4 |
| 4-0" | 4.0 | 101.6 | 12.6 | 319.3 |
| 4-1/4" | 4.25 | 108.0 | 13.4 | 339.3 |
| 4-1/2" | 4.5 | 114.3 | 14.1 | 359.2 |
| 4-5/8" | 4.625 | 117.5 | 14.5 | 369.2 |
| 4-3/4" | 4.75 | 120.7 | 14.9 | 379.2 |
| 5-0" | 5.0 | 127.0 | 15.7 | 399.1 |



# DENVER ROPE

The Best Custom Boat Lines, Custom Colored Ropes, & Special Assemblies made to Your Specifications

## Conversion Factors and Information

1 inch = 25.4 mm
12 inches = 1 foot
1 foot = 304.8 mm
1 meter = 3.28 ft

## Circumference of a Circle

Circular = PI x Diameter

## Weight

1 Pound = 0.4536 kG
1 kG = 2.2046 lbs

## Force

1 Newton = 0.2248 lbs
1 kN = 224.8 lbs

## Standard Hawser Lengths

50 ft / 100 ft / 300 ft / 600 ft / 720 ft / 900 ft / Custom
Where 1 Fathom = 6 feet

## Minimum Breaking Strength (MBS) to Working Load Limit (WLL)

WLL for Very Conservative = MBS/10
WLL for Standard Conservative = MBS/5 (Denver Rope Selection)
WLL for Less Conservative = MBS/3
WLL = Engineered Calculation

MBS = Tensile Strength

For customer service and inquiries please call John 303-809-7274 or email john@denverrope.com;
www.denverrope.com

 **SHORE**

## Shore Offshore Requisition

**REQ#    TH178**

| Line | Description | Start Date | ACC I/D | Supplier | Unit | Quantity | Price | Amount |
|------|-------------|------------|---------|----------|------|----------|-------|--------|
| 1 | Rigging Supplies | 8/3/2020 | | South West Wire Rope | Each | 1 | $19,360.18 | $19,360.18 |
| 2 | | | | | | | | $0.00 |
| 3 | | | | | | | | $0.00 |
| 4 | | | | | | | | $0.00 |
| 5 | | | | | | | | $0.00 |
| 6 | | | | | | | | $0.00 |
| 7 | | | | | | | | $0.00 |
| 8 | | | | | | | | $0.00 |
| 9 | | | | | | | | $0.00 |
| 10 | | | | | | | | $0.00 |
| 11 | | | | | | | | $0.00 |
| 12 | | | | | | | | $0.00 |
| 13 | | | | | | | | $0.00 |
| **Approval Sequence** | | | | | | | **TOTAL** | **$19,360.18** |

| Num | Name | Comments | Job # | Action | Action Date | Notes |
|-----|------|----------|-------|--------|-------------|-------|
| 1 | Cody Sims | | | Submitted | 3-Aug-20 | Deliver to: ATTN DB THOR |
| 2 | | | | | | 499 Powhatten Ct. |
| 3 | | | | | | Gibson, LA 70356 by August 6, 2020 |
| 4 | | | | | | |

THOR 0000024



# SOUTHWEST WIRE ROPE
A DIVISION OF HOUSTON WIRE & CABLE
1404 HWY 90 WEST
NEW IBERIA, LA 70560

# Quote

| | | | |
|---|---|---|---|
| Quote | 29513 | Date | 07/30/2020 |
| Customer | 209004 | | |
| Contact | YESENIA | | |
| Salesperson | Terry Bayard | | |

Quoted For: SHORE OFFSHORE SERVICES LLC
EMAIL INVOICE
PO BOX 1159
AMELIA, LA 70340

Ship To: SHORE OFFSHORE SERVICES LLC
EMAIL INVOICE
PO BOX 1159
AMELIA, LA 70340

## Quote Good Through 08/29/2020

| Ship Via | FOB | Freight Terms | Payment Terms | Quote Description |
|---|---|---|---|---|
| | | | Net 30 Days | |

| Line | Item | Ordered | Price | Extension |
|---|---|---|---|---|
| 1 | 000033-05500<br>2" X 20' 4 PLY POLYESTER SLING<br><br>WITH FLAT EYES EACH END<br>FE4-902-20 | 6 EA | 45.0000 EA | 270.00 |
| 2 | 000030-04288<br>2" X 20' 2 PLY POLYESTER SLING<br><br>2" X 20' 2 PLY POLYESTER SLING<br>WITH FLAT EYES EACH END<br>FE2-902-20P | 6 EA | 24.2500 EA | 145.50 |
| 3 | 000033-04485<br>4" X 20' 2 PLY POLYESTER SLING<br><br>4" X 20' 2 PLY POLYESTER SLING<br>WITH FLAT EYES EACH END<br>FE2-904-20P | 6 EA | 45.0000 EA | 270.00 |
| 4 | 000033-04235<br>2" X 10' 2 PLY POLYESTER SLING<br><br>2" X 10' 2 PLY POLYESTER SLING<br>WITH FLAT EYES EACH END<br>FE2-902-10P | 6 EA | 15.4000 EA | 92.40 |
| 5 | 000033-04435<br>4" X 10' 2 PLY POLYESTER SLING<br><br>4" X 10' 2 PLY POLYESTER SLING<br>WITH FLAT EYES EACH END<br>FE2-904-10 | 6 EA | 29.0000 EA | 174.00 |
| 6 | 3/4" X 5'<br>3/4" x 5' WIRE ROPE SLING WITH 18" EYES EACH END | 8 EA | 15.4000 EA | 123.20 |
| 7 | 1" X 100'<br>1" X 100' WIRE ROPE SLINGS WITH 18" EYES EACH END | 4 EA | 222.9500 EA | 891.80 |
| 8 | FI-50194990-1<br>1" X 50' 6X25 GALV WITH 18" EYES EACH END | 8 EA | 130.5000 EA | 1,044.00 |

THOR 0000025    08/03/2020 1:25:37 PM



# SOUTHWEST WIRE ROPE
A DIVISION OF HOUSTON WIRE & CABLE
1404 HWY 90 WEST
NEW IBERIA, LA 70560

# Quote

| | | | |
|---|---|---|---|
| Quote | 29513 | Date | 07/30/2020 |
| Customer | 209004 | | |
| Contact | YESENIA | | |
| Salesperson | Terry Bayard | | |

| Line | Item | Ordered | Price | Extension |
|---|---|---|---|---|
| | RC: 9.8 TONS VERTICAL<br>PT TO 39,200 LBS | | | |
| 9 | FI-50209539-3<br>1" X 30' TYPE 21-OL-HT<br>1" X 30' TYPE 21-OL-HT  WITH 1-9/16" ML ON TOP AND THIMBLE EYES ON TOP AND BOTTOM<br>-<br>WLL=40000 PTEST 2XWLL=80000 | 2 EA | 320.5000 EA | 641.00 |
| 10 | 1" X 20' 2 LEG<br>1" X 20' 2 LEG SLING ON 1-9/16" ML WITH THIMBLES EACH END | 2 EA | 134.5000 EA | 269.00 |
| 11 | FI-50208508-8<br>1" X 20' 6X25 GALV WIRE ROPE SLING WITH 24" EYES EACH END<br>RC: 9.8 TONS VERTICAL<br>PT TO 39,200 LBS | 4 EA | 66.0000 EA | 264.00 |
| 12 | FI-50193412-17<br>1" X 15' SINGLE LEG SLING W/18" EYES EACH END | 4 EA | 49.6500 EA | 198.60 |
| 13 | FI-50208508-2<br>1" X 20' 6X25 GALV 4 LEG SLING ON 2" MASTER LINK WITH THTIMBLES ON TOP & 24" EYES ON BOTTOMS<br>RC: 34 TONS @ 60 DEGREES<br>PT TO 39,200 LBS EACH LEG | 1 EA | 404.3500 EA | 404.35 |
| 14 | FI-50193412-15<br>3/4" X 20' 4 LEG ON 1-1/2" ML W/THIMBLES EACH END | 1 EA | 206.0000 EA | 206.00 |
| 15 | FI-50193412-20<br>3/4" X 10' 4 LEG ON 1-1/2" MASTER LINK WITH THIMBLES EACH END | 1 EA | 159.7500 EA | 159.75 |
| 16 | FI-50208508-23<br>3/4" x 15' 6x25 GALV 4 LEG SLING ON 1-1/2" MASTER LINK WITH THIMBLES EACH END | 1 EA | 183.0000 EA | 183.00 |
| 17 | FI-50208508-8<br>1" X 20' 6X25 GALV WIRE ROPE SLING WITH 24" EYES EACH END<br>RC: 9.8 TONS VERTICAL<br>PT TO 39,200 LBS | 16 EA | 67.5000 EA | 1,080.00 |
| 18 | 3/4" X 30'<br>3/4" X 30' WIRE ROPE SLINGS WITH THIMBLE EYES EACH END | 8 EA | 44.7500 EA | 358.00 |

THOR 0000026

08/03/2020 1:25:37 PM

# SOUTHWEST WIRE ROPE
A DIVISION OF HOUSTON WIRE & CABLE
1404 HWY 90 WEST
NEW IBERIA, LA 70560

## Quote

| Quote | 29513 | Date | 07/30/2020 |
|-------|-------|------|------------|
| Customer | 209004 | | |
| Contact | YESENIA | | |
| Salesperson | Terry Bayard | | |

| Line | Item | Ordered | Price | Extension |
|------|------|---------|-------|-----------|
| 19 | FI-50208508-8<br>1" X 20' 6X25 GALV WIRE ROPE SLING WITH 24" EYES EACH END<br>RC: 9.8 TONS VERTICAL<br>PT TO 39,200 LBS | 8 EA | 66.0000 EA | 528.00 |
| 20 | 1" X 10'<br>1" X 10' WIRE ROPE SLINGS WITH 24" EYES EACH END | 8 EA | 43.5500 EA | 348.40 |
| 21 | 1" X 10'<br>1" X 10' WIRE ROPE SLING WITH THIMBLE EYE & 1-1/4" MASTER LINK ONE END & THIMBLE WITH 11 TON EYE HOOK OTHER END | 2 EA | 163.6000 EA | 327.20 |
| 22 | 1" X 15'<br>1" X 15' WIRE ROPE SLING WITH THIMBLE EYE AND 1-1/4" MASTER LINK ONE END AND 11 TON EYE HOOK OTHER END | 2 EA | 191.0000 EA | 382.00 |
| 23 | FI-50205804-13<br>1/2" X 30' WIRE ROPE SLING WITH 18" EYES EACH END | 2 EA | 0.0000 EA | 0.00 |
| 24 | 000850-00035<br>1-1/2 TON LEVER CHAIN HOIST<br>W/20' LIFT | 3 EA | 198.0000 EA | 594.00 |
| 25 | 000850-00030<br>3/4 TON LEVER CHAIN HOIST<br>W/20' LIFT | 3 EA | 155.0000 EA | 465.00 |
| 26 | 000850-00005<br>C4 CHAIN HOIST, 1.5t, 20' LIFT<br>18FT DROP | 5 EA | 150.0000 EA | 750.00 |
| 27 | 004000-00030<br>1/2" X 600' 3 STR MANILA ROPE | 3 EA | 58.5000 EA | 175.50 |
| 28 | 004000-00050<br>3/4" X 600' 3 STR MANILA ROPE | 3 EA | 134.0000 EA | 402.00 |
| 29 | 004000-00225<br>2" X 600' 3 STR  POLYPRO BLACK<br>AND YELLOW ROPE | 1 EA | 490.8750 EA | 490.88 |
| 30 | X-50187202-008<br>3" X 600' NYLON ROPE | 1 EA | 2,784.6000 EA | 2,784.60 |

THOR 0000027
08/05/2020 1:25:37 PM

# SOUTHWEST WIRE ROPE
A DIVISION OF HOUSTON WIRE & CABLE
1404 HWY 90 WEST
NEW IBERIA, LA 70560

## Quote

| Quote | 29513 | Date | 07/30/2020 |
|-------|-------|------|------------|
| Customer | 209004 | | |
| Contact | YESENIA | | |
| Salesperson | Terry Bayard | | |

| Line | Item | Ordered | Price | Extension |
|------|------|---------|-------|-----------|
| 31 | 994000-08755<br>4" X 600' 8-BRAID NYLON ROPE,<br><br>4" X 600' 8-BRAID NYLON ROPE,<br>12" CIRCUMFERENCE. | 1 EA | 4,112.0000 EA | 4,112.00 |
| 32 | 001700-00650<br>3/8" 7X19 GALV A/C CABLE DRY 2 pcs 600'<br>KOREAN | 1,200 FT | 0.4500 FT | 540.00 |
| 33 | 001300-03720<br>1" G-4161 SCREW PIN ANCHOR<br>SHACKLE 8-1/2 TON WLL VAN BEEST | 8 EA | 17.5000 EA | 140.00 |
| 34 | 001300-03920<br>1" G-4163 BOLT TYPE ANCHOR<br>SHACKLE 8-1/2 TON WLL VAN BEEST | 8 EA | 22.6500 EA | 181.20 |
| 35 | 001300-03740<br>1-1/4" G-4161 SCREW PIN ANCHOR<br>SHACKLE 12 TON WLL VAN BEEST | 8 EA | 33.2500 EA | 266.00 |
| 36 | 001300-02220<br>1-1/4" GALV BOLT TYPE ANCHOR<br>SHACKLE 12 TON WLL IMPORT | 8 EA | 12.3500 EA | 98.80 |

| | | |
|---|---|---|
| Product | | 19,360.18 |
| Tax | | 0.00 |
| Total | | 19,360.18 |

THOR 0000028
08/03/2020 1:25:37 PM

# SHORE

**Shore Offshore Requisition**          REQ#    **TH178**

| Line | Description | Start Date | ACC I/D | Supplier | Unit | Quantity | Price | Amount |
|------|-------------|-----------|---------|----------|------|----------|-------|--------|
| 1 | 2" x 20' 4 ply straps | | | South West Wire Rope | | 6 | | $0.00 |
| 2 | 2" x 20' 2 ply straps | | | | | 6 | | $0.00 |
| 3 | 4" x 20' 2 ply straps | | | | | 6 | | $0.00 |
| 4 | 2" x 10' 2 ply straps | | | | | 6 | | $0.00 |
| 5 | 4" x 10' 2 ply straps | | | | | 6 | | $0.00 |
| 6 | 3/4" x 5' wire rope slings (18" eyes) | | | | | 8 | | $0.00 |
| 7 | 1" x 100' wire rope slings (18" eyes) | | | | | 4 | | $0.00 |
| 8 | 1" x 50' wire rope slings (18" eyes) | | | | | 4 | | $0.00 |
| 9 | 1" x 30' 2 way D-ring thimble | | | | | 2 | | $0.00 |
| 10 | 1" x 20' 2 way D-ring thimble | | | | | 2 | | $0.00 |
| 11 | 1" x 20' wire rope sling  (for work/pile/counterweight baskets) | | | | | 4 | | $0.00 |
| 12 | 1" x 15' wire rope sling  (for work/pile/counterweight baskets) | | | | | 4 | | $0.00 |
| 13 | 1" x 20' 4 way D-ring eyes | | | | | 1 | | $0.00 |
| 14 | 3/4" x 20' 4 way D-ring eyes | | | | | 1 | | $0.00 |
| 15 | 3/4" x 10' 4 way D-ring eyes | | | | | 1 | | $0.00 |
| 16 | 3/4" x 15' 4 way D-ring eyes | | | | | 1 | | $0.00 |
| 17 | 1" x 20' wire rope slings (bouys) | | | | | 16 | | $0.00 |
| 18 | 3/4" x 30' wire rope slings (for yokohamas) | | | | | 8 | | $0.00 |
| 19 | 1" x 20' wire rope slings | | | | | 8 | | $0.00 |
| 20 | 1" x 10' wire rope slings | | | | | 8 | | $0.00 |
| 21 | 1" x10' stingers D-ring thimble & hook | | | | | 2 | | $0.00 |
| 22 | 1" x 15' stingers D-ring thimble & hook | | | | | 2 | | $0.00 |
| 23 | 1/2" x 30' tripping slings | | | | | 2 | | $0.00 |
| 24 | 1.6T 20' chain Come-A-longs | | | | | 3 | | $0.00 |
| 25 | 3/4T 10' chain Come -A-longs | | | | | 3 | | $0.00 |
| 26 | 1.5T 20' chain falls | | | | | 5 | | $0.00 |
| 27 | 1/2" x 600' manila rope | | | | | 3 | | $0.00 |
| 28 | 3/4" x 600' manila rope | | | | | 3 | | $0.00 |
| 29 | 2" x 600' 3 strand poly rope | | | | | 1 | | $0.00 |
| 30 | 3 strand 3" x 600'  nylon rope | | | | | 2 | | $0.00 |
| 31 | 8 strand 4" x 600' nylon rope | | | | | 1 | | $0.00 |
| 32 | 600' x 3/8" galvanized cable (for TWP handrails) | | | | | 2 | | $0.00 |
| 33 | | | | | | | | |
| 34 | | | | | | | | |
| 35 | | | | | | | | |
| 36 | | | | | | | | |
| **Approval Sequence** | | | | | | | **TOTAL** | **$0.00** |

| Num | Name | Comments | Job # | Action | Action Date | Notes |
|-----|------|----------|-------|--------|-------------|-------|
| 1 | Cody Sims | | | | | |
| 2 | | | | | | |
| 3 | | | | | | |
| 4 | | | | | | |

THOR 0000029

| | Health Safety & Environmental Manual |
|---|---|
| **SHORE** OFFSHORE SERVICES, LLC. | **Hurricane & Tornado Preparedness** |
| | **Issue Date: 04-25-2018** |

# HURRICANE & TORNADO PREPAREDNESS SAFETY
"29 USC 654"

## PURPOSE

The purpose of this standard establishes Shore Offshore Services, LLC guidelines in the event of a Hurricane, Tropical Storm, Tornado, Flash Flood or Storm Surge. It will be reviewed before the start of Hurricane Season (June 1st to November 30th), and revised if necessary. This Standard will be distributed as required, to allow for the smooth implementation of the standard's directives.

## DEFINITIONS

-   TROPICAL CYCLONES - The term for a cyclone circulation that originates over tropical waters. Advisories are issued at six-hour intervals. (Midnight, 6 a.m., noon and 6 p.m. EASTERN DAYLIGHT TIME). Each message gives the name, center (eye) position, intensity and forecast movement of the tropical cyclone.

-   TROPICAL DISTURBANCE - A moving area of thunderstorms in the Tropics that maintains its identity for 24 hours.

-   TROPICAL DEPRESSION - A rotary circulation, with a constant wind speed of 38 miles per hour (33 knots).

-   SMALL-CRAFT WARNING - When a hurricane moves within a few hundred miles of the coast, advisories warn small-craft operators to take precautions not to venture into open water. OUR RESPONSE WILL BE GUIDED BY THESE SMALL-CRAFT WARNINGS AND WILL DETERMINE THE TIMETABLE AND ACTION TO BE TAKEN FOR VARIOUS LOCATIONS.

-   TROPICAL STORM - A distinct rotary circulation, with constant wind speeds from 30-73 mph (34-63 knots).

-   GALE WARNING - When winds of from 39-54 mph (34-47 knots) are expected.

-   STORM WARNING - May be issued when winds of 55-73 mph (48-63 knots) are expected.

-   HURRICANE - Tropical cyclone having a pronounced rotary circulation in which the constant wind speed is 74 mph (64 knots) or more. Positions are given by

THOR 0001375

| | Health Safety & Environmental Manual |
|---|---|
| **SHORE** OFFSHORE SERVICES, LLC. | **Hurricane & Tornado Preparedness** |
| | **Issue Date: 04-25-2018** |

latitude and longitude. (Hurricanes are referred to as Typhoons in the Western Pacific and Cyclones in the Indian Ocean).

- HURRICANE WATCH - Is issued for a coastal area when there is a threat of hurricane conditions within 24-35 hours.

- HURRICANE WARNING - Is issued when hurricane conditions are expected in a specified coastal area within 24 hours or less.

- HURRICANE EYE - The center of a hurricane with light winds and clears to partly cloudy skies. The deceptive calm is bordered by maximum force winds and torrential rains that may last up to 1 1/2 hours on either side of the storm.

- FLASH FLOOD WATCH - A flash flood is possible in the area, STAY ALERT.

- FLASH FLOOD WARNING - A flash flood is imminent, take IMMEDIATE action.

- STORM SURGE - A great dome of water often 50 miles wide that comes sweeping across the coastline near the area where the eye of the hurricane makes landfall. The surge acts like a giant bulldozer, sweeping everything in its path. This is the most dangerous part of a hurricane. Nine out of ten hurricane fatalities are caused by the storm surge.

- TORNADOES - Spawned by hurricanes, be alert.

- TORNADO WATCH - A tornado is possible in your area.

- TORNADO WARNING - A tornado is imminent, take IMMEDIATE action.

## LOCATION COORDINATES

| | | | |
|---|---|---|---|
| Biloxi | - | 30.24 N | 88.53 W |
| Fourchon | - | 29.07 N | 90.18 W |
| Grand Isle | - | 29.14 N | 90.00 W |
| Houma | - | 29.36 N | 90.43 W |
| Lafayette | - | 30.14 N | 92.01 W |
| New Orleans | - | 29.58 N | 90.07 W |
| Pensacola | - | 30.25 N | 87.13 W |
| Venice | - | 29.17 N | 89.21 W |

THOR 0001376

| | **Health Safety & Environmental Manual** |
|---|---|
| SHORE OFFSHORE SERVICES, LLC. | **Hurricane & Tornado Preparedness** |
| | **Issue Date: 04-25-2018** |

**HURRICANE TYPE**         **WIND SPEED**         **STORM SURGE**

| | | |
|---|---|---|
| Category 1 | 74-95 mph | 4-5 ft. above normal |
| Category 2 | 96-110 mph | 6-8 ft. above normal |
| Category 3 | 111-130 mph | 9-12 ft. above normal |
| Category 4 | 131-155 mph | 13-18 ft. above normal |
| Category 5 | Above 155 mph | Over 18 ft. above normal |

**NOAA WEATHER RADIO NETWORK**

| | |
|---|---|
| NEW ORLEANS | 162.550 MHz |
| LAKE CHARLES | 162.400 MHz |
| BURAS | 162.475 MHz |
| MORGAN CITY | 162.475 MHz |
| LAFAYETTE | 162.550 MHz |

**PHASES**

- During hurricane season, a weather watch must be maintained for any conditions which may develop into potential hazards for personnel, facilities or equipment.

- Because each storm is different, it must be determined what phase of preparation to be in.  The timetable, on which the following phases of preparation are to be followed, will vary, depending on the location of the storm, its forward speed and intensity.

- Phase I and Phase II will be followed regardless of hurricane size, movement or other conditions. These two phases will not interrupt operations and do not require lead tome.

- PREPARATION PHASES:

  o  PHASE I - (Eye of the Storm is 500 miles and 33 hours away) The storm is under observation and is being plotted.  Consideration should be given to securing necessary facilities. Check operation of radios and battery-powered equipment such as flashlights.  Have radios tuned to NOAA

| | Health Safety & Environmental Manual |
|---|---|
| SHORE OFFSHORE SERVICES, LLC. | Hurricane & Tornado Preparedness |
| | Issue Date: 04-25-2018 |

Weather Radio or TV tuned for official bulletins.  Have a weather radio at the facility.

o   PHASE II - (Eye of the Storm 400 miles and 26 hours away) Loose equipment and drums should be secured.  Barges are to be secured leaving enough slack in lines and hoses to provide for rising water. All tanks are to be secured and topped off (with water) to prevent them from being moved in the wind.  Small craft warnings are to be observed to allow a safe return from facilities.

o   PHASE III -   (Eye of the Storm 300 miles and 20 hours away) All equipment is to be moved to a secure location with radiators facing, to protect them from wind debris.  House trailers or small buildings are to be tied down   Water, gas and electrical shut off before evacuation.  Materials affected by high water are to be stored and placed on at least two pallets. All fuel tanks are to be topped off.  Radios, important paperwork and equipment should be prepared for evacuation.  Windows should be boarded up if necessary.  All buildings and equipment are to be secured to prevent theft.  Some facilities may have to be evacuated early because of potential flooding of roads that may cut off evacuation routes.  Evacuation should be made with as much daylight remaining as possible.

o   PHASE IV -   (Eye of the storm 200 miles and 13 hours away) THIS IS THE EVACUATION PHASE.  All equipment should have been secured.  This would be the stage to allow personnel to take care of personal business. Get phone numbers of personnel so that they may be reached after hurricane has passed.

o   PHASE V -    (This is the return to work phase) This would take place approximately 12 hours after landfall of the hurricane.  On the return to the facility, watch for washed out roads, downed electrical lines and for flash flooding.  At the facility, watch out for snakes in buildings, shorts in electrical circuits and downed power lines.  Restore power to the facility with the aid from the utility company.   Have a licensed electrician check all electrical circuits and equipment to make sure they are in proper working order.  Wear rubber boots and gloves when checking electrical equipment.  Assess damage to the facility, equipment and materials.  Get the facility back into operation as soon as possible.

o   RETURN TO WORK PHASE

| | **Health Safety & Environmental Manual** |
|---|---|
| **SHORE** OFFSHORE SERVICES, LLC. | **Hurricane & Tornado Preparedness** |
| | **Issue Date: 04-25-2018** |

- ▪ Watch out for downed power lines, washed out roads and flash flooding.
- ▪ Restore power to facility with the aid of the power company. Have a licensed electrician check all electrical circuits and equipment to make sure they are in proper working order.
- ▪ Watch out for snakes in buildings.
- ▪ Assess damage to facility, equipment and materials. Get the facility back into operation as soon as possible.

## PREPARATION CHECKLIST

- Check radios, flashlights and batteries.

- Check facilities for equipment that might move in high wind and secure that equipment.

- Top off all non-fuel tanks (with water) that might move in high wind.

- Keep empty drum storage at a minimum at this time and secure empty drums on pallets inside buildings.

- Store equipment so that radiators face each other to prevent damage from windblown debris.

- Barges are to be secured to allow for rising water.

- Cover all exhaust stacks, air breathers, etc., on diesel engines and air intake filters with securely tied plastic.

- Secure all items in buildings that might be stolen.

- Shut off all electricity, gas and water at main cut off. Shut off all electricity to each building to prevent problems when power is restored.

- Secure all items that may be affected by rising water.

- All fuel tanks are to be topped off.

THOR 0001379

| | **Health Safety & Environmental Manual** |
|---|---|
| SHORE OFFSHORE SERVICES, LLC. | **Hurricane & Tornado Preparedness** |
| | **Issue Date: 04-25-2018** |

- Windows are to be boarded up if necessary.

- Make sure all doors are locked and secured.

- Leave the facility with plenty of daylight remaining and early enough to allow safe passage past rising water.

## TORNADO PROCEDURES

- An underground area, such as a basement or storm cellar, provides the best protection from a tornado. If an underground shelter is unavailable, consider the following:

  o Seek a small interior room or hallway on the lowest floor possible
  o Stay away from doors, windows, and outside walls
  o Stay in the center of the room, and avoid corners because they attract debris
  o Rooms constructed with reinforced concrete, brick or block with no windows and a heavy concrete floor or roof system overhead
  o *Avoid* auditoriums, cafeterias and gymnasiums that have flat, wide-span roofs.

- Personnel should also be aware of what to do if caught outdoors when a tornado is threatening. Seek shelter in a basement or a sturdy building. If one is not within walking distance, try to drive in a vehicle, using a seat belt, to the nearest shelter. If flying debris is encountered while in a vehicle, there are two options:

  o staying in the vehicle with the seat belt on, keeping your head below the windows and covering it with your hands or a blanket,
  o if there is an area which is noticeable lower than the roadway, lie in that area and cover your head with your hands.

THOR 0001380



10/28/2020  10:38



10/28/2020  10:38

THOR 0001084



10/28/2020  10:38

THOR 0001085



10/28/2020  10:39

THOR 0001086

10/28/2020  10:39

THOR 0001087

DEPARTMENT OF HOMELAND SECURITY

OMB No: 1625-0001

U.S. Coast Guard

Exp. Date: 07/31/2022

# REPORT of MARINE CASUALTY, COMMERCIAL DIVING CASUALTY, or OCS-RELATED CASUALTY

## Section I - Reporting Vessel/Facility Information

| 1. Vessel or Facility Name | 2. Vessel Official Number or IMO Number | 3. Vessel Flag |
|---|---|---|
| DB THOR | 8639455 | Panama |

| 4. Vessel Length | | 5. Vessel Gross Tons | 6. Vessel Propulsion Type |
|---|---|---|---|
| 370   ☒ Feet   ☐ Meters | | 12,667 | No Self Propulsion |

| 7. Vessel or Facility Type | 8. Vessel or Facility Service or Occupation |
|---|---|
| Derrick Barge | Offshore Heavy Lift |

| 9. | 9a. Arrangement: | 9b. Number of Vessels Towed: | 9c. Maximum Size of Tow/Tow-Boat(s): | 9d. Did one or more of the barges in the tow cause or sustain damage in the marine casualty? |
|---|---|---|---|---|
| FOR TOWING ONLY | ☐ Pushing Ahead | Empty _____ | Length _____ feet | ☐ Yes ☐ No |
| | ☐ Towing Astern | Loaded _____ | Width _____ feet | (If Yes complete and attach one or more CG-2692A forms to this report) |
| | ☐ Towing Alongside | Total _____ | | |

## Section II - Reason for Submitting this Report (Check all that apply)

10. The above vessel was involved in a Marine Casualty consisting in (46 CFR 4.05-1 and 4.05-10):

☐ 1. Unintended grounding or an unintended strike of (allision with) a bridge

☐ 2. Intended grounding or intended strike of a bridge that created a hazard to navigation, the environment or the safety of the vessel, or that meets any of the criteria in 3 through 8 below

☐ 3. Loss of main propulsion, primary steering, or any associated component or control system that reduces the maneuverability of the vessel

☐ 4. Occurrence materially and adversely affected the vessel's seaworthiness or fitness for service or route

☐ 5. Loss of life

☒ 6. Injury that requires professional medical treatment (treatment beyond first aid) and, if the person is engaged or employed on board a vessel in commercial service, that renders the individual unfit to perform his or her routine duties

☒ 7. Occurrence causing property damage in excess of $75,000

☐ 8. Occurrence involving significant harm to the environment

11. The above facility or vessel was involved in a Commercial Diving Casualty involving (46 CFR 197.484):

☐ 1. Loss of life

☐ 2. Diving-related injury to any person causing incapacitation for more than 72 hours

☐ 3. Diving-related injury to any person requiring hospitalization for more than 24 hours

12. The above facility or vessel was involved in an OCS Facility Casualty Resulting in (33 CFR 146.30 and 146.35):

☐ 1. Death

☐ 2. Injury to 5 or more persons in a single incident

☐ 3. Injury causing any person to be incapacitated for more than 72 hours

☐ 4. OCS Facility only - Damage affecting the usefulness of primary lifesaving or firefighting equipment

☐ 5. OCS Facility only - Damage to the facility exceeding $25,000 resulting from a collision by a vessel with the facility

☐ 6. OCS Facility only - Damage to a floating OCS facility exceeding $25,000

## Section III - Associated Parties Information (Fill all fields that apply)

| 13. Name of Owner | Telephone | 14. Name of Operator or Manager | Telephone |
|---|---|---|---|
| Modern American Railroad Services | 985-631-6212 | Shore Offshore Services, LLC | 281-378-1504 |
| Address | Email address | Address | Email address |
| Physical: 499 Powhattan Court, Gibson, LA 70356. Mailing: P.O. BOX 1160, Amelia, LA 700340 | Kristi@marsre cyclers.com | 20333 State Hwy, Ste. 200 Houston, TX 77070 | Tommy@Shoreoff shore.com |

| 15. Name of Master or Person-In-Charge (Last, First, Middle) | Telephone | 16. Name of Agent (Last, First, Middle) | Telephone |
|---|---|---|---|
| Douglas, Joseph | 281-560-8408 | Gibilterra, Thomas;Sims, Cody | 281-378-1504 |
| Address | Email address | Address | Email address |
| 465 Gulf Camp Road Lumberton, MS 39455 | | 20333 State Hwy, Ste. 200 Houston, TX 77070 | Tommy@Shoreoff shore.com; cody@shoreoffs |

| 17. Name of Dive Supervisor (Last, First, Middle) | Telephone | 18. Name of Pilot (Last, First, Middle) | Telephone |
|---|---|---|---|
| NA | | NA | |
| Address | Email address | Address | Email address |

## Section IV - Casualty Information

| 19. Date/Time (local) of Occurrence | 20. Location-Name of Body of Water or Waterway: Latitude: 29°07'34.5"N | River Mile Marker: |
|---|---|---|
| 10/28/2020; approx. 1600 hours | Bayou Lafourche                    OR    Longitude: 90°12'59.8"W | OR |

| 21. Property Damage Estimated Damage Cost(s) to: | Describe the Extent of Property Damage |
|---|---|
| Vessel: $+$200,000  Cargo: $unknown  Facility: $unknown  Other: $unknown | Collisions with vessels. Still being investigated. |

22. Status of Involved Persons (If there are 1 or more injured, dead or missing persons complete and attach one or more CG-2692C forms to this Report)

| Total Number of Persons: | On Board the Vessel: 21 | Injured: 2 | Dead: 0 | Missing: 0 |
|---|---|---|---|---|

CG-2692 (07/19)

Reset

**Section IV - Casualty Information (continued)**

23. Was This Casualty a Serious Marine Incident (SMI) as Defined in 46 CFR 4.03-2?

[X] Yes    [ ] No    [ ] Not at this Time, But is Likely to Become an SMI   (If Yes or Is Likely to Become an SMI complete/attach one or more CG-2692B forms to this report)

24a. Is there any evidence of alcohol or drug use by or intoxication of individuals directly involved in the casualty?

24b. Did any individual directly involved in a casualty refuse to submit to, or cooperate in, the administration of a timely chemical test, when directed by a law enforcement officer or by the marine employer?

[ ] Yes    [X] No    (If Yes, identify those individuals for whom evidence has been obtained and specify the method to obtain such evidence in block 24c)

[ ] Yes    [X] No   (If Yes, note the individual(s) who refused in block 24c)

24c. Individuals with evidence of drug or alcohol use, evidence of intoxication, or who refused to submit/cooperate in a timely chemical test (if more space is needed, continue in block 25c)

24d. Is there evidence that alcohol use contributed to this casualty?

[ ] Yes    [X] No   (If Yes, discuss in block 25b)

25. Nature and Circumstance of the Casualty:

25a  Activity or Operation Being Conducted at the Time of the Casualty:

The DB THOR was moored starboard side to the Martin Energy Dock #16 in Port Fourchon,LA, with assist tug, M/V CROSBY ENDEAVOR, coupled to the channel/port side during Huricane Zeta.

25b.  Description of the Casualty (casualty events and the conditions and actions that were believed to be causal factors as well as any hazards created as a result of the casualty.  Attach additional sheets if necessary.):

On Oct. 28, 2020, as the eye of Hurricane Zeta approached the DB THOR, her mooring lines parted and bits on the Martin Energy dock failed. The DB THOR along with her assist tug coupled to her port side broke away from the dock and were pushed upstream in the Bayou Lafourche channel by the fast moving storm surge. Contact was made with a number of vessels in the channel. The CROSBY ENDEAVOR decoupled, and the DB THOR came to rest at 29° 11.86 N, 90° 14.12" W on the east side of channel. The DB THOR was towed back to the Martin Energy dock on Oct. 29, 2020. The investigation is continuing at this time this form is being submitted.

25c.  Any other comments, including with respect to use of or need for emergency response equipment:

**Section V - Person Making this Report**

| | | |
|---|---|---|
| 24. Name (PRINT) (Last, First, Middle)<br>Thomas Gibilterra | 25. Signature: | 26. Date<br>11/02/2020 |
| 27. Title<br>Director of Operations | 28. Address<br>20333 State Hwy 249, Ste. 200, Houston, TX 77070 | |
| 29. Telephone No.<br>713-870-6594 | 30. Email<br>tommy@shoreoffshore.com | |

CG-2692 (07/19)

Reset

## INSTRUCTIONS FOR COMPLETION OF FORM CG-2692
### REPORT OF MARINE CASUALTY, COMMERCIAL DIVING CASUALTY, OR OCS-RELATED CASUALTY

An agency may not conduct or sponsor, and a person is not required to respond to a collection of information unless it displays a valid OMB control number. The Coast Guard estimates that the average burden for this report is 1 hour. You may submit any comments concerning the accuracy of this burden estimate or any suggestions for reducing the burden to: Commandant (CG-INV), U.S. Coast Guard Stop 7501, 2703 Martin Luther King Jr Ave SE, Washington, DC 20593-7501 or Office of Management and Budget. Paperwork Reduction Project (1625-0001), Washington, DC 20503.

### WHEN TO USE THIS FORM

1. This form satisfies the requirement for written reports of casualties and accidents found in the Code of Federal Regulations for vessels, commercial diving operations, and Outer Continental Shelf (OCS) facilities. Depending on the circumstances surrounding an incident, a written report may be required if it meets one or more of the conditions described in instructions 2 - 4.

2. VESSELS. If you are the owner, agent, master, operator, or person in charge of a vessel, other than a public vessel or an uninspected recreational or state-numbered vessel, you must submit a report if your vessel:

A. is involved in a marine casualty or accident that occurs upon the navigable waters of the United States, its territories or possessions and meets any of the criteria in block 10, or

B. is a United States vessel involved in a marine casualty or accident, wherever such casualty or accident occurs, that meets any of the criteria in block 10, or

C. is a foreign vessel engaged in OCS activities as defined in 33 CFR 140.10 and is involved in a marine casualty or accident that meets any of the criteria in block 10, or

D. is a foreign tank vessel operating in waters subject to the jurisdiction of the United States, including the Exclusive Economic Zone (EEZ), which involves significant harm to the environment or material damage affecting the seaworthiness or efficiency of the vessel.

3. DIVING.

A. Commercial Diving. If you are the master or person in charge of a vessel or facility from which a commercial diving operation is conducted: (1) at any deepwater port or the safety zone thereof as defined in 33 CFR Part 150; (2) from any artificial island, installation, or other device on the Outer Continental Shelf (OCS) and the waters adjacent thereto as defined in 33 CFR Part 147 or otherwise related to activities on the OCS; (3) from any vessel required to have a certificate of inspection issued by the Coast Guard, including mobile offshore drilling units, regardless of their geographic location; or (4) from any vessel connected with a deepwater port or within the deepwater port safety zone or from any vessel engaged in activities related to the OCS, you must submit a report if there is a diving casualty meeting the criteria in block 11, except if the diving operation is:

1. performed solely for marine scientific research and development purposes by educational institutions,

2. performed solely for research and development for the advancement of diving equipment and technology, or

3. performed solely for search and rescue or related public safety purposes by or under the control of a governmental agency.

B. All Other Diving. Any occurrence of injury or loss of life to any person while diving from a vessel subject to instruction 2 and using underwater breathing apparatus must be reported under instruction 2.

4. OUTER CONTINENTAL SHELF (OCS) FACILITIES. If you are the owner, operator, or person in charge of an OCS facility engaged in OCS activities as defined in 33 CFR 140.10, you must submit a report if your facility is involved in a casualty or accident that meets any of the criteria in block 12.

### COMPLETION OF THIS FORM

5. In accordance with 46 CFR §4.05-10, 46 CFR §197.486, and 33 CFR §146.35, this form shall be filled out as completely and accurately as possible. Please type or print clearly. Fill in all blanks that apply to the kind of accident that has occurred. If a block is not applicable, the abbreviation "NA" should be entered in that space. If the answer is unknown and cannot be obtained before the report has to be submitted (i.e. within 5 days of the accident), the abbreviation "UNK" should be entered in that block. If "NONE" is the correct response, enter it in the block.

6. Once completed, deliver, email, or fax this form within 5 days of the casualty to the Coast Guard Sector, Marine Safety Unit, or Activity nearest the location of the casualty or, if at sea, nearest the arrival port. https://www.uscg.mil/Units/Organization/

7. Tugs or towboats with tows under their control shall complete blocks 9a through 9d and, if one or more barges in their tow causes or sustains damage or meets any other reporting criteria, use the "Barge Addendum," CG-2692A to report information on the barge(s) involved.

8. If an incident involves multiple barges suffering or causing damage while moored or anchored (such as in a fleeting area), or breaking away from their moorage and causing or sustaining damage, enter the location of the moorage in Block 1 of the CG-2692 and complete the form except for blocks 2-8. Details for the barges will be entered on the CG-2692A. If a single barge is involved in a marine casualty while moored or anchored, it shall be documented as any other vessel using the CG-2692.

9. If the casualty meets the criteria for a serious marine incident as defined in 46 CFR §4.03, use the "Chemical Drug and Alcohol Testing Addendum," CG-2692B to report information on required drug and alcohol testing following a serious marine incident.

10. If one or more persons on the vessel or facility were injured, killed, or missing as a result of the casualty, use the "Personnel Casualty" Addendum," CG-2692C to report information on the extent of all personnel casualties.

11. For facilities and vessels engaged in OCS activities who are reporting a casualty in accordance with 33 CFR §146.35 or 33 CFR §146.303, use the "Involved Persons and Witnesses Addendum," CG-2692D to provide a list of all involved persons and witnesses to the casualty being reported. The CG-2692D may also be used to provide data on persons involved or witnessing a marine casualty or commercial diving casualty.

12. Block 20 - "Location": Always identify the body of water or waterway. Latitude and longitude to the nearest tenth of a minute should always be entered except in those rivers and waterways where a mile marker system is commonly used. In those cases, the mile number to the nearest tenth of a mile should be entered. If the latitude and longitude, or mile number, are unknown, reference to a known landmark or object (buoy, light, etc.) with distance and bearing to the object is permissible.

### Privacy Act Notice
#### (CG-2692, CG-2692A, CG-2692B, CG-2692C and CG-2692D)

Authority: Title 46, United States Code (U.S.C.) §6301, Title 46, Code of Federal Regulations (CFR), Parts 4 and 197, and Title 33, CFR Part 146 authorizes the collection of this information. Specifically, 46 CFR §4.05-10 mandates that vessel owners, agents, masters, operators, or persons in charge file a written report of any marine casualty required to be reported under 46 CFR §197.484, and 46 CFR §146.35 mandates that owners, operators, or persons in charge of an OCS facility or vessel engaged in OCS activities file a report of any OCS-related casualty required to be reported under 33 CFR §146.30. For marine casualties, diving casualties when the diving installation is on a vessel, and The written report must be provided on Form CG-2692 (Report of Marine Casualty, Commercial Diving Casualty, or OCS-Related Casualty) supplemented as necessary by appended Forms CG-2692A (Barge Addendum), CG-2692B (Chemical Drug and Alcohol Testing Addendum), CG-2692C (Personnel Casualty Addendum), and CG-2692D (Involved Persons and Witnesses Addendum). The forms may be used for diving casualties when the diving installation is on a facility or for OCS-related casualties that are not also marine casualties under 46 CFR Part 4.

Purpose: The Coast Guard uses this information in gathering facts to determine causes surrounding reportable marine casualties. This information assists in promoting the safety of life, property, and the protection of the marine environment through preventing the reoccurrence of accidents.

Routine Uses: Reportable marine casualty information is needed for Coast Guard investigations of vessel casualties involving injury, death, property damage, environmental damage and dangerous conditions and for preparation and submission of data reports mandated by Congress (see 46 U.S.C. 6301). Information gathered is also used to determine whether new or revised safety laws, regulations, and policies are necessary. Additionally, chemical testing information is needed to improve Coast Guard detection and reduction of drug use by mariners. The information contained on forms CG-2692, CG-2692A, CG-2692B, CG-2692C, and CG-2692D may be disclosed under the Freedom of Information Act (FOIA) in response to a written FOIA request.

Disclosure: Furnishing this information is mandatory per 46 CFR §4.05-10. Failure to furnish the requested information for occurrences that are reportable marine casualties, diving casualties, or OCS-related casualties may result in civil penalty sanctions as outlined in 33 CFR Part 1. Coast Guard credentialed mariners may be subject to administrative adjudication per 48 CFR Part 5 for reporting failures. Some of the casualty information collected on this form may be made available for public inspection; however, information collected is protected from use in civil litigation per 46 U.S.C. §6308. Personal privacy information will not be disclosed routinely. Social Security numbers are not mandated on this form.

THOR 0001094

Reset

DEPARTMENT OF HOMELAND SECURITY

OMB No. 1625-0001

Exp. Date: 07/31/2022

U.S. Coast Guard

# REPORT OF MANDATORY CHEMICAL TESTING FOLLOWING A SERIOUS MARINE INCIDENT INVOLVING VESSELS IN COMMERCIAL SERVICE

Note: This form shall be used to report data on persons directly involved in a serious marine incident involving a vessel in commercial service and the mandatory chemical drug and alcohol testing.

## Section I - Reporting Vessel Information - Casualty Date/Time

| 1. Vessel Name | 2. Vessel Official Number or IMO Number | 3. Date/Time *(local)* of Occurrence |
|---|---|---|
| DB THOR | 2815608408 | 10/27/2020 7:00pm |

## Section II - Reason for Submitting this Report *(Check all that apply)*

4. The above vessel is in commercial service and was involved in a Serious Marine Incident that resulted in *(46 CFR 4.03-2)*:

- [ ] One or more deaths
- [x] An injury to a crewmember, passenger, or other person that requires professional medical treatment beyond first aid, and, in the case of a person employed on board a vessel in commercial service, which renders the individual unfit to perform routine vessel duties
- [x] Damage to property in excess of $200,000
- [ ] Actual or constructive total loss of any vessel subject to inspection under 46 USC 3301
- [ ] Actual or constructive total loss of any self-propelled vessel, not subject to inspection under 46 USC 3301, of 100 gross tons or more
- [ ] A discharge of oil of 10,000 gallons or more into the navigable waters of the United States, as defined in 33 USC 1321
- [ ] A discharge of a reportable quantity of a hazardous substance into the navigable waters of the United States
- [ ] A release of a reportable quantity of a hazardous substance into the environment United States

## Section III - Personnel and Testing Information

5. Individuals Directly Involved in Serious Marine Incident | 6. Drug and Alcohol Testing

| 5a. Name *(Last, First, Middle)* | 5b. USCG Credentialed? | 6a. Drug Test Urine Sample Provided Within 32 Hours? | 6b. Alcohol Test Specimen Provided within 2 Hours? | 6c. Type of Alcohol Test Specimen Provided | 6d. Alcohol Test Results |
|---|---|---|---|---|---|
| Douglas, Joe | [ ] Yes [x] No | [x] Yes [ ] No [ ] Refused | [ ] Yes [x] No [ ] Refused | [ ] Saliva [ ] Blood [x] Breath | NEG |
| Dang, Son | [ ] Yes [x] No | [x] Yes [ ] No [ ] Refused | [ ] Yes [x] No [ ] Refused | [ ] Saliva [ ] Blood [x] Breath | NEG |
| Cruz, Ronald | [ ] Yes [x] No | [x] Yes [ ] No [ ] Refused | [ ] Yes [x] No [ ] Refused | [ ] Saliva [ ] Blood [x] Breath | NEG |
| Mancuso, Richard | [ ] Yes [x] No | [x] Yes [ ] No [ ] Refused | [ ] Yes [x] No [ ] Refused | [ ] Saliva [ ] Blood [x] Breath | NEG |
| Waren, Ronald | [ ] Yes [x] No | [x] Yes [ ] No [ ] Refused | [ ] Yes [x] No [ ] Refused | [ ] Saliva [ ] Blood [x] Breath | NEG |
| Bowen,James | [ ] Yes [x] No | [x] Yes [ ] No [ ] Refused | [ ] Yes [x] No [ ] Refused | [ ] Saliva [ ] Blood [x] Breath | NEG |
| Grantham, Charles | [ ] Yes [x] No | [x] Yes [ ] No [ ] Refused | [ ] Yes [x] No [ ] Refused | [ ] Saliva [ ] Blood [x] Breath | NEG |
| Cloyd, Brian | [ ] Yes [x] No | [x] Yes [ ] No [ ] Refused | [ ] Yes [x] No [ ] Refused | [ ] Saliva [ ] Blood [x] Breath | NEG |
| Marie, Florentina | [ ] Yes [x] No | [x] Yes [ ] No [ ] Refused | [ ] Yes [x] No [ ] Refused | [ ] Saliva [ ] Blood [x] Breath | NEG |
| Burnett, Patrick | [ ] Yes [x] No | [x] Yes [ ] No [ ] Refused | [ ] Yes [x] No [ ] Refused | [ ] Saliva [ ] Blood [x] Breath | NEG |

7. Explanation of why test samples were not collected within required timeframes or not at all and/or why testing was not conducted *(Required for each "No" checked in columns 6a or 6b)*

The Hurricane Zeta had just passed and all roads to location were blocked the tests were conducted as soon as the road to location was opened by state police.

| 8. SAMHSA Accredited Laboratory Conducting Chemical Drug Tests | 9. Laboratory or Individual Conducting Alcohol Tests |
|---|---|
| Name: Robert W Davis | Name: All Industrial Medical |
| Address: 855 Belanger St Ste 108 Houma La 70360 | Address: 855 Belanger St Ste 108 Houma La 70360 |
| Telephone: 985-868-2302 | Telephone: 9858682302 |
| Email: | Email: |

## Section IV - Person Making this Report

| 10. Name *(PRINT) (Last, First, Middle)* | 11. Signature | 12. Date |
|---|---|---|
| Melancon Michael John | Michael J Melancon Jr. *Digitally signed by Michael J Melancon Jr. Date: 2020.11.02 15:19:06 -06'00'* | 11/02/2020 |

| 13. Title | 14. Address |
|---|---|
| HSE Director | 200 A Venture Blvd Houma La 70360 |

| 15. Telephone No. | 16. Email |
|---|---|
| 985-232-3800 | mike@coastalsafetyllc.com |

CG-2692B (07/19)

THOR 0001095

**INSTRUCTIONS FOR COMPLETION OF FORM CG-2692B**
*Report of Chemical Testing Following a Serious Marine Incident Involving a Commercial Vessel*

An agency may not conduct or sponsor, and a person is not required to respond to a collection of information unless it displays a valid OMB control number. The Coast Guard estimates that the average burden for this report is .5 hours. You may submit any comments concerning the accuracy of this burden estimate or any suggestions for reducing the burden to: Commandant (CG-INV), U.S. Coast Guard Stop 7501, 2703 Martin Luther King Jr Ave SE, Washington, DC 20593-7501 or Office of Management and Budget, Paperwork Reduction Project (1625-0001), Washington, DC 20503.

**WHEN TO USE THIS FORM**

1. This form, when submitted in conjunction with a CG-2692 or submitted alone, satisfies the requirement found in the Code of Federal Regulations for written reports of chemical drug and alcohol testing of individuals engaged or employed on board a commercial vessel who are identified as being directly involved in serious marine incidents consisting of one or more of the occurrences lists in block 4. Alcohol tests are to be conducted not later than 2 hours (unless there are safety concerns directly related to the casualty that need to be addressed by the individual(s)) and drug test specimens collected not later than 32 hours after a serious marine incident.

**INDIVIDUAL DIRECTLY INVOLVED IN A SERIOUS MARINE INCIDENT**

2. The term "individual Directly Involved in a Serious Marine Incident" means an individual whose order, action, or failure to act is determined to be, or cannot be ruled out as, a causative factor in the events leading to or causing a serious marine incident.

**COMPLETION OF THIS FORM**

3. In accordance with 46 CFR Subpart 4.06 this form shall be filled out as completely and accurately as possible. Please type or print clearly. Fill in all blanks that apply to the kind of accident that has occurred. If a block is not applicable, the abbreviation "NA" should be entered in that space. If the answer is unknown and cannot be obtained before the report has to be submitted (i.e. within 5 days of the accident), the abbreviation "UNK" should be entered in that block. If "NONE" is the correct response, enter it in the block.

4. If more than 10 individuals are directly involved in the Serious Marine Incident additional CG-2692Bs should be completed.

5. Once completed, deliver, email, or fax this form with a corresponding CG-2692 within 5 days of the casualty to the Coast Guard Sector, Marine Safety Unit, or Activity nearest the location of the casualty or, if at sea, nearest the arrival port. https://www.uscg.mil/Units/Organization

6. Upon receipt of a report of chemical test results. The marine employer shall submit a copy of the test results for each person listed in block 5a of this form to the Coast Guard Officer in Charge, Marine Inspection where the CG-2692B was submitted in accordance with 46 CFR §4.06-60(d).

7. Block 6d - Alcohol Test Result: When the alcohol test results are available, the alcohol concentration shall be expressed numerically in percent by weight (i.e. 0.04, 0.10, etc.); otherwise indicate positive for alcohol being present or negative for no alcohol present.

**NOTICE:** The information collected on this form is routinely available for public inspection. It is needed by the Coast Guard to carry out its responsibility to investigate marine casualties, to identify hazardous conditions or situations and to conduct statistical analysis. The information is used to determine whether new or revised safety initiatives are necessary for the protection of life or property in the marine environment.

THOR 0001096

DEPARTMENT OF HOMELAND SECURITY
U.S. Coast Guard

OMB No.: 1625-0001
Exp. Date: 07/31/2022

# REPORT OF MANDATORY CHEMICAL TESTING FOLLOWING A SERIOUS MARINE INCIDENT INVOLVING VESSELS IN COMMERCIAL SERVICE

Note: This form shall be used to report data on persons directly involved in a serious marine incident involving a vessel in commercial service and the mandatory chemical drug and alcohol testing.

## Section I - Reporting Vessel Information - Casualty Date/Time

| 1. Vessel Name | 2. Vessel Official Number or IMO Number | 3. Date/Time *(local)* of Occurrence |
|---|---|---|
| DB THOR | 2815608408 | 10/27/2020 7:00pm |

## Section II - Reason for Submitting this Report *(Check all that apply)*

4. The above vessel is in commercial service and was involved in a Serious Marine Incident that resulted in *(46 CFR 4.03-2)*:

- [ ] One or more deaths
- [x] An injury to a crewmember, passenger, or other person that requires professional medical treatment beyond first aid, and, in the case of a person employed on board a vessel in commercial service, which renders the individual unfit to perform routine vessel duties
- [x] Damage to property in excess of $200,000
- [ ] Actual or constructive total loss of any vessel subject to inspection under 46 USC 3301
- [ ] Actual or constructive total loss of any self-propelled vessel, not subject to inspection under 46 USC 3301, of 100 gross tons or more
- [ ] A discharge of oil of 10,000 gallons or more into the navigable waters of the United States, as defined in 33 USC 1321
- [ ] A discharge of a reportable quantity of a hazardous substance into the navigable waters of the United States
- [ ] A release of a reportable quantity of a hazardous substance into the environment United States

## Section III - Personnel and Testing Information

| 5a. Name *(Last, First, Middle)* | 5b. USCG Credentialed? | 6a. Drug Test Urine Sample Provided Within 32 Hours? | 6b. Alcohol Test Specimen Provided within 2 Hours? | 6c. Type of Alcohol Test Specimen Provided | 6d. Alcohol Test Results |
|---|---|---|---|---|---|
| Andrews, Lewis | [ ] Yes [x] No | [x] Yes [ ] No [ ] Refused | [ ] Yes [x] No [ ] Refused | [ ] Saliva [ ] Blood [x] Breath | NEG |
| Mccray, Wallace | [ ] Yes [x] No | [x] Yes [ ] No [ ] Refused | [ ] Yes [x] No [ ] Refused | [ ] Saliva [ ] Blood [x] Breath | NEG |
| Jackson, Nick | [ ] Yes [x] No | [x] Yes [ ] No [ ] Refused | [ ] Yes [x] No [ ] Refused | [ ] Saliva [ ] Blood [x] Breath | NEG |
| Williams, Lessle | [ ] Yes [x] No | [x] Yes [ ] No [ ] Refused | [ ] Yes [x] No [ ] Refused | [ ] Saliva [ ] Blood [x] Breath | NEG |
| Rials, Randy | [ ] Yes [x] No | [x] Yes [ ] No [ ] Refused | [ ] Yes [x] No [ ] Refused | [ ] Saliva [ ] Blood [x] Breath | NEG |
| Smith, Montrell | [ ] Yes [x] No | [x] Yes [ ] No [ ] Refused | [ ] Yes [x] No [ ] Refused | [ ] Saliva [ ] Blood [x] Breath | NEG |
| Walker, Darren | [ ] Yes [x] No | [x] Yes [ ] No [ ] Refused | [ ] Yes [x] No [ ] Refused | [ ] Saliva [ ] Blood [x] Breath | NEG |
| Guidry, Reggie | [ ] Yes [x] No | [x] Yes [ ] No [ ] Refused | [ ] Yes [x] No [ ] Refused | [ ] Saliva [ ] Blood [x] Breath | NEG |
| Lowe, Dustin | [ ] Yes [x] No | [x] Yes [ ] No [ ] Refused | [ ] Yes [x] No [ ] Refused | [ ] Saliva [ ] Blood [x] Breath | NEG |
| Ramacola, Melvin | [ ] Yes [x] No | [x] Yes [ ] No [ ] Refused | [ ] Yes [x] No [ ] Refused | [ ] Saliva [ ] Blood [x] Breath | NEG |

7. Explanation of why test samples were not collected within required timeframes or not at all and/or why testing was not conducted *(Required for each "No" checked in columns 6a or 6b)*

The Hurricane Zeta had just passed and all roads to location were blocked the tests were conducted as soon as the road to location was opened by state police.

| 8. SAMHSA Accredited Laboratory Conducting Chemical Drug Tests | 9. Laboratory or Individual Conducting Alcohol Tests |
|---|---|
| Name: Robert W Davis | Name: All Industrial Medical |
| Address: 855 Belanger St Ste 108 Houma La 70360 | Address: 855 Belanger St Ste 108 Houma La 70360 |
| Telephone: 985-868-2302 | Telephone: 9858682302 |
| Email: | Email: |

## Section IV - Person Making this Report

| 10. Name *(PRINT) (Last, First, Middle)* | 11. Signature | 12. Date |
|---|---|---|
| Melancon Michael John | Michael J Melancon Jr.  *Digitally signed by Michael J Melancon Jr. Date: 2020.11.02 15:18:37 -06'00'* | 11/02/2020 |

| 13. Title | 14. Address |
|---|---|
| HSE Director | 200 A Venture Blvd Houma La 70360 |

| 15. Telephone No. | 16. Email |
|---|---|
| 985-232-3800 | mike@coastalsafetyllc.com |

THOR 0001097

CG-2692B (07/19)

**INSTRUCTIONS FOR COMPLETION OF FORM CG-2692B**
*Report of Chemical Testing Following a Serious Marine Incident Involving a Commercial Vessel*

An agency may not conduct or sponsor, and a person is not required to respond to a collection of information unless it displays a valid OMB control number.  The Coast Guard estimates that the average burden for this report is .5 hours.  You may submit any comments concerning the accuracy of this burden estimate or any suggestions for reducing the burden to:  Commandant (CG-INV), U.S. Coast Guard Stop 7501, 2703 Martin Luther King Jr Ave SE, Washington, DC 20593-7501 or Office of Management and Budget, Paperwork Reduction Project (1625-0001), Washington, DC 20503.

**WHEN TO USE THIS FORM**

1.  This form, when submitted in conjunction with a CG-2692 or submitted alone, satisfies the requirement found in the Code of Federal Regulations for written reports of chemical drug and alcohol testing of individuals engaged or employed on board a commercial vessel who are identified as being directly involved in serious marine incidents consisting of one or more of the occurrences lists in block 4.  Alcohol tests are to be conducted not later than 2 hours (unless there are safety concerns directly related to the casualty that need to be addressed by the individual(s)) and drug test specimens collected not later than 32 hours after a serious marine incident.

**INDIVIDUAL DIRECTLY INVOLVED IN A SERIOUS MARINE INCIDENT**

2.  The term "individual Directly Involved in a Serious Marine Incident" means an individual whose order, action, or failure to act is determined to be, or cannot be ruled out as, a causative factor in the events leading to or causing a serious marine incident.

**COMPLETION OF THIS FORM**

3.  In accordance with 46 CFR Subpart 4.06 this form shall be filled out as completely and accurately as possible.  Please type or print clearly.  Fill in all blanks that apply to the kind of accident that has occurred.  If a block is not applicable, the abbreviation "NA" should be entered in that space.  If the answer is unknown and cannot be obtained before the report has to be submitted (i.e. within 5 days of the accident), the abbreviation "UNK" should be entered in that block.  If "NONE" is the correct response, enter it in the block.

4.  If more than 10 individuals are directly involved in the Serious Marine Incident additional CG-2692Bs should be completed.

5.  Once completed, deliver, email, or fax this form with a corresponding CG-2692 within 5 days of the casualty to the Coast Guard Sector, Marine Safety Unit, or Activity nearest the location of the casualty or, if at sea, nearest the arrival port. https://www.uscg.mil/Units/Organization

6.  Upon receipt of a report of chemical test results.  The marine employer shall submit a copy of the test results for each person listed in block 5a of this form to the Coast Guard Officer in Charge, Marine Inspection where the CG-2692B was submitted in accordance with 46 CFR §4.06-60(d).

7.  Block 6d - Alcohol Test Result:  When the alcohol test results are available, the alcohol concentration shall be expressed numerically in percent by weight (i.e. 0.04, 0.10, etc.); otherwise indicate positive for alcohol being present or negative for no alcohol present.

**NOTICE:**  The information collected on this form is routinely available for public inspection.  It is needed by the Coast Guard to carry out its responsibility to investigate marine casualties, to identify hazardous conditions or situations and to conduct statistical analysis.  The information is used to determine whether new or revised safety initiatives are necessary for the protection of life or property in the marine environment.

THOR 0001098

CONFIDENTIAL                                                    CONFIDENTIAL

## Alcohol Testing Form
*(The instructions for completing this form are on the back of Copy 3)*

**• STEP 1: TO BE COMPLETED BY ALCOHOL TECHNICIAN**

A: **Employee Name** Florentia  Jean Marie
   (Print)  (First, M.I., Last)

B: **SSN or Employee ID No.** R223400

C: **Employer Name**  Shore Offshore
   **Street**
   **City, State, Zip**

**DER Name and**
**Telephone No.**
   _____    (___) _____
   **DER Name**          **DER Phone Number**

D: Reason for Test: ☐Random ☐Reasonable Susp ☑Post-Accident ☐Return to Duty ☐Follow-up ☐Pre-employment

**STEP 2: TO BE COMPLETED BY EMPLOYEE**

I certify that I am about to submit to alcohol testing and that the identifying information provided on the form is true and correct.

_____          10 30 2020
**Signature of Employee**         Date   Month  Day   Year

**STEP 3: TO BE COMPLETED BY ALCOHOL TECHNICIAN**

(If the technician conducting the screening test is not the same technician who will be conducting the confirmation test, each technician must complete their own form.) I certify that I have conducted alcohol testing on the above named individual and that I am qualified to operate the testing device(s) identified, and that the results are as recorded.

**TECHNICIAN:** ☑SAT ☐ STT   **DEVICE:** ☐ SALIVA ☑BREATH* 15-Minute Wait: ☐ Yes ☐ No

**SCREENING TEST:** *(For BREATH DEVICE\* write in the space below only if the testing device is not designed to print.)*

Test #  Testing Device Name   Device Serial # OR Lot # & Exp Date   Activation Time  Reading Time  Res

**CONFIRMATION TEST:** *Results MUST be affixed to each copy of this form or printed directly onto the form.*

**REMARKS:**

_____
_____

AHA
**Alcohol Technician's Company**      855 Belander St Ste 108
HSLLU              **Company Street Address**    Houma LA 70360   985 868 7302
**(PRINT) Alcohol Technician's Name** (First, M.I., Last)  **Company City, State, Zip**    **Phone Number**

_____          10 30 2020
**Signature of Alcohol Technician**    Date   Month  Day   Year

**STEP 4: TO BE COMPLETED BY EMPLOYEE IF TEST RESULT IS 0.02 OR HIGHER**

I certify that I have submitted to the alcohol test, the results of which are accurately recorded on this form. I understand that I must not drive, perform safety-sensitive duties, or operate heavy equipment because the results are 0.02 or greater.

_____                    ___ / ___ / ___
**Signature of Employee**            Date   Month  Day  Year

*CMI* INC.    866-835-0690 • P/N 650511

COPY 1 - ORIGINAL - FORWARD TO THE EMPLOYER

---

*Print Screening Results Here or Affix with Tamper Evident Tape*

EVIDI

CMI     INC.
Intoxilyzer 400
Ser No:  103364

Test No:  0823
   Date:  10/30/20
Test Type:  SCREENING

Diagnostics:  PASS
Time of Test:  12:12
   Result:  .038 %BAC

Donor Name:

S'orentia

Signature:

Operator Name:
A Saucedo

Signature:
A Saucedo

*Print Additional Results Here or Affix With Tamper Evident Tape*

THOR 0001099

CONFIDENTIAL                                                    CONFIDENTIAL

**EVID**

CMI, Inc.
Intoxilyzer 400
  Ser No:  103364

Test No:   0824
   Date:   10/30/20
Test Type:  CONFIRMATORY

SEQUENCE              TIME
Diagnostics:   PASS  12:26
  Air Blank:   .000  12:26
  Cal Check:   .038  12:28
  Air Blank:   .000  12:29
     Donor:    .000  12:29


Donor Name:

    *Florentia*

  Signature:


Operator Name:


  Signature:


**ENCE**
Additional Results
Here
or Aff
**EVID**

CMI, Inc.
Intoxilyzer 400
 Ser No:   103364
   Date:   10/30/20

Calibration Check(s)
----------------------------
102620 08:08 .037 %BAC
103020 12:28 .038 %BAC
103020 12:34 .038 %BAC

**COPY 1 - ORIGINAL - FORWARD TO THE EMPLOYER**

*Print Confirmation Results
Here or Affix with
Tamper Evident Tape*

THOR 0001100

ON-SITE CUSTODY AND CONTROL/RESULT FORM

CONFIDENTIAL

CONFIDENTIAL

CRIStal

CLINICAL REFERENCE LABORATORY

SPECIMEN ID NO. 2064642824

**STEP 1: COMPLETED BY COLLECTOR OR EMPLOYER REPRESENTATIVE**

| A. Employer Name, Address, I.D. No. | B. MRO Name, Address, Phone and Fax No. |
|---|---|

C. Donor SSN _____ Name _____

D. Reason for Test: ☐ Pre-employment  ☐ Random  ☐ Reasonable Suspicion/Cause  ☒ Post Accident
☐ Return to Duty  ☐ Follow-up  ☐ Other (specify) _____

E. Collection Site Name, Address:

Collector Phone No. _____

Collector Fax No. _____

**STEP 2: COMPLETED BY COLLECTOR**

| Read specimen temperature within 4 minutes. Is temperature between 90° and 100° F? ☒ Yes ☐ No, enter remarks | Specimen Collection ☐ Cup ☐ Split ☐ Oral Fluid ☐ Other (Enter Remarks Below) ☐ Observed (Enter Remarks Below) |
|---|---|

Alcohol Screen: ☐ Negative  ☐ Positive  Collector Initials _____   If Alcohol Screen is positive, carefully follow instructions.

REMARKS:

**STEP 3: Collector affixes bottle seal(s) to bottle(s). Collector dates seal(s). Donor initials seal(s). Donor completes STEP 4**

**STEP 4: COMPLETED BY DONOR**

*I consent to have my specimen collected by the named collector, analyzed, including drug analysis, by Clinical Reference Laboratory, Inc., its employees, agents, and/ or representatives ("CRL"); and the results of that analysis made available to the above named Company/Employer and/or their designee. I certify that I provided my specimen to the collector; that I have not adulterated it in any manner; that each specimen container used was sealed with a tamper-evident seal in my presence; and that the information provided on this form and on the label affixed to each specimen container is correct.*

Date of Collection: 2 0

X _____  (_____) _____  Phone Number

Mo. Day Year

DOB Mo. Day Year

Signature of Donor

**STEP 5: CHAIN OF CUSTODY - INITIATED BY COLLECTOR AND COMPLETED BY LABORATORY**

*I certify that the specimen given to me by the donor identified in the certification in step 4 above was collected, labeled, sealed and released as noted.*

X _____
Signature of Collector

Time and Date of Analysis ☐ AM ☐ PM
2 0
Mo. Day Year

SPECIMEN BOTTLE(S) RELEASED TO:

* (PRINT) Collector's Name (First MI, Last)*

* "Short Term Storage" or On-Site Analyst *

**STEP 6a: TO BE COMPLETED BY ON-SITE ANALYST**

SCREENING DEVICE UTILIZED

Device Name: ☒ CRL STAT, or ☐ OTHER _____

Test Panel Number ☐ 5, ☐ 7, ☐ 9, ☐ 10, or ☐ OTHER_____

Lot Number: _____

Expiration Date: 2 0
Mo. Year

**STEP 6b: TO BE COMPLETED BY ON-SITE ANALYST**

RESULT:

☒ NEGATIVE

**STEP 7: COMPLETED BY MEDICAL REVIEW OFFICER**

*My determination/verification is:*
☐ Negative  ☐ Positive  ☐ Test Cancelled  ☐ Refusal To Test because:  ☐ Adulterated  ☐ Substituted

REMARKS: _____

X _____
Signature of Medical Review Officer

(PRINT) Medical Review Officer's Name (First, MI, Last)

Date

THOR 0001101

## Alcohol Testing Form
*(The instructions for completing this form are on the back of Copy 3)*

*Print Screening Results Here or Affix with Tamper Evident Tape*

**• STEP 1: TO BE COMPLETED BY ALCOHOL TECHNICIAN**

A: Employee Name **Charles Grantham**
(Print)    (First, M.I., Last)

B: SSN or Employee ID No. **435·02·2376**

C: Employer Name **Shore Offshore**
Street
City, State, Zip

DER Name and
Telephone No.
DER Name    ( ___ ) DER Phone Number

D: Reason for Test: ☐Random ☐Reasonable Susp ☒Post-Accident ☐Return to Duty ☐Follow-up ☐Pre-employmel

EVIDE

CMI, Inc.
Intoxilyzer 400
Ser No: 103364

Test No: 0817
Date: 10/30/20
Test Type: SCREENING

Diagnostics: PASS
Time of Test: 11:41
Result: .000 %BAC

Donor Name:
**CharlesGrantham**

Signature:
*[signature]*

**STEP 2: TO BE COMPLETED BY EMPLOYEE**

I certify that I am about to submit to alcohol testing and that the identifying information provided on the f
is true and correct.

*[Signature]*
**Signature of Employee**

Date **10 30 2020**
Month Day Year

Operator Name:
**A. Saucedo**

Signature:
*[signature]*

**STEP 3: TO BE COMPLETED BY ALCOHOL TECHNICIAN**

(If the technician conducting the screening test is not the same technician who will be conducting the
confirmation test, each technician must complete their own form.) I certify that I have conducted alcohol
testing on the above named individual and that I am qualified to operate the testing device(s) identified, an
that the results are as recorded.

TECHNICIAN: ☒SAT ☐STT DEVICE: ☐SALIVA ☒BREATH° 15-Minute Wait: ☐Yes ☐No

SCREENING TEST: *(For BREATH DEVICE° write in the space below only if the testing device is not designed to print.)*

Test #   Testing Device Name   Device Serial # OR Lot # & Exp Date   Activation Time   Reading Time   Res

CONFIRMATION TEST: *Results MUST be affixed to each copy of this form or printed directly onto the form.*

REMARKS:

**AIM**
Alcohol Technician's Company
**A. Saucedo**
(PRINT) Alcohol Technician's Name (First, M.I., Last)

*[Signature]*
**Signature of Alcohol Technician**

**855 Belanger St Ste 108**
Company Street Address
**Houma LA 70360    985 868·2302**
Company City, State, Zip    Phone Number

Date **10 30 2020**
Month Day Year

**STEP 4: TO BE COMPLETED BY EMPLOYEE IF TEST RESULT IS 0.02 OR HIGHER**

I certify that I have submitted to the alcohol test, the results of which are accurately recorded on this form. I understand
that I must not drive, perform safety-sensitive duties, or operate heavy equipment because the results are 0.02 or greater.

_____ / _____ / _____
**Signature of Employee**    Date   Month  Day  Year

*Print Additional Results Here or Affix With Tamper Evident Tape*

**cmi** INC.    866-835-0690 • P/N 650511

THOR 0001102

*COPY 1 - ORIGINAL - FORWARD TO THE EMPLOYER*

CONFIDENTIAL
CONFIDENTIAL

*Print Screening Results
Here or Affix with
Tamper Evident Tape*

*Print Confirmation Results
Here or Affix with
Tamper Evident Tape*

*Print
Additional Results
Here
or Affix With
Tamper Evident
Tape*

**COPY 1 - ORIGINAL - FORWARD TO THE EMPLOYER**

THOR 0001103

ON-SITE CUSTODY AND CONTROL/RESULT FORM



CONFIDENTIAL

CONFIDENTIAL



CLINICAL REFERENCE LABORATORY

CRIStat

SPECIMEN ID NO. 2064642818

## STEP 1: COMPLETED BY COLLECTOR OR EMPLOYER REPRESENTATIVE

| A. Employer Name, Address, I.D. No. | B. MRO Name, Address, Phone and Fax No. |
|---|---|

C. Donor SSN 435 - 03 - 7231 4    Name (First, MI, Last) CHARLES GRANT HAM

D. Reason for Test:  ☐ Pre-employment  ☐ Random   ☐ Reasonable Suspicion/Cause  ☑ Post Accident
☐ Return to Duty  ☐ Follow-up   ☐ Other (specify)

E. Collection Site Name, Address:

Collector Phone No.

Collector Fax No. 985-101-1167

## STEP 2: COMPLETED BY COLLECTOR

| Read specimen temperature within 4 minutes. Is temperature between 90° and 100° F?  ☐ Yes  ☐ No, enter remarks | Specimen Collection  ☑ Cup  ☐ Split  ☐ Oral Fluid  ☐ Other (Enter Remarks Below)  ☐ Observed (Enter Remarks Below) |
|---|---|

Alcohol Screen:  ☐ Negative  ☐ Positive   Collector Initials _____   If Alcohol Screen is positive, carefully follow instructions.

REMARKS:

STEP 3: Collector affixes bottle seal(s) to bottle(s). Collector dates seal(s). Donor initials seal(s). Donor completes STEP 4

## STEP 4: COMPLETED BY DONOR

I consent to have my specimen collected by the named collector, analyzed, including drug analysis, by Clinical Reference Laboratory, Inc., its employees, agents, and/or representatives ("CRL); and the results of that analysis made available to the above named Company/Employer and/or their designee. I certify that I provided my specimen to the collector; that I have not adulterated it in any manner; that each specimen container used was sealed with a tamper-evident seal in my presence; and that the information provided on this form and on the label affixed to each specimen container is correct.

X _____  Signature of Donor

(985) 375-8412   Phone Number

Date of Collection
Mo. [ ][ ] Day [2][0] Year [1][?]

DOB
Mo. [ ][ ] Day [ ][ ] Year [ ][ ]

## STEP 5: CHAIN OF CUSTODY - INITIATED BY COLLECTOR AND COMPLETED BY LABORATORY

I certify that the specimen given to me by the donor identified in the certification in step 4 above was collected, labeled, sealed and released as noted.

X _____  Signature of Collector *

_____  (PRINT) Collector's Name (First MI, Last)*

Time and Date of Analysis
[ ][ ][ ] ☐ AM ☐ PM.
Mo. [ ][ ] Day [2][0] Year [ ]

SPECIMEN BOTTLE(S) RELEASED TO:
On Site
* "Short Term Storage" or On-Site Analyst *

## STEP 6a: TO BE COMPLETED BY ON-SITE ANALYST

SCREENING DEVICE UTILIZED

Device Name:  ☐ CRLSTAT, or ☐ OTHER _____

Test Panel Number ☑ 5, ☐ 7, ☐ 9, ☐ 10, or ☐ OTHER _____

Lot Number: [ ][ ][ ][ ][ ][ ][ ]

Expiration Date: [ ][ ] Mo. [2][0][ ] Year

## STEP 6b: TO BE COMPLETED BY ON-SITE ANALYST

RESULT:

☑ NEGATIVE

## STEP 7: COMPLETED BY MEDICAL REVIEW OFFICER

My determination/verification is:

☐ Negative   ☐ Positive   ☐ Test Cancelled   ☐ Refusal To Test because:   ☐ Adulterated   ☐ Substituted

REMARKS: _____

X _____
Signature of Medical Review Officer

_____
(PRINT) Medical Review Officer's Name (First, MI, Last)

THOR 0001104

SPECIMEN ID NO. 2064642818

CONFIDENTIAL CONFIDENTIAL

## Alcohol Testing Form
*(The instructions for completing this form are on the back of Copy 3)*

**• STEP 1: TO BE COMPLETED BY ALCOHOL TECHNICIAN**

A: Employee Name _Randy Rials_
      (Print)   (First, M.I., Last) 310-128-9895

B: SSN or Employee ID No. _Shore Offshore_

C: Employer Name
   Street
   City, State, Zip _____

   DER Name and
   Telephone No. _____
                    **DER Name**                    **DER Phone Number** (___) ___

D: Reason for Test: ☐Random ☐Reasonable Susp ☒Post-Accident ☐Return to Duty ☐Follow-up ☐Pre-employment

**STEP 2: TO BE COMPLETED BY EMPLOYEE**

I certify that I am about to submit to alcohol testing and that the identifying information provided on the form is true and correct.

_____          10.30.2020
Signature of Employee          Date   Month  Day  Year

**STEP 3: TO BE COMPLETED BY ALCOHOL TECHNICIAN**

(If the technician conducting the screening test is not the same technician who will be conducting the confirmation test, each technician must complete their own form.) I certify that I have conducted alcohol testing on the above named individual and that I am qualified to operate the testing device(s) identified, and that the results are as recorded.

TECHNICIAN:   ☒ SAT ☐ STT   DEVICE: ☐ SALIVA ☒ BREATH* 15-Minute Wait: ☐ Yes ☐ No

SCREENING TEST: *(For BREATH DEVICE\* write in the space below only if the testing device is not designed to print.)*

Test #  Testing Device Name  Device Serial # OR Lot # & Exp Date  Activation Time  Reading Time  Result

CONFIRMATION TEST: *Results MUST be affixed to each copy of this form or printed directly onto the form.*

REMARKS: _____

_____
Alcohol Technician's Company      855 Kennings St Ste 108
                                  Company Street Address
_____        Houma, LA 10200        985 808 2452
(PRINT) Alcohol Technician's Name (First, M.I., Last)  Company City, State, Zip  Phone Number

_____                10 30 2020
Signature of Alcohol Technician          Date  Month Day Year

**STEP 4: TO BE COMPLETED BY EMPLOYEE IF TEST RESULT IS 0.02 OR HIGHER**

I certify that I have submitted to the alcohol test, the results of which are accurately recorded on this form. I understand that I must not drive, perform safety-sensitive duties, or operate heavy equipment because the results are 0.02 or greater.

_____                ___/___/___
Signature of Employee          Date   Month Day Year

*Print Screening Results Here or Affix with Tamper Evident Tape*

EVID

CMI, Inc.
Intoxilyzer 400
Ser No: 103364

Test No: 0818
   Date: 10/30/20
Test Type: SCREENING

Diagnostics: PASS
Time of Test: 11:46
   Result: .000 %BAC

Donor Name:

_Randy Rials_

Signature:

Operator Name:
H Saucedo

Signature:

*Print Additional Results Here or Affix With Tamper Evident Tape*

CMI INC.   866-835-0690 • P/N 650511

THOR 0001105

COPY 1 - ORIGINAL - FORWARD TO THE EMPLOYER

CONFIDENTIAL
CONFIDENTIAL

*Print Screening Results*
*Here or Affix with*
*Tamper Evident Tape*

*Print Confirmation Results*
*Here or Affix with*
*Tamper Evident Tape*

*Print*
*Additional Results*
*Here*
*or Affix With*
*Tamper Evident*
*Tape*

**COPY 1 - ORIGINAL - FORWARD TO THE EMPLOYER**

THOR 0001106

ON-SITE CUSTODY AND CONTROL/RESULT FORM

CONFIDENTIAL



CONFIDENTIAL

CRIStal

CONFIDENTIAL

SPECIMEN ID NO. 2064642819

CLINICAL REFERENCE LABORATORY

## STEP 1: COMPLETED BY COLLECTOR OR EMPLOYER REPRESENTATIVE

A. Employer Name, Address, I.D. No.

B. MRO Name, Address, Phone and Fax No.

C. Donor SSN [ ] - [ ] - [ ]    Name

D. Reason for Test: ☐ Pre-employment  ☐ Random   ☐ Reasonable Suspicion/Cause   ☒ Post Accident
☐ Return to Duty  ☐ Follow-up   ☐ Other (specify)

E. Collection Site Name, Address:

Collector Phone No.

Collector Fax No.

## STEP 2: COMPLETED BY COLLECTOR

Read specimen temperature within 4 minutes. Is temperature between 90° and 100° F? ☒ Yes ☐ No, enter remarks

Specimen Collection
☐ Cup  ☐ Split  ☐ Oral Fluid  ☐ Other  ☐ Observed
(Enter Remarks Below) (Enter Remarks Below)

Alcohol Screen: ☐ Negative  ☐ Positive   Collector Initials_____   If Alcohol Screen is positive, carefully follow instructions.

REMARKS:

STEP 3: Collector affixes bottle seal(s) to bottle(s). Collector dates seal(s). Donor initials seal(s). Donor completes STEP 4

## STEP 4: COMPLETED BY DONOR

*I consent to have my specimen collected by the named collector, analyzed, including drug analysis, by Clinical Reference Laboratory, Inc., its employees, agents, and/ or representatives ("CRL"); and the results of that analysis made available to the above named Company/Employer and/or their designee. I certify that I provided my specimen to the collector; that I have not adulterated it in any manner; that each specimen container used was sealed with a tamper-evident seal in my presence; and that the information provided on this form and on the label affixed to each specimen container is correct.*

Date of Collection
[ ] [ ] 2 0 [ ]
Mo. Day Year

X _____
Signature of Donor

( [ ] [ ] ) [ ] [ ] [ ] - [ ] [ ] [ ] [ ]
Phone Number

DOB
[ ] [ ] [ ] [ ]
Mo. Day Year

## STEP 5: CHAIN OF CUSTODY - INITIATED BY COLLECTOR AND COMPLETED BY LABORATORY

*I certify that the specimen given to me by the donor identified in the certification in step 4 above was collected, labeled, sealed and released as noted.*

X _____
Signature of Collector

* (PRINT) Collector's Name (First MI, Last)*

Time and Date of Analysis
[ ] [ ] [ ] AM PM
[ ] [ ] 2 0 [ ]
Mo. Day Year

SPECIMEN BOTTLE(S) RELEASED TO:

On Site

* "Short Term Storage" or On-Site Analyst *

## STEP 6a: TO BE COMPLETED BY ON-SITE ANALYST

SCREENING DEVICE UTILIZED

Device Name: ☐ CRLSTAT, or ☐ OTHER _____

Test Panel Number ☒ 5, ☐ 7, ☐ 9, ☐ 10, or ☐ OTHER_____

Lot Number: [ ] [ ] [ ] [ ] [ ]

Expiration Date: [ ] 2 0 [ ]
Mo. Year

## STEP 6b: TO BE COMPLETED BY ON-SITE ANALYST

RESULT:

☒ NEGATIVE

## STEP 7: COMPLETED BY MEDICAL REVIEW OFFICER

*My determination/verification is:*
☐ Negative  ☐ Positive  ☐ Test Cancelled  ☐ Refusal To Test because:  ☐ Adulterated  ☐ Substituted

REMARKS:_____

X _____
Signature of Medical Review Officer

(PRINT) Medical Review Officer's Name (First, MI, Last)    Date

THOR 0001107

© 2020 Clinical Reference Laboratory, Inc.    CMCN #000128    SPECIMEN ID NO.

CONFIDENTIAL                                                                                    CONFIDENTIAL

## Alcohol Testing Form
*(The instructions for completing this form are on the back of Copy 3)*

---

**• STEP 1: TO BE COMPLETED BY ALCOHOL TECHNICIAN**

A: Employee Name ___Darren Walker___
  (Print)  (First, M.I., Last)

B: SSN or Employee ID No. ___XX ___29 71___

C: Employer Name ___Shore Offshore___
  Street _____
  City, State, Zip _____

  DER Name and
  Telephone No. _____
               (___) _____
       **DER Name**        **DER Phone Number**

D: Reason for Test: ☐Random ☐Reasonable Susp ☒Post-Accident ☐Return to Duty ☐Follow-up ☐Pre-employment

**STEP 2: TO BE COMPLETED BY EMPLOYEE**

I certify that I am about to submit to alcohol testing and that the identifying information provided on the form is true and correct.

___Walker___     ___10 30 2020___
**Signature of Employee**    Date   Month   Day   Year

**STEP 3: TO BE COMPLETED BY ALCOHOL TECHNICIAN**

(If the technician conducting the screening test is not the same technician who will be conducting the confirmation test, each technician must complete their own form.) I certify that I have conducted alcohol testing on the above named individual and that I am qualified to operate the testing device(s) identified, and that the results are as recorded.

TECHNICIAN: ☒BAT ☐STT  DEVICE: ☐SALIVA ☒BREATH* 15-Minute Wait: ☐Yes ☐No

SCREENING TEST: *(For BREATH DEVICE\* write in the space below only if the testing device is not designed to print.)*

Test #  Testing Device Name  Device Serial # *OR* Lot # & Exp Date  Activation Time  Reading Time  Resul

**CONFIRMATION TEST:** *Results MUST be affixed to each copy of this form or printed directly onto the form.*

**REMARKS:** _____
_____

___Alm___
**Alcohol Technician's Company**    ___855 Belanger St Ste 108___
**(PRINT) Alcohol Technician's Name (First, M.I., Last)**   **Company Street Address**   ___Houma LA 70360___  ___985 868 2502___
     **Company City, State, Zip**    **Phone Number**
**Signature of Alcohol Technician**    ___10 30 2020___
     Date   Month   Day   Year

**STEP 4: TO BE COMPLETED BY EMPLOYEE IF TEST RESULT IS 0.02 OR HIGHER**

I certify that I have submitted to the alcohol test, the results of which are accurately recorded on this form. I understand that I must not drive, perform safety-sensitive duties, or operate heavy equipment because the results are 0.02 or greater.

_____  ___/___/___
**Signature of Employee**    Date   Month Day   Year

---

*Print Screening Results Here or Affix with Tamper Evident Tape*

**EVID**

CMI, Inc.
Intoxilyzer 400
Ser No:   103364

Test No:   0819
  Date:   10/30/20
Test Type:   SCREENING

Diagnostics:   PASS
Time of Test:   11:52
  Result:   .000 %BAC

Donor Name:

___Darren Walker___

Signature:

Operator Name:

Signature:

---

*Print Additional Results Here or Affix With Tamper Evident Tape*

---

**COPY 1 - ORIGINAL - FORWARD TO THE EMPLOYER**

THOR 0001108

CONFIDENTIAL
CONFIDENTIAL

*Print Screening Results Here or Affix with Tamper Evident Tape*

*Print Confirmation Results Here or Affix with Tamper Evident Tape*

*Print Additional Results Here or Affix With Tamper Evident Tape*

**COPY 1 - ORIGINAL - FORWARD TO THE EMPLOYER**

THOR 0001109

ON-SITE CUSTODY AND CONTROL/RESULT FORM

CONFIDENTIAL

CONFIDENTIAL

CRIS*tat*

CRL CLINICAL REFERENCE LABORATORY
GLOBAL SERVICES

SPECIMEN ID NO.   2064642820

## STEP 1: COMPLETED BY COLLECTOR OR EMPLOYER REPRESENTATIVE

A. Employer Name, Address, I.D. No.

B. MRO Name, Address, Phone and Fax No.

(First, MI, Last)

C. Donor SSN [X][X][X] – [X][X] – [2][9][1][1]   Name   [D][A][R][R][E][N]   [M][W][A][L][V][E][R]

D. Reason for Test:   ☐ Pre-employment   ☐ Random   ☐ Reasonable Suspicion/Cause   ☑ Post Accident
☐ Return to Duty   ☐ Follow-up   ☐ Other (specify)

E. Collection Site Name, Address:

Collector Phone No. _____

Collector Fax No. _____

## STEP 2: COMPLETED BY COLLECTOR

| Read specimen temperature within 4 minutes. Is temperature between 90° and 100° F? ☑ Yes ☐ No, enter remarks | Specimen Collection ☑ Cup ☐ Split ☐ Oral Fluid ☐ Other (Enter Remarks Below) ☐ Observed (Enter Remarks Below) |

Alcohol Screen:  ☐ Negative  ☐ Positive   Collector Initials _____   If Alcohol Screen is positive, carefully follow instructions.

REMARKS: _____

**STEP 3: Collector affixes bottle seal(s) to bottle(s). Collector dates seal(s). Donor initials seal(s). Donor completes STEP 4**

## STEP 4: COMPLETED BY DONOR

I consent to have my specimen collected by the named collector, analyzed, including drug analysis, by Clinical Reference Laboratory, Inc., its employees, agents, and/or representatives ("CRL"); and the results of that analysis made available to the above named Company/Employer and/or their designee. I certify that I provided my specimen to the collector; that I have not adulterated it in any manner; that each specimen container used was sealed with a tamper-evident seal in my presence; and that the information provided on this form and on the label affixed to each specimen container is correct.

Date of Collection
Mo. [ ] Day [2][0] Year [ ]

DOB
Mo. [ ] Day [ ] Year [ ]

X _____   ( ____ ) _____
Signature of Donor                    Phone Number

## STEP 5: CHAIN OF CUSTODY - INITIATED BY COLLECTOR AND COMPLETED BY LABORATORY

I certify that the specimen given to me by the donor identified in the certification in step 4 above was collected, labeled, sealed and released as noted.

X _____
Signature of Collector

(PRINT) Collector's Name (first MI, Last)

Time and Date of Analysis
_____ ☐ AM ☐ PM
Mo. [2][0] Day [ ] Year [ ]

SPECIMEN BOTTLE(S) RELEASED TO:

On Site

"Short Term Storage" or On-Site Analyst

## STEP 6a: TO BE COMPLETED BY ON-SITE ANALYST

SCREENING DEVICE UTILIZED

Device Name: ☑ CRL*STAT*, or ☐ OTHER _____

Test Panel Number ☑5, ☐7, ☐9, ☐10, or ☐OTHER _____

Lot Number: [ ][ ][ ][ ][ ]

Expiration Date: [ ][ ] [2][0] Mo.        Year

## STEP 6b: TO BE COMPLETED BY ON-SITE ANALYST

RESULT:

☑ **NEGATIVE**

## STEP 7: COMPLETED BY MEDICAL REVIEW OFFICER

*My determination/verification is:*
☐ Negative   ☐ Positive   ☐ Test Cancelled   ☐ Refusal To Test because:   ☐ Adulterated   ☐ Substituted

REMARKS: _____

X _____
Signature of Medical Review Officer

(PRINT) Medical Review Officer's Name (First, MI, Last)

THOR 0001110
Date

CONFIDENTIAL                                                                                          CONFIDENTIAL

## Alcohol Testing Form
*(The instructions for completing this form are on the back of Copy 3)*

*Print Screening Results Here or Affix with Tamper Evident Tape*

**• STEP 1: TO BE COMPLETED BY ALCOHOL TECHNICIAN**

A: Employee Name ___Richard Marcus___
(Print)   (First, M.I., Last)

B: SSN or Employee ID No. ___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___

C: Employer Name ___Shore Offshore___
   Street
   City, State, Zip

DER Name and
Telephone No. _____  (   ) _____
              DER Name              DER Phone Number

D: Reason for Test: ☐Random ☐Reasonable Susp. ☐Post-Accident ☐Return to Duty ☐Follow-up ☐Pre-employment

**EVIDE**

CMI, Inc.
Intoxilyzer 400
Ser No:  103364

Test No:   0820
  Date:   10/30/20
Test Type:  SCREENING

Diagnostics:  PASS
Time of Test:  11:56
    Result:  .000 %BAC

Donor Name:
  Richar Marcus

**STEP 2: TO BE COMPLETED BY EMPLOYEE**

I certify that I am about to submit to alcohol testing and that the identifying information provided on the form is true and correct.

___Richard Marcus___                    ___10,30,2020___
Signature of Employee          Date   Month  Day   Year

Signature:
  Richard Marcus

**STEP 3: TO BE COMPLETED BY ALCOHOL TECHNICIAN**

(If the technician conducting the screening test is not the same technician who will be conducting the confirmation test, each technician must complete their own form.) I certify that I have conducted alcohol testing on the above named individual and that I am qualified to operate the testing device(s) identified, and that the results are as recorded.

TECHNICIAN: ☑SAT ☐STT  DEVICE: ☐SALIVA ☑BREATH* 15-Minute Wait: ☐Yes ☐No

Operator Name:
  A Saucedo

Signature:

SCREENING TEST: *(For BREATH DEVICE* write in the space below only if the testing device is not designed to print.)*

Test #  Testing Device Name  Device Serial # OR Lot # & Exp Date  Activation Time  Reading Time  Result

CONFIRMATION TEST: *Results MUST be affixed to each copy of this form or printed directly onto the form.*

**REMARKS:**

_____

FUM
Alcohol Technician's Company
A Saucedo
(PRINT) Alcohol Technician's Name (First, M.I., Last)

855 Belmonst Ste 108
Company Street Address
Houma LA 70360   985 868 2302
Company City, State, Zip      Phone Number

Signature of Alcohol Technician        ___10 30 2020___
                                 Date   Month  Day  Year

**STEP 4: TO BE COMPLETED BY EMPLOYEE IF TEST RESULT IS 0.02 OR HIGHER**

I certify that I have submitted to the alcohol test, the results of which are accurately recorded on this form. I understand that I must not drive, perform safety-sensitive duties, or operate heavy equipment because the results are 0.02 or greater.

_____          ___/___/___
Signature of Employee          Date   Month  Day  Year

*Print Additional Results Here or Affix With Tamper Evident Tape*

**CMI** INC.    866-835-0690 • P/N 650511

COPY 1 - ORIGINAL - FORWARD TO THE EMPLOYER

*Print Screening Results
Here or Affix with
Tamper Evident Tape*

*Print Confirmation Results
Here or Affix with
Tamper Evident Tape*

*Print
Additional Results
Here
or Affix With
Tamper Evident
Tape*

**COPY 1 - ORIGINAL - FORWARD TO THE EMPLOYER**

ON-SITE CUSTODY AND CONTROL/RESULT FORM

 CRIStat

**CONFIDENTIAL**

SPECIMEN ID NO. 2064642821


CONFIDENTIAL
CLINICAL REFERENCE
LABORATORY

## STEP 1: COMPLETED BY COLLECTOR OR EMPLOYER REPRESENTATIVE

A. Employer Name, Address, I.D. No.

B. MRO Name, Address, Phone and Fax No.

C. Donor SSN [   ] – [   ] – [   ]   Name [   ]   (First, MI, Last)

D. Reason for Test:  ☐ Pre-employment   ☐ Random   ☐ Reasonable Suspicion/Cause   ☑ Post Accident
☐ Return to Duty   ☐ Follow-up   ☐ Other (specify) _____

E. Collection Site Name, Address:

Collector Phone No. _____

Collector Fax No. _____

## STEP 2: COMPLETED BY COLLECTOR

| Read specimen temperature within 4 minutes. Is temperature between 90° and 100° F?  ☐ Yes  ☐ No, enter remarks | Specimen Collection ☑ Cup ☐ Split ☐ Oral Fluid ☐ Other (Enter Remarks Below) ☐ Observed (Enter Remarks Below) |

Alcohol Screen:  ☐ Negative  ☐ Positive   Collector Initials ___ If Alcohol Screen is positive, carefully follow instructions.

REMARKS:

**STEP 3: Collector affixes bottle seal(s) to bottle(s). Collector dates seal(s). Donor initials seal(s). Donor completes STEP 4**

## STEP 4: COMPLETED BY DONOR

*I consent to have my specimen collected by the named collector, analyzed, including drug analysis, by Clinical Reference Laboratory, Inc., its employees, agents, and/ or representatives ("CRL"); and the results of that analysis made available to the above named Company/Employer and/or their designee. I certify that I provided my specimen to the collector; that I have not adulterated it in any manner; that each specimen container used was sealed with a tamper-evident seal in my presence; and that the information provided on this form and on the label affixed to each specimen container is correct.*

Date of Collection  [ ] [ ] 2 0 [ ]  Mo. Day Year

DOB  [ ] [ ] [ ]  Mo. Day Year

X _____  Signature of Donor   (   )   _____  Phone Number

## STEP 5: CHAIN OF CUSTODY - INITIATED BY COLLECTOR AND COMPLETED BY LABORATORY

*I certify that the specimen given to me by the donor identified in the certification in step 4 above was collected, labeled, sealed and released as noted.*

X _____  Signature of Collector

* (PRINT) Collector's Name (First MI..Last)*

Time and Date of Analysis  [ ] [ ] ☐ AM ☐ PM  [ ] [ ] 2 0 [ ]  Mo. Day Year

SPECIMEN BOTTLE(S) RELEASED TO:

_____
* Short Term Storage* or On-Site Analyst *

## STEP 6a: TO BE COMPLETED BY ON-SITE ANALYST

**SCREENING DEVICE UTILIZED**

Device Name: ☑ CRL*STAT*, or ☐ OTHER _____

Test Panel Number ☑5, ☐7, ☐9, ☐10, or ☐OTHER _____

Lot Number: [   ]

Expiration Date: [ ] [ ] 2 0 [ ]  Mo. Year

## STEP 6b: TO BE COMPLETED BY ON-SITE ANALYST

**RESULT:**

☑ **NEGATIVE**

## STEP 7: COMPLETED BY MEDICAL REVIEW OFFICER

*My determination/verification is:*
☐ Negative   ☐ Positive   ☐ Test Cancelled   ☐ Refusal To Test because:   ☐ Adulterated   ☐ Substituted

REMARKS:

X _____
Signature of Medical Review Officer

_____
(PRINT) Medical Review Officer's Name (First, MI, Last)   Date

THOR 0001113

CONFIDENTIAL                                                          CONFIDENTIAL

## Alcohol Testing Form
*(The instructions for completing this form are on the back of Copy 3)*

*Print Screening Results Here or Affix with Tamper Evident Tape*

**• STEP 1: TO BE COMPLETED BY ALCOHOL TECHNICIAN**

**A: Employee Name** _James Bowen_
    (Print)  (First, M.I., Last)

**B: SSN or Employee ID No.** _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_

**C: Employer Name** _Shore Offshore_
**Street**
**City, State, Zip**

**DER Name and**
**Telephone No.**             (    )
       **DER Name**       **DER Phone Number**

**D: Reason for Test:** ☐Random ☐Reasonable Susp ☒Post-Accident ☐Return to Duty ☐Follow-up ☐Pre-employment

EVID[I]

CMI, Inc.
Intoxilyzer 400
Ser No:    103364

Test No:   0821
   Date:   10/30/20
Test Type:   SCREENING

Diagnostics:   PASS
Time of Test:   12:01
   Result:   .000 %BAC

Donor Name:

*James Bowen*

Signature:

**STEP 2: TO BE COMPLETED BY EMPLOYEE**

I certify that I am about to submit to alcohol testing and that the identifying information provided on the form is true and correct.

_____    _10  30  2020_
**Signature of Employee**      Date   Month   Day   Year

Operator Name:
A Saucedo

Signature:

**STEP 3: TO BE COMPLETED BY ALCOHOL TECHNICIAN**

(If the technician conducting the screening test is not the same technician who will be conducting the confirmation test, each technician must complete their own form.) I certify that I have conducted alcohol testing on the above named individual and that I am qualified to operate the testing device(s) identified, and that the results are as recorded.

**TECHNICIAN:** ☒BAT ☐STT   **DEVICE:** ☐SALIVA ☒BREATH*   **15-Minute Wait:** ☐Yes ☐No

**SCREENING TEST:** *(For BREATH DEVICE\* write in the space below only if the testing device is not designed to print.)*

| Test # | Testing Device Name | Device Serial # OR Lot # & Exp Date | Activation Time | Reading Time | Result |
|--------|---------------------|-------------------------------------|-----------------|--------------|--------|
|        |                     |                                     |                 |              |        |

**CONFIRMATION TEST:** *Results MUST be affixed to each copy of this form or printed directly onto the form.*

**REMARKS:**

_HM_      _955 Belanger St Ste 108_
**Alcohol Technician's Company**    **Company Street Address**
_Saucedo_      _Houma LA 70360_    _985 868 2352_
**(PRINT) Alcohol Technician's Name (First, M.I., Last)**   **Company City, State, Zip**   **Phone Number**
_____    _10  30  2020_
**Signature of Alcohol Technician**      Date   Month   Day   Year

**STEP 4: TO BE COMPLETED BY EMPLOYEE IF TEST RESULT IS 0.02 OR HIGHER**

I certify that I have submitted to the alcohol test, the results of which are accurately recorded on this form. I understand that I must not drive, perform safety-sensitive duties, or operate heavy equipment because the results are 0.02 or greater.

_____      ___/___/___
**Signature of Employee**        Date   Month   Day   Year

*Print Additional Results Here or Affix With Tamper Evident Tape*

**CMI** INC.    866-835-0690 • P/N 650511

THOR 0001114

*Print Screening Results
Here or Affix with
Tamper Evident Tape*

*Print Confirmation Results
Here or Affix with
Tamper Evident Tape*

*Print
Additional Results
Here
or Affix With
Tamper Evident
Tape*

**COPY 1 - ORIGINAL - FORWARD TO THE EMPLOYER**

THOR 0001115

# ON-SITE CUSTODY AND CONTROL/RESULT FORM

CONFIDENTIAL

CONFIDENTIAL



CRISTAT

CLINICAL REFERENCE LABORATORY

CRL GLOBAL SERVICES

SPECIMEN ID NO. 2064642822

## STEP 1: COMPLETED BY COLLECTOR OR EMPLOYER REPRESENTATIVE

| A. Employer Name, Address, I.D. No. | B. MRO Name, Address, Phone and Fax No. |
|---|---|

(First, MI, Last)

C. Donor SSN [ ] [ ] [ ] – [ ] [ ] – [ ] [ ] [ ] [ ]  Name

D. Reason for Test:  ☐ Pre-employment  ☐ Random  ☐ Reasonable Suspicion/Cause  ☑ Post Accident
 ☐ Return to Duty  ☐ Follow-up  ☐ Other (specify) _____

E. Collection Site Name, Address:

Collector Phone No. _____

Collector Fax No. _____

## STEP 2: COMPLETED BY COLLECTOR

Read specimen temperature within 4 minutes. Is temperature between 90° and 100° F?  ☐ Yes  ☐ No, enter remarks

Specimen Collection
☑ Cup  ☐ Split  ☐ Oral Fluid  ☐ Other (Enter Remarks Below)  ☐ Observed (Enter Remarks Below)

Alcohol Screen:  ☐ Negative  ☐ Positive   Collector Initials _____   If Alcohol Screen is positive, carefully follow instructions.

REMARKS:

STEP 3: Collector affixes bottle seal(s) to bottle(s). Collector dates seal(s). Donor initials seal(s). Donor completes STEP 4

## STEP 4: COMPLETED BY DONOR

I consent to have my specimen collected by the named collector, analyzed, including drug analysis, by Clinical Reference Laboratory, Inc., its employees, agents, and/ or representatives ("CRL"); and the results of that analysis made available to the above named Company/Employer and/or their designee. I certify that I provided my specimen to the collector; that I have not adulterated it in any manner; that each specimen container used was sealed with a tamper-evident seal in my presence; and that the information provided on this form and on the label affixed to each specimen container is correct.

Date of Collection
[ ] [ ] | 2 0 | [ ] [ ]
Mo.   Day    Year

DOB
[ ] [ ] | [ ] [ ] | [ ] [ ] [ ] [ ]
Mo.   Day    Year

X _____  Signature of Donor   Phone Number

## STEP 5: CHAIN OF CUSTODY - INITIATED BY COLLECTOR AND COMPLETED BY LABORATORY

I certify that the specimen given to me by the donor identified in the certification in step 4 above was collected, labeled, sealed and released as noted.

X _____
Signature of Collector *
* (PRINT) Collector's Name (First MI, Last)*

Time and Date of Analysis
[ ] [ ] : [ ] [ ]  ☐ AM  ☐ PM
[ ] | 2 0 | [ ] [ ]
Mo.   Day    Year

SPECIMEN BOTTLE(S) RELEASED TO:
On Site
* "Short Term Storage" or On-Site Analyst *

## STEP 6a: TO BE COMPLETED BY ON-SITE ANALYST

SCREENING DEVICE UTILIZED

Device Name:  ☑ CRL*STAT*, or ☐ OTHER _____

Test Panel Number ☐ 5, ☐ 7, ☐ 9, ☐ 10, or ☐ OTHER _____

Lot Number: [ ] [ ] [ ] [ ] [ ] [ ] [ ] [ ]
Expiration Date: [ ] [ ] | 2 0 | [ ] [ ]
 Mo.    Year

## STEP 6b: TO BE COMPLETED BY ON-SITE ANALYST

RESULT:

☑ NEGATIVE

## STEP 7: COMPLETED BY MEDICAL REVIEW OFFICER

My determination/verification is:
 ☐ Negative  ☐ Positive  ☐ Test Cancelled  ☐ Refusal To Test because:  ☐ Adulterated  ☐ Substituted

REMARKS: _____

X _____
Signature of Medical Review Officer     (PRINT) Medical Review Officer's Name (First, MI, Last)     Date

THOR 0001116

SPECIMEN ID NO.   2064642822

## Alcohol Testing Form

*(The instructions for completing this form are on the back of Copy 3)*

*Print Screening Results Here or Affix with Tamper Evident Tape*

**• STEP 1: TO BE COMPLETED BY ALCOHOL TECHNICIAN**

**A: Employee Name** _Ronald Waren_
    (Print)   (First, M.I., Last)

**B: SSN or Employee ID No.** _425.15.9174_

**C: Employer Name** _Shore Offshore_
    Street
    City, State, Zip

**DER Name and**
**Telephone No.** _____ ( ) _____
    DER Name       DER Phone Number

**D: Reason for Test:** ☐Random ☐Reasonable Susp ☒Post-Accident ☐Return to Duty ☐Follow-up ☐Pre-employment

**STEP 2: TO BE COMPLETED BY EMPLOYEE**

I certify that I am about to submit to alcohol testing and that the identifying information provided on the form is true and correct.

_Ronald P. Wan_       _10 30 2020_
Signature of Employee       Date   Month   Day   Year

**STEP 3: TO BE COMPLETED BY ALCOHOL TECHNICIAN**

(If the technician conducting the screening test is not the same technician who will be conducting the confirmation test, each technician must complete their own form.) I certify that I have conducted alcohol testing on the above named individual and that I am qualified to operate the testing device(s) identified, and that the results are as recorded.

**TECHNICIAN:** ☒SAT ☐STT   **DEVICE:** ☐SALIVA ☒BREATH* 15-Minute Wait: ☐Yes ☐No

**SCREENING TEST:** *(For BREATH DEVICE* write in the space below only if the testing device is not designed to print.)*

Test #  Testing Device Name  Device Serial # *OR* Lot # & Exp Date  Activation Time  Reading Time  Result

**CONFIRMATION TEST:** *Results MUST be affixed to each copy of this form or printed directly onto the form.*

**REMARKS:**

_AIM_        _855 Belangerst Suite_
Alcohol Technician's Company     Company Street Address
_A Saucedo_     _Houma LA 70360_   _985 868 7302_
(PRINT) Alcohol Technician's Name (First, M.I., Last)   Company City, State, Zip   Phone Number
_A Saucedo_       _10 30 2020_
Signature of Alcohol Technician     Date   Month   Day   Year

**STEP 4: TO BE COMPLETED BY EMPLOYEE IF TEST RESULT IS 0.02 OR HIGHER**

I certify that I have submitted to the alcohol test, the results of which are accurately recorded on this form. I understand that I must not drive, perform safety-sensitive duties, or operate heavy equipment because the results are 0.02 or greater.

_____     ___/___/___
**Signature of Employee**       Date   Month   Day   Year

*Print Additional Results Here or Affix With Tamper Evident Tape*

**CMI INC.**   866-835-0690 • P/N 650511

*COPY 1 - ORIGINAL - FORWARD TO THE EMPLOYER*

---

EVID[ENCE]

CMI Inc.
Intoxilyzer 400
Ser No: 103364

Test No: 0822
Date: 10/30/20
Test Type: SCREENING

Diagnostics: PASS
Time of Test: 12:05
Result: .000 %BAC

Donor Name:

_Ronald Waren_

Signature:

_Ronald Wan_

Operator Name:

_A Saucedo_

Signature:

_A Saucedo_

THOR 0001117

CONFIDENTIAL
CONFIDENTIAL

*Print Screening Results
Here or Affix with
Tamper Evident Tape*

*Print Confirmation Results
Here or Affix with
Tamper Evident Tape*

*Print
Additional Results
Here
or Affix With
Tamper Evident
Tape*

**COPY 1 - ORIGINAL - FORWARD TO THE EMPLOYER**

THOR 0001118

**ON-SITE CUSTODY AND CONTROL/RESULT FORM**

CONFIDENTIAL

CONFIDENTIAL

cristat

CRL® CLINICAL REFERENCE LABORATORY
GLOBAL SERVICES

SPECIMEN ID NO.    2064642823

## STEP 1: COMPLETED BY COLLECTOR OR EMPLOYER REPRESENTATIVE

| A. Employer Name, Address, I.D. No. | B. MRO Name, Address, Phone and Fax No. |
|---|---|
| COMPANY NAME | ROBERT W DAVIS MD |
| 855 DELANGER ST STE 108 | 855 DELANGER ST. STE 108 |
| HOUMA LA 70360 | HOUMA LA 70360 |
| PH 985-868-2050   FX: 985-868-2479 | PH 985-868-2379 |
| | FX 985-868-2479 |

(First, MI, Last)

C. Donor SSN [ ][ ][ ] - [ ][ ] - [ ][ ][ ][ ]  Name [K][I][N][A][L][D]  [H][A][R][R][E][N]

D. Reason for Test:  ☐ Pre-employment  ☐ Random  ☐ Reasonable Suspicion/Cause  ☑ Post Accident
☐ Return to Duty  ☐ Follow-up  ☐ Other (specify) _____

E. Collection Site Name, Address:
INDUSTRIAL MED SVCS
855 DELANGER ST. STE 108    Collector Phone No. _____
HOUMA, LA 70360-4469    Collector Fax No. _____

## STEP 2: COMPLETED BY COLLECTOR

| Read specimen temperature within 4 minutes. Is temperature between 90° and 100° F?  ☑ Yes  ☐ No, enter remarks | Specimen Collection ☐ Cup  ☐ Split  ☐ Oral Fluid  ☐ Other  ☐ Observed (Enter Remarks Below) (Enter Remarks Below) |
|---|---|

Alcohol Screen:  ☐ Negative  ☐ Positive  Collector Initials _____  If Alcohol Screen is positive, carefully follow instructions.

REMARKS:

**STEP 3: Collector affixes bottle seal(s) to bottle(s). Collector dates seal(s). Donor initials seal(s). Donor completes STEP 4**

## STEP 4: COMPLETED BY DONOR

I consent to have my specimen collected by the named collector, analyzed, including drug analysis, by Clinical Reference Laboratory, Inc., its employees, agents, and/or representatives ("CRL"); and the results of that analysis made available to the above named Company/Employer and/or their designee. I certify that I provided my specimen to the collector; that I have not adulterated it in any manner; that each specimen container used was sealed with a tamper-evident seal in my presence; and that the information provided on this form and on the label affixed to each specimen container is correct.

Date of Collection
[1][2] [2][0] [1][7]
Mo.   Day   Year

X _____
Signature of Donor    ( _____ ) _____    Phone Number

DOB
[ ][ ] [ ][ ] [ ][ ]
Mo.   Day   Year

## STEP 5: CHAIN OF CUSTODY - INITIATED BY COLLECTOR AND COMPLETED BY LABORATORY

I certify that the specimen given to me by the donor identified in the certification in step 4 above was collected, labeled, sealed and released as noted.

X _____
Signature of Collector
* (PRINT) Collector's Name (First MI, Last)*

Time and Date of Analysis
☐ AM ☐ PM
[ ][ ] [2][0] [1][7]
Mo.   Day   Year

SPECIMEN BOTTLE(S) RELEASED TO:
On Site
* "Short Term Storage" or On-Site Analyst *

## STEP 6a: TO BE COMPLETED BY ON-SITE ANALYST

SCREENING DEVICE UTILIZED

Device Name: ☑ CRLSTAT, or ☐ OTHER _____
Test Panel Number ☐ 5, ☐ 7, ☐ 9, ☐ 10, or ☐ OTHER _____

Lot Number: [ ][ ][ ][ ][ ][ ][ ]
Expiration Date: [ ][ ] [2][0] [1][7]
Mo.   Year

## STEP 6b: TO BE COMPLETED BY ON-SITE ANALYST

RESULT:

☑ NEGATIVE

## STEP 7: COMPLETED BY MEDICAL REVIEW OFFICER

My determination/verification is:
☐ Negative  ☐ Positive  ☐ Test Cancelled  ☐ Refusal To Test because:  ☐ Adulterated  ☐ Substituted

REMARKS: _____

X _____
Signature of Medical Review Officer    (PRINT) Medical Review Officer's Name (First, MI, Last)    Date

EMPLOYER COPY    VER. 2.6    03/20

THOR 0001119

SPECIMEN ID NO. 2064642823

**Alcohol Testing Form**

*(The instructions for completing this form are on the back of Copy 3)*

*Print Screening Results
Here or Affix with
Tamper Evident Tape*

**• STEP 1: TO BE COMPLETED BY ALCOHOL TECHNICIAN**

A: Employee Name _Wallace McCray_
(Print)   (First, M.I., Last)

B: SSN or Employee ID No.

C: Employer Name
    Street
    City, State, Zip

    DER Name and
    Telephone No.
    _____        ( ___ ) _____
    DER Name                              DER Phone Number

D: Reason for Test: ☐Random ☐Reasonable Susp ☑Post-Accident ☐Return to Duty ☐Follow-up ☐Pre-employment

**STEP 2: TO BE COMPLETED BY EMPLOYEE**

I certify that I am about to submit to alcohol testing and that the identifying information provided on the f
is true and correct.

_Wallace M. C—ry_                    _10.30.2020_
Signature of Employee                 Date   Month  Day  Year

**STEP 3: TO BE COMPLETED BY ALCOHOL TECHNICIAN**

(If the technician conducting the screening test is not the same technician who will be conducting the
confirmation test, each technician must complete their own form.) I certify that I have conducted alcohol
testing on the above named individual and that I am qualified to operate the testing device(s) identified, an
that the results are as recorded.

TECHNICIAN:   ☑SAT ☐STT   DEVICE: ☐SALIVA ☑BREATH* 15-Minute Wait: ☐Yes ☐N

SCREENING TEST: *(For BREATH DEVICE* write in the space below only if the testing device is not designed to print.)*

Test #   Testing Device Name   Device Serial # OR Lot # & Exp Date   Activation Time   Reading Time   R

CONFIRMATION TEST: *Results MUST be affixed to each copy of this form or printed directly onto the form.*

REMARKS:

_Aim_
Alcohol Technician's Company        _855 Belanger St Ste 108_
                                     Company Street Address
_____        _Houma LA 70360_       _985 868 1302_
(PRINT) Alcohol Technician's Name (First, M.I., Last)   Company City, State, Zip   Phone Number

_____        _10.30.2020_
Signature of Alcohol Technician       Date   Month  Day  Year

**STEP 4: TO BE COMPLETED BY EMPLOYEE IF TEST RESULT IS 0.02 OR HIGHER**

I certify that I have submitted to the alcohol test, the results of which are accurately recorded on this form. I understand
that I must not drive, perform safety-sensitive duties, or operate heavy equipment because the results are 0.02 or greater.

_____        ___ / ___ / ___
Signature of Employee                 Date   Month  Day  Year

**EVID**

CMI, Inc.
Intoxilyzer 400
Ser No:   103364

Test No:   0825
    Date:   10/30/20
Test Type:   SCREENING

Diagnostics:   PASS
Time of Test:   12:36
    Result:   .000 %BAC

Donor Name:

_Wallace M. Cray_

Signature:

_Wallace McC—_

Operator Name:

_Saucedo_

Signature:

_Saucedo_

*Print
Additional Results Here
or Affix With
Tamper Evident Tape*

THOR 0001120

*Print Screening Results
Here or Affix with
Tamper Evident Tape*

*Print Confirmation Results
Here or Affix with
Tamper Evident Tape*

*Print
Additional Results
Here
or Affix With
Tamper Evident
Tape*

**COPY 1 - ORIGINAL - FORWARD TO THE EMPLOYER**

THOR 0001121



ON-SITE CUSTODY AND CONTROL/RESULT FORM

CONFIDENTIAL

CONFIDENTIAL

CRISTAT

CRL CLINICAL REFERENCE LABORATORY
GLOBAL SERVICES

SPECIMEN ID NO. 2064642825

## STEP 1: COMPLETED BY COLLECTOR OR EMPLOYER REPRESENTATIVE

A. Employer Name, Address, I.D. No.

B. MRO Name, Address, Phone and Fax No.

(First, MI, Last)

C. Donor SSN [ ] [ ] [ ] – [ ] [ ] – [ ] [ ] [ ] [ ]   Name

D. Reason for Test:   ☐ Pre-employment   ☐ Random   ☐ Reasonable Suspicion/Cause   ☐ Post Accident
                      ☐ Return to Duty   ☐ Follow-up   ☐ Other (specify) _____

E. Collection Site Name, Address:

Collector Phone No. _____

Collector Fax No. _____

## STEP 2: COMPLETED BY COLLECTOR

Read specimen temperature within 4 minutes. Is temperature between 90° and 100° F?  ☐ Yes  ☐ No, enter remarks

Specimen Collection
☑ Cup   ☐ Split   ☐ Oral Fluid   ☐ Other (Enter Remarks Below)   ☐ Observed (Enter Remarks Below)

Alcohol Screen:  ☐ Negative  ☐ Positive   Collector Initials _____   If Alcohol Screen is positive, carefully follow instructions.

REMARKS:

**STEP 3: Collector affixes bottle seal(s) to bottle(s). Collector dates seal(s). Donor initials seal(s). Donor completes STEP 4**

## STEP 4: COMPLETED BY DONOR

I consent to have my specimen collected by the named collector, analyzed, including drug analysis, by Clinical Reference Laboratory, Inc., its employees, agents, and/or representatives ("CRL"); and the results of that analysis made available to the above named Company/Employer and/or their designee. I certify that I provided my specimen to the collector; that I have not adulterated it in any manner; that each specimen container used was sealed with a tamper-evident seal in my presence; and that the information provided on this form and on the label affixed to each specimen container is correct.

Date of Collection
[ ] [ ] 2 0 [ ] [ ]
Mo.   Day   Year

X _____ Signature of Donor   ( _____ ) _____ Phone Number

DOB
[ ] [ ] [ ] [ ] [ ] [ ]
Mo.   Day   Year

## STEP 5: CHAIN OF CUSTODY - INITIATED BY COLLECTOR AND COMPLETED BY LABORATORY

I certify that the specimen given to me by the donor identified in the certification in step 4 above was collected, labeled, sealed and released as noted.

X _____
   Signature of Collector
   (PRINT) Collector's Name (First MI, Last)

Time and Date of Analysis
[ ] [ ] ☐ AM ☐ PM
[ ] 2 0 [ ] [ ]
Mo.   Day   Year

SPECIMEN BOTTLE(S) RELEASED TO:

"Short Term Storage" or On-Site Analyst

## STEP 6a: TO BE COMPLETED BY ON-SITE ANALYST

SCREENING DEVICE UTILIZED

Device Name: ☐ CRLSTAT, or ☐ OTHER _____

Test Panel Number ☐ 5, ☐ 7, ☐ 9, ☐ 10, or ☐ OTHER _____

Lot Number: [ ] [ ] [ ] [ ] [ ] [ ] [ ]

Expiration Date: [ ] [ ] 2 0 [ ] [ ]
Mo.   Year

## STEP 6b: TO BE COMPLETED BY ON-SITE ANALYST

RESULT:

☑ NEGATIVE

## STEP 7: COMPLETED BY MEDICAL REVIEW OFFICER

My determination/verification is:
☐ Negative   ☐ Positive   ☐ Test Cancelled   ☐ Refusal To Test because:   ☐ Adulterated   ☐ Substituted

REMARKS: _____

X _____
   Signature of Medical Review Officer

_____ Date
(PRINT) Medical Review Officer's Name (First, MI, Last)

THOR 0001122

SPECIMEN ID NO.

## Alcohol Testing Form
*(The instructions for completing this form are on the back of Copy 3)*

*Print Screening Results
Here or Affix with
Tamper Evident Tape*

**• STEP 1: TO BE COMPLETED BY ALCOHOL TECHNICIAN**

A: Employee Name _____ Son Dang
   (Print)   (First, M.I., Last)

B: SSN or Employee ID No. _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_

C: Employer Name _Shore Offshore_
   Street
   City, State, Zip

   DER Name and
   Telephone No. _____ (_____)
   **DER Name**          **DER Phone Number**

D: Reason for Test: ☐Random ☐Reasonable Susp ☑Post-Accident ☐Return to Duty ☐Follow-up ☐Pre-employment

**STEP 2: TO BE COMPLETED BY EMPLOYEE**

I certify that I am about to submit to alcohol testing and that the identifying information provided on the fo...
is true and correct.

_Signature of Employee_        Date   Month  Day  Year
10 30 2020

**STEP 3: TO BE COMPLETED BY ALCOHOL TECHNICIAN**

(If the technician conducting the screening test is not the same technician who will be conducting the
confirmation test, each technician must complete their own form.) I certify that I have conducted alcohol
testing on the above named individual and that I am qualified to operate the testing device(s) identified, an
that the results are as recorded.

TECHNICIAN:  ☐ SAT ☐ STT  DEVICE: ☐ SALIVA ☑ BREATH* 15-Minute Wait: ☐ Yes ☐ No

SCREENING TEST: *(For BREATH DEVICE* write in the space below only if the testing device is not designed to print.)*

Test #  Testing Device Name  Device Serial # OR Lot # & Exp Date  Activation Time  Reading Time  Res

CONFIRMATION TEST: *Results MUST be affixed to each copy of this form or printed directly onto the form.*

**REMARKS:**

_Alcohol Technician's Company_     855 Belmour St Stu108
(PRINT) Alcohol Technician's Name (First, M.I., Last)   Company Street Address
                                   Company City, State, Zip       985.818.7302
                                                                  Phone Number

_Signature of Alcohol Technician_   Date  Month  Day  Year
10 30 2020

**STEP 4: TO BE COMPLETED BY EMPLOYEE IF TEST RESULT IS 0.02 OR HIGHER**

I certify that I have submitted to the alcohol test, the results of which are accurately recorded on this form. I understand
that I must not drive, perform safety-sensitive duties, or operate heavy equipment because the results are 0.02 or greater.

_____          ____/____/____
**Signature of Employee**        Date   Month  Day  Year

---

EVIDI (EVIDENCE)

_____ Inc.
Intoxilyzer 400
Ser No:  103364

Test No:  0826
Date:  10/30/20
Test Type:  SCREENING

Diagnostics:  PASS
Time of Test:  12:39
Result:  .000 %BAC

Donor Name:
Son Dang

Signature:

Operator Name:
A Saucedo

Signature:
Saucedo

---

*Print
Additional Results Here
or Affix With
Tamper Evident Tape*

CONFIDENTIAL
CONFIDENTIAL

*Print Screening Results
Here or Affix with
Tamper Evident Tape*

*Print Confirmation Results
Here or Affix with
Tamper Evident Tape*

*Print
Additional Results
Here
or Affix With
Tamper Evident
Tape*

**COPY 1 - ORIGINAL - FORWARD TO THE EMPLOYER**

THOR 0001124

ON-SITE CUSTODY AND CONTROL RESULT FORM

CONFIDENTIAL




CONFIDENTIAL

CLINICAL REFERENCE LABORATORY

SPECIMEN ID NO. 2064642790

**STEP 1: COMPLETED BY COLLECTOR OR EMPLOYER REPRESENTATIVE**

A. Employer Name, Address, I.D. No.

B. MRO Name, Address, Phone and Fax No.

C. Donor SSN [_][_][_] – [_][_] – [_][_][_][_] Name [JIN] [DIANG] (First, MI, Last)

D. Reason for Test: ☐ Pre-employment ☐ Random ☐ Reasonable Suspicion/Cause ☑ Post Accident
☐ Return to Duty ☐ Follow-up ☐ Other (specify) _____

E. Collection Site Name, Address:

Collector Phone No. _____

Collector Fax No. _____

**STEP 2: COMPLETED BY COLLECTOR**

Read specimen temperature within 4 minutes. Is temperature between 90° and 100° F? ☑ Yes ☐ No, enter remarks

Specimen Collection
☑ Cup ☐ Split ☐ Oral Fluid ☐ Other (Enter Remarks Below) ☐ Observed (Enter Remarks Below)

Alcohol Screen: ☐ Negative ☐ Positive Collector Initials _____ If Alcohol Screen is positive, carefully follow instructions.

REMARKS:

**STEP 3: Collector affixes bottle seal(s) to bottle(s). Collector dates seal(s). Donor initials seal(s). Donor completes STEP 4**

**STEP 4: COMPLETED BY DONOR**

I consent to have my specimen collected by the named collector, analyzed, including drug analysis, by Clinical Reference Laboratory, Inc., its employees, agents, and/or representatives ("CRL"); and the results of that analysis made available to the above named Company/Employer and/or their designee. I certify that I provided my specimen to the collector; that I have not adulterated it in any manner; that each specimen container used was sealed with a tamper-evident seal in my presence; and that the information provided on this form and on the label affixed to each specimen container is correct.

Date of Collection [_][_] [2][0] / [_][_]
Mo. Day Year

X _____
Signature of Donor

( [_][_][_] ) [_][_][_] – [_][_][_][_]
Phone Number

DOB [_][_] [_][_] [_][_]
Mo. Day Year

**STEP 5: CHAIN OF CUSTODY - INITIATED BY COLLECTOR AND COMPLETED BY LABORATORY**

I certify that the specimen given to me by the donor identified in the certification in step 4 above was collected, labeled, sealed and released as noted.

X _____
Signature of Collector
_____
(PRINT) Collector's Name (First MI, Last)

Time and Date of Analysis [_][_][_][6] AM PM [2][0] [_][_]
Mo. Day Year

SPECIMEN BOTTLE(S) RELEASED TO:
_____
"Short Term Storage" or On-Site Analyst

**STEP 6a: TO BE COMPLETED BY ON-SITE ANALYST**

SCREENING DEVICE UTILIZED

Device Name: ☑ CRL STAT, or ☐ OTHER _____

Test Panel Number ☑ 5, ☐ 7, ☐ 9, ☐ 10, or ☐ OTHER _____

Lot Number: [_][_][_][_][_][_][_][_]

Expiration Date: [_][_] [2][0] [_][_]
Mo. Year

**STEP 6b: TO BE COMPLETED BY ON-SITE ANALYST**

RESULT:

☑ NEGATIVE

**STEP 7: COMPLETED BY MEDICAL REVIEW OFFICER**

My determination/verification is:
☐ Negative ☐ Positive ☐ Test Cancelled ☐ Refusal To Test because: ☐ Adulterated ☐ Substituted

REMARKS: _____

X _____
Signature of Medical Review Officer

(PRINT) Medical Review Officer's Name (First, MI, Last)

Date _____

THOR 0001125

SPECIMEN ID NO. 2064642790

CONFIDENTIAL                                                                     CONFIDENTIAL

## Alcohol Testing Form
*(The instructions for completing this form are on the back of Copy 3)*

*Print Screening Results
Here or Affix with
Tamper Evident Tape*

**• STEP 1: TO BE COMPLETED BY ALCOHOL TECHNICIAN**

A: Employee Name   Ronald Cruz
                   (Print)  (First, M.I., Last)

B: SSN or Employee ID No.   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

C: Employer Name   Shore Offshore.
   **Street**
   **City, State, Zip**

   **DER Name and
   Telephone No.**                    (___)___
                   **DER Name**        **DER Phone Number**

D: Reason for Test: ☐Random ☐Reasonable Susp ☑Post-Accident ☐Return to Duty ☐Follow-up ☐Pre-employment

**STEP 2: TO BE COMPLETED BY EMPLOYEE**

I certify that I am about to submit to alcohol testing and that the identifying information provided on the form
is true and correct.

Signature of Employee          Date  10  30  2020
                                     Month  Day  Year

**STEP 3: TO BE COMPLETED BY ALCOHOL TECHNICIAN**

(If the technician conducting the screening test is not the same technician who will be conducting the
confirmation test, each technician must complete their own form.) I certify that I have conducted alcohol
testing on the above named individual and that I am qualified to operate the testing device(s) identified, and
that the results are as recorded.

**TECHNICIAN:** ☑BAT ☐STT  **DEVICE:** ☐SALIVA ☑BREATH* 15-Minute Wait: ☐Yes ☐No

**SCREENING TEST:** *(For BREATH DEVICE* write in the space below only if the testing device is not designed to print.)*

Test #  Testing Device Name  Device Serial # OR Lot # & Exp Date  Activation Time  Reading Time  Result

**CONFIRMATION TEST:** *Results MUST be affixed to each copy of this form or printed directly onto the form.*

**REMARKS:**

Aim                          855 Belunair St Ste 108
Alcohol Technician's Company    Company Street Address
                             Houmala 70560   985-868-7302
(PRINT) Alcohol Technician's Name (First, M.I., Last)  Company City, State, Zip  Phone Number

Signature of Alcohol Technician        Date  10  30  2020
                                             Month  Day  Year

**STEP 4: TO BE COMPLETED BY EMPLOYEE IF TEST RESULT IS 0.02 OR HIGHER**

I certify that I have submitted to the alcohol test, the results of which are accurately recorded on this form. I understand
that I must not drive, perform safety-sensitive duties, or operate heavy equipment because the results are 0.02 or greater.

_____            ___/___/___
**Signature of Employee**           Date  Month  Day  Year

CMI INC.   866-835-0690 • P/N 650511

COPY 1 - ORIGINAL - FORWARD TO THE EMPLOYER

---

CM  **EVID**

Intoxilyzer 400
Ser No:  103364

Test No:   0827
   Date:  10/30/20
Test Type:  SCREENING

Diagnostics:  PASS
Time of Test:  12:43
   Result:  .000 %BAC

Donor Name:

Ronald Cruz

Signature:

Ronald Cruz

Operator Name:

H. Saucedo

Signature:

Saucedo

*Print
Additional Results Here
or Affix With
Tamper Evident Tape*

THOR 0001126

CONFIDENTIAL

CONFIDENTIAL

*Print Screening Results Here or Affix with Tamper Evident Tape*

*Print Confirmation Results Here or Affix with Tamper Evident Tape*

*Print Additional Results Here or Affix With Tamper Evident Tape*

**COPY 1 - ORIGINAL - FORWARD TO THE EMPLOYER**

THOR 0001127

ON-SITE CUSTODY AND CONTROL/RESULT FORM


CONFIDENTIAL

CONFIDENTIAL


CLINICAL REFERENCE LABORATORY

SPECIMEN ID NO. 2064642789

## STEP 1: COMPLETED BY COLLECTOR OR EMPLOYER REPRESENTATIVE

A. Employer Name, Address, I.D. No.

B. MRO Name, Address, Phone and Fax No.

(First, MI, Last)

C. Donor SSN [ ] - [5] [2] - [ ] [ ]  Name KINALD PUIZ

D. Reason for Test:   ☐ Pre-employment   ☐ Random   ☐ Reasonable Suspicion/Cause   ☑ Post Accident
  ☐ Return to Duty   ☐ Follow-up   ☐ Other (specify)

E. Collection Site Name, Address:

Collector Phone No.

Collector Fax No.

## STEP 2: COMPLETED BY COLLECTOR

| Read specimen temperature within 4 minutes. Is temperature between 90° and 100° F?  ☑ Yes  ☐ No, enter remarks | Specimen Collection  ☑ Cup  ☐ Split  ☐ Oral Fluid  ☐ Other (Enter Remarks Below)  ☐ Observed (Enter Remarks Below) |
|---|---|

Alcohol Screen:  ☐ Negative  ☐ Positive  Collector Initials _____ If Alcohol Screen is positive, carefully follow instructions.

REMARKS:

## STEP 3: Collector affixes bottle seal(s) to bottle(s). Donor dates seal(s). Donor initials seal(s). Donor completes STEP 4

## STEP 4: COMPLETED BY DONOR

I consent to have my specimen collected by the named collector, analyzed, including drug analysis, by Clinical Reference Laboratory, Inc., its employees, agents, and/or representatives ("CRL"); and the results of that analysis made available to the above named Company/Employer and/or their designee. I certify that I provided my specimen to the collector; that I have not adulterated it in any manner; that each specimen container used was sealed with a tamper-evident seal in my presence; and that the information provided on this form and on the label affixed to each specimen container is correct.

Date of Collection
[ ] / [2] / [2] [0] [2]
Mo.    Day    Year

DOB

X _____  ( [2] [7] [2] ) [ ] [3] [ ] - [5] [2] [4] [ ]
  Signature of Donor                    Phone Number
[ ] [ ] [ ] [ ]
Mo.  Day  Year

## STEP 5: CHAIN OF CUSTODY - INITIATED BY COLLECTOR AND COMPLETED BY LABORATORY

I certify that the specimen given to me by the donor identified in the certification in step 4 above was collected, labeled, sealed and released as noted.

X _____
  Signature of Collector

(PRINT) Collector's Name (First, MI, Last)

Time and Date of Analysis
☐ AM  ☐ PM
[ ] [ ] [2] [0] [ ]
Mo.   Day   Year

SPECIMEN BOTTLE(S) RELEASED TO:

On Site
* "Short Term Storage" or On-Site Analyst *

## STEP 6a: TO BE COMPLETED BY ON-SITE ANALYST

### SCREENING DEVICE UTILIZED

Device Name: ☑ CRLSTAT, or ☐ OTHER _____

Test Panel Number ☐5, ☐7, ☐9, ☐10, or ☐OTHER _____

Lot Number: [ ] [ ] [ ] [ ] [ ] [ ] [ ] [ ] [ ]

Expiration Date: [ ] [ ]  [2] [0] [ ]
  Mo.    Year

## STEP 6b: TO BE COMPLETED BY ON-SITE ANALYST

### RESULT:

☑ NEGATIVE

## STEP 7: COMPLETED BY MEDICAL REVIEW OFFICER

My determination/verification is:
  ☐ Negative  ☐ Positive  ☐ Test Cancelled  ☐ Refusal To Test because:  ☐ Adulterated  ☐ Substituted

REMARKS: _____

X _____
  Signature of Medical Review Officer

_____ (PRINT) Medical Review Officer's Name (First, MI, Last)

THOR 0001128
Date

EMPLOYER COPY

VER. 2.6    03/20

SPECIMEN ID NO. 2064642789

**Alcohol Testing Form**

*(The instructions for completing this form are on the back of Copy 3)*

*Print Screening Results
Here or Affix with
Tamper Evident Tape*

---

**• STEP 1: TO BE COMPLETED BY ALCOHOL TECHNICIAN**

A: Employee Name _Reggie Guidry_
(Print) (First, M.I., Last)

B: SSN or Employee ID No. _434 57 6085_

C: Employer Name _Shore Offshore_
Street
City, State, Zip

DER Name and
Telephone No.
DER Name     ( ___ ) DER Phone Number

D: Reason for Test: ☐Random ☐Reasonable Susp ☑Post-Accident ☐Return to Duty ☐Follow-up ☐Pre-employment

**STEP 2: TO BE COMPLETED BY EMPLOYEE**

I certify that I am about to submit to alcohol testing and that the identifying information provided on the form is true and correct.

Signature of Employee          Date _10 30 20_
                                    Month  Day  Year

**STEP 3: TO BE COMPLETED BY ALCOHOL TECHNICIAN**

(If the technician conducting the screening test is not the same technician who will be conducting the confirmation test, each technician must complete their own form.) I certify that I have conducted alcohol testing on the above named individual and that I am qualified to operate the testing device(s) identified, and that the results are as recorded.

**TECHNICIAN:** ☑SAAT ☐STT  **DEVICE:** ☐SALIVA ☑BREATH° 15-Minute Wait: ☐Yes ☐No

**SCREENING TEST:** *(For BREATH DEVICE° write in the space below only if the testing device is not designed to print.)*

| Test # | Testing Device Name | Device Serial # OR Lot # & Exp Date | Activation Time | Reading Time | Result |
|--------|---------------------|-------------------------------------|-----------------|--------------|--------|
|        |                     |                                     |                 |              |        |

**CONFIRMATION TEST:** *Results MUST be affixed to each copy of this form or printed directly onto the form.*

**REMARKS:**

Alcohol Technician's Company    Company Street Address _855 Belanger St Ste 108_
(PRINT) Alcohol Technician's Name (First, M.I., Last)    Company City, State, Zip _Houma LA 70350_    Phone Number _985 868 7302_

Signature of Alcohol Technician          Date _10 30 2020_
                                              Month  Day  Year

**STEP 4: TO BE COMPLETED BY EMPLOYEE IF TEST RESULT IS 0.02 OR HIGHER**

I certify that I have submitted to the alcohol test, the results of which are accurately recorded on this form. I understand that I must not drive, perform safety-sensitive duties, or operate heavy equipment because the results are 0.02 or greater.

Signature of Employee          Date _____ / ____ / ____
                                    Month  Day  Year

---

*Print
Additional Results Here
or Affix With
Tamper Evident Tape*

**CMI** INC.     866-835-0690 • P/N 650511

*COPY 1 - ORIGINAL - FORWARD TO THE EMPLOYER*

---

Right panel (printed evidence slip):

**EVIDI**

CMI, Inc.
Intoxilyzer 400
Ser No: 103364

Test No: 0828
Date: 10/30/20
Test Type: SCREENING

Diagnostics: PASS
Time of Test: 12:48
Result: .000 %BAC

Donor Name:

_Reggie Guidry_
Signature:

Operator Name:

_H.Saluedo_
Signature:

_Salueco_

THOR 0001129

CONFIDENTIAL   CONFIDENTIAL

*Print Screening Results Here or Affix with Tamper Evident Tape*

*Print Confirmation Results Here or Affix with Tamper Evident Tape*

*Print Additional Results Here or Affix With Tamper Evident Tape*

**COPY 1 - ORIGINAL - FORWARD TO THE EMPLOYER**

THOR 0001130

ON-SITE CUSTODY AND CONTROL/RESULT FORM

 CONFIDENTIAL

CONFIDENTIAL

 SPECIMEN ID NO. 2064642787

 CLINICAL REFERENCE LABORATORY

**STEP 1: COMPLETED BY COLLECTOR OR EMPLOYER REPRESENTATIVE**

A. Employer Name, Address, I.D. No.

B. MRO Name, Address, Phone and Fax No.

(First, MI, Last)

C. Donor SSN [ ][ ][ ] - [ ][ ] - [ ][ ][ ][ ], Name

D. Reason for Test: ☐ Pre-employment ☐ Random ☐ Reasonable Suspicion/Cause ☑ Post Accident
☐ Return to Duty ☐ Follow-up ☐ Other (specify)

E. Collection Site Name, Address:

Collector Phone No.

Collector Fax No.

**STEP 2: COMPLETED BY COLLECTOR**

Read specimen temperature within 4 minutes. Is temperature between 90° and 100° F? ☑ Yes ☐ No, enter remarks

Specimen Collection
☑ Cup ☐ Split ☐ Oral Fluid ☐ Other (Enter Remarks Below) ☐ Observed (Enter Remarks Below)

Alcohol Screen: ☐ Negative ☐ Positive Collector Initials___ If Alcohol Screen is positive, carefully follow instructions.

REMARKS:

**STEP 3: Collector affixes bottle seal(s) to bottle(s). Collector dates seal(s). Donor initials seal(s). Donor completes STEP 4**

**STEP 4: COMPLETED BY DONOR**

I consent to have my specimen collected by the named collector, analyzed, including drug analysis, by Clinical Reference Laboratory, Inc., its employees, agents, and/or representatives ("CRL"); and the results of that analysis made available to the above named Company/Employer and/or their designee. I certify that I provided my specimen to the collector; that I have not adulterated it in any manner; that each specimen container used was sealed with a tamper-evident seal in my presence; and that the information provided on this form and on the label affixed to each specimen container is correct.

Date of Collection [ ][ ] 2 0 [ ][ ] Mo. Day Year
DOB

X _____ Signature of Donor ( ___ ) ___ Phone Number Mo. Day Year

**STEP 5: CHAIN OF CUSTODY – INITIATED BY COLLECTOR AND COMPLETED BY LABORATORY**

I certify that the specimen given to me by the donor identified in the certification in step 4 above was collected, labeled, sealed and released as noted.

X _____ Signature of Collector *
(PRINT) Collector's Name (First MI, Last)*

Time and Date of Analysis [ ][ ] AM PM [ ] 2 0 [ ] Mo. Day Year

SPECIMEN BOTTLE(S) RELEASED TO:
On-Site
* "Short Term Storage" or On-Site Analyst *

**STEP 6a: TO BE COMPLETED BY ON-SITE ANALYST**

SCREENING DEVICE UTILIZED
Device Name: ☐ /CRLSTAT, or ☐ OTHER ___
Test Panel Number ☑ 5, ☐ 7, ☐ 9, ☐ 10, or ☐ OTHER___

Lot Number: [ ][ ][ ][ ][ ][ ]
Expiration Date: [ ][ ] 2 0 [ ] Mo. Year

**STEP 6b: TO BE COMPLETED BY ON-SITE ANALYST**

RESULT:
☑ NEGATIVE

**STEP 7: COMPLETED BY MEDICAL REVIEW OFFICER**

My determination/verification is:
☐ Negative ☐ Positive ☐ Test Cancelled ☐ Refusal To Test because: ☐ Adulterated ☐ Substituted

REMARKS: ___

X _____ Signature of Medical Review Officer
(PRINT) Medical Review Officer's Name (First, MI, Last) Date

THOR 0001131

# Alcohol Testing Form

*(The instructions for completing this form are on the back of Copy 3)*

---

**• STEP 1: TO BE COMPLETED BY ALCOHOL TECHNICIAN**

**A: Employee Name** Brian Cloyd
(Print)  (First, M.I., Last)

**B: SSN or Employee ID No.** 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

Shore Offshore

**C: Employer Name**
**Street**
**City, State, Zip**

**DER Name and**
**Telephone No.** _____  (___)_____
**DER Name**                **DER Phone Number**

**D: Reason for Test:** ☐Random ☐Reasonable Susp ☑Post-Accident ☐Return to Duty ☐Follow-up ☐Pre-employment

**STEP 2: TO BE COMPLETED BY EMPLOYEE**

I certify that I am about to submit to alcohol testing and that the identifying information provided on the for
is true and correct.

**Signature of Employee**                        10.30.2020
                                          **Date    Month   Day   Year**

**STEP 3: TO BE COMPLETED BY ALCOHOL TECHNICIAN**

(If the technician conducting the screening test is not the same technician who will be conducting the
confirmation test, each technician must complete their own form.) I certify that I have conducted alcohol
testing on the above named individual and that I am qualified to operate the testing device(s) identified, and
that the results are as recorded.

**TECHNICIAN:**  ☐ BAT ☐ STT  **DEVICE:** ☐ SALIVA ☑ BREATH* 15-Minute Wait: ☐ Yes ☐ No

**SCREENING TEST:** *(For BREATH DEVICE\* write in the space below only if the testing device is not designed to print.)*

Test #  Testing Device Name  Device Serial # OR Lot # & Exp Date   Activation Time  Reading Time  Result

**CONFIRMATION TEST:** *Results MUST be affixed to each copy of this form or printed directly onto the form.*

**REMARKS:**

_____

_____

A. Sauuado                        855 Belanger St Ste 108
**Alcohol Technician's Company**        **Company Street Address**
A. Sauuado                        Houma LA 70360   985.808.2302
**(PRINT) Alcohol Technician's Name (First, M.I., Last)**  **Company City, State, Zip**    **Phone Number**
A. Sauuedo                        10.30.2020
**Signature of Alcohol Technician**        **Date    Month  Day  Year**

**STEP 4: TO BE COMPLETED BY EMPLOYEE IF TEST RESULT IS 0.02 OR HIGHER**

I certify that I have submitted to the alcohol test, the results of which are accurately recorded on this form. I understand
that I must not drive, perform safety-sensitive duties, or operate heavy equipment because the results are 0.02 or greater.

_____        ___/___/___
**Signature of Employee**                   **Date   Month  Day  Year**

*CMI* INC.   866-835-0690 • P/N 650511

COPY 1 - ORIGINAL - FORWARD TO THE EMPLOYER

---

Print Screening Results
Here or Affix with
Tamper Evident Tape

EVIDE

Intoxilyzer 400
Ser No:  103364

Test No:   0829
   Date:   10/30/20
Test Type:  SCREENING

Diagnostics:  PASS
Time of Test:   12:54
     Result:  .000 %BAC

Donor Name:

Brian Cloyd

Signature:

Operator Name:

A. Sauuado

Signature:

A. Sauuedo

Print
Additional Results Here
or Affix With
Tamper Evident Tape

THOR 0001132

CONFIDENTIAL
CONFIDENTIAL

*Print Screening Results*
*Here or Affix with*
*Tamper Evident Tape*

*Print Confirmation Results*
*Here or Affix with*
*Tamper Evident Tape*

*Print*
*Additional Results*
*Here*
*or Affix With*
*Tamper Evident*
*Tape*

**COPY 1 - ORIGINAL - FORWARD TO THE EMPLOYER**

THOR 0001133

**ON-SITE CUSTODY AND CONTROL/RESULT FORM**

CONFIDENTIAL

CRISTAT

CONFIDENTIAL

SPECIMEN ID NO. 2064642786


CLINICAL REFERENCE LABORATORY

**STEP 1: COMPLETED BY COLLECTOR OR EMPLOYER REPRESENTATIVE**

A. Employer Name, Address, I.D. No.

B. MRO Name, Address, Phone and Fax No.

C. Donor SSN ☐ – ☐ – ☐   Name (First, MI, Last)

D. Reason for Test: ☐ Pre-employment  ☐ Random  ☐ Reasonable Suspicion/Cause  ☐ Post Accident
☐ Return to Duty  ☐ Follow-up  ☐ Other (specify) _____

E. Collection Site Name, Address:

Collector Phone No. _____

Collector Fax No. _____

**STEP 2: COMPLETED BY COLLECTOR**

| Read specimen temperature within 4 minutes. Is temperature between 90° and 100° F? ☐ Yes ☐ No, enter remarks | Specimen Collection ☐ Cup ☐ Split ☐ Oral Fluid ☐ Other (Enter Remarks Below) | ☐ Observed (Enter Remarks Below) |

Alcohol Screen: ☐ Negative ☐ Positive  Collector Initials _____ If Alcohol Screen is positive, carefully follow instructions.

REMARKS: _____

**STEP 3: Collector affixes bottle seal(s) to bottle(s). Collector dates seal(s). Donor initials seal(s). Donor completes STEP 4**

**STEP 4: COMPLETED BY DONOR**

I consent to have my specimen collected by the named collector, analyzed, including drug analysis, by Clinical Reference Laboratory, Inc., its employees, agents, and/or representatives ("CRL"); and the results of that analysis made available to the above named Company/Employer and/or their designee. I certify that I provided my specimen to the collector; that I have not adulterated it in any manner; that each specimen container used was sealed with a tamper-evident seal in my presence; and that the information provided on this form and on the label affixed to each specimen container is correct.

X _____
Signature of Donor

( _____ ) _____
Phone Number

Date of Collection: 2 0
Mo. Day Year

DOB
Mo. Day Year

**STEP 5: CHAIN OF CUSTODY - INITIATED BY COLLECTOR AND COMPLETED BY LABORATORY**

I certify that the specimen given to me by the donor identified in the certification in step 4 above was collected, labeled, sealed and released as noted.

X _____
Signature of Collector
(PRINT) Collector's Name (First MI, Last)*

Time and Date of Analysis ☐ AM ☐ PM
2 0
Mo. Day Year

SPECIMEN BOTTLE(S) RELEASED TO:
_____
"Short Term Storage" or On-Site Analyst *

**STEP 6a: TO BE COMPLETED BY ON-SITE ANALYST**

SCREENING DEVICE UTILIZED

Device Name: ☐ CRLSTAT, or ☐ OTHER _____

Test Panel Number ☐ 5, ☐ 7, ☐ 9, ☐ 10, or ☐ OTHER _____

Lot Number: _____

Expiration Date: 2 0
Mo. Year

**STEP 6b: TO BE COMPLETED BY ON-SITE ANALYST**

RESULT:

☑ NEGATIVE

**STEP 7: COMPLETED BY MEDICAL REVIEW OFFICER**

My determination/verification is:
☐ Negative  ☐ Positive  ☐ Test Cancelled  ☐ Refusal To Test because:  ☐ Adulterated  ☐ Substituted

REMARKS: _____

X _____
Signature of Medical Review Officer

(PRINT) Medical Review Officer's Name (First, MI, Last)

THOR 0001134

Date

## Alcohol Testing Form
*(The instructions for completing this form are on the back of Copy 3)*

Print Screening Results
Here or Affix with
Tamper Evident Tape

**• STEP 1: TO BE COMPLETED BY ALCOHOL TECHNICIAN**

A: Employee Name _Patrick Burnet_
(Print) (First, M.I., Last)

B: SSN or Employee ID No. _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_

C: Employer Name _Shore Offshore_
Street
City, State, Zip

DER Name and
Telephone No. _VOID_
DER Name          (___) ___
DER Phone Number

D: Reason for Test: ☐Random ☐Reasonable Susp ☑Post-Accident ☐Return to Duty ☐Follow-up ☐Pre-employment

**STEP 2: TO BE COMPLETED BY EMPLOYEE**

I certify that I am about to submit to alcohol testing and that the identifying information provided on the form is true and correct.

Signature of Employee      Date _10 30 2020_
Month  Day  Year

**STEP 3: TO BE COMPLETED BY ALCOHOL TECHNICIAN**

(If the technician conducting the screening test is not the same technician who will be conducting the confirmation test, each technician must complete their own form.) I certify that I have conducted alcohol testing on the above named individual and that I am qualified to operate the testing device(s) identified, and that the results are as recorded.

TECHNICIAN: ☑BAT ☐STT DEVICE: ☐SALIVA ☑BREATH* 15-Minute Wait: ☐Yes ☐No

SCREENING TEST: *(For BREATH DEVICE* write in the space below only if the testing device is not designed to print.)*

| Test # | Testing Device Name | Device Serial # OR Lot # & Exp Date | Activation Time | Reading Time | Result |
|---|---|---|---|---|---|
| | | | | | |

CONFIRMATION TEST: *Results MUST be affixed to each copy of this form or printed directly onto the form.*

REMARKS: ___

___

Alcohol Technician's Company _HMC_
(PRINT) Alcohol Technician's Name (First, M.I., Last) _A Saucedo_
Company Street Address _855 Belanger St Ste 108_
Company City, State, Zip _Houma LA 70360_
Phone Number _985.868.2302_

Signature of Alcohol Technician      Date _10 30 2020_
Month  Day  Year

**STEP 4: TO BE COMPLETED BY EMPLOYEE IF TEST RESULT IS 0.02 OR HIGHER**

I certify that I have submitted to the alcohol test, the results of which are accurately recorded on this form. I understand that I must not drive, perform safety-sensitive duties, or operate heavy equipment because the results are 0.02 or greater.

Signature of Employee      Date ___/___/___
Month  Day  Year

Print
Additional Results Here
or Affix With
Tamper Evident Tape

**EVIDI**

CMI, Inc.
Intoxilyzer 400
Ser No: 103364

Test No:      0830
Date:      10/30/20
Test Type:  SCREENING

Diagnostics:   PASS
Time of Test:  12:59
Result:  .000 %BAC

Donor Name:
_Patrick Burnet_

Signature:

Operator Name:
_A Saucedo_

Signature:
_Saucedo_

**CMI** INC.    866-835-0690 • P/N 650511

COPY 1 - ORIGINAL - FORWARD TO THE EMPLOYER

*Print Screening Results*
*Here or Affix with*
*Tamper Evident Tape*

*Print Confirmation Results*
*Here or Affix with*
*Tamper Evident Tape*

*Print*
*Additional Results*
*Here*
*or Affix With*
*Tamper Evident*
*Tape*

**COPY 1 - ORIGINAL - FORWARD TO THE EMPLOYER**

THOR 0001136

ON-SITE CUSTODY AND CONTROL/RESULT FORM

CONFIDENTIAL

CRIstat

CONFIDENTIAL



CLINICAL REFERENCE LABORATORY

SPECIMEN ID NO. 2064642788

**STEP 1: COMPLETED BY COLLECTOR OR EMPLOYER REPRESENTATIVE**

| A. Employer Name, Address, I.D. No. | B. MRO Name, Address, Phone and Fax No. |
|---|---|

C. Donor SSN [ ] [ ] [ ] – [ ] [ ] – [ ] [ ] [ ] [ ]  Name (First, MI, Last)

D. Reason for Test:  ☐ Pre-employment  ☐ Random  ☐ Reasonable Suspicion/Cause  ☑ Post Accident
☐ Return to Duty  ☐ Follow-up  ☐ Other (specify) _____

E. Collection Site Name, Address:

Collector Phone No. _____

Collector Fax No. _____

**STEP 2: COMPLETED BY COLLECTOR**

Read specimen temperature within 4 minutes. Is temperature between 90° and 100° F?  ☑ Yes  ☐ No, enter remarks

Specimen Collection
☐ Cup  ☐ Split  ☐ Oral Fluid  ☐ Other (Enter Remarks Below)  ☐ Observed (Enter Remarks Below)

Alcohol Screen:  ☐ Negative  ☐ Positive  Collector Initials _____  If Alcohol Screen is positive, carefully follow instructions.

REMARKS:

**STEP 3: Collector affixes bottle seal(s) to bottle(s). Collector dates seal(s). Donor initials seal(s). Donor completes STEP 4**

**STEP 4: COMPLETED BY DONOR**

I consent to have my specimen collected by the named collector, analyzed, including drug analysis, by Clinical Reference Laboratory, Inc., its employees, agents, and/or representatives ("CRL"); and the results of that analysis made available to the above named Company/Employer and/or their designee. I certify that I provided my specimen to the collector; that I have not adulterated it in any manner; that each specimen container used was sealed with a tamper-evident seal in my presence; and that the information provided on this form and on the label affixed to each specimen container is correct.

Date of Collection: [ ] [ ] – [ ] [ ] 2 0 / [ ]  Mo. Day Year

DOB: [ ] [ ] – [ ] [ ] – [ ] [ ]  Mo. Day Year

X _____  Signature of Donor

( _____ ) _____  Phone Number

**STEP 5: CHAIN OF CUSTODY - INITIATED BY COLLECTOR AND COMPLETED BY LABORATORY**

I certify that the specimen given to me by the donor identified in the certification in step 4 above was collected, labeled, sealed and released as noted.

X _____  Signature of Collector

* (PRINT) Collector's Name (First MI, Last)*

Time and Date of Analysis: _____ ☐ AM ☐ PM [ ] [ ] 2 0 [ ]  Mo. Day Year

SPECIMEN BOTTLE(S) RELEASED TO:

_____  * "Short Term Storage" or On-Site Analyst *

**STEP 6a: TO BE COMPLETED BY ON-SITE ANALYST**

SCREENING DEVICE UTILIZED

Device Name: ☑ CRLSTAT, or ☐ OTHER _____

Test Panel Number ☑ 5, ☐ 7, ☐ 9, ☐ 10, or ☐ OTHER _____

Lot Number: [ ] [ ] [ ] [ ] [ ] [ ] [ ] [ ]

Expiration Date: [ ] [ ] 2 0 / [ ]  Mo. Year

**STEP 6b: TO BE COMPLETED BY ON-SITE ANALYST**

RESULT:

☑ NEGATIVE

**STEP 7: COMPLETED BY MEDICAL REVIEW OFFICER**

My determination/verification is:
☐ Negative  ☐ Positive  ☐ Test Cancelled  ☐ Refusal To Test because:  ☐ Adulterated  ☐ Substituted

REMARKS:

X _____  Signature of Medical Review Officer

_____  (PRINT) Medical Review Officer's Name (First, MI, Last)

_____ Date

THOR-0001137

© 2020 Clinical Reference Laboratory, Inc.

CMCN #000128

VER. 2.6    03/20

CONFIDENTIAL

CONFIDENTIAL

## Alcohol Testing Form
*(The instructions for completing this form are on the back of Copy 3)*

*Print Screening Results Here or Affix with Tamper Evident Tape*

EVIDE

• **STEP 1: TO BE COMPLETED BY ALCOHOL TECHNICIAN**

**A: Employee Name** PIWIS Andrews

(Print) (First, M.I., Last)

**B: SSN or Employee ID No.** 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.

Shore Offshore

**C: Employer Name**
**Street**
**City, State, Zip**

**DER Name and**
**Telephone No.**

_____  ( ___ ) _____
DER Name              DER Phone Number

**D: Reason for Test:** ☐Random ☐Reasonable Susp ☑Post-Accident ☐Return to Duty ☐Follow-up ☐Pre-employment

**STEP 2: TO BE COMPLETED BY EMPLOYEE**

I certify that I am about to submit to alcohol testing and that the identifying information provided on the form is true and correct.

Signature of Employee          Date: 10 30 2020
                               Month Day Year

**STEP 3: TO BE COMPLETED BY ALCOHOL TECHNICIAN**

(If the technician conducting the screening test is not the same technician who will be conducting the confirmation test, each technician must complete their own form.) I certify that I have conducted alcohol testing on the above named individual and that I am qualified to operate the testing device(s) identified, and that the results are as recorded.

**TECHNICIAN:** ☑BAT ☐STT  **DEVICE:** ☐SALIVA ☑BREATH* 15-Minute Wait: ☐Yes ☐No

**SCREENING TEST:** *(For BREATH DEVICE* write in the space below only if the testing device is not designed to print.)*

Test #  Testing Device Name  Device Serial # OR Lot # & Exp Date  Activation Time  Reading Time  Result

**CONFIRMATION TEST:** *Results MUST be affixed to each copy of this form or printed directly onto the form.*

**REMARKS:**

Alcohol Technician's Company          855 Belamerst Ste 108
                                      Company Street Address
(PRINT) Alcohol Technician's Name (First, M.I., Last)   HOUMA CA 70360 985 868 7402
                                      Company City, State, Zip    Phone Number

Signature of Alcohol Technician        Date: 10 30 2020
                                       Month Day Year

**STEP 4: TO BE COMPLETED BY EMPLOYEE IF TEST RESULT IS 0.02 OR HIGHER**

I certify that I have submitted to the alcohol test, the results of which are accurately recorded on this form. I understand that I must not drive, perform safety-sensitive duties, or operate heavy equipment because the results are 0.02 or greater.

_____          ___ / ___ / ___
Signature of Employee            Date  Month Day Year

CMI, Inc.
Intoxilyzer 400
Ser No: 103364

Test No:   0831
  Date:  10/30/20
Test Type: SCREENING

Diagnostics: PASS
Time of Test:  13:05
    Result: .000 %BAC

Donor Name:

Lewis Andrews
Signature:

Operator Name:
A Saucedo

Signature:
A Saucedo

*Print Additional Results Here or Affix With Tamper Evident Tape*

CONFIDENTIAL

CONFIDENTIAL

*Print Screening Results*
*Here or Affix with*
*Tamper Evident Tape*

*Print Confirmation Results*
*Here or Affix with*
*Tamper Evident Tape*

*Print*
*Additional Results*
*Here*
*or Affix With*
*Tamper Evident*
*Tape*

**COPY 1 - ORIGINAL - FORWARD TO THE EMPLOYER**

THOR 0001139

**ON-SITE CUSTODY AND CONTROL/RESULT FORM**



CONFIDENTIAL

 CRIStat

CONFIDENTIAL

**CLINICAL REFERENCE LABORATORY**

GLOBAL SERVICES

SPECIMEN ID NO. 2064642801

**STEP 1: COMPLETED BY COLLECTOR OR EMPLOYER REPRESENTATIVE**

A. Employer Name, Address, I.D. No.

B. MRO Name, Address, Phone and Fax No.

(First, MI, Last)

C. Donor SSN [ ] - [ ] - [ ]   Name [ ]

D. Reason for Test:   ☐ Pre-employment   ☐ Random   ☐ Reasonable Suspicion/Cause   ☐ Post Accident
☐ Return to Duty   ☐ Follow-up   ☐ Other (specify)

E. Collection Site Name, Address:

Collector Phone No. _____

Collector Fax No. _____

**STEP 2: COMPLETED BY COLLECTOR**

Read specimen temperature within 4 minutes. Is temperature between 90° and 100° F?   ☐ Yes   ☐ No, enter remarks

Specimen Collection.   ☐ Cup   ☐ Split   ☐ Oral Fluid   ☐ Other (Enter Remarks Below)   ☐ Observed (Enter Remarks Below)

Alcohol Screen:   ☐ Negative   ☐ Positive   Collector Initials _____   If Alcohol Screen is positive, carefully follow instructions.

REMARKS:

**STEP 3: Collector affixes bottle seal(s) to bottle(s). Donor dates seal(s). Donor initials seal(s). Donor completes STEP 4**

**STEP 4: COMPLETED BY DONOR**

I consent to have my specimen collected by the named collector, analyzed, including drug analysis, by Clinical Reference Laboratory, Inc., its employees, agents, and/or representatives ("CRL"); and the results of that analysis made available to the above named Company/Employer and/or their designee. I certify that I provided my specimen to the collector; that I have not adulterated it in any manner; that each specimen container used was sealed with a tamper-evident seal in my presence; and that the information provided on this form and on the label affixed to each specimen container is correct.

Date of Collection   [ 2 0 ]   Mo.  Day  Year

DOB

X _____   ( _____ ) _____   [ ]
Signature of Donor                Phone Number         Mo.  Day  Year

**STEP 5: CHAIN OF CUSTODY - INITIATED BY COLLECTOR AND COMPLETED BY LABORATORY**

I certify that the specimen given to me by the donor identified in the certification in step 4 above was collected, labeled, sealed and released as noted.

X _____
Signature of Collector
* (PRINT) Collector's Name (First MI, Last)*

Time and Date of Analysis   ☐ AM  ☐ PM   [ 2 0 ]   Mo.  Day  Year

SPECIMEN BOTTLE(S) RELEASED TO:

On Site

* "Short Term Storage" or On-Site Analyst *

**STEP 6a: TO BE COMPLETED BY ON-SITE ANALYST**

SCREENING DEVICE UTILIZED

Device Name: ☐ CRL*STAT*, or ☐ OTHER _____

Test Panel Number ☐5, ☐7, ☐9, ☐10, or ☐ OTHER _____

Lot Number: [ ]

Expiration Date: [ 2 0 ]   Mo.  Year

**STEP 6b: TO BE COMPLETED BY ON-SITE ANALYST**

RESULT:

☐ **NEGATIVE**

**STEP 7: COMPLETED BY MEDICAL REVIEW OFFICER**

My determination/verification is:
☐ Negative   ☐ Positive   ☐ Test Cancelled   ☐ Refusal To Test because:   ☐ Adulterated   ☐ Substituted

REMARKS: _____

X _____
Signature of Medical Review Officer          (PRINT) Medical Review Officer's Name (First, MI, Last)

THOR 0001140

© 2020 Clinical Reference Laboratory, Inc.    CMCN #000128    SPECIMEN ID NO.

CONFIDENTIAL                                                         CONFIDENTIAL

## Alcohol Testing Form
*(The instructions for completing this form are on the back of Copy 3)*

Print Screening Results
Here or Affix with
Tamper Evident Tape

**EVIDE**

**• STEP 1: TO BE COMPLETED BY ALCOHOL TECHNICIAN**

A: Employee Name _Montrell Smith_
(Print)   (First, M.I., Last)

B: SSN or Employee ID No. _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_
_Shore Offshore_

C: Employer Name
Street
City, State, Zip

DER Name and
Telephone No. _____ ( )
DER Name              DER Phone Number

D: Reason for Test: ☐Random ☐Reasonable Susp ☑Post-Accident ☐Return to Duty ☐Follow-up ☐Pre-employment

CMI, Inc.
Intoxilyzer 400
Ser No: 103364

Test No: 0832
Date: 10/30/20
Test Type: SCREENING

Diagnostics: PASS
Time of Test: 13:10
Result: .000 %BAC

Donor Name:

**STEP 2: TO BE COMPLETED BY EMPLOYEE**

I certify that I am about to submit to alcohol testing and that the identifying information provided on the form
is true and correct.

Signature of Employee            Date    Month  Day  Year
_10 30 2020_

_Montrell Smith_

Signature:

**STEP 3: TO BE COMPLETED BY ALCOHOL TECHNICIAN**

(If the technician conducting the screening test is not the same technician who will be conducting the
confirmation test, each technician must complete their own form.) I certify that I have conducted alcohol
testing on the above named individual and that I am qualified to operate the testing device(s) identified, and
that the results are as recorded.

TECHNICIAN: ☑SAT ☐STT  DEVICE: ☐SALIVA ☑BREATH* 15-Minute Wait: ☐Yes ☐No

SCREENING TEST: *(For BREATH DEVICE* write in the space below only if the testing device is not designed to print.)*

Test #  Testing Device Name  Device Serial # OR Lot # & Exp Date  Activation Time  Reading Time  Resu

CONFIRMATION TEST: *Results MUST be affixed to each copy of this form or printed directly onto the form.*

REMARKS:

Operator Name:
A Salucdo

Signature:
A Salucdo

AIM
Alcohol Technician's Company
_Salucdo_
(PRINT) Alcohol Technician's Name (First, M.I., Last)

855 Belamerst Ste108
Company Street Address
Houma LA 70360  985 868 2302
Company City, State, Zip      Phone Number

Signature of Alcohol Technician          Date    Month  Day  Year
_10 30 2020_

**STEP 4: TO BE COMPLETED BY EMPLOYEE IF TEST RESULT IS 0.02 OR HIGHER**

I certify that I have submitted to the alcohol test, the results of which are accurately recorded on this form. I understand
that I must not drive, perform safety-sensitive duties, or operate heavy equipment because the results are 0.02 or greater.

_____ ___/___/___
Signature of Employee            Date    Month  Day  Year

Print
Additional Results Here
or Affix With
Tamper Evident Tape

**CMI** INC.    866-835-0690 • P/N 650511

THOR 0001141

*Print Screening Results
Here or Affix with
Tamper Evident Tape*

*Print Confirmation Results
Here or Affix with
Tamper Evident Tape*

*Print
Additional Results
Here
or Affix With
Tamper Evident
Tape*

**COPY 1 - ORIGINAL - FORWARD TO THE EMPLOYER**

THOR 0001142

ON-SITE CUSTODY AND CONTROL/RESULT FORM

**CONFIDENTIAL**

CRIStat

**CONFIDENTIAL**



CLINICAL REFERENCE
LABORATORY

CRL GLOBAL SERVICES

SPECIMEN ID NO. 2064642785

## STEP 1: COMPLETED BY COLLECTOR OR EMPLOYER REPRESENTATIVE

A. Employer Name, Address, I.D. No.

B. MRO Name, Address, Phone and Fax No.

C. Donor SSN [1][2][5] - [ ][ ] - [6][7][3][5]   Name (First, MI, Last)

D. Reason for Test:  ☐ Pre-employment  ☐ Random   ☐ Reasonable Suspicion/Cause   ☒ Post Accident
☐ Return to Duty  ☐ Follow-up   ☒ Other (specify) _____

E. Collection Site Name, Address:

Collector Phone No. _____

Collector Fax No. _____

## STEP 2: COMPLETED BY COLLECTOR

Read specimen temperature within 4 minutes. Is temperature between 90° and 100° F?  ☒ Yes  ☐ No, enter remarks

Specimen Collection
☒ Cup  ☐ Split  ☐ Oral Fluid  ☐ Other (Enter Remarks Below)  ☐ Observed (Enter Remarks Below)

Alcohol Screen: ☐ Negative  ☐ Positive  Collector Initials _____  If Alcohol Screen is positive, carefully follow instructions.

REMARKS:

## STEP 3: Collector affixes bottle seal(s) to bottle(s). Collector dates seal(s). Donor initials seal(s). Donor completes STEP 4

## STEP 4: COMPLETED BY DONOR

I consent to have my specimen collected by the named collector, analyzed, including drug analysis, by Clinical Reference Laboratory, Inc., its employees, agents, and/or representatives ('CRL'); and the results of that analysis made available to the above named Company/Employer and/or their designee. I certify that I provided my specimen to the collector; that I have not adulterated it in any manner; that each specimen container used was sealed with a tamper-evident seal in my presence; and that the information provided on this form and on the label affixed to each specimen container is correct.

Date of Collection
[ ][ ] [2][0][ ]
Mo.    Day    Year

DOB
Mo.    Day    Year

X _____
Signature of Donor

( _____ ) _____
Phone Number

## STEP 5: CHAIN OF CUSTODY - INITIATED BY COLLECTOR AND COMPLETED BY LABORATORY

I certify that the specimen given to me by the donor identified in the certification in step 4 above was collected, labeled, sealed and released as noted.

X _____
Signature of Collector
* (PRINT) Collector's Name (First MI, Last)*

Time and Date of Analysis
[ ][ ] ☐ AM ☐ PM
[2][0][ ]
Mo.    Day    Year

SPECIMEN BOTTLE(S) RELEASED TO:
On-Site
*"Short Term Storage" or On-Site Analyst *

## STEP 6a: TO BE COMPLETED BY ON-SITE ANALYST

SCREENING DEVICE UTILIZED

Device Name: ☒ CRLSTAT, or ☐ OTHER _____

Test Panel Number ☐ 5, ☐ 7, ☐ 9, ☐ 10, or ☐ OTHER _____

Lot Number: _____

Expiration Date: [ ][ ] [2][0]
Mo.    Year

## STEP 6b: TO BE COMPLETED BY ON-SITE ANALYST

RESULT:

☒ NEGATIVE

## STEP 7: COMPLETED BY MEDICAL REVIEW OFFICER

My determination/verification is:
☐ Negative  ☐ Positive  ☐ Test Cancelled  ☐ Refusal To Test because:  ☐ Adulterated  ☐ Substituted

REMARKS: _____

X _____
Signature of Medical Review Officer

_____
(PRINT) Medical Review Officer's Name (First, MI, Last)

THOR 0001143

© 2020 Clinical Reference Laboratory, Inc.

SPECIMEN ID NO.

CMCN #000128

EMPLOYER COPY

VER. 2.6    03/20

CONFIDENTIAL

## Alcohol Testing Form
*(The instructions for completing this form are on the back of Copy 3)*

**• STEP 1: TO BE COMPLETED BY ALCOHOL TECHNICIAN**

A: Employee Name _Lesslie Williams_
(Print)  (First, M.I., Last)

B: SSN or Employee ID No. _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_

C: Employer Name _Shore Offshore_
Street
City, State, Zip

DER Name and
Telephone No. _(____)_____
DER Name                    DER Phone Number

D: Reason for Test: ☐Random ☐Reasonable Susp ☒Post-Accident ☐Return to Duty ☐Follow-up ☐Pre-employment

**STEP 2: TO BE COMPLETED BY EMPLOYEE**

I certify that I am about to submit to alcohol testing and that the identifying information provided on the form
is true and correct.

_Signature of Employee_                    _10 30 2020_
Date    Month  Day  Year

**STEP 3: TO BE COMPLETED BY ALCOHOL TECHNICIAN**

(If the technician conducting the screening test is not the same technician who will be conducting the
confirmation test, each technician must complete their own form.) I certify that I have conducted alcohol
testing on the above named individual and that I am qualified to operate the testing device(s) identified, and
that the results are as recorded.

TECHNICIAN: ☒SAT ☐STT  DEVICE: ☐SALIVA ☒BREATH* 15-Minute Wait: ☐Yes ☐No

SCREENING TEST: *(For BREATH DEVICE* write in the space below only if the testing device is not designed to print.)*

Test #  Testing Device Name  Device Serial # OR Lot # & Exp Date  Activation Time  Reading Time  Re

CONFIRMATION TEST: Results MUST be affixed to each copy of this form or printed directly onto the form.

REMARKS:

_Alcohol Technician's Company_                    _855 Belanger St Ste 108_
Company Street Address
Houma LA 70360    985 868 2502
(PRINT) Alcohol Technician's Name (First, M.I., Last)    Company City, State, Zip    Phone Number

_Signature of Alcohol Technician_                    _10 30 2020_
Date    Month  Day  Year

**STEP 4: TO BE COMPLETED BY EMPLOYEE IF TEST RESULT IS 0.02 OR HIGHER**

I certify that I have submitted to the alcohol test, the results of which are accurately recorded on this form. I understand
that I must not drive, perform safety-sensitive duties, or operate heavy equipment because the results are 0.02 or greater.

_____    ____/____/____
Signature of Employee                    Date    Month  Day  Year

**CMI**, INC.    866-835-0690 • P/N 650511

COPY 1 - ORIGINAL - FORWARD TO THE EMPLOYER

Print Screening Results
Here or Affix with
Tamper Evident Tape

EVID

CMI, Inc.
Intoxilyzer 400
Ser No:   103364

Test No:    0833
   Date:  10/30/20
Test Type:   SCREENING

Diagnostics:    PASS
Time of Test:   13:14
   Result:   .000 %BAC

Donor Name:

_Lessle Williams_

Signature:

Operator Name:

_A Saucedo_

Signature:

_A Saucedo_

Print
Additional Results Here
or Affix With
Tamper Evident Tape

THOR 0001144

CONFIDENTIAL

CONFIDENTIAL

*Print Screening Results
Here or Affix with
Tamper Evident Tape*

*Print Confirmation Results
Here or Affix with
Tamper Evident Tape*

*Print
Additional Results
Here
or Affix With
Tamper Evident
Tape*

**COPY 1 - ORIGINAL - FORWARD TO THE EMPLOYER**

THOR 0001145

ON-SITE CUSTODY AND CONTROL/RESULT FORM

CONFIDENTIAL

**CRIstat**

CONFIDENTIAL



CLINICAL REFERENCE LABORATORY

SPECIMEN ID NO. 2064642802

## STEP 1: COMPLETED BY COLLECTOR OR EMPLOYER REPRESENTATIVE

A. Employer Name, Address, I.D. No.

B. MRO Name, Address, Phone and Fax No.

(First, MI, Last)

C. Donor SSN  [ ] [ ] [ ] — [ ] [ ] — [ ] [ ] [ ] [ ] Name

D. Reason for Test:   □ Pre-employment   □ Random   □ Reasonable Suspicion/Cause   ☒ Post Accident
□ Return to Duty   □ Follow-up   □ Other (specify)

E. Collection Site Name, Address:

Collector Phone No.

Collector Fax No.

## STEP 2: COMPLETED BY COLLECTOR

Read specimen temperature within 4 minutes. Is temperature between 90° and 100° F?   □ Yes   □ No, enter remarks

Specimen Collection
☒ Cup   □ Split   □ Oral Fluid   □ Other (Enter Remarks Below)   □ Observed (Enter Remarks Below)

Alcohol Screen:   □ Negative   □ Positive   Collector Initials _____   If Alcohol Screen is positive, carefully follow instructions.

REMARKS:

## STEP 3: Collector affixes bottle seal(s) to bottle(s). Collector dates seal(s). Donor initials seal(s). Donor completes STEP 4

## STEP 4: COMPLETED BY DONOR

I consent to have my specimen collected by the named collector, analyzed, including drug analysis, by Clinical Reference Laboratory, Inc., its employees, agents, and/or representatives ("CRL"); and the results of that analysis made available to the above named Company/Employer and/or their designee. I certify that I provided my specimen to the collector; that I have not adulterated it in any manner; that each specimen container used was sealed with a tamper-evident seal in my presence; and that the information provided on this form and on the label affixed to each specimen container is correct.

Date of Collection
[ ] [ ] 2 0 [ ]
Mo.   Day   Year

X _____ Signature of Donor   ( _____ ) _____ Phone Number

DOB
[ ] [ ] [ ] [ ]
Mo.   Day   Year

## STEP 5: CHAIN OF CUSTODY - INITIATED BY COLLECTOR AND COMPLETED BY LABORATORY

I certify that the specimen given to me by the donor identified in the certification in step 4 above was collected, labeled, sealed and released as noted,

X _____ Signature of Collector *

_____ (PRINT) Collector's Name (First, MI, Last)*

Time and Date of Analysis
[ ] [ ] AM PM
[ ] 2 0 [ ]
Mo.   Day   Year

SPECIMEN BOTTLE(S) RELEASED TO:

On-Site
* "Short Term Storage" or On-Site Analyst *

## STEP 6a: TO BE COMPLETED BY ON-SITE ANALYST

### SCREENING DEVICE UTILIZED

Device Name: ☒ CRLSTAT, or □ OTHER _____

Test Panel Number ☒5, □7, □9, □10, or □OTHER _____

Lot Number: [ ] [ ] [ ] [ ] [ ] [ ] [ ] [ ]

Expiration Date: [ ] [ ] 2 0 [ ]
Mo.   Year

## STEP 6b: TO BE COMPLETED BY ON-SITE ANALYST

RESULT:

☒ **NEGATIVE**

## STEP 7: COMPLETED BY MEDICAL REVIEW OFFICER

My determination/verification is:
□ Negative   □ Positive   □ Test Cancelled   □ Refusal To Test because:   □ Adulterated   □ Substituted

REMARKS:

X _____ Signature of Medical Review Officer

_____ (PRINT) Medical Review Officer's Name (First, MI, Last)

THOR 0001146

VER 2.6   03/20

SPECIMEN ID NO. 2064642802

## Alcohol Testing Form
*(The instructions for completing this form are on the back of Copy 3)*

*Print Screening Results
Here or Affix with
Tamper Evident Tape*

**• STEP 1: TO BE COMPLETED BY ALCOHOL TECHNICIAN**

A: Employee Name ___Joe Douglas___
        (Print)   (First, M.I., Last)

B: SSN or Employee ID No. ___000 00 5660___

C: Employer Name ___Shore Offshore___
   Street
   City, State, Zip

   DER Name and
   Telephone No. _____  (____) _____
          **DER Name**            **DER Phone Number**

D: Reason for Test: ☐Random ☐Reasonable Susp ☑Post-Accident ☐Return to Duty ☐Follow-up ☐Pre-employment

**STEP 2: TO BE COMPLETED BY EMPLOYEE**

I certify that I am about to submit to alcohol testing and that the identifying information provided on the fo
is true and correct.

_____          10 30 2020
Signature of Employee          Date   Month  Day  Year

**STEP 3: TO BE COMPLETED BY ALCOHOL TECHNICIAN**

(If the technician conducting the screening test is not the same technician who will be conducting the
confirmation test, each technician must complete their own form.) I certify that I have conducted alcohol
testing on the above named individual and that I am qualified to operate the testing device(s) identified, and
that the results are as recorded.

TECHNICIAN:  ☐ SAT ☐ STT  DEVICE: ☐ SALIVA ☑ BREATH* 15-Minute Wait: ☐ Yes ☐ No

SCREENING TEST: *(For BREATH DEVICE\* write in the space below only if the testing device is not designed to print.)*

Test #  Testing Device Name  Device Serial # OR Lot # & Exp Date  Activation Time  Reading Time  Re

**CONFIRMATION TEST:** *Results MUST be affixed to each copy of this form or printed directly onto the form.*

**REMARKS:**

_____

_____

___AIM___         ___855 Belanger St Ste 108___
Alcohol Technician's Company   Company Street Address
___A Saucedo___     ___Houma LA 70360  985 868 7302___
(PRINT) Alcohol Technician's Name (First, M.I., Last)  Company City, State, Zip   Phone Number
___A Saucedo___                     10 30 2020
Signature of Alcohol Technician          Date   Month  Day  Year

**STEP 4: TO BE COMPLETED BY EMPLOYEE IF TEST RESULT IS 0.02 OR HIGHER**

I certify that I have submitted to the alcohol test, the results of which are accurately recorded on this form. I understand
that I must not drive, perform safety-sensitive duties, or operate heavy equipment because the results are 0.02 or greater.

_____          ___/___/___
Signature of Employee          Date   Month  Day  Year

Intoxilyzer 400
Ser No:  103364

Test No:   0834
  Date:   10/30/20
Test Type:  SCREENING

Diagnostics:  PASS
Time of Test:  13:19
  Result:   .000 %BAC

Donor Name:

Jo~ Dougl

Signature:

Operator Name:

A Saucedo

Signature:

A Saucedo

*Print
Additional Results Here
or Affix With
Tamper Evident Tape*

**CMI** INC.   866-835-0690 • P/N 650511

CONFIDENTIAL

CONFIDENTIAL

*Print Screening Results*
*Here or Affix with*
*Tamper Evident Tape*

*Print Confirmation Results*
*Here or Affix with*
*Tamper Evident Tape*

*Print*
*Additional Results*
*Here*
*or Affix With*
*Tamper Evident*
*Tape*

**COPY 1 - ORIGINAL - FORWARD TO THE EMPLOYER**

THOR 0001148

**ON-SITE CUSTODY AND CONTROL/RESULT FORM** CONFIDENTIAL

CRISTAL CONFIDENTIAL



CLINICAL REFERENCE LABORATORY

SPECIMEN ID NO. 2064642803

## STEP 1: COMPLETED BY COLLECTOR OR EMPLOYER REPRESENTATIVE

A. Employer Name, Address, I.D. No.

B. MRO Name, Address, Phone and Fax No.

(First, MI, Last)

C. Donor SSN [ ] Name

D. Reason for Test:  ☐ Pre-employment  ☐ Random  ☐ Reasonable Suspicion/Cause  ☑ Post Accident
  ☐ Return to Duty  ☐ Follow-up  ☐ Other (specify)

E. Collection Site Name, Address:

Collector Phone No.

Collector Fax No.

## STEP 2: COMPLETED BY COLLECTOR

Read specimen temperature within 4 minutes. Is temperature between 90° and 100° F?  ☑ Yes  ☐ No, enter remarks

Specimen Collection
☐ Cup  ☐ Split  ☐ Oral Fluid  ☐ Other (Enter Remarks Below)  ☐ Observed (Enter Remarks Below)

Alcohol Screen:  ☐ Negative  ☐ Positive  Collector Initials _____  If Alcohol Screen is positive, carefully follow instructions.

REMARKS:

**STEP 3:** Collector affixes bottle seal(s) to bottle(s). Collector dates seal(s). Donor initials seal(s). Donor completes STEP 4

## STEP 4: COMPLETED BY DONOR

I consent to have my specimen collected by the named collector, analyzed, including drug analysis, by Clinical Reference Laboratory, Inc., its employees, agents, and/or representatives ("CRL"); and the results of that analysis made available to the above named Company/Employer and/or their designee. I certify that I provided my specimen to the collector; that I have not adulterated it in any manner; that each specimen container used was sealed with a tamper-evident seal in my presence; and that the information provided on this form and on the label affixed to each specimen container is correct.

Date of Collection
[ 2 0 ] Mo. Day Year

X _____ Signature of Donor    Phone Number

DOB
Mo. Day Year

## STEP 5: CHAIN OF CUSTODY - INITIATED BY COLLECTOR AND COMPLETED BY LABORATORY

I certify that the specimen given to me by the donor identified in the certification in step 4 above was collected, labeled, sealed and released as noted.

X _____ Signature of Collector
* (PRINT) Collector's Name (First MI, Last)*

Time and Date of Analysis
___ AM PM
[ 2 0 ] Mo. Day Year

**SPECIMEN BOTTLE(S) RELEASED TO:**
* Short Term Storage* or On-Site Analyst *

## STEP 6a: TO BE COMPLETED BY ON-SITE ANALYST

**SCREENING DEVICE UTILIZED**

Device Name: ☐ CRL*STAT*, or ☐ OTHER _____

Test Panel Number ☐ 5, ☐ 7, ☐ 9, ☐ 10, or ☐ OTHER_____

Lot Number: [ ]

Expiration Date: [ 2 0 ] Mo. Year

## STEP 6b: TO BE COMPLETED BY ON-SITE ANALYST

**RESULT:**

☑ **NEGATIVE**

## STEP 7: COMPLETED BY MEDICAL REVIEW OFFICER

My determination/verification is:
☐ Negative  ☐ Positive  ☐ Test Cancelled  ☐ Refusal To Test because:  ☐ Adulterated  ☐ Substituted

REMARKS:

X _____ Signature of Medical Review Officer    (PRINT) Medical Review Officer's Name (First, MI, Last)    Date

THOR 0001149

© 2020 Clinical Reference Laboratory, Inc.

CMCN #000128

SPECIMEN ID NO.

2064642803

*Print Screening Results Here or Affix with Tamper Evident Tape*

## Alcohol Testing Form

*(The instructions for completing this form are on the back of Copy 3)*

**• STEP 1: TO BE COMPLETED BY ALCOHOL TECHNICIAN**

**A: Employee Name** _Dustin Lowe Sr._
                     (Print)   (First, M.I., Last)

**B: SSN or Employee ID No.** _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_

**C: Employer Name** _Shore Offshore_
   Street _____
   City, State, Zip _____

   **DER Name and
   Telephone No.** _____
                   DER Name          (___) _____
                                      DER Phone Number

**D: Reason for Test:** ☐Random ☐Reasonable Susp ☑Post-Accident ☐Return to Duty ☐Follow-up ☐Pre-employment

**STEP 2: TO BE COMPLETED BY EMPLOYEE**

I certify that I am about to submit to alcohol testing and that the identifying information provided on the form is true and correct.

_____          _10_30_2020_
**Signature of Employee**          Date   Month  Day  Year

**STEP 3: TO BE COMPLETED BY ALCOHOL TECHNICIAN**

(If the technician conducting the screening test is not the same technician who will be conducting the confirmation test, each technician must complete their own form.) I certify that I have conducted alcohol testing on the above named individual and that I am qualified to operate the testing device(s) identified, and that the results are as recorded.

**TECHNICIAN:** ☑BAT ☐STT **DEVICE:** ☐SALIVA ☑BREATH* 15-Minute Wait: ☐Yes ☐No

**SCREENING TEST:** *(For BREATH DEVICE* write in the space below only if the testing device is not designed to print.)*

| Test # | Testing Device Name | Device Serial # OR Lot # & Exp Date | Activation Time | Reading Time | Result |
|--------|---------------------|-------------------------------------|-----------------|--------------|--------|
|        |                     |                                     |                 |              |        |

**CONFIRMATION TEST:** *Results MUST be affixed to each copy of this form or printed directly onto the form.*

**REMARKS:**

_____
**Alcohol Technician's Company**
_A. Saucedo_
**(PRINT) Alcohol Technician's Name (First, M.I., Last)**

_855 Belanger St St 108_
**Company Street Address**
_Houma LA 70501_ _985 808-2502_
**Company City, State, Zip**  **Phone Number**

_____    _10_30_2020_
**Signature of Alcohol Technician**   Date  Month  Day  Year

**STEP 4: TO BE COMPLETED BY EMPLOYEE IF TEST RESULT IS 0.02 OR HIGHER**

I certify that I have submitted to the alcohol test, the results of which are accurately recorded on this form. I understand that I must not drive, perform safety-sensitive duties, or operate heavy equipment because the results are 0.02 or greater.

_____          __/__/__
**Signature of Employee**          Date   Month  Day  Year

---

**Right side panel (screening results printout):**

EVID

CMI, Inc.
Intoxilyzer 400
Ser No:  103364

Test No:   0835
  Date:  10/30/20
Test Type:  SCREENING

Diagnostics:   PASS
Time of Test:  13:24
  Result:  .000 %BAC

Donor Name:
_Dustin Lowe Sr._
Signature:
_____

Operator Name:
_A. Saucedo_
Signature:
_A. Saucedo_

*Print Additional Results Here or Affix With Tamper Evident Tape*

---

**cmi** INC.   866-835-0690 • P/N 650511

**COPY 1 - ORIGINAL - FORWARD TO THE EMPLOYER**

THOR 0001150

*Print Screening Results
Here or Affix with
Tamper Evident Tape*

*Print Confirmation Results
Here or Affix with
Tamper Evident Tape*

*Print
Additional Results
Here
or Affix With
Tamper Evident
Tape*

**COPY 1 - ORIGINAL - FORWARD TO THE EMPLOYER**

THOR 0001151

ON-SITE CUSTODY AND CONTROL/RESULT FORM


CONFIDENTIAL

CONFIDENTIAL


CLINICAL REFERENCE LABORATORY

SPECIMEN ID NO.    2064642804

**STEP 1: COMPLETED BY COLLECTOR OR EMPLOYER REPRESENTATIVE**

A. Employer Name, Address, I.D. No.

B. MRO Name, Address, Phone and Fax No.

(First, MI, Last)

C. Donor SSN [ 3 ] [ ] - [ ] [ ] - [ ] [ ] [ ]    Name [ ] [ ] [ ] [ ] [ ] [ ] [ ]

D. Reason for Test:  ☐ Pre-employment  ☐ Random  ☐ Reasonable Suspicion/Cause  ☑ Post Accident
☐ Return to Duty  ☐ Follow-up  ☐ Other (specify) _____

E. Collection Site Name, Address:

Collector Phone No. _____

Collector Fax No. _____

**STEP 2: COMPLETED BY COLLECTOR**

| Read specimen temperature within 4 minutes. Is temperature between 90° and 100° F? ☑ Yes ☐ No, enter remarks | Specimen Collection  ☑ Cup  ☐ Split  ☐ Oral Fluid  ☐ Other (Enter Remarks Below)  ☐ Observed (Enter Remarks Below) |

Alcohol Screen:  ☐ Negative  ☐ Positive  Collector Initials _____  If Alcohol Screen is positive, carefully follow instructions.

REMARKS:

**STEP 3: Collector affixes bottle seal(s) to bottle(s). Collector dates seal(s). Donor initials seal(s). Donor completes STEP 4**

**STEP 4: COMPLETED BY DONOR**

I consent to have my specimen collected by the named collector, analyzed, including drug analysis, by Clinical Reference Laboratory, Inc., its employees, agents, and/or representatives ("CRL"); and the results of that analysis made available to the above named Company/Employer and/or their designee. I certify that I provided my specimen to the collector; that I have not adulterated it in any manner; that each specimen container used was sealed with a tamper-evident seal in my presence; and that the information provided on this form and on the label affixed to each specimen container is correct.

Date of Collection: [ ] [ ] [ 2 ] [ 0 ] / [ ]
Mo.  Day  Year

X _____
Signature of Donor

Phone Number

DOB,
Mo.  Day  Year

**STEP 5: CHAIN OF CUSTODY - INITIATED BY COLLECTOR AND COMPLETED BY LABORATORY**

I certify that the specimen given to me by the donor identified in the certification in step 4 above was collected, labeled, sealed and released as noted.

X _____
Signature of Collector
(PRINT) Collector's Name (First MI, Last)

Time and Date of Analysis
☐ AM ☐ PM
[ ] [ 2 ] [ 0 ] [ ]
Mo.  Day  Year

SPECIMEN BOTTLE(S) RELEASED TO:

"Short Term Storage" or On-Site Analyst *

**STEP 6a: TO BE COMPLETED BY ON-SITE ANALYST**

SCREENING DEVICE UTILIZED

Device Name: ☑ CRL*STAT*, or ☐ OTHER _____

Test Panel Number ☑5, ☐7, ☐9, ☐10, or ☐OTHER _____

Lot Number: [ ] [ ] [ ] [ ] [ ] [ ]

Expiration Date: [ ] [ ] [ 2 ] [ 0 ] / [ ]
Mo.  Year

**STEP 6b: TO BE COMPLETED BY ON-SITE ANALYST**

RESULT:

☑ NEGATIVE

**STEP 7: COMPLETED BY MEDICAL REVIEW OFFICER**

My determination/verification is:
☐ Negative  ☐ Positive  ☐ Test Cancelled  ☐ Refusal To Test because:  ☐ Adulterated  ☐ Substituted

REMARKS:

X _____
Signature of Medical Review Officer

(PRINT) Medical Review Officer's Name (First, MI, Last)

THOR 0001152

SPECIMEN ID NO. 2064642804

CONFIDENTIAL                                                                          CONFIDENTIAL

## Alcohol Testing Form
*(The instructions for completing this form are on the back of Copy 3)*

*Print Screening Results
Here or Affix with
Tamper Evident Tape*

EVID

**• STEP 1: TO BE COMPLETED BY ALCOHOL TECHNICIAN**

A: Employee Name _____ NICK JACKSON
         (Print)  (First, M.I., Last)

B: SSN or Employee ID No. _____ 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.

    Shore Offshore

C: Employer Name
   **Street**
   City, State, Zip

DER Name and
Telephone No.
            **DER Name**      (    )
                                **DER Phone Number**

D: Reason for Test: ☐Random ☐Reasonable Susp ☑Post-Accident ☐Return to Duty ☐Follow-up ☐Pre-employment

**STEP 2: TO BE COMPLETED BY EMPLOYEE**

I certify that I am about to submit to alcohol testing and that the identifying information provided on the form
is true and correct.

_X_ ~~signature~~                   10, 30, 20
**Signature of Employee**       **Date**  **Month**  **Day**  **Year**

**STEP 3: TO BE COMPLETED BY ALCOHOL TECHNICIAN**

(If the technician conducting the screening test is not the same technician who will be conducting the
confirmation test, each technician must complete their own form.) I certify that I have conducted alcohol
testing on the above named individual and that I am qualified to operate the testing device(s) identified, and
that the results are as recorded.

**TECHNICIAN:**  ☑ BAT ☐ STT  **DEVICE:** ☐ SALIVA ☑ BREATH*  15-Minute Wait: ☐ Yes ☐ No

**SCREENING TEST:** *(For BREATH DEVICE* write in the space below only if the testing device is not designed to print.)*

Test #  Testing Device Name  Device Serial # OR Lot # & Exp Date  Activation Time  Reading Time  Result

**CONFIRMATION TEST:** *Results MUST be affixed to each copy of this form or printed directly onto the form.*

**REMARKS:** _____

_____

Him
**Alcohol Technician's Company**    855 Belannuy St Ste 108
A Saucedo          **Company Street Address**
**(PRINT) Alcohol Technician's Name (First, M.I., Last)**  **Company City, State, Zip**  **Phone Number**
                        Houma LA 70360 985 808 2502
**Signature of Alcohol Technician**      10, 30, 2020
                                **Date**  **Month**  **Day**  **Year**

**STEP 4: TO BE COMPLETED BY EMPLOYEE IF TEST RESULT IS 0.02 OR HIGHER**

I certify that I have submitted to the alcohol test, the results of which are accurately recorded on this form. I understand
that I must not drive, perform safety-sensitive duties, or operate heavy equipment because the results are 0.02 or greater.

_____            /    / ____
**Signature of Employee**              **Date**  **Month**  **Day**  **Year**

---

Right column printout:

```
CMI, Inc.
Intoxilyzer 400
 Ser No:  103364

Test No:  0837
   Date:  10/30/20
Test Type:  SCREENING

Diagnostics:  PASS
Time of Test:  13:36
   Result:  .000 %BAC

Donor Name:

   NICK JACKSON

Signature:


Operator Name:

   A Saucedo

Signature:
   A Saucedo
```

*Print
Additional Results Here
or Affix With
Tamper Evident Tape*

**CMI** INC.   866-835-0690 • P/N 650511

THOR 0001153

CONFIDENTIAL

CONFIDENTIAL

*Print Screening Results
Here or Affix with
Tamper Evident Tape*

*Print Confirmation Results
Here or Affix with
Tamper Evident Tape*

*Print
Additional Results
Here
or Affix With
Tamper Evident
Tape*

**COPY 1 - ORIGINAL - FORWARD TO THE EMPLOYER**

THOR 0001154

## ON-SITE CUSTODY AND CONTROL/RESULT FORM

CONFIDENTIAL

 CRIS*tat*

CONFIDENTIAL

SPECIMEN ID NO. **2064642806**

 CLINICAL REFERENCE LABORATORY

### STEP 1: COMPLETED BY COLLECTOR OR EMPLOYER REPRESENTATIVE

A. Employer Name, Address, I.D. No.

B. MRO Name, Address, Phone and Fax No.

C. Donor SSN [ ][3][5] – [0][1] – [7][3][4] Name (First, MI, Last)

D. Reason for Test: ☐ Pre-employment ☐ Random ☐ Reasonable Suspicion/Cause ☒ Post Accident
☐ Return to Duty ☐ Follow-up ☐ Other (specify)

E. Collection Site Name, Address:

Collector Phone No.

Collector Fax No.

### STEP 2: COMPLETED BY COLLECTOR

Read specimen temperature within 4 minutes. Is temperature between 90° and 100° F? ☑ Yes ☐ No, enter remarks

Specimen Collection
☑ Cup ☐ Split ☐ Oral Fluid ☐ Other (Enter Remarks Below) ☐ Observed (Enter Remarks Below)

Alcohol Screen: ☐ Negative ☐ Positive Collector Initials _____ If Alcohol Screen is positive, carefully follow instructions.

REMARKS:

### STEP 3: Collector affixes bottle seal(s) to bottle(s). Collector dates seal(s). Donor initials seal(s). Donor completes STEP 4

### STEP 4: COMPLETED BY DONOR

I consent to have my specimen collected by the named collector, analyzed, including drug analysis, by Clinical Reference Laboratory, Inc., its employees, agents, and/or representatives ("CRL"); and the results of that analysis made available to the above named Company/Employer and/or their designee. I certify that I provided my specimen to the collector; that I have not adulterated it in any manner; that each specimen container used was sealed with a tamper-evident seal in my presence; and that the information provided on this form and on the label affixed to each specimen container is correct.

Date of Collection: [ ][2][ ] [2][0][ ]
Mo. Day Year

X _____ ( ☐ ) _____ DOB [ ][ ] [ ][ ] [ ][ ]
Signature of Donor Phone Number Mo. Day Year

### STEP 5: CHAIN OF CUSTODY - INITIATED BY COLLECTOR AND COMPLETED BY LABORATORY

I certify that the specimen given to me by the donor identified in the certification in step 4 above was collected, labeled, sealed and released as noted.

X _____
Signature of Collector
(PRINT) Collector's Name (First MI, Last)

Time and Date of Analysis: ☐ AM ☐ PM
[ ][2][0][ ]
Mo. Day Year

SPECIMEN BOTTLE(S) RELEASED TO:
On Site
"Short Term Storage" or On-Site Analyst

### STEP 6a: TO BE COMPLETED BY ON-SITE ANALYST

SCREENING DEVICE UTILIZED

Device Name: ☑ CRL*STAT*, or ☐ OTHER _____

Test Panel Number ☑ 5, ☐ 7, ☐ 9, ☐ 10, or ☐ OTHER _____

Lot Number: [ ][ ][ ][ ][ ][ ][ ]

Expiration Date: [ ][ ] [2][0][ ]
Mo. Year

### STEP 6b: TO BE COMPLETED BY ON-SITE ANALYST

RESULT:

☐ NEGATIVE

### STEP 7: COMPLETED BY MEDICAL REVIEW OFFICER

My determination/verification is:
☐ Negative ☐ Positive ☐ Test Cancelled ☐ Refusal To Test because: ☐ Adulterated ☐ Substituted

REMARKS:

X _____
Signature of Medical Review Officer
(PRINT) Medical Review Officer's Name (First, MI, Last)

THOR 0001155
Date

## Alcohol Testing Form
*(The instructions for completing this form are on the back of Copy 3)*

**• STEP 1: TO BE COMPLETED BY ALCOHOL TECHNICIAN**

**A: Employee Name**  *Melvin Ramacola* (Print) (First, M.I., Last)

**B: SSN or Employee ID No.**  *951943091 3*

**C: Employer Name**  *Shore Offshore*
Street
City, State, Zip

**DER Name and Telephone No.**
DER Name                    (____) _____
                            DER Phone Number

**D: Reason for Test:** ☐Random ☐Reasonable Susp ☑Post-Accident ☐Return to Duty ☐Follow-up ☐Pre-employment

**STEP 2: TO BE COMPLETED BY EMPLOYEE**

I certify that I am about to submit to alcohol testing and that the identifying information provided on the form is true and correct.

Signature of Employee          Date *10 30 2020*  Month Day Year

**STEP 3: TO BE COMPLETED BY ALCOHOL TECHNICIAN**

(If the technician conducting the screening test is not the same technician who will be conducting the confirmation test, each technician must complete their own form.) I certify that I have conducted alcohol testing on the above named individual and that I am qualified to operate the testing device(s) identified, and that the results are as recorded.

**TECHNICIAN:** ☑BAT ☐STT  **DEVICE:** ☐SALIVA ☑BREATH* **15-Minute Wait:** ☐Yes ☐No

**SCREENING TEST:** *(For BREATH DEVICE\* write in the space below only if the testing device is not designed to print.)*

Test #  Testing Device Name  Device Serial # OR Lot # & Exp Date  Activation Time  Reading Time  Resu

**CONFIRMATION TEST:** *Results MUST be affixed to each copy of this form or printed directly onto the form.*

**REMARKS:**

*HM*
Alcohol Technician's Company
*A Saucedo*
(PRINT) Alcohol Technician's Name (First, M.I., Last)
*855 Belanger St Ste 108*
Company Street Address
*Houma OH 70560 985.868.2302*
Company City, State, Zip        Phone Number

Signature of Alcohol Technician          Date *10 30 2020* Month Day Year

**STEP 4: TO BE COMPLETED BY EMPLOYEE IF TEST RESULT IS 0.02 OR HIGHER**

I certify that I have submitted to the alcohol test, the results of which are accurately recorded on this form. I understand that I must not drive, perform safety-sensitive duties, or operate heavy equipment because the results are 0.02 or greater.

Signature of Employee          Date     ____/____/____  Month Day Year

CMI, Inc.  866-835-0690 • P/N 650511

**COPY 1 - ORIGINAL - FORWARD TO THE EMPLOYER**

*Print Screening Results Here or Affix with Tamper Evident Tape*

**EVIDI**

CMI, Inc.
Intoxilyzer 400
Ser No: 103364

Test No:   0836
  Date:  10/30/20
Test Type:  SCREENING

Diagnostics:  PASS
Time of Test:  13:31
  Result:  .000 %BAC

Donor Name:

*MELVIN RAMACOL*

Signature:

Operator Name:
*A Saucedo*

Signature:
*A Saucedo*

*Print Additional Results Here or Affix With Tamper Evident Tape*

THOR 0001156

CONFIDENTIAL
CONFIDENTIAL

*Print Screening Results Here or Affix with Tamper Evident Tape*

*Print Confirmation Results Here or Affix with Tamper Evident Tape*

*Print Additional Results Here or Affix With Tamper Evident Tape*

**COPY 1 - ORIGINAL - FORWARD TO THE EMPLOYER**

ON-SITE CUSTODY AND CONTROL/RESULT FORM

CONFIDENTIAL

CRIstat   CONFIDENTIAL

CONFIDENTIAL

**CRL** CLINICAL REFERENCE LABORATORY
GLOBAL SERVICES

SPECIMEN ID NO.   2064642805

## STEP 1: COMPLETED BY COLLECTOR OR EMPLOYER REPRESENTATIVE

A. Employer Name, Address, I.D. No.

B. MRO Name, Address, Phone and Fax No.

C. Donor SSN  [ ][ ][ ] - [ ][ ] - [ ][ ][ ][ ]   Name (First, MI, Last)

D. Reason for Test:  ☐ Pre-employment   ☐ Random   ☐ Reasonable Suspicion/Cause   ☑ Post Accident
☐ Return to Duty   ☐ Follow-up   ☐ Other (specify)

E. Collection Site Name, Address:

Collector Phone No.

Collector Fax No.

## STEP 2: COMPLETED BY COLLECTOR

Read specimen temperature within 4 minutes. Is temperature between 90° and 100° F?  ☑ Yes  ☐ No, enter remarks

Specimen Collection
☑ Cup   ☐ Split   ☐ Oral Fluid   ☐ Other (Enter Remarks Below)   ☐ Observed (Enter Remarks Below)

Alcohol Screen:  ☐ Negative   ☐ Positive   Collector Initials _____   If Alcohol Screen is positive, carefully follow instructions.

REMARKS:

## STEP 3: Collector affixes bottle seal(s) to bottle(s). Collector dates seal(s). Donor initials seal(s). Donor completes STEP 4

## STEP 4: COMPLETED BY DONOR

I consent to have my specimen collected by the named collector, analyzed, including drug analysis, by Clinical Reference Laboratory, Inc., its employees, agents, and/or representatives ("CRL"); and the results of that analysis made available to the above named Company/Employer and/or their designee. I certify that I provided my specimen to the collector; that I have not adulterated it in any manner; that each specimen container used was sealed with a tamper-evident seal in my presence; and that the information provided on this form and on the label affixed to each specimen container is correct.

Date of Collection
Mo. [ ][ ]  Day [2][0]  Year [ ][ ]

X _____ Signature of Donor   ( _____ ) _____ Phone Number

DOB
Mo. [ ][ ]  Day [ ][ ]  Year [ ][ ]

## STEP 5: CHAIN OF CUSTODY - INITIATED BY COLLECTOR AND COMPLETED BY LABORATORY

I certify that the specimen given to me by the donor identified in the certification in step 4 above was collected, labeled, sealed and released as noted.

X _____ Signature of Collector
_____ (PRINT) Collector's Name (First MI, last)

Time and Date of Analysis
☐ AM  ☐ PM
Mo. [ ][ ]  Day [2][0]  Year [ ][ ]

SPECIMEN BOTTLE(S) RELEASED TO:
_____ *"Short Term Storage" or On-Site Analyst *

## STEP 6a: TO BE COMPLETED BY ON-SITE ANALYST

SCREENING DEVICE UTILIZED

Device Name: ☐ CRL STAT, or ☐ OTHER _____

Test Panel Number ☑ 5, ☐ 7; ☐ 9, ☐ 10, or ☐ OTHER _____

Lot Number: [ ][ ][ ][ ][ ][ ]

Expiration Date: [ ][ ] Mo.  [2][0] Year

## STEP 6b: TO BE COMPLETED BY ON-SITE ANALYST

RESULT:

☑ NEGATIVE

## STEP 7: COMPLETED BY MEDICAL REVIEW OFFICER

My determination/verification is:
☐ Negative   ☐ Positive   ☐ Test Cancelled   ☐ Refusal To Test because:   ☐ Adulterated   ☐ Substituted

REMARKS:

X _____ Signature of Medical Review Officer   _____ (PRINT) Medical Review Officer's Name (First, MI, Last)

THOR 0001158

DEPARTMENT OF HOMELAND SECURITY
U.S. Coast Guard
**PERSONNEL CASUALTY ADDENDUM**

OMB No.: 1625-0001
Exp. Date: 07/31/2022

Note: This form shall be used to report data on persons who were injured, killed, or are missing as a result of the marine casualty described on form CG-2692.
This form may only be used in addition to form CG-2692, never alone.

| Section I - Reporting Vessel/Facility Information - Casualty Date/Time | |
|---|---|
| 1. Vessel or Facility Name<br>DB Thor | 2. Date/Time *(local)* of Occurrence<br>10/28/2020 7:00pm |

| Section II - Injured, Dead, and Missing Person Details |
|---|

| 3a. Name *(Last, First, Middle)*<br>Andrews, Lewis | 3b. Relationship to Vessel or Facility<br>[X] Crew - Position: Cook, Galley<br>[ ] Passenger<br>[ ] Other - Describe: | 3c. Status<br>[X] Injured<br>[ ] Dead<br>[ ] Missing |
|---|---|---|
| 3d. Address<br>26 Cherokee Rd. Hattiesburg MS 39402 | | |
| 3e. Telephone 6015496447 | 3f. Email Address N/A | 3g. For Crew - On Duty at Time?<br>[X] Yes [ ] No | 3h. Date of Birth 9/21/1981 | 3i. Date of Death |

3j. Activity of Person at Time of Casualty: Bracing for the impact of Thor & Helping on deck with anchor.

3k. Location on Vessel or Facility Where Casualty Occurred: Galley and on Deck

3l. Extent of Injuries to Person *(Parts of Body and Type of Injuries)*: Shoulder and Groin soft tissue injuries.

| 4a. Name *(Last, First, Middle)*<br>Burnett, Patrick | 4b. Relationship to Vessel or Facility<br>[X] Crew - Position: Cook, Galley<br>[ ] Passenger<br>[ ] Other - Describe: | 4c. Status<br>[X] Injured<br>[ ] Dead<br>[ ] Missing |
|---|---|---|
| 4d. Address<br>1272 Oak Vinyard Dr. Hattiesburg MS 39402 | | |
| 4e. Telephone 6015404465 | 4f. Email Address | 4g. For Crew - On Duty at Time?<br>[X] Yes [ ] No | 4h. Date of Birth 8/12/1982 | 4i. Date of Death |

4j. Activity of Person at Time of Casualty: Bracing for impact of Thor

4k. Location on Vessel or Facility Where Casualty Occurred: Galley

4l. Extent of Injuries to Person *(Parts of Body and Type of Injuries)*: Back and Knee Pain - Was examined and released to full duty.

| 5a. Name *(Last, First, Middle)* | 5b. Relationship to Vessel or Facility<br>[ ] Crew - Position:<br>[ ] Passenger<br>[ ] Other - Describe: | 5c. Status<br>[ ] Injured<br>[ ] Dead<br>[ ] Missing |
|---|---|---|
| 5d. Address | | |
| 5e. Telephone | 5f. Email Address | 5g. For Crew - On Duty at Time?<br>[ ] Yes [ ] No | 5h. Date of Birth | 5i. Date of Death |

5j. Activity of Person at Time of Casualty:

5k. Location on Vessel or Facility Where Casualty Occurred:

5l. Extent of Injuries to Person *(Parts of Body and Type of Injuries)*:

| 6a. Name *(Last, First, Middle)* | 6b. Relationship to Vessel or Facility<br>[ ] Crew - Position:<br>[ ] Passenger<br>[ ] Other - Describe: | 6c. Status<br>[ ] Injured<br>[ ] Dead<br>[ ] Missing |
|---|---|---|
| 6d. Address | | |
| 6e. Telephone | 6f. Email Address | 6g. For Crew - On Duty at Time?<br>[ ] Yes [ ] No | 6h. Date of Birth | 6i. Date of Death |

6j. Activity of Person at Time of Casualty:

6k. Location on Vessel or Facility Where Casualty Occurred:

6l. Extent of Injuries to Person *(Parts of Body and Type of Injuries)*:

| 7a. Name *(Last, First, Middle)* | 7b. Relationship to Vessel or Facility<br>[ ] Crew - Position:<br>[ ] Passenger<br>[ ] Other - Describe: | 7c. Status<br>[ ] Injured<br>[ ] Dead<br>[ ] Missing |
|---|---|---|
| 7d. Address | | |
| 7e. Telephone | 7f. Email Address | 7g. For Crew - On Duty at Time?<br>[ ] Yes [ ] No | 7h. Date of Birth | 7i. Date of Death |

7j. Activity of Person at Time of Casualty:

7k. Location on Vessel or Facility Where Casualty Occurred:

7l. Extent of Injuries to Person *(Parts of Body and Type of Injuries)*:

THOR 0001159

CG-2692C (07/19)

**INSTRUCTIONS FOR COMPLETION OF FORM CG-2692C**
*PERSONNEL CASUALTY ADDENDUM*

**Note:**   This form shall be used to report data on persons who were injured, killed, or missing as a result of the marine casualty described on form CG-2692.
This form may only be used in addition to form CG-2692, never alone.

An agency may not conduct or sponsor, and a person is not required to respond to a collection of information unless it displays a valid OMB control number. The Coast Guard estimates that the average burden for this report is .5 hours.  You may submit any comments concerning the accuracy of this burden estimate or any suggestions for reducing the burden to:  Commandant (CG-INV), U.S. Coast Guard Stop 7501, 2703 Martin Luther King Jr Ave SE, Washington, DC 20593-7501 or Office of Management and Budget, Paperwork Reduction Project (1625-0001), Washington, DC 20503.

**WHEN TO USE THIS FORM**

1.  This form, when submitted in conjunction with a CG-2692, satisfies the requirement for written reports of casualties found in the Code of Federal Regulations for vessels.  Specifically, it provides information on one or more persons who were injured, dead or missing as a result of their involvement in a reportable marine casualty, commercial diving casualty, or an OCS-related casualty. This form may only be used in addition to form CG-2692, never alone.

**DEFINITIONS**

2.  Loss of Life - a life is considered lost when the person is known to be deceased (e.g. the body has been recovered), the person as been categorized as "presumed lost/dead" by agencies leading search and rescue efforts, or the circumstances of the occurrence make recovery of the person alive unlikely.

3.  Injury - defined as damage or harm caused to the structure or function of the body as a result of an outside physical agent.  Damage or harm caused exclusively by animal/insect bites/scratches is excluded.  Pursuant to the Occupational Safety and Health Administration's (OSHA) definition of "injury or illness" in 29 CFR 1904.46, the Coast Guard considers injuries and illnesses as separate types of occurrences.  As such, damage or harm caused by illness, including but not limited to: communicable illness (i.e. colds, flu, etc.), food poisoning, heart attack, stroke, or other pre-existing medical condition is not considered an injury and does not fall under this criterion.

**COMPLETION OF THIS FORM**

4.  In accordance with 46 CFR §4.05-10, 46 CFR §197.486, and 33 CFR §146.35 this form shall be filled out as completely and accurately as possible.  Please type or print clearly.  Fill in all blanks that apply to the kind of casualty that has occurred.  If a block is not applicable, the abbreviation "NA" should be entered in that space.  If the answer is unknown and cannot be obtained before the report has to be submitted (i.e. within 5 days of the accident), the abbreviation "UNK" should be entered in that block.  If "NONE" is the correct response, enter it in the block.

5.  If more than 5 individuals were injured, dead, or missing as a result of the marine casualty additional CG2692Cs should be completed.

6.  Once completed, deliver, email, or fax this form with a corresponding CG-2692 within 5 days of the casualty to the Coast Guard Sector, Marine Safety Unit, or Activity nearest the location of the casualty or, if at sea, nearest the arrival port. https://www.uscg.mil/Units/Organization

**NOTICE:**  The information collected on this form is routinely available for public inspection.  It is needed by the Coast Guard to carry out its responsibility to investigate marine casualties, to identify hazardous conditions or situations and to conduct statistical analysis.  The information is used to determine whether new or revised safety initiatives are necessary for the protection of life or property in the marine environment.

THOR 0001160