UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ALL COAST, LLC<br><br>VERSUS<br><br>SHORE OFFSHORE SERVICES, LLC | CIVIL ACTION NO: 21-258<br>c/w 21-337, 21-464, 21-822, 21-1968, 21-1969, 21-1982, 21-1981, 21-2075, 21-2227, 23-3220<br><br>SECTION "A"<br>HON. JAY C. ZAINEY<br><br>MAGISTRATE: (3)<br>HON. EVA J. DOSSIER<br><br>APPLIES TO ALL CASES |

**MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT REGARDING ENFORCEMENT OF THE DAWN MASTER VESSEL TIME CHARTER**

**MAY IT PLEASE THE COURT:**

Dawn Services, LLC ("Dawn") and Shore Offshore Services, LLC ("Shore") entered into a Master Vessel Time Charter on 9 June 2017 (the "MVTC" or "Charter"), nearly three years before the October 2020 Hurricane Zeta incident made basis of these consolidated cases. The MVTC, being a "master" agreement, governed Dawn's work for Shore at the time of this incident, and the plain and unambiguous language of the MVTC obligates Dawn as a matter of law to defend and indemnify Shore and its affiliated companies, contractors and subcontractors, joint venturers, and the insurers, officers, directors, owners, employees of all the foregoing (the "Shore Group") for certain claims brought against the Shore Group in these cases.[1] Dawn disputes that the MVTC applied to the work Dawn was performing at the time of the incident and has refused to defend and indemnify Shore, so this Motion seeks a ruling that the MVTC governed the work that Dawn was performing for Shore at the time of the incident made basis of these above-captioned and consolidated cases.

---

[1] Exhibit "A", 2017 Dawn Master Vessel Time Charter, DAWN 000388 – DAWN 000401.

1

1. **FACTUAL AND PROCEDURAL BACKGROUND**

These consolidated cases arise from an incident involving the derrick barge THOR and her assist tug, the M/V CROSBY ENDEAVOR that occurred when the THOR broke free from her moorings at Martin Energy Dock No. 16 in Port Fourchon during Hurricane Zeta on 28 October 2020 and, with the ENDEAVOR coupled to her, came into contact with certain vessels and other property in and along the Bayou Lafourche channel (hereinafter the "Breakaway Incident").[2]

The THOR is a non-self-propelled derrick barge[3] owned by Modern American Railroad Services, LLC ("MARS") and was at the time bareboat chartered by Shore.[4] In late October 2020, the THOR was working for Fieldwood Energy LLC ("Fieldwood") south of Port Fourchon[5] with the support of her assist tug, the ENDEAVOR, a vessel owned by Crosby Marine Transportation, LLC[6] and operated by Crosby Tugs, LLC (hereinafter collectively "Crosby").[7] Shore chartered the ENDEAVOR through Dawn,[8] and "relied on Dawn to provide tugs sufficient enough to operate with the THOR."[9]

Shore and Dawn had years earlier on 9 June 2017 entered into the MVTC, pursuant to which Shore would from time to time secure the services of "(a) vessel(s)" from Dawn in exchange for a fee.[10] The MVTC did not obligate Shore to "order vessels, work and/or equipment" from Dawn nor did it obligate Dawn to accept such orders, but if ordered and accepted, the parties agreed that the MVTC was a "binding agreement" and the terms would "control and govern the

---

[2] Civil Action No. 21-464, Rec. Doc. 1, ¶8.
[3] Exhibit "B", THOR Spec Sheet and Vessel Particulars, THOR 000002 – THOR 000005.
[4] Civil Action No. 21-464, Rec. Doc. 1.
[5] Exhibit "C", THOR Daily Progress Report, 25 Oct. 2020, THOR 001234 – THOR 001239.
[6] Crosby Marine Transportation, LLC is not a party to this litigation.
[7] Exhibit "D", ENDEAVOR Certificate of Inspection, CROSBY 002490 – CROSBY 002491.
[8] Exhibit "E", ENDEAVOR On-Hire Letter, DAWN 000379.
[9] Exhibit "F", Sims Deposition Transcript, 30:15-16.
[10] Exhibit "A", 2017 Master Vessel Time Charter.

performance of any and all work under Charter Orders, oral or written"[11] and "define the rights and obligations" of the parties.[12] The MVTC included a "Charter Order" form, but Dawn's Corporate Representative testified that as a practical matter, the Charter Orders received under the MVTC were oral and then confirmed by Dawn via an on-hire letter sent to Shore by e-mail.[13] Sometimes, as in this instance, on-hire letters would not be issued by Dawn to Shore until after work commenced,[14] but the terms of the MVTC provided that in the event Dawn did "not reduce an oral order to writing," the Charter Order would be "deemed to be executed…upon the provision of the Vessel," and the terms and conditions of the MVTC would apply.[15] The MVTC was a typical "master" contract to govern the relationship between Shore and Dawn.

Under the MVTC, "Vessel" was defined as "(a) vessel(s)" Dawn "has…which, from time to time, it commits to the service of others in exchange for a fee."[16] The MVTC contemplated that Dawn may need to substitute the Vessel it "has" with other vessels, and expressly provided Dawn "the right from time to time during the term of this Charter to substitute a vessel for the Vessel, provided that any such substitution shall require [Dawn] to provide a vessel that has the same functionality and horsepower as the Vessel."[17]

Dawn was familiar with the work the THOR was performing in October 2020.[18] No vessels in Dawn's advertised fleet were available or capable of providing the type of services required by the THOR,[19] and so when Shore reached out, Dawn "found" Crosby, "contacted the vessel owners,

---

[11] Exhibit "A", 2017 Master Vessel Time Charter, §1.a.
[12] Exhibit "A", 2017 Master Vessel Time Charter, §2.
[13] Exhibit "G", Dawn Corporate Deposition Transcript, 62:6-21, 63:8-16.
[14] Exhibit "G", Dawn Corporate Deposition Transcript, 61:16-21. *See* Exhibit "E", ENDEAVOR On-Hire Letter, DAWN 000379.
[15] Exhibit "A", 2017 Master Vessel Time Charter, §1.b.
[16] Exhibit "A", 2017 Master Vessel Time Charter.
[17] Exhibit "A", 2017 Master Vessel Time Charter, §4.b.
[18] Exhibit "G", Dawn Corporate Deposition Transcript, 57:1-8.
[19] Exhibit "G", Dawn Corporate Deposition Transcript, 248:7-249:12.

explained to them what Shore was looking for, and when all parties agreed [to the work to be provided], they went to work for Shore."[20]

Dawn's Corporate Representative testified that Dawn had provided vessels for Shore through this same process since the execution of the MVTC in 2017,[21] and that irrespective of whether Dawn was actually the registered owner of the vessel to be performing the work the same on-hire letter would be issued.[22]

The ENDEAVOR went to work assisting the THOR on 20 October 2020,[23] and Dawn issued an On-Hire Letter to Shore for the ENDEAVOR on 22 October 2020.[24] Dawn had no written contract in place with Crosby,[25] but remained involved and served as a "pass through of information" to Crosby with respect to the vessel's ETA to a jobsite, additional costs for logistical delays, a third-party vessel's need for fuel or lube replacement, and crew changes.[26] Dawn's Vice President, Mike Grace, included the CROSBY ENDEAVOR on his Dawn's Morning Reports (similar to vessel logs), noting "what boats are working" and "where they're working,"[27] and was communicating with shoreside representatives of Crosby and Shore in the days leading up to and the day of the hurricane.[28]

---

[20] Exhibit "G", Dawn Corporate Deposition Transcript, 39:1-25. Dawn had no written contracts in place with Crosby as of the date of the incident. *See* Exhibit "G", Dawn Corporate Deposition Transcript, 222:16-223:5.
[21] Exhibit "G", Dawn Corporate Deposition Transcript, 67:24-68:18, 106:7-13.
[22] Exhibit "E", ENDEAVOR On-Hire Letter, DAWN 000379; see also e.g. Exhibit "H", Additional On-Hire Letters. The only distinction between an on/off hire letter when Dawn is purportedly brokering versus chartering is simply that the name of the vessel would not be one of Dawn's advertised fleet. Exhibit "G", Dawn Corporate Deposition Transcript, 80:23-81:3, 84:22-85:2.
[23] Exhibit "I", ENDEAVOR Deck Log, 20 Oct. 2020, CROSBY 000446.
[24] Exhibit "E", ENDEAVOR On-Hire Letter, DAWN 000379.
[25] Exhibit "G", Dawn Corporate Deposition Transcript, 222:16-223:5.
[26] Exhibit "G", Dawn Corporate Deposition Transcript, 204:19-210:5.
[27] Exhibit "G", Dawn Corporate Deposition Transcript, 238:18-22.
[28] Exhibit "G", Dawn Corporate Deposition Transcript, 266:13-15, 278:16-279:4 (on 25 October 2020, Danos texted Grace and asked "What are y'all's t[h]ough[t]s on CROSBY ENDEAVOR and THOR for the storm."); Exhibit "F", Sims Deposition Transcript, 96:18-98:1 (a THOR shoreside representative reached out to their point of contact—Dawn Services—and was told only that "they are doing something at their dock and then they will be back…before the storm.").

Arrangements were made for the ENDEAVOR to tow the THOR to Port Fourchon[29] so the derrick barge could seek safe harbor from the developing weather event.[30] The vessels arrived at Martin Energy Dock No. 16 on the night of 26 October 2020,[31] roughly two days before Hurricane Zeta made landfall.[32] The ENDEAVOR remained alongside the THOR as she was made up to the dock overnight on 26 October but left for approximately 24-hours in order to resupply, take on groceries, conduct engine repairs, including replacement of "bad" fuel injectors, at Crosby's nearby dock.[33]

The ENDEAVOR returned to the Martin dock on the morning of 28 October to stand by alongside the THOR and assist the THOR through the forecasted hurricane[34]—for the acknowledged and anticipated purposes of minimizing the chance of a breakaway of the non-self-propelled vessel,[35] holding[36] or pushing the THOR back into the dock,[37] and ultimately, attempting to maneuver and render aid to the derrick barge in the event of a breakaway.[38]

Unfortunately for the THOR and all claimants in these consolidated cases, and as addressed more completely in the Memorandum in Motion for Summary Judgment regarding Crosby's Entitlement to Limitation of Liability (Rec. Doc. 777-3)[39] the ENDEAVOR was not fit to assist

---

[29] Exhibit "I", ENDEAVOR Deck Logs, 26 Oct. 2020, CROSBY 000452.
[30] Civil Action No. 21-464, Rec. Doc. 1, ¶7.
[31] Exhibit "J", THOR Daily Progress Report, 26 Oct. 2020, THOR 001036 – THOR 001041; *see also* Exhibit "I", ENDEAVOR Deck Logs, 26 Oct. 2020, CROSBY 000452.
[32] Exhibit "K", TropicsWatch Hurricane Zeta Advisory 11, CROSBY 000153.
[33] Exhibit "I", ENDEAVOR Deck Logs, 27 Oct. 2020, CROSBY 000453.
[34] *See* Motion for Summary Judgment regarding Crosby's Entitlement to Limitation of Liability (Rec. Doc. 777-2),
[35] *Id*.
[36] *Id*.
[37] *Id*.
[38] *Id*.
[39] The Memorandum in Support of the referenced Motion for Summary Judgment regarding Crosby's Entitlement to Exoneration from and Limitation of Liability exceeded the page limit allowed by the local rules, such that this reference is to Rec. Doc. 777, which is the Motion for Leave. The unseaworthiness of the ENDEAVOR was briefed extensively in that memorandum, and therefore, for the sake of brevity, THOR Interests incorporate by reference and pursuant to Rule 10(c) of the Federal Rules of Civil Procedure the arguments and exhibits contained in Rec. Doc. 777-2 – Rec. Doc. 777-27 as if copied herein.

the THOR as directed through the forecasted conditions of Hurricane Zeta. The detrimental effects of the ENDEAVOR's lack of fitness were compounded by the fact that it has since been established by the ENDEAVOR's own logs that the tug's engines were off in the critical moments leading up to the breakaway, such that the ENDEAVOR could ultimately do nothing to even try to hold or push the THOR back into the Martin dock once the mooring arrangement began to fail.

Once the ENDEAVOR's engines were engaged, the tug was attempting to direct and maneuver the derrick barge,[40] but she did not have the capacity to do so. Contact was made with the HARVEY SEAS and the MR. COLBY where both vessels were moored to dolphins owned by C-Port across the bayou from the Martin dock.[41] Eventually, the ENDEAVOR separated from THOR, and the derrick barge continued up bayou with the storm surge. Crosby Operations Manager, Ivy Danos, called Dawn Vice President, Mike Grace, while "they were floating down the canal," and advised Dawn that "the THOR had broken free and that the ENDEAVOR wasn't going to be able to stop it, with the high winds."[42] After that initial call, Crosby and Dawn talked "about the retrieval and going to get the barge,"[43] which was eventually accomplished by four additional Crosby tugs.

Numerous claims for personal injuries and property damage ensued, including claims asserting injuries and damage caused by the unseaworthiness of the ENDEAVOR. As a result, on 25 February 2021, Shore tendered a demand for defense, indemnity and additional insured coverage to Dawn.[44] With its demand, Shore set out for Dawn the conditions that rendered the ENDEAVOR unseaworthy, and reminded Dawn that the MVTC contains defense, indemnity, and

---

[40] *See* Motion for Summary Judgment regarding Crosby's Entitlement to Limitation of Liability (Rec. Doc. 777-2),
[41] *Id.*
[42] Exhibit "G", Dawn Corporate Deposition Transcript, 287:8-23.
[43] Exhibit "G", Dawn Corporate Deposition Transcript, 288:12:15.
[44] Exhibit "L", Shore Demand Letter, 25 Feb. 2021.

insurance coverage obligations in favor of Shore in connection with the Breakaway Incident. Specifically, Section 11 provides, in pertinent part:

> OWNER [Dawn] hereby agrees to defend, indemnify and hold harmless CHARTERER [Shore], its affiliated companies (specifically including Shore Construction, LLC, and Modern American Recycling Services, Inc.), its contractors and subcontractors, its joint venturers (specifically including Bisso Marine, LLC), and the insurers, officers, directors, owners, employees (even if alleged to held to be the borrowed employee or another entity), of all of the foregoing (collectively referred to as "CHARTERER GROUP") from and against any and all demands, liabilities, claims, suits, judgments, proceedings, orders, causes of action, damages, losses, costs and expenses (including reasonable attorneys' fees) on account of any property damage or loss of property of CHARTERER [Shore] GROUP (including, but not limited to, the loss of any vessel towed by OWNER [Dawn] hereunder, damage to any vessel towed by OWNER [Dawn] hereunder, or damage caused by any vessel towed by OWNER [Dawn] hereunder) when such loss or damage arises from the negligence of OWNER [Dawn] or any member of OWNER [Dawn] GROUP (defined below) or the unseaworthiness of the Vessel.
>
> ….
>
> OWNER [Dawn] hereby agrees defend, indemnify and hold harmless CHARTERER [Shore] GROUP from and against any and all demands, liabilities, claims, suits, judgments, proceedings, orders, causes of action, damages, losses, costs and expenses (including reasonable attorneys' fees) on account of bodily injury, illness, or death to any member of CHARTERER [Shore] GROUP, when such loss or damage arises from the negligence of OWNER [Dawn] or any member of OWNER [Dawn] GROUP or the unseaworthiness of the Vessel.
>
> OWNER [Dawn] hereby agrees defend, indemnify and hold harmless CHARTERER [Shore] GROUP from and against any and all demands, liabilities, claims, suits, judgments, proceedings, orders, causes of action, damages, losses, costs and expenses (including reasonable attorneys' fees) on account of any harm to any Third Parties (defined as any person or entity other than a member of CHARTERER [Shore] GROUP, OWNER [Dawn], or OWNER [Dawn] GROUP), whether such harm be on account of bodily injury, illness, or death or property damage, when such loss or damage arises from the negligence or fault of OWNER [Dawn] or any member of OWNER [Dawn] GROUP or the unseaworthiness of the Vessel.[45]

"OWNER" is defined as Dawn, and "CHARTERER" is defined as Shore. "CHARTERER GROUP" includes Shore's contractors and subcontractors, including MARS, along with their

---
[45] Exhibit "A", 2017 Master Vessel Time Charter, §11.

employees (even if alleged to held to be the borrowed employee or another entity).[46] Further, "OWNER GROUP" includes any "employee (even if alleged to held to be the borrowed employee or another entity), agent, representative, owner, or director of OWNER [Dawn]." [47] As indicated above, the term "Vessel" refers to a vessel Dawn "commits to the service of others [here Shore] in exchange for a fee," thus the ENDEAVOR.[48]

In addition, Section 10 of the MVTC required Dawn to obtain insurance coverage to support these indemnity obligations and to have such policies of insurance name Shore as an additional insured with a waiver of subrogation in favor of Shore's group.[49]

Based upon the terms of the MVTC, Shore demanded that Dawn defend, indemnify, and hold harmless the Shore Group, including MARS, "for all claims…costs and expenses (including reasonable attorneys' fees) on account of the property damage and/or alleged personal injuries at issue arising from Dawn's negligence or fault, the negligence or fault of its agents and/or representatives, and/or the unseaworthiness of the ENDEAVOR."[50]

On 26 March 2021, Dawn's liability insurer, Mitsui Sumitomo Insurance USA Inc., rejected Shore's tender[51] on the basis that the MVTC does not apply to Dawn's "providing" the ENDEAVOR to assist the THOR. Formal claims, counterclaims, and Rule 14(c) tenders followed in these consolidated cases, with Shore reiterating repeatedly its entitlement to defense and indemnity under the MVTC. In its responsive pleadings, Dawn alleged for the first time that it had been brokering, rather than chartering the ENDEAVOR to Shore, such that it was taking the position that the MVTC does not apply here.[52]

---

[46] Exhibit "A", 2017 Master Vessel Time Charter.
[47] Exhibit "A", 2017 Master Vessel Time Charter.
[48] Exhibit "A", 2017 Master Vessel Time Charter.
[49] Exhibit "A", 2017 Master Vessel Time Charter, §10.
[50] Exhibit "L", Shore Demand Letter, 25 Feb. 2021.
[51] Exhibit "M", Mitsui Rejection Letter, 26 March 2021.
[52] Rec. Doc. 47, ¶VII.

Shore expects that Dawn will make the same argument in opposition to this Motion (i.e., that the MVTC applies "when Dawn provides a Dawn vessel and does not apply when [Dawn] broker[s] a third-party vessel"[53]), but it is a position neither supported by the plain and unambiguous language of the MVTC, nor the parties' course of dealings established by the record.

While Dawn is referred to as "OWNER" in the MVTC, the Charter does not presume that Dawn owns the vessels covered by the Charter. In fact, the MVTC defines the Vessels as those that Dawn "has," while requiring Dawn to warrant that it also "has the right to possess and charter the Vessel(s) to [Shore]".[54] There are no references to Vessels "owned" by Dawn. In fact, neither the term "own" nor "owned" is found within the MVTC,[55] and the MVTC does not limit the term to vessels Dawn crews or insures[56] or those advertised on its website (of which it is also admittedly not the registered owner).[57]

Moreover, Dawn had been using the same on-hire letter form for about a decade before the Breakaway Incident,[58] and as stated above, Dawn has acknowledged that an identical form has always been utilized irrespective of whether Dawn is the registered owner of the vessel to be provided or is "brokering" someone else's vessel. The on-hire letter similarly makes no reference to the ownership of the vessel being offered. Rather, it is a vessel Dawn is "offering" for "hire" to work with the THOR "subject to availability",[59] reiterating Dawn's retained right of substitution.[60]

In addition, Dawn invoiced Shore for the hire of the ENDEAVOR. Dawn Invoice No. 10329 was marked as CONFIDENTIAL when produced through discovery, such that it is not

---

[53] Exhibit "G", Dawn Corporate Deposition Transcript, 71:13-25.
[54] Exhibit "A", 2017 Master Vessel Time Charter, DAWN 000388 – DAWN 000401.
[55] Exhibit "A", 2017 Master Vessel Time Charter, DAWN 000388 – DAWN 000401.
[56] Exhibit "G", Dawn Corporate Deposition Transcript, 69:23-70:7.
[57] Exhibit "G", Dawn Corporate Deposition Transcript, 175, 189.
[58] Exhibit "G", Dawn Corporate Deposition Transcript, 108:14-17.
[59] Exhibit "E", ENDEAVOR On-Hire Letter, DAWN 000379.
[60] Exhibit "A", 2017 Master Vessel Time Charter, §4.b.

being submitted with this filing. However, it is uncontested that that invoice reflects charges for the days of service for the ENDEAVOR, along with charges for diesel fuel and lube oil. Dawn Invoice No. 10329 does not contain any mark up for a "brokerage fee," and no reference is made on the invoice as being one for broker services.

While the foregoing is conclusive evidence is all that should be needed to grant this Motion, Dawn has also acknowledged:

1. The MVTC was in effect on 28 October 2020;[61]

2. Dawn does not market itself as a broker of third-party vessels,[62] and neither Dawn nor Crosby claim Dawn was acting as an agent for Crosby's fleet or that Dawn received any sort of commission from Crosby for finding business for its fleet;

3. Dawn has no policies, written or otherwise, about what should be done to distinguish to a customer when Dawn is offering to broker a vessel versus when it is chartering a vessel[63] or about explaining to its customers that it would be taking the position that any type of master vessel time charter would not apply to brokering vessels;[64] and

4. Dawn never conveyed to Shore before 28 October 2020 that it would be taking the position that the MVTC would not apply to Dawn's providing the ENDEAVOR for the THOR.[65]

Under these circumstances, and for the further reasons addressed below, the MVTC and its express terms applies to Dawn's work for Shore in this instance, and as Crosby bears fault for the Breakaway Incident due to the unseaworthiness of the ENDEAVOR,[66] Dawn contractually shares liability with Crosby for that unseaworthiness and is obligated to defend and indemnify the Shore Group for the same.

2. **LAW & ARGUMENT**

---

[61] Exhibit "G", Dawn Corporate Deposition Transcript, 42:9-15.
[62] Exhibit "G", Dawn Corporate Deposition Transcript, 55:17-20.
[63] Exhibit "G", Dawn Corporate Deposition Transcript, 86:19-87:7.
[64] Exhibit "G", Dawn Corporate Deposition Transcript, 87:17-88:6.
[65] Exhibit "G", Dawn Corporate Deposition Transcript, 93:16-94:2, 94:12-22.
[66] *See* Motion for Summary Judgment as to Crosby's Entitlement to Limitation of Liability (Rec. Doc. 777-2).

      a.   <u>Summary Judgment Standard</u>

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate when there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. A fact is material if proof of its existence or nonexistence might affect the outcome of the lawsuit under the applicable governing law.[67] A genuine issue of material fact exists if a reasonable factfinder could render a verdict for the nonmoving party.[68]

The party seeking summary judgment has the initial responsibility of informing the court of the basis for its motion and identifying those parts of the record that demonstrate the absence of genuine issues of material fact.[69] If the moving party carries its initial burden, the burden shifts to the nonmoving party to demonstrate the existence of a genuine issue of a material fact.[70] All facts and inferences are construed in the light most favorable to the nonmoving party.[71]

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by pointing out that there is insufficient proof concerning an essential element of the nonmoving party's claim.[72] The motion should be granted if the nonmoving party cannot produce evidence to support an essential element of its claim.[73]

---

[67] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986); S*ossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009); *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000).
[68] *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 252, 106 S. Ct. 2505); *Hamilton v. Segue Software, Inc.*, 232 F.3d at 477.
[69] *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986)).
[70] *Washburn v. Harvey*, 504 F.3d at 508.
[71] *Brumfield v. Hollins*, 551 F.3d at 326 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986)).
[72] *Norwegian Bulk Transport A/S v. International Marine Terminals Partnership*, 520 F.3d 409, 412 (5th Cir. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. at 325, 106 S. Ct. 2548).
[73] *Condrey v. Suntrust Bank of Ga.*, 431 F.3d 191, 197 (5th Cir. 2005).

The application and enforceability of the MVTC is appropriately decided on summary judgment,[74] and for the reasons addressed more fully below, summary judgment should be granted in THOR Interests' favor.

      b. <u>Principals of Maritime Contract Law Apply</u>

Charter party agreements, such as the MVTC in this case, are contracts subject to the general rules of contract law.[75] The U.S. Fifth Circuit has instructed that charters "should be read as a whole, and a court should not look beyond the written language of the contract to determine the intent of the parties."[76] The words used should be given their plain meanings unless the provision is ambiguous,[77] and to the extent possible, all terms used in the contract should be interpreted, without rendering any of them meaningless or superfluous.[78]

Indemnity provisions contained within a maritime contract are also subject to interpretation under the principals of maritime contract law.[79] "[A] contract of indemnity should be construed to cover all losses, damages, or liabilities which reasonably appear to have been within the contemplation of the parties."[80]

Here, a plain reading of the MVTC makes clear that defense and indemnification for the unseaworthiness of the ENDEAVOR was within the contemplation of the parties.

---

[74] *Channette v. Neches Gulf Marine, Inc.*, 440 F. App'x 258 (5th Cir. 2011); *Ray v. Glob. Indus., Ltd.*, No. 04-0816, 2006 WL 305964 (W.D. La. Feb. 8, 2006).
[75] *Marine Overseas Services, Inc. v. Crossocean Shipping Co., Inc.*, 791 F.2d 1227, 1234 (5th Cir. 1986).
[76] *Channette v. Neches Gulf Marine, Inc.*, 440 Fed. App'x 258, 260 (5th Cir. 2011) (quoting *Fontenot v. Mesa Petroleum Co.*, 791 F.2d at 1214).
[77] *Becker v. Tidewater, Inc.*, 586 F.3d at 369; *Corbitt v. Diamond M Drilling Co.*, 654 F.2d 329, 332 (5th Cir. 1981).
[78] *Chembulk Trading, LLC v. Chemex Ltd.*, 393 F.3d 550, 555 (5th Cir. 2004).
[79] *Corbitt v. Diamond M Drilling Co.*, 654 F.2d 329, 332 (5th Cir. 1981).
[80] *Fontenot v. Mesa Petroleum Co.*, 791 F.2d 1207, 1214 (5th Cir. 1986) (quoting C*orbitt v. Diamond M Drilling Co.*, 654 F.2d at 333).

    c. <u>The Master Vessel Time Charter is Applicable and Enforceable</u>

The MVTC is a "binding agreement" that "defines the rights and obligations" of Dawn and Shore in these consolidated matters,[81] and the terms of this "binding agreement" demonstrate in clear, certain and unambiguous terms that the parties intended Dawn to defend and indemnify the Shore Group for the unseaworthiness of the ENDEAVOR.[82]

The MVTC requires defense and indemnification when the loss or damage arises from the unseaworthiness of the chartered Vessel, and as addressed above, Vessel is defined simply as "(a) vessel(s)" Dawn "has…which, from time to time, it commits to the service of others in exchange for a fee,"[83] with no qualification that Dawn be the registered owner of the vessel or that it crew or insure the vessel. Those are terms Dawn wishes to add now to avoid its contractual obligations.

Stated differently, the MVTC does not presume that Dawn owns the vessels covered by the charter. The MVTC defines the "Vessels" as those that Dawn "has," while requiring Dawn to warrant that it also "has the right to possess and charter the Vessel(s) to [Shore]".[84] There are no references to Vessels "owned" by Dawn. In fact and as noted above, neither the term "own" nor "owned" is found within the MVTC,[85] and the MVTC does not limit the term "Vessels" to vessels Dawn crews or insures[86] or those advertised on its website (of which it is also admittedly not the registered owner).[87]

Moreover, Dawn had been using the same on-hire letter form for about a decade before the Breakaway Incident,[88] and as stated above, Dawn has acknowledged that an identical form has

---

[81] Exhibit "A", 2017 Master Vessel Time Charter, §2.
[82] Exhibit "A", 2017 Master Vessel Time Charter, §11.
[83] Exhibit "A", 2017 Master Vessel Time Charter.
[84] Exhibit "A", 2017 Master Vessel Time Charter, DAWN 000388 – DAWN 000401.
[85] Exhibit "A", 2017 Master Vessel Time Charter, DAWN 000388 – DAWN 000401.
[86] Exhibit "G", Dawn Corporate Deposition Transcript, 69:23-70:7.
[87] Exhibit "G", Dawn Corporate Deposition Transcript, 175, 189.
[88] Exhibit "G", Dawn Corporate Deposition Transcript, 108:14-17.

13

always been utilized irrespective of whether Dawn is the registered owner of the vessel to be provided. The on-hire letter similarly makes no reference to the ownership of the vessel being offered. Rather, it is a vessel Dawn is "offering" for "hire" to work with the THOR "subject to availability,"[89] reiterating Dawn's retained right of substitution.[90] In other words, nothing in the On-Hire Letter purports to alter the indemnity provisions of the MVTC.

Dawn should not be permitted to create ambiguity under a contract where none exists,[91] or assume figment terms that would thwart the parties' intentions as specifically set forth in the MVTC. If Dawn had wished to negotiate an agreement not specifically designated as a "master" agreement and carve out to negotiate under a separate contract a "brokerage agreement" with Shore, it could have done so. This is not the case here, so Dawn is obligated to adhere to the contract it negotiated and to defend and indemnify Shore.

That Dawn now seeks to avoid its obligation to defend and indemnify Shore by arguing that it was a broker, rather than a charterer, is disingenuous and defies the express terms of the MVTC. Similar arguments have been made and rejected.[92]

For example, in *Ray v. Global Industries, Ltd.*,[93] the U.S. District Court for the Western District of Louisiana rejected the argument that Gros Consulting was functioning as a broker, as opposed to a charterer, such that the Charter Agreement signed by Gros and Global was not applicable or did not apply to Gros.

---

[89] Exhibit "E", ENDEAVOR On-Hire Letter, DAWN 000379.
[90] Exhibit "A", 2017 Master Vessel Time Charter, §4.b.
[91] *In re Liljeberg Enterprises, Inc.*, 304 F.3d 410, 440 (5th Cir. 2002).
[92] *Ray v. Global Industries, Ltd.*, No. 04 CV 0816, 2006 WL 305964, at *2 (W.D. La. Feb. 8, 2006); B*atiste v. Quality Constr. & Prod., LLC*, 327 F. Supp. 3d 972 (W.D. La. July 9, 2018); see also *Poole v. Elevating Boats, L.L.C.*, 2006-0890 (La. App. 4 Cir. 4/4/07), 956 So. 2d 675, 678, *writ denied*, 2007-0899 (La. 6/1/07), 957 So. 2d 183.
[93] No. 04-0816, 2006 WL 305964, at *2 (W.D. La. Feb. 8, 2006).

In that case, Global had entered into a Charter Agreement with Gros containing certain defense and indemnity provisions. A job order was subsequently issued mobilizing a Global liftboat, the SEA BASS, to go to work for Gros' customer, Offshore Liftboats, which was also referenced specifically on the job order. Suit was filed against Global after an employee of an unrelated entity was injured on the liftboat's gangway. Global sought defense and indemnity from Gros under the terms of the Charter Agreement. Gros argued in response that the terms of the Charter Agreement were inapplicable because it was acting as broker, not a charterer, and alternatively, that the defense and indemnity terms of the Charter Agreement applied to the end-user of the SEA BASS (Offshore Liftboats) and not to Gros. As stated, the district court rejected this argument. The Westen District of Louisiana court "found no ambiguity" in the Charter Agreement, and that Gros, as the "charterer", was obligated to defend and indemnify Global. The court reasoned:

> To accept Kevin Gros Consulting's argument, would cause the Charter Agreement to have no effect at all. That was not the intent of the parties. The Charter Agreement clearly states that Kevin Gros Consulting is the Charterer and that the Charterer will indemnify and defend the Owner, Global. There is a complete absence of language that states that someone else other than Kevin Gros Consulting shall indemnify and defend Global. The Charter Agreement and its provisions are applicable.[94]

<u>The same result is required here.</u>

The MVTC has controlled the business relationship between Dawn and Shore since its execution in 2017. Neither the MVTC nor the On-Hire Letter indicate that Shore should expect Dawn to be considered a "broker" under certain circumstances, or that Dawn anticipated that its defense and indemnity obligations to Shore under the MVTC would be so limited.

---

[94] *Ray v. Glob. Indus., Ltd.*, No. 04-0816, 2006 WL 305964, at *2 (W.D. La. Feb. 8, 2006).

15

While the Court should not have to look to parol evidence, the record shows that under the terms of the MVTC the parties contemplated that vessels other than those registered as owned by Dawn would be chartered to Shore, without morphing Dawn into a broker and negating the terms of the MVTC.

As detailed above, Dawn does not market itself as a broker of third-party vessels,[95] and neither Dawn nor Crosby claim Dawn was acting as an agent for Crosby's fleet or that Dawn received any sort of commission from Crosby for finding business for its fleet. Dawn, likewise, has no policies, written or otherwise, about what should be done to distinguish to a customer when Dawn is offering to broker a vessel versus when it is chartering a vessel[96] or about explaining to its customers that it would be taking the position that any type of master vessel time charter would not apply to brokering vessels.[97]

To the contrary, Dawn's Corporate Representative testified that Dawn had provided vessels for Shore through an identical process since the execution of the MVTC in 2017,[98] that irrespective of whether or not Dawn was actually the registered owner of the vessel to be performing the work the same on-hire letter would be issued,[99] and that Dawn never conveyed to Shore before 28 October 2020 that it would be taking the position that the MVTC would not apply to Dawn's providing the ENDEAVOR for THOR.[100]

As in the *Ray* case, to accept Dawn's argument here, would cause the MVTC to have no effect at all, and that result should not be permitted. The MVTC between Dawn and Shore is clear,

---

[95] Exhibit "G", Dawn Corporate Deposition Transcript, 55:17-20.
[96] Exhibit "G", Dawn Corporate Deposition Transcript, 86:19-87:7.
[97] Exhibit "G", Dawn Corporate Deposition Transcript, 87:17-88:6.
[98] Exhibit "G", Dawn Corporate Deposition Transcript, 67:24-68:18, 106:7-13.
[99] Exhibit "E", ENDEAVOR On-Hire Letter, DAWN 000379; see also e.g. Exhibit "H", Additional On-Hire Letters. The only distinction between an on/off hire letter when Dawn is purportedly brokering versus chartering is simply that the name of the vessel would not be one of Dawn's advertised fleet. Exhibit "__", Dawn Corporate Deposition Transcript, 80:23-81:3, 84:22-85:2.
[100] Exhibit "G", Dawn Corporate Deposition Transcript, 93:16-94:2, 94:12-22.

certain, and unambiguous. Under its express terms, Dawn is required to defend and indemnify the Shore Group for claims arising from the unseaworthiness of the ENDEAVOR and Shore is entitled to summary judgment on that point and in its favor.

3. **CONCLUSION**

The MVTC unequivocally obligates Dawn to defend and indemnify the Shore Group for the unseaworthiness of the ENDEAVOR. It is unquestionable that the parties intended this result, and for the reasons addressed above, Shore prays that this Motion be granted and that Dawn be required to defend and indemnify the Shore Group in these above-captioned and consolidated cases.

Respectfully Submitted:

*/s/ Gavin H. Guillot*
Gavin H. Guillot, T.A. (#31760)
Salvador J. Pusateri (#21036)
Aaron B. Greenbaum (#31752)
Meredith W. Blanque (#32346)
Jacob A. Altmyer (#36352)
Jonathan D. Parker (#35275)
**PUSATERI, JOHNSTON, GUILLOT & GREENBAUM, LLC**
1100 Poydras Street, Suite 2250
New Orleans, LA 70163
Telephone: 504-620-2500
Facsimile: 504-620-2510
Gavin.Guillot@pjgglaw.com
Salvador.Pusateri@pjgglaw.com
Aaron.Greenbaum@pjgglaw.com
Meredith.Blanque@pjgglaw.com
Jacob.Altmyer@pjgglaw.com
Jonathan.Parker@pjgglaw.com
**ATTORNEYS FOR MODERN AMERICAN RAILROAD SERVICES, L.L.C., AND SHORE OFFSHORE SERVICES, LLC**