UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ALL COAST, LLC<br><br>VERSUS<br><br>SHORE OFFSHORE SERVICES, LLC | CIVIL ACTION NO: 21-258<br>c/w 21-337, 21-464, 21-822, 21-1968, 21-1969, 21-1982, 21-1981, 21-2075, 21-2227, 23-3220<br><br>SECTION "A"<br>HON. JAY C. ZAINEY<br><br>MAGISTRATE: (3)<br>HON. EVA J. DOSSIER<br><br>APPLIES TO ALL CASES |

**STATEMENT OF UNCONTESTED MATERIAL FACTS**

NOW INTO COURT, through undersigned counsel, comes Shore Offshore Services, LLC ("Shore"), and submits the following Statement of Uncontested Material Facts in accordance with Rule 56 of the Federal Rules of Civil Procedure and in support of its Motion for Summary Judgment regarding the Enforcement of the Dawn Master Vessel Time Charter. Entitlement to Exoneration from or Limitation of Liability.

1. Dawn Services, LLC ("Dawn") and Shore entered into a Master Vessel Time Charter on 9 June 2017 (the "MVTC").[1]

2. Pursuant to the MVTC, Shore would from time to time secure the services of "(a) vessel(s)" from Dawn in exchange for a fee.[2]

3. The MVTC is a "binding agreement".[3]

4. The terms of the MVTC "control and govern the performance of any and all work under Charter Orders, oral or written".[4]

---

[1] Exhibit "A", 2017 Dawn Master Vessel Time Charter, DAWN 000388 – DAWN 000401.
[2] Exhibit "A", 2017 Master Vessel Time Charter.
[3] Exhibit "A", 2017 Master Vessel Time Charter, §1.a.
[4] Exhibit "A", 2017 Master Vessel Time Charter, §1.a.

5. The terms of the MVTC "define the rights and obligations" of the parties.[5]

6. Charter orders received under the MVTC were oral and then confirmed by Dawn via an on-hire letter sent to Shore by e-mail.[6]

7. Charter orders were "deemed to be executed…upon the provision of the Vessel".[7]

8. Under the MVTC, "Vessel" was defined as "(a) vessel(s)" Dawn "has…which, from time to time, it commits to the service of others in exchange for a fee."[8]

9. The MVTC provided Dawn "the right from time to time during the term of this Charter to substitute a vessel for the Vessel, provided that any such substitution shall require [Dawn] to provide a vessel that has the same functionality and horsepower as the Vessel."[9]

10. The THOR is a non-self-propelled derrick barge[10] owned by Modern American Railroad Services, LLC ("MARS") and was on 28 October 2020 bareboat chartered by Shore.[11]

11. Dawn was familiar with the work the THOR was performing in October 2020.[12]

12. No vessels in Dawn's advertised fleet were available or capable of providing the type of services required by the THOR.[13]

13. Dawn "found" Crosby, "contacted the vessel owners, explained to them what Shore was looking for, and when all parties agreed [to the work to be provided], they went to work for Shore."[14]

---

[5] Exhibit "A", 2017 Master Vessel Time Charter, §2.
[6] Exhibit "G", Dawn Corporate Deposition Transcript, 62:6-21, 63:8-16.
[7] Exhibit "A", 2017 Master Vessel Time Charter, §1.b.
[8] Exhibit "A", 2017 Master Vessel Time Charter.
[9] Exhibit "A", 2017 Master Vessel Time Charter, §4.b.
[10] Exhibit "B", THOR Spec Sheet and Vessel Particulars, THOR 000002 – THOR 000005.
[11] Civil Action No. 21-464, Rec. Doc. 1.
[12] Exhibit "G", Dawn Corporate Deposition Transcript, 57:1-8.
[13] Exhibit "G", Dawn Corporate Deposition Transcript, 248:7-249:12.
[14] Exhibit "G", Dawn Corporate Deposition Transcript, 39:1-25. Dawn had no written contracts in place with Crosby as of the date of the incident. *See* Exhibit "G", Dawn Corporate Deposition Transcript, 222:16-223:5.

14. Dawn has provided vessels for Shore through this same process since the execution of the MVTC in 2017.[15]

15. Dawn issued the same on-hire letter to Shore irrespective of whether Dawn was actually the registered owner of the vessel to be performing the work.[16]

16. The ENDEAVOR went to work assisting the THOR on 20 October 2020.[17]

17. Dawn issued an On-Hire Letter to Shore for the ENDEAVOR on 22 October 2020.[18]

18. Dawn invoiced Dawn Invoice No. 10329[19] to Shore for the hire of the ENDEAVOR.

19. Dawn Invoice No. 10329 reflects charges the days of service for the ENDEAVOR, including for the services on 28 October 2025.

20. Dawn Invoice No. 10329 reflects charges for diesel fuel and lube oil.

21. Dawn Invoice No. 10329 does not contain any mark up for a "brokerage fee."

22. Dawn Invoice No. 10329 does not contain any reference to broker services.

23. Dawn had no written contract in place with Crosby[20] but remained involved and served as a "pass through of information" to Crosby with respect to the vessel's ETA to a jobsite, additional costs for logistical delays, a third-party vessel's need for fuel or lube replacement, and crew changes.[21]

---

[15] Exhibit "G", Dawn Corporate Deposition Transcript, 67:24-68:18, 106:7-13.
[16] Exhibit "E", ENDEAVOR On-Hire Letter, DAWN 000379; see also e.g. Exhibit "H", Additional On-Hire Letters. The only distinction between an on/off hire letter when Dawn is purportedly brokering versus chartering is simply that the name of the vessel would not be one of Dawn's advertised fleet. Exhibit "G", Dawn Corporate Deposition Transcript, 80:23-81:3, 84:22-85:2.
[17] Exhibit "I", ENDEAVOR Deck Log, 20 Oct. 2020, CROSBY 000446.
[18] Exhibit "E", ENDEAVOR On-Hire Letter, DAWN 000379.
[19] Dawn Invoice No. 10329 was marked as CONFIDENTIAL when produced through discovery, such that it is not being submitted with this filing.
[20] Exhibit "G", Dawn Corporate Deposition Transcript, 222:16-223:5.
[21] Exhibit "G", Dawn Corporate Deposition Transcript, 204:19-210:5.

24. Dawn's Vice President, Mike Grace, included the ENDEAVOR on Dawn's Morning Reports (similar to vessel logs), noting "what boats are working" and "where they're working."[22]

25. Dawn was communicating with shoreside representatives of Crosby and Shore in the days leading up to and the day of the hurricane.[23]

26. ENDEAVOR towed the THOR to Port Fourchon.[24]

27. The THOR arrived at Martin Energy Dock No. 16 on the night of 26 October 2020.[25]

28. The ENDEAVOR remained alongside the THOR as she was made up to the dock overnight on 26 October.[26]

29. At approximately 0745 hours on 27 October, the ENDEAVOR left the THOR before the arrival of the storm to resupply and take on groceries at Crosby's dock.[27]

30. The ENDEAVOR returned to the Martin dock to stand by alongside the THOR and assist the THOR through the forecasted storm on the morning of 28 October.[28]

31. A Motion for Summary Judgment regarding Crosby's Entitlement to Exoneration from and Limitation of Liability is pending as Rec. Doc. 777-2),[29] wherein it is alleged that the unseaworthy conditions of the ENDEAVOR were causes of the Breakaway Incident, and those conditions were within the privity or knowledge of Crosby.

---

[22] Exhibit "G", Dawn Corporate Deposition Transcript, 238:18-22.
[23] Exhibit "G", Dawn Corporate Deposition Transcript, 266:13-15, 278:16-279:4 (on 25 October 2020, Danos texted Grace and asked "What are y'all's t[h]ough[t]s on CROSBY ENDEAVOR and THOR for the storm."); Exhibit "F", Sims Deposition Transcript, 96:18-98:1.
[24] Exhibit "I", ENDEAVOR Deck Logs, 26 Oct. 2020, CROSBY 000452.
[25] Exhibit "J", THOR Daily Progress Report, 26 Oct. 2020, THOR 001036 – THOR 001041; *see also* Exhibit "G", ENDEAVOR Deck Logs, 26 Oct. 2020, CROSBY 000452.
[26] Exhibit "I", ENDEAVOR Deck Logs, 27 Oct. 2020, CROSBY 000453.
[27] Exhibit "I", ENDEAVOR Deck Logs, 27 Oct. 2020, CROSBY 000453.
[28] Exhibit "N", Plaisance Deposition Transcript, 273:6-274:14; Exhibit "O", Danos Deposition Transcript, 147:23-148:22, 150:4-9; Exhibit "L", Everett Deposition Transcript, 444:19-22.
[29] The Memorandum in Support of the referenced Motion for Summary Judgment regarding Crosby's Entitlement to Exoneration from and Limitation of Liability exceeded the page limit allowed by the local rules, such that this reference is to Rec. Doc. 777, which is the Motion for Leave.

32. The THOR with the ENDEAVOR tied to her made contact with other vessels who are claimants here, first the HARVEY SEAS and then the MR. COLBY, where both vessels were moored to dolphins owned by C-Port, LLC across the bayou from the Martin dock.[30]

33. Crosby Operations Manager, Ivy Danos, called Dawn Vice President, Mike Grace, while "they were floating down the canal," and advised Dawn that "the THOR had broken free and that the ENDEAVOR wasn't going to be able to stop it, with the high winds."[31]

34. After that initial call, Crosby and Dawn talked "about the retrieval and going to get the barge."[32]

35. On 25 February 2021, Shore tendered a demand for defense, indemnity and additional insured coverage to Dawn.[33]

36. Section 11 of the MVTC provides, in pertinent part:

> OWNER [Dawn] hereby agrees to defend, indemnify and hold harmless CHARTERER [Shore], its affiliated companies (specifically including Shore Construction, LLC, and Modern American Recycling Services, Inc.), its contractors and subcontractors, its joint venturers (specifically including Bisso Marine, LLC), and the insurers, officers, directors, owners, employees (even if alleged to held to be the borrowed employee or another entity), of all of the foregoing (collectively referred to as "CHARTERER GROUP") from and against any and all demands, liabilities, claims, suits, judgments, proceedings, orders, causes of action, damages, losses, costs and expenses (including reasonable attorneys' fees) on account of any property damage or loss of property of CHARTERER [Shore] GROUP (including, but not limited to, the loss of any vessel towed by OWNER [Dawn] hereunder, damage to any vessel towed by OWNER [Dawn] hereunder, or damage caused by any vessel towed by OWNER [Dawn] hereunder) when such loss or damage arises from the negligence of OWNER [Dawn] or any member of OWNER [Dawn] GROUP (defined below) or the unseaworthiness of the Vessel.
> ….
>
> OWNER [Dawn] hereby agrees defend, indemnify and hold harmless CHARTERER [Shore] GROUP from and against any and all demands, liabilities,

---

[30] Video evidence shows the ENDEAVOR coupled to THOR at the point of contact with the HARVEY SEAS and shows direct contact by the ENDEAVOR with the MR. COLBY.
[31] Exhibit "G", Dawn Corporate Deposition Transcript, 287:8-23.
[32] Exhibit "G", Dawn Corporate Deposition Transcript, 288:12:15.
[33] Exhibit "L", Shore Demand Letter, 25 Feb. 2021.

claims, suits, judgments, proceedings, orders, causes of action, damages, losses, costs and expenses (including reasonable attorneys' fees) on account of bodily injury, illness, or death to any member of CHARTERER [Shore] GROUP, when such loss or damage arises from the negligence of OWNER [Dawn] or any member of OWNER [Dawn] GROUP or the unseaworthiness of the Vessel.

OWNER [Dawn] hereby agrees defend, indemnify and hold harmless CHARTERER [Shore] GROUP from and against any and all demands, liabilities, claims, suits, judgments, proceedings, orders, causes of action, damages, losses, costs and expenses (including reasonable attorneys' fees) on account of any harm to any Third Parties (defined as any person or entity other than a member of CHARTERER [Shore] GROUP, OWNER [Dawn], or OWNER [Dawn] GROUP), whether such harm be on account of bodily injury, illness, or death or property damage, when such loss or damage arises from the negligence or fault of OWNER [Dawn] or any member of OWNER [Dawn] GROUP or the unseaworthiness of the Vessel.[34]

37. In the MVTC, "OWNER" is defined as Dawn, and "CHARTERER" is defined as Shore. "CHARTERER GROUP" includes Shore's contractors and subcontractors, including MARS, along with their employees (even if alleged to held to be the borrowed employee or another entity).[35]

38. In the MVTC, "OWNER GROUP" includes any "employee (even if alleged to held to be the borrowed employee or another entity), agent, representative, owner, or director of OWNER [Dawn]."[36]

39. Section 10 of the MVTC required Dawn to obtain insurance coverage to support these indemnity obligations and to have such policies of insurance name Shore as an additional insured with a waiver of subrogation in favor of Shore's group.[37]

40. On 25 February 2021, Shore demanded that Dawn defend, indemnify, and hold harmless the Shore Group, including MARS, "for all claims…costs and expenses (including

---

[34] Exhibit "A", 2017 Master Vessel Time Charter, §11.
[35] Exhibit "A", 2017 Master Vessel Time Charter.
[36] Exhibit "A", 2017 Master Vessel Time Charter.
[37] Exhibit "A", 2017 Master Vessel Time Charter, §10.

reasonable attorneys' fees) on account of the property damage and/or alleged personal injuries at issue arising from Dawn's negligence or fault, the negligence or fault of its agents and/or representatives, and/or the unseaworthiness of the ENDEAVOR."[38]

41. On 26 March 2021, Dawn's liability insurer, Mitsui Sumitomo Insurance USA Inc., rejected Shore's tender.[39]

42. There are no references to Vessels "owned" by Dawn. In fact, neither the term "own" nor "owned" is found within the MVTC.[40]

43. The MVTC does not limit its terms to vessels Dawn crews or insures[41]

44. The MVTC does not limit its terms to vessels advertised on Dawn's website.[42]

45. The MVTC does not limit its terms to vessels of which it is the registered owner.[43]

46. Dawn has been using the same on-hire letter form for 10-12 years.[44]

47. The on-hire letter makes no reference to the ownership of the vessel Dawn offered.[45]

48. The ENDEAVOR On-Hire Letter is "offering" for "hire" to work with the THOR "subject to availability."[46]

49. Dawn admits the MVTC was in effect on 28 October 2020;[47]

50. Dawn does not market itself as a broker of third-party vessels.[48]

---

[38] Exhibit "L", Shore Demand Letter, 25 Feb. 2021.
[39] Exhibit "M", Mitsui Rejection Letter, 26 March 2021.
[40] Exhibit "A", 2017 Master Vessel Time Charter, DAWN 000388 – DAWN 000401.
[41] Exhibit "G", Dawn Corporate Deposition Transcript, 69:23-70:7.
[42] Exhibit "G", Dawn Corporate Deposition Transcript, 175, 189.
[43] Exhibit "G", Dawn Corporate Deposition Transcript, 175, 189.
[44] Exhibit "G", Dawn Corporate Deposition Transcript, 108:14-17.
[45] Exhibit "E", ENDEAVOR On-Hire Letter, DAWN 000379.
[46] Exhibit "E", ENDEAVOR On-Hire Letter, DAWN 000379.
[47] Exhibit "G", Dawn Corporate Deposition Transcript, 42:9-15.
[48] Exhibit "G", Dawn Corporate Deposition Transcript, 55:17-20.

51. Dawn has no policies, written or otherwise, about what should be done to distinguish to a customer when Dawn is offering to broker a vessel versus when it is chartering a vessel.[49]

52. Dawn has no policies, written or otherwise, about what should be done to explaining to its customers that it would be taking the position that any type of master vessel time charter would not apply to brokering vessels.[50]

53. Dawn never conveyed to Shore before 28 October 2020 that it would be taking the position that the MVTC would not apply to Dawn's providing the ENDEAVOR for the THOR.[51]

Respectfully Submitted:

*/s/ Gavin H. Guillot*
Gavin H. Guillot, T.A. (#31760)
Salvador J. Pusateri (#21036)
Aaron B. Greenbaum (#31752)
Meredith W. Blanque (#32346)
Jacob A. Altmyer (#36352)
Jonathan D. Parker (#35275)
**PUSATERI, JOHNSTON, GUILLOT & GREENBAUM, LLC**
1100 Poydras Street, Suite 2250
New Orleans, LA 70163
Telephone: 504-620-2500
Facsimile: 504-620-2510
Gavin.Guillot@pjgglaw.com
Salvador.Pusateri@pjgglaw.com
Aaron.Greenbaum@pjgglaw.com
Meredith.Blanque@pjgglaw.com
Jacob.Altmyer@pjgglaw.com
Jonathan.Parker@pjgglaw.com
**ATTORNEYS FOR MODERN AMERICAN RAILROAD SERVICES, L.L.C., AND SHORE OFFSHORE SERVICES, LLC**

---

[49] Exhibit "G", Dawn Corporate Deposition Transcript, 86:19-87:7.
[50] Exhibit "G", Dawn Corporate Deposition Transcript, 87:17-88:6.
[51] Exhibit "G", Dawn Corporate Deposition Transcript, 93:16-94:2, 94:12-22.