UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| ALL COAST, LLC | * | CIVIL ACTION NO. 21-258 Lead Case, |
| | * | c/w 21-337, 21-464, 21-822, 21-1968, |
| | * | 21-1969, 21-1981, 21-1982, 21-2075 |
| | * | and 21-2227 |
| | * | |
| VERSUS | * | JUDGE JAY C. ZAINEY |
| | * | |
| SHORE OFFSHORE SERVICES, LLC; | * | MAGISTRATE JUDGE KAREN |
| MODERN AMERICAN RAILROAD | * | WELLS ROBY |
| SERVICES, L.L.C.; and MARTIN | * | |
| ENERGY SERVICES, LLC | * | Applies to: ALL CASES |
| | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**DAWN SERVICES, L.L.C.'S MEMORANDUM IN SUPPORT OF MOTION IN LIMINE TO EXCLUDE CERTAIN EXPERT OPINIONS OF CAPTAIN GREGORY DALEY**

Defendant, Dawn Services, L.L.C. ("Dawn") files this motion in limine to exclude Opinion #2 of Captain Gregory Daley, an expert for limitation petitioners/third-party plaintiffs Modern American Railroad Services, L.L.C. ("MARS") and Shore Offshore Services, LLC ("Shore"). Captain Daley's opinions regarding Dawn are improper under Federal Rule of Evidence 702 and cannot assist the trier of fact because (i) he opines upon a party's "belief," (ii) he opines on facts that are not in dispute, and (iii) he opines on an ultimate issue.

**I.      BACKGROUND**

During Hurricane Zeta, the derrick barge THOR broke loose from the Martin Energy Services Dock No. 16 in Port Fourchon and floated up Bayou Lafourche, allegedly damaging a number of vessels and other property along the way. MARS and its affiliate Shore own and operate the THOR, respectively.

The THOR is a construction and heavy lift derrick barge commonly used for decommissioning work in the Gulf. Because it is non-self-propelled, the THOR requires the assistance of an offshore tug to tow it and handle its anchors. In October of 2020, the MARS TITAN, an anchor handling tug ("AHT") owned by MARS and operated by Shore, was assigned to work with the THOR. On October 17, 2020, Shore's Director of Projects, Cody Sims, contacted Dawn advising that the MARS TITAN had broken down and requesting a replacement AHT for the THOR:

```
 3     Q.   And you would ask for something
 4   bigger to come out there and work with the THOR,
 5   didn't you?
 6     A.   I had asked for a comparable
 7   replacement tug to the TITAN.
 8     Q.   And would you agree that the Crosby
 9   ENDEAVOR is a comparable replacement tug for --
10   to the TITAN?
11     A.   Yes.
```

Dawn operates a fleet of offshore tugs and also brokers tugs owned and operated by third parties. Dawn did not have available within its own fleet a tug that was satisfactory to Shore, so Dawn brokered Crosby Tugs, LLC's ("Crosby") M/V CROSBY ENDEAVOR.

The ENDEAVOR was deployed and began working with THOR in the Gulf beginning October 20, 2020. Several days later, as Hurricane Zeta began to form in the Gulf, the decision was made by Shore's shoreside managers and/or the crew of the THOR to demobilize the THOR from its offshore work site to Port Fourchon—a curious decision given the storm's projected path directly over Port Fourchon. The storm intensified, making landfall over Port Fourchon as a hurricane. The THOR's mooring lines parted during the storm and the barge set adrift.

MARS and Shore filed a Limitation Action and asserted third party demands against, and Rule 14(c) tenders to, Dawn on a variety of theories. In particular, MARS and Shore claim that Dawn failed to provide a tug capable of holding the THOR to the dock during Hurricane Zeta. Dawn's position is that pursuant to Shore's specific request, it brokered the ENDEAVOR as an AHT to assist the THOR in its offshore decommissioning work; Shore never requested that Dawn broker or charter a tug capable of assisting the THOR at the dock during a hurricane. Any subsequent use of the ENDEAVOR for harbor assistance was beyond the scope for which Dawn brokered the ENDEAVOR. The parties' testimony, communications, and other documents will provide the factfinder with evidence regarding what Dawn and Shore agreed with respect to the ENDEAVOR. Expert testimony on this issue is neither necessary nor appropriate.

## II.     Argument

Federal Rule of Evidence 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
> **(a)** the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> **(b)** the testimony is based on sufficient facts or data;
> **(c)** the testimony is the product of reliable principles and methods; and
> **(d)** the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702. "Expert testimony must not only meet the criteria of Rule 702, but also must be reliable and relevant to the matter at issue, to be admissible." *Hamidah v. PC Baywood, LLC*, CV 20-2253, 2022 WL 4949025, at *1 (E.D. La. Oct. 4, 2022) (Zainey, J.).

MARS and Shore have submitted the expert report of Captain Gregory Daley in support of their claim against Dawn. Captain Daley states that he has been qualified as an expert in Marine Operations, Marine Safety, Marine Navigation, and Marine Regulations, and he renders numerous

opinions in his report. This motion does not challenge Captain Daley's qualifications or methodology.[1] The deficiencies in Captain Daley's opinions with respect to Dawn are much more fundamental; namely, those opinions cannot help determine a fact in issue.

Captain Daley's Opinion #2 is produced below:

> OPINION 2 – Dawn Failed to Provide an Adequate Tug and Failed to Warn That the Tug Provided Was Inadequate
>
> In my opinion, Shore believed Dawn chartered the M/V Crosby Endeavor for the purpose of towing, running anchors, and assisting the D/B THOR at the dock. The M/V Crosby Endeavor was not powerful enough to assist in its side tie configuration at the dock. The tug's bow was not designed to push on the D/B THOR. Dawn failed to notify Shore that the tug was not capable of assisting by keeping the D/B THOR on the dock. Dawn failed to broker a vessel able to perform its required tasks.

*See* excerpt of Daley Report, Exhibit 1 hereto, at p.82

Each part of Captain Daley's Opinion #2 is improper. First, Captain Daley gives an opinion about what "Shore **believed**." *Id*. (emphasis added). Whether Shore thought it was chartering the ENDEAVOR, and whether Shore intended the ENDEAVOR for dockside assistance to THOR, are facts that do not require any expertise to resolve. "'[E]xpert testimony on matters which a jury is capable of understanding and deciding without an expert's help should be excluded.'" *Shawler v. Ergon Asphalt & Emulsions, Inc.*, 15-2599, 2016 WL 1019121, at *11 (E.D. La. Mar. 15, 2016), aff'd sub nom. *Shawler v. Big Valley, L.L.C.*, 728 Fed.Appx. 391 (5th Cir.2018) (quoting *Jarrow v. Cupit*, No. 99-3539, 2000 WL 1537989, at *2 (E.D. La. Oct. 17, 2000) (Barbier, J.)).

The Fifth Circuit has explained that "[t]here is no more certain test for determining when experts may be used than the common sense inquiry whether the untrained layman would be qualified to determine intelligently and to the best degree the particular issue without

---

[1] Dawn does not concede that Captain Daley's qualifications or methodology are appropriate, but rather reserves those challenges for trial in the event he is permitted to testify.

-4-

enlightenment from those having a specialized understanding of the subject involved in the dispute." *Vogler v. Blackmore*, 352 F.3d 150, 156 n.5 (5th Cir. 2003) (quotation omitted). Did Shore ask Dawn to procure a tug sufficient for the task of holding the THOR dockside during a hurricane? Shore's representatives have testified in depositions about their own beliefs and will be crossed on that testimony at trial. Evaluating this issue does not require resort to "scientific, technical, or other specialized knowledge." *See* Fed. R. Evid. 704. Allowing Captain Daley to opine on what Shore subjectively believed or expected about its arrangement with the ENDEAVOR does nothing more than place an improper thumb on the scale of witness credibility. This is not the expert function and this type of expert testimony is inadmissible. *See Scalia v. Reliance Tr. Co.*, No. 17-CV-4540 (SRN/ECW), 2021 WL 795270, at *25 (D. Minn. Mar. 2, 2021) ("'Expert testimony on the intent, motives, or states of mind of corporations ... ha[s] no basis in any relevant body of knowledge or expertise' and accordingly experts 'may not proffer an opinion relating to what individuals [within a company or agency] thought with respect to certain documents or about their motivations.' Thus, although an expert may testify to what a party did, expert testimony that speculates as to a party's 'purpose or motivation,' what the party 'knew or thought,' and what a party 'would have done' is inadmissible.") (quoting *In re ResCap Liquidating Tr. Litig.*, 432 F. Supp. 3d 902, 944 (D. Minn. 2020)) (internal citations omitted).

   Second, Captain Daley's Opinion #2 recites that the ENDEAVOR was not powerful enough to provide dockside assistance to the THOR. He also recites that Dawn did not tell Shore that the ENDEAVOR was incapable of giving this assistance. But neither point is contested. Crosby, the AHT's owner, has acknowledged the ENDEAVOR's dockside limitations. Dawn readily admits it did not weigh in regarding the ENDEAVOR's capabilities in this respect, because it was never asked to provide a harbor assist tug to hold the THOR on the dock during the storm. The issue in

dispute, therefore, is not whether the ENDEAVOR was capable of holding the THOR on the dock, but rather whether Shore ever requested that Dawn or Crosby provide a tug capable of doing so. Because the facts regarding the ENDEAVOR's capabilities are not disputed, Captain Daley's expertise does not "help the trier of fact to understand the evidence or to determine a fact in issue."

Lastly, Captain Daley opines that Dawn "failed to broker a vessel able to perform its required tasks." Again, Dawn does not dispute that it did not broker a tug capable of holding a 370-foot derrick barge to a dock during Hurricane Zeta. Dawn *does dispute* whether that task was "required." It becomes clear that this component of Captain Daley's opinion is a circular outgrowth of other impermissible opinion: the "required tasks" according to Daley are based upon what Daley says Shore "believed" those tasks were. His opinion is doubly tainted: (i) it depends on Shore's belief, and (ii) it opines on an ultimate issue between Shore, MARS, and Dawn regarding the nature and terms of the parties' agreement, thereby "cross[ing] into the realm of legal conclusions which are reserved for the trier of fact." *Shawler v. Ergon Asphalt & Emulsions, Inc.*, 15-2599, 2016 WL 1019121, at *10 (E.D. La. Mar. 15, 2016), *aff'd sub nom. Shawler v. Big Valley, L.L.C.*, 728 Fed. Appx. 391 (5th Cir. 2018).

### III.  Conclusion

Every component of Captain Daley's Opinion #2 is objectionable. The opinion fails, categorically, to assist the trier of fact in any permissible way. To summarize:

| Opinion | Objection |
|---|---|
| "In my opinion, Shore believed Dawn chartered the M/V Crosby Endeavor for the purpose of towing, running anchors, and assisting the D/B THOR at the dock." | Shore's belief is not a proper subject for expert testimony. |
| "The M/V Crosby Endeavor was not powerful enough to assist in its side tie configuration at the dock. The tug's bow was not designed to push on | These are not facts in issue. There is no dispute. |

| | |
|---|---|
| the D/B THOR. Dawn failed to notify Shore that the tug was not capable of assisting by keeping the D/B THOR on the dock." | |
| "Dawn failed to broker a vessel able to perform its required tasks." | This opinion hinges upon Shore's belief about the tasks required and opines on ultimate issues of contract formation and interpretation. |

The Court should grant Dawn's motion in limine and exclude Captain Daley from testifying regarding his Opinion #2 in its entirety.

Respectfully submitted,

*/s/   David L. Reisman*
David L. Reisman, T.A. (Bar #21833)
Raymond T. Waid (Bar #31351)
Lance Bullock (Bar #38519)
LISKOW & LEWIS
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
Telephone: (504) 581-7979
dreisman@liskow.com
rwaid@liskow.com
lbullock@liskow.com

**Attorneys for Dawn Services, L.L.C.**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 28th day of October 2025, a copy of the foregoing pleading was served via the court's CM/ECF system on all counsel of record.

*/s/ David L. Reisman*
David L. Reisman, T.A. (Bar #21833)
