Case 2:21-cv-00258-JCZ-EJD   Document 784-6   Filed 10/28/25   Page 1 of 7

30(b)(6) Deposition of Dawn Services, L.L.C. through Michael W. Grace, Jr.
All Coast, LLC v. Shore Offshore Services, LLC

Page 1

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

```
ALL COAST, LLC      *   CIVIL ACTION
                    *   NO. 21-258, C/W 21-337,
                    *   21-464, 21-822, 21-1968,
                    *   21-1969, 21-1982,
VERSUS              *   21-1981, 21-2075,
                    *   21-2227
                    *
                    *   SECTION "A"
SHORE OFFSHORE      *   HON. JAY C. ZAINEY
SERVICES, LLC       *   MAGISTRATE: (4)
                    *   HON. KAREN WELLS ROBY
                    *
                    *   APPLIES TO ALL CASES
```

RULE 30(b)(6)
DEPOSITION OF
DAWN SERVICES, L.L.C

   DAWN SERVICES, L.L.C., through its representative, Michael W. Grace, Jr., Vice-President, Dawn Services, L.L.C., 851 MacArthur Avenue, Harvey, Louisiana 70058, taken in person and via ZOOM Videoconference, in the offices of Liskow & Lewis, 701 Poydras Street, Suite 5000, New Orleans, Louisiana 70139, on Wednesday, the 24th day of May, 2023.

APPEARANCES: (VIA ZOOM)

   ARNOLD & ITKIN, LLP
   (By:  John G. Grinnan, Jr., Esquire)
   6009 Memorial Drive
   Houston, Texas 77007

**EXHIBIT 4**

Case 2:21-cv-00258-JCZ-EJD   Document 784-6   Filed 10/28/25   Page 2 of 7

30(b)(6) Deposition of Dawn Services, L.L.C. through Michael W. Grace, Jr.
All Coast, LLC v. Shore Offshore Services, LLC

Page 249

1     A     Shore needed something done.
2     Q     Okay.
3     A     So it's not necessarily that our
4  boats weren't available.  It's just, our boats
5  maybe weren't available to do that certain
6  task.
7     Q     Okay, gotcha.
8           MR. REISMAN:
9               Available or capable?
10          THE WITNESS:
11              Capable.  Capable of doing that
12      task.
13 EXAMINATION BY MR. ALTMYER:
14    Q     For instance, when we're talking
15 about running anchors?
16    A     Running anchors or just the THOR,
17 as you had said earlier, is a big barge.
18    Q     Yeah, yeah, yeah.
19    A     And at the time, we didn't have a
20 boat big enough to go run anchors and tow the
21 THOR, so that's why we would go broker.
22    Q     Understood.  I had asked some
23 general earlier about just what Dawn's role as
24 a broker is and what type of communications it
25 would receive from a third-party vessel owner

Case 2:21-cv-00258-JCZ-EJD   Document 784-6   Filed 10/28/25   Page 3 of 7

30(b)(6) Deposition of Dawn Services, L.L.C. through Michael W. Grace, Jr.
All Coast, LLC v. Shore Offshore Services, LLC

Page 266

1   at the sea buoy. Thanks." And then your
2   signature block, right?
3       A    Yes.
4       Q    Okay. This is referring to the
5   LA MADONNA and the LA ELITE meeting THOR at
6   the sea bayou, so they could serve as the tail
7   tugs to bring the THOR into Port Fourchon to
8   seek safe harbor --
9       A    Right.
10      Q    -- during Hurricane Zeta, right?
11      A    Right.
12      Q    Okay.
13      A    And when I said I spoke to the
14  CROSBY ENDEAVOR, it would have been Ivy Danos
15  or somebody shoreside at Crosby.
16      Q    Okay, gotcha.
17      A    And when I say I have the LA
18  COMMANDER available, it would have been
19  Louisiana International has a boat available,
20  if they needed an additional tug.
21      Q    All right. What I was going to ask
22  about is "The two tugs plan on meeting up with
23  THOR around 2100 tonight at the sea buoy."
24  That's you just conveying an ETA that you had
25  gotten from Louisiana International Marine to

Case 2:21-cv-00258-JCZ-EJD   Document 784-6   Filed 10/28/25   Page 4 of 7

30(b)(6) Deposition of Dawn Services, L.L.C. through Michael W. Grace, Jr.
All Coast, LLC v. Shore Offshore Services, LLC

Page 272

1    Q    Yeah.
2    A    Shore -- Shore's vessel, the MARS
3    TITAN, wasn't coming back to work, and Shore
4    wanted a vessel similar in size to the Titan,
5    so I had reached out to Crosby about Shore's
6    request, about using -- if they had a vessel
7    available, would they be interested in going
8    to work for Shore.  And so, at some point,
9    Kurt Crosby reached out to Tommy Gibilterra to
10   discuss everything, and Tommy called me and
11   said Crosby is going to send out the ENDEAVOR,
12   and so that's how that all got started.
13   Q    Okay.  I'll show you and mark it as
14   "Exhibit 145."
15        MR. REISMAN:
16            142, right?  Did I miss one?
17   EXAMINATION BY MR. ALTMYER:
18   Q    Oh, 142.  I jumped ahead on the
19   exhibit list.  "Exhibit 142," and it's going
20   to be Dawn 227 to 228.  If you could review
21   that real quick.  Your name's at the top of
22   that, right?  This would have been an email
23   exchange that you would have printed out?
24   A    Yes.
25   Q    Okay.  Looking at this, is this the

Case 2:21-cv-00258-JCZ-EJD   Document 784-6   Filed 10/28/25   Page 5 of 7

30(b)(6) Deposition of Dawn Services, L.L.C. through Michael W. Grace, Jr.
All Coast, LLC v. Shore Offshore Services, LLC

Page 286

1  broker, I mean, --
2      Q   Did Dawn ever communicate with
3  Crosby about a docking plan regarding the D/B
4  THOR, in connection with Hurricane Zeta?
5      A   No, that would be on Shore.  It's
6  their barge.  They tie it up.
7      Q   Did Ivy Danos ever tell you that
8  the CROSBY ENDEAVOR was going to tie up to the
9  THOR to ride out Hurricane Zeta?
10     A   No.
11     Q   So just to confirm, while Hurricane
12 Zeta is going on, on October 28th, 2020, and
13 this incident occurs, at that time Dawn had no
14 idea that the CROSBY ENDEAVOR was tied to the
15 THOR at the Martin dock?
16     A   Correct.
17     Q   When did Dawn first learn that it
18 was?
19     A   I don't remember when we first
20 learned that it was tied, but Ivy called me.
21        MR. REISMAN:
22           Just answer the question.
23   Don't --
24        THE WITNESS:
25           Okay.  Yes.

Professional Shorthand Reporters, Inc.
Offices in New Orleans and Baton Rouge
1-800-536-5255
www.psrdocs.com

Case 2:21-cv-00258-JCZ-EJD  Document 784-6  Filed 10/28/25  Page 6 of 7

30(b)(6) Deposition of Dawn Services, L.L.C. through Michael W. Grace, Jr.
All Coast, LLC v. Shore Offshore Services, LLC

Page 355

1              Objection to form.
2         THE WITNESS:
3              No.  Not from Dawn.
4    EXAMINATION BY MR. GRINNAN:
5         Q    Well, it didn't come from Crosby
6    because Crosby was, like you all say, working
7    as directed, right?
8         A    Correct.
9         Q    Okay.  And so that means that
10   somebody at THOR was the one who was giving
11   instructions in the assignment to the CROSBY
12   ENDEAVOR on the day of the incident, fair?
13        A    Fair.
14        Q    Okay.  And more general than that,
15   the assignment that day for the ENDEAVOR to be
16   at Port Fourchon to provide assistance to the
17   THOR would have come from Shore shoreside
18   management, fair?
19             MR. ALTMYER:
20                  Objection to form.
21             THE WITNESS:
22                  Shoreside management made the
23             decision on where the THOR would be
24             going for the storm.
25   EXAMINATION BY MR. GRINNAN:

Case 2:21-cv-00258-JCZ-EJD   Document 784-6   Filed 10/28/25   Page 7 of 7

30(b)(6) Deposition of Dawn Services, L.L.C. through Michael W. Grace, Jr.
All Coast, LLC v. Shore Offshore Services, LLC

Page 495

1                REPORTER'S CERTIFICATE
2
3        This certification is valid only for a
   transcript accompanied by my original
4  signature and original required seal on this
   page.
5
6            I, Linda G. Griffin, Certified
   Court Reporter in and for the State of
7  Louisiana, as the officer before whom this
   testimony was taken, do hereby certify that
8  MICHAEL GRACE, after having been duly sworn
   by me upon authority of R.S. 37:2554, did
9  testify as hereinbefore set forth in the
   foregoing 494 pages; that this testimony was
10 reported by me in the stenotype reporting
   method, was prepared and transcribed by me
11 or under my personal direction and
   supervision, and is a true and correct
12 transcript to the best of my ability and
   understanding; that the transcript has been
13 prepared in compliance with transcript
   format guidelines required by statute or by
14 rules of the board, that I have acted in
   compliance with the prohibition on
15 contractual relationships, as defined by
   Louisiana Code of Civil Procedure Article
16 1434 and in rules and advisory opinions of
   the board; that I am not related to counsel
17 or the parties herein, nor am I otherwise
   interested in the outcome of this matter.
18
19
20
21        _____
          LINDA G. GRIFFIN, RPR
22        CERTIFIED COURT REPORTER
23
24
25