

**All Coast, LLC v. Shore Offshore Services, LLC et al**
**Case 2:21-CV-00337**

June 3, 2024

Johnny Domiano
Adams and Reese, LLP
701 Poydras Street, Suite 4500
New Orleans, Louisiana 70139

Subject:       Expert Report of John R. Abadie

Mr. Domiano:

Attached is the requested Expert Report of John R. Abadie as requested for the above referenced case.

Sincerely:

John R. Abadie
Owner and Principal
4J Solutions, LLC

<div style="border: 3px solid black; padding: 10px; width: 200px; text-align: center;">
**EXHIBIT**

**10**
</div>

Expert Report of John R. Abadie
All Coast, LLC v. Shore Offshore Services, LLC et al


<u>EXPORT REPORT OF JOHN R. ABADIE</u>


**Introduction**

I am John R. Abadie, presently working as a consultant within the energy services industry through 4J Solutions LLC.  My career has included significant operational, commercial and management roles as the Executive Vice President and Chief Operating Officer, and prior to that Vice President of Western Hemisphere Operations of Cal Dive International.  Before that, I served as Vice President of North America Operations and Commercial Manager for Horizon Offshore Contractors, Inc.  My professional background includes extensive expertise in offshore marine operations, contracting, and project management, with a particular focus on the US Gulf of Mexico region.  Over the years, I have been deeply involved in marine operations and managing the vessel demobilization plans for all named storms that entered the Gulf of Mexico between 2004 and 2015.  My current CV, Rule 26 and current rate sheet is attached in Appendix A of this report.  All expert opinions in this report are based on the case documents listed herein, as well as my experience and education.  I reserve the right to modify or supplement these opinions and conclusions upon review of additional depositions or other information.


**Assignment**

Through 4J Solutions, LLC, I was engaged by Harvey Gulf International Marine, LLC to conduct a comprehensive review and evaluation of the events leading to the breakaway of the Derrick Barge Thor from the Martin dock in Port Fourchon during Hurricane Zeta in October 2020.  Specifically, I have been tasked with providing an expert opinion on the processes, planning and

**Expert Report of John R. Abadie**
**All Coast, LLC v. Shore Offshore Services, LLC et al**

management involved in this incident, and to assess their adherence with industry standards in the Gulf of Mexico.

**Summary of Opinions**

The Shore/MARS Hurricane & Tornado Preparedness Plan, featured in their Health Safety & Environmental Manual, primarily addresses storm preparation for shore-based facilities, overlooking crucial considerations for offshore vessel operations during severe weather conditions. This oversight is particularly evident in the absence of essential elements from standard hurricane planning in the Gulf of Mexico marine industry. The plan's designated phases fail to encompass vital offshore tasks like securing work sites and relocating vessels to safe harbor. Moreover, the specified timelines and distances for demobilization are insufficient, posing significant risks to vessel and crew safety. Critical aspects such as barge demobilization and safe harbor selection lack comprehensive guidelines, essential for offshore operations. The plan's lack of detailed protocols undermines its effectiveness in ensuring safety during hurricane events, further deviating from industry standards for marine vessel operators in the Gulf of Mexico.

During Hurricane Zeta, the Shore/MARS onshore management demonstrated a lack of support and involvement in crucial decision-making processes. This failure to engage actively in storm planning and decision-making, coupled with poor documentation and communication, reflects a systemic disregard for safety from the management team. The decision-making process surrounding the demobilization to Fourchon, and the selection of the Martin dock lacked proper consideration and documentation. Miscommunication between Shore/MARS and Martin further complicated matters, revealing weaknesses in coordination and planning. Significant communication and coordination issues arose between the vessel superintendent and tug captains

**Expert Report of John R. Abadie**
**All Coast, LLC v. Shore Offshore Services, LLC et al**

as well as between Shore's management and the tug providers, leading to the underutilization of available resources and ineffective response strategies.

Several violations of maritime safety statutes and rules were identified, including inadequate mooring line preparations for hurricane-force winds. Lack of communication with relevant authorities exacerbate these non-compliance issues. Martin's deviation from company policy regarding vessels remaining at the dock during named storms also contributed to the inadequate response to Hurricane Zeta. Miscommunication between Shore/MARS and Martin, coupled with inadequate policy dissemination, highlights the pressing need for improved coordination and adherence to safety protocols.

In conclusion, Shore and MARS management failed in their responsibilities as summarized above and detailed below, all of which contributed to the breakaway of the Derrick Barge Thor and resulting damage. This analysis emphasizes the urgent need for Shore/MARS to revise and enhance its Hurricane Safety Plan to align with industry standards, ensuring comprehensive coverage of offshore operations and fostering better communication and coordination among stakeholders. Failure to address these deficiencies risks compromising vessel and crew safety during future severe weather events.

**Qualifications and Experience**

I hold a Bachelor of Science degree in Civil Engineering from Louisiana Tech University and an Advanced Management Degree from the Wharton School of Business at the University of Pennsylvania. With over three decades of experience in the energy services business, specifically in offshore construction, I have accumulated a wealth of expertise. Since graduating from Louisiana Tech University in 1993, my professional journey has seen me serve in various

**Expert Report of John R. Abadie**
**All Coast, LLC v. Shore Offshore Services, LLC et al**

capacities: as a Field and Project Engineer for OPI International, Inc., a Project Manager and Cost Estimator for J. Ray McDermott, Inc., a Commercial Manager and Vice President of North America for Horizon Offshore Contractors, Inc. and as Vice President of Western Hemisphere and Executive Vice President and Chief Operating Officer for Cal Dive International, Inc.

Throughout my career, I have been deeply involved in managing marine operations, overseeing derrick barges, pipelay barges, diving support vessels and related marine support equipment. A significant portion of my work, approximately 75%, has been concentrated in the US Gulf of Mexico region. During this time, I have led teams in safely navigating and mitigating risks associated with Named Tropical Storms, including managing vessel demobilization, adhering to and critiquing EHS Procedures and coordinating personnel and subcontractors during these events.

At both Horizon Offshore Contractors, Inc. and Cal Dive International Inc., I served on a Storm Committee, actively participating in decisions regarding vessel demobilizations, selecting safe harbors, and evaluating the suitability of tow and support vessels.

**Documents Reviewed**

As part of my assignment, I have reviewed the complaint filed by Harvey Seas, LLC and Harvey Gulf International Marine, LLC versus Shore Offshore Services, LLC, Modern American Railroad Services, LLC, Martin Energy Services, LLC, Crosby Tugs, LLC and Dawn Services, LLC filed on February 17, 2021 in the United States District Court for the Eastern District of Louisiana as well as the following documents:

1.    Crosby Limitation Pleading, the MARS Complaint vs Martin, the MARS Complaint vs Dawn, Harvey Gulf's Complaint vs. MARS, and Shore, MARS' Answer to Harvey Gulf's

**Expert Report of John R. Abadie**
**All Coast, LLC v. Shore Offshore Services, LLC et al**

Claims, Crosby's Answer to Claims, Dawn Services Answer to Claims, C-Port's Answer
to MARS and Shore, Martin's Answer to Harvey Gulf, and MARS and Shore tender to
Harvey Gulf.

2.    Interrogatory Responses

3.    Harvey Seas Vessel Particulars

4.    Deposition Transcripts and Exhibits for:

    1.    Cody Sims, Shore's Vice President of Operations

    2.    Thomas Gibilterra, Director of Operations of Shore Offshore Services

    3.    Brian Cloyd, Surveyor onboard the Thor

    4.    Joe Douglas, Thor Superintendent

    5.    Walter Everett, Crosby Captain

    6.    Ernest Plaisance, Crosby Captain,

    7.    Dawn Services (through Michael Grace)

    8.    Mike Melancon (Coastal Safety)

    9.    Dustin Blair Lowe, Thor Barge Clerk

    10. Martin Energy corporate deposition (through Terry Damon King its Senior Vice
         President).

    11. Crosby Tugs corporate deposition (through Wade Savoy its Corporate Director of
         QHSE).

5.    Hurricane Preparation Plans referenced in this case including:

    1.    Shore/MARS's Hurricane and Tornado Preparedness from their Health Safety &
         Environmental Manual dated April 25, 2018.

**Expert Report of John R. Abadie**
**All Coast, LLC v. Shore Offshore Services, LLC et al**

    2.   Harvey Gulf International Marine's Emergency Response Plan from Rev 13 of their QHSSE Plan dated August 8, 2018.

    3.   Martin Energy's Hurricane Preparedness Plan 2020 Rev 4 dated May 2020.

    4.   Crosby Tugs' Hurricane Plan from their Towing Safety & Environmental System Manual Rev 6 dated November 2015 and Heavy Weather Operations Rev 7 dated March 2021.

    5.   Bisso Marine's 2016 Storm Preparedness Gulf of Mexico procedure HUR.0100 Rev 10 issued January 1, 2016. (Exhibit 239)

6.    Additional requirements from The Captain of the Port (COTP) for hurricane port conditions in accordance with the Sector New Orleans Maritime Hurricane Contingency Port Plan (MHCPP).

7.    THOR Responses to HGIM Requests for Production of Documents, including:

    1.   General particulars (RFP 1) THOR 000002-5

    2.   General Arrangement Plans (RFP 1, 5), THOR 000001; THOR 000002-5; THOR 0004974-84

    3.   Particulars of the winches, wires, bollards and all other mooring equipment, including detail drawings THOR 0000024-29; THOR 0001381-85; THOR 0001386-1409; THOR 0001410-20; THOR 0001421-24; THOR 0001425-32; THOR 0001647-58

    4.   Maintenance records for mooring equipment THOR 0000024-29; THOR 0001381-85; THOR 0001386-1409; THOR 0001410-20; THOR 0001421-24; THOR 0001425-32; THOR 0001647-58

**Expert Report of John R. Abadie**
**All Coast, LLC v. Shore Offshore Services, LLC et al**

5. Certificates for mooring wires and ropes (RFP 1) THOR 0000024-29; THOR 0001381-85; THOR 0001386-1409; THOR 0001410-20; THOR 0001421-24; THOR 0001425-32; THOR 0001647-58

6. Class survey reports for last seven (7) years (RFP 16) THOR 000006-11; THOR 0004877-4908; THOR 0004909-13; THOR 4956-73 (post-incident Dufour, Laskay & Strouse survey report)

7. Flag state inspection reports for last seven (7) years

8. List of persons on board the unit at the time of the incident, including their professional certification and resumes THOR 0001240-45; THOR 0001858-1962 (Terry Joe Douglas training file)

9. List of persons managing the unit, including their professional certification and resumes, persons with duties related to THOR:

   a. Tommy Gibilterra PE – Director of Operations

   b. Cody Sims – Director of Projects

   c. Mauricio Arana – Project Manager

   d. Yesenia Hernandez – Project Assistant

   e. Kristi Caton – President and CEO of SOS

   f. Brandon Gill – Fleet Manager (THOR 0004989)

   g. Zoe DeLaRosa – Logistics and Project Coordinator MARS (THOR 0004991)

   h. Dustin Lowe, Sr. – Barge Administrator ((THOR 0002543)

   i. Organizational Chart (THOR 0001502)

**Expert Report of John R. Abadie**
**All Coast, LLC v. Shore Offshore Services, LLC et al**

10. Communications on movements and plans for the unit from Oct 1 to Oct 28 2020 including internal discussions by MARS, communications with charterers, contractors, clients (RFP 8, 9, 10, 11, 12, 13, 14, 15, 19), messages regarding weather forecasts, weather routing from Oct 1 to Oct 29, 2020 THOR 0000030-238; THOR 0000239-521; THOR 0000522-614; THOR 0000615-76; THOR 0000677-702; THOR 0000703-64; THOR 0000765-826; THOR 0000827-48; THOR 0000849-906; THOR 0000907-68; THOR 00009691028; THOR 0001029-35; THOR THOR0001246-55; THOR 0001256-67; THOR 0001761-4876 (emails)

11. USCG Investigation Report related to this matter, *THOR INT 2*

12. THOR Interests' Second Supplemental Responses to Discovery Requests propounded by Harvey Seas Interests.

13. THOR Interests' Third Supplemental Responses to the Omnibus Discovery Requests, along with document production. This production deals with the October 6th through 11th, 2020 time frame surrounding Hurricane Delta.

14. Omnibus responses of Harvey Gulf, Omnibus responses of the Thor Interests, Omnibus responses of Crosby Interests, Omnibus responses of Dawn Interests, Omnibus responses of Martin Interests and Martin's Answers to HGIM's First set of Interrogatories.

**Conclusions and Opinions**

<u>Shore/MARS Hurricane Safety Plan Proved Inadequate for Offshore Operations</u>

The Shore/MARS Hurricane & Tornado Preparedness Plan from the Health Safety & Environmental Manual (THOR 1375 - 1380) was clearly tailored for storm preparation at a shore-

**Expert Report of John R. Abadie**
**All Coast, LLC v. Shore Offshore Services, LLC et al**

based facility and failed to address severe weather contingencies relative to offshore vessel operations.

a.    The original issue date of the Hurricane Preparedness section of the Heath Safety & Environmental Manual is noted in the revision log as May 9, 2013 (THOR 5335) which indicates that this section predates MARS or Shore's acquisition of any derrick barges utilized for offshore work, including the DB Thor. The subsequent April 25, 2018 version (THOR 1375 - 1380) remained largely unchanged concerning the Hurricane & Tornado Preparedness Plan further highlighting its outdated applicability to offshore operations. The Shore/MARS Plan fails to address several crucial and unique elements of hurricane planning that are standard for the Gulf of Mexico marine industry.

b.    The defined phases in the Shore/MARS Hurricane Preparedness Plan fail to account for crucial offshore tasks such as securing the work site, retrieving vessel anchors, and demobilizing the vessel(s) to a pre-determined safe harbor. For instance, Phase III of the Shore/MARS Plan which addresses moving equipment to a secure location, is described as when the eye of the storm is just 300 miles and/or 20 hours away from the work site. However, this timeframe is inadequate for safely demobilizing a derrick barge, which typically travels at speeds of approximately 5 knots. In this specific incident, despite the Fieldwood work location's relatively close proximity to Port Fourchon, the time Shore required for securing the work site, retrieving anchors, towing to a safe harbor and mooring at the Martin dock totaled 27.5 hours which exceeds the time specified in the phase description. Many offshore work sites in the Gulf of Mexico would necessitate even longer timeframes

**Expert Report of John R. Abadie**
**All Coast, LLC v. Shore Offshore Services, LLC et al**

for demobilization to safe harbor. Comparable plans from other marine operators typically designate this phase as no less than 500 miles from the leading edge of gale force winds or at least 60 hours from the work site. In addition to the tighter time allowance and shorter distance from the storm, the Shore/MARS Plan references the eye of the storm rather than the leading edge of gale force winds which is common in other plans. Based on the size and speed of a typical hurricane, this difference can further erode any contingency time built into the demobilization plan.

c.    The only reference to any type of barge in the Shore/MARS Hurricane & Tornado Preparedness plan addresses securing barges already docked at the facility during Phase II (eye of the storm 400 miles or 26 hours away) providing instructions to provide ample slack in mooring lines to accommodate rising water levels. This is a standard protocol for shore-based facilities and is also addressed in the general Preparation Checklist. Had the Shore/MARS Plan been written with safe demobilization of marine vessels in mind, the guidelines for barge demobilization and safe harbor selection should have been much more comprehensive.

The Shore/MARS Hurricane & Tornado Preparedness Plan fails to meet industry standards for marine vessel operators in the Gulf of Mexico. In addition to the aforementioned shortcomings, the Shore/MARS Hurricane & Tornado Preparedness Plan fails to meet minimum industry standards for marine operators in the Gulf of Mexico and is lacking in key components compared to other marine operators. These deficiencies include:

a.    Failure to clearly identify an offshore person in charge and/or delineate their responsibilities versus those of shore-based management.

Page 11

**Expert Report of John R. Abadie**
**All Coast, LLC v. Shore Offshore Services, LLC et al**

    b.    The plan does not address safely mooring the derrick barge nor the unique challenges and coordination with the tug provider given the large size of the Thor and that it had no ability to navigate under its own power.

    c.    Absence of clear definition outlining the role of onshore operations and executive management in the decision-making process, as well as final authority granted by executive management for key storm related decisions.  As an example, this stands in stark contrast to the comprehensive plan previously utilized by Bisso Marine (Exhibit 239) already submitted as evidence in this case.

    d.    The Plan does not mention or establish responsibilities for support from onshore management which should have been responsible for tasks such as evaluating the suitability of the safe harbor locations and ensuing the that engineering checks were performed regarding the proposed vessel mooring.

    e.    Lack of identifying specific intervals for re-evaluating decisions based on changing conditions or weather forecasted.

    f.    The Plan also does not establish a list of safe harbors.

    g.    The Plan does not refer to CTOP port conditions and requirements.

    h.    The Plan does not provide emergency contact information for either company management, the United States Coast Guard or weather monitoring contacts.

<u>Lack of Support from Onshore Company Management</u>

Shore/MARS' onshore management asserts it abdicated sole responsibility to Joe Douglas for key decision-making tasks such as selecting a safe harbor, interpreting weather reports, determining the necessary time for safely securing the work site and demobilizing to a safe harbor,

**Expert Report of John R. Abadie**
**All Coast, LLC v. Shore Offshore Services, LLC et al**

planning vessel mooring and the adequacy of the size and quantity of mooring lines at the dock and coordinating and with the tug provider.  While it is customary for the barge superintendent to be the offshore person in charge onboard the vessel, expecting him to shoulder these responsibilities alone is not reasonable or in line with industry norms and contributed to the breakaway of the Derrick Barge Thor.  Based on my experience working both for and with various marine vessel operators in the US Gulf of Mexico, it is essential that onshore management teams and executive leadership are actively involved in such critical decision-making processes.  This is due to the magnitude of the implications and severe potential consequences including loss of life and significant property damage in the event of inadequate planning or poor or uninformed decisions being made by offshore personnel.  Typical responsibilities of onshore management support during tropical storm and hurricane planning would include assessing the need for and arranging additional support tug(s) if necessary, exploring alternative safe harbors or anchoring options in sheltered waters, consulting with subject matter experts on checking mooring calculations, and liaising with the dock facility owner/operator.

This lack of support provided to the DB Thor offshore superintendent and vessel crew in combination with the previously discussed deficiencies in Shore/MARS's Hurricane & Tornado Preparedness Plan demonstrates a lack of commitment to safety from the Shore/MARS management team as demonstrated by the following observations.

    a.    The role of the Shore/MARS EHS Director was noticeably absent during the events surrounding Hurricane Zeta. Firstly, there was a lack of involvement in monitoring the weather leading up to and during the hurricane, as documented in the incident reports (Tommy Gibilterra Deposition page 71 & Mike Melancon Deposition page 301). Additionally, Shore/MARS management did not involve or request the EHS

**Expert Report of John R. Abadie**
**All Coast, LLC v. Shore Offshore Services, LLC et al**

Director's participation in storm planning, including crucial decisions such as determining which phase they were in or where the Thor was intended to be moored (Mike Melancon Deposition pages 192 and 302).

b.    It appears that Shore/MARS failed to maintain proper documentation, or a checklist of tasks being completed, raising concerns about accountability and oversight (Mike Melancon page 195). The extent of the EHS Manager's involvement with the Thor crew was minimal, limited to providing them with a copy of the plan and instructing them to review it (Mike Melancon page 196).

c.    A significant lapse in communication was evident, with no contact between the EHS Manager and the barge superintendent from the time the barge left the worksite until the hurricane made landfall (Joe Douglas Deposition page 341). Despite the severity of this incident and its repercussions, no lessons learned were documented, nor was a Safety Bulletin created post-breakaway, indicating a missed opportunity for improvement (Mike Melancon Deposition page 322). Additionally, based on the documents reviewed in this case, the Shore/MARS Hurricane Preparedness policy was never updated (Mike Melancon Deposition page 252).

d.    Shore/MARS management failed to ensure the DB Thor's mooring equipment was in good working condition. Management was not aware that written mooring procedures were onboard the vessel and once they became aware of the procedures that were written in a foreign language post incident, they made no attempt to have them translated or replicated (Tommy Gibilterra page 57 – 58).

e.    Based on the testimony given in the depositions of Mike Melancon, Tommy Gibilterra and Cody Sims, it is apparent that Shore/MARS management did not

know Joe Douglas' qualifications specific to the tasks he was asked to perform other than that he had prior experience working on the DB Thor and other derrick barges. In his deposition, Mr. Gibilterra confirmed that no one at Shore/MARS provide Joe Douglas or any member of the DB Thor crew with training regarding either mooring a barge in port or on hurricane evacuation procedures (Tommy Gibilterra Deposition pages 49 – 51). Additionally, Mr. Gibilterra confirmed that no one in Shore/MARS's management including himself, Kristi Caton, Cody Sims, Mauricio Arana or Mike Melancon ever inquired about Joe Douglas' experience with respect to securing barges in hurricanes prior to Hurricane Zeta.

f.    There appears to be a discrepancy in reporting lines, with the EHS Manager stating that he reported to Tommy Gibilterra and other project managers rather than Kristi Caton as shown in the company organizational chart (THOR 001502). This lack of clarity in reporting relationships likely contributed to ineffective coordination and oversight during the crisis.

g.    The apparent lack of involvement from Kristi Caton, President/CEO of the company, during the events surrounding Hurricane Zeta raises questions about the expected leadership role she should have played. As the direct supervisor of key personnel such as the Director of Projects (Cody Sims), Director of Operations (Tommy Gibilterra), and the HSE Director (Mike Melancon), one would anticipate her active participation and ultimate decision-making authority, as indicated by the organizational chart and reporting responsibilities.

h.    Leading up to the storm, Kristi Caton's written communications with Cody Sims and Tommy Gibilterra primarily focused on cash flow forecasts, indicating a

**Expert Report of John R. Abadie**
**All Coast, LLC v. Shore Offshore Services, LLC et al**

potential oversight of critical storm preparedness discussions (Mike Melancon Deposition page 57). Post-storm, her concerns centered around completion of the Fieldwood project and planning for the next project, with little apparent attention given to addressing the breakdowns in protocol and decision-making exposed by the hurricane (Mike Melancon Deposition page 57).

i.   It is my opinion that the lack of visible involvement and communication from Kristi Caton during the Hurricane Zeta incident undermines the expected leadership role she should have played and highlights the potential gaps in organizational oversight and decision-making processes.

Port / Safe Harbor Selection

Shore/MARS management claims it delegated the responsibility of selecting both the safe harbor port and dock to the vessel superintendent.  Despite receiving weather reports indicating a potential landfall as a category 1 hurricane near Fourchon as early as October 23rd, none of the documents or deposition transcripts reviewed suggested that the vessel superintendent or Shore/MARS management seriously considered an alternative port. While Mr. Gibilterra did ask the surveyor to explore an alternative anchoring location in sheltered waters in case the Thor could not make it into Port Fourchon prior to its closure, when asked in his deposition about alternate ports, the Director of Operations claimed that the Houma Navigational Channel was too shallow, the Atchafalaya River was silted in, and the Sabine River had a very narrow jetty.  Mr. Gibilterra's opinions on the suitability of these alternate ports did not appear to consider that the previous owner of the Thor, Offshore Specialty Fabricators, frequently brought the vessel into their facility in the Port of Houma.  In fact, Joe Douglas even mentioned in his deposition that he had ridden

**Expert Report of John R. Abadie**
**All Coast, LLC v. Shore Offshore Services, LLC et al**

out a hurricane in the past in Houma onboard the DB Thor (ex. DB William Kallop) when the vessel was previously owned by Offshore Specialty Fabricators Inc. (Joe Douglas Deposition page 411). Additionally, the contractors I previously worked for including Horizon Offshore Contractors, Inc. and Cal Dive International, Inc., both operated shore base facilities in both Port Arthur, Texas and Sabine Pass, Texas which is accessed through the Sabine River jetties. Their vessels, similar in size to the Thor, frequently transited the Sabine jetties with no issues.

Once the decision to demobilize to Fourchon was made, it is unclear from reviewing the documents why the Martin dock was selected over other alternatives. According to Shore/MARS management, the Thor had never been to either the Stone or Martin dock in Fourchon. (Cody Sims Deposition page 55). Mr. Sims was directly involved with communications with both Martin and Stone. It is not clear from the case materials why Martin was chosen instead of Stone. Stone #2 Dock was apparently considered an option until 2:07 pm on 10/25/20 as evidenced by an email from Chris Johnson to Michael Boyd (THOR 0002972, 0003065).

Contributing Factors from Tug Providers

The Hurricane Zeta incident brought to light a significant lack of communication and clarity regarding expectations and responsibilities between the Captain of the Crosby Endeavor and the superintendent of the Thor. Joe Douglas, the vessel superintendent, neglected to inform the Crosby Captain of his expectation for the Crosby Endeavor to hold the Thor against the dock, citing that he "never had to before" (Joe Douglas Deposition page 475), and the Crosby Captain failed to ascertain the Thor's expectations for the tug. This oversight proved consequential, as the nearby tugs, such as LA Elite and LA Madonna were also not utilized to assist with keeping the DB Thor at the dock.

**Expert Report of John R. Abadie**
**All Coast, LLC v. Shore Offshore Services, LLC et al**

Despite prior plans outlined in an email from Tommy Gibilterra, which indicated the provision of LA Madonna and another tug as assist vessels alongside the Crosby Endeavor, the actual utilization of these tugs remained uncertain. Cody Sims admitted to not being aware of the involvement of either the LA Elite and/or LA Madonna, despite their documented use in assisting the Thor's docking (Cody Sims Deposition page 491). Furthermore, only one tug remained to work with the material barge, while the other was released after docking, indicating a potential missed opportunity for additional assistance during the storm (Tommy Gibilterra Deposition page 382 and Joe Douglas Deposition page 338). Notably, the Thor and Shore/MARS management never requested assistance from either LA Elite or LA Madonna, neither in advance nor during the hurricane, as confirmed by both Walter Everette (pages 626 & 627) and Joe Douglas (Joe Douglas Deposition page 308). This lack of coordination and communication raises questions about the effectiveness of the response strategy.

Moreover, discrepancies are noted between the brochure specifications of the assist tugs used and the suitability of their bow configuration for pushing against the barge. Although smaller than the Crosby Endeavor, the other tugs possessed bow configurations deemed more suitable for such maneuvers, suggesting a potential oversight in vessel selection, provision, and deployment. In addition to availability of the LA Elite and LA Madonna for assistance, Mike Grace mentioned the presence of LA Commander in the area as well, further complicating the assessment of available resources and potential assistance during the hurricane (Mike Grace Deposition page 265). Shore/MARS management did not communicate with either Dawn Services and/or Crosby about what was needed and/or expected regarding assist tugs despite having the particulars of the Crosby Endeavor available. Crosby failed to communicate, and Shore/MARS failed to ascertain, the limitations of the Crosby Endeavor to the Thor and Shore/MARS management. The failure to

**Expert Report of John R. Abadie**
**All Coast, LLC v. Shore Offshore Services, LLC et al**

effectively leverage available assets highlights systemic weaknesses in communication, coordination, and decision-making processes during critical events like Hurricane Zeta.


Violations of Applicable Maritime Safety Statues and/or Rules

The United States Coast Guard MISELE Incident Investigation Report for the DB Thor Allision dated October 28, 2020 (WM001042 – 001044) discusses Coast Guard MSIB 074-20" issued October 27, 2020 (Exhibit 155) which designated Modified Port Condition Zulu.  Among the precautionary measures strongly recommended for implementation by vessel operators are doubling mooring lines, considering the anticipated effects of storm surge, rigging an outboard anchor at a short stay, and ensuring spare mooring lines and/or wires are readily available.   Pre-storm photos show that the DB Thor's mooring lines were not doubled up and secured for hurricane-force winds. No one from Shore/MARS management of the DB THOR appears to have been aware of any regulations or requirements for vessels remaining in port during a hurricane, nor did they communicate with either the US Coast Guard or the Greater Lafourche Port Commission prior to Hurricane Zeta (Cody Sims Deposition page 88).  In my opinion, these failures contributed to the casualty.

Other Contributing Factors

The decision by Martin management to deviate from company policy, which typically prohibits vessels being moored at the dock during named storms, was made within the framework of Martin's Hurricane Preparedness Plan from May 2020 (MARTIN 00645). This plan clearly states that by Phase IV (48 to 24 hours from landfall) no vessels should be moored at their facility. However, despite this policy, the Thor was secured at the Martin dock at 0100 hours on October 27, 2020, and completed receiving fuel at 1400 hours the same day, a mere 30 hours prior to

**Expert Report of John R. Abadie**
**All Coast, LLC v. Shore Offshore Services, LLC et al**

Fourchon experiencing hurricane force winds. This decision was further complicated by miscommunication between Shore/MARS and Martin regarding the purpose of the Thor's arrival. Cody Sims claims he clearly communicated that the Thor was coming in to ride out the storm and would have gone to Stone if Martin had informed him of the policy not to allow vessels during hurricanes although Martin denies this point. By the time the Thor arrived at the Martin dock, it was already in Phase 3 and nearly into Phase 4 of the Martin Hurricane Plan. Although vessel specs of the Thor were provided to Martin prior to arrival, it does not appear that a copy of Martin's Hurricane policy was ever provided to Shore/MARS management. The Martin Hurricane Plan explicitly states that warnings are necessary to keep customers like Shore/MARS safe during hurricanes.

In conclusion, The Shore/MARS Hurricane & Tornado Preparedness Plan, as outlined in their Health Safety & Environmental Manual, inadequately addresses offshore vessel operations and is missing critical elements of standard hurricane planning standard in the Gulf of Mexico marine industry. The plan's phases overlook essential offshore tasks, such as securing work sites and relocating vessels, and feature insufficient timelines and distances for demobilization, posing significant risks to vessel and crew safety. During Hurricane Zeta, the onshore management demonstrated a lack of and/or inadequate support and involvement leading to poor decision-making and coordination. Miscommunication between Shore/MARS and both Dawn Services/Crosby and Martin, resulted in underutilized resources and ineffective responses. Violations of maritime safety statutes, inadequate mooring line preparations, and lack of communication with authorities further exacerbated these issues. These systemic failures culminated in the breakaway of the Derrick Barge Thor causing the resulting damage.

**Expert Report of John R. Abadie**
**All Coast, LLC v. Shore Offshore Services, LLC et al**

# Appendix A

Expert Report of John R. Abadie
All Coast, LLC v. Shore Offshore Services, LLC et al

# JOHN R. ABADIE JR.

4819 Menlo Park Drive, Sugar Land, TX 77479  |  (713) 906-0919  |  jabadie@fourjsolutions.com

## PROFESSIONAL EXPERIENCE

### 4J SOLUTIONS, LLC, 2015 TO PRESENT

**Owner/Managing Director**                                                                         *2015 to Present*

➢ Provide business advisory and management consulting services primarily to the construction and energy service industries.  Ongoing engagement include:

  o  Chief Financial Officer and Operations Advisor for a US based energy services business.  Primary duties included cash management, financial analysis, lender reporting, debt reduction strategy and provision of commercial and contractual consulting services.
  o  Business Advisor and Consultant for staffing and project management provider specializing in the energy services sector.
  o  Co-Founder and Chief Financial Officer for an affinity insurance broker

➢ Key previous consulting engagements have included:

  o  Integration Manager leading the post-merger integration of two $100 million+ revenue offshore services contractors.
  o  Operational and commercial consulting services to an offshore service contractor.
  o  Commercial consulting services to a fortune 500 specialty contractor.
  o  Commercial and Financial Advisor for the acquisition and post-merger integration of two workforce accommodation and offshore service providers.
  o  Interim Executive Officer and Director during the winding up of a global energy services contractor which included resolution of contract commercial disputes, collection of over $50 million in outstanding receivables and supporting the sale of international business units and liquidation of assets.
  o  Consulting services providing operational and financial due diligence support related to investment opportunities in the energy services sector.

### CAL DIVE INTERNATIONAL, INC., 1997 TO 2015

**Executive Vice President & Chief Operating Officer**                                            *2011 to 2015*

➢ Key Executive team for a US publicly traded international energy services business with $500M+ in annual revenue. Director to multiple international entities; streamlined annual capex budget of $50 to 100M.
➢ Strategically managed global business operations and operational P&L for $500M+ in annual customer projects across 20+ countries; led and directed business development, estimating, supply chain and logistics, project management, marine operations, capital projects and fleet maintenance.
➢ Spearheaded strategy to diversify global business due to decline in core domestic market; successfully grew international revenue increases of more than double in less than 3 years.
➢ Reduced company overhead cost by 40% through strategic cost reduction and resource realignment while maintaining overall sales volume.
➢ Delivered a 75% reduction in recordable injuries and significant claims cost reduction; provided key leadership in implementation of a safety culture change organization wide.

**Expert Report of John R. Abadie**
**All Coast, LLC v. Shore Offshore Services, LLC et al**

# JOHN R. ABADIE JR.

4819 Menlo Park Drive, Sugar Land, TX 77479  |  (713) 906-0919  |  jabadie@fourjsolutions.com

**Vice President, Western Hemisphere**                                                                *2007 to 2011*

➢ Gained added responsibilities following the acquisition of Horizon Offshore and structural reorganization by Cal Dive International; contributed as key resource and corporate leader in the pre-and post-acquisition integration.
➢ Improved strategic planning, business development, and operations management in Mexico and Latin America.
➢ Optimized vessel operations for a large fleet of marine construction vessels.
➢ Developed key metrics, analyses, and reporting for the Western Hemisphere's diving and marine construction business.

**HORIZON OFFSHORE CONTRACTORS, INC., 1997 TO 2007**                                        *2003 to 2007*

**Vice President, North America**

➢ Effectively managed all P&L and financial reporting requirements for North America regional business unit; delivered all aspects of projects performed by a fleet of eight (8) offshore construction vessels.
➢ Developed and executed key business development initiatives, target project acquisition, and bidding strategies.
➢ Oversaw an operations team responsible for project planning and execution for offshore pipelay and heavy lift projects in the US Gulf of Mexico and east coast.
➢ Successfully doubled both revenue and EBITDA margins.

**Commercial Manager**                                                                                       *1997 to 2003*

➢ Established business processes and directed business development, cost estimation, proposal preparation and contracting functions for marine construction projects worldwide; directly involved commercial strategy, bid preparation and commercial negotiation for project awards exceeding $1B+ in contracted revenue.

**J. RAY MCDERMOTT, INC., 1995 TO 1997**

**Cost Estimator / Project Manager**

➢ Responsible for cost estimating and preparation of customer bid proposals and management of customer offshore construction projects. Directly involved in estimation, negotiation of construction contracts and management for projects in excess of $300 million.

**OPI INTERNATIONAL, INC., 1993 TO 1995**

**Field / Project Engineer**

➢ Served as a field engineer and project engineer for both domestic and international offshore construction projects. Responsibilities included planning, scheduling, and overall project coordinating. This included requisitioning materials, managing subcontractors, project cost control as well as administration of client contracts. Worked in various field locations including:  Trinidad, China, Singapore, South Korea, and the U.S. Gulf of Mexico.

**Expert Report of John R. Abadie**
**All Coast, LLC v. Shore Offshore Services, LLC et al**

# JOHN R. ABADIE JR.

4819 Menlo Park Drive, Sugar Land, TX 77479  |  (713) 906-0919  |  jabadie@fourjsolutions.com

## EDUCATION AND TRAINING

**Advanced Management Program,** The Wharton School, University of Pennsylvania

**Bachelor of Science, Civil Engineering,** Louisiana Tech University

Management II Executive Education | Effective Negotiating | Delivering Incident and Injury Free Results | PMP Training
Oil & Gas Production Concepts | Health, Safety, and Environmental Training | Mergers & Acquisitions

## ADDITIONAL QUALIFICATIONS

- Technologically savvy; proficient with Microsoft Office Suite, MS Outlook, MS Project, and various accounting systems – quick to learn new software.
- Sales leadership abilities include extensive business development, contract review and negotiation, assessing business patterns and needs, and working effectively with all levels of professionals.

**Expert Report of John R. Abadie**
**All Coast, LLC v. Shore Offshore Services, LLC et al**

### 4J Solutions LLC 2024 Rate Schedule

| | |
|---|---|
| Rate for Expert Services including document review, report preparation, deposition prep, deposition, testimony and travel time | **$300.00/hour** |
| | |
| Travel Expenses | **Cost + 15%** |
| Mileage | **IRS Rate + 15%** |
| Miscellaneous Expenses | **Cost + 15%** |

**<u>Rule 26</u>**

John R. Abadie has had no deposition or trial appearances in the last four (4) years.