# MASTER VESSEL TIME CHARTER

THIS MASTER VESSEL TIME CHARTER (the "Agreement" or "Charter") is made and entered into on this 1 day of June, 2011 (the "Effective Date"), by and between Dawn Services, LLC (hereinafter referred to as "OWNER") and Shore Offshore Services, LLC (hereinafter referred to as "CHARTERER").

**WITNESSETH:**

**WHEREAS**, CHARTERER is engaged in a business which requires it, from time to time, to secure the service of (a) vessel(s) from others;

**WHEREAS**, OWNER has (a) vessel(s) which, from time to time, it commits to the service of others in exchange for a fee (the "Vessel");

**NOW, THEREFORE:**

In consideration of the mutual promises and covenants contained herein, the parties hereto mutually agree as follows:

## 1. BINDING AGREEMENT AND CHARTER ORDER

a. This Agreement shall control and govern the performance of any and all work by OWNER or CHARTERER under Charter Orders, oral or written, given to OWNER on or after the date hereof by CHARTERER's authorized agents, and any agreement or stipulations in any Charter Order used by OWNER not in conformity with the provisions hereof shall be null and void. OWNER shall perform its obligations for CHARTERER under this Agreement and any Charter Order as an independent contractor. Except where expressly authorized in writing by CHARTERER, no employee, agent, or representative of OWNER shall represent himself to be an agent or authorized to act in the name or on behalf of CHARTERER. The actual performance and superintendence of all work hereunder shall be by OWNER, but CHARTERER or its representative shall have unlimited access to the operations to determine whether such work is being performed by OWNER in accordance with all the provisions of this Agreement and the Charter Order. This Agreement supersedes all prior agreements that pertain to the charter of any vessels by CHARTERER from OWNER, or the towage of any vessels by OWNER for CHARTERER.

b. OWNER will prepare and furnish to CHARTERER a "Confirmation of Charter Order" on the form shown in **Exhibit "A"** in duplicate (the "Charter Order"). Charter Orders may be written in the form of **Exhibit "A"** or perfected on an oral basis which shall be confirmed in writing by OWNER directly to CHARTERER as soon as practical under the circumstances. In the event OWNER does not reduce an oral order to writing, a Charter Order will have been deemed to be executed by OWNER and CHARTERER upon the provision of the Vessel by OWNER to CHARTERER, and the terms and conditions hereof shall apply. Delivery to and use by CHARTERER of the Vessel, which may include any actions taken by CHARTERER under any provision of this Charter, establishes conclusively that all of the terms and conditions of this Agreement are in effect, notwithstanding whether or not CHARTERER has returned a signed Charter Order to CHARTERER.

EXHIBIT 1

MG

c. OWNER shall maintain true and correct records pertaining to the work performed hereunder, including on a daily basis the names of the employees, starting and ending time for each, travel time, the type of work performed by each, the materials used and other records which are subject to inspection hereunder for a period of three (3) years after completion of the work covered by each Charter Order. CHARTERER reserves the right to audit any books and records of OWNER given five (5) days advance notice in writing relating directly or indirectly to work and services performed hereunder and the prices or rates charged therefor; provided however, OWNER shall have the right to exclude any trade secrets, formulas or processes from such an audit.

d. This Agreement shall remain in effect until canceled by either party by giving the other party thirty (30) days written notice to that effect at the respective addresses herein set forth; provided, however, that with respect to any work in progress from any Charter Order as of the date of the cancellation, the work called for on any Charter Order shall continue in full force and effect until such work is complete, unless the parties hereto agree otherwise in writing.

## 2. AGREEMENT DOES NOT OBLIGATE CHARTERER TO ORDER VESSELS

This Agreement does not obligate CHARTERER to order vessels, work and/or equipment from OWNER nor does it obligate OWNER to accept such orders, but it, together with any applicable Charter Order, shall control and govern all work accepted by OWNER and shall define the rights and obligations of CHARTERER and OWNER during the term hereof. OWNER shall furnish any vessel or vessels required by CHARTERER at the time and place agreed upon in any Charter Order, and continue operations diligently and without delay in a safe, proper and workmanlike manner, in strict conformity with the specifications and requirements herein and in such Charter Order.

## 1. WARRANTIES BY OWNER

OWNER shall warrant that at the time of the delivery of the Vessel to CHARTERER and that throughout the duration of this Agreement, that:

a. OWNER has the right to possess and charter the Vessel to CHARTERER and that the Vessel is and will continue to be coastwise trade qualified and documented with the U.S. Coast Guard in accordance with federal law and U.S. Coast Guard regulations;

b. The Vessel is and will continue to be free from any liens, attachments or other encumbrances which might operate to interfere with the free use thereof by CHARTERER;

c. The Vessel is properly equipped and in every respect fit for the intended purpose and in good operating condition and repair;

d. The Vessel is free of any and all latent defects of which OWNER would have knowledge by using reasonable due diligence;

e. OWNER will defend, indemnify and hold CHARTERER harmless in the case of any interference with the operation of the Vessel resulting from any liens, attachments or other encumbrances incurred against the Vessel, either prior to or subsequent to the commencement of this Charter, but this defense and indemnity shall not apply to liens, attachments, or other encumbrances incurred against the Vessel by CHARTERER;

    f. OWNER will exercise due diligence to maintain the Vessel in a seaworthy and good operating condition after the inception and throughout the term of this Charter;

g. The Vessel will be crewed experienced seamen and operated by its crew in accordance with all applicable laws and regulations, included but not limited to all U.S. Coast Guard regulations, including but not limited to, all current future Subchapter M requirements;

h. OWNER'S wheelhouse personnel possess valid and current U.S. Coast Guard licenses as required by law;

i. The Vessel will be operated at all times in accordance with all applicable local, state and federal laws and regulations; and

j. If applicable, OWNER and the Vessel are RCP (Responsible Carrier Program) certified by the American Waterways Operators (AWO).

## 4. EMPLOYMENT AND USE OF VESSEL

Unless the use of the Vessel is suspended in accordance with and pursuant to the provisions of this Charter:

a. CHARTERER shall have the sole and exclusive right to the services of the Vessel during the term of this Charter. OWNER shall furnish the Vessel required by CHARTERER at the time and place agreed upon by and between OWNER and CHARTERER and continue operations diligently and without delay in a safe, proper and workmanlike manner, in strict conformity with the specifications and requirements herein. OWNER agrees that should the Vessel's services contemplated by this Charter include towing services, the tug (or other vessel engaged in said services) or master, crew and operator shall satisfy their duties to the tow to exercise that degree of caution, reasonable care and maritime skill which prudent navigators usually employ in similar undertakings and with such consideration as special circumstances may require. Prior to the commencement of any towing movement undertaken pursuant to this Charter, the master of the tug shall conduct the usual and customary inspection of the tow as ordinarily done by a prudent master while afloat; and if, in the opinion of said master, the tow is fit for the intended voyage, the tow may proceed. If said master discovers any defect in the tow, OWNER shall promptly notify CHARTERER and the tug shall stand-by until CHARTERER has cured the defect complained of, or until CHARTERER notifies the OWNER that the towing movement is terminated. If the CHARTERER shall have reason to be dissatisfied with the conduct of the master or officers, the OWNER shall, on receiving particulars of the complaint, investigate and, if necessary, make a change in the appointment or practices required to obtain the services contracted for herein. Failure of OWNER to take immediate action to satisfy CHARTERER's concerns shall constitute grounds for immediate termination of this Charter.

b. OWNER shall have the right from time to time during the term of this Charter to substitute a vessel for the Vessel, provided that any such substitution shall require OWNER to provide a vessel that has the same functionality and horsepower as the Vessel.

c. Notwithstanding anything contained herein to the contrary, this Charter shall not be deemed or construed to be a demise or bareboat charter of the Vessel to CHARTERER, and the entire operation, navigation, management, control, performance and use of the Vessel shall be under the sole and exclusive command of, and be actually accomplished by, OWNER. It is specifically understood and agreed that OWNER's employees, including, without limitation, the master and crew of the Vessel, shall in no event be considered actual or borrowed employees of CHARTERER, it being agreed that the master and crew of the Vessel, as employees of OWNER, shall be and shall remain in full charge and control of such Vessel at all times. It is expressly understood and agreed that OWNER is an independent contractor, and that neither OWNER nor their employees, nor the master of the Vessel, nor any members of the crew of the Vessel, are servants, agents or employees of CHARTERER. CHARTERER, through its designated representative, shall, however, have the right to designate the voyage to be undertaken and the services to be provided by the Vessel, subject always to the sole rights of the OWNER or the master of the Vessel to determine whether movement may be undertaken, with the master always being in charge of the Vessel.

## 5. CHARTER TERM AND RATE

CHARTERER shall pay OWNER for all validly invoiced charges for the Vessel, work and/or equipment furnished by OWNER at the rate set out in the applicable Charter Order provided for herein,. CHARTERER shows that it shall owe no further payments whatsoever to OWNER for future services in the event that the Vessel or vessels the subject of this Agreement are considered a partial or constructive total loss and/or the Vessel or vessels are no longer fit to perform the operations required of CHARTERER under this Agreement.

## 6. INVOICING

OWNER shall invoice CHARTERER as specified on the Charter Order and charter hire payments shall be due and payable by the terms provided on the Charter Order. If the Charter Order is silent on when charter hire payments shall be due and payable, then the Vessel chartering payments shall be due and payable within thirty (30) days after the invoice is received by CHARTERER. OWNER shall include with all invoices copies of all log books, fuel receipts, supplies, and all other documentation evidencing any expenses that OWNER is requesting CHARTERER to pay (with CHARTERER only being obligated to pay such expenses agreed upon in this Charter or in any Charter Order). Unless provided otherwise on a Charter Order, CHARTERER shall have no liability to OWNER for any bunkers, use of equipment, or any costs other than the charter hire as stated on the Charter Order.

## 7. LOSS OF VESSEL

In the event of a total loss of the Vessel, actual or constructive, as constructive total loss will be defined in the policy of hull insurance hereinafter provided, charter hire shall cease as of the time and date of the loss of such Vessel. If the time of the loss of the Vessel is uncertain, then charter hire shall be due through and until the day that the Vessel was last heard from. Further, OWNER and CHARTERER acknowledge and agree that CHARTERER shall owe no further payments whatsoever to OWNER in the event the Vessel the subject of this Agreement is considered a partial or constructive total loss and/or the Vessel is no longer fit to perform the operations required of CHARTERER under this Agreement, except that OWNER will still be entitled to payment for services provided prior to the Vessel's partial, total, or total constructive loss.

## 8. BREAKDOWN AND REPLACEMENT

MG

OWNER shall be permitted up to four (4) hours of down time for repair and maintenance of the Vessel in each ninety-six (96) hour period without deduction in the charter hire rate per day. To the extent down time for repair and maintenance exceeds four (4) hours in a ninety-six (96) hour period for any Vessel, the rate for such Vessel shall be reduced on a pro-rata basis for each hour over the permitted four (4) hours of down time.

**9. FORCE MAJEURE**

In the event of force majeure, such as strikes, accidents, floods, breakdowns, hurricanes, embargoes, acts of God and other causes beyond the reasonable control of the party affected, and if either party promptly gives to the other party hereto notice of such force majeure, then the obligations of the party giving such notice shall be suspended to the extent made necessary by such force majeure during its continuance, provided the effect of such force majeure is eliminated insofar as reasonably possible with all reasonable dispatch.

**10. INSURANCE**

At all times during the term of this Charter, the OWNER shall maintain, at its sole cost and expense (including the payment of all premiums and deductibles), the following policies of insurance in connection with this Charter and in accordance with the terms and conditions stated below:

a. Policies of Insurance to be maintained by OWNER:

(i) Not used.

(ii) Hull and Machinery Insurance in amounts equal to the fair market value of the Vessel or any substitute vessel (when applicable).

(iii) Not used.

(iv) To the extent not included in the Comprehensive General Liability Insurance, Full Force Protection and Indemnity Insurance in the primary amount of at least $1,000,000, pertaining to the Vessel or any substitute vessel, including crew coverage, providing Jones Act Coverage, Voluntary Wreck Removal (including third-party removal of wreck), Collision Liability, Contractual Liability and Pollution and Clean-Up Endorsement. The Protection and Indemnity Insurance shall also include contractual liability coverage with respect to OWNER's obligation to defend, indemnify and hold harmless CHARTERER GROUP under this Charter and shall also include endorsements for Broad Form Comprehensive General Liability, Broad Form Contractual Liability, Independent Contractor/Owners and Products and Completion Operations Endorsements, with the watercraft exclusion to be deleted unless liability and contractual liability is afforded under the Comprehensive Marine General Liability Insurance, said insurance shall be on a "claims arising" form. For vessels engaged in towing operations, the policy shall contain Towers' Liability coverage.

(v) To the extent not included in the Full Force Protection and Indemnity Insurance, Comprehensive General Liability Insurance naming the Vessel and any substitute vessel (when applicable) as covered premises with combined single limits in the primary amount of at least $1,000,000 per occurrence and an aggregate of

$2,000,000 for personal injury, death, property damage and pollution and environmental damage (unless covered elsewhere). If such coverage in not included in OWNER's Protection and Indemnity insurance, the Comprehensive General Liability insurance policy shall also include contractual liability coverage with respect to OWNER's obligation to defend, indemnify and hold harmless CHARTERER GROUP under this Charter and shall also include endorsements for Broad Form Comprehensive General Liability, Broad Form Contractual Liability, Independent Contractor/Owners and Products and Completion Operations Endorsements, with the watercraft exclusion to be deleted unless liability and contractual liability is afforded under the protection and indemnity policies, said insurance shall be on a "claims arising" form.

(vi) Pollution Insurance in the amount of $10,000,000.

(vii) Workers' Compensation insurance (including Longshore and Harbor Workers' Compensation Act coverage) in an amount not less than $1,000,000.

(viii) Employers Liability insurance, including coverage for voluntary compensation, borrowed servant/alternate employer endorsement, and to the extent not covered by the protection and indemnity insurance described above, endorsed to cover Jones Act and Death on the High Seas Act Liability, and to treat a claim <u>in rem</u> as a claim <u>in personam</u>, with limits of not less than $1,000,000 each accident.

(ix) Excess Liability insurance on a following form (including all pollution and environmental damage coverage) in the amount of $25,000,000 in excess of the minimum amounts specified in the foregoing subparts (i), (iii), (iv), (v), (vi), (vii) and (viii) (if the primary policies do not comply with this limit).

b. The insurance policies required to be maintained by OWNER pursuant to this Section shall:

(i) Be issued by insurance companies licensed to do business in Louisiana with general policyholder's ratings of at least A- and a financial rating of a least XI in the most current Best's Insurance Reports.

(ii) Name CHARTERER GROUP (defined below in Section 11) an additional insureds to the extent of the indemnity obligations assumed by OWNER hereunder. For claims falling within the indemnity obligations assumed by OWNER hereunder, all such additional insured coverage shall be primary and non-contributory to any insurance of CHARTERER GROUP.

(iii) Include waivers of subrogation in favor of CHARTERER GROUP for claims falling within the indemnity obligations assumed by OWNER hereunder.

(iv) Provide that the insurance not be canceled or materially changed in the scope or amount of coverage unless thirty (30) days' advance written notice is given to CHARTERER.

(v) Possess all necessary care, custody, and control endorsements for all tows tendered to OWNER for towage.

c. OWNER shall be required to furnish CHARTERER with certificates of all the insurance policies required to be maintained by OWNER pursuant to this Section on or before the Effective Date; and further, OWNER shall be required to provide certificates evidencing the renewal of any such policies within thirty (30) days prior to said renewal. Failure to provide any certificate of insurance shall not prejudice any rights of the CHARTERER. CHARTERER will furnish its certificates of insurance to OWNER upon request.

d. OWNER hereby acknowledges and understands that the insurance obligations of OWNER set forth in this Section are separate from the defense, indemnity and hold harmless obligations of OWNER owed to CHARTERER GROUP under this Charter. Accordingly, OWNER's failure to procure the insurance policies required to be maintained by OWNER pursuant to this Section or the insolvency of any insurer that provides any of the OWNER's insurance policies shall under no circumstances relieve OWNER of its defense, indemnity and hold harmless obligations owed to CHARTERER GROUP under this Charter.

**11. INDEMNIFICATION AND WAIVER**

OWNER hereby agrees to defend, indemnify and hold harmless CHARTERER, its affiliated companies (specifically including Shore Construction, LLC, and Modern American Recycling Services, Inc.), its contractors and subcontractors, its joint venturers (specifically including Bisso Marine, LLC), and the insurers, officers, directors, owners, employees (even if alleged to held to be the borrowed employee or another entity), of all of the foregoing (collectively referred to as "CHARTERER GROUP") from and against any and all demands, liabilities, claims, suits, judgments, proceedings, orders, causes of action, damages, losses, costs and expenses (including reasonable attorneys' fees) on account of any property damage or loss of property of CHARTERER GROUP (including, but not limited to, the loss of any vessel towed by OWNER hereunder, damage to any vessel towed by OWNER hereunder, or damage caused by any vessel towed by OWNER hereunder) when such loss or damage arises from the negligence of OWNER or any member of OWNER GROUP (defined below) or the unseaworthiness of the Vessel.

OWNER hereby agrees defend, indemnify and hold harmless CHARTERER GROUP from and against any and all demands, liabilities, claims, suits, judgments, proceedings, orders, causes of action, damages, losses, costs and expenses (including reasonable attorneys' fees) on account of bodily injury, illness, or death to any employee (even if alleged to held to be the borrowed employee or another entity), agent, representative, owner, or director of OWNER (collectively referred to as "OWNER GROUP"), regardless of the cause thereof.

OWNER hereby agrees defend, indemnify and hold harmless CHARTERER GROUP from and against any and all demands, liabilities, claims, suits, judgments, proceedings, orders, causes of action, damages, losses, costs and expenses (including reasonable attorneys' fees) on account of on account of loss of, or damage to, any property of OWNER or OWNER GROUP, when such loss or damage arises from the negligence of OWNER or any member of OWNER GROUP or the unseaworthiness of the Vessel.

OWNER hereby agrees defend, indemnify and hold harmless CHARTERER GROUP from and against any and all demands, liabilities, claims, suits, judgments, proceedings, orders, causes of action, damages, losses, costs and expenses (including reasonable attorneys' fees) on account of bodily injury, illness, or death to any member of CHARTERER GROUP, when such loss or damage arises from the negligence of OWNER or any member of OWNER GROUP or the unseaworthiness of the Vessel.

OWNER hereby agrees defend, indemnify and hold harmless CHARTERER GROUP from and against any and all demands, liabilities, claims, suits, judgments, proceedings, orders, causes of action, damages, losses, costs and expenses (including reasonable attorneys' fees) on account of any harm to any Third Parties (defined as any person or entity other than a member of CHARTERER GROUP, OWNER, or OWNER GROUP), whether such harm be on account of bodily injury, illness, or death or property damage, when such loss or damage arises from the negligence or fault of OWNER or any member of OWNER GROUP or the unseaworthiness of the Vessel.

OWNER hereby agrees defend, indemnify and hold harmless CHARTERER GROUP from and against any and all demands, liabilities, claims, suits, judgments, proceedings, orders, causes of action, damages, losses, costs and expenses (including reasonable attorneys' fees) on account of any harm to the environment, violation of environmental laws, violation of any law, statute, rule, regulation or order, for any pollution emanating from OWNER's vessel or any other property of OWNER, regardless of the cause thereof. OWNER hereby agrees defend, indemnify and hold harmless CHARTERER GROUP from and against any and all demands, liabilities, claims, suits, judgments, proceedings, orders, causes of action, damages, losses, costs and expenses (including reasonable attorneys' fees) on account of any harm to the environment, violation of environmental laws, violation of any law, statute, rule, regulation or order, for any pollution emanating from any property of CHARTERER GROUP or Third Parties, arising from the negligence of OWNER or the unseaworthiness of the Vessel.

OWNER'S defense and indemnification obligations set forth in this section shall survive the termination of this Agreement until the expiration of any applicable prescriptive period.

OWNER and CHARTERER hereby waive and any all claims or causes of action against the other and its insurers as well as the other's GROUP and their insurers for any consequential damages, including, but not limited to, loss of use, loss of profit, loss of revenue, loss of opportunity, and business interruption damages.

This contract is a personal contract between OWNER and CHARTERER such that it is expressly intended that OWNER or any of its insurers shall not be entitled to limit its liability under the Limitation of Liability Act, 46 U.S.C. § 30105, *et seq.* for any claims asserted by any member of CHARTERER GROUP for defense, indemnity, and additional insured coverage. The purpose of this provision is to insure by specific contractual agreement that CHARTERER GROUP are able to enforce all indemnity obligations and insurance coverage for their benefit under this Agreement to the maximum extent permitted by law.

## 12. OWNER'S PERFORMANCE AND INDEPENDENT CONTRACTOR

The operation, navigation and management of the Vessel shall be under the exclusive control and command of OWNER and its employees. Subject always to the right of the OWNER and its employees to determine whether a movement may be undertaken, the Vessel will be rendered at times as requested by CHARTERER. OWNER is an independent contractor and neither it nor its employees are servants, agents, or employees of CHARTERER, CHARTERER being interested only in the completed performance of the services herein provided.

While it is understood that all of OWNER's vessel employees should qualify as Jones Act seamen, in any cases where OWNER's employees (defined to include OWNER's direct, borrowed, special, or statutory employees) are covered by a state's workers' compensation law (such as the Louisiana Workers' Compensation Act, LA R.S. 23:1021 et seq., or similar statute or law of another jurisdiction), CHARTERER and OWNER agree that all work performed by OWNER and its employees pursuant to this Agreement are an integral part of and are essential to the ability of CHARTERER to

generate CHARTERER's goods, products, and services (for purposes of LA R.S. 23:1061 (A)(1) or similar statute or law of another jurisdiction). Furthermore, CHARTERER and OWNER agree that CHARTERER is the statutory employer of OWNER's employees, pursuant to LA R.S. 23:1061 (A)(3) or similar statute or law of another jurisdiction. Irrespective of OWNER's status as the statutory employer or special employer, pursuant to LA R.A. 23:1031 (C) or similar statute or law of another jurisdiction, of OWNER's employees, OWNER shall remain primarily responsible for the payment of the workers' compensation benefits to its employees, and shall not be entitled to seek contribution for any such payments from OWNER or OWNER's insurers.

**13. ASSIGNMENT AND SUBCHARTER**

OWNER shall not, without prior written consent of CHARTERER, sell, assign, sub-charterer, or pledge this Charter or any of its rights or obligations hereunder; and OWNER shall not, without prior consent CHARTERER, let or hire or permit the use of the Vessel by others unless a substitute vessel is provided in accordance with the provisions of this Charter.

**14. LIENS AND SEIZURE OF VESSEL**

OWNER shall immediately secure the release of the Vessel if seized by legal process as a result of any liens, created and imposed on the Vessel. In the event of any such seizure, this Charter shall be suspended during the period of time of such seizure and no charter hire or any other payments, as set forth in this Charter or any Charter Order, shall be due by CHARTERER during such time. Additionally, CHARTERER is granted the option to terminate this Charter or any Charter Order in the event any Vessel is seized by legal process.

**15. DEFAULT**

OWNER and CHARTERER shall each have the right to terminate this Agreement in the event that the other party materially breaches the terms and conditions of this Charter; however, the non-breaching party shall be required to provide written notification to the breaching party for any alleged material breach of the terms and conditions of this Charter; and in such an event, the breaching party shall have the ability to cure any alleged default within ten (10) days of receiving notice from the non-breaching party, excepting any provision herein that permits CHARTERER to terminate this Charter or any Charter Order immediately.

**16. COMPLIANCE WITH LAWS**

OWNER, at its sole cost and expense, shall cause any Vessel chartered hereunder to at all times comply with all applicable federal, state, regional, county, parish and municipal statutes, ordinances, rules and regulations which may pertain to its use.

**17. GOVERNING LAW AND EXCLUSIVE VENUE**

This Charter shall be construed and governed by the General Maritime Laws of the United States of America. Any lawsuit filed with respect to this Charter, Charter Order, or breach thereof shall be filed exclusively in the United States District Court for the Eastern District of Louisiana. In the event, and only in the event, that the United States District Court for the Eastern District of Louisiana is not available as a forum due to lack of jurisdiction, then the exclusive venue for any lawsuit filed hereunder shall be the Thirty-Second Judicial District Court for the Parish of Terrebonne, State of Louisiana.

**18. ACCIDENTS**

OWNER shall report to CHARTERER as soon as practical, but in no event to exceed forty-eight (48) hours, all accidents, injuries and marine casualties in any way involving the Vessel, OWNER's personnel, CHARTERER'S personnel, or the personnel of any member of CHARTERER GROUP, or any barge or other vessel being towed or shifted under this Charter; provided, however, in the event of any spillage of oil or other petrochemicals, OWNER shall notify CHARTERER and all responsible authorities immediately upon the occurrence of any such spillage.

**19. NOTICES**

All notices necessary to be given under the terms of this Agreement shall be effective upon receipt and shall be in writing and communicated by email to all email addresses listed below:

**To CHARTERER:** Shore Offshore Services, LLC
P.O. Box 1159
Amelia, LA 70340
Attn: Ms. Kristi Caton & Mr. Bryan Samanie
Email: kristi@shoreconstr.com
bryan@shoreconstr.com
accounting@shoreconstr.com

**To OWNER:** DAWN SERVICES, LLC
PO BOX 492
GRETNA, LA 70054
Attn: MICHAEL GRACE
Email: mikeg@dawnoffshore.com

**20. UNDERSTANDING OF THE PARTIES AND MODIFICATIONS**

This Charter contains the entire agreement between the parties and supersedes any and all prior representations, warranties and/or inducements, written or oral, made by OWNER or CHARTERER. This Charter shall not be modified except in writing and any such modification shall not have effect until signed and dated by the parties.

**21. SEVERABILITY**

In the event that any one or more provisions contained in this Charter shall, for any reason, be held invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision of this Charter, and the invalid, illegal or unenforceable provision shall be read out of this Charter. It is the intent of the parties that, should such occur, this Charter shall survive and be reformed to the fullest extent permitted under law.

**22. ATTORNEYS' FEES**

Should either party employ an attorney to enforce any provisions hereof, or to protect its interest in any matter arising out of this Charter or to collect damages for breach of this Charter, or to prosecute or defend any suit or claim resulting from this Charter, then the prevailing party shall be entitled to recover

from the losing party all reasonable costs, charges, expenses, and attorneys' fees reasonably expended or incurred.

**23. WAIVER**

The failure of either party hereto at any time to require performance by the other party of any provision of this Charter shall in no way affect the right of such party thereafter to enforce the same, nor shall any waiver of any breach of any provision hereof by the other party be taken or held to be a waiver by any party of any succeeding breach of such provision, or as a waiver of the provision itself.

**24. SALVAGE**

All salvage and salvage towage shall, after payment of out-of-pocket expenses, awards to the master and crew, and charter hire due OWNER during such salvage efforts, be divided 50% to CHARTERER and 50% to OWNER.

**25. GENERAL AVERAGE**

General Average shall be payable according to the York-Antwerp Rules of 1974 and shall be adjusted in New Orleans, Louisiana. Hire shall not contribute to General Average. In the event of accident, danger, damage, or disaster before or after the commencement of a voyage resulting from any cause whatsoever, whether due to negligence or not, for which or for the consequences of which OWNER is not responsible by statute, CHARTERER shall contribute with OWNER in General Average to the payment of any sacrifices, losses, or expenses of a general average nature which may be made or incurred by OWNER.

**26. COUNTERPARTS**

This Charter may be executed in one or more counterparts, each of which constitutes an original and all of which, taken together, constitute one and the same agreement.

**IN WITNESS WHEREOF,** the parties hereto have executed this Charter upon the date above shown in several counterparts, each of which shall be considered as an original.

**CHARTERER: SHORE OFFSHORE SERVICES, LLC**

By: ______________________

Its: PROJECT DIRECTOR

Print Name: CODY SIMS

MG

**OWNER:** DAWN SERVICES, LLC

By: [signature]

Print Name: MICHAEL GIRACE

Its: VICE PRESIDENT

ML

# EXHIBIT A- CONFIRMATION OF CHARTER ORDER

## I. PARTIES

This Confirmation of Charter Order (the "Charter Order") is entered into by and between Shore Offshore Services, LLC ("CHARTERER") and _[NAME]_ ("OWNER") pursuant to that certain MASTER VESSEL TIME CHARTER dated __________, 2017 (the "Agreement" or "Charter") and is expressly subject to the terms and conditions of such Charter.

## II. IDENTIFICATION OF VESSEL

Vessel Name: ____________________

Official Number: ____________________

Call Sign: ____________________

Horsepower: ____________________

## III. TERM OF CHARTER

Effective on ______________, 20___ at ______ a.m./p.m. Unless provided hereon, the term shall continue indefinitely under the terms of the Charter. If known, the term shall terminate on ______________, 20___ at ______ a.m./p.m.

## IV. PLACE OF DELIVERY AND RE-DELIVERY

Place of Delivery ____________________; Place of Re-Delivery ____________________

## V. CHARTER HIRE

The charter hire rate shall be $______________ per day. Payments shall be due as per Section 6 of the Charter unless provided otherwise hereon:_____________________________________________.

## VI. SPECIAL INSTRUCTIONS, IF ANY

________________________________________________________________________

________________________________________________________________________

________________________________________________________________________

| **CHARTERER: Shore Offshore Services, LLC** | **OWNER:** ____________________ |
|---|---|
| By: ____________________ | By: ____________________ |
| Print Name: ____________________ | Print Name: ____________________ |
| Title: ____________________ | Title: ____________________ |
| Date: ____________________ | Date: ____________________ |

14

Dawn 000401