UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ALL COAST, LLC                *CIVIL ACTION NO. 21-258
                              *Lead Case, c/w 21-337,
VERSUS                        *21-464, 21-822, 21-1968,
                              *21-1969, 21-1981,
SHORE OFFSHORE SERVICES,      *21-1982 and 21-2075
LLC, MODERN AMERICAN          *
RAILROAD SERVICES,            *JUDGE JAY C. ZAINEY
L.L.C., AND MARTIN            *MAGISTRATE JUDGE KAREN
ENERGY SERVICE, LLC           *WELLS ROBY
                              *
                              *APPLIES TO ALL CASES

        * * * * * * * * * * * * * * * * * * *

VIDEOTAPED DEPOSITION OF THOMAS GIBILTERRA, PE
TAKEN AT PUSATERI, JOHNSTON, GUILLOT & GREENBAUM
1100 POYDRAS STREET, SUITE 2250
NEW ORLEANS, LOUISIANA 70163
ON TUESDAY, OCTOBER 3, 2023, AT 10:00 A.M.

**EXHIBIT**

**7**



AmersonWhite®
COURT REPORTING & LITIGATION SUPPORT
866.870.7233    P.O. Box 1554 Hammond, LA 70404    Fax 985.419.0799

1   change at any time from October of 2020 until
2   today?
3          A.   Yes.
4          Q.   First, tell me when did that
5   relationship change.
6          A.   I think in the last year or so.
7          Q.   Okay.  What was the change, the nature
8   of the change?
9          A.   The nature of the change was the dispute
10  over this incident, and that Dawn Services claims
11  that they were essentially a broker for the time
12  we were at Shore and a broker at the time we were
13  at Bisso Marine, which you would have never
14  allowed, instead of the charterer of the vessels.
15  And that changes things for us, because our master
16  vessel time charter does not come into play if
17  that were true, and we do everything with an
18  agreement.
19         Q.   Okay.  So from the time you started with
20  Shore in May of 2017, until about a year ago,
21  Dawn's relationship with Shore remained the same?
22         A.   Pretty much.  Yes, pretty much.
23         Q.    Is there any distinction that you can
24  think of in that time period?
25         A.   Again, infinitives.  I can't tell you

```
 1          Q.    And you received it, correct?
 2          A.    Yes.
 3          Q.    And you responded to it, right?
 4          A.    Yes.
 5          Q.    When did you respond to it?
 6          A.    January 18, 2021.
 7          Q.    So three days later.  You got it on a
 8    Friday.  On Monday, you responded, right?
 9          A.    Yes, sir.
10          Q.    Why don't you read for the Court your
11    response to Tristen Plaisance's request that he
12    provide vessels, or LA Carriers providing
13    anchor-handling tugs and other vessels to Shore?
14          A.    Yes.  It says, "Good afternoon, Tristen.
15    Thanks for reaching out.  In an effort to minimize
16    our vendor numbers, we broker most of our tugs
17    through Dawn Services.  Mike Grace is cc'd on the
18    e-mail.  We regularly use tugs to bring material
19    barges in and out of Gibson.  Please reach out to
20    them and get on the call list.  Thanks."
21          Q.    So you didn't tell Tristen Plaisance,
22    "hey, we charter barges from Dawn," did you?
23          A.    Not in this e-mail.
24          Q.    You told him, we broker vessels --
25          A.    Yes, but like I said before, I don't
```

Gibilterra, PE, Thomas 10/3/2023

```
 1         A.   That's not what I said.
 2         Q.   So in this situation, Tristen Plaisance
 3   wanted to provide the same service to you that
 4   Crosby was providing, an anchor-handling tug,
 5   correct?
 6         A.   He said, yes, we have experience with
 7   that.  That's what he wanted to provide.
 8         Q.   And you said, "hey, we broker vessels
 9   through Dawn, talk to them?"
10              MR. GUILLOT:  Asked and answered.
11              THE WITNESS:  That's what it says, yes.
12   EXAMINATION BY MR. REISMAN:
13         Q.   And you wrote that?
14              MR. GUILLOT:  Asked and answered.
15              THE WITNESS:  Yes.
16   EXAMINATION BY MR. REISMAN:
17         Q.   You talked earlier about missed
18   opportunities with respect to the breakaway of the
19   Thor.  What opportunities do you believe Dawn
20   missed?
21         A.   I think somebody could have -- said that
22   they could have gotten -- done something different
23   than the boat -- than the boat just hanging off of
24   us the whole time.
25         Q.   But you don't know whether anybody was
```

```
 1    remained with the materials barge that was working
 2    with the Thor, correct?
 3         A.   That's what I understand.
 4         Q.   So one tug stood by the materials barge,
 5    but the other was released, correct?
 6         A.   That's what I understand.
 7         Q.   Why did Shore release that second assist
 8    tug?
 9         A.   Because we had one tug with each barge.
10    And with the weather forecast, that decision was
11    made that we didn't need it.
12         Q.   When Shore hired the Crosby Endeavor,
13    whether through Dawn or otherwise -- we're not
14    going to rehash that issue -- but when Shore hired
15    that barge, did it know that a hurricane was going
16    to be affecting the Thor?
17         A.   I don't know.  With a crystal ball,
18    there's no way to know that at the time it was
19    hired.
20         Q.   It was in October of 2020, correct?
21         A.   Yes, but we didn't know at the time of
22    the hiring.
23         Q.   I'm not saying that you knew it couldn't
24    happen.  My question is:  At that point in time,
25    you didn't know that there was going to be a
```



```
 1                REPORTER'S CERTIFICATE
 2          This certification is valid only for a
 3     transcript accompanied by my original signature
 4     and original seal on this page.
 5          I, ANNA C. COATES, CCR, RPR, do hereby
 6     certify that THOMAS GIBILTERRA, PE, to whom the
 7     oath was administered, after having been duly
 8     sworn by me upon authority of R.S. 37:2554, did
 9     testify as herein above set forth in the foregoing
10     456 pages; that this testimony was reported by me
11     in the stenotype reporting method, was prepared
12     and transcribed by me and is a true and correct
13     transcript to the best of my ability; that the
14     transcript has been prepared in compliance with
15     transcript format guidelines required by rules of
16     the board; that I have acted in compliance with
17     the prohibition on contractual relationships, as
18     defined by Louisiana Code of Civil Procedure
19     Article 1434 and in rules and advisory opinions of
20     the board; that I am not related to counsel or the
21     parties hereto, nor am I otherwise interested in
22     the outcome of this matter.
23     _____        _____
24     DATE              ANNA COATES, CCR, RPR
25                       LOUISIANA CCR NO. 97018
```

