UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| All Coast, LLC | * | No. 2:21-CV-00258 (lead case) c/w |
| | * | 21-337, 21-464, 21-822, 21-1968, |
| | * | 21-1969, 21-1981, 21-1982, |
| v. | * | 21-2075, 21-2227 |
| | * | (Applies to all cases) |
| | * | |
| | * | Judge Zainey |
| | * | |
| Shore Offshore Services, LLC | * | Magistrate Judge Dossier |

**STATEMENT OF DISPUTED MATERIAL FACTS PURSUANT TO LR 56.2**

Claimant contends that the following material facts, established by Dawn's corporate representative Michael Grace, Jr., present genuine issues precluding summary judgment:

1. When Shore came to Dawn with a job description, Grace testified that Dawn would "go out to the vessel owner and discuss it with them" to determine whether the vessel owner agreed or disagreed that their vessel could handle the job. (Grace Depo. at 194).

2. Dawn specifically discussed with third-party vessel owners "whether the owner believes that the vessel that it's going to provide is sufficient to perform that job." (Grace Depo. at 195).

3. When Shore requested an anchor-handling tug for the THOR, wanting "a big tug," Grace testified: "So when I went to Crosby, I explained to them, the derrick barge that they were going to be working for and the job details." Kurt Crosby then called Tommy Gibilterra to discuss what was proposed—the CROSBY ENDEAVOR. (Grace Depo. at 196).

1

4. Dawn would broker a vessel for Shore not only when all Dawn vessels were in use, but also "when we didn't have the vessel that was adequate to do the job, the size of the vessel that they needed," demonstrating Dawn made assessments about vessel adequacy for specific jobs. (Grace Depo. at 477-78).

5. When asked how Dawn was able to determine whether Dawn had a vessel that was sufficient for Shore's use, Grace testified: "Shore would tell me." Grace then had to assess Dawn's fleet capabilities against Shore's requirements. (Grace Depo. at 478).

6. When Shore contacted Dawn and said "we'd like you to help us broker a vessel," Shore would provide parameters of what they were looking for, and "Dawn goes out and tries to find vessels that meet those parameters." (Grace Depo. at 480).

7. During brokered jobs, if one of the vessels Dawn brokered required a crew change, that information would "sometimes" be conveyed to Dawn's customer, with Dawn receiving that information from the third-party vessel owner. (Grace Depo. at 210).

8. Dawn provided estimated times of arrival (ETAs) of third-party vessels to Shore during operations, receiving that information from the vessel owners and passing it along to Shore. (Grace Depo. at 251-52).

9. Dawn communicated information about vessel delays from third-party vessel owners to Dawn's customers "sometimes" during the course of operations. (Grace Depo. at 209-10).

10. Dawn received information about fuel or lube replacement needs from third-party vessel owners on day-rate jobs and would "sometimes" convey that information to Dawn's customer. (Grace Depo. at 210).

11. Grace testified that Dawn received billing logs or vessel logs from third-party vessel owners, then created its own invoice, marked it up, and issued that invoice to its customer. (Grace Depo. at 211).

12. Dawn arranged for the LA MADONNA and LA ELITE to serve as tail tugs to bring the THOR into Port Fourchon to seek safe harbor during Hurricane Zeta. (Grace Depo. at 266-67).

13. On October 26, 2020, at 3:41 p.m.—just two days before the incident—Grace sent an email to Cody and Tommy at Shore stating: "Cody, I spoke with the CROSBY ENDEAVOR and right now they are comfortable only using the LA MADONNA and the LA ELITE... I have the LA COMMANDER available if we need on stand-by. The two tugs plan on meeting up with the THOR around 2100 tonight at the sea buoy." (Grace Depo. at 266-67).

14. When Grace said "I spoke with the CROSBY ENDEAVOR," he clarified he meant Ivy Danos or somebody shoreside at Crosby. When he said "I have the LA COMMANDER available if we need on stand-by," he was relaying that Dawn could provide additional vessel support. (Grace Depo. at 267).

15. On October 26, 2020, at 10:07 a.m., Grace wrote to Ivy Danos at Crosby: "Ivy, what is the ETA to Belle Pass jetties? I just want to make sure the LA MADONNA and LA ELITE are there for you." This demonstrates Dawn's coordination role between multiple parties during the hurricane response. (Grace Depo. at 268-69).

16. Grace testified that he "broker[s] vessels to" Shore and that Dawn also "provide[s] our vessels" to Shore. (Grace Depo. at 14).

17. Shore's Director of Operations confirmed in January 2021 that Shore "broker[s] most of our tugs through Dawn Services" and directed potential vessel operators to contact Dawn to "get on the call list." (Gibilterra Depo., Ex. 240, referenced in Grace Depo.).

18. Grace generally communicated with "the project management team, Tommy and Cody, Mauricio" at Shore when Dawn brokered vessels. (Grace Depo. at 215).

19. Grace communicated primarily with Ivy Danos at Crosby when Dawn provided Crosby boats to customers. (Grace Depo. at 214).

20. While Grace testified that Dawn was "just a broker" and "the middle man" when passing information between parties (Grace Depo. at 251-52), his testimony establishes that Dawn's role included: discussing vessel suitability with owners, explaining project details, assessing vessel adequacy, maintaining ongoing operational communications, and coordinating multi-party operations during hurricane response.

21. Grace testified that when Dawn brokers a boat, Dawn does not make communications with the brokered vessel offshore regarding work being performed, and does not make communications with its customer offshore about what type of work is being performed on a particular day. (Grace Depo. at 216).

22. However, Grace also testified that when Dawn is chartering a vessel, "I would be involved in everything, from making sure the vessel has got the proper people on board, that it's ready to go to work, that it's manned, it's got the -- it's full of fuel, it's got all the equipment it needs to do the services that we're going to provide for our customer." (Grace Depo. at 216).

23. Grace understood at the time that the THOR was coming in to Port Fourchon to seek safe harbor from Hurricane Zeta. (Grace Depo. at 135).

4

24. Dawn remained actively involved during the hurricane demobilization, as evidenced by Grace's October 26, 2020 communications coordinating tail tugs and offering standby vessel support. (Grace Depo. at 266-67).

Respectfully submitted:

*/s/John Love Norris, IV*
Brian King, La. Bar No. 24817
John Love Norris, IV, La. Bar No. 35269
Michael J. Simonson, La. Bar No. 34091
The King Firm, LLC
2912 Canal Street
New Orleans, LA 70119
Phone 504-909-5464
Fax 800-901-6470
E-mail: jnorris@kinginjuryfirm.com