## Page 1

```
        UNITED STATES DISTRICT COURT
        EASTERN DISTRICT OF LOUISIANA

ALL COAST, LLC       *  CIVIL ACTION
                     *  NO. 21-258, C/W 21-337,
                     *  21-464, 21-822, 21-1968,
                     *  21-1969, 21-1982,
VERSUS               *  21-1981, 21-2075,
                     *  21-2227
                     *
                     *  SECTION "A"
SHORE OFFSHORE       *  HON. JAY C. ZAINEY
SERVICES, LLC        *  MAGISTRATE: (4)
                     *  HON. KAREN WELLS ROBY
                     *
                     *  APPLIES TO ALL CASES

   FED. R. CIVIL P. RULE 30(B)(6) VIDEO
      DEPOSITION OF CROSBY TUGS, LLC

     Deposition of CROSBY TUGS, LLC, through
its Corporate Representative, WADE SAVOY,
Director of QHSE, 17751 Highway 3235,
Galliano, Louisiana 70354, taken in person and
via ZOOM Videoconference, in the offices of
Jones Walker, LLP, 201 St. Charles Avenue,
Suite 5100, New Orleans, Louisiana 70170, on
Thursday, the 2nd day of November, 2023.


        APPEARANCES: (In Person)
             ARNOLD & ITKIN, LLP
             (By:  John G. Grinnan, Jr., Esquire)
             6009 Memorial Drive
             Houston, Texas 77007

                (Attorneys for Claimants)
```

## Page 2

```
 1   APPEARANCES: (In Person)
 2
        PUSATERI, JOHNSTON,
 3      GUILLOT & GREENBAUM, LLC
        (By:  Gavin H. Guillot, Esquire
 4            Jacob A. Altmyer, Esquire
        1100 Poydras Street, Suite 2250
 5      New Orleans, Louisiana 70163
 6         (Attorneys for Modern American
             Railroad Services, L.L.C., and
 7           Shore Offshore Services, LLC)
 8      JONES WALKER, LLP
        (By:  Alfred J. Rufty, III, Esquire)
 9      201 St. Charles Avenue, Suite 5100
        New Orleans, Louisiana 70170
10
           (Attorneys for Crosby Tugs, LLC)
11
        ADAMS & REESE, LLP
12      (By:  Charles A. Cerise, Jr., Esquire)
        701 Poydras Street, Suite 4500
13      New Orleans, Louisiana 70139
14         (Attorneys for Harvey Gulf
             International Marine, LLC)
15
        DAIGLE, FISSE & KESSENICH
16      (By:  Michael W. McMahon, Esquire)
        227 Highway 21
17      Madisonville, Louisiana 70447
18         (Attorneys for Martin Interests)
19      FLANAGAN PARTNERS, LLP
        (By:  Laurent J. Demosthenidy, Esquire)
20      201 St. Charles Avenue, Suite 3300
        New Orleans, Louisiana 70170
21
           (Attorneys for Weeks Marine, Inc.,
22           and GOL, LLC)
23
24
25
```

## Page 3

```
 1   APPEARANCES:  (VIA ZOOM)
 2      LISKOW & LEWIS, APLC
        (By:  David L. Reisman, Esquire)
 3      701 Poydras Street, Suite 5000
        New Orleans, Louisiana 70139
 4
           (Attorneys for Dawn Services, LLC)
 5
        ALLEN & GOOCH
 6      (By:  Alan J. Meche, Esquire)
        2000 Kaliste Saloom Road, Suite 400
 7      Lafayette, Louisiana 70508
 8         (Attorneys for Gulf Logistics, LLC,
             and C&G Boats, Inc.)
 9
        PALMINTIER LAW GROUP
10      (By:  Michael C. Palmintier, Esquire)
        618 Main Street
11      Baton Rouge, Louisiana 70801
12         (Attorneys for Terrynn Tyrell Lyons)
13      SPAGNOLETTI LAW FIRM
        (By:  Charles Mills, Esquire)
14      401 Louisiana Street, 8th Floor
        Houston, Texas 77002
15
           (Attorneys for Montrell Smith and
16           Randy Rials)
17      THE MOELLER FIRM, LLC
        (By:  Kassie Lee Richbourg, Esquire)
18      650 Poydras Street, Suite 2516
        New Orleans, Louisiana 70130
19
           (Attorneys for All Coast, LLC)
20
        GALLOWAY, JOHNSON, TOMPKINS,
21      BURR & SMITH, APLC
        (By:  Patrick J. Schepens, Esquire)
22      #3 Sanctuary Boulevard, Suite 301
        Mandeville, Louisiana 70471
23
           (Attorneys for Coastal Towing, LLC,
24           and Talisman Casualty Insurance
             Company, LLC)
25
```

## Page 4

```
 1   APPEARANCES (VIA ZOOM):
 2      CHAFFE, McCALL, LLP
        (By:  Will Kelly, Esquire)
 3      1100 Poydras Street, Suite 2300
        New Orleans, Louisiana 70163
 4
           (Attorneys for Chubb Underwriting
 5           Agencies, Ltd.)
 6      FRILOT, LLC
        (By:  Blake C. Donewar, Esquire)
 7      1100 Poydras Street, Suite 3700
        New Orleans, Louisiana 70163
 8
           (Attorneys for the Greater
 9           Lafourche Port Commission)
10      DEGAN, BLANCHARD & NASH, APLC
        (By:  Philip C. Brickman, Esquire)
11      Texaco Center, Suite 2600
        400 Poydras Street
12      New Orleans, Louisiana 70130
13         (Attorneys for U.S. Specialty
             Insurance Company)
14
15   VIDEOGRAPHER:
16      MICHAEL BERGERON
        PSR, INC.
17
     REPORTED BY:
18
        LINDA G. GRIFFIN, RPR
19      CERTIFIED COURT REPORTER
20              ***
21
22
23
24
25
```

Video Deposition of Crosby Tugs, LLC through Wade Savoy
All Coast, LLC v. Shore Offshore Services, LLC

Page 365

1  EXAMINATION BY MR. GRINNAN:
2     Q   -- was kept safe?
3        MR. RUFTY:
4            Don't answer.  Don't answer.
5     Don't answer.  Please, I've asked --
6     I've asked, and maybe I misunderstood,
7     but I think I'm entitled to ask you
8     where you think this line of questioning
9     falls within the deposition notice.
10       MR. GRINNAN:
11           Let's go off the record.  This
12    is --
13       MR. McMAHON:
14           No.  No, no, no.  Do it on the
15    record.
16 EXAMINATION BY MR. GRINNAN:
17    Q   All right.  Did anybody warn you
18 that no vessels were supposed to be moored at
19 the Martin's facility?
20    A   No.
21    Q   Wouldn't you have liked to have
22 known that, if that was a written policy and
23 procedure that Martin's dock had in place?
24    A   Yes.
25    Q   Okay.  Okay.  Did anybody warn you

Page 366

1  that all personnel, customers and clients are
2  to be evacuated, and there are no exceptions
3  to that, under Martin's policies and
4  procedures?
5     A   I'm sorry, you're asking me, did
6  anybody warn me of that?
7     Q   Yes.
8     A   No one told me that.
9     Q   Okay.  Is that also something you
10 would have liked to have known, that Martin
11 had a no exceptions rule that no personnel, no
12 customers and clients were supposed to still
13 be at that facility and they were all supposed
14 to be evacuated?
15    A   And the question is, did I know?
16    Q   Yes.
17    A   I did not know.
18    Q   Would you have liked to have known
19 that?
20    A   Yes.
21    Q   Thank you.  All right.  If you can
22 go to Page No. 46.  I'll give you a Bates
23 stamp, too.
24    A   46?
25    Q   It's Martin 689.

Page 367

1     A   Yeah, got it.
2        MR. RUFTY:
3            Is this still part of the
4     Martin hurricane plan?
5        MR. GRINNAN:
6            Yeah.
7  EXAMINATION BY MR. GRINNAN:
8     Q   The top of the page says, "Identify
9  hazard associated with preparing for a
10 hurricane."  Do you see that?
11    A   Yes.
12    Q   Okay.  Under "Scope," first
13 sentence says, "The scope of this section is
14 to identify hazards that we, as a company,
15 will face before and after a hurricane."  Do
16 you see that?
17    A   Yes.
18    Q   All right, third sentence.  "As
19 demonstrated in past events, heavy rains, high
20 winds and storm surge are the major threats to
21 our company's infrastructure."  Did I read
22 that reasonably correctly?
23    A   Yes.
24    Q   Did anybody at Martin's or anybody
25 else warn you at Crosby that past -- they had

Page 368

1  knowledge of past events where there was heavy
2  rains, high winds and storm surge that showed
3  major threats to the company's infrastructure?
4        MR. McMAHON:
5            Objection.
6        THE WITNESS:
7            No.
8  EXAMINATION BY MR. GRINNAN:
9     Q   Is that also something you would
10 have liked to have known?
11    A   Yes.
12    Q   Okay.  Because the safety of your
13 crew was directly impacted by the integrity of
14 that dock.  Fair?
15       MR. RUFTY:
16           Object to form.
17       THE WITNESS:
18           Yes.
19 EXAMINATION BY MR. GRINNAN:
20    Q   Okay.  And if Martin had actual
21 knowledge, from past events, that these storms
22 could actually be huge threats to their
23 infrastructure, that's something you, at
24 Crosby, would have liked to have known,
25 because that impacts the safety of your crew,

Video Deposition of Crosby Tugs, LLC through Wade Savoy
All Coast, LLC v. Shore Offshore Services, LLC

Page 369

1  is that fair?
2        MR. McMAHON:
3            Objection.  Facts not in
4      evidence.
5        THE WITNESS:
6            Yes.
7  EXAMINATION BY MR. GRINNAN:
8     Q    Okay.  It also impacts the safety
9  of crewmembers on board the THOR, is that
10 fair?
11       MR. McMAHON:
12           Objection.  Facts not in
13     evidence.
14       THE WITNESS:
15           Yes.
16 EXAMINATION BY MR. GRINNAN:
17    Q    Okay.  People on board the THOR,
18 people on board the Crosby, they were entitled
19 to know this warning information, is that
20 fair?
21       MR. RUFTY:
22           Object to form.
23       THE WITNESS:
24           Yes.
25 EXAMINATION BY MR. GRINNAN:

Page 370

1     Q    Okay.  Because safety is supposed
2  to be the No. 1 priority, right?
3     A    Yes.
4     Q    And when a company has notice of
5  past events, whether it's high winds, whether
6  it's storm surge and heavy rains that destroy
7  infrastructure, people who are hooked up to
8  that infrastructure, getting ready for a
9  hurricane, would be entitled to know that.  Is
10 that fair?
11       MR. McMAHON:
12           Objection.
13       THE WITNESS:
14           Yes.
15       MR. McMAHON:
16           Facts not in evidence.
17 EXAMINATION BY MR. GRINNAN:
18    Q    All right.  If you can go to Page
19 No. -- actually, let's move on.
20    A    I don't want to break it.
21    Q    You're fine.  All right.  All
22 right.  Do you still have all those exhibits
23 in front of you?
24    A    They're somewhere.
25    Q    The Vessel Incident Report, I

Page 371

1  believe, was maybe Exhibit 256.
2     A    They're not in order, so bear with
3  me.
4     Q    It's Crosby 0003.  It's y'all's
5  incident investigation?
6     A    Yeah.  0003?
7     Q    Yeah.  Is it marked as an exhibit?
8     A    This copy isn't, but I don't know
9  if -- I think he --
10       MR. GUILLOT:
11           I don't think I marked it as an
12     exhibit, John.
13       MR. GRINNAN:
14           Anyway -- we don't need to.
15 EXAMINATION BY MR. GRINNAN:
16    Q    It's Bates stamped Crosby 0003, and
17 if you can flip to the back just so we can get
18 a reference on the record.  The last Bates
19 stamp is Crosby 0008.  Is that what you see in
20 front of you?
21    A    Yes.
22    Q    All right.  That is your incident
23 investigation and then statements that, I
24 guess, were taken during that investigation?
25    A    It's an incident report and

Page 372

1  statement forms.
2     Q    Okay.  And the five pages behind
3  the first page, are those the statement forms?
4     A    I don't know how many, but, yeah,
5  these are all statements.
6     Q    Okay.
7     A    Three, four, five, yes.
8     Q    And those were from the -- each one
9  was from one of the five crewmembers that were
10 on board the ENDEAVOR during the incident?
11    A    Yes.
12    Q    Okay.  And if you go to Page No. 2.
13    A    Wait.  They're not in order, wait.
14 Page No. 2?  We don't have a "2."
15    Q    Let me strike that.  If you can go
16 to Crosby 0004.  Okay.  Crosby 0004 is the
17 Walter Everett statement that was gathered for
18 the incident report, is that fair?
19    A    Yes.
20    Q    Okay.  And his is typed -- well, if
21 you come down -- strike all that.  If you come
22 down to the middle of the page, you see where
23 it says, "I witnessed the incident," and he
24 checked "Yes"?
25    A    Yes.