Transcript of the Testimony of

# JOHN MICHAEL JOHNSON, JR.

March 26, 2024

ALLCOAST, LLC v. SHORE OFFSHORE, ET AL



P.O. Box 1554 ▪ Hammond ▪ Louisiana 70404
**(Toll Free) 866.870.7233 ▪ 985.542.8685 ▪ (Fax) 985.419.0799**
office@amersonwhite.com ▪ www.amersonwhite.com

```
                                                    185
 1        Objection.
 2        THE WITNESS:
 3           I didn't fully understand.  You were
 4        echoing.
 5   BY MR. GRINNAN:
 6        Q.  Sure.  What this tells us is that
 7   internally at Martin's they have knowledge from
 8   past events that heavy rains, high winds and
 9   storm surge are major threats to Martin's
10   infrastructure, fair?
11        A.  Fair.
12        MS. DANTIN:
13           Objection.
14   BY MR. GRINNAN:
15        Q.  And based on this prior experience,
16   it appears internally at Martin's they have
17   identified a potential hazard with the integrity
18   of their infrastructure during hurricanes, fair?
19        A.  Fair.
20        MS. DANTIN:
21           Objection.
22   BY MR. GRINNAN:
23        Q.  Did anybody at Martin's warn you
24   that based on past events that Martin's dock
25   could -- could experience some major damage as a
```

```
                                                    186
 1   result of heavy rains, high winds or storm surge?
 2        MS. DANTIN:
 3           Objection.
 4        THE WITNESS:
 5           I'm sorry.  You were echoing again.
 6   BY MR. GRINNAN:
 7        Q.  I don't know why that -- I think
 8   it's Ms. Dantin's -- whatever.  Strike all that.
 9           Did anybody at Martin's warn you
10   that based on Martin's experience with past
11   events that the hurricane that was approaching
12   was a major threat to Martin's dock?
13        A.  No, sir.
14        MS. DANTIN:
15           Objection.
16   BY MR. GRINNAN:
17        Q.  Did any -- Did anybody warn you at
18   Martin's that based on past experience that the
19   infrastructure might not be able to hold up
20   during a hurricane?
21        MS. DANTIN:
22           Objection.
23        THE WITNESS:
24           No.
25   BY MR. GRINNAN:
```

```
                                                    187
 1        Q.  If you had been provided this
 2   information from Martin's about Martin's past
 3   experience where their company's infrastructure
 4   had been subject to, I guess, damage from prior
 5   storms and it was a major threat to that dock,
 6   wouldn't you have chosen a different dock to go
 7   to where there wasn't such a threat?
 8        MS. DANTIN:
 9           Objection.  Objection.  Facts not in
 10          evidence.
11        THE WITNESS:
12           I -- I wasn't making the call at the
13        time.
14   BY MR. GRINNAN:
15        Q.  Do you believe that the D/B THOR, if
16   you-all had been told about Martin's past
17   experience where hurricanes had been major
18   threats to their infrastructure, do you believe
19   the D/B THOR would have chosen a different dock
20   to moor at during the hurricane?
21        MS. DANTIN:
22           Objection.
23        THE WITNESS:
24           So the person making the call, I
25        feel like that would be my opinion.  I
```

```
                                                    188
 1        feel he would have chose a different place
 2        because that would have raised his
 3        eyebrows, you know.
 4   BY MR. GRINNAN:
 5        Q.  For sure.  This is the sort of thing
 6   that you believe you would be entitled to know
 7   before Martin's takes your money and allows you
 8   to dock at their dock during a hurricane, fair?
 9        MS. DANTIN:
10           Objection.
11        THE WITNESS:
12           Yes.  Fair.
13   BY MR. GRINNAN:
14        Q.  Okay.  And, to your knowledge, this
15   information that Martin's had internally on their
16   knowledge of past events with hurricanes was
17   withheld from you and other members onboard the
18   D/B THOR, true?
19        MS. DANTIN:
20           Objection.  Facts not in evidence.
21        THE WITNESS:
22           To answer that question, that's what
23        it appears to have happened.
24   BY MR. GRINNAN:
25        Q.  All right.  It certainly -- strike
```



```
                                                             189
 1    that.
 2              Martin's knowledge and experience
 3    with these past events, that was something that
 4    was withheld from you, true?
 5          MS. DANTIN:
 6              Objection.
 7          THE WITNESS:
 8              Yes, it was withheld from me
 9          personally, yes.
10    BY MR. GRINNAN:
11       Q.  Okay.  And you're not aware of
12    Martin's ever providing this information about
13    Martin's knowledge and experience with past
14    events with anybody else onboard the THOR, right?
15          MS. DANTIN:
16              Objection.
17          THE WITNESS:
18              Correct.
19    BY MR. GRINNAN:
20       Q.  Instead of getting this warning from
21    Martin's -- well, strike that.
22              You would consider information like
23    this to be a warning; is that fair?
24          MS. DANTIN:
25              Objection.
```

```
                                                             190
 1          THE WITNESS:
 2              Information like this would be a
 3          warning to me, to us coming in?
 4          MR. GRINNAN:
 5              Yeah.
 6          THE WITNESS:
 7              Agreed, yes.
 8    BY MR. GRINNAN:
 9       Q.  Okay.  You would expect Martin's to
10    provide you with this sort of warning about
11    hurricanes being major threats to its dock prior
12    to taking your money, the D/B THOR's money and
13    allowing it to dock there during a hurricane,
14    true?
15          MS. DANTIN:
16              Objection.
17          THE WITNESS:
18              True.
19    BY MR. GRINNAN:
20       Q.  And instead of providing warnings
21    about Martin's dock being threatened by
22    hurricanes during -- during a hurricane, Martin's
23    took a fee from D/B THOR and allowed them to dock
24    there even though their internal policies said no
25    mooring during hurricanes, no exceptions, and
```

```
                                                             191
 1    that hurricanes were major threats to Martin's
 2    infrastructure, fair?
 3          MS. DANTIN:
 4              Objection.
 5          THE WITNESS:
 6              Minus the money part, I would agree.
 7          I don't know how the money thing went.
 8    BY MR. GRINNAN:
 9       Q.  Well, you know Martin's got paid for
10    the THOR being able to use their dock, right?
11       A.  I don't know that.
12          MS. DANTIN:
13              Objection.
14          THE WITNESS:
15              I'm not -- I'm not involved in where
16          the money goes or who they paid for what
17          or anything.  All I know is we docked
18          there.
19    BY MR. GRINNAN:
20       Q.  Okay.  And if you had been provided
21    with any of the warning -- strike that.
22              If you -- strike that again.
23              If the D/B THOR had been provided
24    with any of these warnings that we have gone
25    through in Martin's hurricane preparedness plan,
```

```
                                                             192
 1    do you believe it's more likely than not the D/B
 2    THOR would have chosen another location to moor
 3    during the hurricane in this case?
 4          MS. DANTIN:
 5              Objection.
 6          THE WITNESS:
 7              I would have to say so, possibly.
 8          I'm sure, yeah.
 9    BY MR. GRINNAN:
10       Q.  More likely -- you think it's more
11    likely than not?
12       A.  Correct, more likely.
13       Q.  Okay.  Would you consider this to be
14    a major failure on Martin's part in failing to
15    warn you about information contained in Martin's
16    hurricane preparedness plan?
17          MS. DANTIN:
18              Objection.
19          THE WITNESS:
20              Yes.  I would have to say they
21          failed to give me information for me, that
22          policy, yes, I didn't get it.
23    BY MR. GRINNAN:
24       Q.  And you're -- you have no
25    information or evidence that Martin's provided
```



AmersonWhite
COURT REPORTING & LITIGATION SUPPORT
866.870.7233   P.O. Box 1554 Hammond LA 70404   Fax 985.419.0799

## 193

```
 1   this hurricane preparedness plan or any of the
 2   information in this plan to anybody at -- anybody
 3   on the THOR, right?
 4        MS. DANTIN:
 5            Objection.
 6        THE WITNESS:
 7            Correct.
 8   BY MR. GRINNAN:
 9        Q.   Same thing with everybody else at
10   Shore.  You have no information or evidence that
11   Martin's provided the hurricane preparedness plan
12   or any of the information in Martin's hurricane
13   preparedness plan to any employee at Shore, true?
14        MS. DANTIN:
15            Objection.
16        THE WITNESS:
17            True.
18   BY MR. GRINNAN:
19        Q.   And we know that I guess based on
20   what we have gone through so far -- strike that.
21            Based on what we have gone through
22   so far, one of the causes of this incident was
23   Martin's failure to provide the information and
24   the hurricane preparedness plan because it's more
25   likely than not if it had been provided that
```

## 194

```
 1   you-all would have gone elsewhere and you-all
 2   never would have broken away from Martin's dock;
 3   is that fair?
 4        MS. DANTIN:
 5            Objection.
 6        THE WITNESS:
 7            I would say that's fair.
 8   BY MR. GRINNAN:
 9        Q.   Okay.  As a direct result of
10   Martin's failure we know the breakaway occurred,
11   fair?
12        A.   Can you repeat that?
13        MS. DANTIN:
14            Objection.
15   BY MR. GRINNAN:
16        Q.   As a direct result of Martin's
17   failure, the THOR was allowed to dock and moor
18   during the hurricane and it broke away, fair?
19        MS. DANTIN:
20            Objection.
21        THE WITNESS:
22            It appears to be fair.
23   BY MR. GRINNAN:
24        Q.   Okay.  And so if the jury's trying
25   to figure out the causes of some of the injuries
```

## 195

```
 1   in this case, you would be a witness who would
 2   say that one of the causes was Martin's failure
 3   to warn about all of the information in the
 4   hurricane preparedness plan, fair?
 5        A.   Correct.
 6        MS. DANTIN:
 7            Objection.
 8   BY MR. GRINNAN:
 9        Q.   Because if Martins had provided that
10   information, it's more likely than not that some
11   of the injuries that are claimed in this suit
12   would have been prevented, fair?
13        MS. DANTIN:
14            Objection.
15        THE WITNESS:
16            Fair.
17   BY MR. GRINNAN:
18        Q.   On top of that, it's pretty clear
19   based on the hurricane preparedness plan that
20   Martin's dock was not properly -- was not a
21   proper infrastructure for mooring a vessel like
22   the THOR during the hurricane, but that was never
23   told to you-all, right?
24        MS. DANTIN:
25            Objection.
```

## 196

```
 1        THE WITNESS:
 2            Right.
 3   BY MR. GRINNAN:
 4        Q.   All right.  And we know that the
 5   Martin's infrastructure failed to provide a safe
 6   place to keep the THOR moored up during the
 7   hurricane -- the hurricane in this case, true?
 8        MS. DANTIN:
 9            Objection.  Facts not in evidence.
10        THE WITNESS:
11            Okay.  One more time, please.  Can
12        you repeat that?
13   BY MR. GRINNAN:
14        Q.   Yeah.  We know Martin's dock failed
15   to provide a safe place to keep the THOR moored
16   during the hurricane, true?
17        A.   It appears to be true.
18        MS. DANTIN:
19            Objection.  Facts not in evidence.
20   BY MR. GRINNAN:
21        Q.   And when you went and visited the --
22   the vessel after the hurricane, you saw that
23   parts of the dock had failed, true?
24        A.   Yes.
25        MS. DANTIN:
```

AmersonWhite
COURT REPORTING & LITIGATION SUPPORT
866.870.7233   P.O. Box 1554  Hammond LA 70404   Fax 985.419.0799

**201**

```
 1    MS. DANTIN:
 2         Objection.
 3    THE WITNESS:
 4         It appears to be fair.
 5  BY MR. GRINNAN:
 6    Q.  Martin's dock failed to provide an
 7  adequate infrastructure to keep the D/B THOR
 8  moored during the hurricane, true?
 9    MS. DANTIN:
10         Objection.
11    THE WITNESS:
12         It appears to be true.
13  BY MR. GRINNAN:
14    Q.  And Martin's failed to provide any
15  warnings, as far as you know, that were contained
16  in the hurricane preparedness plan for 2020
17  setting forth Martin's knowledge about hurricanes
18  being major threats to their dock, true?
19    MS. DANTIN:
20         Object -- objection.
21    THE WITNESS:
22         True.
23  BY MR. GRINNAN:
24    Q.  All of those failures were a cause
25  of this incident, true?
```

**202**

```
 1    MS. DANTIN:
 2         Objection.
 3    THE WITNESS:
 4         It would appear to be true.
 5  BY MR. GRINNAN:
 6    Q.  Okay.  And then CROSBY, on the other
 7  side of it, they also failed to keep you-all
 8  moored during the hurricane as well, true?
 9    MR. RUFTY:
10         Object to form.  Asked and answered
11  a few times.
12    THE WITNESS:
13         It appears to be true.
14  BY MR. GRINNAN:
15    Q.  All right.  And so when you look at
16  it now after we've had enough time to grapple
17  with what happened, it's clear this incident was
18  the result of failures on Martin's part and
19  Crosby's part, true?
20    MR. RUFTY:
21         Object to form.
22    THE WITNESS:
23         It appears to be true.
24  BY MR. GRINNAN:
25    Q.  If Martin and Crosby had done their
```

**203**

```
 1  jobs on the day of the incident, that -- that
 2  could have prevented this entire thing from
 3  happening, true?
 4    MR. RUFTY:
 5         Object to the form.
 6    MS. DANTIN:
 7         Objection.
 8    THE WITNESS:
 9         It appears -- it appears to be true.
10  BY MR. GRINNAN:
11    Q.  And so you could tell the jury that
12  the causes of this incident were failures on
13  Crosby's part and Martin's part, fair?
14    MR. RUFTY:
15         Object to form.
16    MS. DANTIN:
17         Objection.
18    THE WITNESS:
19         I mean, I wouldn't want to tell the
20  jury anything because I wasn't there for
21  it.
22  BY MR. GRINNAN:
23    Q.  If the jury was wondering what you
24  believe the cause of this incident was, would you
25  agree that it would be failures on Crosby's part
```

**204**

```
 1  and failure on Martin's part?
 2    MR. RUFTY:
 3         Object to form.
 4    MS. DANTIN:
 5         Objection.
 6    THE WITNESS:
 7         I wouldn't give the jury my opinion.
 8  BY MR. GRINNAN:
 9    Q.  Okay.  Based on what you saw and
10  based on what you know, failures from Martin and
11  Crosby were causes of this incident, fair?
12    A.  Fair.
13    MR. RUFTY:
14         Objection.  Asked and answered also
15  a few times.
16    THE WITNESS:
17         I'm sorry.  Could you say that
18  again?
19    MS. DANTIN:
20         Objection.
21  BY MR. GRINNAN:
22    Q.  Yeah.  Based on everything you know
23  from your experience, failures on Martin's part
24  and failures on Crosby's part were causes of the
25  -- of this incident and the breakaway and the
```

AmersonWhite
COURT REPORTING & LITIGATION SUPPORT
866.870.7233   P.O. Box 1554 Hammond LA 70404   Fax 985.419.0799