UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| ALL COAST, LLC<br><br>VERSUS<br><br>SHORE OFFSHORE SERVICES, LLC | CIVIL ACTION NO: 21-258<br>c/w 21-337, 21-464, 21-822, 21-1968, 21-1969, 21-1982, 21-1981, 21-2075, 21-2227, 23-3220<br><br>SECTION "A"<br>HON. JAY C. ZAINEY<br><br>MAGISTRATE: (3)<br>HON. EVA J. DOSSIER<br><br>APPLIES TO ALL CASES |
|---|---|

**REPLY MEMORANDUM IN SUPPORT OF MOTION IN LIMINE TO
EXCLUDE REPORT AND TESTIMONY OF ALDON G. WAHL, JR.**

MAY IT PLEASE THE COURT:

Aldon G. Wahl, Jr.'s calculations quantifying the ROLAND FALGOUT Interests' purported loss of use claim as $1,492,161 are improper, unreliable, and should be excluded from the trial. Claimants, RAF, Inc., Global Towing Services, LLC, and Offshore Towing, Inc. (collectively the "ROLAND FALGOUT Interests"), concede through their Opposition Memorandum[1] that there may be issues with the accuracy of Mr. Wahl's calculations, but argue that they do not need to prove that his testimony is correct to be admissible, and incredibly that Mr. Wahl will be able to "rectify" any issues with his opinions and "perform a final calculation" at trial.[2]

The burden of proof of loss of use is on the ROLAND FALGOUT Interests—not the THOR Interests.[3] Under general maritime law, calculating loss of use requires the claimant to

---

[1] Rec. Doc. 812.
[2] Rec. Doc. 812, p.9.
[3] § 14:7. Damages, 2 Admiralty & Mar. Law § 14:7 (7th ed.).

show that it used reasonable efforts to mitigate damages and minimize its losses,[4] and when, as here, a substitute vessel is utilized, the claimant must show that the "substitute vessel would have been hired" for other jobs before it can be awarded lost profits for the substitute vessel's use in the job that the casualty prevented the original vessel from completing.[5] To reiterate, these are burdens (including the burden of establishing that it mitigated its losses) that are on the claimant (the ROLAND FALGOUT Interests), not the limitation petitioners (the THOR Interests). The ROLAND FALGOUT Interests deferred to Mr. Wahl to prove up their loss of use claim, but he has not done so.

Mr. Wahl used only "the information that he was given [by the ROLAND FALGOUT Interests] to make his calculations,"[6] without conducting an independent accounting to ensure that information was correct or the appropriate information to utilize under the circumstances (i.e., a situation where a substitute vessel replaced the damaged vessel). As a result, he did not address pertinent facts and data delineated in the THOR Interests' Original Memorandum[7] and did not account for the ROLAND FALGOUT Interests' substitution of the ZION FALGOUT under the Murphy Charter.

As a result, Mr. Wahl has not proven the ROLAND FALGOUT Interests' loss of use damages within a reasonable certainty, as their Opposition Memorandum contends, because he has done the wrong math problem. As set forth in the Memorandum in Support, a vessel was damaged and a substitute vessel mitigated the damaged vessel's loss in revenue. The metric used for determining loss of use is not the wholly mitigated damaged vessel's revenue, but whatever

---

[4] § 14:7. Damages, 2 Admiralty & Mar. Law § 14:7 (6th ed.).
[5] See *Maya Special Mar. Enter. v. Crochet*, No. 4:13-1871, 2016 WL 4190153, at *15 (S.D. Tex. Aug. 9, 2016) (citing *Domar Ocean Transp., Ltd., v. M/V Andrew Martin*, 754 F.2d 616, 620 (5th Cir. 1985)).
[6] Rec. Doc. 812, p.9.
[7] Rec. Doc. 772-1, pp.5-7.

revenue was lost from the substitute vessel, if any.[8] Here, it is simply an elementary error that renders Mr. Wahl's calculations flat wrong.

Mr. Wahl's calculations are wrong as a matter of law, and when an expert's calculations are wrong as a matter of law, this Section of this Honorable Court has held that the expert's testimony regarding the same "must be excluded from trial"—even a bench trial.[9]

The ROLAND FALGOUT Interests' Opposition Memorandum does not address, much less attempt to justify, Mr. Wahl's failure to consider that changes in revenues and expenses and mitigation are critical elements in the formula for calculating loss of use. Instead, they seem to argue that the THOR Interests should have done this work for them, while conceding that Mr. Wahl's numbers are "shaky"[10] and may in fact be wrong. To counter his errors, they argue that Mr. Wahl will be able to "rectify" any "issues" in his opinions and "perform a final calculation" at trial.[11]

This argument is incorrect. To the extent Mr. Wahl is even permitted to testify at trial over the THOR Interests' objections, his testimony would be confined to the opinions expressed in his report of 6 July 2022.[12]

Federal Rule of Civil Procedure 26(a)(2)(B)(i) required the ROLAND FALGOUT Interests to disclose "a complete statement of all opinions [Mr. Wahl] will express and the basis and reasons for them."[13] The deadline for doing so has long since passed, and Mr. Wahl cannot now or at trial offer "entirely new opinions and conclusions based on facts that were available to [him] from the

---

[8] *Domar Ocean Transp.*, 754 F.2d at 620.
[9] *Taylor v. B&J Martin, Inc.*, 611 F. Supp. 3d 278, 286 (E.D. La. 2020) (Zainey, J.).
[10] Rec. Doc. 812, p.8.
[11] Rec. Doc. 812, p.9.
[12] *Boudloche v. Chrysler Corp.*, No. 95-3496, 1996 WL 514978, at *1 (E.D. La. Sept. 6, 1996); *Gomez v. Daig Corp.*, No. 00-0754, 2004 WL 5503782, at *2 (E.D. La. Feb. 5, 2004).
[13] Fed. R. Civ. Proc. 26(a)(2)(B)(i).

start of the case."[14] Likewise, Mr. Wahl cannot "fix" problems with his reported opinions by supplementing the same with information the ROLAND FALGOUT Interests acknowledge was available to Mr. Wahl prior to the deadline for expert disclosures.[15]

To be clear, the Federal Rules do not allow Mr. Wahl to "rectify issues" with his opinions and perform "new" calculations of the ROLAND FALGOUT Interests' loss of use damages at trial based on facts available to him from the outset of this litigation (or likely even earlier given Mr. Wahl's purported position as the ROLAND FALGOUT Interests' accountant).[16]

Moreover, the prospect that Mr. Wahl will change his calculations or "perform a final calculation" at trial proves his opinions are unreliable to the Court's consideration of the ROLAND FALGOUT Interests' loss of use claim and should be excluded.[17] Other district courts have made clear that an expert's opinions cross the line from "unpersuasive" to "unreliable" when the expert changes the methods used and the analytic process after submitting his initial expert report.[18] For example, in *Fail-Safe, LLV v. A.O. Smith Corp.*, the district court found an expert's opinions unreliable because the expert changed the basis of his opinions after being proven wrong. In the first report, the excluded-expert relied upon a certain set of data and a specific mathematical approach for analyzing that data.[19] After admitting the problems with the initial approach, the excluded-expert changed/added new data, and changed his math and his analysis.[20] The court concluded that this showed that the expert's opinion was unreliable and not admissible.[21]

---

[14] *Newberry v. Discount Waste, Inc.*, No. 19-147, 2020 WL 363775 (E.D. Tex. Jan. 22, 2020).
[15] *Stewart v. Moncla Marine Operations LLC*, No. 17-1260, 2023 WL 3553706 (W.D. La. May 17, 2023)(citing *Lampe Berger USA, Inc. v. Scentier, Inc.*, No. 04-354-C-M2, 2008 WL 3386716, at *2 (M.D. La. Aug. 8, 2008)).
[16] See also *Kumar v. Frisco Indep. Sch. Dist.*, 476 F. Supp. 3d 439, 468 (E.D. Tex. 2020) (citing *Newberry v. Disc. Waste, Inc.*, 2020 WL 363775, at *2 (E.D. Tex. 22, 2020)). The ROLAND FALGOUT Interests' proposal would also obviously prejudice the THOR Interests in having to contest new opinions first disclosed at trial.
[17] See *Fail-Safe, LLV v. A.O. Smith Corp.*, 744 F. Supp. 2d 870, 887 (E.D. Wis. 2010).
[18] *Id*. at 877-80, 886-90.
[19] *Id*.
[20] *Id.* at 879-80, 889-90.
[21] *Id*. at 887.

4

Here, Mr. Wahl's opinions are not only unreliable for all the reasons set forth in the THOR Interests' Original Memorandum, but they are also wrong. Mr. Wahl dismissed or ignored evidence undermining his underlying conclusion, which resulted in his performing a simple but incorrect calculation, and for reasons similar to those found in the *Fail-Safe* case, the ROLAND FALGOUT Interests' proposal that Mr. Wahl's calculations may change his math and analysis at trial make his proffered opinions even less reliable.

For these reasons and those set forth in the THOR Interests' Original Memorandum, Mr. Wahl is not qualified to render the opinions expressed in his report and his conclusions regarding the ROLAND FALGOUT Interests' purported loss of profits are not sufficiently reliable to survive scrutiny under Rule 702 of the Federal Rules of Evidence. As a result, the THOR Interests' Motion in Limine to strike Mr. Wahl's expert report and exclude Mr. Wahl from testifying regarding ROLAND FALGOUT Interests' loss of revenues, use, and profits claim at trial should be granted.

Respectfully Submitted:

*/s/* **Gavin H. Guillot**
Gavin H. Guillot, T.A. (#31760)
Salvador J. Pusateri (#21036)
Aaron B. Greenbaum (#31752)
Meredith W. Blanque (#32346)
Jacob A. Altmyer (#36352)
Jonathan D. Parker (#35275)
**PUSATERI, JOHNSTON, GUILLOT & GREENBAUM, LLC**
1100 Poydras Street, Suite 2250
New Orleans, LA 70163
Telephone: 504-620-2500
Facsimile: 504-620-2510
Gavin.Guillot@pjgglaw.com
Salvador.Pusateri@pjgglaw.com
Aaron.Greenbaum@pjgglaw.com
Meredith.Blanque@pjgglaw.com
Jacob.Altmyer@pjgglaw.com
Jonathan.Parker@pjgglaw.com

**ATTORNEYS FOR MODERN AMERICAN RAILROAD SERVICES, L.L.C., AND SHORE OFFSHORE SERVICES, LLC**